Matthew J. Craig (SBN 350030)
*mcraig@heckerfink.com*
HECKER FINK LLP
1150 South Olive Street, Suite 10-140
Los Angeles, CA 90015
Telephone: (929) 294-2542
Facsimile: (212) 564-0883

Martin Totaro*
*mtotaro@heckerfink.com*
HECKER FINK LLP
1050 K Street, NW
Washington, D.C. 20001
Telephone: (212) 763-0883
Facsimile: (212) 564-0883

*Attorneys for Proposed Plaintiff-Intervenor Zero Emission Transportation Association*

**Application pro hac vice forthcoming*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

STATE OF CALIFORNIA, STATE OF COLORADO, STATE OF DELAWARE, COMMONWEALTH OF MASSACHUSETTS, STATE OF NEW JERSEY, STATE OF NEW MEXICO, STATE OF NEW YORK, STATE OF OREGON, STATE OF RHODE ISLAND, STATE OF VERMONT, and STATE OF WASHINGTON,

*Plaintiffs*,

v.

UNITED STATES OF AMERICA, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, LEE ZELDIN, in his official capacity as Administrator of the United States Environmental Protection Agency, DONALD J. TRUMP, in his official capacity as President of the United States,

*Defendants*.

Case No.: 4:25-cv-04966-HSG

**PLAINTIFF-INTERVENOR ZERO EMISSION TRANSPORTATION ASSOCIATION'S NOTICE OF MOTION AND MOTION FOR INTERVENTION AS A PLAINTIFF; MEMORANDUM OF POINTS AND AUTHORITIES**

| | |
|---|---|
| Hearing Date: | October 16, 2025 |
| Time: | 2:00 p.m. |
| Courtroom: | 2 – 4th Floor |
| Before: | Hon. Haywood S. Gilliam, Jr. |

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on October 16, 2025 at 2:00 p.m. or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Haywood S. Gilliam, located at 301 Clay Street, Oakland, California 94612, Zero Emission Transportation Association will, and hereby does, move pursuant to Federal Rule of Civil Procedure 24(a)(2) and 24(b) for an order granting leave to intervene as a Plaintiff-Intervenor in this action.[1] This motion is supported by the accompanying Memorandum of Points and Authorities, the concurrently filed Complaint-in-Intervention, any oral argument this Court may allow, and any other matter of which this Court takes notice.

[1] We have selected the next available civil motion hearing date, but we have no opposition to and would welcome the opportunity to be heard before that time.

**TABLE OF CONTENTS**

**Page(s)**

MEMORANDUM OF POINTS AND AUTHORITIES .... 1

FACTUAL BACKGROUND .... 2

A. The California Vehicle Emissions Regulations at Issue .... 2

B. Proposed Intervenor .... 3

ARGUMENT .... 4

A. ZETA Satisfies Rule 24(a)(2)'s Requirements for Intervention as of Right .... 4

B. In the Alternative, The Court Should Grant Permissive Intervention .... 7

CONCLUSION .... 10

- i -

PLAINTIFF-INTERVENOR ZERO EMISSION TRANSPORATION ASSOCIATION'S NOTICE OF MOTION AND MOTION FOR INTERVENTION, 4:25-CV-04966-HSG

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*ACLU of N. Cal. v. Burwell*,
No. 16 Civ. 03539, 2017 WL 492833 (N.D. Cal. Feb. 7, 2017) ........ 8

*Arakaki v. Cayetano*,
324 F.3d 1078 (9th Cir. 2003) ........ 5, 6

*California Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*,
54 F.4th 1078 (9th Cir. 2022) ........ 7, 8

*California v. EPA*,
No. 18 Civ. 03237, 2018 WL 6069943 (N.D. Cal. Nov. 20, 2018) ........ 10

*California ex rel. Lockyer v. United States*,
450 F.3d 436 (9th Cir. 2006) ........ 5, 7, 8

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
647 F.3d 893 (9th Cir. 2011) ........ 6, 6

*COR Clearing, LLC v. Khan*,
No. 15 Civ. 668, 2016 WL 11668990 (C.D. Cal. May 12, 2016) ........ 8

*Doe v. Harris*,
No. 12 Civ. 5713, 2013 WL 140053 (N.D. Cal. Jan. 10, 2013) ........ 9, 8

*Freedom from Religion Found., Inc. v. Geithner*,
644 F.3d 836 (9th Cir. 2011) ........ 7

*Hunt v. Wash. State Apple Advert. Comm'n*,
432 U.S. 333 (1977) ........ 9

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ........ 9

*Nw. Forest Res. Council v. Glickman*,
82 F.3d 825 (9th Cir. 1996) ........ 6

*Perry v. Schwarzenegger*,
630 F.3d 898 (9th Cir. 2011) ........ 8

*Sierra Club v. EPA*,
995 F.2d 1478 (9th Cir. 1993) ........ 5

*Spangler v. Pasadena City Bd. of Educ.*,
552 F.2d 1326 (9th Cir. 1977) .......... 10, 10

*Sw. Ctr. for Biological Diversity v. Berg*,
268 F.3d 810 (9th Cir. 2001) .......... 4

*Thompson v. Wolverine Servs., LLC*,
No. 20 Civ. 08865, 2021 WL 827605 (N.D. Cal. Mar. 4, 2021) .......... 5

*United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*,
517 U.S. 544 (1996) .......... 9

*United States v. Alisal Water Corp.*,
370 F.3d 915 (9th Cir. 2004) .......... 6

*United States v. Oregon*,
913 F.2d 576 (9th Cir. 1990) .......... 5

*Warth v. Seldin*,
422 U.S. 490 (1975) .......... 9

*W. States Trucking Ass'n v. Becerra*,
No. 19 Civ. 2447, 2020 WL 1032348 (C.D. Cal. Mar. 2, 2020) .......... 5

*W. Watersheds Project v. Haaland*,
22 F.4th 828 (9th Cir. 2022) .......... 5

*In re Wells Fargo & Co. Hiring Pracs. Derivative Litig.*,
No. 22 Civ. 5173, 2023 WL 4536883 (N.D. Cal. July 13, 2023) .......... 10

*Wilderness Soc. v. U.S. Forest Serv.*,
630 F.3d 1173 (9th Cir. 2011) .......... 6, 5

*Wildlife v. Johanns*,
No. 4 Civ. 4512, 2005 WL 3260986 (N.D. Cal. Dec. 1, 2005) .......... 7

**FEDERAL STATUTES**

5 U.S.C. § 801 .......... 3

5 U.S.C. § 802 .......... 3

42 U.S.C. § 7543 .......... 2

42 U.S.C. § 7543(1) .......... 2

**FEDERAL RULES**

Fed. R. Civ. P. 12(a)(2) ....................5

Fed. R. Civ. P. 24 ....................6

Fed. R. Civ. P. 24(a)(2) ....................1, 4

**STATE REGULATIONS**

Cal. Cal. Code Regs. § 1956 ....................2

**OTHER AUTHORITIES**

EPA, *Trump EPA to Transmit California Waivers to Congress in Accordance with Statutory Reporting Requirement* (Feb. 14, 2025) ....................3

- iv -

PLAINTIFF-INTERVENOR ZERO EMISSION TRANSPORATION ASSOCIATION'S NOTICE OF MOTION AND MOTION FOR INTERVENTION, 4:25-CV-04966-HSG

**MEMORANDUM OF POINTS AND AUTHORITIES**

The Zero Emission Transportation Association (ZETA)—an association of over three dozen companies committed to promoting electric vehicle adoption—seeks leave to intervene to file a complaint in the above-captioned lawsuit against the U.S. Environmental Protection Agency (EPA) and Lee Zeldin, in his official capacity as Administrator of the U.S. Environmental Protection Agency (together, EPA Defendants), and Donald Trump, in his official capacity as President of the United States.

ZETA seeks to challenge Defendants' unprecedented purported use of the Congressional Review Act (CRA) to disapprove three Clean Air Act preemption waivers that EPA was required to grant—and had already granted—that authorize California and other states to enforce their own specified vehicle emission standards. Never before has Congress purported to use the CRA to nullify an agency's adjudicative order. Doing so here violated the Administrative Procedure Act and fundamental separation-of-powers principles that prevent Congress from exercising the powers of the Executive Branch by overruling a prior agency decision to grant California specific waivers for its efforts to regulate vehicle emissions.

ZETA is entitled to intervene as of right under Federal Rule of Civil Procedure 24(a)(2). Intervention is necessary to protect the significant commercial interests that ZETA's members have in this action—specifically, to protect economically valuable credits for zero-emissions vehicles that ZETA members have earned under California's regulatory regime, as well as billions of dollars of investment in electric vehicle infrastructure, supply chain, and technology that ZETA members have made in reliance on that regime. ZETA's interests will be inadequately protected by the Plaintiffs in this action, none of whom is a vehicle manufacturer, and none of whom will necessarily safeguard the investments that ZETA members have made in the electric vehicle industry.

Regardless of whether ZETA may intervene as of right, the Court should exercise its broad discretion and permit ZETA's permissive intervention in this action. Because this litigation is still in its earliest stages, allowing ZETA to intervene promotes judicial efficiency by consolidating factual

development and motions practice into a single action, rather than two separate lawsuits. Both complaints share common questions of law and fact.[2]

## FACTUAL BACKGROUND

### A. The California Waivers at Issue

The Clean Air Act generally preempts states from adopting emission control standards for new motor vehicles. 42 U.S.C. § 7543. Intending that California serve as a laboratory for innovation on vehicle emissions regulation, Congress required EPA to "waive" preemption for the State, except in limited circumstances. *Id.* § 7543(b)(1). Other states may in turn adopt and enforce California's standards. *Id.* § 7507. Over the decades, EPA has, according to the Congressional Research Service, granted over 100 federal preemption waivers to California for new and amended state-level vehicle emissions standards. Compl. ¶ 6.[3]

California adopted three state regulations to reduce emissions from motor vehicles: the Advanced Clean Trucks, Advanced Clean Cars II, and Omnibus Low NOx (Omnibus) regulations. Together, these regulations gradually strengthen California's emissions requirements for vehicles ranging from passenger cars to heavy-duty trucks. *See* Cal. Code Regs., tit. 13, §§ 1956.8, 1962.4(c), 1962.4(e)(1)(C), 1963.1(b); Compl. ¶ 7.

Among other things, California's vehicle emissions regime incentivizes the sale of zero-emissions vehicles (ZEVs) to reduce harmful pollution and protect the public and the state. The regime does so in part through a system of bankable and tradable ZEV credits. Electric vehicle manufacturers earn ZEV credits for selling qualifying vehicles in California and other states that have adopted California's standards. Other vehicle manufacturers can then purchase those credits to meet their own compliance obligations.

Consistent with its settled practice of granting waivers and based on extensive information before the agency, EPA granted California's requests to waive preemption for the three regulations at issue under

---

[2] Defendants oppose this motion. Plaintiffs do not oppose this motion.

[3] All citations to "Compl. ¶" refer to Plaintiff-Intervenor's Complaint-in-Intervention filed herewith.

the Clean Air Act. *See* 88 Fed. Reg. 20,688 (Apr. 6, 2023) (Advanced Clean Trucks); 90 Fed. Reg. 642 (Jan. 6, 2025) (Advanced Clean Cars II); 90 Fed. Reg. 643 (Jan. 6, 2025) (Omnibus); Compl. ¶¶ 34-37.

Earlier this year, Defendants sought to undo those waivers by having EPA submit the three waiver decisions to Congress for review purportedly under the CRA. *See* EPA, *Trump EPA to Transmit California Waivers to Congress in Accordance with Statutory Reporting Requirement* (Feb. 14, 2025). The CRA creates expedited procedures for Congress to disapprove federal agency rules, but not other forms of agency action. 5 U.S.C. §§ 801, 802. In May, Congress adopted three resolutions purporting to disapprove the three California waivers under the CRA. The President signed the resolutions on June 12, 2025. *See* H.J. Res 87, 119th Cong., 139 Stat. 65 (2025) (Advanced Clean Trucks), H.J. Res. 88, 119th Cong., 139 Stat. 66 (2025) (Advanced Clean Cars II), H.J. Res. 89, 119th Cong., 139 Stat. 67 (2025) (Omnibus); Compl. ¶ 63.

Shortly thereafter, the existing Plaintiffs—California and other states—filed this lawsuit. *See* ECF 1. Plaintiffs seek to enforce their state regulations that were subject to the purportedly disapproved waivers. Plaintiffs are suing the United States, EPA, its Administrator, and the President for constitutional violations, as well as violations of the Administrative Procedure Act and the CRA, among other things. *See id.* ¶¶ 25-28, 114-188.

**B.     Proposed Intervenor**

ZETA is an association composed of over three dozen companies committed to promoting electric vehicle adoption and maintaining American electric vehicle manufacturing dominance in global markets. The Association's members span the entire electric vehicle supply chain—including vehicle manufacturers, charging infrastructure manufacturers, network operators, battery manufacturers and recyclers, electricity providers, and critical minerals producers, among others. The interests that ZETA seeks to protect here are essential to its core mission of supporting policies that drive the adoption of electric vehicles, create jobs, and improve public health because increased deployment of electric vehicles can dramatically reduce vehicular emissions. Compl. ¶ 18.

Together, ZETA members have invested and have committed to investing billions of dollars toward building the infrastructure, supply chain, technology, and capabilities necessary to support

increased deployment of electric vehicles. Full return on these investments depends on the more stringent vehicle emissions regulations adopted by California pursuant to the waivers at issue. If the resolutions are allowed to stand, they will undermine ZETA members' ability to realize the full benefits of their investments and compromise the regulatory stability necessary for continued confidence in making bold investments. Compl. ¶¶ 64-74.

Furthermore, several ZETA members manufacture vehicles that are sold in California and certain other states that have adopted the regulations at issue, and that are part of the class of vehicles subject to the state regulations. They are further harmed by the resolutions because they earn tradable compliance credits in California and other states that have adopted California's regulations, which they then sell to other manufacturers. Those credits are an important source of revenue for electric vehicle manufacturers. But, as a result of the resolutions, those credits will lose nearly all of their value. Compl. ¶ 69.

## ARGUMENT

"Rule 24 traditionally receives liberal construction in favor of applicants for intervention." *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003). In deciding a motion to intervene, a court must "take all well-pleaded, nonconclusory allegations in the motion . . . , the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001).

Here, ZETA's members' significant economic interests in the California waivers targeted by the resolutions central to this suit provide grounds for the association to intervene in this newly filed case as a matter of right. Moreover, permissive intervention is proper because ZETA is advancing claims that share questions of law and fact with Plaintiffs' suit.

### A.  ZETA Satisfies Rule 24(a)(2)'s Requirements for Intervention as of Right

Under Rule 24(a)(2) of the Federal Rules of Civil Procedure, a non-party has the right to intervene in a proceeding where it "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." The Court must grant intervention under that provision if (1) the motion is timely, (2) the applicant has a

"significantly protectable interest relating to the property or transaction which is the subject of the action," (3) the "disposition of the action may as a practical matter impair or impede its ability to protect that interest," and (4) the applicant's interest is "inadequately represented by the parties to the action." *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (en banc) (quoting *Sierra Club v. EPA,* 995 F.2d 1478, 1481 (9th Cir. 1993)). This rule is applied "liberally in favor of potential intervenors," *California ex rel. Lockyer v. United States,* 450 F.3d 436, 440 (9th Cir. 2006), and is guided "primarily by practical considerations, not technical distinctions," *W. Watersheds Project v. Haaland*, 22 F.4th 828, 835 (9th Cir. 2022) (quotation marks omitted).

ZETA satisfies each of these requirements. *First*, its motion to intervene is timely. In assessing timeliness, the Court considers "the stage of the proceeding, prejudice to other parties, and the reason for and length of the delay." *United States v. Oregon*, 913 F.2d 576, 588 (9th Cir. 1990). ZETA, of course, is seeking to intervene "at the very outset of litigation." *W. States Trucking Ass'n v. Becerra*, No. 19 Civ. 2447, 2020 WL 1032348, at *2 (C.D. Cal. Mar. 2, 2020). Plaintiffs filed their complaint in this action on June 12, 2025, ECF 1, and Defendants' deadline to respond to the complaint is not until mid-August 2025, *see* Fed. R. Civ. P. 12(a)(2). The law is clear that a motion to intervene is timely in these circumstances. *E.g.*, *Thompson v. Wolverine Servs.*, LLC, No. 20 Civ. 08865, 2021 WL 827605, at *2 (N.D. Cal. Mar. 4, 2021) (motion to intervene was timely because "case [wa]s in its preliminary stages, with [the defendant] having just filed its answer and the initial case management conference two months away"). Moreover, in light of this case's early stage, ZETA's intervention will not result in any form of prejudice, and ZETA has not delayed in filing. *See Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (finding all "traditional features of a timely motion" satisfied where intervenors filed their motion "less than three months after the complaint was filed").

*Second,* ZETA has significant protectable interests related to this action. An interest satisfies the requirements for Rule 24(a)(2) intervention if it is "protectable under some law," and there exists "a relationship between th[at] legally protected interest and the claims at issue." *California Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078, 1088 (9th Cir. 2022) (quoting *Wilderness Soc.*, 630 F.3d at 1179). This is a "'practical, threshold inquiry,' and '[n]o specific legal or equitable interest

need be established.'" *Citizens for Balanced Use*, 647 F.3d at 897 (quoting *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996)) (alteration in original).

It "seems beyond dispute" that ZETA has the requisite interest in this action. *Lockyer*, 450 F.3d at 441. ZETA's electric vehicle manufacturer members are directly regulated by the California emissions regime targeted by the resolutions at issue. California's regulatory regime enables those ZETA members to earn tradeable and bankable credits for any qualifying ZEVs that they sell. *See id.* (proposed intervenors had the requisite interest as beneficiaries of the law at issue). If the Court does not in this litigation recognize that the waivers at issue remain in effect, ZETA members will suffer significant economic harm. The credits that electric vehicle manufacturers earned—or projected they would earn—under California law for producing ZEVs will lose their value. And the investments of ZETA's members—including vehicle manufacturers and others—in electric vehicle infrastructure, supply chain, and capabilities will be undermined. These "economic interest[s]" are both "concrete and related to the underlying subject matter of the action"—namely, to the resolutions and the continued vitality of the relevant waivers—and thus support intervention as of right. *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004).

*Third,* this lawsuit threatens to impair ZETA's interests. In general, this requirement is satisfied "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action." *Citizens for Balanced Use*, 647 F.3d at 898 (quoting Fed. R. Civ. P. 24 advisory committee's note). Once a proposed intervenor has a significant protectable interest, courts have "little difficulty concluding that the disposition of th[e] case may, as a practical matter, affect it." *Id.* (quoting *Lockyer*, 450 F.3d at 442). Here, if Defendants prevail in this action, ZETA and its members would suffer the harms set forth above. Vehicle manufacturers would lose the value of their ZEV credits, and many other ZETA members would see diminished returns on billions of dollars in electric-vehicle-related investments.

*Fourth*, ZETA's interests will be inadequately represented by other parties to the action. In evaluating adequacy of representation, courts consider: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Arakaki*, 324 F.3d at 1086.

ZETA satisfies the burden of showing a lack of adequate representation because the existing Plaintiffs—all of whom are sovereigns—will not necessarily safeguard the private commercial interests of ZETA's members. The Plaintiff states are seeking to remedy their own harms—namely, their inability as sovereigns to enforce California vehicle emissions regulations. Because none of the Plaintiffs manufactures electric vehicles, they cannot directly speak to the concrete, economic costs of this action on those manufacturers and other industry players, and so cannot protect against these harms in the same manner as ZETA. As a result, ZETA "would bring a perspective none of the other parties to the litigation have." *Defs. of Wildlife v. Johanns*, No. 4 Civ. 4512, 2005 WL 3260986, at *8 (N.D. Cal. Dec. 1, 2005); *see also Citizens for Balanced Use*, 647 F.3d at 899 (recognizing that the "government's representation of the public interest may not be identical to the individual parochial interest of a particular group just because both entities occupy the same posture in the litigation" (quotation marks omitted)).

**B. In the Alternative, The Court Should Grant Permissive Intervention**

Even if the Court finds that the requirements for intervention of right are not satisfied, it should exercise its discretion to grant permissive intervention under Rule 24(b). A party seeking permissive intervention under Rule 24(b)(1)(B) must meet three threshold requirements: "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011) (quotation marks omitted).

ZETA satisfies all three requirements. *First*, there is an "independent ground for jurisdiction." *Freedom from Religion Found.*, 644 F.3d at 843. In a federal-question case like this one, the jurisdictional requirement for intervention is satisfied unless the "proposed intervenor seeks to bring new state-law claims." *Id.* at 844 (citations omitted). Because ZETA brings no state-law claims, the jurisdictional element is satisfied. *Second*, and as already noted, ZETA's motion is timely because ZETA seeks to intervene at an early stage of the litigation, well before Defendants need to even respond to the complaint filed by the existing Plaintiffs. *See supra* at 6. *Third*, there are common questions of law and fact between ZETA's claims and the main action. Here, ZETA challenges the same executive actions and resolutions that Plaintiffs challenge, raising similar claims under the Administrative Procedure Act and the

Constitution. *Compare* Compl. ¶¶ 75-115, *with* ECF 1 ¶¶ 114-188. Where an intervenor raises "common questions" with the main action regarding the legality of the challenged government action, the third requirement is met. *ACLU of N. Cal. v. Burwell*, No. 16 Civ. 03539, 2017 WL 492833, at *3 (N.D. Cal. Feb. 7, 2017); *see also Doe v. Harris,* No. 12 Civ. 5713, 2013 WL 140053, at *2 (N.D. Cal. Jan. 10, 2013) (requirement is satisfied where intervenor's challenge "address[es] the questions of law and fact at the heart of [the main] action"); *COR Clearing, LLC v. Khan*, No. 15 Civ. 668, 2016 WL 11668990, at *2 (C.D. Cal. May 12, 2016) (same conclusion where claims "are identical" and are "predicated on the same factual allegations against the same defendants").

Because ZETA satisfies the three threshold requirements, the Court may consider discretionary factors in deciding whether to permit intervention. In deciding whether to grant permissive intervention, courts consider (1) "the nature and extent of the intervenors' interest"; (2) "their standing to raise relevant legal issues"; (3) "the legal position they seek to advance, and its probable relation to the merits of the case"; (4) "whether the intervenors' interests are adequately represented by other parties"; (5) "whether intervention will prolong or unduly delay the litigation"; and (6) whether the intervenors "will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977); *accord Perry v. Schwarzenegger*, 630 F.3d 898, 905 (9th Cir. 2011). Those factors likewise support ZETA's intervention.

As already noted, the nature and extent of ZETA's interest is different from the Plaintiffs' interests because ZETA has a non-sovereign, economic stake in the three waivers at issue that differ from Plaintiffs' interests in pursuing this suit (factors 1 and 4). *See supra* at 7-8. The other discretionary factors also all weigh in favor of permitting ZETA to intervene.

***Standing.*** In "a federal question case in which the party on whose side intervention is sought … remains in the suit," "the requirement of independent Article III standing does not apply to proposed intervenors who … do not seek to raise additional claims." *Harris*, 2013 WL 140053, at *2 (citing *Freedom from Religion Found.*, 644 F.3d at 843); *see also California Dep't of Toxic Substances Control*, 54 F.4th at 1085 (explaining that "intervenors that seek the same relief sought by at least one existing

party to the case need not" possess Article III standing). Because Plaintiffs have standing, and ZETA does not seek to raise additional claims or seek additional relief, this Court need not analyze standing separately.

In any event, ZETA plainly has associational standing to challenge Defendants' actions because "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). ZETA's members themselves would have standing because some ZETA members are directly regulated under the California vehicle emissions program authorized by the waivers targeted in the resolutions, and others provide infrastructure for the ZEVs that California's emissions regulations support. If the unlawful resolutions are allowed to stand, it would cause ZETA members severe economic harm by undermining regulatory incentives for vehicle electrification, reducing credit revenues, threatening members' ability to realize the full benefits of their investments, and compromising much-needed regulatory stability. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561-62 (1992) (when a plaintiff is "an object of the action . . . at issue . . . there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it"). ZETA also satisfies the other two elements for associational standing. For the reasons discussed above, the challenges to Defendants' actions are germane to ZETA's purpose of advocating on behalf of its members for policies that promote vehicle electrification. And there is no need for ZETA's members to participate directly: ZETA's claims and requested relief are not "peculiar to [an] individual member," nor do they "require individualized proof." *Warth v. Seldin*, 422 U.S. 490, 515-16 (1975); *cf. United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 546 (1996) ("[I]ndividual participation is not normally necessary when an association seeks prospective or injunctive relief for its members.").

***Relation of legal position to merits of the case.*** ZETA's legal position is clearly in concert with Plaintiffs' position and the overall merits of the action as it currently exists. ZETA's claims parallel those brought by the Plaintiffs. ZETA seeks intervention to ensure that the significant economic interests of its members are fully protected.

***Undue delay.*** This factor weighs in favor of intervention because, as already noted, ZETA seeks to intervene in this case at an early stage, before Defendants have responded to the complaint. Indeed, when an action "is at the pleading stage," intervention "provides judicial efficiency from having [a proposed intervenor] as a part of this action, rather than a separate action that [it] may bring." *In re Wells Fargo & Co. Hiring Pracs. Derivative Litig.*, No. 22 Civ. 5173, 2023 WL 4536883, at *4 (N.D. Cal. July 13, 2023).

***Contributions to full development of factual issues and adjudication of legal questions.*** Finally, courts consider whether "the parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Spangler*, 552 F.2d at 1329. That factor weighs in favor of intervention too, given that this action's "outcome could have significant consequences for [ZETA's] members." *California v. EPA*, No. 18 Civ. 03237, 2018 WL 6069943, at *4 (N.D. Cal. Nov. 20, 2018). As discussed above, ZETA will contribute significantly by highlighting the real harms to industry if the resolutions are allowed to stand. ZETA can also speak to how Defendants' unlawful actions have disturbed a decades-long practice of EPA granting preemption waivers to California, thereby creating significant instability for regulated industry and threatening billions of dollars of investment.

## CONCLUSION

For all the reasons above, ZETA respectfully requests that the Court grant its motion for intervention.

Dated: Los Angeles, CA
July 25, 2025

Matthew J. Craig