Michael Buschbacher*
James R. Conde*
James R. Wedeking*
Laura B. Ruppalt*
Boyden Gray PLLC
800 Connecticut Avenue NW, Suite 900
Washington, D.C. 20006
(202) 955-0620
mbuschbacher@boydengray.com
*Pro hac vice applications forthcoming

Eric Grant (Bar No. 151064)
John B. Thomas (Bar No. 269538)
Hicks Thomas LLP
701 University Avenue, Suite 106
Sacramento, California 95825
(916) 447-4900
grant@hicks-thomas.com

Counsel for Proposed Intervenor-Defendants
(complete list on signature page)

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| STATE OF CALIFORNIA, STATE OF COLORADO, STATE OF DELAWARE, COMMONWEALTH OF MASSACHUSETTS, STATE OF NEW JERSEY, STATE OF NEW MEXICO, STATE OF NEW YORK, STATE OF OREGON, STATE OF RHODE ISLAND, STATE OF VERMONT, and STATE OF WASHINGTON, | No. 4:25-cv-04966-HSG |
| Plaintiffs, | **MOTION TO INTERVENE AS DEFENDANTS OF AMERICAN FREE ENTERPRISE CHAMBER OF COMMERCE, ILLINOIS CORN GROWERS ASSOCIATION, INDIANA CORN GROWERS ASSOCIATION, IOWA CORN GROWERS ASSOCIATION, KANSAS CORN GROWERS ASSOCIATION, KENTUCKY CORN GROWERS ASSOCIATION, MICHIGAN CORN GROWERS ASSOCIATION, MISSOURI CORN GROWERS ASSOCIATION, NEBRASKA CORN GROWERS ASSOCIATION, TENNESSEE CORN GROWERS ASSOCIATION, TEXAS CORN PRODUCERS, WISCONSIN CORN GROWERS ASSOCIATION, AND NATIONAL CORN GROWERS ASSOCIATION** |
| v. | |
| UNITED STATES OF AMERICA, U.S. ENVIRONMENTAL PROTECTION AGENCY, LEE ZELDIN, in his official capacity as Administrator of the U.S. Environmental Protection Agency, and DONALD J. TRUMP, in his official capacity as President of the United States, | |
| Defendants. | |
| | Date:    October 16, 2025 |
| | Time:    2:00 p.m. |
| | Courtroom: 2, 4th Floor Oakland Courthouse |
| | Judge:    Hon. Haywood S. Gilliam, Jr. |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... iii

NOTICE OF MOTION ............................................................................................................... 1

MOTION TO INTERVENE ...................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................ 1

STATEMENT OF ISSUES ........................................................................................................ 2

BACKGROUND ......................................................................................................................... 3

I.      EPA Issues Waivers of Clean Air Act Preemption for Three California
        Programs .......................................................................................................................... 3

II.     Congress Repeals the EPA Waivers of Clean Air Act Preemption ...................... 4

III.    Movants Have Substantial Interests in the Validity of the Resolutions. ............. 5

STANDARD FOR INTERVENTION ....................................................................................... 8

ARGUMENT .............................................................................................................................. 9

I.      Movants Are Entitled To Intervene Under Rule 24(a)(2) .................................... 9

        A.      Intervention Is Timely ................................................................................. 10

        B.      Movants Have a Protectable Interest That May Be Practically
                Impeded ........................................................................................................ 10

        C.      Federal Defendants May Not Adequately Represent Movants'
                Interests ........................................................................................................ 13

II.     Alternatively, This Court Should Grant Permissive Intervention
        Under Rule 24(b)(1)(B) ............................................................................................ 15

        A.      No Independent Jurisdictional Ground Is Required and Motion
                Is Timely ...................................................................................................... 15

        B.      Movants' Defense Shares Common Questions of Law and Fact ............. 16

        C.      Intervention Will Not Cause Undue Delay or Prejudice Existing
                Parties ........................................................................................................... 16

CONCLUSION ......................................................................................................................... 17

LIST OF EXHIBITS ................................................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Californians for Safe & Competitive Dump Truck Transp. v. Mendonca,*
  152 F.3d 1184 (9th Cir. 1998) .......................................................................... 12, 15

*Citizens for Balanced Use v. Mont. Wilderness Ass'n,*
  647 F.3d 893 (9th Cir. 2011) ......................................................... 9, 10, 11, 14, 15

*Diamond Alt. Energy, LLC v. EPA,*
  145 S. Ct. 2121 (2025) ........................................................................... 2, 7, 11, 14

*Freedom from Religion Found., Inc. v. Geithner,*
  644 F.3d 836 (9th Cir. 2011) ................................................................................ 9, 16

*Fund for Animals, Inc. v. Norton,*
  322 F.3d 728 (D.C. Cir. 2003) ............................................................................. 14, 15

*Golden State Transit Corp. v. City of Los Angeles,*
  493 U.S. 103 (1989) ................................................................................................... 11

*Idaho Farm Bureau Fed'n v. Babbitt,*
  58 F.3d 1392 (9th Cir. 1995) ............................................................................... 10, 12

*Idaho v. Freeman,*
  625 F.2d 886 (9th Cir. 1980) ................................................................................... 12

*Kalbers v. U.S. Dep't of Justice,*
  22 F.4th 816 (9th Cir. 2021) .................................................................................. 10

*Kootenai Tribe of Idaho v. Veneman,*
  313 F.3d 1094 (9th Cir. 2002) ........................................................................... 16, 17

*LULAC v. Wilson,*
  131 F.3d 1297 (9th Cir. 1997) ........................................................................... 10, 16

*Levin Richmond Terminal Corp. v. City of Richmond,*
  482 F. Supp. 3d 944 (N.D. Cal. 2020) .................................................................... 16

*Logan v. Zimmerman Brush Co.,*
  455 U.S. 422 (1982) .................................................................................................. 12

*N. Plains Res. Council v. U.S. Army Corps of Eng'rs,*
  2019 WL 5818061 (D. Mont. Nov. 7, 2019) ........................................................ 17

*Nooksack Indian Tribe v. Zinke,*
  321 F.R.D. 377 (W.D. Wash. 2017) ...................................................................... 16

*Sagebrush Rebellion, Inc. v. Watt,*
  713 F.2d 525 (9th Cir. 1983) ........................................................................... 12, 15

*Sigwart v. U.S. Bank Nat. Ass'n*,
   2014 WL 2451566 (D. Haw. May 30, 2014) ........................................................ 11

*Smith v. Pangilinan*,
   651 F.2d 1320 (9th Cir. 1981) ........................................................ 13

*Sw. Ctr. for Biological Diversity v. Berg*,
   268 F.3d 810 (9th Cir. 2001) ........................................................9, 12, 14, 15

*Trbovich v. United Mine Workers of Am.*,
   404 U.S. 528 (1972) ........................................................ 14, 15

*United States v. Alisal Water Corp.*,
   370 F.3d 915 (9th Cir. 2004) ........................................................ 11

*United States v. City of Los Angeles*,
   288 F.3d 391 (9th Cir. 2002) ........................................................ 9, 10

*United States v. Oregon*,
   839 F.2d 635 (9th Cir. 1988) ........................................................ 13

*United States v. Stringfellow*,
   783 F.2d 821 (9th Cir. 1986) ........................................................ 13

*United States ex rel. McGough v. Covington Technols. Co.*,
   967 F.2d 1391 (9th Cir. 1992) ........................................................ 10

*Wilderness Soc'y v. U.S. Forest Serv.*,
   630 F.3d 1173 (9th Cir. 2011) (en banc) ........................................................ 11

**Statutes**

5 U.S.C. § 801(b)(2) ........................................................5

5 U.S.C. §§ 801–808 ........................................................2, 5

42 U.S.C. § 7507 ........................................................1

42 U.S.C. § 7507(1) ........................................................3

42 U.S.C. § 7521(a) ........................................................3

42 U.S.C. § 7543(a) ........................................................1, 3, 4, 5, 8, 11, 13

42 U.S.C. § 7543(b) ........................................................1, 3, 7

42 U.S.C. § 7607(b) ........................................................11

Pub. L. No. 119-15, 139 Stat. 65 (2025) ........................................................5

Pub. L. No. 119-16, 139 Stat. 66 (2025) ........................................................5

Pub. L. No. 119-17, 139 Stat. 67 (2025) ........................................................5

**Regulations**

88 Fed. Reg. 20,688 (Apr. 6, 2023) ...................................................................... 3

90 Fed. Reg. 642 (Jan. 6, 2025) .......................................................................... 3

90 Fed. Reg. 643 (Jan. 6, 2025).......................................................................... 3

Cal. Code Regs. tit. 13, § 1956.8(a)(2)(C) .......................................................... 4

Cal. Code Regs. tit. 13, § 1956.8(a)(2)(D) .......................................................... 4

Cal. Code Regs. tit. 13, § 1962.4 ........................................................................ 3

Cal. Code Regs. tit. 13, § 1962.4(e)(1)(C) .......................................................... 3

Cal. Code Regs tit. 13, § 1963.1 ......................................................................... 4

Cal. Code Regs tit. 13, § 1963.2 ......................................................................... 4

Cal. Code Regs. tit. 13, § 1963.6(a) .................................................................... 4

Cal. Code Regs. tit. 13, § 2016 ........................................................................... 4

**Court Rules**

Fed. R. Civ. P. 12(a)(3) ..................................................................................... 10

Fed. R. Civ. P. 24 ............................................................................................... 1

Fed. R. Civ. P. 24(a)(2) ..................................................... 1, 2, 8, 9, 11, 12, 15

Fed. R. Civ. P. 24(b)(1)(B) ...................................................................... 1, 2, 9, 15

Fed. R. Civ. P. 24(b)(3) ....................................................................................... 9

Fed. R. Civ. P. 24(c) ........................................................................................... 2

N. Dist. Cal. Civil Local R. 7-2 ......................................................................... 1

**Other Authorities**

AmFree, *AmFree Heralds Trump's EV Mandate Repeal, Vows to Fight California's Legal Challenge* (June 13, 2025), https://perma.cc/PZD3-JNVV ............................................8

All. for Auto. Innovation, *It's Gonna Take a Miracle: California And States With EV Sales Requirements* (Dec. 11, 2024), https://perma.cc/97Y3-Q869 ....................................4

CARB, *Omnibus Program Initial Statement of Reasons* (June 23, 2020), https://perma.cc/32CP-SSV8................................................................................................4

CARB, *States That Have Adopted California's Vehicle Regulations* (last updated Apr. 2025), https://perma.cc/AG5L-GZFN....................................................................4

Ill. Corn Growers Ass'n et al., *Comment on Application for a Clean Air Act Waiver*, EPA-HQ-OAR-2023-0292-0185 (Feb. 27, 2024), https://perma.cc/K5KX-28KD............................................................................................................................7

Ill. Corn Growers Ass'n, *California EV Mandates, Clean Air Act and a Congressional Review Act Vote* (May 20, 2025), https://perma.cc/85C8-DC47 ......................8

Letter from Am. Trucking Ass'ns to House and Senate Republican Leaders (Apr. 1, 2025), https://perma.cc/6KRW-9TZW ............................................................................5

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on October 16, 2025 at 2:00 p.m., or as soon thereafter as the matter may be heard in Courtroom 2 (4th Floor) of the above-named Court (Hon. Haywood S. Gilliam, Jr. presiding), located at 1301 Clay Street, Oakland, California 94612, American Free Enterprise Chamber of Commerce, Illinois Corn Growers Association, Indiana Corn Growers Association, Iowa Corn Growers Association, Kansas Corn Growers Association, Kentucky Corn Growers Association, Michigan Corn Growers Association, Missouri Corn Growers Association, Nebraska Corn Growers Association, Tennessee Corn Growers Association, Texas Corn Producers, Wisconsin Corn Growers Association, and National Corn Growers Association ("Movants") will, and hereby do, move to intervene as Defendants in this civil action, as described below.

**MOTION TO INTERVENE**

Pursuant to Federal Rule of Civil Procedure 24 ("Rule 24") and Civil Local Rule 7-2, Movants respectfully move to intervene, by right or by permission, as Defendants in this civil action. Movants are entitled to intervene under Rule 24(a)(2); alternatively, this Court should grant permissive intervention under Rule 24(b)(1)(B). This Motion is supported by the following Memorandum of Points and Authorities, the accompanying declarations, and any oral argument that may be presented to the Court. Plaintiffs reserve their rights to oppose or otherwise respond to this Motion. Defendants take no position.

**MEMORANDUM OF POINTS AND AUTHORITIES**

California and several other states have adopted emissions standards designed to phase out new internal-combustion vehicles and mandate sales of electric vehicles. These standards are prohibited by the Clean Air Act, 42 U.S.C. § 7543(a). The U.S. Environmental Protection Agency ("EPA"), however, issued "waivers" of Clean Air Act preemption purporting to allow California and other states to adopt and enforce their standards. *See id.* §§ 7543(b), 7507. The standards are commercially unfeasible and have already caused serious supply chain disruptions, threatening the automotive industry, workers, and the millions of ordinary Americans who depend on cars and trucks to get where they are going and to deliver the goods and services on which they depend.

Congress and the President responded. Congress passed, and the President signed, three resolutions repealing the EPA waivers using the expedited procedures of the Congressional Review Act ("CRA"), 5 U.S.C. §§ 801–808. As the Supreme Court recently noted, this "legislation … block[s] [these] California regulations." *Diamond Alt. Energy, LLC v. EPA*, 145 S. Ct. 2121, 2131 n.1 (2025). That should have been the end of the matter. But California and ten other states ("Plaintiffs") do not like this legislation. Having failed to persuade elected members of Congress, they ask this Court to repeal those laws by judicial decree, reinstate the waivers, and allow Plaintiffs to enforce the regulations. *See* Complaint (ECF No. 1). Plaintiffs' position is radical: they argue that bipartisan federal *legislation* cannot undo the *actions of an administrative agency*. While Plaintiffs exact argument is difficult to nail down, their two main theories appear to be that (1) Congress was somehow deprived of the authority to enact this legislation by prior allegedly unlawful acts of EPA and the President, including EPA's decision to submit the waivers to Congress as "rules" under the CRA; and (2) Congress misapplied its own internal procedures. These invitations to interfere with the legislative process are meritless and, more importantly, they lie far outside this Court's jurisdiction.

Movants are trade associations whose members are harmed by EPA's waivers and the California emissions programs they purport to allow, and who seek to intervene as Defendants to defend the resolutions invalidating those waivers. Movants easily satisfy the requirements for intervention by right: this motion is timely; Movants have multiple legally protectable interests in the validity of the resolutions that, as a practical matter, could be impaired by the disposition of the case; and no existing party adequately represents Movants' interests. Movants also easily satisfy the requirements for permissive intervention.[1]

## STATEMENT OF ISSUES

1. Whether Movants may intervene by right under Rule 24(a)(2).

2. Whether Movants should be permitted to intervene under Rule 24(b)(1)(B).

---

[1] Consistent with Rule 24(c), Movants have simultaneously filed a proposed motion to dismiss Plaintiffs' complaint, Ex. I, and a proposed answer, Ex. J.

## BACKGROUND

### I. EPA Issues Waivers of Clean Air Act Preemption for Three California Programs

Section 202(a) of the Clean Air Act authorizes EPA to comprehensively regulate emissions from the Nation's new motor vehicles, 42 U.S.C. § 7521(a), while Section 209(a) broadly preempts state law regulating new motor vehicle emissions, *id.* § 7543(a). The Act provides only one limited exception from federal preemption. Under Section 209(b), EPA "shall … waive application of" preemption to California emissions standards if certain statutory criteria are met. *Id.* § 7543(b). Once California has a waiver, other states may follow: under Section 177, other states "may adopt and enforce" emissions standards for new motor vehicles that are "identical to the California standards for which a waiver has been granted," with certain conditions. *Id.* § 7507(1). During the Biden administration, California sought and received EPA waivers for several state emissions programs, including three state programs relevant to the current litigation. *See* 88 Fed. Reg. 20,688 (Apr. 6, 2023); 90 Fed. Reg. 642 (Jan. 6, 2025); 90 Fed. Reg. 643 (Jan. 6, 2025).

*First*, **Advanced Clean Cars II ("ACC II")** requires light-duty automakers to sell an annually increasing percentage share of electric vehicles (and so an annually decreasing percentage share of internal-combustion vehicles) starting in model year 2026. The required electric vehicle sales start at 35% of the fleet in model year 2026. By model year 2035, all cars and light trucks sold must be electric. Cal. Code Regs. tit. 13, § 1962.4.[2]

*Second*, **Advanced Clean Trucks ("ACT")** requires manufacturers of medium- and heavy-duty trucks to sell an annually increasing percentage share of electric vehicles starting in model year 2024. Sales of internal-combustion vehicles must be offset with "credits" generated by sales of electric trucks. The required offset increases annually, and varies by vehicle class. By 2035, ACT requires manufacturers to offset at least 55% of their Class 2b-3 sales (heavy-duty pickups), 75% of their Class 4-8 sales (from box trucks to semis), and 40% of their Class 7-8 (day and sleeper cab

///

---

[2] Up to 20% of the required electric vehicle sales may be plug-in hybrid electric vehicles. Cal. Code Regs. tit. 13, § 1962.4(e)(1)(C).

semis) with sales of electric trucks. *Id.* §§ 1963.1, 1963.2.[3]

*Third*, the **Omnibus Low NO$_x$ Program ("Omnibus Program")**, among other things, sets nitrogen oxides (NO$_x$) emissions standards for model year 2024 and later medium- and heavy-duty vehicles and engines so low that, in practice, manufacturers are incentivized to sell electric vehicles and engines to comply. *See id.* § 1956.8(a)(2)(C), (D).[4] Eleven other states and the District of Columbia have adopted one or more of these California programs.[5]

## II. Congress Repeals the EPA Waivers of Clean Air Act Preemption

EPA's waivers greenlighting California's programs spurred public outcry, focused, in part, on the potentially disastrous consequences for American consumers and the U.S. economy. Electric vehicles are far more expensive to manufacture (and so to purchase) than internal-combustion vehicles; their range is far shorter; and most of the country lacks sufficient infrastructure to charge them. As a result, many American consumers don't want to buy them. Indeed, automakers warned it would "take a miracle" for manufacturers to meet ACC II's light-duty vehicle standards, and that the program "will depress economic activity, increase costs and limit vehicle choice."[6] Trucking associations issued similarly ominous warnings about the ACT and Omnibus requirements, explaining that those standards were "causing equipment costs to skyrocket for trucking companies," "threatening to upend the supply chain for consumers," and so risked

///

///

---

[3] In 2025, California amended ACT to ban sales of medium- and heavy-duty internal-combustion vehicles starting in model year 2036. *See* Cal. Code Regs. tit. 13, §§ 1963.6(a), 2016. That amendment has not been considered by EPA, and is therefore preempted by the Clean Air Act. 42 U.S.C. § 7543(a).

[4] *See* CARB, *Omnibus Program Initial Statement of Reasons*, at I-36 (June 23, 2020), https://perma.cc/32CP-SSV8 (aspects of the Program "are intended to provide incentives for manufacturers to make more heavy-duty [zero-emission vehicles]").

[5] *See* CARB, *States That Have Adopted California's Vehicle Regulations* (last updated Apr. 2025), https://perma.cc/AG5L-GZFN.

[6] All. for Auto. Innovation, *It's Gonna Take a Miracle: California And States With EV Sales Requirements* 3, 8 (Dec. 11, 2024), https://perma.cc/97Y3-Q869.

1    "enormous inflationary pressure on the economy."[7]

2    In response to the outcry, Congress and the President acted. After the Trump EPA transmitted

3    the waivers to Congress, bipartisan majorities of the House and Senate passed resolutions of

4    disapproval for the three waivers under the CRA, 5 U.S.C. §§ 801–808. On June 12, President

5    Trump signed those resolutions into law. Pub. L. No. 119-15, 139 Stat. 65 (2025); Pub. L. No. 119-

6    16, 139 Stat. 66 (2025); Pub. L. No. 119-17, 139 Stat. 67 (2025). As a result of the resolutions, the

7    waivers are repealed: they "shall not take effect (or continue)" and "may not be reissued in

8    substantially the same form … unless … specifically authorized by" a later-enacted law. 5 U.S.C.

9    § 801(b)(2). Without a valid waiver in place, Plaintiffs now may not "adopt or attempt to enforce"

10   any ACC II, ACT, or Omnibus Program standard. 42 U.S.C. § 7543(a).

11   Within hours of the President's signing, Plaintiffs filed this suit. Plaintiffs raise a grab bag of

12   statutory and constitutional claims. They generally allege that defects in the process by which

13   Congress considered and passed the resolutions, including EPA's decision to submit the waivers

14   to Congress under the CRA, render the resolutions invalid. Complaint at 27–39, ¶¶ 114–188.

15   Plaintiffs ultimately ask this Court, among other things, to declare the resolutions unlawful, to

16   declare the waivers "valid and in effect," and to enjoin EPA "from interfering with Plaintiffs'

17   enforcement" of the ACC II, ACT, and Omnibus Program standards. *Id.* at 39–40.

18   **III. Movants Have Substantial Interests in the Validity of the Resolutions.**

19   Movants are associations whose members are among those harmed by EPA's waivers and by

20   the California emissions standards those waivers allow. Movants thus have a substantial interest in

21   defending the validity of the resolutions, which repeal those waivers and thereby subject

22   California's standards to federal preemption.

23   Movant American Free Enterprise Chamber of Commerce ("AmFree") is a membership

24   association that represents entrepreneurs and businesses across all sectors and all states. AmFree's

25   members are vitally interested in maintaining free, fair, and open markets, and AmFree serves its

26   _____

27   [7] Letter from Am. Trucking Ass'ns to House and Senate Republican Leaders (Apr. 1, 2025),
28   https://perma.cc/6KRW-9TZW.

members by fighting against burdensome regulations and special-interest policies that threaten these markets and, consequently, threaten our nation's economic prosperity. *See* Ex. A, ¶ 4 (Collins Declaration).

AmFree's members are harmed by EPA's waivers, and by the California emissions standards allowed by those waivers, in various ways. *Id.* ¶¶ 10–18. Some AmFree members produce and sell ethanol, the second-largest component of automobile gasoline. ACC II, ACT, and the Omnibus Program mandate or incentivize the sale of electric vehicles, and so decrease the demand for gasoline, including for AmFree members' ethanol. *Id.* ¶¶ 15–17; Ex. B (Couser Declaration).

Other AmFree members operate, sell, or lease light-duty vehicles that are subject to ACC II, as well as heavy-duty trucks and vehicles that are subject to ACT and the Omnibus Program. In many cases, there are no suitable electric vehicles that meet the needs of these members or their customers, and so these members will continue to purchase internal-combustion versions. By artificially constraining the supply of internal-combustion vehicles, ACC II, ACT, and the Omnibus Program drive up the cost to purchase these vehicles, which AmFree's members cannot pass on entirely to their customers. Even if costs could be passed on, higher customer pricing would reduce the amount of business that these members' conduct. Ex. A, ¶¶ 11–13. Ex. C (DeMartini Declaration).

Moreover, even if there were electric vehicles that met members' needs, AmFree's members would incur substantial additional costs to operate, sell, or lease them. Electric vehicles are substantially more expensive to purchase than internal-combustion vehicles and have uncertain residual values, significantly increasing capital costs. The lack of a nationwide public charging network means that many members would need to install charging infrastructure at their facilities, which can cost more than $100,000 per charger, excluding costs to maintain those facilities. And members would need to overhaul their vehicle maintenance and repair operations to accommodate the unique needs and safety risks of electric vehicles, including training or hiring staff with specialized skills and retrofitting service areas to guard against the serious electrocution and fire risks posed by electric vehicles. All of these increase members' costs to provide their services or products, harming them economically. Ex. A, ¶ 14.

Members of Movants Illinois Corn Growers Association, Indiana Corn Growers Association, Iowa Corn Growers Association, Kansas Corn Growers Association, Kentucky Corn Growers Association, Michigan Corn Growers Association, Missouri Corn Growers Association, Nebraska Corn Growers Association, Tennessee Corn Growers Association, Texas Corn Producers, Wisconsin Corn Growers Association, and National Corn Growers Association ("Corn Growers Associations") are similarly harmed by EPA's waivers and California's emissions standards. The Corn Growers Associations represent farmers throughout their states and the nation who grow and sell corn crops, including for ethanol production. Because ACC II, ACT, and the Omnibus program reduce demand for automobile gasoline and ethanol, they also reduce demand for corn, harming the Corn Growers Associations' members. And because ethanol is a primary use of U.S.-grown corn, lower ethanol production leads to lower corn prices, even harming those members who sell corn for other uses. *See* Ex. D (Weinzierl Declaration); Ex. E (Roe Declaration); Ex. F (Andrews Declaration); Ex. G (Schad Declaration); Ex. H (Howard Declaration); *see also Diamond Alt. Energy*, 145 S. Ct. at 2135 (holding that California program that "decrease[s] … purchases of gasoline and other liquid fuels … hurts the[] bottom line" of parties in the liquid fuel supply chain).

Because Movants' members are harmed by California's standards, they have long and actively opposed such state programs and fought to ensure those programs remain federally preempted. Some Corn Growers Associations challenged the Biden EPA's decision to reinstate a waiver for an earlier California electric vehicle mandate, Advanced Clean Cars I ("ACC I"), taking the case all the way to the Supreme Court. *See Diamond Alternative Energy*, 145 S. Ct. 2121. Some Corn Growers Associations explained in comments submitted to EPA that, for similar reasons, ACC II does not satisfy the statutory criteria for a waiver specified in Section 209(b), 42 U.S.C. § 7543(b), and EPA otherwise lacks authority to issue a waiver. *See* Ill. Corn Growers Ass'n et al., *Comment on Application for a Clean Air Act Waiver*, EPA-HQ-OAR-2023-0292-0185 (Feb. 27, 2024), https://perma.cc/K5KX-28KD. After EPA issued the ACC II and Omnibus waivers in January 2025, AmFree and other parties petitioned for review. *Am. Free Enter. Chamber of Com. v. EPA*, No. 25-106 (9th Cir.) (ACC II); *Am. Free Enter. Chamber of Com. v. EPA*, No. 25-89 (9th ///

1  Cir.) (Omnibus).[8] Movants also supported the repeal of the waivers through the CRA.[9]

2      AmFree has also separately challenged a collusive agreement between the California Air

3  Resources Board ("CARB") and the major heavy-duty truck and engine manufacturers and their

4  trade association, in which the manufacturers agreed to comply with the ACT and Omnibus

5  standards, even if California has no lawful authority to enforce them. AmFree argues that the

6  agreement is a prohibited "attempt to enforce" preempted state emissions standards, in part

7  because the resolutions repealed EPA's waivers. 42 U.S.C. § 7543(a); *see Am. Free Enter. Chamber*

8  *of Com. v. Engine Mfrs. Ass'n.*, No. 3:24-cv-50504 (N.D. Ill.), ECF No. 103 ¶¶ 111–13 (challenging

9  Clean Truck Partnership agreement).

10      The validity of the resolutions, which Plaintiffs challenge, is thus of crucial practical

11  importance to Movants, as that validity (i) controls whether their members will face harm from

12  Plaintiffs' enforcement of the ACC II, ACT, and Omnibus standards; and (ii) may bear on

13  Movants' pending lawsuits challenging the ACC II and Omnibus waivers, and the agreement

14  between CARB and the truck manufacturers.

15                           **STANDARD FOR INTERVENTION**

16      Under Rule 24(a)(2), a party may intervene by right if it "claims an interest relating to the

17  property or transaction that is the subject of the action, and is so situated that disposing of the

18  action may as a practical matter impair or impede the movant's ability to protect its interest, unless

19  existing parties adequately represent that interest." The Ninth Circuit applies a four-prong test to

20  assess intervention by right: "(1) the intervention application is timely; (2) the applicant has a

21  significant protectable interest relating to the property or transaction that is the subject of the

22  action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's

23  _____

24  [8] After EPA issued the ACT waiver in April 2023, other parties (but not including Movants)
25  petitioned for review of that waiver. *W. States Trucking Ass'n Inc. v. EPA*, No. 23-1143 and
   consolidated cases (D.C. Cir.).

26  [9] *See, e.g.*, Ill. Corn Growers Ass'n, *California EV Mandates, Clean Air Act, and a Congressional
27  Review Act Vote* (May 20, 2025), https://perma.cc/85C8-DC47; AmFree, *AmFree Heralds
   Trump's EV Mandate Repeal, Vows to Fight California's Legal Challenge* (June 13, 2025),
28  https://perma.cc/PZD3-JNVV.

ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (citation omitted). Courts are "required to accept as true the non-conclusory allegations made in support of an intervention motion" and they should be "guided primarily by practical considerations, not technical distinctions." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818–19 (9th Cir. 2001) (cleaned up).

Under Rule 24(b)(1)(B), a party "who … has a claim or defense that shares with the main action a common question of law or fact" may intervene with the Court's permission. Permissive intervention "requires (1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011) (quoting *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992)). However, "the independent jurisdictional grounds requirement does not apply … in federal-question cases when the proposed intervenor is not raising new claims." *Id.* at 844. Even if these requirements are met, the Court may nonetheless deny the motion if permissive intervention "will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Generally, courts should "construe[] [Rule 24] broadly in favor of proposed intervenors," adopting a "liberal policy in favor of intervention [that] serves both efficient resolution of issues and broadened access to the courts" that "allow[s] parties with a *practical* interest in the outcome of a particular case to intervene." *United States v. City of Los Angeles*, 288 F.3d 391, 397–98 (9th Cir. 2002) (citations omitted).

## ARGUMENT

This Court should grant intervention because Movants meet the requirements for intervention by right under Rule 24(a)(2) and for permissive intervention under Rule 24(b)(1)(B).

### I. Movants Are Entitled To Intervene Under Rule 24(a)(2)

Movants easily satisfy all four requirements to intervene as of right.

///

///

## A.  Intervention Is Timely

"In determining timeliness," courts consider "three factors—the stage of the proceedings, the prejudice to existing parties, and the length of and reason for the delay." *LULAC v. Wilson*, 131 F.3d 1297, 1308 (9th Cir. 1997). All three factors support timeliness here.

Movants have sought intervention at the earliest stage of the proceedings, "before any hearings or rulings on substantive matters," and well within the timeframe the Ninth Circuit has previously held is appropriate for intervention. *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995) (allowing intervention four months after the complaint was filed and after plaintiff had moved for preliminary injunction); *see also City of Los Angeles*, 288 F.3d at 398 (timeliness easily satisfied where "motion was filed only approximately one and half months after the suit was filed"); *Citizens for Balanced Use*, 647 F.3d at 897 (motion timely when filed "less than three months after the complaint was filed and less than two weeks after [defendant] filed its answer"). The time for Defendants to respond to the complaint has not expired, Fed. R. Civ. P. 12(a)(3), and Defendants have not yet filed a responsive pleading. No substantive proceedings have taken place, and the initial Case Management Conference is still more than a month away. *See* ECF No. 8 (setting Conference for September 16, 2025). This posture favors intervention.

For similar reasons, intervention will not prejudice the parties. There is no "complex settlement" that could be "seriously disrupt[ed]," *United States ex rel. McGough v. Covington Technols. Co.*, 967 F.2d 1391, 1395 (9th Cir. 1992), and Plaintiffs will have an opportunity to consider and respond to any arguments that Movants raise. "This lack of prejudice weighs heavily in favor of timeliness." *Kalbers v. U.S. Dep't of Justice*, 22 F.4th 816, 826 (9th Cir. 2021).

Finally, there has been no delay. Plaintiffs filed their suit just over seven weeks ago. Movants acted promptly to assess Plaintiffs' complaint, evaluate the need for intervention, and prepare the required motions and pleadings. The motion is timely.

## B.  Movants Have a Protectable Interest That May Be Practically Impeded

The second and third prongs of the Ninth Circuit's test require that a party have "a significantly protectable interest" related to "the subject of the action" and that the "disposition of the action may as a practical matter impair or impede [the party's] ability to protect that

interest." *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (en banc) (cleaned up). "Since these elements are often intertwined, it is proper to consider them together." *Sigwart v. U.S. Bank Nat. Ass'n*, 2014 WL 2451566, at *2 n.6 (D. Haw. May 30, 2014) (citing *Greene v. United States*, 996 F.2d 973 (9th Cir. 1993), which analyzed interest and impairment elements together). A party "has a significantly protectable interest" for purposes of intervention "if the interest is protected by law and there is a relationship between the legally protected interest and the plaintiff's claims." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004). In other words, a party "has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." *Wilderness Soc'y*, 630 F.3d at 1179 (quoting *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006)). Movants have multiple interests that may be practically impaired by this litigation and that justify intervention by right under Rule 24(a)(2).

*First*, Movants have a "significant protectable interest" in shielding their members from the harm that they would suffer were the resolutions invalidated and EPA's unlawful waivers given effect. *See Citizens for Balanced Use*, 647 F.3d at 897 (significant protectable interest in shielding members from decreased enjoyment of forest that would result from Forest Service order allowing motor vehicle use). As explained above, EPA's unlawful waivers, and the preempted California standards that the waivers allowed, harm Movants' members in multiple ways, including by predictably and substantially harming their economic interests. *See supra* Section III (pp. 5–8); *Alisal Water Corp.*, 370 F.3d at 919 ("a non-speculative, economic interest may be sufficient to support a right of intervention"). Movants' members have a legally protectable right not to suffer the effects of unlawful EPA actions. *See* 42 U.S.C. § 7607(b) (providing for judicial review of EPA actions). They also have a right not to be injured by preempted state standards. 42 U.S.C. § 7543(a); *cf. Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 108 (1989). If Plaintiffs prevail and the Court grants the relief that they seek, EPA's unlawful waivers would be given full effect and Plaintiffs would be permitted to enforce their preempted standards, impairing Movants' ability to shield their members from the economic harm and operational difficulties that result from those standards. *See Diamond Alternative Energy*, 145 S. Ct. at 2135. That is sufficient for

intervention under Rule 24(a)(2). *Sw. Ctr. for Biological Diversity*, 268 F.3d at 818 (party "demonstrates a significantly protectable interest when the injunctive relief sought by the plaintiffs will have direct, immediate, and harmful effects upon a third party's legally protectable interests" (cleaned up)); *cf. Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1189–90 (9th Cir. 1998) (permitting intervention by group whose members may be economically harmed by preemption suit).

*Second*, Movants are "entitled as a matter of right to intervene in an action challenging the legality of a measure [they] have supported." *Idaho Farm Bureau Fed'n.*, 58 F.3d at 1397. Here, Movants supported the resolutions and challenged EPA's waivers, which are the subject of Plaintiffs' suit. Some Corn Growers Associations "participated in the administrative process" leading to the ACC II waiver by submitting detailed comments explaining why that waiver is unlawful. *Id.* at 1397. AmFree "even filed a suit" to invalidate the ACC II and Omnibus waivers. *Id.* at 1398. The invalidation of the waivers, achieved by the resolutions, is "a cause which [both] organization[s] had championed." *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527 (9th Cir. 1983). Movants thus indisputably have an "interest in the continued vitality" of the resolutions. *Idaho v. Freeman*, 625 F.2d 886, 887 (9th Cir. 1980). Given Movants' long-standing, active efforts to invalidate the waivers at the center of Plaintiffs' claims, this Court should have no "difficulty determining that the [Movants have] an interest in the subject of the suit." *Sagebrush Rebellion,* 713 F.2d at 527. And, when an organization seeks intervention to defend the legality of measures that it actively supported or opposed, there is "no question that disposition of [the] suit might, as a practical matter, impair the ability of the organization to protect its interest." *Id.*

*Third*, AmFree has a significantly protectable legal interest because the validity of the resolutions may bear on other pending lawsuits in which AmFree is a plaintiff or petitioner. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982) (holding that "a cause of action is a species of property protected by the Fourteenth Amendment's Due Process Clause" and citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)). AmFree has filed petitions in this Circuit challenging EPA's waivers for the ACC II and Omnibus Programs. The validity of the resolutions, which repealed those waivers, may be dispositive in those challenges or render further

litigation unnecessary. At the least, the resolutions are relevant to the enforceability of the challenged waivers, the central issue raised by AmFree's challenges. AmFree's suits, however, were held in abeyance as EPA reconsidered the waivers.[10] There is, therefore, a reasonable chance that the validity of those resolutions may be resolved through Plaintiffs' suit first, creating Ninth Circuit precedent that could impede AmFree's ability to successfully prosecute its case. *United States v. Oregon*, 839 F.2d 635, 638 (9th Cir. 1988) ("factual and legal determinations ... when upheld by an appellate ruling will have a persuasive *stare decisis* effect in any parallel or subsequent litigation" and "is an important consideration in determining the extent to which an applicant's interest may be impaired."); *see also United States v. Stringfellow*, 783 F.2d 821, 826 (9th Cir. 1986) ("The prospect of stare decisis may ... supply the requisite practical impairment warranting intervention as of right"), *vacated on other grounds* 480 U.S. 370 (1987).

Disposition of Plaintiffs' claims similarly may bear on AmFree's lawsuit in the District Court for the Northern District of Illinois challenging the agreement between CARB and truck manufacturers. That lawsuit alleges that the agreement's "attempt to enforce" ACT and Omnibus standards is prohibited by Clean Air Act Section 209(a), 42 U.S.C. § 7543(a), in part because "[a]ll of the regulations and related certification and compliance requirements enforced through the Agreement now lack a valid waiver" as a result of the resolutions. *Am. Free Enter. Chamber of Com.,* No. 3:24-cv-50504 (N.D. Ill.), ECF No. 103, at ¶ 113. The validity of the resolutions is thus of central importance. Although the Northern District of Illinois would not be bound by Ninth Circuit precedent, it would be bound by a Supreme Court decision in this case, which at this juncture cannot be foreclosed. Denying intervention here would thus leave AmFree with "no voice in the case" that makes a legal determination critical to its ongoing litigation, impairing AmFree's ability to successfully litigate. *Smith v. Pangilinan*, 651 F.2d 1320, 1325 (9th Cir. 1981).

### C.  Federal Defendants May Not Adequately Represent Movants' Interests

Finally, the fourth prong of the Ninth Circuit's test "is satisfied if the [party] shows that

---

[10] *See Am. Free Enter. Chamber of Com.,* No. 25-106 (9th Cir.), ECF No. 25; *Am. Free Enter. Chamber of Com.,* No. 25-89 (9th Cir.), ECF No. 20.

representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n. 10 (1972); *Citizens for Balanced Use*, 647 F.3d at 898 (same). In assessing adequacy of representation, courts consider "(1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect." *Citizens for Balanced Use*, 647 F.3d at 898 (citation omitted). Where a private-sector party seeks to join government defendants, it is sufficient to show that the "interests of government and the private sector may diverge" during the course of litigation. *Sw. Ctr. for Biological Diversity*, 268 F.3d at 823.

That divergence is possible here. Although federal Defendants and Movants presently share a common interest in defending the validity of the resolutions, the federal government has a history of reversing its position in cases regarding EPA waivers. *See, e.g.*, *California v. Wheeler*, No. 19-1239 and consolidated cases (D.C. Cir.) (challenge to withdrawal of ACC I waiver); *see also Diamond Alt. Energy*, 145 S. Ct. at 2130–31 (explaining that the Bush EPA denied the ACC I waiver in 2008, the Obama EPA granted it in 2013, the Trump EPA rescinded it in 2019, and the Biden EPA reinstated it in 2022). Indeed, it is this persistent changing of positions that has ensured that no litigation challenging these waivers has ever reached the merits of the underlying statutory question whether they comply with the Clean Air Act. It is thus far from theoretical that federal Defendants could reverse position during the course of this litigation—for example, after a change in presidential administration—and decline to appeal (or dismiss an appeal of) an adverse decision. Intervention is thus necessary to ensure that Movants' interests are protected through the full course of the litigation.

Moreover, even now, Movants' and federal Defendants' interests are not entirely unified, which may give rise to divergent litigation choices. The federal Defendants' "obligation is to represent the interests of the American people," while Movants' "concern" is for businesses and corn farmers harmed by EPA's waivers and California's standards, a much narrower constituency. *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003). Although "[t]here may be

some overlap" in their considerations, federal Defendants need not give Movants' concerns "the kind of primacy that [Movants] would give them." *Id.* For example, Movants' ultimate interest is ensuring that Plaintiffs may not enforce the ACC II, ACT, and Omnibus programs, whatever the grounds of decision. In contrast, the federal Defendants' strongest interest is likely to persuade the Court that the challenged actions are not justiciable, which would set a powerful precedent for future litigation by making similar government actions more difficult to challenge. These different objectives may cause Defendants to forego meritorious arguments that Movants would vigorously pursue, for example, arguing affirmatively that the waivers are "rules" properly subject to the CRA. Federal Defendants thus will not "undoubtedly make all [the] … arguments" that Movants are "capable and willing to make." *Citizens for Balanced Use*, 647 F.3d at 898 (citation omitted). And by making those arguments, Movants would "offer … necessary elements to the proceedings" that federal Defendants may "neglect." *Id.* (citation omitted).

Movants need not "anticipate specific differences in trial strategy." *Sw. Ctr. for Biological Diversity*, 268 F.3d at 823. The possibility of a difference is all that Rule 24(a)(2) requires. *Trbovich*, 404 U.S. at 538 n. 10; *Sagebrush Rebellion*, 713 F.2d at 528 ("This court has consistently followed *Trbovich*"). Because the interests of Movants' members are "potentially more narrow and parochial than the interests of the public at large," Movants have met their minimal burden to "demonstrate[] that the representation of its interests by [federal Defendants] may … be[] inadequate." *Californians for Safe & Competitive Dump Truck Transp.*, 152 F.3d at 1190.

\* \* \*

Because Movants satisfy the requirements of Rule 24(a)(2), they are entitled to intervene as of right.

## II. Alternatively, This Court Should Grant Permissive Intervention Under Rule 24(b)(1)(B)

Movants also easily satisfy the requirements for permissive intervention, which the Court should grant because intervention will not create undue delay or prejudice.

### A. No Independent Jurisdictional Ground Is Required and Motion Is Timely

Because this is a federal-question case, *see* Complaint at 6, ¶ 29, and Movants are "not raising new claims," the requirement for "independent jurisdictional grounds … does not apply,"

1    *Freedom from Religion Found.*, 644 F.3d at 844. Movants thus are "not required to make any further

2    [jurisdictional] showing." *Id.* Moreover, this motion is timely for the reasons given in Section I.A

3    above (p. 10). *LULAC*, 131 F.3d at 1308 ("In determining timeliness under Rule 24(b)(2), [a court]

4    consider[s] precisely the same three factors … [it] consider[s] in determining timeliness under

5    Rule 24(a)(2)").

6         **B.  Movants' Defense Shares Common Questions of Law and Fact**

7         "Under Rule 24(b) the question … is whether the applicants to intervene assert a claim or

8    defense in common with the main action." *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1110

9    (9th Cir. 2002) *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d 1173. Movants easily satisfy

10   this requirement.

11        Movants "intend to defend the [resolutions] against each of the claims raised in plaintiffs'

12   complaint[]," and so their defenses indisputably "share common questions of law with the main

13   action." *Levin Richmond Terminal Corp. v. City of Richmond*, 482 F. Supp. 3d 944, 968 (N.D. Cal.

14   2020). Movants' Proposed Motion to Dismiss argues that the Court lacks jurisdiction over

15   Plaintiffs' claims and that Plaintiffs fail to state a constitutional claim, raising common questions

16   of law regarding, among other things, the scope of the CRA's prohibition on judicial review,

17   Plaintiffs' standing to challenge EPA's actions, the authority of this Court to second-guess

18   congressional procedures, and the applicability of various constitutional doctrines to Plaintiffs'

19   factual claims. *See* Ex. I, at 10–25 (Proposed Motion to Dismiss). Because Movants' "interest in

20   this action arises from the same set of facts as Plaintiff[s'] claims," their defenses also

21   "undisputed[ly]" share common questions of fact. *Nooksack Indian Tribe v. Zinke*, 321 F.R.D. 377,

22   383 (W.D. Wash. 2017).

23        **C.  Intervention Will Not Cause Undue Delay or Prejudice Existing Parties**

24        Because Movants "satisf[y] the literal requirements of Rule 24(b)," it is "within the district

25   court's discretion to decide whether to permit them to participate." *Kootenai Tribe of Idaho*, 313

26   F.3d at 1110. The Court should exercise its discretion to grant intervention here.

27        Movants' participation will not unduly delay litigation. Movants raise no new claims, have

28   timely moved for intervention at a preliminary stage, and intend to coordinate with other

1    Defendants to effectuate a just and efficient resolution to the case. Movants' participation also will

2    not prejudice any existing party. Plaintiffs will have opportunity to fully respond to Movants'

3    arguments. And courts regularly grant permissive intervention where, as here, a private party

4    "asserts … a significant interest in defending [the] legality" of government action alongside

5    government defendants. *N. Plains Res. Council v. U.S. Army Corps of Eng'rs*, 2019 WL 5818061, at

6    *2 (D. Mont. Nov. 7, 2019); *Am. Free Enter. Chamber of Com. v. EPA*, No. 1:25-cv-67, ECF No. 18

7    (W.D. Mich. Mar. 27, 2025).

8    Moreover, the "magnitude of this case"—challenging the validity of a duly-enacted federal

9    law—favors intervention to ensure all relevant arguments are fully aired. *Kootenai Tribe of Idaho*,

10   313 F.3d at 1111. Movants have extensive experience and familiarity with the facts and law

11   surrounding EPA's waivers and the CRA resolutions, and respectfully submit that this Court

12   would benefit from Movants' participation.

13                                              **CONCLUSION**

14   For these reasons, the Court should grant the motion to intervene of right by Movants

15   American Free Enterprise Chamber of Commerce, Illinois Corn Growers Association, Indiana

16   Corn Growers Association, Iowa Corn Growers Association, Kansas Corn Growers Association,

17   Kentucky Corn Growers Association, Michigan Corn Growers Association, Missouri Corn

18   Growers Association, Nebraska Corn Growers Association, Tennessee Corn Growers Association,

19   Texas Corn Producers, Wisconsin Corn Growers Association, and National Corn Growers

20   Association. In the alternative, this Court should grant Movants permissive intervention.

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

Dated: August 4, 2025

Respectfully submitted,

*/s/ Eric Grant*

Michael Buschbacher
James R. Conde
James R. Wedeking
Laura B. Ruppalt
Boyden Gray PLLC

Eric Grant
John B. Thomas
Hicks Thomas LLP

Counsel for Proposed Intervenor-Defendants
American Free Enterprise Chamber of
Commerce, Illinois Corn Growers Association,
Indiana Corn Growers Association, Iowa Corn
Growers Association, Kansas Corn Growers
Association, Kentucky Corn Growers
Association, Michigan Corn Growers
Association, Missouri Corn Growers
Association, Nebraska Corn Growers
Association, Tennessee Corn Growers
Association, Texas Corn Producers, Wisconsin
Corn Growers Association, and National Corn
Growers Association.

**LIST OF EXHIBITS**

A.  Declaration of Gentry Collins

B.  Declaration of Bill Couser

C.  Declaration of Tim DeMartini

D.  Declaration of Rodney M. Weinzierl

E.  Declaration of Josh Roe

F.  Declaration of Adam Andrews

G.  Declaration of Bradley Schad

H.  Declaration of Lane Howard

I.  Proposed Motion to Dismiss

J.  Proposed Answer

K.  Proposed Order