Ex. A

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

**STATE OF CALIFORNIA, STATE OF COLORADO, STATE OF DELAWARE, COMMONWEALTH OF MASSACHUSETTS, STATE OF NEW JERSEY, STATE OF NEW MEXICO, STATE OF NEW YORK, STATE OF OREGON, STATE OF RHODE ISLAND, STATE OF VERMONT,** and **STATE OF WASHINGTON,**

              Plaintiffs,

    v.

**UNITED STATES OF AMERICA, U.S. ENVIRONMENTAL PROTECTION AGENCY, LEE ZELDIN,** in his official capacity as Administrator of the U.S. Environmental Protection Agency, and **DONALD J. TRUMP,** in his official capacity as President of the United States,

              Defendants.

No. 4:25-cv-04966-HSG

**DECLARATION OF GENTRY COLLINS IN SUPPORT OF AMERICAN FREE ENTERPRISE CHAMBER OF COMMERCE'S MOTION TO INTERVENE**

I, Gentry Collins, declare as follows:

1.    I make this declaration in support of American Free Enterprise Chamber of Commerce's ("AmFree's") Motion to Intervene, to which this declaration is attached. I make the statements of fact in this declaration of my own personal knowledge. If called as a witness in this action, I could and would testify competently to the facts set forth herein.

2.    I am the Chief Executive Officer of AmFree, a 501(c)(6) organization headquartered in Iowa.

3.    I am familiar with all aspects of AmFree's mission and work.

4.    AmFree is a membership association that represents hard-working entrepreneurs and businesses across all sectors and all states. AmFree's members are vitally interested in maintaining the free, fair, and open markets that have driven progress and enabled prosperity more effectively than all other economic systems combined. AmFree

serves its members by fighting against burdensome regulations, counterproductive tax-policies, and special-interest deals that threaten these markets and our nation's economic future and harm free, open, and competitive markets. AmFree's members include companies that have a vital interest in ensuring that the duly-enacted resolutions challenged by California and other states in this suit are given full legal effect.

5.    The challenged resolutions concern waivers granted by the U.S. Environmental Protection Agency ("EPA") to California for three state programs that govern emissions from new motor vehicles and engines. These programs are generally designed to increase the share of new electric vehicles sold, and so necessarily decrease the share of new internal-combustion vehicles sold.

6.    California's Advanced Clean Cars II ("ACC II") program requires manufacturers to sell an annually increasing percentage share of electric cars and light trucks (and so an annually decreasing percentage share of internal-combustion vehicles) starting in model year 2026. The required electric vehicle sales start at 35% of the fleet in model year 2026 and increase to 100% by model year 2035. As a result, all cars and light trucks sold in model years 2035 and beyond must be electric, which can include some plug-in electric hybrid vehicles. Cal. Code Regs. tit. 13, § 1962.4. Eleven other states have adopted California's ACC II standards. *See* California Air Resources Board ("CARB"), *States That Have Adopted California's Vehicle Regulations*, https://perma.cc/AG5L-GZFN (June 26, 2025).

7.    California's Advanced Clean Trucks ("ACT") program aims "to accelerate the market for on-road zero-emission vehicles," i.e. electric vehicles, in the heavy-duty sector, that is, vehicles with a Gross Vehicle Weight Rating ("GVWR") greater than 8,500 lbs. Cal. Code Regs. tit. 13, § 1963(a), (b). Beginning with the 2024 model year, manufacturers must produce and sell an increasing number of electric heavy-duty vehicles (as a proportion of their sales) in California. *Id.* § 1963.1–1963.3. Manufacturers incur deficits based on their total heavy-duty vehicle sales, *id.* § 1963.1, and earn offsetting credits for each electric heavy-duty vehicle sold, *id.* § 1963.2. In lieu of generating credits by selling electric vehicles, a manufacturer can also meet its obligation (i.e., offset its deficit) by purchasing credits from a

competitor, *id.* § 1963.3. The share of electric heavy-duty vehicles that manufacturers must sell increases annually. *Id.* § 1963.1(b) tbl A-1. Beginning with the 2036 model year, manufacturers can no longer sell any heavy-duty internal-combustion engine vehicles. *Id.* § 2016; *see* CARB, *Resolution 24-5* at 8 (Nov. 6, 2024), https://perma.cc/QA6F-8GPL (amending ACT to adopt Cal. Code Regs. tit. 13, § 1963.6); CARB, *Appendix A-1 Proposed Regulation Order* at 16, https://perma.cc/5RDM-NPG3 (Dec. 23, 2024) (adopted § 1963.6 text incorporating § 2016). Ten other states have adopted California's ACT standards. *See* CARB, *States That Have Adopted California's Vehicle Regulations*, https://perma.cc/AG5L-GZFN (June 26, 2025).

8.    California's Heavy-Duty Engine and Vehicle Omnibus ("Omnibus") program, among other things, sets stringent nitrogen-oxide emissions standards for new heavy-duty engines. The regulation set nitrogen-oxide emissions standards "90 percent below current levels on existing certification cycles" and introduced new, "lower [nitrogen-oxide] standards on new certification cycles" for diesel engines. CARB, *Heavy-Duty Low NO$_x$*, https://perma.cc/7SGB-5BUM (Dec. 23, 2024). The Omnibus program also increases the stringency of particulate-matter emissions standards, and imposes a host of complex new testing and warranty requirements. *See, e.g.*, Cal. Code Regs. tit. 13, §§ 1956.8, 2036. I understand that the Omnibus standards are so low that, in practice, manufacturers must sell some electric vehicles and engines to comply. Nine other states have adopted California's Omnibus regulations. *See* CARB, *States That Have Adopted California's Vehicle Regulations*, https://perma.cc/AG5L-GZFN (June 26, 2025).

9.    Generally, state regulations related to new vehicle emissions are prohibited by the federal Clean Air Act. 42 U.S.C. § 7543(a). However, EPA granted California waivers of Clean Air Act preemption, which would have allowed California and other states to enforce the ACC II, ACT, and Omnibus programs. 88 Fed. Reg. 20,688 (Apr. 6, 2023); 90 Fed. Reg. 643 (Jan. 6, 2025); 90 Fed. Reg. 643 (Jan. 6, 2025); *see* 42 U.S.C. §§ 7507, 7543(b). On June 12, 2025, President Trump signed resolutions of disapproval that repeal those waivers. If California and other states succeed in their lawsuit challenging that repeal, they may be able

1  to enforce the ACC II, ACT, and Omnibus regulations.

2  　　　　10.　　AmFree members would be harmed by state enforcement of the ACC II, ACT,

3  and Omnibus regulations in several ways.

4  　　　　11.　　First, some AmFree members own and operate heavy-duty trucks that fall

5  within ACT and Omnibus's scope. These members largely operate using diesel- or gasoline-

6  powered internal-combustion trucks. Many have concluded that electric trucks are not a

7  commercially feasible option for their business needs, citing electric trucks' higher up-front

8  costs and more limited range (compared to internal-combustion trucks); their uncertain

9  maintenance, repair, and operation costs; and the limited nationwide charging infrastructure.

10  As a result, these members generally would prefer to purchase internal-combustion vehicles.

11  It is a basic economic principle that reduced supply leads to increased prices for consumers.

12  California's regulations require manufacturers to reduce supply of internal-combustion

13  trucks, and so will predictably increase the price of those trucks for these AmFree members.

14  These costs cannot realistically be passed entirely onto consumers, and so will harm these

15  members' profits.

16  　　　　12.　　Other AmFree members sell heavy-duty vehicles at retail. The reduced supply

17  of internal-combustion vehicles that results from California's ACT and Omnibus regulations

18  will similarly increase wholesale costs for these members. It will also limit the vehicle models

19  that these members can offer for sale, decreasing consumer choice and likely reducing sales.

20  Both increased wholesale prices and decreased retail sales harm these members' bottom line.

21  　　　　13.　　Other AmFree members lease light, medium, and heavy-duty vehicles to

22  consumers. The leases vary in duration, but can be as short as a few hours. These members'

23  customers typically do not want to lease electric vehicles, in part due to the sparse charging

24  infrastructure. Customers also generally do not want to lease electric heavy-duty vehicles

25  because those vehicles do not meet customer needs for towing capacity or range. As a result,

26  these members prefer to continue purchasing the internal-combustion vehicles their customers

27  want. California's ACC II, ACT, and Omnibus regulations will increase the price of the

28  vehicles these members' purchase.

Declaration of Gentry Collins in Support of AmFree's Motion to Intervene　　　　　　　　　　Page 4

14.     These AmFree members would incur significant additional costs even if they decided to purchase and operate electric vehicles. Because of the limited public charging infrastructure, they would have to install chargers at their facilities, which can cost more than one hundred thousand dollars per charger. Coordinating Research Council, Inc., *Assessing the Battery-Recharging and Hydrogen-Refueling Infrastructure Needs, Costs and Timelines Required to Support Regulatory Requirements for Light-, Medium-, and Heavy-Duty Zero-Emission Vehicles* (CRC Report No. SM-CR-9) 14, tbl. 2, https://perma.cc/2ZWE-BYV8 (June 26, 2025) (estimating 150 Watt DC fast charger cost of $142,200). They would also need to overhaul their maintenance and repair operations to adjust to the unique needs of electric vehicles, which will also be costly. All of these increased costs harm members' bottom lines, which is, in part, why they have largely concluded that switching to electric vehicles is not a feasible commercial option at this time.

15.     Other AmFree members are part of the automobile fuel supply chain and will also be harmed if ACC II, ACT, and Omnibus are enforced. For example, some AmFree members produce ethanol, a renewable fuel made from grain crops like corn and sorghum. Ethanol is the second-largest component of the fuel that powers the United States' vehicle fleet. Ethanol provides a low carbon source of energy and octane rating—a measure of a fuel's resistance to "knocking" in an engine—reducing vehicles' fuel usage, net greenhouse gas emissions, and the emission of toxic chemicals such as benzene. Across most of the United States, refiners add 10% ethanol to gasoline in part to raise gasoline's octane rating to a level suitable for use in most vehicles. U.S. DOE, *Ethanol Blends*, https://perma.cc/6D6X-G7KH (June 27, 2025).

16.     California's standards are designed to increase the share of electric vehicles on the road, and so decrease the share of gasoline-powered vehicles. Basic economic principles and common-sense dictate that the standards will therefore decrease demand for automobile gasoline. Indeed, California acknowledges its standards will reduce gasoline demand. CARB, *ACC II Initial Statement of Reasons* 169 (discussing the "decrease in gasoline sales" from ACC II), https://perma.cc/S8C5-HL4Y (June 27, 2025); CARB, *ACT Initial Statement of Reasons*

1    IX-34 (Oct. 22, 2019) ("Displacing gasoline and diesel with electricity and hydrogen [as

2    required by ACT] will decrease the total amount of gasoline and diesel dispensed in the

3    state… ."), https://perma.cc/M6ZJ-UPNF (June 27, 2025); *id.* at IX-40 (ACT is predicted to

4    cause "a relatively large decrease in demand for gasoline and diesel").

5          17.    California's standards will therefore also drive down demand for ethanol, since

6    U.S. production of fuel ethanol tracks demand for automobile fuels. *See* U.S. Energy

7    Information Administration, *Biofuels explained: Ethanol*, https://perma.cc/5L4C-GWG4

8    (June 27, 2025). ("Fuel ethanol production fell in 2020, mainly because lower overall gasoline

9    demand reduced the demand for ethanol blending into motor gasoline."). This demand

10    destruction harms the market for the ethanol produced by AmFree's members, resulting in

11    economic harm.

12          18.    AmFree therefore has an interest, on behalf of its members, in ensuring that the

13    resolutions repealing the waivers are given full legal effect so that California and other states

14    are prohibited from enforcing the ACC II, ACT, and Omnibus standards.

15

16          I declare under penalty of perjury under the laws of the United States of America that

17    the foregoing is true and correct.

18

19    Executed on   July 15  , 2025.

20                                    Gentry Collins

21

22

23

24

25

26

27

28