Bradley A. Benbrook (SBN 177786)
Stephen M. Duvernay (SBN 250957)
BENBROOK LAW GROUP, PC
701 University Avenue, Suite 106
Sacramento, CA 95825
Telephone: (916) 447-4900
Email: brad@benbrooklawgroup.com

Steven P. Lehotsky* (DC 992765)
Michael B. Schon* (DC 989893)
LEHOTSKY KELLER COHN LLP
200 Massachusetts Ave., NW, Suite 700
Washington, DC 20001
Telephone: (512) 693-8350
Email: steve@lkcfirm.com
Email: mike@lkcfirm.com

Katherine C. Yarger* (CO 40387)
LEHOTSKY KELLER COHN LLP
700 Colorado Blvd., #407
Denver, CO 80206
Email: katie@lkcfirm.com
Telephone: (512) 693-8350

*Attorneys for Proposed Intervenors American Fuel & Petrochemical Manufacturers, American Petroleum Institute, the National Association of Convenience Stores*

* Motion for admission *pro hac vice* forthcoming.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STATE OF CALIFORNIA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA; U.S. ENVIRONMENTAL PROTECTION AGENCY; LEE ZELDIN, in his official capacity as Administrator of the U.S. Environmental Protection Agency; and DONALD J. TRUMP, in his official capacity as President of the United States, <br><br> Defendants. | Case No. 4:25-cv-04966 <br><br> **NOTICE OF MOTION AND MOTION TO INTERVENE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** <br><br> Date: October 23, 2025 <br> Time: 2:00 p.m. PST <br> Judge: Hon. Haywood S. Gilliam, Jr. |

# TABLE OF CONTENTS

NOTICE ................................................................................................................................. 1

INTRODUCTION .................................................................................................................. 1

ISSUES TO BE DECIDED ................................................................................................... 3

STATEMENT OF THE FACTS ............................................................................................ 3

LEGAL STANDARD ............................................................................................................ 5

ARGUMENT ......................................................................................................................... 6

    A.    Proposed Intervenors have standing ............................................................... 6

    B.    Proposed Intervenors are entitled to intervene as of right ............................ 7

    C.    In the alternative, Proposed Intervenors should be granted permissive intervention ............................................................................... 9

CONCLUSION .................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AFPM v. O'Keeffe*,
  903 F.3d 903 (9th Cir. 2018) ............................................................................................... 7

*Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*,
  712 F.3d 1349 (9th Cir. 2013) ............................................................................................. 7

*Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*,
  54 F.4th 1078 (9th Cir. 2022) .............................................................................................. 2

*California v. Health & Hum. Servs.*,
  330 F.R.D. 248 (N.D. Cal. 2019) .................................................................................... 9–10

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
  647 F.3d 893 (9th Cir. 2011) ............................................................................................... 5

*Diamond Alternative Energy, LLC v. EPA*,
  606 U.S. __, 145 S. Ct. 2121 (2025) ......................................................................... 6, 7, 8, 9

*Forest Conservation Council v. U.S. Forest Serv.*,
  66 F.3d 1489 (9th Cir. 1995) ............................................................................................... 9

*Freedom from Religion Found., Inc. v. Geithner*,
  644 F.3d 836 (9th Cir. 2011) ............................................................................................. 10

*Hunt v. Wash. State Apple Advert. Comm'n*,
  432 U.S. 333 (1977) ............................................................................................................ 6

*Cal. ex rel. Lockyer v. United States*,
  450 F.3d 436 (9th Cir. 2006) ............................................................................................... 9

*McDonald v. E. J. Lavino Co.*,
  430 F.2d 1065 (5th Cir. 1970) ........................................................................................... 10

*S.W. Ctr. for Biological Diversity v. Berg*,
  268 F.3d 810 (9th Cir. 2001) ............................................................................................... 8

*Sierra Club v. EPA*,
  995 F.2d 1478 (9th Cir. 1993) ............................................................................................. 7

*United States v. Alisal Water Corp.*,
  370 F.3d 915 (9th Cir. 2004) ............................................................................................... 7

*Venegas v. Skaggs*,
  867 F.2d 527 (9th Cir. 1989) ............................................................................................. 10

*W. Watersheds Project v. Haaland*,
  22 F.4th 828 (9th Cir. 2022) ................................................................................................ 5

*Westchester Fire Ins. Co v. Mendez*,
  585 F.3d 1183 (9th Cir. 2009) ............................................................................................. 2

*Wilderness Soc'y v. U.S. Forest Serv.*,
    630 F.3d 1173 (9th Cir. 2011) ................................................................................. 7, 9

**Statutes, Regulations and Rules**

88 Fed. Reg. 20,688 (Apr. 6, 2023) ............................................................................... 1, 3

90 Fed. Reg. 642 (Jan. 6, 2025) .................................................................................... 1, 3

90 Fed. Reg. 643 (Jan. 6, 2025) .................................................................................... 1, 3

42 U.S.C. § 7543(a) ............................................................................................................ 3

5 U.S.C. §§ 801–808 ...................................................................................................... 1, 4

5 U.S.C. § 801 ..................................................................................................................... 4

5 U.S.C. § 804(3) ................................................................................................................ 4

Fed. R. Civ. P. 12(b) ........................................................................................................... 2

Fed. R. Civ. P. 24(a) ........................................................................................ 2, 3, 5, 7, 8

Fed. R. Civ. P. 24(b) ............................................................................................ 2, 3, 5, 9

Fed. R. Civ. P. 24(c) ........................................................................................................... 2

Pub. L. No. 119-15, 139 Stat. 65 (June 12, 2025) ........................................................... 4

Pub. L. No. 119-16, 139 Stat. 66 (June 12, 2025) ........................................................... 4

Pub. L. No. 119-17, 139 Stat. 67 (June 12, 2025) ........................................................... 4

**Other Authorities**

California Air Resources Board, *Response to Comments on the Draft
    Environmental Analysis Prepared for the Advanced Clean Cars II Program*
    (Aug. 24, 2022), https://perma.cc/BJS4-RSRV ................................................... 7–8

*The Congressional Review Act (CRA): A Brief Overview* 1, CRS Report IF10023
    (Aug. 29, 2024) ............................................................................................................ 4

Ellen Robo et al., *California Clean Trucks Program,* Env't Rsch. Mgmt. Grp.
    (2022), https://perma.cc/7BNU-XRKS .................................................................... 8

Statement by the President (June 12, 2025), https://perma.cc/7U7Y-6EFZ .................. 4

**NOTICE**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on October 23, 2025, at 2:00 p.m. PST, or as soon thereafter as this matter may be heard in the United States District Court for the Northern District of California, 1301 Clay Street, Courtroom 2 (4th Floor), Oakland, CA 94612, Proposed Intervenors American Fuel & Petrochemical Manufacturers, American Petroleum Institute, and the National Association of Convenience Stores will appear and present their motion to intervene in this case pursuant to Rule 24 of the Federal Rules of Civil Procedure.

Proposed Intervenors' Motion is based on this Notice of Motion and Motion and accompanying Memorandum of Points and Authorities, all other papers and pleadings filed in this action, and such other matters as may be presented to the Court before or at the time of the hearing.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

On May 22, 2025, Congress passed three resolutions disapproving EPA waivers that would have allowed California to enforce state regulations requiring the rapid transition to electric vehicles (EVs) by mandating EV sales and restricting the sale of traditional, internal combustion engine vehicles. California's regulations would have banned the sale of gasoline powered vehicles, conflicted with uniform federal rules, and enabled other states to adopt California's approach, thus impacting the nation's automobile and fuel markets.

The EPA rules that Congress voided would have had sweeping economic consequences. The California regulations would decrease nationwide fuel sales, harming fuel producers, refiners, distributors, and retailers. *See* 88 Fed. Reg. 20,688 (Apr. 6, 2023) (Advanced Clean Trucks); 90 Fed. Reg. 642 (Jan. 6, 2025) (Advanced Clean Cars II); 90 Fed. Reg. 643 (Jan. 6, 2025) ("Omnibus" Low NOx). Recognizing these consequences and the threat to national uniformity, Congress exercised its oversight authority under the Congressional Review Act (CRA), 5 U.S.C. §§ 801–808. President Trump signed the disapproval resolutions into law on June 12, 2025.

California and several allied states have filed this lawsuit in response. They ask this Court to overturn Congress's lawfully enacted disapproval resolutions and restore state-level regulations.

1

MOTION TO INTERVENE, NO. 4:25-cv-04966

In essence, California seeks to turn its own policy preferences into a de facto national vehicle standard, effectively making California the decisionmaker on vehicle emissions policy for the entire country.

Proposed Intervenors, American Fuel & Petrochemical Manufacturers (AFPM), American Petroleum Institute (API), and the National Association of Convenience Stores (NACS) have a direct interest in this case. Their members include fuel producers, refiners, distributors, and retailers operating throughout the United States. These companies rely on clear, consistent federal emissions standards when planning investments, designing and developing products, and managing nationwide supply chains. California's attempt to revive its EV mandates threatens to reduce liquid fuel sales, create conflicting regulatory requirements, force costly operational changes, undermine settled business expectations nationwide, disrupt investment planning, and introduce uncertainty into fuel markets.

No current party before this Court represents the fuel producers' interests or speaks for the workers, consumers, and communities that rely on these industries. Proposed Intervenors seek to intervene to defend Congress's resolutions and preserve the uniform national framework established by the Clean Air Act (CAA).[1]

This Court should grant intervention because all requirements under Federal Rule of Civil Procedure 24(a) are easily met. The motion is timely. Proposed Intervenors have significantly protectable interests, and the disposition of this case threatens to impair those interests. Moreover, the existing parties do not adequately represent the fuel producers' distinct economic and operational concerns. Finally, the requirements of 24(b) are also satisfied and serve as an additional ground to grant this motion. Accordingly, Proposed Intervenors respectfully request that the court grant their motion to intervene.[2]

---

[1] Plaintiffs have reserved their right to file an opposition or otherwise respond to the motion to intervene once it is filed. Defendants take no position on the motion.

[2] Proposed Intervenors have attached to this motion to intervene a motion to dismiss, which the Federal Rules of Civil Procedure treat as a responsive pleading. *See* Fed. R. Civ. P. 12(b), 24(c); *see also Westchester Fire Ins. Co v. Mendez*, 585 F.3d 1183, 1188 (9th Cir. 2009); *Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078, 1086 n.7 (9th Cir. 2022) (citing *Westchester*). Ex. E.

**ISSUES TO BE DECIDED**

1. Whether Proposed Intervenors are entitled to intervene as defendants in this action as of right under Fed. R. Civ. P. 24(a).

2. In the alternative, whether Proposed Intervenors should be granted leave to intervene permissively under Fed. R. Civ. P. 24(b).

**STATEMENT OF FACTS**

Decades ago, Congress established a uniform federal framework for regulating motor vehicle emissions under the CAA, reserving authority over new motor vehicle standards to the federal government. *See* 42 U.S.C. § 7543(a). The CAA is the nation's primary law for controlling air pollution. It charges EPA with setting national air quality standards to protect public health and welfare, *see id.* § 7409, and directs EPA to regulate emissions of pollutants from both stationary sources, like power plants and factories, and mobile sources, like cars and trucks. *See id.* §§ 7411, 7521. Congress explicitly directed EPA to set the standards for new vehicles and engines and prohibited states from creating their own, with one narrow exception. *See id.* §§ 7410, 7543(a). Congress allowed California, the only state with vehicle emissions standards that predated the CAA, to apply for a waiver to enforce its standards if certain conditions are met. *See id.* § 7543(b). And if California receives a waiver for its standards, other states may adopt the California standards in lieu of EPA's, but they may not create independent requirements. *Id.* § 7507.

Although California can request a waiver of this federal preemption, such waivers remain exceptions to the statutory rule and must be explicitly approved by EPA only when strict statutory criteria are met, such as when the regulations aim to address local air quality concerns. *Id.* § 7543(b). Between April 2023 and January 2025, EPA issued multiple waivers exempting California from federal preemption and permitting it to enforce sweeping new regulatory programs, including the Advanced Clean Trucks, Advanced Clean Cars II, and "Omnibus" Low NOx rules. *See* 88 Fed. Reg. 20,688 (Apr. 6, 2023); 90 Fed. Reg. 642 (Jan. 6, 2025); 90 Fed. Reg. 643 (Jan. 6, 2025).

These waivers, and the state regulations they authorize, establish de facto national standards. Several other states have adopted California's waivers, exporting California's policies beyond its

borders and coercing nationwide compliance in the absence of federal legislation or uniform federal rulemaking. *See* Dkt. 1, Compl. ¶ 4.

On May 22, 2025, Congress exercised its oversight authority under the CRA, 5 U.S.C. §§ 801–808. Congress enacted the CRA in 1996 to strengthen its control over federal agency rulemaking. The CRA empowers Congress to swiftly review and overturn new federal regulations by passing a joint resolution of disapproval. Once Congress passes such a resolution and the President signs it, the rule has no legal effect and cannot be "reissued in substantially the same form" without new statutory authority. *See id.* § 801(b)(2).

The CRA process is simple. Before new rules[3] can take effect, federal agencies must submit them to both Congress and the Government Accountability Office (GAO), creating a formal window for review. *See id.* § 801(a). Congress then has 60 days to pass a "joint resolution of disapproval" for the President's signature. *Id.* §§ 801(a)(3), (d), 802(a). This allows Congress to act swiftly to check regulations it views as inconsistent with public policy. If Congress takes no action, the rule goes into effect. *See id.* §§ 801(a)(3), (b)(1) (conditioning disapproval on affirmative action by Congress). But if it passes as a joint resolution and the President signs that resolution, then the rule "shall not take effect (or continue)," and "may not be reissued in substantially the same form . . . unless the reissued or new rule is specifically authorized by a law enacted after the date of the joint resolution disapproving the original rule." *Id.* § 801(b)(1)–(2).

Both chambers adopted joint resolutions disapproving EPA's waiver decisions. The President signed the resolutions on June 12, 2025. *See* Pub. L. No. 119-15, 139 Stat. 65 (June 12, 2025); Pub. L. No. 119-16, 139 Stat. 66 (June 12, 2025); Pub. L. No. 119-17, 139 Stat 67 (June 12, 2025); *see also* Statement by the President (June 12, 2025), https://perma.cc/7U7Y-6EFZ. These resolutions thus reflect Congress's duly enacted determination to disallow EPA's actions in this instance.

---

[3] The CRA "applies to final rules, including major rules, non-major rules, and interim final rules." Congressional Research Service (CRS), *The Congressional Review Act (CRA): A Brief Overview* 1, CRS Report IF10023 (Aug. 29, 2024); *see* 5 U.S.C. § 804(3).

Plaintiffs, a group of states led by California, filed this lawsuit and now seek to enjoin the federal government from giving effect to these fully enacted resolutions. *See* Compl. *passim*. Plaintiffs allege that EPA, Congress, and the President acted in excess or contravention of their authority and violated several statutes and constitutional provisions—EPA in submitting the waiver rules to Congress under the CRA; Congress in treating the waivers as rules and applying expedited procedures; and the President in signing the duly passed resolution. *See generally id.*

AFPM, API, and NACS move to intervene in this case to protect their and their members' unique business interests.

## LEGAL STANDARD

Federal Rule of Civil Procedure 24 allows for both intervention as of right and permissive intervention. To intervene as of right under Rule 24(a), proposed intervenors must show: (1) a significantly protectable interest in the subject of the action; (2) that the action's outcome may, as a practical matter, impair the applicant's ability to protect that interest; (3) that the motion is timely; and (4) that the existing parties may not adequately represent the applicant's interest. *See W. Watersheds Project v. Haaland*, 22 F.4th 828, 835 (9th Cir. 2022). These factors are not applied rigidly. Courts favor intervention when practical and equitable considerations support it, and the Ninth Circuit has instructed that the rule should be "broadly interpreted in favor of intervention." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011).

Rule 24(b), which governs permissive intervention, also allows intervention where the applicant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). To obtain permissive intervention, a party must show: (1) an independent basis for jurisdiction; (2) that the motion is timely; and (3) that its claim or defense shares a legal or factual question with the main action. Once those elements are satisfied, the district court may also consider factors such as the nature and extent of the applicant's interest and whether the applicant's interests are already represented. The court must also assess whether intervention would "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

# ARGUMENT

### A. Proposed Intervenors have standing.

As the Supreme Court recently explained, Proposed Intervenors have Article III standing because the outcome of this litigation will directly affect their members' economic interests. The CRA disapprovals at issue prevent California and other states from enforcing vehicle emissions rules that would reduce fuel demand nationwide. *See* Exs. A-D (declarations of Geoffrey Moody (AFPM), Will Hupman (API), Douglas Kantor (NACS), and John Martini (Chevron), respectively). These regulatory programs—Advanced Clean Cars II, Advanced Clean Trucks, and the "Omnibus" Low NOx—would force automakers to phase out liquid-fuel-powered vehicles, harming refiners, fuel producers, distributors, and retailers across the country.

This is precisely the kind of economic harm that the Supreme Court recently held sufficient to confer standing. In *Diamond Alternative Energy, LLC v. EPA*, the Court held that liquid fuel producers challenging federal policies designed to reduce the market for their products had demonstrated "classic monetary injury" and thus satisfied the requirements of Article III. *See* 606 U.S. __, __, 145 S. Ct. 2121, 2137–38 (2025) ("In short, the commonsense economic inferences about the operation of the automobile market—combined with the statements of the fuel producers, California, EPA, and the vehicle manufacturers—make it sufficiently 'predictable' that invalidating California's regulations would likely redress the fuel producers' injury."). Here, just as in *Diamond Alternative Energy*, Proposed Intervenors face a direct economic threat due to California's efforts to enforce disapproved rules through this litigation.

Because, as explained above, at least one of Proposed Intervenors' members would have standing in its own right, Proposed Intervenors have associational standing. An association has standing to sue on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Each of those elements is met here. As shown above, individual members of all three Proposed Intervenors—who produce, refine, distribute, and sell fuel nationwide—would have standing in their own right because

this litigation threatens their concrete economic interests. *See Diamond Alternative Energy*, 145 S. Ct. at 2137–38. Protecting members from unlawful and harmful regulatory mandates falls squarely within the core missions of Proposed Intervenors. *See* Exs. A-D (declarations). And the claims asserted here raise legal questions that do not require individualized proof from particular members.

Accordingly, Proposed Intervenors meet the requirements for Article III standing. *See, e.g.*, *AFPM v. O'Keeffe*, 903 F.3d 903, 909–10 (9th Cir. 2018) (recognizing AFPM's ability to challenge state fuel regulations on behalf of its members, refineries and fuel producers impacted by compliance costs, and implicitly confirming standing by reaching the merits).

### B. Proposed Intervenors are entitled to intervene as of right.

Proposed Intervenors easily satisfy all four requirements under Rule 24(a). Proposed Intervenors have a sufficient interest in this litigation, would be directly impaired if excluded, have timely sought intervention, and cannot rely on existing parties to adequately represent their distinct economic and regulatory interests.

First, the motion is timely. "Timeliness is a flexible concept; its determination is left to the district court's discretion." *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004); *Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*, 712 F.3d 1349, 1353 (9th Cir. 2013) (finding a motion to intervene timely when filed years after the litigation began). When intervention is sought "at the outset of the litigation," it is well within a court's discretion to allow it. *Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993), *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011). Such is the case here. This motion comes just a few weeks after the complaint was filed, at an early stage of the case before any substantive proceedings have occurred, and no party will be prejudiced. In fact, Defendants have not even filed their responsive pleading yet.

Second, Proposed Intervenors have a significantly protectable interest. The outcome of this lawsuit directly affects Proposed Intervenors' members, who manufacture fuels, operate refineries, and distribute and sell fuel nationwide. The waiver rules that Congress disapproved would significantly reduce liquid fuel sales over the next couple decades. *See* California Air Resources Board, *Response to Comments on the Draft Environmental Analysis Prepared for the Advanced*

*Clean Cars II Program* (Aug. 24, 2022) at 55 n.54, https://perma.cc/BJS4-RSRV (addressing the ultimate ban on the sale of gasoline-powered cars and estimating the reduction of fuel sales); *see also* Ellen Robo et al., *California Clean Trucks Program,* Env't Rsch. Mgmt. Grp. (2022) at 11, https://perma.cc/7BNU-XRKS (study of the Advanced Clean Trucks program, estimating fuel sales to drop by over 40% by 2036). Any judicial invalidation of the CRA resolutions would, among other things, subject Proposed Intervenors' members to divergent and burdensome regulatory regimes, jeopardizing or limiting their ability to produce, distribute, and sell fuels.

The Supreme Court's recent decision in *Diamond Alternative Energy* confirms that fuel producers like Proposed Intervenors' members have a significantly protectable interest here—a "classic monetary injury" that the Court held was sufficient to support Article III standing. 145 S. Ct. at 2137 ("[T]he fuel producers persuasively contend that invalidating California's regulations would likely mean more gasoline-powered automobiles, which would in turn likely mean more sales of gasoline and other liquid fuels by the fuel producers."). The Court further recognized that these types of regulatory schemes are designed precisely to reduce liquid fuel sales, creating a direct and concrete economic injury to fuel producers. *See id.* at 2137 (noting that it was "an odd argument" for California to advance that the regulations would not affect fuel producers and observing that the "whole point of the regulations is to increase the number of electric vehicles in the new automobile market beyond what consumers would otherwise demand and what automakers would otherwise manufacture and sell"). And the regulatory scheme at issue in *Diamond Alternative Energy*— Advanced Clean Cars I—was far less onerous than one of the programs at issue here—Advanced Clean Cars II, which requires that 100% of new vehicles sold in California by 2035 must be "zero emissions." These classic monetary injuries, sufficient to satisfy standing, also go a long way to show satisfaction of Rule 24(a)'s protectable interest requirement. *See, e.g.*, *S.W. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 821 n.3 (9th Cir. 2001) (indicating that interests sufficient to satisfy Rule 24(a)'s protectable interest requirement are also sufficient to satisfy standing).

Third, the outcome of this litigation threatens to impair Proposed Intervenors' interests. If the plaintiff States succeed in invalidating the CRA disapprovals, Proposed Intervenors will suffer immediate and concrete injuries in the form of lost sales volume and revenue. As the Court made

clear in *Diamond Alternative Energy*, the EV mandates in the rules that Congress voided are explicitly designed to suppress demand for gasoline and diesel fuel by requiring automakers to produce and sell more EVs. 145 S. Ct. at 2137. Invalidating Congress's disapprovals would thus directly reinstate regulatory mandates that reduce liquid fuel consumption and injure Proposed Intervenors' members. The Supreme Court held that these types of harms are not speculative but rather "predictable" consequences of California's regulations, which have a demonstrated and acknowledged market effect. *Id.* at 2138. Thus, Proposed Intervenors' interests would be impaired if this lawsuit succeeds.

Fourth, the current defendants do not adequately represent Proposed Intervenors' narrow and concrete business interests. Courts in this Circuit recognize that governmental defendants represent the broad public interest, which may diverge from the "more narrow, parochial interests" of private intervenors. *Cal. ex rel. Lockyer v. United States*, 450 F.3d 436, 445 (9th Cir. 2006) (citing *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995), *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011)). Here, federal defendants are charged with representing the public at large and will not fully protect the economic and operational interests of Proposed Intervenors' members.

### C. In the alternative, Proposed Intervenors should be granted permissive intervention.

Alternatively, Proposed Intervenors qualify for permissive intervention under Rule 24(b).

First, the requirement for an independent ground for jurisdiction "does not apply to proposed intervenors in federal-question cases," like this one, where "the proposed intervenor[s] [are] not raising new claims." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011).

Second, Proposed Intervenors have a claim or defense that shares with the main action a common question of law or fact. Proposed Intervenors seek to assert defenses directly aligned with the government defendants regarding the validity of the CRA resolutions and the legal scope of state authority to regulate emissions. *See, e.g.*, *California v. Health & Hum. Servs.*, 330 F.R.D. 248, 255

(N.D. Cal. 2019) (explaining that proposed intervenor's claim involved common question "whether the Final Rules violate the Administrative Procedure Act or the Constitution").

Third, the motion here is timely for the reasons explained above.

Finally, all relevant discretionary considerations strongly support permissive intervention. *See Venegas v. Skaggs*, 867 F.2d 527, 530 (9th Cir. 1989) (reversing and remanding district court and granting permissive intervention and noting that the district court has discretion to determine whether permissive intervention is proper and is guided by the principles of efficiency and fairness to the movant and parties). Granting intervention here will promote fairness, avoid future duplicative litigation, and ensure that Proposed Intervenors' specialized economic and technical expertise is presented to the Court. Moreover, Proposed Intervenors' prompt application ensures that intervention will not delay the proceedings or prejudice any party. *See McDonald v. E. J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970) (permissive intervention should be granted "where no one would be hurt and greater justice would be attained" (quotation omitted)).

Thus, if the Court declines to grant intervention as of right, it should at minimum permit Proposed Intervenors to intervene permissively to defend the validity of the disapproval resolutions and to protect its members' economic and operational interests.

## CONCLUSION

The motion to intervene should be granted.

Dated: August 6, 2025

Respectfully submitted,
/s/ Bradley A. Benbrook
Bradley A. Benbrook (SBN 177786)
Stephen M. Duvernay (SBN 250957)
Benbrook Law Group, PC

Steven P. Lehotsky* (DC 992765)
Michael B. Schon* (DC 989893)
Katherine C. Yarger* (CO 40387)
Lehotsky Keller Cohn LLP

*Attorneys for Proposed Intervenors American Fuel & Petrochemical Manufacturers, American Petroleum Institute, and the National Association of Convenience Stores*
* Motion for admission *pro hac vice* forthcoming