# EXHIBIT B
# API Declaration

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STATE OF CALIFORNIA, et al., | Case No. 4:25-cv-04966 |
| Plaintiffs, | **DECLARATION OF WILL HUPMAN IN SUPPORT OF PROPOSED INTERVENORS' MOTION TO INTERVENE** |
| v. | |
| UNITED STATES OF AMERICA; U.S. ENVIRONMENTAL PROTECTION AGENCY; LEE ZELDIN, in his official capacity as Administrator of the U.S. Environmental Protection Agency; and DONALD J. TRUMP, in his official capacity as President of the United States, | |
| Defendants. | |

I, Will Hupman, declare as follows:

1. I am the Vice President of Downstream Policy for the American Petroleum Institute (API). In that capacity, I lead API's work on all policies related to the refining, movement, and sale of finished products including gasoline, diesel, renewable diesel, natural gas, biodiesel, and renewable natural gas. I am familiar with the activities and mission of the organization, with the views, priorities, and concerns of API's membership, and with the facts stated in this Declaration.

2. I am over 18 years old. This Declaration is based upon my personal knowledge and/or upon my review of business records of API.

3. API is a national, not-for-profit trade association representing all segments of America's oil and natural gas industry. Our membership includes

marketing petroleum and natural gas products. API members support more than 11 million U.S. jobs and provide a majority of the nation's energy supply.

4. API's members include large integrated energy companies, independent producers, refiners, pipeline operators, marketers, and marine transporters. API has members who sell fuel, including Chevron Corporation, Exxon Mobil Corporation, and Marathon Petroleum Corporation. Those and other members' sales will be reduced, causing monetary injury, if California's waivers are reinstated because reinstatement of the waivers would allow California and Section 177 states to enforce strict electric vehicle mandates and tailpipe emissions standards. These mandates would reduce the market for liquid transportation fuels, impacting the business operations of API's fuel-producing and fuel-distributing members. The resulting patchwork of state-level rules would also fragment the national fuels market, create compliance burdens, and disrupt the supply chains on which API's members rely. In addition, consumer choice of vehicle type, including API members who purchase vehicles, will be curtailed in both California and Section 177 states should the waivers be reinstated.

5. API regularly engages in advocacy and litigation to protect its members from laws and regulations that impose unlawful or unconstitutional burdens on their operations. API's mission includes ensuring that its members can continue to provide affordable and reliable energy to U.S. consumers without undue interference or economic harm from unlawful regulatory actions.

6. I am familiar with the vehicle emissions control waivers that the United States Environmental Protection Agency (EPA) granted to California between 2023 and 2025. These waivers authorized California to enforce its Advanced Clean Cars II, Advanced Clean Trucks, and Omnibus Low NOx regulations. *See* 88 Fed. Reg.

**DECLARATION OF WILL HUPMAN IN SUPPORT OF PROPOSED INTERVENORS' MOTION TO INTERVENE, NO. 4:25-cv-04966**

2

20,688 (Apr. 6, 2023); 90 Fed. Reg. 642 (Jan. 6, 2025); 90 Fed. Reg. 643 (Jan. 6, 2025).

7. I am also aware that Congress recently exercised its authority under the Congressional Review Act to disapprove EPA's decisions to grant these waivers. On June 12, 2025, the President signed joint resolutions of disapproval passed by both the House and the Senate. These resolutions lawfully nullified EPA's waiver grants to California, preventing the enforcement of California's Advanced Clean Cars II, Advanced Clean Trucks, and Omnibus Low NOx regulations.

8. EPA's decisions to grant these waivers and Congress's disapproval of them have an impact on the interests of API's members.

9. API's members sell refined petroleum products throughout California and in other States that had previously adopted California's standards. API members also own and operate refining and distribution infrastructure that supplies these markets. California and allied States collectively represent a substantial share of the national market for gasoline and diesel.

10. California standards in each of the disapproved waivers would have reduced API's members' sales and diminished asset utilization. Accordingly, the outcome of this litigation is important to API and its members.

12. API has maintained regular communication with its members regarding these waivers and the legal developments surrounding them. API is well-positioned to represent the collective interests of its members in this litigation.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 6th day of August, 2025, in Washington, D.C.

*Will Hupman*
Will Hupman

DECLARATION OF WILL HUPMAN IN
SUPPORT OF PROPOSED INTERVENORS'
MOTION TO INTERVENE, NO. 4:25-cv-04966