# EXHIBIT E
# PROPOSED MOTION TO DISMISS

1  Bradley A. Benbrook (SBN 177786)
2  Stephen M. Duvernay (SBN 250957)
   BENBROOK LAW GROUP, PC
3  701 University Avenue, Suite 106
   Sacramento, CA 95825
4  Telephone: (916) 447-4900
   Email: brad@benbrooklawgroup.com
5
   Steven P. Lehotsky* (DC 992765)
6  Michael B. Schon* (DC 989893)
   LEHOTSKY KELLER COHN LLP
7  200 Massachusetts Ave., NW, Suite 700
   Washington, DC 20001
8  Telephone: (512) 693-8350
   Email: steve@lkcfirm.com
9  Email: mike@lkcfirm.com

10 Katherine C. Yarger* (CO 40387)
   LEHOTSKY KELLER COHN LLP
11 700 Colorado Blvd., #407
   Denver, CO 80206
12 Email: katie@lkcfirm.com
   Telephone: (512) 693-8350
13

14 *Attorneys for Proposed Intervenors American
   Fuel & Petrochemical Manufacturers,*
15 *American Petroleum Institute, and the
   National Association of Convenience Stores*
16

17 * Motion for admission *pro hac vice*
   forthcoming.
18

19 **UNITED STATES DISTRICT COURT
   NORTHERN DISTRICT OF CALIFORNIA**

20 STATE OF CALIFORNIA, et al.,                    )
                                                   )
21       Plaintiffs,                               )   Case No. 4:25-cv-04966
                                                   )
22    v.                                           )   **PROPOSED INTERVENORS' NOTICE OF
                                                   )   MOTION AND MOTION TO DISMISS;**
23 UNITED STATES OF AMERICA; U.S.                  )   **MEMORANDUM OF POINTS AND
   ENVIRONMENTAL PROTECTION                        )   AUTHORITIES IN SUPPORT**
24 AGENCY; LEE ZELDIN, in his official             )
   capacity as Administrator of the U.S.           )   Date:
25 Environmental Protection Agency; and            )   Time: 2:00 p.m. PST
   DONALD J. TRUMP, in his official                )   Judge: Hon. Haywood S. Gilliam, Jr.
26 capacity as President of the United             )
   States,                                         )
27                                                 )
                                                   )
28       Defendants.                               )

1

**TABLE OF CONTENTS**

2

3  NOTICE ........................................................................................................................ 1

4  INTRODUCTION ........................................................................................................ 1

5  ISSUES TO BE DECIDED ......................................................................................... 2

6  STATEMENT OF FACTS .......................................................................................... 2

7  LEGAL STANDARD .................................................................................................. 4

8  ARGUMENT ............................................................................................................... 5

9     I.   Plaintiffs' claims are not justiciable ............................................................6

10        A.   Section 805 of the CRA bars judicial review ..................................6

11        B.   Plaintiffs' challenge presents nonjusticiable political questions .................11

12        C.   Plaintiffs lack standing for their statutory claims challenging EPA's actions

13             under the CRA .................................................................................13

14        D.   The Complaint seeks relief the Court cannot grant ......................15

15     II.  The Complaint fails to state a claim because the resolutions were lawfully enacted

16          and constitutionally valid ...............................................................................16

17  CONCLUSION .......................................................................................................... 25

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

Page(s)

2

**Cases**

3

*Alperin v. Vatican Bank,*
4      410 F.3d 532 (9th Cir. 2005) ........................................................................ 11

5

*Arizona v. Garland,*
       730 F. Supp. 3d 258 (W.D. La. 2024) ......................................................... 20
6

7

*Arizona v. United States,*
       567 U.S. 387 (2012) ..................................................................................... 24
8

9

*Ashcroft v. Iqbal,*
       556 U.S. 662 (2009) ....................................................................................... 5
10

11

*Ass'n for Educ. Fin. & Pol'y, Inc. v. McMahon,*
       --- F. Supp. 3d ---, 2025 WL 1568301 (D.D.C. June 3, 2025) ................... 20

12

*Baker v. Carr,*
       369 U.S. 186 (1962) ............................................................................... 11, 12
13

14

*Bank Markazi v. Peterson,*
       578 U.S. 212 (2016) ............................................................................... 22, 23
15

*Bell Atl. Corp. v. Twombly,*
       550 U.S. 544 (2007) ....................................................................................... 5
16

17

*Bennett v. Spear,*
       520 U.S. 154 (1997) ............................................................................... 14, 18
18

19

*Bowen v. Mich. Acad. of Fam. Physicians,*
       476 U.S. 667 (1986) ..................................................................................... 10
20

21

*Ctr. for Biological Diversity v. Bernhardt,*
       946 F.3d 553 (9th Cir. 2019) .......................................................... 7, 9, 15, 18

22

*Chenoweth v. Clinton,*
       181 F.3d 112 (D.C. Cir. 1999) .................................................................... 12
23

24

*Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.,*
       710 F.3d 946 (9th Cir. 2013) ........................................................................ 5

25

*Citizens for Resp. & Ethics in Wash. v. Trump,*
       302 F. Supp. 3d 127 (D.D.C. 2018) ............................................................ 20
26

27

*City of Los Angeles v. Lyons,*
       461 U.S. 95 (1983) ....................................................................................... 15

28

*Cmty. House, Inc. v. City of Boise,*
   623 F.3d 945 (9th Cir. 2010) ........................................................................ 25

*Coleman v. Miller,*
   307 U.S. 433 (1939) .................................................................................... 12

*Common Cause v. Biden,*
   748 F.3d 1280 (D.C. Cir. 2014) .................................................................. 14

*Consejo de Desarrollo Economico de Mexicali, A.C. v. United States,*
   482 F.3d 1157 (9th Cir. 2007) .................................................................... 11

*Corrie v. Caterpillar Inc.,*
   503 F.3d 974 (9th Cir. 2007) ...................................................................... 11

*Dalton v. Specter,*
   511 U.S. 462 (1994) .............................................................................. 19, 20

*Davis v. District of Columbia,*
   158 F.3d 1342 (D.C. Cir. 1998) .................................................................. 15

*Delta Chem. Corp. v. West,*
   33 F.3d 380 (4th Cir. 1994) .......................................................................... 6

*Demore v. Kim,*
   538 U.S. 510 (2003) .................................................................................... 10

*Effinger v. Ancient Organics LLC,*
   657 F. Supp. 3d 1290 (N.D. Cal. 2023) ...................................................... 4

*Est. of Braude v. United States,*
   38 Fed. Cl. 476 (1997) ................................................................................ 12

*Fla. Audubon Soc'y v. Bentsen,*
   94 F.3d 658 (D.C. Cir. 1996) ..................................................................... 14

*Franklin v. Massachusetts,*
   505 U.S. 788 (1992) .............................................................................. 19, 24

*Gest v. Bradbury,*
   443 F.3d 1177 (9th Cir. 2006) ...................................................................... 5

*Grossman v. City of Portland,*
   33 F.3d 1200 (9th Cir. 1994) ...................................................................... 25

*INS v. Chadha,*
   462 U.S. 919 (1983) .................................................................................... 21

*Kan. Nat. Res. Coal. v. Dep't of Interior,*
   971 F.3d 1222 (10th Cir. 2020) ................................................................ 7, 9

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ............................................................................... 4

*Leedom v. Kyne*,
    358 U.S. 184 (1958) ............................................................................. 16

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ............................................................................. 14

*Made in the USA Found. v. United States*,
    242 F.3d 1300 (11th Cir. 2001) ........................................................... 12

*Mendoza-Linares v. Garland*,
    51 F.4th 1146 (9th Cir. 2022) ................................................................ 9

*Metzenbaum v. Fed. Energy Reg. Comm'n*,
    675 F.2d 1282 (D.C. Cir. 1982) ...................................................... 12, 13

*Mississippi v. Johnson*,
    71 U.S. (4 Wall.) 475 (1867) ............................................................... 20

*Montanans for Multiple Use v. Barbouletos*,
    568 F.3d 225 (D.C. Cir. 2009) ...................................................... 7, 8, 15

*Nat'l Treasury Emps. Union v. Nixon*,
    492 F.2d 587 (D.C. Cir. 1974) ............................................................. 20

*Nat. Res. Def. Council, Inc. v. S. Coast Air Quality Mgmt. Dist.*,
    651 F.3d 1066 (9th Cir. 2011) ................................................................ 5

*Nixon v. United States*,
    506 U.S. 224 (1993) ............................................................................. 13

*Nuclear Regul. Comm'n v. Texas*,
    605 U.S. __, 145 S. Ct. 1762 (2025) .............................................. 16, 17

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ............................................................................. 15

*Patchak v. Zinke*,
    583 U.S. 244 (2018) ............................................................................. 22

*Perez v. Mortg. Bankers Ass'n*,
    575 U.S. 92 (2015) ............................................................................... 17

*Prutehi Litekyan: Save Ritidian v. U.S. Dep't of Air Force*,
    128 F.4th 1089 (9th Cir. 2025) ............................................................. 17

*Robertson v. Seattle Audubon Society*,
    503 U.S. 429 (1992) ............................................................................. 22

*Simon v. E. Ky. Welfare Rts. Org.*,
  426 U.S. 26 (1976) ....................................................................................... 14

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ..................................................................................... 14

*State of Nev. v. Watkins*,
  914 F.2d 1545 (9th Cir. 1990) ..................................................................... 12

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) ....................................................................................... 15

*Tex. Sav. & Cmty. Bankers Ass'n v. Fed. Hous. Fin. Bd.*,
  1998 WL 842181 (W.D. Tex. June 25, 1998) ............................................ 7–8

*The Centech Grp., Inc. v. United States*,
  78 Fed. Cl. 496 (2007) .................................................................................. 6

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ....................................................................................... 5

*United States v. Am. Elec. Power Serv. Corp.*,
  218 F. Supp. 2d 931 (S.D. Ohio 2002) .......................................................... 8

*United States v. Ballin*,
  144 U.S. 1 (1892) ......................................................................................... 12

*United States v. Klein*,
  80 U.S. (13 Wall.) 128 (1872) ..................................................................... 23

*United States v. McIntosh*,
  833 F.3d 1163 (9th Cir. 2016) ....................................................................... 7

*United States v. Or. State Med. Sch.*,
  343 U.S. 326 (1952) ..................................................................................... 15

*United States v. Orr Water Ditch Co.*,
  600 F.3d 1152 (9th Cir. 2010) ................................................................... 4–5

*United States v. Padelford*,
  76 U.S. (9 Wall.) 531 (1870) ....................................................................... 23

*United States v. S. Ind. Gas & Elec. Co.*,
  2002 WL 31427523 (S.D. Ind. Oct. 24, 2002) .............................................. 8

*Via Christi Reg'l Med. Ctr., Inc. v. Leavitt*,
  509 F.3d 1259 (10th Cir. 2007) ................................................................. 7, 9

*Warren v. Fox Fam. Worldwide, Inc.*,
  328 F.3d 1136 (9th Cir. 2003) ....................................................................... 5

*Wash. All. of Tech. Workers v. DHS*,
   892 F.3d 332 (D.C. Cir. 2018) ........................................................................... 8, 15

*Webster v. Doe*,
   486 U.S. 592 (1988) ...................................................................................... 9, 10

*Yesler Terrace Cmty. Council v. Cisneros*,
   37 F.3d 442 (9th Cir. 1994)..........................................................................3–4, 17

*Zivotofsky ex rel. Zivotofsky v. Clinton*,
   566 U.S. 189 (2012) ........................................................................................... 13

**Statutes, Regulations and Rules**

88 Fed. Reg. 20,688 (Apr. 6, 2023)............................................................................... 3

90 Fed. Reg. 642 (Jan. 6, 2025) ................................................................................... 3

90 Fed. Reg. 643 (Jan. 6, 2025) ................................................................................... 3

5 U.S.C. § 551(4) .............................................................................................. 3, 6, 16

5 U.S.C. § 551(6), (8) .................................................................................................. 3

5 U.S.C. § 704 ........................................................................................................... 18

5 U.S.C. § 801(a)(1) ................................................................................................. 3, 6

5 U.S.C. § 801(b)(1) ............................................................................................ 4, 7, 22

5 U.S.C. § 802(g) ....................................................................................................... 11

5 U.S.C. § 804(3) .............................................................................................. 3, 16, 21

5 U.S.C. § 805 ....................................................... 1, 2, 4, 5, 6, 7, 8, 9, 10, 15, 18, 20

8 U.S.C. § 1252(a)(2) ................................................................................................. 10

42 U.S.C. § 7401 ......................................................................................................... 2

42 U.S.C. § 7507 ......................................................................................................... 3

42 U.S.C. § 7543(a) ............................................................................................... 3, 24

42 U.S.C. § 7543(b) .......................................................................................... 3, 10, 24

Fed. R. Civ. P. 12(b).................................................................................................... 1

Fed. R. Civ. P. 12(b)(1)............................................................................................ 1, 4

Fed. R. Civ. P. 12(b)(6)............................................................................................ 1, 5

Pub. L. No. 119-15, 139 Stat. 65 (June 12, 2025) ........................................................ 4, 7

Pub. L. No. 119-16, 139 Stat. 66 (June 12, 2025) ........................................................ 4, 7

Pub. L. No. 119-17, 139 Stat. 67 (June 12, 2025) ........................................................ 4, 7

**Other Authorities**

Government Accountability Office, *The Safer Affordable Fuel-Efficient (SAFE) Vehicles Rule Part One: One National Program*, FRL010000-45, https://www.gao.gov/fedrules/196015 .......................................................................... 7

*In re Environmental Protection Agency*, B-334309, 2023 WL 8353888 (Comp. Gen. Nov. 30, 2023) ..................................... 3

Library of Congress, *Introduction to the Legislative Process in the U.S. Congress*, Congress.gov (Mar. 10, 2025), https://www.congress.gov/crs-product/R42843 ................... 21

Russell T. Vought, *Post-CRA Resolutions Response to GAO's March 6, 2025 "Observations Regarding the Environmental Protection Agency's Submission of Notices of Decision on Clean Air Act Preemption Waivers as Rules Under the Congressional Review Act,"* Exec. Off. Of the Pres. (June 18, 2025), https://perma.cc/DR9Z-CHWX ................................................................................... 7

Statement by the President (June 12, 2025), https://perma.cc/7U7Y-6EFZ .................................. 4

*Tongass Land Management: Joint Hearings Before the S. Comm. On Energy and Nat. Res. And H. Comm. on Res.*, 105th Cong. 20 (1997) ......................................... 6

U.S. Const. art. I, § 1 ........................................................................................................ 7, 13

Valerie C. Brannon & Maeve P. Carey, *The Congressional Review Act: Determining Which "Rules" Must Be Submitted to Congress*, Congress.gov (Oct. 22, 2024), https://www.congress.gov/crs-product/R45248 .............................................. 6

William T. Egar, *Congressionally Mandated Reports: Overview and Considerations for Congress*, CRS Report (May 14, 2020), https://www.congress.gov/crs-product/R46357 .............................................................. 21–22

**NOTICE**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on _____, 2025 at 2:00 p.m. PST, or as soon thereafter as this matter may be heard in the United States District Court for the Northern District of California, 1301 Clay Street, Courtroom 2 (4th Floor), Oakland, CA 94612, Proposed Intervenors American Fuel & Petrochemical Manufacturers, American Petroleum Institute, and the National Association of Convenience Stores will move to dismiss this case pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.

**RELIEF SOUGHT BY THE MOVANTS**

The Proposed Intervenors seek an order dismissing this case for lack of subject matter jurisdiction under Rule 12(b)(1) and/or for failure to state a claim under Rule 12(b)(6).

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Plaintiffs' Complaint must be dismissed for lack of jurisdiction. It challenges congressional and executive actions taken under the Congressional Review Act (CRA). But the CRA squarely bars judicial review: "No determination, finding, action, or omission under this chapter shall be subject to judicial review." 5 U.S.C. § 805. That prohibition forecloses review of the actions at issue here. Additionally, this Court lacks the ability to review Plaintiffs' claims because Plaintiffs ask this Court to determine nonjusticiable political questions, Plaintiffs lack standing to challenge EPA's actions, and the relief requested is unavailable.

Even if this Court had jurisdiction, which it does not, Plaintiffs' claims should be dismissed. The waivers that Congress disapproved qualify as rules under the Administrative Procedure Act (APA) and CRA; EPA lawfully submitted them for review; and Congress and the President acted within their constitutional authority to disapprove them through duly enacted legislation.

Earlier this year, Congress exercised its oversight authority under the CRA to disapprove three EPA waivers that had exempted California from federal preemption under the Clean Air Act (CAA). These waivers had authorized California to enforce aggressive vehicle emission regulatory and sales mandate schemes—the Advanced Clean Trucks, Advanced Clean Cars II, and "Omnibus"

1

Low NOx rules—that together aimed to eliminate internal combustion engines and reduce demand for liquid fuels. Several states had adopted the California programs, turning what were nominally state regulations into de facto national standards. Congress responded as the Constitution permits: through bicameralism and presentment, it enacted three joint resolutions of disapproval under the CRA, and President Trump signed each into law on June 12, 2025.

Plaintiffs now seek to undo those duly enacted laws. But their claims face multiple, independent barriers to judicial review. First, Section 805 of the CRA prohibits courts from reviewing any "determination, finding, action, or omission" under the statute. 5 U.S.C. § 805. That forecloses review of both EPA's submission of the waivers as rules and Congress's disapproval resolutions. Second, the Complaint raises nonjusticiable political questions. Third, Plaintiffs lack standing for their statutory claims challenging EPA's actions. Fourth, the relief requested is unavailable. And fifth, the Complaint fails to plead viable legal claims.

Congress's resolutions are now binding law. Plaintiffs may not circumvent the Constitution's legislative process by challenging that outcome in court. The Complaint should be dismissed.

## ISSUES TO BE DECIDED

1.     Whether this Court lacks jurisdiction because:

    a.  Plaintiffs' claims are barred by the Congressional Review Act's jurisdiction-stripping provision;

    b.  Plaintiffs' claims present nonjusticiable political questions;

    c.  Plaintiffs lack standing to challenge EPA's actions; and

    d.  The relief requested is unavailable.

2.     Whether Plaintiffs fail to state any claim upon which relief can be granted because the challenged CRA resolutions were duly enacted and consistent with constitutional and statutory requirements.

## STATEMENT OF FACTS

The CAA creates a comprehensive national framework for regulating emissions from new motor vehicles. *See* 42 U.S.C. §§ 7401, *et seq.* It gives EPA exclusive authority to set standards and

1    bars states from regulating in this space. *Id.* § 7543(a). Congress included one narrow exception:

2    California may request a federal waiver to enforce its own emissions standards if certain criteria are

3    met. *Id.* § 7543(b) (detailing exception for California). After the federal waiver is granted, states

4    may then adopt California's standards in place of the federal standards, if certain conditions are met,

5    but they may not create their own. *See id.* § 7507.

6        As relevant here, between April 2023 and January 2025, EPA granted California three

7    waivers—authorizing the State to implement the Advanced Clean Trucks, Advanced Clean Cars II,

8    and the "Omnibus" Low NOx programs. *See* 88 Fed. Reg. 20,688 (Apr. 6, 2023) (Advanced Clean

9    Trucks); 90 Fed. Reg. 642 (Jan. 6, 2025) (Advanced Clean Cars II); 90 Fed. Reg. 643 (Jan. 6, 2025)

10   ("Omnibus" Low NOx). Each program imposes sweeping new restrictions on vehicle emissions and

11   mandates increasing sales of electric vehicles. Because other states had, and still others could have,

12   adopted California's rules before they were disapproved, *see* 42 U.S.C. § 7507 (authorizing other

13   states to adopt California's standards), the waivers functionally authorized a prospective regulatory

14   scheme that dictated what vehicles consumers and businesses may drive across a large swath of the

15   American car and truck market—creating a de facto national regulatory framework.

16       In early 2025, EPA submitted the three waivers to Congress under the CRA.[1] The CRA

17   requires, with certain exceptions, that agencies "submit to each House of Congress and to the

18   Comptroller General" each rule along with a report detailing the rule before it may take effect. 5

19   U.S.C. § 801(a)(1)(A). By contrast, agencies need not send orders, licenses, or rules of particular

20   applicability. 5 U.S.C. § 551(6), (8); 5 U.S.C. § 804(3). The CRA defines "rule" broadly, adopting

21   the APA definition. *Id.* § 804(3); *see also* 5 U.S.C. § 551(4); *see, e.g.*, *Yesler Terrace Cmty. Council*

22

---

23   [1] When EPA transmitted these waivers to Congress, some Senators requested a GAO opinion on
24   whether the submitted waivers qualified as "rules" under the CRA, and the GAO provided
     substantive "observations" despite the irregularity of providing guidance at that time. *See* Dkt. 1-2,
     Compl. Ex. B (March 2025 GAO Observations). The GAO's observations discuss an earlier 2023
25   GAO opinion, *see id.* (discussing *In re Environmental Protection Agency*, B-334309, 2023 WL
     8353888 (Comp. Gen. Nov. 30, 2023) (hereafter "B-334309")), that is neither legally compelled nor
26   legally binding on anyone, *see infra* p.7 n.3. There, GAO advised that EPA's March 14, 2022 Notice
     of Decision (waiver) for ACC I was an adjudicatory order rather than a rule under the APA, and that
27   even if it could be considered a rule, it would fall under the CRA's exclusion for rules of particular
     applicability. *See* B-334309 at *6. Congress reviewed these arguments and ultimately rejected
28   GAO's position, as Congress has the authority to do. *See infra* p.7.

3

1    *v. Cisneros*, 37 F.3d 442, 448 (9th Cir. 1994) ("[R]ulemaking affects the rights of broad classes of

2    unspecified individuals" and "is prospective," "hav[ing] a definitive effect on individuals only after

3    the rule subsequently is applied."). Once a rule is submitted, Congress may "enact[] a joint

4    resolution of disapproval." *Id.* § 802(a). If the President signs the resolution, the rule is invalidated

5    and "may not be reissued in substantially the same form." *Id.* § 801(b)(2). The CRA contains a

6    jurisdictional bar that broadly precludes judicial review of actions taken under the CRA. *See* 5

7    U.S.C. § 805. Section 805 expressly provides that "[n]o determination, finding, action, or omission

8    under this chapter shall be subject to judicial review."

9        Congress and the President disapproved the waivers via three joint resolutions enacted

10   through bicameralism and presentment. *See* Pub. L. No. 119-15, 139 Stat. 65 (June 12, 2025); Pub.

11   L. No. 119-16, 139 Stat. 66 (June 12, 2025); Pub. L. No. 119-17, 139 Stat. 67 (June 12, 2025); *see*

12   *also* Statement by the President (June 12, 2025), https://perma.cc/7U7Y-6EFZ. By operation of the

13   CRA, the disapproved waivers are now without legal effect, states may not implement them, and

14   EPA may not reissue similar rules without new authorization.

15       California and ten other states now seek this Court's reversal of those duly enacted laws.

16   They sue the United States, the President, and EPA. Much of their Complaint concerns internal

17   political process beyond this Court's jurisdiction. They nevertheless claim that the waivers are not

18   rules under the CRA, that EPA's submission was unlawful, and that the resolutions violate the

19   Constitution. *See generally* Dkt. 1, Compl. None of these claims can succeed.

20       Proposed Intervenors, American Fuel & Petrochemical Manufacturers, American Petroleum

21   Institute, and the National Association of Convenience Stores, seek to intervene to protect their

22   members' rights, which are independent of and not represented by Defendants. In so doing,

23   Proposed Intervenors simultaneously submit this Motion to Dismiss Plaintiffs' Complaint.

24                                  **LEGAL STANDARD**

25       A motion to dismiss under Rule 12(b)(1) tests whether the Court has subject-matter

26   jurisdiction over the claims asserted. *See Effinger v. Ancient Organics LLC*, 657 F. Supp. 3d 1290,

27   1295 (N.D. Cal. 2023). Plaintiffs bear the burden of establishing that jurisdiction exists. *Kokkonen*

28   *v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *United States v. Orr Water Ditch Co.*,

1    600 F.3d 1152, 1157 (9th Cir. 2010). To satisfy Article III's standing requirement, "plaintiffs must

2    demonstrate standing for each claim that they press and for each form of relief that they seek."

3    *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). "[W]here, as here, [Plaintiffs] seek

4    declaratory and injunctive relief, they must demonstrate that they are 'realistically threatened by a

5    repetition of the violation.'" *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006) (cleaned up).

6    When jurisdiction is lacking, the Court must dismiss the action. *See, e.g.*, *Nat. Res. Def. Council,*

7    *Inc. v. S. Coast Air Quality Mgmt. Dist.*, 651 F.3d 1066, 1073 (9th Cir. 2011) (affirming district

8    court dismissal for lack of jurisdiction).

9         A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint.

10   Courts must dismiss a complaint under Rule 12(b)(6) where the complaint lacks a cognizable legal

11   theory or sufficient facts alleged under a cognizable legal theory. *See Chubb Custom Ins. Co. v.*

12   *Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013). To survive such a motion, the complaint

13   must also contain enough factual allegations to state a claim that is plausible on its face. *Ashcroft v.*

14   *Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Courts will

15   not, however, "assume the truth of legal conclusions merely because they are cast in the form of

16   factual allegations." *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003)

17   (citation omitted).

18                                         **ARGUMENT**

19        California's Complaint must be dismissed. The CRA affords Congress authority to pass,

20   through expedited procedures, a resolution of disapproval of agency rules, and Section 805 of the

21   CRA expressly prohibits judicial review of *any* "determination, finding, action, or omission" made

22   under the statute. Additionally, the Complaint has numerous other jurisdictional issues: It presents

23   quintessential political questions about how Congress exercises its legislative oversight, which are

24   not subject to judicial review; Plaintiffs lack standing to bring their claims against the EPA because

25   EPA's actions did not cause Plaintiffs' alleged injury; and the relief requested is unavailable. Even

26   if the Court could reach the merits, the Complaint fails to state any claim upon which relief could

27   be granted. The three joint resolutions at issue reflect a lawful exercise of legislative and executive

28   power. As explained below, the Complaint should be dismissed.

1    **I.      Plaintiffs' claims are not justiciable.**

2         Plaintiffs' lawsuit fails because it presents nonjusticiable claims. First, Section 805 of the

3    CRA withdraws jurisdiction over challenges to actions taken under the statute—including efforts to

4    nullify disapproval resolutions. Second, Plaintiffs' claims raise political questions that the

5    Constitution commits to the elected branches and that courts may not resolve. Third, Plaintiffs lack

6    standing. And fourth, Plaintiffs cannot receive the relief they seek. Any of these grounds

7    independently requires dismissal.

8         **A.      Section 805 of the CRA bars judicial review.**

9         Plaintiffs' claims fail because the CRA prohibits courts from reviewing actions taken

10   "under" it. Section 805 of the CRA states: "No determination, finding, action, or omission *under*

11   *this chapter* shall be subject to judicial review." 5 U.S.C. § 805 (emphasis added). This bar applies

12   when a plaintiff challenges a law passed through the CRA's process, including the agency's

13   submission of the rule, Congress's disapproval, and the President's signature. That is the case here.

14        The CRA requires agencies to "submit to each House of Congress and to the Comptroller

15   General" each rule along with a report detailing the rule. *Id.* § 801(a)(1). A rule is broadly defined

16   under the CRA according to the APA's definition. *Id.* § 551(4).[2] Congress, however, need not rely

17   on agency submission. It has also developed its own internal process to determine whether agency

18   actions are reviewable as a rule under the CRA, treating certain rules as constructively submitted

19   and therefore subject to the CRA. Ultimately, Congress is permitted to decide for itself when to take

20   up an agency action under the CRA and when to pass laws disapproving it.[3] After all, it is Congress,

21   _____

22   [2] *See also* Valerie C. Brannon & Maeve P. Carey, *The Congressional Review Act: Determining*
     *Which "Rules" Must Be Submitted to Congress*, Congress.gov (Oct. 22, 2024),
23   https://www.congress.gov/crs-product/R45248.

24   [3] Plaintiffs have not identified any authority, and there is none, for the proposition that GAO's
     observations or opinions as to whether an agency action is a "rule" are legally required or legally
25   binding rather than merely advisory. *See The Centech Grp., Inc. v. United States*, 78 Fed. Cl. 496,
     507 (2007) (neither agencies nor courts are bound by GAO decisions); *Delta Chem. Corp. v. West*,
26   33 F.3d 380, 382 (4th Cir. 1994) ("[T]he lack of consistency in . . . GAO opinions, both internally
     and between opinions, renders them of little value and undeserving of judicial deference."). GAO
27   itself recognizes that it has no power "to decide what a rule is." *Tongass Land Management: Joint*
     *Hearings Before the S. Comm. On Energy and Nat. Res. And H. Comm. on Res.*, 105th Cong. 20
28   (1997). In any event, GAO has previously concluded that an action revoking a preemption waiver

1   not the executive, that is responsible for making law. *See* U.S. Const. art. I, § 1 (granting "[a]ll

2   legislative Powers" to Congress); *United States v. McIntosh*, 833 F.3d 1163, 1172 (9th Cir. 2016)

3   ("It is emphatically . . . the exclusive province of the Congress not only to formulate legislative

4   policies and mandate programs and projects, but also to establish their relative priority for the

5   Nation." (quotation and citation omitted)).[4]

6       Here, EPA submitted three waivers to Congress as rules under the CRA. Both chambers

7   passed resolutions disapproving them. The President signed each resolution. Those resolutions

8   became law.[5] They voided the waivers and barred EPA from "reissu[ing] [new rules] in substantially

9   the same form." § 801(b)(2).

10      Plaintiffs now seek to undo that result. They attack EPA's treatment of the waiver decisions

11  as rules, and its decision to send the rules to Congress; Congress's decision to take up the rules; the

12  procedures by which Congress did so; Congress's adoption of the resolutions; and the President's

13  signing of the Resolutions.

14      What California attempts to have this Court review are precisely the types of actions Section

15  805 forecloses courts from reviewing because, at their core, each claim challenges a "determination,

16  finding, action, or omission" under the statute.[6] In *Center for Biological Diversity v. Bernhardt*, 946

17

18  _____

    is a "final rule." *See* Government Accountability Office, *The Safer Affordable Fuel-Efficient
19  (SAFE) Vehicles Rule Part One: One National Program*, FRL010000-45,
    https://www.gao.gov/fedrules/196015 (adopting EPA's description of a 2019 waiver decision as a
    final rule).

20  [4] *See also* Russell T. Vought, *Post-CRA Resolutions Response to GAO's March 6, 2025
    "Observations Regarding the Environmental Protection Agency's Submission of Notices of
21  Decision on Clean Air Act Preemption Waivers as Rules Under the Congressional Review Act*,"
    Exec. Off. Of the Pres. (June 18, 2025), https://perma.cc/DR9Z-CHWX.

22  [5] Pub. L. No. 119-15, 139 Stat. 65; Pub. L. No. 119-16, 139 Stat. 66; Pub. L. No. 119-17, 139 Stat.
23  67.

24  [6] Courts overwhelmingly agree that Section 805's jurisdictional bar applies equally to agency acts
    or omissions as it does to Congressional ones. *See Kan. Nat. Res. Coal. v. Dep't of Interior*, 971
25  F.3d 1222, 1235–36 (10th Cir. 2020) ("[T]he CRA unambiguously prohibits judicial review of any
    omission by any of the specified actors," which include "agencies, the Comptroller General, the
26  President, and Congress."); *Montanans for Multiple Use v. Barbouletos*, 568 F.3d 225, 229 (D.C.
    Cir. 2009) (holding CRA precludes review of agency compliance with submission requirements);
27  *Via Christi Reg'l Med. Ctr., Inc. v. Leavitt*, 509 F.3d 1259, 1271 n.11 (10th Cir. 2007) *overruled in
    part on other grounds by Azar v. Allina Health Servs.*, 587 U.S. 566, 572 (2019) (noting CRA
    precludes judicial review of failure to submit a rule); *Tex. Sav. & Cmty. Bankers Ass'n v. Fed. Hous.*

28

7

F.3d 553, 563–64 (9th Cir. 2019), the Ninth Circuit rejected a nearly identical effort to circumvent the CRA's jurisdictional bar. *See id.* (rejecting plaintiff's attempt to shirk the jurisdictional bar by describing it as something other than a "'determination, finding, action or omission' under the CRA"). There, the plaintiff argued that a joint resolution was invalid because the disapproved rule had taken effect before the agency submitted it to Congress. The plaintiff claimed the submission was untimely and the resolution was therefore improperly enacted. But the court held that Section 805 bars judicial review of any claim that challenges a "determination, finding, action, or omission" under the CRA—including procedural challenges to the validity of a joint resolution. The court explained that the plaintiff's real grievance was with Congress's act of disapproval. *See id.* at 564 (plaintiff's challenge to the agency's rescission of the rule after the CRA process was a "claim [that] necessarily involves a challenge to a congressional 'determination, finding, action or omission' under the CRA"). Because the agency acted under the CRA, and because the relief sought would nullify the resolution, Section 805 stripped the court of jurisdiction. *See id.* The court emphasized that Congress's intent, preclude judicial review was "fairly discernible" from the statutory scheme. *Id.* at 563. It does not matter if the plaintiff frames the claim as a challenge to agency action—the challenge is still covered by the plain text of the act, and the bar applies. *Id.* at 563–64.

The D.C. and Tenth Circuits have similarly enforced Section 805's bar against CRA challenges. *See Wash. All. of Tech. Workers v. DHS*, 892 F.3d 332, 346 (D.C. Cir. 2018) (holding that § 805 forecloses review of claim that rule was invalid for taking effect fewer than 60 days after publication, where the CRA mandates a 60 day waiting period); *Montanans for Multiple Use*, 568 F.3d at 229 (holding that § 805 bars review of claim that agency violated CRA by failing to report plan amendments, because the statute "denies courts the power to void rules on the basis of agency

---

*Fin. Bd.*, 1998 WL 842181, at *7 n.15 (W.D. Tex. June 25, 1998), *aff'd*, 201 F.3d 551 (5th Cir. 2000) (Section 805 barred judicial review of agency omission to submit rule); *United States v. Am. Elec. Power Serv. Corp.*, 218 F. Supp. 2d 931, 949 (S.D. Ohio 2002) (same); *but see United States v. S. Ind. Gas & Elec. Co.*, 2002 WL 31427523, at *4–5 (S.D. Ind. Oct. 24, 2002) (Section 805 jurisdictional bar applies only to congressional action). Even were this Court persuaded by the stand-alone, unpublished position of the Southern District of Indiana, the waivers here, unlike the action at issue in that case, have already been submitted to Congress and disapproved, making the factual circumstances inapposite.

noncompliance"); *Kan. Nat. Res. Coal.*, 971 F.3d at 1226–28, 1234–38 (discussing legislative history of CRA and dismissing case for lack of subject-matter jurisdiction under the broad jurisdictional bar in § 805); *Via Christi Reg'l Med. Ctr., Inc.*, 509 F.3d at 1271 n.11 (explaining that CRA "specifically precludes judicial review of an agency's compliance with its terms"). These decisions underscore what the text makes plain: Courts lack power to second-guess congressional and executive actions taken under the CRA.

California cannot plead around the CRA's bar. The nature of the claims and the relief that each claim seeks—effectively, restoring the disapproved rules, *see, e.g.*, Compl. ¶¶ 120, 142, 151, 168, 177, 187 (seeking a declaration that the "Resolutions are unlawful, void, and of no effect"); *id.* ¶ 134 (seeking vacatur of the submissions to Congress, which is, in effect, a challenge to the Resolutions); *id.* ¶¶ 121, 135, 143, 152, 169, 178, 188 (seeking an injunction stopping "EPA and its Administrator from giving the Resolutions any legal effect")—confirm that Section 805 blocks this suit.

Last, while the Ninth Circuit has considered a narrow exception to Section 805's broad jurisdictional bar for constitutional claims, it did not engage with the CRA's text or its legislative history and merely invoked the general canon from *Webster v. Doe*, 486 U.S. 592, 603 (1988), requiring a "clear" statement before Congress can foreclose judicial review of constitutional claims. *See Bernhardt*, 946 F.3d at 561. That conclusion is mistaken.

The CRA admits no exception. Section 805 states, "[n]o determination, finding, action, or omission under this chapter shall be subject to judicial review." 5 U.S.C. § 805. That language is absolute. It does not differentiate between statutory and constitutional claims. Instead, it says "[t]his chapter shall apply notwithstanding any other provision of law." *Id.* § 806(a). That unmistakably indicates that Congress intended the bar to override every other source of law. If Congress wanted to exempt constitutional claims from this bar, it would have used specific language to do so. *See Mendoza-Linares v. Garland*, 51 F.4th 1146, 1161 (9th Cir. 2022) (explaining that Congress's express preservation of constitutional claims in one subsection demonstrated its deliberate intent to exclude such claims from review where no similar language appears elsewhere in the statute). In *Mendoza*, the Ninth Circuit held that Congress clearly barred judicial review of an asylum-seeker's

9

constitutional claims. *See id.* at 1148–49. The statute at issue in *Mendoza* states, in part, that "no court shall have jurisdiction to review" certain immigration decisions and claims. *See id.* at 1154 (quoting 8 U.S.C. § 1252(a)(2)). The Ninth Circuit found this language clear enough to overcome the presumption of reviewability for constitutional claims. Section 805 of the CRA uses language that is equally clear: "No determination, finding, action, or omission under [the CRA] shall be subject to judicial review." 5 U.S.C. § 805.

Moreover, *Webster* and its progeny's principle that courts should presume constitutional claims remain reviewable absent a clear statement to the contrary arose in cases involving individual rights, such as liberty, due process, and access to habeas relief.[7] The concern animating those decisions was that Congress cannot, consistent with separation of powers, deny all judicial review when a citizen-claimant asserts a fundamental personal right. That concern does not apply here. This case does not involve liberty or individual rights. It involves institutional power. California asks the courts to prioritize its policy preferences—to preserve its power—over the prerogatives of Congress, which legislates for the entire nation. But California is only permitted to implement its desired regulatory regime if the executive (via the EPA) concludes that certain statutory conditions are met. 42 U.S.C. § 7543(b). California has no independent authority and cannot impose its will on the nation. The CRA reflects a constitutional judgment about internal legislative procedure. That judgment is not subject to judicial oversight—even when framed as a constitutional challenge, barring implication of individual rights.

This Court has no authority to review or reverse the outcome of the legislative process Congress used here. Section 805 requires dismissal of all of Plaintiffs' claims.

---

[7] *See Webster*, 486 U.S. at 596, 603 (individual raising, among others, due process and equal protection claims) (citing *Bowen v. Mich. Acad. of Fam. Physicians*, 476 U.S. 667, 681 n.12 (1986) (individuals raising equal protection and due process claims)); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003) (noting that particularly clear statement is needed to bar review of habeas claims and indicating that the underlying constitutional concern for inability to review constitutional claims lies with particular liberty interests).

**B.    Plaintiffs' challenge presents nonjusticiable political questions.**

Plaintiffs ask this Court to pass judgment on how Congress exercised its internal legislative procedures in enacting the joint resolutions. *See, e.g.*, Compl. ¶¶ 154–63, 171–76. But this Court cannot do what Plaintiffs ask. Plaintiffs present textbook political questions over which federal courts have no authority.

Where a case presents a nonjusticiable political question, the court lacks jurisdiction. *See Corrie v. Caterpillar Inc.*, 503 F.3d 974, 982 (9th Cir. 2007). To determine a political question's presence, this Court considers six equally sufficient factors:

> [1] a textually demonstrable commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Alperin v. Vatican Bank*, 410 F.3d 532, 544 (9th Cir. 2005) (quoting *Baker v. Carr*, 369 U.S. 186, 217 (1962)); *see also Corrie*, 503 F.3d at 980. If any one of these factors is "inextricable" from the case, it is nonjusticiable. *Alperin*, 410 F.3d at 544.

Here, the first factor is "inextricable" from and disposes of the challenges to Congress's internal procedures. The expedited procedures under Section § 802(d) that are challenged here—exempting a CRA resolution from the Senate filibuster, and placing limits on motions and debate, *see* Compl. ¶¶ 157, 172–75; *see also id.* ¶¶ 11, 89–92—are "an exercise of the rulemaking power of the Senate and House of Representatives, respectively," and as such are deemed "a part of the rules of each House, respectively," 5 U.S.C. § 802(g) (noting that either House may "change the rules . . . at any time"). As the Ninth Circuit has explained, a challenge "based on the asserted failure of Congress to comply with its own procedural rules" is a nonjusticiable "political question" that is "beyond [this Court's] power to review." *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1171–72 (9th Cir. 2007) (declining to review claim that Congress, by not holding a hearing on legislation, failed to comply with its own procedural rules).

1      The United States Supreme Court and numerous other courts have agreed and routinely

2  refrained from deciding questions like those Plaintiffs ask this Court to resolve. *See, e.g.*, *United*

3  *States v. Ballin*, 144 U.S. 1, 5 (1892) ("The constitution empowers each house to determine its rules

4  of proceedings."); *Coleman v. Miller*, 307 U.S. 433, 450 (1939) (holding that Congress's treatment

5  of state ratification of constitutional amendment as a nonjusticiable political question); *Made in the*

6  *USA Found. v. United States*, 242 F.3d 1300, 1311–12 (11th Cir. 2001) (holding that political

7  branches' choices of how to handle an international agreement—*i.e.*, whether to have the Senate

8  review and approve it as a "treaty"—was a nonjusticiable political question); *Est. of Braude v.*

9  *United States*, 38 Fed. Cl. 476, 489 (1997) (holding that Congress's application of a statute

10  governing its own process for reviewing compensation claims constituted "political questions for

11  Congress, not this court, to decide"); *Metzenbaum v. Fed. Energy Reg. Comm'n*, 675 F.2d 1282,

12  1286–87 (D.C. Cir. 1982) (per curiam) (holding that a question that would require a court to

13  "construe the rules of the House of Representatives [and] additionally to impose upon the House

14  [the court's] interpretation of its rules" was "political in nature" and therefore nonjusticiable);

15  *Consejo de Desarrollo Economico de Mexicali, A.C.*, 482 F.3d at 1171–72 ("In short, the

16  Constitution textually commits the question of legislative procedural rules to Congress. Thus,

17  whether Congress decides to hold a hearing on legislation applicable to the general public is a non-

18  justiciable political question beyond our power to review."); *Chenoweth v. Clinton*, 181 F.3d 112,

19  116 (D.C. Cir. 1999) (holding that plaintiffs lacked standing to challenge a President's decision

20  implementing a legislative program because their injury was inherently political); *State of Nev. v.*

21  *Watkins*, 914 F.2d 1545, 1556–57 (9th Cir. 1990) (holding challenge to composition of conference

22  committee and resulting legislation as violating Tenth Amendment was nonjusticiable to the extent

23  it sought to require Nevada representation on the Congressional committee).

24      This overwhelming case law confirms that Plaintiffs' claims challenging Congress's internal

25  procedures in enacting the joint resolutions lie beyond the Court's jurisdiction and must be

26  dismissed.

27      Factors two and three of *Baker* also support dismissal. Plaintiffs ask the Court to decide

28  when and how Congress must apply the Congressional Review Act. That question lacks judicially

manageable standards and requires policy judgments about legislative procedure that the Constitution assigns to Congress alone. *See* U.S. Const. art. I, § 1 (granting "[a]ll legislative Powers" to Congress); *see also Nixon v. United States*, 506 U.S. 224, 229–30 (1993) (finding that there are no judicially manageable standard for assessing the Senates conducting of an impeachment trial because the Constitution commits impeachment trials to the Senate). Courts may interpret statutory terms like "rule" under the APA, but Plaintiffs' challenge goes further. It raises institutional concerns about how Congress exercises its own oversight powers under the CRA. Compl. ¶¶ 138, 156–57, 159, 161–64. Plaintiffs do not seek review of agency action. They ask the Court to second-guess Congress's internal decision about whether and when to invoke its disapproval process. That request implicates both the absence of judicial standards and the danger of disrespecting a coordinate branch. The CRA commits review of agency rules to Congress alone.[8]

### C.    Plaintiffs lack standing for their statutory claims challenging EPA's actions under the CRA.

Plaintiffs lack standing to challenge EPA's submission of the waivers as rules or to claim that submission tainted the final resolutions of disapproval. *See id.* ¶¶ 116–20, 126–33, 139. Plaintiffs' alleged injury flows from Congress's resolutions, not EPA's actions. No relief directed at the EPA would redress Plaintiffs' injury. This is because Congress's independent determinations and actions break the causal chain. The legal force and operative effect of Plaintiffs' claimed

---

[8] The other factors also support dismissal. Factor four supports dismissal because resolving Plaintiffs' claims would require the Court to second-guess how Congress exercised its internal procedures, effectively inviting judicial oversight of the legislative process and expressing a clear lack of respect for a coequal branch. *See Metzenbaum*, 675 F.2d at 1287–88 (Courts have declined to resolve questions about internal Congressional proceedings because it is "impossibl[e]" for them to "undertake independent resolution" in situations such as this "without expressing lack of the respect due to coordinate branches of government." (cleaned up)). Finally, factors five and six support dismissal because second-guessing Congress's procedure in enacting of the joint resolutions would undermine the need for finality in legislative decisions and create a serious risk of conflicting pronouncements from the branches on a live policy issue, generating the very interbranch friction and political embarrassment the political question doctrine is meant to prevent. *See, e.g., Zivotofsky ex rel. Zivotofsky v. Clinton*, 566 U.S. 189, 205–06 (2012) (Sotomayor, J., concurring in part) (noting that "courts properly resist calls to question the good faith with which another branch attests to the authenticity of its internal acts"). Prudential considerations should also foreclose review. *See Metzenbaum*, 675 F.2d at 1287–88.

1   injury—the invalidation of the waiver decisions—result directly and solely from the actions of
2   Congress.

3         EPA's transmission of the waivers is neither a legal cause of the injury nor a source of
4   redress. No remedy directed at EPA could alter the fact that Congress permissibly reviewed the
5   waivers and enacted binding statutes that nullified them. Those statutes have the full force of law.
6   They reflect the independent and constitutionally grounded decisions of both Houses of Congress
7   and were presented to and signed by the President under Article I procedures. That chain of lawful
8   legislative action breaks any causal connection between EPA's earlier transmission and Plaintiffs'
9   alleged injury. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("[T]he injury has to
10  be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the
11  independent action of some third party not before the court.'" (citing *Simon v. E. Ky. Welfare Rts.
12  Org.*, 426 U.S. 26, 41–42 (1976)); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (injury
13  must be "fairly traceable to the challenged conduct of the defendant").

14        Plaintiffs cannot overcome this traceability problem by labeling EPA's submission as the
15  cause of their harm. As the Supreme Court made clear in *Bennett v. Spear*, 520 U.S. 154 (1997), "it
16  does not suffice if the injury complained of is 'the result of the independent action of some third
17  party not before the court.'" 520 U.S. at 169 (cleaned up). Here, that third party is Congress itself.
18  EPA's transmission of the waivers did not dictate or compel Congress's disapproval votes. Congress
19  remained entirely free to act or not act. Its independent legislative choice is what triggered the legal
20  consequences at issue here.

21        These interrelated causation and traceability defects are fatal to standing. *See Common
22  Cause v. Biden*, 748 F.3d 1280, 1284 (D.C. Cir. 2014) ("[T]he causation element requires that a
23  proper defendant be sued."). Plaintiffs cannot hold the EPA responsible for an injury caused by
24  Congress. No act of this Court directed at EPA could compel the restoration of waivers invalidated
25  by statute. As in *Common Cause*, Plaintiffs' "alleged injury was caused not by any of the defendants,
26  but by an 'absent third party'"—namely, Congress. *See id.* (quoting *Fla. Audubon Soc'y v. Bentsen*,
27  94 F.3d 658, 663 (D.C. Cir. 1996)).

28

Nor could a court order directed at EPA redress Plaintiffs' asserted injury. The disapproval resolutions are valid acts of Congress. They remain binding regardless of the manner in which EPA transmitted the waivers. A declaration that EPA's submissions were improper would not undo Congress's enactments, nor would it reinstate the waivers. The requested declaration would offer no practical benefit. It would serve only to express judicial disapproval of a completed executive act that has no ongoing effect. Article III forbids such advisory opinions. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) (holding that a court cannot grant relief for a past violation when the relief would not redress the plaintiff's injury and would serve only to declare a violation of law).

Because the injury is not caused by or fairly traceable to EPA and cannot be redressed by relief against EPA, Plaintiffs lack standing to assert their statutory CRA claims.

### D.    The Complaint seeks relief the Court cannot grant.

As already explained, Plaintiffs seek relief that this Court cannot grant. Section 805's judicial-review prohibition "denies courts the power to void rules on the basis of agency noncompliance with the Act." *Montanans for Multiple Use*, 568 F.3d at 229. As such, whether or not EPA correctly submitted the rule to Congress, there is no relief this Court can grant. *See Wash. All. of Tech. Workers*, 892 F.3d at 346 (motion to dismiss may be granted if plaintiff "would not have a claim upon which relief could be granted even with [sufficiently pled] facts" (alteration in original) (quoting *Davis v. District of Columbia*, 158 F.3d 1342, 1349 (D.C. Cir. 1998))).

Further, equitable relief may not be used to undo past completed acts. Injunctions prevent future harm, not past conduct. *See United States v. Or. State Med. Sch.*, 343 U.S. 326, 333 (1952); *City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06 (1983); *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). Here, EPA has completed the submission of the waiver decisions, and the legislative process is complete. Plaintiffs do not credibly allege any imminent agency action or future resolution under the CRA that presents a real and immediate threat of harm. The possibility that similar waivers might be submitted to, or disapproved by, Congress in the future is speculative and too contingent to support equitable relief. *See Bernhardt*, 946 F.3d at 560. The lack of concrete, ongoing harm forecloses any viable remedy.

15

1    Each of these independent grounds requires dismissal.

2
**II.    The Complaint fails to state a claim because the resolutions were lawfully enacted**
3        **and constitutionally valid.**

4    Even if the Court could reach the merits, Plaintiffs' claims still fail as a matter of law.

5    ***Ultra Vires and CRA.*** The gravamen of Plaintiffs' *ultra vires* and CRA claims is that EPA's

6    waivers are not rules and are therefore not subject to the CRA. Compl. ¶¶ 114–21, 136–43. Plaintiffs

7    argue that EPA and the President acted beyond their authority by classifying the waivers as "rules"

8    subject to the CRA. *Id.* ¶¶ 115–19. They contend that these waivers are adjudicatory orders (akin to

9    a license) or individualized determinations rather than rules, and thus not properly submitted to

10   Congress or subject to disapproval. *See id.* Plaintiffs further assert that the CRA does not authorize

11   their disapproval because they are not rules. *Id.* ¶¶ 137–41.

12   But Plaintiffs cannot show that EPA violated any "clear and mandatory" duty. *See Leedom*

13   *v. Kyne*, 358 U.S. 184, 188 (1958); *see also Nuclear Regul. Comm'n v. Texas*, 605 U.S. __, 145 S.

14   Ct. 1762, 1775–76 (2025). To sustain an *ultra vires* challenge against a federal agency, a plaintiff

15   must demonstrate that the agency acted in plain contravention of an unambiguous statutory

16   command. This is a high bar. As the Supreme Court explained in *Leedom v. Kyne*, *ultra vires*

17   jurisdiction exists only when an agency acts "in excess of its delegated powers and contrary to a

18   specific prohibition." 358 U.S. at 188.

19   Here, EPA acted within, rather than in contravention of, a statutory command. The CRA

20   assigns EPA with the task of determining how to classify its actions. 5 U.S.C. § 801 (explaining that

21   the federal agency submits rules under the CRA, implying that federal agencies determine whether

22   to classify their decisions as rules). Plaintiffs identify no statutory provisions (there are none) that

23   forbid EPA from treating waiver decisions like this one as rules. Although Plaintiffs disagree with

24   EPA's determination and ask this Court to override EPA's judgment, EPA's decision is supported

25   by the plain text of the APA and ample caselaw.

26   As noted above, the CRA adopts the APA's broad definition of "rule." 5 U.S.C. § 804(3). A

27   "rule" includes "the whole or a part of an agency statement of general or particular applicability and

28   future effect designed to implement, interpret, or prescribe law or policy." *See* 5 U.S.C. § 551(4).

16

Courts have construed this definition broadly. *See Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 95–96 (2015) (noting the "broad" scope of the rule definition); *Prutehi Litekyan: Save Ritidian v. U.S. Dep't of Air Force*, 128 F.4th 1089, 1107 (9th Cir. 2025) (same). In contrast, adjudicatory orders "resolve disputes among specific individuals in specific cases" and "have an immediate effect on specific individuals (those involved in the dispute)." *Yesler Terrace*, 37 F.3d at 448.

For example, in *Yesler Terrace*, the Ninth Circuit explained that even decisions addressing particular parties can qualify as rules when they establish standards of general applicability that affect the rights of others. *See* 37 F.3d at 448. There, the United States Department of Housing and Urban Development (HUD) authorized a state housing authority to use its eviction procedures in place of federally required grievance hearings. HUD argued this was an "order," not a rule. *Id.* at 445. But the Ninth Circuit held that HUD's determination bore all the characteristics of a rule because it had a prospective effect, applied broadly, and altered the rights of a class of individuals not yet identified. "HUD's determination had no immediate, concrete effect on anyone, but merely permitted [the housing authority] to evict tenants in the future without providing them with informal grievance hearings. At the same time, the determination affected the rights of a broad category of individuals not yet identified." *Id.* at 448.

So too here. EPA's waivers let California (and other states that have adopted them under Section 177 of the CAA) use those standards in place of federally required emissions standards. It thereby prospectively altered the rights of automakers, constrained consumer choice, and reduced the market for gasoline, diesel, and other liquid fuels.

Put simply, Plaintiffs cannot use an *ultra vires* theory to relabel an ordinary interpretive action as unlawful conduct. The doctrine of *ultra vires* review exists to police clear departures from the law. *See, e.g.*, *Nuclear Regul. Comm'n*, 145 S. Ct. at 1775–76. Plaintiffs' failure to identify a "clear and mandatory" duty forecloses this claim.

**APA.** The APA claim fails for a similar reason. As discussed above, the waivers are rules under the CRA/APA definition of "rule." *See supra* pp. 16–17. The APA claims are unreviewable for two additional reasons. First, Plaintiffs cannot avoid the CRA's jurisdictional bar by strategic pleading. Their APA theory is that EPA violated the APA by categorizing the waivers as rules. *See*

17

1   Compl. ¶¶ 126–29 (alleging that "[a]ll of the EPA's actions were predicated on a new (albeit

2   implicit) interpretation of the APA term "rule"). At bottom, Plaintiffs challenge EPA's

3   determination under the CRA. The claim is thus barred by § 805, which strips jurisdiction over any

4   "determination, finding, action, or omission under this chapter."

5       As *Bernhardt* explains, procedural attacks cannot circumvent the CRA's jurisdictional bar

6   when the ultimate goal is to challenge Congress's final disapproval. *See* 946 F.3d at 564. Even when

7   framed as procedural objections, such claims are impermissible if they functionally seek to undo

8   Congress's legislative decision. *See* 5 U.S.C. § 805. In *Bernhardt*, the plaintiff challenged the

9   agency's rescission of a rule as not in accord with the procedures set out in the CRA. The court held

10  that even if that argument targeted agency conduct, it was in substance a challenge to congressional

11  action and was barred by § 805. 946 F.3d at 563–64. Here, although Plaintiffs frame their claim as

12  one challenging an underlying procedural issue (the EPA's "interpretation"), the requested relief

13  would invalidate Congress's resolution, *see* Compl. ¶ 135 ("Plaintiffs are entitled to injunctive

14  relief, enjoining EPA and its Administrator from giving the Resolutions any legal effect"), which

15  means this claim is similarly unreviewable.

16      Second, the APA claims are unreviewable because EPA's decision to submit the waivers to

17  Congress under the CRA is not "final agency action" reviewable under the APA. The APA provides

18  for judicial review only of "final agency action for which there is no other adequate remedy in a

19  court." 5 U.S.C. § 704. In *Bennett v. Spear*, the Supreme Court explained that to be reviewable under

20  the APA, an agency action must satisfy two conditions. It must mark the "consummation" of the

21  agency's decision-making process rather than be merely tentative or interlocutory. 520 U.S. at 178.

22  And it must be one by which "rights or obligations have been determined or from which legal

23  consequences will flow." *Id.* (cleaned up).

24      EPA's determination to submit waivers to Congress under the CRA does not meet *Bennett's*

25  second requirement. While the submission is a procedural step required by statute, it does not itself

26  determine rights or obligations nor create binding legal consequences. Instead, legal consequences

27  flow only if Congress disapproves the rule (which then becomes final legislative action). The

28  decision to submit is merely a conduit step. *Contra* Compl. ¶ 132 (alleging that "the Resolutions

18

1  would not have been enacted" but for EPA's actions). After all, the waivers remained in effect even

2  after EPA submitted them and were not disapproved until the resolutions were passed and signed

3  into law. The only final agency action was EPA's issuance of the waivers themselves, but the later

4  transmittal by EPA to Congress was procedural—it altered no rights and imposed no obligations.

5  　　　Thus, the EPA's submission decision is more like the non-final agency submissions

6  discussed in *Franklin v. Massachusetts*, 505 U.S. 788 (1992), and *Dalton v. Specter*, 511 U.S. 462

7  (1994). In *Franklin*, the Court held that the Secretary of Commerce's report to the President on the

8  results of the census was not final agency action. Although the Secretary played a significant role

9  in the apportionment process, the court reasoned that legal consequences flowed only from the

10  President's subsequent decision to submit the final apportionment to Congress. Because the

11  President—not the agency—made the dispositive legal determination, the agency's report was

12  advisory and nonfinal. *See Franklin*, 505 U.S. at 796–801. Similarly, in *Dalton*, the court held that

13  the Defense Secretary's recommendations under the Base Closure and Realignment Act were not

14  final because they required presidential approval to take effect. Again, legal consequences attached

15  only after the President acted. The agencies' submissions in both cases were essential procedural

16  steps, but neither marked the end of decision-making nor carried legal force on their own. *See*

17  *Dalton*, 511 U.S. at 468–76.

18  　　　Same with EPA's submission here. It was a statutory step that triggered congressional

19  *consideration* under the CRA. It did not create binding rights or obligations and did not determine

20  any legal outcome. The legal consequences—the disapproval of the waiver rules and the resulting

21  prohibition on their reissuance—were achieved by Congress and the President through duly enacted

22  legislation. Like the agency actions in *Franklin* and *Dalton*, EPA's decision to submit the waivers

23  functioned as part of a larger decision-making framework in which final legal authority rested

24  elsewhere. Accordingly, Plaintiffs' APA claims should be dismissed.

25  　　　Moreover, Plaintiffs' theory—that EPA's submission of the waiver decisions to Congress

26  was arbitrary and capricious and did not follow the procedures required by law—would lead to an

27  untenable result: Any time an agency submits a rule to Congress under the CRA, it would have to

28  conduct full notice-and-comment rulemaking just to determine whether the underlying action

qualifies as a "rule." That would convert a ministerial statutory step authorized by Congress into a separate, reviewable agency rulemaking—expressly contrary to the CRA's text, purpose, and structure. Plaintiffs' reading would gut § 805's bar and create the very judicial review process that Congress specifically foreclosed.

*Take Care Clause.* Plaintiffs argue that the President, EPA, and EPA Administrator knew that the waiver decisions were not rules but acted as if they were, thereby failing to honor their constitutional duties to ensure the laws of this Nation were "faithfully execute[d]." *See* Compl. ¶¶ 144–50.

This claim is nothing more than a repackaged statutory claim reflecting disagreement over the meaning of "rule" under the CRA. Alleged statutory violations cannot be converted into Take Care Clause violations. In *Association for Education Finance and Policy, Inc v. McMahon*, --- F. Supp. 3d ---, 2025 WL 1568301, at *12 (D.D.C. June 3, 2025), the court explained that statutory compliance issues do not automatically trigger concerns under the Take Care Clause. *Id.* at *12 (citing *Dalton*, 511 U.S. at 472 (rejecting a similar statutory challenge framed as constitutional)). Similarly, in *Arizona v. Garland*, 730 F. Supp. 3d 258, 283–84 (W.D. La. 2024), the court dismissed a Take Care Clause claim that merely restated APA claims, finding no independent constitutional allegations under the clause.

Furthermore, courts have long held that attempts to challenge executive action under the "Take Care Clause" are nonjusticiable. *See Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 501 (1867) ("[T]he duty of the President in the exercise of the power to see that the laws are faithfully executed" "is purely executive and political," and is therefore not an appropriate subject for judicial intervention.); *see also Nat'l Treasury Emps. Union v. Nixon*, 492 F.2d 587, 614 (D.C. Cir. 1974) (Take Care Clause claims present "political question[s]"); *Citizens for Resp. & Ethics in Wash. v. Trump*, 302 F. Supp. 3d 127, 130 (D.D.C. 2018) ("Whether claims brought directly under the Take Care Clause are even justiciable is open to debate."). They raise political questions.

Here, the President executed his duty by signing the joint resolutions into law. The agencies must now carry them out. That is the very essence of faithful execution.

As for Plaintiffs' Take Care Clause claim against EPA, (that it violated the Take Care Clause by enabling Congress's use of the CRA to disapprove these waivers), *see* Compl. ¶ 150), because these waivers were rules, *see supra* pp. 16–17, and for all the reasons discussed here, these claims also fail.

***Separation of Powers.*** Plaintiffs argue that the CRA resolutions violate foundational separation-of-powers principles. *See* Compl. ¶¶ 153–67. They advance three related theories. First, they claim that Congress unlawfully delegated to the Executive Branch the authority to determine whether the CRA applies at all, by relying on EPA's classification of the waivers as "rules" under 5 U.S.C. § 804(3). *See id.* ¶ 157. They contend this violated Article I, Section 5, which vests each chamber with power to determine its own rules of proceeding. *See id.* ¶¶ 157–62. Second, they argue that Congress's acceptance of EPA's characterization intruded on judicial power under Article III by allowing the Executive to dictate the meaning of statutory terms—an interpretive function reserved to the courts. *See id.* ¶ 163. Third, they assert that because EPA's waiver decisions reflected the application of existing legal standards to a specific factual record, Congress's disapproval amounted to a retroactive override of an adjudicatory decision, rather than the enactment of new law. *See id.* ¶¶ 164–67.

These theories are wrong at each turn. Congress did not delegate any power to the Executive Branch. When Congress acts through the full legislative process, it acts squarely within its constitutional role. *INS v. Chadha*, 462 U.S. 919, 954–55 (1983). That is what happened here. Congress enacted laws under Article I; the President signed those laws. Nothing in the Constitution forbids Congress from legislating in response to agency action or considering agency submissions. It is basic knowledge that Congress routinely relies on agency submissions, committee reports, and outside information when determining how and when to legislate. *See, e.g.*, Library of Congress, *Introduction to the Legislative Process in the U.S. Congress*, Congress.gov (Mar. 10, 2025), https://www.congress.gov/crs-product/R42843 (summarizing the basics of the legislative process and noting that Congressional committees consider, for example, agencies' opinions on bill's strengths and weaknesses when drafting and considering legislation); William T. Egar, *Congressionally Mandated Reports: Overview and Considerations for Congress*, CRS Report (May

14, 2020), https://www.congress.gov/crs-product/R46357 (explaining that "Congress frequently requires the President, departments, agencies, and other entities of the federal government to transmit reports, notifications, studies, and other information" for a variety of purposes, such as to inform congressional decisionmaking"). Doing so does not delegate power or violate structural boundaries. Plaintiffs' suggestion that the CRA required each chamber to independently adjudicate the definitional scope of "rule" before proceeding to a vote, *see* Compl. ¶¶ 157–59, 163, also finds no support in law or logic.

Nor did Congress intrude on Article III. Congress did not accept EPA's view blindly. It decided for itself that the waiver decisions were rules under the CRA. And in any event, courts do not have jurisdiction to review Congress's application of the CRA. *See* 5 U.S.C. § 805. Limiting judicial review in this context is not a constitutional flaw. Article III does not guarantee review of every congressional action. *See Patchak v. Zinke*, 583 U.S. 244, 254 (2018) (noting that Congress's power to restrain the courts from acting is an essential ingredient in separation of powers). And the CRA leaves untouched the courts' authority to interpret the APA in cases that do not implicate determinations, acts, or omissions under the CRA.

Last, it does not matter that the resolutions had consequences for pending regulatory and judicial proceedings. *See* Compl. ¶¶ 164–67. Congress has full authority to override agency actions by statute. When it enacts a resolution under the CRA, it replaces the agency's decision with new law, and the action disapproved "shall not take effect (or continue)." 5 U.S.C. § 801(b)(1).

The Supreme Court has long held that Congress may enact legislation that affects the outcome of pending cases so long as it changes the law itself, rather than dictating results under preexisting law. For example, in *Robertson v. Seattle Audubon Society*, 503 U.S. 429, 438–41 (1992) Congress replaced environmental protections with new statutory provisions that permitted certain logging operations, even though those changes affected ongoing litigation. The court upheld the statute because it amended the governing law rather than ordering courts to reach a particular result under the old regime. The Court reaffirmed this distinction in *Bank Markazi v. Peterson*, 578 U.S. 212, 225–26 & n.17 (2016), explaining that Congress may "amend [] applicable law" even in ways that affect pending litigation, so long as it does not "prescribe [a] rule of decision" in a specific case.

22

That is exactly what happened here. Congress enacted a new law of general applicability through the CRA, withdrawing EPA's waivers and preempting the underlying state law. The fact that the law effects pending litigation does not make it unconstitutional. To the contrary, that is a core feature of Article I lawmaking.

*United States v. Klein*, 80 U.S. (13 Wall.) 128 (1872), where the court held that Congress acted impermissibly, and which was cited in *Bank Markazi*, makes the result here even clearer. *Klein* involved post-Civil War legislation under which persons whose property had been seized during the war could recover funds if they proved they had not aided the rebellion. *Id.* at 131, 139. After the statute was enacted, the President pardoned rebels, and the court held that a presidential pardon operated as a substitute for the proof of loyalty required by the statute. *See United States v. Padelford*, 76 U.S. (9 Wall.) 531 (1870). In response, Congress passed a statute forbidding courts from accepting pardons as evidence of loyalty and requiring dismissal of such claims. *Klein*, 13 Wall. at 129. The court struck down the new law because it altered the legal effect of presidential pardons—an executive power the Constitution commits solely to the President—and directed the judiciary to apply that new interpretation retroactively in pending cases. *Id.* at 147. The statute dictated outcomes under preexisting law without changing the legal rule and thereby intruded on both executive and judicial functions.

Nothing like that happened here. Congress did not redefine the legal effect of an executive act, nor did it instruct the judiciary to reach a particular result under existing law. It enacted a resolution, through constitutionally prescribed procedures, to override EPA's prior decisions and prospectively eliminate their legal effect. That is not usurpation. It is legislation. And it fits squarely within the structural design the Framers adopted to separate powers and assign legislative authority to Congress.

**Federalism.** Plaintiffs' federalism claim, in sum, asserts that Congress's disapproval of California's waivers unlawfully intrudes on state sovereignty. They allege that the Executive and Legislative Branches ignored established procedures and expert determinations to reclassify past EPA adjudications as rules, thereby triggering CRA procedures that bypassed meaningful debate and state input. This maneuver, they argue, stripped California and other states of regulatory

1    authority without proper process or notice, retroactively altered legal standards, and blocked judicial

2    review. *See* Compl. ¶¶ 171–76.

3            This argument misunderstands the structure and text of the CAA, and with it, states' roles in

4    these kinds of congressional procedures. While states play some role in protecting air quality,

5    Congress retained the power to control the role of state authority, given the nationwide implications

6    of any regulation. The CAA expressly preempts state emission standards *unless EPA grants a*

7    *waiver*. *See* 42 U.S.C. § 7543(a)–(b); *see also Arizona v. United States*, 567 U.S. 387, 399 (2012)

8    (noting that "state laws are preempted when they conflict with federal law" or when Congress

9    expresses a clear intent to occupy a field). The waiver provision does not confer an absolute right

10   on California to regulate emissions or mandate sales of specific types of vehicles through a

11   compliance credit system, the costs of which are borne by vehicle consumers nationwide. Rather, it

12   reflects a conditional permission that depends on EPA approval and, by extension, congressional

13   oversight of EPA's decisions. Congress may change, limit, or withdraw that permission at any time

14   through valid legislation. When Congress disapproves a waiver, it exercises its constitutional

15   authority to regulate commerce and set national policy. The Supreme Court has held that Congress

16   may preempt state law so long as it acts within its enumerated powers.

17           Plaintiffs misunderstand the nature of what Congress did here. Congress did not strike down

18   state law or override state authority. It invalidated a federal agency action—EPA's grant of

19   waivers—using procedures Congress itself enacted in the CRA to serve as a democratic check on

20   executive power. The resolutions do not erase state regulations; they nullify federal decisions that

21   had temporarily allowed those regulations to stand. That is an exercise of Congress's constitutional

22   power to regulate commerce and supervise federal agencies.

23           Last, any attempt through federalism arguments to dictate to Congress its own rules cannot

24   stand: Congress retains the right to determine its own rules, absent state interference. *See* pp.6–11.

25           ***Violations of Federal Law by Federal Officials.*** Plaintiffs also seek to hold federal officials

26   liable for carrying out Congress's resolutions. *See* Compl. ¶¶ 179–88. But implementing a duly

27   enacted statute or performing the executive's duties under a statute is not unlawful. *See Franklin*,

28   505 U.S. at 800–01 (courts lack authority to enjoin the President in the performance of discretionary

duties); *see also Cmty. House, Inc. v. City of Boise*, 623 F.3d 945, 965 (9th Cir. 2010) ("[W]hen a public official acts in reliance on a duly enacted statute or ordinance, that official is entitled to qualified immunity." (citing *Grossman v. City of Portland*, 33 F.3d 1200, 1210 (9th Cir. 1994))). This count rises or falls with the others. Because the proceeding claims fail, so too does this claim.

## CONCLUSION

The Proposed Intervenors' Motion to Dismiss should be granted and the Complaint should be dismissed with prejudice.

Dated:   August 6, 2025            Respectfully submitted,

*/s/* Bradley A. Benbrook
Bradley A. Benbrook (SBN 177786)
Stephen M. Duvernay (SBN 250957)
Benbrook Law Group, PC

Steven P. Lehotsky* (DC 992765)
Michael B. Schon* (DC 989893)
Katherine C. Yarger* (CO 40387)
Lehotsky Keller Cohn LLP

*Attorneys for Proposed Intervenors American Fuel & Petrochemical Manufacturers, American Petroleum Institute, and the National Association of Convenience Stores*
* Motion for admission *pro hac vice* forthcoming