Rob Bonta
Attorney General of California
Myung J. Park
Supervising Deputy Attorney General
Katherine Gaumond, State Bar No. 349453
Caitlan McLoon, State Bar No. 302798
Emmanuelle S. Soichet, State Bar No. 290754
Cecilia D. Segal, State Bar No. 310935
M. Elaine Meckenstock, State Bar No. 268861
Deputy Attorney General
1515 Clay Street, 20th Floor
P.O. Box 70550
Oakland, CA 94612-0550
Telephone: (510) 879-0299
Fax: (510) 622-2270
E-mail: Elaine.Meckenstock@doj.ca.gov
*Attorneys for Plaintiff State of California*
(additional counsel on signature pages)

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **STATE OF CALIFORNIA, STATE OF COLORADO, STATE OF DELAWARE, COMMONWEALTH OF MASSACHUSETTS, STATE OF NEW JERSEY, STATE OF NEW MEXICO, STATE OF NEW YORK, STATE OF OREGON, STATE OF RHODE ISLAND, STATE OF VERMONT,** and **STATE OF WASHINGTON,**<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED STATES OF AMERICA, U.S. ENVIRONMENTAL PROTECTION AGENCY, LEE ZELDIN,** in his official capacity as Administrator of the U.S. Environmental Protection Agency, and **DONALD J. TRUMP,** in his official capacity as President of the United States,<br><br>Defendants. | 4:25-cv-04966-HSG<br><br>**PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE BY AMERICAN FREE ENTERPRISE CHAMBER OF COMMERCE ET AL.**<br><br>(Administrative Procedure Act, 5 U.S.C. § 701 et seq.; 5 U.S.C. § 801 et seq.)<br><br>**Date:** October 23, 2025<br>**Time:** 2:00pm<br>**Judge:** Hon. Haywood S. Gilliam, Jr. |

**STATEMENT OF ISSUES TO BE DECIDED**

Should the Court deny the motion filed by American Free Enterprise Chamber of Commerce (AmFree) and several Corn Growers Associations (collectively, Movants) to intervene either as of right or permissively in the above-captioned matter? If the Court grants the motion, should it nonetheless place reasonable conditions on Movants' participation and on this litigation to ensure Plaintiffs are not prejudiced and the case proceeds efficiently?

**INTRODUCTION**

This litigation concerns the legality of Congress's unprecedented attempt, absent administrative or judicial process, to retroactively annul three waivers of Clean Air Act preemption that the U.S. Environmental Protection Agency (EPA) issued to California. Intervention should be denied because Movants' grievances against the EPA waivers are different than this case's dispute over the validity of later-enacted congressional resolutions. Under the Clean Air Act, EPA's waivers can be reviewed in the appropriate court of appeals on petitions filed within 60 days of a waiver's publication in the Federal Register. 42 U.S.C. § 7607(b)(1). Movant AmFree and others filed such petitions seeking review of the three waivers implicated here, and the time to file further challenges to those waivers expired months ago. Movants' request to intervene in this suit to safeguard the same interests that animate their waiver litigation should be rejected.

Movants may not intervene as of right, for two reasons. First, they fail to demonstrate a protectable interest in the congressional resolutions—as opposed to the lawfulness of the EPA waivers—that would be impeded by the disposition in this litigation. Indeed, as to one of the resolutions at issue (the Omnibus resolution), Movants proffer no cognizable interest at all. Second, the United States adequately represents all of Movants' interests.

Movants should not be granted permissive intervention, either. Their intervention risks injecting extraneous issues into the litigation, to Plaintiffs' prejudice. That a second group of similarly situated trade associations has moved to intervene—with the possibility that more might still file—only heightens this risk. To avoid prejudicing Plaintiffs, the Court should deny permissive intervention and allow Movants to present their views as amici curiae instead.

1    Alternatively, if the Court is inclined to grant intervention, Plaintiffs respectfully request
2    that the Court place reasonable limitations on Movants' participation along with certain
3    procedural conditions on all parties to ensure the case proceeds efficiently.

## BACKGROUND

Earlier this year, Congress took the unprecedented and unlawful step of targeting, with resolutions of "rule" disapproval (Resolutions), three Clean Air Act orders that waived preemption of certain emissions standards set by California for new motor vehicles sold in the State. Compl. (ECF 1) ¶¶ 5-7. California has been setting such standards for more than half a century. *Id.* ¶ 33. Since 1967, when Congress generally preempted States from setting new motor vehicle standards, California has done so pursuant to the preemption waivers that EPA must grant, subject to certain limited conditions. *See* 42 U.S.C. § 7543(b)(1).

Each of the three waivers targeted by the Resolutions permits California to enforce specific amendments to its regulatory program, adopted to reduce harmful pollution and protect public health and welfare. These waivers similarly allow other States to adopt and enforce California's regulations as their own. *Id.* § 7507. The first waiver, published in April 2023 (88 Fed. Reg. 20,688 (Apr. 6, 2023)), authorizes the Advanced Clean Trucks (ACT) regulation which requires gradual increases in sales of medium- and heavy-duty zero-emission vehicles in California beginning with model year 2024. Compl. ¶ 44. The second and third waivers, published in early January 2025, authorize the Advanced Clean Cars II (ACCII) and Omnibus regulations, respectively. 90 Fed. Reg. 642 (Jan. 6, 2025); 90 Fed. Reg. 643 (Jan. 6, 2025). ACCII gradually strengthens California's longstanding emission standards for light-duty vehicles (passenger cars and light trucks), including the State's zero-emission-vehicle sales requirements and the exhaust emission standards for criteria pollutants, requiring reductions in smog-forming oxides of nitrogen (NOx) and particulate matter. Compl. ¶ 43. The Omnibus regulation likewise strengthens longstanding state emission standards, requiring substantial reductions in NOx exhaust emissions from new medium- and heavy-duty vehicles. *Id.* ¶ 45. All three of these regulations are crucial parts of California's comprehensive plan to improve the air Californians breathe and meet state and federal air quality standards. *Id.* ¶ 46 (noting tens of millions of Californians are affected by

some of the worst air quality in the Nation).

The unlawful targeting of these waivers began months (or, in the case of ACT, years) after the waivers were granted. EPA reversed the view it had consistently held for decades—shared by the Government Accountability Office—and suddenly declared, without any explanation, that waivers were "rules" within the meaning of the Congressional Review Act (CRA). *Id.* ¶¶ 65, 68-70, 73-77. Relying on EPA's misinterpretation, Congress enacted the Resolutions that purport to invalidate the three waivers. *Id.* ¶¶ 94, 103, 108. The President signed the Resolutions on June 12, 2025. *Id.* ¶ 113. Plaintiff States sued the United States the same day. Plaintiffs seek, *inter alia*, to have the Resolutions declared unconstitutional for violation of separation of powers and federalism principles. *Id.* ¶¶ 153-178.

## LEGAL STANDARD

To intervene as of right under Federal Rule of Civil Procedure 24(a)(2), a movant must show that: (1) the motion is timely; (2) the movant has a "significantly protectable interest" in the subject of the action; (3) disposition of the action may, as a practical matter, impair or impede the movant's ability to protect that interest; and (4) the movant's interest is inadequately represented by the existing parties. *E. Bay Sanctuary Covenant v. Biden*, 102 F.4th 996, 1001 (9th Cir. 2024). "Failure to satisfy any one of the requirements is fatal to the application." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011).

To intervene permissively under Federal Rule of Civil Procedure 24(b)(1), a movant must show that: (1) independent grounds for jurisdiction exist; (2) the motion is timely; and (3) the movant's claim or defense shares a common question of law or fact with the main action. *United States v. City of Los Angeles*, 288 F.3d 391, 403 (9th Cir. 2002). In exercising its discretion on this issue, a court must consider whether the intervention would "unduly delay or prejudice" the existing parties. Fed. R. Civ. P. 24(b)(3).

Though courts construe Rule 24 broadly in favor of intervention, the movant bears the burden of establishing that the Rule's requirements are met. *See E. Bay Sanctuary Covenant*, 102 F.4th at 1001 & n.2. Conclusory allegations will not suffice. *See Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001).

# ARGUMENT

## I. MOVANTS DO NOT MEET THE STANDARD FOR INTERVENTION AS OF RIGHT

### A. Movants lack a protectable interest that could be impeded by disposition of this case

Movants assert multiple interests in an effort to identify a protectable one that could be impeded here. None suffices.

Movants claim their "members have a legally protectable right not to suffer the effects of unlawful EPA actions." Mot. 11:21-22; *see also Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078, 1087-88 & n.8 (9th Cir. 2022) (interpreting Rule 24(a)(2) as requiring a *legal* interest). In support, they cite 42 U.S.C. § 7607(b)—the Clean Air Act's judicial review provision—which protects interests in the legality of Clean Air Act actions. But Movants' claimed interest lacks "a relationship" with "the claims at issue" in this litigation because the lawfulness of EPA's waiver actions is not implicated by Plaintiffs' claims. *Cal. Dep't of Toxic Substances Control*, 54 F.4th at 1088 (cleaned up). To illustrate, Movants appear to believe that EPA's waiver decisions were unlawful because, in their view, the relevant California standards are "commercially unfeasible." Mot. 1:26. That claim could be appropriately raised in a petition for review of a waiver pursuant to 42 U.S.C. § 7607(b). *See Motor & Equip. Mfrs. Ass'n v. Nichols*, 142 F.3d 449, 463 (D.C. Cir. 1998) ("technological feasibility" at issue "in the waiver context"). But whether the waiver decisions complied with the Clean Air Act is irrelevant in this suit, where Plaintiffs challenge *other* actions by EPA. *Compare* Mot. 1:22-23 (claiming California's "standards are prohibited by the Clean Air Act"), *with* Compl. ¶¶ 114-188 (raising no Clean Air Act questions).

Nor will any interest in the lawfulness of the waivers be impaired by the disposition of this case. This "litigation does not prevent any individual from initiating suit against" any EPA waiver. *City of Los Angeles*, 288 F.3d at 402. Indeed, AmFree has protected its interests in the lawfulness of EPA's waiver actions by opting to challenge two of them through petitions for review. Mot. 7:25-8:1 & n.8. Contrary to AmFree's conclusory assertions, this litigation will not impede those pending waiver lawsuits. Mot. 12-13. A victory for Plaintiffs here—*e.g.*, a

determination that the Resolutions were not constitutionally enacted—will not alter AmFree's legal claims against EPA's waiver decisions. It is hard to imagine how, for example, disposition of Plaintiffs' separation-of-powers challenge to the Resolutions would "creat[e] Ninth Circuit precedent" relevant to AmFree's arguments challenging the waivers under the Clean Air Act. Mot. 13:4-5. Nowhere do Movants address that analytical gap.[1]

AmFree's reference to its lawsuit challenging an agreement between the California Air Resources Board (CARB) and truck manufacturers (Mot. 13:12-23) fares no better. AmFree filed that case six months before the Resolutions at issue here were signed. Compl., *Am. Free Enter. Chamber of Com. v. Engine Mfrs. Ass'n*, No. 3:24-cv-50504 (N.D. Ill. filed Dec. 16, 2024), ECF 1. True, a ruling in Plaintiffs' favor might require AmFree to revert to the complaint it originally filed (*see* Mot. 13:17-18 (citing amended complaint filed on June 30, 2025 (ECF 103))), unless the case is dismissed (*see* Def. Steven S. Cliff's Mot. to Dismiss Pl.'s Compl., *Am. Free Enter. Chamber of Com. v. Engine Mfrs. Ass'n*, No. 3:24-cv-50504 (N.D. Ill. filed Aug. 14, 2025), ECF 125). But AmFree cites no authority for the proposition that it has a protected interest in avoiding that result.

Even assuming an interest in the lawfulness of the EPA waivers were sufficient to support intervention here, Movants have not met their burden to establish a concrete interest in all three targeted waivers. *See E. Bay Sanctuary Covenant*, 102 F.4th at 1002 (alleged interest must be concrete). No Movant other than AmFree petitioned for review of any of these waivers (Mot. 12:10-13), and AmFree itself declined to seek judicial review of the waiver for ACT (Mot. 12:12-13). Thus, Movants seek to intervene as of right based on interests they opted not to protect through the established means for doing so under the Clean Air Act. In addition, the motion does not establish that *any* of the Movants has an interest in the lawfulness of the Omnibus waiver, much less the Omnibus Resolution. Movants claim such an interest based on a

---

[1] Movants may point out on reply that EPA has moved to dismiss AmFree's petitions for review of the ACCII and Omnibus waivers. That does not support intervention. AmFree could request its cases be held in abeyance pending the resolution of this matter, to protect its interests should Plaintiffs prevail here. If AmFree concedes to dismissal, that only increases the likelihood that AmFree will attempt to inject its arguments concerning the legality of the waivers into this suit, improperly expanding its scope. *See infra* 7:17-8:3.

mischaracterization of the Omnibus regulation as setting NOx emissions standards "so low that, in practice, manufacturers are incentivized to sell electric vehicles and engines to comply." Mot. 4:4-5; *see also id.*, Ex. C ¶ 14 (incorrectly describing Omnibus regulation as requiring increases in "share of electric powertrains sold in California"). But the single sentence from California's rulemaking documents on which that claim is based is not even about the stringency of the NOx emission standards.[2] Rather, it refers to credits that manufacturers could choose to earn as an alternate means of compliance, primarily in early model years that have already ended.[3] Nothing in that sentence establishes that Movants have any ongoing interest in the Omnibus regulation.

Finally, Movants assert an interest in defending the legality of measures they supported. Mot. 12:7-8. But the only support for the Resolutions identified are two website posts applauding Congress's actions *after the fact*. *See* Mot. 8:1 & n.9. To the extent Movants cite deeper engagement similar to that undertaken by the intervenors in *Idaho Farm Bureau Federation v. Babbitt*, *Sagebrush Rebellion, Inc. v. Watt*, and *Idaho v. Freeman* (cited at Mot. 12), that engagement once again relates to the waivers—and then, only one of them—not the post-waiver actions and Resolutions at issue here. *See* Mot. 7:20-25.

**B.     Movants' interests are adequately represented by Federal Defendants**

A "presumption of adequacy of representation" arises when a proposed intervenor and an existing party share the "same ultimate objective," or when "the government is acting on behalf of a constituency that it represents." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003). "This presumption of adequacy is nowhere more applicable than in a case where the Department of Justice deploys its formidable resources to defend the constitutionality of a congressional enactment." *Freedom from Religion Found., Inc.*, 644 F.3d at 841.

Movants make no mention of this presumption. Instead, they seek to avoid it by arguing that their objectives "may diverge" from those of the federal government at some point, citing the

---

[2] CARB, *Omnibus Program Initial Statement of Reasons*, at I-36 (June 23, 2020), https://perma.cc/32CP-SSV8 (discussing "proposed revisions to the ABT [averaging, banking, and trading] program").

[3] *Id.* at I-36 (cross-referencing "Chapter III, Section A.7"); *id.* at III-73 (proposing to allow transfer of "credits generated from 2010 through 2021 MY engines"); *id.* at III-76 (describing incentives "especially" for "years before" model year 2024).

government's history of reversing course on two (out of more than 75) earlier waivers. Mot. 14:11-17; Compl. ¶ 41.[4] But changing course on an administrative action is not the same as changing course on a statute. Most relevant here, should the U.S. Department of Justice later wish to refrain from defending the constitutionality of the Resolutions at issue, it would have to submit a report to Congress divulging and explaining that decision pursuant to 28 U.S.C. § 530D(a)(1)(B)(ii), at which point Movants may renew their motion to intervene, *see Or. Nat. Res. Council v. Allen*, No. CV 03-888-PA, 2003 WL 27386127, at *3 (D. Or. Nov. 4, 2003). Put simply, Movants' reliance on a limited history of non-analogous actions by the federal government fails to render the presumption of adequacy inapplicable. And the possibility of "divergent litigation choices" (Mot. 14:25), without more, cannot overcome it. *See Arakaki*, 324 F.3d at 1086 ("Where parties share the same ultimate objective, differences in litigation strategy do not normally justify intervention.").

## II.   MOVANTS DO NOT MEET THE STANDARD FOR PERMISSIVE INTERVENTION

Movants likewise fail to establish that permissive intervention is warranted. As described above, Movants' interests center on the lawfulness of the waivers, which are more properly vindicated through existing lawsuits under the Clean Air Act (to the extent Movants opted to do so to protect their interests). While Movants represent that they will pursue defenses that hew to Plaintiffs' claims, their intervention motion provides strong indications that they are likely to raise certain facts or issues that stray beyond them, prejudicing Plaintiffs. For example, Movants seem to want to litigate the lawfulness of EPA's waiver decisions, which is not at issue here. *E.g.*, Mot. 1:22-23 (claiming California's "standards are prohibited by the Clean Air Act"); *id.* at 1:26-28 (asserting standards are "commercially unfeasible" and have had various adverse effects); *id.* at 14:18-19 (complaining courts have not "reached the merits of the underlying statutory question whether [certain waivers] comply with the Clean Air Act"). Movants also offer argumentative and incorrect characterizations of myriad other issues that are unrelated to this litigation, including the legality of an agreement AmFree is challenging elsewhere (*id.* at 8:2-9), the costs

---

[4] Movants incorrectly assert that "the Bush EPA denied the ACC I waiver in 2008" and "the Obama EPA granted it in 2013." Mot. 14:15-16. The 2008 denial involved a different waiver request that was granted in 2009. 74 Fed. Reg. 32,744 (July 8, 2009).

1  and benefits of electric vehicles (*id.* at 4:8-5:1; *id.* at 6:10-28), and the operation of California
2  regulations (*supra* 5:22-6:8 (discussing Movants' mischaracterization of Omnibus NOx
3  standards)). But "[i]ntervention cannot be used as a means to inject collateral issues into an
4  existing action." *Apple Inc. v. Iancu*, No. 5:20-cv-06128-EJD, 2021 WL 411157, at *5 (N.D. Cal.
5  Feb. 5, 2021); *accord Arakaki*, 324 F.3d at 1086. To allow otherwise would unduly prejudice the
6  adjudication of Plaintiffs' case. *See* Fed. R. Civ. P. 24(b)(3).

7       Movants' participation as intervenors may further prejudice Plaintiffs by introducing
8  duplication and delay. Already, a second group of industry trade associations representing similar
9  interests, and proposing to make similar legal arguments, has moved to intervene defensively.
10 *Compare* Mot. 6-7 (alleging economic harms to fuel producers and others), *with* Am. Fuel &
11 Petrochemical Mfrs. et al. (AFPM) Mot. to Intervene (ECF 61) 7-8 (same); *compare also* Mot.,
12 Ex. I at 11-14, 16-18 (proposed motion to dismiss making arguments under Section 805 of the
13 CRA, standing doctrine, and the political question doctrine), *with* AFPM Mot., Ex. E at 6-15
14 (same). More putative intervenors may follow. Plaintiffs thus face the prospect of having to
15 respond—on behalf of 11 States, each with its own internal approval process—to multiple
16 motions involving complex legal questions from several sets of adverse parties. To prevent this
17 already complex case from becoming unmanageable, the Court should exercise its discretion and
18 decline to permit these Movants intervention. *See Stringfellow v. Concerned Neighbors in Action*,
19 480 U.S. 370, 380 (1987) ("[I]n a complex case . . . a district judge's decision on how best to
20 balance the rights of the parties against the need to keep the litigation from becoming
21 unmanageable is entitled to great deference."). The Court could instead allow these Movants to
22 present their views in an amicus brief. *See United States v. De Leon Guerrero*, 4 F.3d 749, 756
23 (9th Cir. 1993) (affirming district court decision to deny permissive intervention but allow
24 movant to participate as amicus curiae). Certainly, *both* sets of entities seeking to intervene as
25 defendants should not be allowed to do so. As noted, the two groups of movant-intervenors assert
26 similar interests and intend to present similar arguments (which almost certainly overlap with the
27 arguments Federal Defendants will make).
28

### III. IF THE COURT GRANTS INTERVENTION, IT SHOULD IMPOSE REASONABLE CASE MANAGEMENT CONDITIONS

If the Court nonetheless intends to grant these Movants intervention, and in light of the concerns identified above, Plaintiffs respectfully request that it impose the following reasonable limitations on their participation:

(1) Movants shall not initiate discovery;

(2) Movants' arguments and defenses shall be limited to those claims and issues raised in any operative complaints; and

(3) if Movants and AFPM are both granted intervention, they should be required to jointly brief and argue all dispositive motions.[5]

In addition, Plaintiffs respectfully request that the Court impose the following procedural conditions on all parties, including all intervenors:

(1) the parties must meet and confer at least two weeks before the filing of any dispositive motion and submit a joint proposed briefing schedule to the Court at least one week before the motion's filing; and

(2) the combined total page limit of any intervenor briefs on any dispositive motion must be limited to two-thirds of the page limit allowed to the original parties that the intervenor is supporting. In other words, defendant-intervenors would, collectively, be limited to two-thirds the pages available to Federal Defendants, and plaintiff-intervenors would, collectively, be limited to two-thirds the pages available to Plaintiff States.

Such conditions are authorized under Federal Rule of Procedure 24(a) and 24(b), are routinely applied, and will help promote judicial efficiency. *See Stringfellow*, 480 U.S. at 382-83 & n.2 (Brennan, J., concurring in part and concurring in the judgment) (confirming district courts have discretion to limit intervention as of right and even more discretion to limit permissive intervention (citing Advisory Committee Notes, Fed. R. Civ. P. 24)); *Defenders of Wildlife v. U.S. Fish & Wildlife Serv.*, Nos. 21, 26, 17, 2021 WL 4552144, at *3 (N.D. Cal. May 3, 2021) (barring

---

[5] This should not pose any practical difficulty, as the counsel who signed AFPM's papers also works at a firm representing Movants. *See Bradley A. Benbrook*, Hicks Thomas, https://perma.cc/LNP5-MVY4 (last visited Aug. 19, 2025).

defendant-intervenors from initiating discovery and directing parties to meet and confer on case schedule allowing for efficient adjudication of anticipated motion to dismiss and motions for summary judgment); *California v. Health & Human Servs.*, No. 17-cv-05738-HSG, 2017 WL 6731640, at *9 (N.D. Cal. Dec. 29, 2017) (limiting issues in the case to those raised by the original parties).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the motion to intervene. In the alternative, Plaintiffs respectfully request that the Court impose the case management conditions described above to avoid prejudice to Plaintiffs.

Dated: August 20, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California
MYUNG J. PARK
Supervising Deputy Attorney General


*/s/ Cecilia D. Segal*
CECILIA D. SEGAL
Deputy Attorney General
455 Golden Gate Ave., Ste. 11000
San Francisco, CA 94102
Telephone: (415) 510-3545
Fax: (510) 622-2270
E-mail: Cecilia.Segal@doj.ca.gov
*Attorneys for Plaintiff State of California*

**PHILIP J. WEISER**
*Attorney General for the State of Colorado*

*/s/ Carrie Noteboom*
CARRIE NOTEBOOM*
Assistant Deputy Attorney General
1300 Broadway, 10th Floor
Denver, CO 80203
(720) 508-6285
Carrie.noteboom@coag.gov

**KATHLEEN JENNINGS**
*Attorney General of the State of Delaware*

By: */s/ Vanessa L. Kassab*
IAN R. LISTON
Director of Impact Litigation
RALPH K. DURSTEIN III
VANESSA L. KASSAB*
Deputy Attorneys General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
vanessa.kassab@delaware.gov

10

| | |
|---|---|
| **ANDREA JOY CAMPBELL**<br>*Attorney General for the Commonwealth of Massachusetts*<br><br>/s/ *Seth Schofield*<br>SETH SCHOFIELD *<br>Senior Appellate Counsel<br>JON WHITNEY*<br>Special Assistant Attorney General<br>Energy and Environment Bureau<br>Office of the Attorney General<br>One Ashburton Place, 18th Flr.<br>Boston, Mass. 02108<br>(617) 727-2200<br>seth.schofield@mass.gov<br>jon.whitney@mass.gov | **CHARITY R. CLARK**<br>*Attorney General for the State of Vermont*<br><br>/s/ *Hannah Yindra*<br>HANNAH YINDRA*<br>Assistant Attorney General<br>Office of the Attorney General<br>109 State Street<br>Montpelier, VT 05609<br>(802) 828-3186<br>Hannah.Yindra@vermont.gov |
| **MATTHEW J. PLATKIN**<br>*Attorney General for the State of New Jersey*<br><br>/s/ *Lisa J. Morelli*<br>LISA J. MORELLI<br>Deputy Attorney General<br>New Jersey Division of Law<br>25 Market Street<br>Trenton, New Jersey 08625<br>(609) 376-2740<br>Lisa.Morelli@law.njoag.gov | **LETITIA JAMES**<br>*Attorney General for the State of New York*<br><br>/s/ *Ashley M. Gregor*<br>ASHLEY M. GREGOR*<br>Assistant Attorney General<br>Environmental Protection Bureau<br>28 Liberty Street, 19th Floor<br>New York, NY 10005<br>(212) 416-8454<br>ashley.gregor@ag.ny.gov |
| **RAÚL TORREZ**<br>*Attorney General for the State of New Mexico*<br><br>/s/ *William Grantham*<br>WILLIAM GRANTHAM*<br>Assistant Attorney General<br>408 Galisteo Street<br>Santa Fe, New Mexico 87501<br>(505) 717-3520<br>wgrantham@nmdoj.gov | **DAN RAYFIELD**<br>*Attorney General for the State of Oregon*<br><br>/s/ *Paul Garrahan*<br>PAUL GARRAHAN*<br>Sr. Assistant Attorney General<br>Oregon Department of Justice<br>1162 Court Street NE<br>Salem, Oregon 97301-4096<br>(503) 947-4540<br>Paul.Garrahan@doj.oregon.gov |

| | | |
|---|---|---|
| 1 | **PETER F. NERONHA** | **NICHOLAS W. BROWN** |
| | *Attorney General for the State of Rhode Island* | *Attorney General for the State of Washington* |
| 2 | | |

/s/ Nicholas M. Vaz
NICHOLAS M. VAZ*
Special Assistant Attorney General
Office of the Attorney General
Chief, Environmental and Energy Unit
150 South Main Street
Providence, Rhode Island 02903
(401) 274-4400 ext. 2297
nvaz@riag.ri.gov

/s/ Alexandria Doolittle
ALEXANDRIA K. DOOLITTLE*
Assistant Attorney General
Office of the Attorney General
P.O. Box 40117
Olympia, Washington 98504-0117
(360) 586-6769
Alex.Doolittle@atg.wa.gov

*Admitted pro hac vice

Pursuant to Local Rule 5-1(i), I attest that all signatories to this document concurred in its filing.

/s/ Cecilia D. Segal
Cecilia D. Segal
Counsel for Plaintiff State of California

OK2025401237
85303750.docx