1  ROB BONTA
   Attorney General of California
2  MYUNG J. PARK
   Supervising Deputy Attorney General
3  KATHERINE GAUMOND, State Bar No. 349453
   CAITLAN MCLOON, State Bar No. 302798
4  EMMANUELLE S. SOICHET, State Bar No. 290754
   CECILIA D. SEGAL, State Bar No. 310935
5  M. ELAINE MECKENSTOCK, State Bar No. 268861
   Deputy Attorney General
6  1515 Clay Street, 20th Floor
   P.O. Box 70550
7  Oakland, CA  94612-0550
   Telephone:  (510) 879-0299
8  Fax:  (510) 622-2270
   E-mail:  Elaine.Meckenstock@doj.ca.gov
9  *Attorneys for Plaintiff State of California*
   (additional counsel on signature pages)

10

11                    IN THE UNITED STATES DISTRICT COURT

12                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                         SAN FRANCISCO DIVISION

14

15

16  **STATE OF CALIFORNIA, STATE OF**          4:25-cv-04966-HSG
    **COLORADO, STATE OF DELAWARE,**
17  **COMMONWEALTH OF**                         **PLAINTIFFS' OPPOSITION**
    **MASSACHUSETTS, STATE OF NEW**             **TO MOTION TO INTERVENE**
18  **JERSEY, STATE OF NEW MEXICO,**            **BY AMERICAN FUEL &**
    **STATE OF NEW YORK, STATE OF**             **PETROCHEMICAL**
19  **OREGON, STATE OF RHODE ISLAND,**          **MANUFACTURERS ET AL.**
    **STATE OF VERMONT,** and **STATE OF**
20  **WASHINGTON,**                             (Administrative Procedure Act,
                                                5 U.S.C. § 701 et seq.; 5 U.S.C. § 801 et seq.)
21                              Plaintiffs,
                                                **Date:      October 23, 2025**
22        v.                                    **Time:      2:00pm**
                                                **Judge:     Hon. Haywood S. Gilliam, Jr.**
23  **UNITED STATES OF AMERICA, U.S.**
    **ENVIRONMENTAL PROTECTION**
24  **AGENCY, LEE ZELDIN,** in his official
    capacity as Administrator of the U.S.
25  Environmental Protection Agency, and
    **DONALD J. TRUMP,** in his official capacity
26  as President of the United States,

27                              Defendants.

28

**STATEMENT OF ISSUES TO BE DECIDED**

Should the Court deny the motion filed by American Fuel & Petrochemical Manufacturers, American Petroleum Institute, and the National Association of Convenience Stores (collectively, AFPM) to intervene either as of right or permissively in the above-captioned matter? If the Court grants the motion, should it nonetheless place reasonable conditions on AFPM's participation and on this litigation to ensure Plaintiffs are not prejudiced and the case proceeds efficiently?

**INTRODUCTION**

AFPM's motion to intervene rests on conclusory arguments and incomplete facts and should be denied for that reason alone. *See Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001) (courts need not accept as true conclusory allegations in a motion to intervene and supporting papers). Among other things, AFPM does not identify the statutory source for its alleged protectable interest; does not acknowledge the presumption of adequate representation that applies; and does not explain what specialized expertise it might contribute that would be relevant to this case.

But even putting those issues aside, AFPM's grounds for intervention are deficient for substantially the same reasons as the grounds raised by American Free Enterprise Chamber of Commerce et al. (AmFree) to support its own motion to intervene. *See* AmFree Mot., ECF No. 49; Pls.' Opp'n to AmFree Mot., ECF 84. As with AmFree, AFPM's asserted protectable interest lies in the lawfulness of the U.S. Environmental Protection Agency's (EPA) decision to grant California's requests for Clean Air Act preemption waivers that authorize enforcement of three sets of state vehicle emissions standards. That legal question is not relevant to this suit, and is better protected via petitions for review under the Clean Air Act challenging the waivers themselves—such as the petitions these associations have already filed (which they do not cite in their papers). AFPM thus cannot show that its interest would be impaired by the Court's resolution of Plaintiffs' claims here. Nor can AFPM overcome the presumption that the federal government will adequately represent its interests. Intervention as of right is not warranted.

Furthermore, and again as with AmFree, AFPM's intervention threatens to expand the scope of the litigation to encompass extraneous issues and facts, prejudicing Plaintiffs. That

1  AmFree has also moved to intervene defensively, and that other groups might still file, adds to the

2  risk of prejudice from undue duplication and delay. The Court should therefore deny AFPM

3  permissive intervention and instead allow AFPM to air its views in an amicus brief.

4      Alternatively, if the Court is inclined to grant intervention, Plaintiffs respectfully request

5  that the Court place reasonable limitations on AFPM's participation along with certain procedural

6  conditions on all parties to ensure the case proceeds efficiently.

7                                        **BACKGROUND**

8      Earlier this year, Congress took the unprecedented and unlawful step of targeting, with

9  resolutions of "rule" disapproval (Resolutions), three Clean Air Act orders that waived

10  preemption of certain emissions standards set by California for new motor vehicles sold in the

11  State. Compl. (ECF 1) ¶¶ 5-7. California has been setting such standards for more than half a

12  century. *Id.* ¶ 33. Since 1967, when Congress generally preempted States from setting new motor

13  vehicle standards, California has done so pursuant to the preemption waivers that EPA must

14  grant, subject to certain limited conditions. *See* 42 U.S.C. § 7543(b)(1).

15     Each of the three waivers targeted by the Resolutions permits California to enforce specific

16  amendments to its regulatory program, adopted to reduce harmful pollution and protect public

17  health and welfare. These waivers similarly allow other States to adopt and enforce California's

18  regulations as their own. *Id.* § 7507. The first waiver, published in April 2023 (88 Fed. Reg.

19  20,688 (Apr. 6, 2023)), authorizes the Advanced Clean Trucks (ACT) regulation which requires

20  gradual increases in sales of medium- and heavy-duty zero-emission vehicles in California

21  beginning with model year 2024. Compl. ¶ 44. The second and third waivers, published in early

22  January 2025, authorize the Advanced Clean Cars II (ACCII) and Omnibus regulations,

23  respectively. 90 Fed. Reg. 642 (Jan. 6, 2025); 90 Fed. Reg. 643 (Jan. 6, 2025). ACCII gradually

24  strengthens California's longstanding emission standards for light-duty vehicles (passenger cars

25  and light trucks), including the State's zero-emission-vehicle sales requirements and the exhaust

26  emission standards for criteria pollutants, requiring reductions in smog-forming oxides of

27  nitrogen (NOx) and particulate matter. Compl. ¶ 43. The Omnibus regulation likewise strengthens

28  longstanding state emission standards, requiring substantial reductions in NOx exhaust emissions

from new medium- and heavy-duty vehicles. *Id.* ¶ 45. All three of these regulations are crucial parts of California's comprehensive plan to improve the air Californians breathe and meet state and federal air quality standards. *Id.* ¶ 46 (noting tens of millions of Californians are affected by some of the worst air quality in the Nation).

The unlawful targeting of these waivers began months (or, in the case of ACT, years) after the waivers were granted. EPA reversed the view it had consistently held for decades—shared by the Government Accountability Office—and suddenly declared, without any explanation, that waivers were "rules" within the meaning of the Congressional Review Act (CRA). *Id.* ¶¶ 65, 68-70, 73-77. Relying on EPA's misinterpretation, Congress enacted the Resolutions that purport to invalidate the three waivers. *Id.* ¶¶ 94, 103, 108. The President signed the Resolutions on June 12, 2025. *Id.* ¶ 113. Plaintiff States sued the United States the same day. Plaintiffs seek, *inter alia*, to have the Resolutions declared unconstitutional for violation of separation of powers and federalism principles. *Id*. ¶¶ 153-178.

## LEGAL STANDARD

To intervene as of right under Federal Rule of Civil Procedure 24(a)(2), a movant must show that: (1) the motion is timely; (2) the movant has a "significantly protectable interest" in the subject of the action; (3) disposition of the action may, as a practical matter, impair or impede the movant's ability to protect that interest; and (4) the movant's interest is inadequately represented by the existing parties. *E. Bay Sanctuary Covenant v. Biden*, 102 F.4th 996, 1001 (9th Cir. 2024). "Failure to satisfy any one of the requirements is fatal to the application." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011).

To intervene permissively under Federal Rule of Civil Procedure 24(b)(1), a movant must show that: (1) independent grounds for jurisdiction exist; (2) the motion is timely; and (3) the movant's claim or defense shares a common question of law or fact with the main action. *United States v. City of Los Angeles*, 288 F.3d 391, 403 (9th Cir. 2002). In exercising its discretion on this issue, a court must consider whether the intervention would "unduly delay or prejudice" the existing parties. Fed. R. Civ. P. 24(b)(3).

Though courts construe Rule 24 broadly in favor of intervention, the movant bears the burden of establishing that the Rule's requirements are met. *See E. Bay Sanctuary Covenant*, 102 F.4th at 1001 & n.2. Conclusory allegations will not suffice. *See Berg*, 268 F.3d at 820.

**ARGUMENT**

## I.  AFPM DOES NOT MEET THE STANDARD FOR INTERVENTION AS OF RIGHT

### A.  AFPM lacks a protectable interest that could be impeded by disposition of this case

AFPM begins by asserting Article III standing. Mot. 6-7. But an intervenor of right need not demonstrate Article III standing unless it "seeks additional relief beyond that which the plaintiff requests." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017); *accord Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078, 1085 (9th Cir. 2022). AFPM does not indicate an intent to do so here, and so the standing inquiry is inapposite. *See* Mot. 9:25-26. To the extent AFPM's standing argument is meant to satisfy Rule 24(a)'s requirement that a proposed intervenor demonstrate a sufficient interest in the litigation, it fails to do so. Unlike standing, Rule 24(a) demands that the interest be protectable "under *some* law." *Berg*, 268 F.3d at 818 (emphasis added); *see also Cal. Dep't of Toxic Substances Control*, 54 F.4th at 1087-88 & n.8 (interpreting Rule 24(a)(2) as requiring a *legal* interest). AFPM makes no effort to identify what that law might be here. Its reliance on *Berg* thus does not "go a long way" toward Rule 24(a)'s requirement, much less satisfy it, as AFPM must. Mot. 8:22-25.

Filling in the blanks, it appears that, as with AmFree, AFPM relies on the Clean Air Act's judicial review provision as the requisite legal protection for AFPM's asserted interests in the case. That is presumably why AFPM repeatedly cites *Diamond Alternative Energy, LLC v. EPA*, 145 S. Ct. 2121 (2025), in which petitioners challenged an EPA waiver action under the Clean Air Act. *See, e.g.*, Mot. 6:11-20, 8:8-25. But the lawfulness of EPA's waiver actions under that Act is not at issue here. *See* Compl. ¶¶ 114-188 (raising no Clean Air Act questions). As with AmFree, then, AFPM's failure to demonstrate a "relationship between [its] legally protected interest and the claims at issue" is fatal to its intervention as of right. *Cal. Dep't of Toxic Substances Control*, 54 F.4th at 1088 (cleaned up).

AFPM also appears to evoke the protection of the Clean Air Act when it asserts an interest in preserving what AFPM describes as the Act's "uniform national framework" for motor vehicle emission regulation. *See* Mot. 2:15-16; *see also, e.g.*, Mot. 8:6. But the Clean Air Act establishes no such framework and thus protects no such interest. To the contrary, the effect of the Clean Air Act is that new "motor vehicles must be either 'federal cars' designed to meet EPA's standards *or* 'California cars' designed to meet California's standards." *Motor & Equip. Mfrs. Ass'n v. Nichols*, 142 F.3d 449, 453 (D.C. Cir. 1998) (citation omitted) (emphasis added). AFPM's preferred uniform national framework for vehicle emission regulation did not exist before the Clean Air Act, and Congress expressly opted *not* to create such a framework in the statute. 42 U.S.C. § 7543(b)(1). Indeed, California has been regulating these emissions since the 1950s— pursuant solely to state law authority until enactment of the Clean Air Act preemption provision in 1967, and pursuant to preemption waivers ever since. *See Am. Trucking Ass'ns, Inc. v. EPA*, 600 F.3d 624, 626 (D.C. Cir. 2010) ("As to regulating emissions from *mobile* pollution sources like automobile engines, EPA and the States . . . share responsibility . . . .").[1]

AFPM also fails to demonstrate how the disposition of this case will impair its interest in the lawfulness of the EPA waivers. "Th[is] litigation does not prevent any individual from initiating suit" to challenge a particular waiver. *City of Los Angeles*, 288 F.3d at 402. Indeed, each of these associations has done just that and collectively filed cases challenging the three waivers targeted by the Resolutions—though AFPM makes no reference to that fact in its papers. *See Am. Fuel & Petrochemical Mfrs., Nat'l Ass'n of Conv. Stores, et al. v. EPA*, No. 25-1085 (D.C. Cir.) (petition for review of ACCII waiver); *Am. Petroleum Inst. v. EPA*, No. 25-1478 (9th Cir.)

---

[1] AFPM hails the need for "national uniformity" (Mot. 1:24), yet also complains that the California standards amount to "a de facto national vehicle standard" (Mot. 2:1-2). AFPM cannot have it both ways. In any event, as AFPM elsewhere acknowledges (Mot. 3:15-18), EPA's standards, not California's, apply in all States unless and until a State chooses to adopt a California standard instead. Plaintiff States have done so, but those independent choices by separate sovereigns do not make California a national vehicle regulator. Indeed, the States that have adopted the ACCII, ACT, and Omnibus standards represent a minority of the national vehicle market. *See Section 177 States Regulation Dashboard*, CARB, https://perma.cc/4AZ7-94F8 (last updated Apr. 2025) (showing that States that have adopted ACCII account for 30.1% of new light-duty vehicle registrations; States that have adopted ACT account for 25.4% of new heavy-duty vehicle registrations; and States that have adopted Omnibus account for 23.8% of new heavy-duty vehicle registrations).

1   (petition for review of ACCII waiver); *Am. Fuel & Petrochemical Mfrs. v. EPA*, No. 23-1146

2   (D.C. Cir.) (petition for review of ACT waiver by all three associations); *Am. Fuel &*

3   *Petrochemical Mfrs. v. EPA*, No. 25-1083 (D.C. Cir.) (petition for review of Omnibus waiver).

4   Because those petitions involve claims under the Clean Air Act, disposition of Plaintiffs' distinct

5   claims in this case will not affect them. *See supra* 4:24-28.[2]

6        Finally, even accepting *arguendo* that AFPM's interest in the lawfulness of certain waivers

7   is at issue here, AFPM establishes no such interest in at least one of the Resolutions. *See E. Bay*

8   *Sanctuary Covenant*, 102 F.4th at 1002 (alleged interest must be concrete). Whatever interest

9   AFPM has in "EV mandates" (Mot. 2:9) is not implicated by the Resolution purporting to

10  disapprove the Omnibus waiver. The Omnibus regulation reduces emissions of particulate and

11  smog-forming pollutants from vehicles with exhaust emissions. AFPM concedes its alleged

12  interest is not implicated by that regulation, much less the Resolution targeting its waiver. Mot.

13  7:26-8:5 (alleging interest only in ACCII and ACT).[3]

14      **B.    AFPM's interests are adequately represented by Federal Defendants**

15       AFPM fails to show that Federal Defendants will not adequately represent its interests.

16  AFPM attempts to stake out its influence by claiming to "speak[] for the workers, consumers, and

17  communities that rely" on the fuel supply industry. Mot. 2:13-14. That claim is unsubstantiated.

18  These trade associations represent companies—fuel producers, refiners, distributors, and

19  retailers—not individual employees and customers or the broader public. *See id.*, Ex. A ¶¶ 3, 5;

20  Ex. B ¶¶ 3-4; Ex. C ¶¶ 3, 5-6; Ex. D ¶¶ 1-2.

21       In any event, AFPM does not acknowledge, let alone try to overcome, the presumption of

22  adequacy that arises when, as here, a proposed intervenor and an existing party "have the same

23  ultimate objective." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003). AFPM's

---

24       [2] AFPM may point out on reply that EPA has moved to dismiss the petitions for review of
25  the ACCII and Omnibus waivers. That does not support intervention. The associations could
    request their cases be held in abeyance pending the resolution of this matter, to protect their
26  interests should Plaintiffs prevail here. If the associations concede to dismissal, that only
    increases the likelihood that AFPM will attempt to inject arguments concerning the legality of the
27  waivers into this suit, improperly expanding its scope. *See infra* 7:19-8:6.
         [3] In fact, none of these California regulations is an "EV mandate." Some of the provisions
28  of ACCII and ACT require the sale of *zero-emission* vehicles, but those vehicles need not be EVs.
    *E.g.*, Cal. Code Regs., tit. 13, § 1962.4(b).

1  argument that these objectives "may diverge" (Mot. 9:11) is "long on generalizations and short on

2  specifics." *Or. Nat. Res. Council v. Allen*, No. CV 03-888-PA, 2003 WL 27386127, at *1 (D. Or.

3  Nov. 4, 2003). Unlike the proposed intervenors in *California ex rel. Lockyer v. United States*,

4  AFPM fails to present "direct evidence" of any conflict that could affect litigation strategy. 450

5  F.3d 436, 444-45 (9th Cir. 2006). AFPM's cited legal authority is thus distinguishable and in fact

6  underscores that the presumption of adequacy applies here, requiring a "very compelling

7  showing" to rebut it. *Id.* at 443; *see also id.* at 444 ("Arguably, this [presumption] is nowhere

8  more applicable than in a case where the Department of Justice deploys its formidable resources

9  to defend the constitutionality of a congressional enactment.").

10      Even assuming AFPM is correct that no *current* party represents fuel producers' interests

11  (Mot. 2:13, 9:9), AmFree has already moved to intervene to fill that purported gap. *Compare id.*

12  7-8 (alleging economic harms to fuel producers and others), *with* AmFree Mot. 6-7 (same);

13  *compare also* Mot., Ex. E at 6-15 (proposed motion to dismiss making arguments under Section

14  805 of the CRA, standing doctrine, and the political question doctrine), *with* AmFree Mot., Ex. I

15  at 11-14, 16-18 (same). Intervention by neither is warranted, and certainly not by both.

16  **II.   AFPM DOES NOT MEET THE STANDARD FOR PERMISSIVE INTERVENTION**

17      AFPM does not qualify for permissive intervention under Rule 24(b). As described above,

18  its interests focus on the lawfulness of EPA's waivers. Those interests are more properly

19  vindicated through existing lawsuits under the Clean Air Act. AFPM may nonetheless attempt to

20  litigate those issues here, even though they are irrelevant to Plaintiffs' claims. For example,

21  AFPM's papers suggest it wants to assert a kind of conflict preemption argument as to federal

22  emission standards. Mot. 1:18 ("California's regulations would have . . . conflicted with uniform

23  federal rules"). AFPM accordingly seeks to impose a "uniform national framework" for new

24  motor vehicle emissions. *Id.* at 2:15-16; *see also id.* at 8:6 (objecting to "divergent . . . regulatory

25  regimes"). But this case—which concerns the lawfulness of three specific congressional

26  resolutions targeted at three specific waivers—provides no such opportunity. Nor should the

27  Court expand the case to do so. Similarly, AFPM's interest in the lawfulness of these waivers, *see*

28  *supra* 4:24-28, is simply not germane to Plaintiffs' challenges to the lawfulness of the actions the

1    federal government took *after* EPA granted the waivers. Underscoring the point, AFPM

2    misleadingly states—as though it were a fact—that the "statutory criteria" for a waiver include

3    that the "regulations aim to address local air quality concerns." Mot. 3:20-21. Far from a fact, this

4    is AFPM's *interpretation* of the Clean Air Act—one they are litigating on petitions for review of

5    multiple waivers. *E.g.*, *Ohio v. EPA*, 98 F.4th 288, 299 (D.C. Cir.), *rev'd and remanded sub nom.*

6    *Diamond Alt. Energy, LLC v. EPA*, 145 S. Ct. 2121 (2025). "Intervention cannot be used as a

7    means to inject collateral issues into an existing action." *Apple Inc. v. Iancu*, No. 5:20-cv-06128-

8    EJD, 2021 WL 411157, at *5 (N.D. Cal. Feb. 5, 2021). AFPM threatens to do just that, to

9    Plaintiffs' prejudice. At a minimum, AFPM's intervention is likely to lead to unnecessary

10   disputes about the case's scope, wasting judicial and party resources.[4]

11       AFPM's intervention is also likely to lead to duplication and delay. As noted, AmFree's

12   pending motion to intervene—which Plaintiffs oppose—alleges similar interests in the case and

13   proposes to make similar legal arguments. *Supra* 7:11-15. Additional motions to intervene on the

14   side of Federal Defendants may follow. Plaintiffs thus face the prospect of having to respond—on

15   behalf of 11 States, each with its own internal approval process—to multiple motions involving

16   complex legal questions from several sets of adverse parties, all of which could significantly slow

17   down the case (or require Plaintiffs to respond on untenable deadlines). This Court should

18   exercise its discretion and decline to permit AFPM's intervention to avoid that prejudicial result.

19   *See Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 380 (1987) ("[I]n a complex

20   case . . . a district judge's decision on how best to balance the rights of the parties against the need

21   to keep the litigation from becoming unmanageable is entitled to great deference.").

22       AFPM's conclusory assertions to the contrary are unpersuasive. AFPM states that its

23   participation here would "avoid future duplicative litigation." Mot. 10:8-9. But AFPM seeks to

24   intervene as defendants, not plaintiffs; it does not contend that there is a "separate action that [it]

25   may bring" that could instead be "part of this action," creating judicial efficiency. *In re Wells*

26   *Fargo & Co. Hiring Pracs. Derivative Litig.*, No. 22-cv-05173-TLT, 2023 WL 4536883, at *4

---

27   [4] *California v. Health and Human Services*, 330 F.R.D. 248, 255 (N.D. Cal. 2019) (cited
     at Mot. 9:27-10:1) involved no such risk that the proposed intervenor would expand the scope of
28   the case, rendering it inapposite.

(N.D. Cal. July 13, 2023). To the extent AFPM is referring to its petitions for review of the waivers—which are not mentioned anywhere in AFPM's motion—those petitions raise distinct legal issues in a distinct forum. *See supra* at 5:17-6:5; 42 U.S.C. § 7607(b) (petition for review must be filed in appropriate U.S. Court of Appeals). AFPM also states that it would contribute particular economic and technical expertise to the case. Mot. 10:9-10. But it "has not identified anything 'more' it would contribute" to the issues relevant here—the illegality of the Resolutions—"let alone enough to justify the complications that can arise from having additional parties." *Allen*, 2003 WL 27386127, at *2.

In short, AFPM fails to satisfy the test for permissive intervention. Its participation in the case would be more appropriate, if at all, in an amicus brief. *See id.* at *3 (denying permissive intervention but allowing movant to participate as amicus curiae); *United States v. De Leon Guerrero*, 4 F.3d 749, 756 (9th Cir. 1993) (affirming district court's authority to so order).

### III. IF THE COURT GRANTS INTERVENTION, IT SHOULD IMPOSE REASONABLE CASE MANAGEMENT CONDITIONS

If the Court nonetheless intends to grant AFPM intervention, and in light of the concerns identified above, Plaintiffs respectfully request that the Court impose the following reasonable limitations on AFPM's participation:

(1) AFPM shall not initiate discovery;

(2) AFPM's arguments and defenses shall be limited to those claims and issues raised in any operative complaints; and

(3) if AFPM and AmFree are both granted intervention, they should be required to jointly brief and argue all dispositive motions.[5]

In addition, Plaintiffs respectfully request that the Court impose the following procedural conditions on all parties, including all intervenors:

---

[5] This should not pose any practical difficulty, as the counsel who signed AFPM's papers also works at a firm representing AmFree. *See Bradley A. Benbrook*, Hicks Thomas, https://perma.cc/LNP5-MVY4 (last visited Aug. 19, 2025).

1    (1) the parties must meet and confer at least two weeks before the filing of any dispositive

2    motion and submit a joint proposed briefing schedule to the Court at least one week before the

3    motion's filing; and

4    (2) the combined total page limit of any intervenor briefs on any dispositive motion must be

5    limited to two-thirds of the page limit allowed to the original parties that the intervenor is

6    supporting. In other words, defendant-intervenors would, collectively, be limited to two-thirds the

7    pages available to Federal Defendants, and plaintiff-intervenors would, collectively, be limited to

8    two-thirds the pages available to Plaintiff States.

9    Such conditions are authorized under Federal Rule of Procedure 24(a) and 24(b), are

10    routinely applied, and will help promote judicial efficiency. *See Stringfellow*, 480 U.S. at 382-83

11    & n.2 (Brennan, J., concurring in part and concurring in the judgment) (confirming district courts

12    have discretion to limit intervention as of right and even more discretion to limit permissive

13    intervention (citing Advisory Committee Notes, Fed. R. Civ. P. 24)); *Defs. of Wildlife v. U.S. Fish

14    & Wildlife Serv.*, Nos. 21, 26, 17, 2021 WL 4552144, at *3 (N.D. Cal. May 3, 2021) (barring

15    defendant-intervenors from initiating discovery and directing parties to meet and confer on case

16    schedule allowing for efficient adjudication of anticipated motion to dismiss and motions for

17    summary judgment); *California v. Health & Human Servs.*, No. 17-cv-05738-HSG, 2017 WL

18    6731640, at *9 (N.D. Cal. Dec. 29, 2017) (limiting issues in the case to those raised by the

19    original parties).

20    **CONCLUSION**

21    For the foregoing reasons, Plaintiffs respectfully request that the Court deny the motion to

22    intervene. In the alternative, Plaintiffs respectfully request that the Court impose the case

23    management conditions described above to avoid prejudice to Plaintiffs.

24

25

26

27

28

1    Dated:  August 20, 2025                    Respectfully submitted,

2                                               ROB BONTA
                                               Attorney General of California
3                                               MYUNG J. PARK
                                               Supervising Deputy Attorney General
4

5

6                                               /s/ Cecilia D. Segal
                                               CECILIA D. SEGAL
                                               Deputy Attorney General
7                                               455 Golden Gate Ave., Ste. 11000
                                               San Francisco, CA 94102
8                                               Telephone:  (415) 510-3545
                                               Fax:  (510) 622-2270
9                                               E-mail: Cecilia.Segal@doj.ca.gov
                                               Attorneys for Plaintiff State of California
10

11   **PHILIP J. WEISER**                       **ANDREA JOY CAMPBELL**
     *Attorney General for the State of Colorado*  *Attorney General for the Commonwealth of*
12                                               *Massachusetts*

13   /s/ Carrie Noteboom
     CARRIE NOTEBOOM*                           /s/ Seth Schofield
14   Assistant Deputy Attorney General         SETH SCHOFIELD *
     1300 Broadway, 10ᵗʰ Floor                 Senior Appellate Counsel
15   Denver, CO 80203                           JON WHITNEY*
     (720) 508-6285                             Special Assistant Attorney General
16   Carrie.noteboom@coag.gov                   Energy and Environment Bureau
                                               Office of the Attorney General
17                                               One Ashburton Place, 18th Flr.
                                               Boston, Mass. 02108
18                                               (617) 727-2200
                                               seth.schofield@mass.gov
19                                               jon.whitney@mass.gov
20

21   **KATHLEEN JENNINGS**                      **MATTHEW J. PLATKIN**
     *Attorney General of the State of Delaware*  *Attorney General for the State of New Jersey*
22

23   By: /s/ Vanessa L. Kassab                  /s/ Lisa J. Morelli
     IAN R. LISTON                              LISA J. MORELLI
24   Director of Impact Litigation             Deputy Attorney General
     RALPH K. DURSTEIN III                      New Jersey Division of Law
25   VANESSA L. KASSAB*                         25 Market Street
     Deputy Attorneys General                   Trenton, New Jersey 08625
26   Delaware Department of Justice            (609) 376-2740
     820 N. French Street                       Lisa.Morelli@law.njoag.gov
27   Wilmington, DE 19801
     (302) 683-8899
     vanessa.kassab@delaware.gov
28

                                     11

1
2

**RAÚL TORREZ**
*Attorney General for the State of New Mexico*

3
4

 */s/ William Grantham*
WILLIAM GRANTHAM*
Assistant Attorney General
408 Galisteo Street
Santa Fe, New Mexico 87501
 (505) 717-3520
wgrantham@nmdoj.gov

5
6
7
8
9

**LETITIA JAMES**
*Attorney General for the State of New York*

10
11
12
13
14

*/s/ Ashley M. Gregor*
ASHLEY M. GREGOR*
Assistant Attorney General
Environmental Protection Bureau
28 Liberty Street, 19th Floor
New York, NY 10005
(212) 416-8454
ashley.gregor@ag.ny.gov

15
16

**DAN RAYFIELD**
*Attorney General for the State of Oregon*

17
18
19
20
21

*/s/ Paul Garrahan*
PAUL GARRAHAN*
Sr. Assistant Attorney General
Oregon Department of Justice
1162 Court Street NE
Salem, Oregon 97301-4096
(503) 947-4540
Paul.Garrahan@doj.oregon.gov

22
23
24
25
26
27
28

**PETER F. NERONHA**
*Attorney General for the State of Rhode Island*

*/s/ Nicholas M. Vaz*
NICHOLAS M. VAZ*
Special Assistant Attorney General
Office of the Attorney General
Chief, Environmental and Energy Unit
150 South Main Street
Providence, Rhode Island 02903
(401) 274-4400 ext. 2297
nvaz@riag.ri.gov

**CHARITY R. CLARK**
*Attorney General for the State of Vermont*

*/s/ Hannah Yindra*
HANNAH YINDRA*
Assistant Attorney General
Office of the Attorney General
109 State Street
Montpelier, VT 05609
(802) 828-3186
Hannah.Yindra@vermont.gov

**NICHOLAS W. BROWN**
*Attorney General for the State of Washington*

*/s/ Alexandria Doolittle*
ALEXANDRIA K. DOOLITTLE*
Assistant Attorney General
Office of the Attorney General
P.O. Box 40117
Olympia, Washington 98504-0117
(360) 586-6769
Alex.Doolittle@atg.wa.gov

*Admitted pro hac vice

Pursuant to Local Rule 5-1(i), I attest that all signatories to this document concurred in its filing.

*/s/ Cecilia D. Segal*
Cecilia D. Segal
Counsel for Plaintiff State of California