Brandon Q. Tran (CA Bar No. 223435)
btran@dhillonlaw.com
(949) 340-1968 (voice and fax)
4675 MacArthur Court, Suite 1410
Newport Beach, CA 92660

James K. Rogers*
Ryan Giannetti*
America First Legal Foundation
611 Pennsylvania Ave., SE #231
Washington, D.C. 20003
(202) 964-3721
James.Rogers@aflegal.org
Ryan.Giannetti@aflegal.org

Additional Counsel listed on second page.

***Counsel for Proposed Intervenor-Defendant*, State of Texas**

# IN THE UNITED STATES DISTRICT COURT
## FOR NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| **STATE OF CALIFORNIA, STATE OF COLORADO, STATE OF DELAWARE, COMMONWEALTH OF MASSACHUSETTS, STATE OF NEW JERSEY, STATE OF NEW MEXICO, STATE OF NEW YORK, STATE OF OREGON, STATE OF RHODE ISLAND, STATE OF VERMONT, and STATE OF WASHINGTON**, | Case No.: 4:25-CV-04966-HSG |
| | **STATE OF TEXAS'S MOTION TO INTERVENE PURSUANT TO FRCP RULE 24** |
| Plaintiffs, | **[Filed concurrently with Declaration of Brandon Q. Tran and [Proposed] Order]** |
| v. | Judge:    Haywood S. Gilliam, Jr.<br>Date:    November 6, 2025<br>Time:    2:00 p.m.<br>Place:    Courtroom 2 – 4th Floor |
| **UNITED STATES OF AMERICA, U.S. ENVIRONMENTAL PROTECTION AGENCY, LEE ZELDIN, in his official capacity as Administrator of the U.S. Environmental Protection Agency, and DONALD J. TRUMP, in his official capacity as President of the United States**, | Complaint filed:    June 12, 2025 |
| Defendants. | |

**Ken Paxton**
Attorney General of Texas

**Brent Webster**
First Assistant Attorney General

**Ralph Molina**
Deputy First Assistant Attorney General

**Austin Kinghorn**
Deputy Attorney General for Civil Litigation

**Kellie E. Billings-Ray**
Chief, Environmental Protection Division

**Ian Lancaster***
**Wesley S. Williams***
**Steven Loomis***
Assistant Attorneys General
Office of the Attorney General
Environmental Protection Division
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2012
Ian.Lancaster@oag.texas.gov
Wesley.Williams@oag.texas.gov
Steven.Loomis@oag.texas.gov

* *Pro hac vice application forthcoming*

***Counsel for Proposed Intervenor-Defendant, State of Texas***

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE:** that this Motion to Intervene Pursuant to FRCP Rule 24 shall be heard on November 6, 2025, at 2:00 p.m. before District Judge Haywood S. Gilliam, Jr., located in Courtroom 2, 4th Floor, at the Oakland Courthouse, 1301 Clay Street, Oakland, California 94612.

Pursuant to this Motion, Proposed Intervenor-Defendant State of Texas ("Texas"), by and through its undersigned counsel, will and hereby does respectfully move the Court to intervene as a defendant in this matter, pursuant to Rule 24 of the Federal Rules of Civil Procedure, on grounds that:

- Texas's Motion to Intervene is timely;
- Texas has a significant protectable interest in this litigation;
- Texas's interests would be impaired if intervention is not permitted; and
- Texas's interests are inadequately represented by existing parties.

This Motion to Intervene is based on this Notice of Motion, the Memorandum of Points and Authorities herein, all pleadings, records, and papers on file in this action, and such further evidence and argument as may be presented at the hearing.

DATED: August 19, 2025       By: _/s/ Brandon Q. Tran_____
                             Brandon Q. Tran
                             CA Bar No. 223435
                             btran@dhillonlaw.com
                             4675 MacArthur Court, Suite 1410
                             Newport Beach, CA 92660

                             ***Counsel for Proposed Intervenor-Defendant, State of Texas***

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................... IV

TABLE OF AUTHORITIES ...........................................................................V

STATEMENT OF THE ISSUE .......................................................................1

STATEMENT OF RELEVANT FACTS .........................................................2

    I.     Statutory Background..............................................................2

    II.    Factual & Procedural Background .........................................2

MEMORANDUM OF POINTS AND AUTHORITIES ....................................4

    I.     Introduction ............................................................................4

    II.    Legal arguments ....................................................................5

        A.    Texas is entitled to intervene as of right............................5

            i.     This motion is timely...................................................5

            ii.    Texas has a significant protectable interest in the litigation.......... 6

                a.    The Constitution, and Supreme Court precedent interpreting it, establish that the States have equal sovereignty. ........................................................7

                b.    Texas has a protectable interest in setting its own independent policies and regulations of the environment and vehicles.....................................9

                c.    Texas has a unique and significant interest in protecting vital revenue streams..........................10

                d.    Texas has a protectable interest in defending the well-being of its citizens. ....................................12

            iii. Texas's interests would be impaired if intervention is not permitted... 13

            iv.  Texas's interests are inadequately represented by existing parties.... 14

        B.    Alternatively, this Court should grant permissive intervention.............. 17

    III.   Conclusion ……………………………………………………. 18

# <u>TABLE OF AUTHORITIES</u>

**CASES**

*Alfred L. Snapp & Son, Inc. v. Puerto Rico,*
    458 U.S. 592 (1982) ................................................................................. 8, 9, 12

*Arakaki v. Cayetano,*
    324 F.3d 1078 (9th Cir. 2003) .................................................................... 14

*Berger v. N. Carolina State Conf. of the NAACP,*
    597 U.S. 179 (2022) ................................................................................... 15

*California ex rel. Lockyer v. United States,*
    450 F.3d 436 (9th Cir. 2006) ....................................................................... 6

*California v. EPA,*
    940 F.3d 1342 (D.C. Cir. 2019) ................................................................... 2

*Cascade Nat. Gas Corp. v. El Paso Nat. Gas Co.,*
    386 U.S. 129 (1967) ..................................................................................... 8

*Citizens for Balanced Use v. Montana Wilderness Ass'n,*
    647 F.3d 893 (9th Cir. 2011) ............................................................... passim

*Coyle v. Smith,*
    221 U.S. 559 (1911) ..................................................................................... 7

*Ctr. for Biological Diversity v. U.S. Dep't of the Interior,*
    640 F. Supp. 3d 59 (D.D.C. 2022) ................................................... 7, 13, 16

*Dep't of Fair Emp't & Hous. v. Lucent Techs.,*
    642 F.3d 728 (9th Cir. 2011) ....................................................................... 9

*Diamond Alternative Energy, LLC v. Env't Prot. Agency,*
    145 S. Ct. 2121 (2025) ............................................................................... 10

*Ford Motor Co. v. EPA,*
    606 F.2d 1293 (D.C. Cir. 1979) ................................................................... 2

*Franchise Tax Bd. v. Hyatt,*
    136 S. Ct. 1277 (2016) ................................................................................. 7

*Franchise Tax Bd. v. Hyatt,*
    139 S. Ct. 1485 (2019) ................................................................................. 7

*Greene v. United States,*
    996 F.2d 973 (9th Cir. 1993) ....................................................................... 6

*Karnoski v. Trump,*
    No., C17-01297MJP, 2017 WL 5668071 (W.D. Wash. Nov. 27, 2017) ................................. 9

*Maverick Gaming LLC v. United States,*
    123 F.4th 960 (9th Cir. 2024) .................................................................... 15

v

*New York v. United States*,
505 U.S. 144 (1992) ........................................................................... 7

*Pollard v. Hagan*,
44 U.S. 212 (1845) ............................................................................. 8

*Prete v. Bradbury*,
438 F.3d 949 (9th Cir. 2006) ............................................................. 5

*Smith v. Los Angeles Unified Sch. Dist.*,
830 F.3d 843 (9th Cir. 2016) ........................................................... 14

*Smith v. Marsh*,
194 F.3d 1045 (9th Cir. 1999) ........................................................... 5

*Spangler v. Pasadena City Bd. of Educ.*,
552 F.2d 1326 (9th Cir. 1977) ......................................................... 17

*Sw. Ctr. for Biological Diversity v. Berg*,
268 F.3d 810 (9th Cir. 2001) ............................................................. 6

*Trbovich v. United Mine Workers of Am.*,
404 U.S. 528 (1972) ......................................................................... 14

*U.S. v. City of Los Angeles*, 288 F.3d 391 (9th Cir. 2002) ................. 6, 14

*United States v. Aerojet Gen. Corp.*,
606 F.3d 1142 (9th Cir. 2010) ......................................................... 14

*United States v. Alisal Water Corp.*,
370 F.3d 915 (9th Cir. 2004) ............................................................. 5

*United States v. Oregon*,
839 F.2d 635 (9th Cir. 1988) ........................................................... 13

*United States v. Oregon*,
913 F.2d 576 (9th Cir. 1990) ............................................................. 5

*United States v. Texas*,
339 U.S. 707 (1950) ........................................................................ 8, 9

*Virginia v. West Virginia*,
246 U.S. 565 (1918) ........................................................................... 7

*Washington v. United States Dep't of State*,
318 F. Supp. 3d 1247 (W.D. Wash. 2018) ......................................... 9

*Wildearth Guardians v. Salazar*,
272 F.R.D. 4 (D.D.C. 2010) .......................................................... 9, 16

*Wilderness Soc. v. U.S. Forest Serv.*,
630 F.3d 1173 (9th Cir. 2011) ........................................................... 6

vi

**CONSTITUTIONAL PROVISIONS & STATUTES**

5 U.S.C. § 801(a) .................................................................................................................... 2

5 U.S.C. § 801(b) .................................................................................................................... 2

42 U.S.C. § 7507 ..................................................................................................................... 7

42 U.S.C. § 7521 ..................................................................................................................... 2

42 U.S.C. § 7521(a) ................................................................................................................ 2

42 U.S.C. § 7543(a) ................................................................................................................ 2

42 U.S.C. § 7543(b)(1) ........................................................................................................... 2

H.J. Res. 87, P.L. 119-15, 139 Stat 65 (June 12, 2025) ......................................................... 3

H.J. Res. 88, P.L. 119-16, 139 Stat 66 (June 12, 2025) ......................................................... 3

H.J. Res. 89, P.L. 119-17, 139 Stat 67 (June 12, 2025) ......................................................... 3

Tex. Health & Safety Code § 382.005(b) .............................................................................. 10

Tex. Health & Safety Code § 382.019(a) .............................................................................. 10

Tex. Health & Safety Code § 382.0171(a) ............................................................................ 10

**RULES & REGULATIONS**

Fed. R. Civ. P. 24(b)(3) ........................................................................................................ 17

88 Fed. Reg. 20,688 (Apr. 6, 2023) .............................................................................. 3, 10, 16

90 Fed. Reg. 642 (Jan. 6, 2025) ..................................................................................... 3, 16

90 Fed. Reg. 643, (Jan. 6, 2025) ............................................................................................. 3

Wildearth Guardians, 272 F.R.D. at 18 ................................................................................ 10

Wildearth Guardians, 272 F.R.D. at 19 ................................................................................ 13

**OTHER AUTHORITIES**

7C Wright & Miller, Federal Practice and Procedure § 1904 (3d ed. 2007) ....................... 17

California and major automakers reach groundbreaking framework agreement on clean
emission standards, Cali. Air Res. Bd. (July 25, 2019) https://perma.cc/2PP8-63RJ ............... 8

California and the Clean Air Act (CAA) Waiver: Frequently Asked Questions at 3 (May 9,
2025), https://perma.cc/C98Y-Z23E ............................................................................. 8

Trump EPA to Transmit California Waivers to Congress in Accordance with Statutory
Reporting Requirements (Feb. 14, 2025), https://perma.cc/7H4L-RJ7D ............................... 16

Trump EPA to Transmit California Waivers to Congress in Accordance with Statutory
Reporting Requirements (Feb. 14, 2025), https://perma.cc/7H4L-RJ7D ........................... 3, 16

## STATEMENT OF THE ISSUE

This matter concerns certain waivers previously granted to Plaintiff State of California ("California") under the Clean Air Act ("CAA" or "Act"). Recently, invoking the Congressional Review Act ("CRA"), Congress adopted, and on June 12, 2025, Defendant President Donald J. Trump signed, resolutions declaring California's waivers under the CAA null and void. The same day, California and the other states filed a complaint challenging Congress's invocation of the CRA to invalidate the waivers at issue ("Plaintiff States").

Texas seeks to intervene in this litigation, through this timely Motion, because it has significant protectable interests at stake, those interests would be impaired if intervention is not permitted, and those interests are inadequately represented by existing parties. Thus, Texas requests that it be permitted to intervene as a defendant in this matter.

**STATE OF TEXAS'S MOTION TO INTERVENE**                    **4:25-CV-04966-HSG**

**STATEMENT OF RELEVANT FACTS**

**I.      STATUTORY BACKGROUND**

The CAA authorizes the federal Environmental Protection Agency ("EPA") to prescribe emission standards for the Nation's new motor vehicles. *See generally* 42 U.S.C. § 7521. Although similar standards promulgated by the States are generally preempted by the CAA, *id.* § 7543(a), the EPA may "waive" this preemption for any State that had emission standards in place before March 30, 1966, *id.* § 7543(b)(1). California is the only State that meets this requirement. *California v. EPA*, 940 F.3d 1342, 1345 (D.C. Cir. 2019) (citing *Ford Motor Co. v. EPA*, 606 F.2d 1293, 1296 (D.C. Cir. 1979)). But for California's standards to be allowed, California must first determine that its standards are "at least as protective of public health and welfare as applicable Federal standards." 42 U.S.C. § 7543(b)(1). Even then, the EPA may not issue a waiver if it finds that California's determination was "arbitrary and capricious," the standards were not needed "to meet compelling and extraordinary conditions," or the standards were not consistent with the Act's standards under 42 U.S.C. § 7521(a). *Id.*

The Congressional Review Act ("CRA") was enacted in 1996 as part of the Contract with America Advancement Act of 1996, P.L. 104–121, 110 Stat 847 §§ 251-53 (Mar. 29, 1996). The CRA was designed to give Congress a formal mechanism to oversee and potentially overturn federal regulations issued by executive agencies. The CRA requires agencies to submit new rules to both houses of Congress and the Government Accountability Office ("GAO") before they can take effect, allowing Congress a window of 60 legislative days to pass a "joint resolution of disapproval" of the rule. 5 U.S.C. § 801(a). The CRA imposes expedited legislative procedures that bypass typical legislative hurdles, such as the Senate filibuster. *Id.* If both chambers approve the resolution and the president signs it, the rule "shall not take effect," and a substantially similar rule may not be issued unless authorized by future legislation. 5 U.S.C. § 801(b). Thus, the CRA is an important tool for congressional oversight of the administrative state.

**II.      FACTUAL & PROCEDURAL BACKGROUND**

During President Biden's Administration, the EPA published a series of three Federal Register notices granting CAA waivers for California regulations (collectively, "California Waivers") that would have the effect of prohibiting the sale of new gasoline and diesel cars starting

**STATE OF TEXAS'S MOTION TO INTERVENE**                    **4:25-CV-04966-HSG**

in 2035. *California State Motor Vehicle and Engine Pollution Control Standards; Heavy-Duty Vehicle and Engine Emission Warranty and Maintenance Provisions; Advanced Clean Trucks; Zero Emission Airport Shuttle; Zero-Emission Power Train Certification; Waiver of Preemption; Notice of Decision* ("ACT"), 88 Fed. Reg. 20,688 (Apr. 6, 2023); *California State Motor Vehicle and Engine Pollution Control Standards; Advanced Clean Cars II; Waiver of Preemption; Notice of Decision* ("ACC II"), 90 Fed. Reg. 642 (Jan. 6, 2025); *California State Motor Vehicle and Engine and Nonroad Engine Pollution Control Standards; The ''Omnibus'' Low NOX Regulation; Waiver of Preemption; Notice of Decision* ("Heavy-Duty Omnibus")*,* 90 Fed. Reg. 643, (Jan. 6, 2025). Although two of the California Waivers were published on January 6, 2025, and one was published on April 6, 2023, the EPA initially failed to submit the California Waivers to Congress as required by the CRA, and only submitted them to the GAO and Congress on February 19, 2025. *See* Complaint ¶ 77 and Ex. B; EPA, *Trump EPA to Transmit California Waivers to Congress in Accordance with Statutory Reporting Requirements* (Feb. 14, 2025), https://perma.cc/7H4L-RJ7D.

The House and Senate adopted, and on June 12 President Trump signed, resolutions invoking the CRA and declaring that the California Waivers "shall have no force or effect." H.J. Res. 87, P.L. 119-15, 139 Stat 65 (June 12, 2025); H.J. Res. 88, P.L. 119-16, 139 Stat 66 (June 12, 2025); H.J. Res. 89, P.L. 119-17, 139 Stat 67 (June 12, 2025). That same day, the State of California and ten other States filed this action challenging Congress's invocation of the CRA to invalidate the California Waivers.

The same day this case was filed, this Court issued an Order setting an initial case management conference for September 16, 2025. ECF No. 8. No substantive motions have yet been filed in this case.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Texas respectfully moves under Rule 24 to intervene as a defendant to protect its significant interests in this case. Texas seeks to intervene to protect its sovereign, quasi-sovereign, and proprietary interests, all of which are directly and substantially affected by the outcome of this litigation. The case presents critical questions regarding the balance of state and federal authority, the equal sovereignty of the States, and the economic well-being of Texas and its citizens.

Intervention is both timely and necessary. This litigation is at its earliest stage, with no substantive motions filed and no discovery commenced. Texas has acted promptly, ensuring that its participation will not prejudice existing parties or cause delay. Texas's intervention will contribute to the efficient and just resolution of the legal and factual questions at issue, providing the Court with crucial perspectives that would otherwise be absent.

Texas's interests in this matter are significant and protectable under law. If reinstated, the waivers at the center of this suit would effectively allow California to dictate national vehicle emission standards, undermining the sovereignty of Texas and other States. This would not only impair Texas's authority to regulate within its own borders but would also inflict substantial economic harm by threatening vital revenue streams from oil and gas production, increasing costs for Texas's vehicle fleet, and diminishing the economic well-being of its citizens.

Moreover, Texas's interests cannot be adequately represented by the existing parties. The federal defendants' objectives differ fundamentally from those of Texas, as they focus on defending federal regulatory procedures rather than safeguarding state sovereignty and economic interests. Intervention is thus warranted as a matter of right.

Alternatively, intervention should be granted permissively. Texas's claims share common questions of law and fact with the main action, and its participation will significantly contribute to the development of the record and the just adjudication of the issues presented. Denying intervention would risk leaving Texas's vital interests unprotected and would undermine the principles of federalism and equal sovereignty that are foundational to our constitutional system.

Consistent with Rule 24(c)'s requirement that an intervention motion be "accompanied by a

4

1  pleading that sets out the claim or defense for which intervention is sought," Texas attaches a

2  proposed answer as **Exhibit 1**. However, even though Rule 24 requires a "pleading," Rule 12

3  requires that certain defenses be asserted by motion prior to a responsive pleading. If granted

4  intervention, Texas intends to file a motion to dismiss prior to filing its answer. Accordingly, Texas

5  requests that its Proposed Answer not be automatically filed if intervention is granted.

6  **II.    LEGAL ARGUMENTS**

7       **A.    Texas Is Entitled To Intervene As Of Right.**

8       "An applicant seeking to intervene as of right under Rule 24 must demonstrate that four

9  requirements are met: '(1) the intervention application is timely; (2) the appli-cant has a significant

10 protectable interest ... ; (3) the disposition of the action may, as a practical matter, impair or impede

11 the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent

12 the applicant's interest.'" *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893,

13 897 (9th Cir. 2011) (quoting *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006)).

14      Texas satisfies each of these requirements.

15           **i.    This motion is timely.**

16      This motion is timely. Timeliness is a threshold requirement for intervention as of right and

17 should be considered before all other requirements. *See United States v. Oregon*, 913 F.2d 576, 588

18 (9th Cir. 1990). When deciding whether an applicant's motion is timely, the Ninth Circuit considers

19 three factors: (1) the stage of the proceeding; (2) whether the parties would be prejudiced; and (3)

20 the reason for the delay, if any, in moving to intervene. *See id.*; *United States v. Alisal Water Corp.*,

21 370 F.3d 915, 921 (9th Cir. 2004). In analyzing these factors, courts should bear in mind that "[t]he

22 crucial date for assessing the timeliness of a motion to intervene is when proposed intervenors

23 should have been aware that their interests would not be adequately protected by the existing

24 parties." *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999). The Ninth Circuit has held that an

25 intervention motion was timely when it was filed "less than three months after the complaint was

26 filed and less than two weeks after the [defendant] filed its answer to the complaint." *Citizens for*

27 *Balanced Use*, 647 F.3d at 897.

28      Applying these principles to this case, Texas's motion to intervene is timely because the

**STATE OF TEXAS'S MOTION TO INTERVENE**                    **4:25-CV-04966-HSG**

proceedings are at an early stage, intervention now would not cause prejudice to the original parties, and there has been no delay by Texas in moving to intervene. Plaintiffs filed this suit on June 12, 2025, and, while Defendants have been served, they have not yet answered, and their deadline to do so has not yet passed. As such, this litigation is at its nascent stage—there has been no discovery, no dispositive motions filed, nor any matters of significant weight beyond the filing of the complaint itself. As such, Texas's intervention would be neither unduly burdensome nor time-consuming and would not prejudice the existing parties or other potential intervenors because there will be no need to reopen or re-litigate any prior proceedings between the parties. Thus, Texas's application for intervention as of right should be deemed timely. *See id.* (noting that traditional features of a timely application include being made at an early stage and not causing prejudice or delay).

### ii.   Texas has a significant protectable interest in the litigation.

To warrant intervention as of right, an applicant must have a significant protectable interest relating to the property or transaction that is the subject of the action. *See Citizens for Balanced Use*, 647 F.3d at 897. To demonstrate such an interest, an applicant must establish: (1) its interest is protectable under law and (2) that there is a relationship between the legally protected interest and the claims at issue. *Id.* at 897. "Whether an applicant for intervention demonstrates sufficient interest in an action is a practical, threshold inquiry." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001) (quoting *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993) (citation omitted)). This inquiry is construed "broadly in favor of proposed intervenors." *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011).

There is no "specific legal or equitable interest" that must be demonstrated "to satisfy this test." *U.S. v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002). The Ninth Circuit has held that "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, [it] should, as a general rule, be entitled to intervene…." *Citizens for Balanced Use*, 647 F.3d at 899 (quoting Fed. R. Civ. P. 24 advisory committee's note). Further, the Ninth Circuit has found in other environmental law-related contexts that intervenors generally demonstrate a sufficient interest for intervention of right if they "will suffer a practical impairment of [their] interests as a result of the pending litigation." *California ex rel. Lockyer v. United States*, 450 F.3d

436, 441 (9th Cir. 2006). Thus, a State has a protectable interest where it potentially "would lose significant property and regulatory interests, as well as substantial revenue" because of the litigation. *Ctr. for Biological Diversity v. U.S. Dep't of the Interior*, 640 F. Supp. 3d 59, 68 (D.D.C. 2022).

Texas's interest in the pending litigation supports intervention as of right. The California Waivers significantly damage Texas's sovereign, quasi-sovereign, and proprietary interests. These interests include: defense of equal state sovereignty and authority, including Texas's right not to have California's environmental and emissions regulation imposed upon it; damage to the economic interest and welfare of Texas and its citizens; and defense of substantial and critical state revenue, including increased expenditures for Texas's substantial vehicle fleet, as well as revenue from oil and gas production, including Texas's unique position as the nation's leading producer of oil and gas and its significant mineral holdings.

### a. *The Constitution, and Supreme Court precedent interpreting it, establish that States have equal sovereignty.*

The United States of America "was and is a union of States, equal in power, dignity, and authority, each competent to exert that residuum of sovereignty not delegated to the United States by the Constitution itself." *Coyle v. Smith*, 221 U.S. 559, 567 (1911). Such is further reflected in the fact "the Framers explicitly chose a Constitution that confers upon Congress the power to regulate individuals, not States." *New York v. United States*, 505 U.S. 144, 166 (1992). The notion of "'constitutional equality' among the States," *Franchise Tax Bd. v. Hyatt*, 136 S. Ct. 1277, 1283 (2016) (citation omitted), derives from the Constitution's text and structure and has been treated by the Supreme Court as a "truism." *Virginia v. West Virginia*, 246 U.S. 565, 593 (1918). Equal sovereignty of the States, while "not spelled out in the Constitution," is "nevertheless implicit in its structure and supported by historical practice." *Franchise Tax Bd. v. Hyatt*, 139 S. Ct. 1485, 1498 (2019).

As such, no State should be subjected to disparate treatment of its sovereign authority. Yet, if reinstated, the California Waivers would allow California—and California alone—to dictate motor vehicle emission standards. In theory, other States are allowed to either adopt the standards set by California or reject them. *See* 42 U.S.C. § 7507. However, in practice, the California Waivers

effectively nationalize its emission standards, regardless of whether any of its sister States opt in, as automobile manufacturers have shown they are not willing to produce two sets of vehicles for sale within the United States, opting instead to meet the more stringent California standards. This is because automakers want "nationwide regulatory certainty and a remit from the possibility of a 'patchwork quilt' of numerous and differing state-level regulatory programs for emissions from newly manufactured motor vehicles or newly manufactured motor vehicle engines. Congressional Research Service, *California and the Clean Air Act (CAA) Waiver: Frequently Asked Questions* at 3 (May 9, 2025), https://perma.cc/C98Y-Z23E. Indeed, the California Air Resources Board has explained that California's very *intent* when adopting emissions standards is to create "an alternative path forward for clean vehicle standards *nationwide*" that circumvents federal standards. Press Release, *California and major automakers reach groundbreaking framework agreement on clean emission standards*, Cali. Air Res. Bd. (July 25, 2019) https://perma.cc/2PP8-63RJ (emphasis added).

The effects of this policy are widespread but include limiting the selection of vehicles made available to consumers nationwide, including, as relevant here, Texas. These effects are felt directly by Texas's citizens, on whose behalf Texas may assert their interests. *Cascade Nat. Gas Corp. v. El Paso Nat. Gas Co.*, 386 U.S. 129, 135 (1967) (holding that California was entitled to intervene to protect the interests of its citizens in antitrust because the unlawful merger of two natural gas companies "reduces the competitive factor in natural gas available to Californians"); *see also Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 607 (1982) (in standing context, applying doctrine of *parens patriae*).

The effects of California's policies also affect the State itself because it purchases numerous vehicles for its statewide fleet of operations. Regardless, the California Waivers impermissibly limit the authority and sovereignty of its sister States through the creation of a favored State.

Every State, as a matter of "the constitution" and "laws" of admission is "admitted into the union on an equal footing with the original states." *Pollard v. Hagan*, 44 U.S. 212, 229 (1845). No State may be admitted on either more or less favorable terms than others, and Texas is well aware of this fact. *See United States v. Texas*, 339 U.S. 707, 717 (1950). Equal sovereignty extends beyond

8

1  admission and, as such, Congress may not unequally limit or expand the States' "political and

2  sovereign power[.]" *Id*. at 719.

3       Each State "has an interest in preserving its role in regulating environmental quality within

4  its borders," and this interest is a protectible interest justifying intervention. *Wildearth Guardians*

5  *v. Salazar*, 272 F.R.D. 4, 18 (D.D.C. 2010). California's ability to effectively set nationwide

6  parameters for vehicle emission standards impermissibly and unequally elevates California above

7  its peers on an issue that applies equally to all States and does not concern issues—namely air quality

8  and potential climate change, among others—that exist solely within California's borders.

9  Moreover, it gives California the sole power among States to negotiate with automakers in setting

10  vehicle emission standards. Texas (and other States) should not be placed at a disadvantage

11  regarding their sovereign authority for the sake of allowing California special treatment and the

12  benefits that come with this improper elevation of status to regulate shared issues and interests.

13         **b.    Texas has a protectable interest in setting its own independent**

14              **policies and regulations of the environment and vehicles.**

15       Because the California Waivers would usurp Texas's authority within its own

16  borders, Texas has a protectable interest in defending its own regulatory and policy choices. States

17  have "sovereign interests" in "the exercise of sovereign power over individuals and entities within

18  the relevant jurisdiction," including "the power to create and enforce a legal code." *Alfred L. Snapp*

19  *& Son, Inc. v. Puerto Rico*, 458 U.S. 592, 601 (1982). States also have "sovereign interests" in

20  "recognition from other sovereigns." *Id.; see also*, *Washington v. United States Dep't of State*, 318

21  F. Supp. 3d 1247, 1255 (W.D. Wash. 2018) ("a State has a legally protectable interest if it has a

22  sovereign, quasi-sovereign, or proprietary interest that would be impacted by the litigation") (citing

23  *Dep't of Fair Emp't & Hous. v. Lucent Techs.*, 642 F.3d 728, 753 n.5 (9th Cir. 2011)); *Karnoski v.*

24  *Trump*, No. C17-01297MJP, 2017 WL 5668071, at *2–3 (W.D. Wash. Nov. 27, 2017) (applying

25  *Alfred L. Snapp & Son, Inc.* to protectable interest analysis).

26       Texas has made a number of regulatory and policy decisions about environmental issues and

27  the sale of motor vehicles. Texas has a protectable interest in defending its statutes and policies from

28  the California Waivers, which would abrogate Texas's statutes and policy decisions in three ways.

9

*First*, Texas statute establishes that "[t]o the extent not preempted by federal law, the state has exclusive jurisdiction over the regulation of greenhouse gas emissions in this state." Tex. Health & Safety Code § 382.005(b). The California Waivers are explicitly "designed to achieve long term emission benefits for ... greenhouse gas emissions." ACT, 88 Fed. Reg. at 20,702.

*Second*, Texas's Clean Air Act directs the Texas Commission on Environmental Quality to adopt rules that "shall encourage and may allow the use of natural gas and other alternative fuels, as well as select-use technologies, that will reduce emissions." Tex. Health & Safety Code § 382.0171(a). The California Waivers would usurp this regulatory authority of the Texas Commission.

*Third*, Texas's Clean Air Act empowers the Texas Commission on Environmental Quality to adopt rules that "provide requirements concerning the particular method to be used to control and reduce emissions from engines used to propel land vehicles." Tex. Health & Safety Code § 382.019(a). Because, as explained above, the California Waivers will nationalize standards for greenhouse gas emissions, alternative fuel vehicles, and vehicle emissions, Texas has a protectable interest in the California Waivers, which will interfere with Texas's sovereign interest in creating and enforcing its legal code.

### c. *Texas has a unique and significant interest in protecting vital revenue streams.*

The California Waivers will cause significant economic damage to Texas and its citizens, and a State "has an interest in protecting its financial and socioeconomic stake" in litigation, which is a protectable interest justifying intervention. *Wildearth Guardians*, 272 F.R.D. at 18.

California's emissions standards seek to mandate, and would ultimately culminate with, a scheduling of the complete elimination of the internal combustion engine ("ICE"). Reinstatement of California's vehicle emissions standards will serve to march the rest of the country, willingly or not, to the outlawing of ICEs. One of the many knock-on effects of this effort is an inevitable, permanent, and irreparable blow to oil production in the United States through drastically reduced demand for gasoline. As the Supreme Court very recently noted regarding California's now rescinded emission standards, these "regulations likely cause a decrease in purchases of gasoline

10

and other liquid fuels for automobiles. Indeed, that is the whole point of the regulations." *Diamond Alternative Energy, LLC v. Env't Prot. Agency*, 145 S. Ct. 2121, 2135 (2025).

Texas, as the nation's largest producer of crude oil and natural gas,[1] faces particularized substantial harm from the reinstatement of the California Waivers, and it has significant interests that it can only defend via intervention. A potential reinstatement of the California Waivers directly threatens a variety of vital revenue streams for Texas, both as a tax collector and through its unique position as the owner of vast mineral holdings.

Texas manages over 13 million acres of state-owned lands and their attendant rich mineral resources for the benefit of public education. The significant proceeds generated by this unique ownership structure—$1.5 billion and $1.9 billion for Texas's Permanent School Fund and Permanent University Fund, respectively[2]—are put at direct risk if California's emissions standards are reinstated as the *de facto* set of regulations for the United States. With regard to state-owned lands and the critical revenue derived therefrom, reinstating the California Waivers in their current form will, at minimum: (1) hamstring Texas' ability to maximize revenue for the benefit of public schools and universities, (2) harm Texas by disincentivizing billions of dollars in capital investment for oil exportation and production projects, and (3) reduce or eliminate critical economic benefits including short- and long-term jobs, infrastructure updates, and long-term related development.

Beyond harms resulting from loss of revenue from state-owned mineral holdings, reinstatement of the California Waivers would place significant tax revenue at risk. That tax revenue provides critical funding for Texas highways, its "Rainy Day Fund" to be used in case of emergency such as relief following natural disasters (including the recent flooding which has devastated portions of Texas), and Foundation School Program, a Texas Education Agency-administered fund used for expenses such as teacher salaries, bilingual education and special education is at risk.[3] In

---

[1] *See* State Profile and Energy Estimates: Texas, U.S. Energy Info. Admin., https://perma.cc/JAU5-AK6Z.

[2] *See* Annual Energy & Economic Impact Report 2024, Texas Oil & Gas Association (Jan. 2025), https://www.txoga.org/2024eeir/

[3] See Taxes of Texas, A Field Guide, Texas Comptroller of Public Accounts (Jan. 2024),

---

**STATE OF TEXAS'S MOTION TO INTERVENE**                    **4:25-CV-04966-HSG**

the 2024 fiscal year, the Texas oil and gas industry paid $27.3 billion in state and local tax and state royalties.[4] And during that time frame the industry employed 492,019 Texans, at pay rates significantly higher than other private sector employees.[5] These are just a few of the many examples of how Texas benefits from its robust oil and gas industry. Texas has a clear and significant interest in defending these sources of vital revenue. A loss of just one percent in incremental value of its combined revenues from crude oil and natural gas production would result in millions of dollars in harm to the state. Moreover, a loss in direct production and tax revenues cannot capture the full breadth of the loss incurred by the associated decrease in general economic activity—lost jobs both directly and indirectly related to oil production, lost investment in infrastructure, and lost tax revenue through a reduction of other available taxes. Reinstatement of the California Waivers would place Texas at the risk of substantial financial upheaval.

### d.    *Texas has a protectable interest in defending the well-being of its citizens.*

Texas "has a quasi-sovereign interest in the health and well-being—both physical and economic—of its residents in general." *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 607 (1982). The California Waivers will cause significant damage to the economic well-being of Texans.

Texas stands as one of the nation's largest auto manufacturing hubs. It ranks third in the number of auto manufacturing establishments and is among the top ten states for automotive employment, with major manufacturers like GM and Toyota operating large facilities in the state. In total, Texas is home to over 730 automobile manufacturing sites, with new companies continuing to expand into the region. The state also employs more than 38,400 workers in the automotive sector and has become a growing center for industry research and development.[6] Eliminating the

---

https://perma.cc/7VNA-6X2Y (noting, e.g., oil production taxes generated $5.93 billion dollars or 7.2 percent of state revenue in the 2023 fiscal year)

[4] See Annual Energy & Economic Impact Report 2024, Texas Oil & Gas Association (Jan. 2025)

[5] Id.

[6] Texas Economic Development and Tourism Office, *Texas Automotive Industry*, Office of the Governor (Apr. 2025), https://perma.cc/8PSC-MCLF.

**STATE OF TEXAS'S MOTION TO INTERVENE**                    **4:25-CV-04966-HSG**

manufacture of ICE-vehicles in Texas would lead to significant job losses because electric vehicles require fewer parts and considerably less labor than traditional vehicles.[7]

Furthermore, Texas's consumer market shows a strong preference for non-electric vehicles. Of the 24.14 million vehicles registered in the state in 2022, 99.33% had internal combustion engines and only 0.51% were electric. Among the 1.29 million new vehicle purchases that year, 95.71% had ICEs, while just 3.64% were electric.[8] Given this overwhelming preference, a reduction of gas vehicles on the market could lead to disruption in the Texas market. Indeed, Texas lacks the necessary infrastructure to support a transition to having only electric vehicles. A rapid shift to electric vehicles would place serious strain on the state's grid and public resources.

### iii.    Texas's interests would be impaired if intervention is not permitted.

Under the third intervention factor, an applicant for intervention as of right must demonstrate that disposition of the action may practically impair an applicant's ability to protect its interest in the subject matter of the litigation. *See Citizens for Balanced Use*, 647 F.3d at 900 (stressing that "intervention of right does not require an absolute certainty that a party's interests will be impaired"). If Texas is not allowed to intervene, it will have no other legal means to present its position on the regulations at issue. *See United States v. Oregon*, 839 F.2d 635, 639 (9th Cir. 1988) (acknowledging "practical limitations on the ability of intervention applicants to protect interests in the subject of the litigation after court ordered equitable remedies are in place"). A State's interests are practically impaired if the litigation would "prevent" it "from exercising its property and economic interests." *Ctr. for Biological Diversity*, 640 F. Supp. 3d at 68. These interests are also practically impaired where the outcome of the litigation has "potentially broad implications." *Wildearth Guardians*, 272 F.R.D. at 19.

Without intervention, Texas's interests will be erased or impaired without being heard. If

---

[7] James Sherk and Jacob Sagert, *Research Report: Proposed EV Mandate Would Eliminate 117,000 Auto Manufacturing Jobs*, America First Policy Institute (July 2023), https://perma.cc/MXX4-7PC4.

[8] Alliance for Automotive Innovation, *Economic Insights Texas State Facts* (2022), https://perma.cc/N7NA-7Q9U.

1  Texas is not permitted to intervene, it will lose out on a critical—and likely its only—opportunity

2  to oppose the infringement of its authority and sovereignty imposed on it by the California Waivers.

3  Texas is entitled to defend the existence of equal sovereignty among the States. The issues that

4  California's emission standards seek to address are not unique to California alone. And it alone

5  should not be permitted special status above its peers to attempt to solve them. Further, Texas has

6  the expertise to provide useful perspective on the effects reinstatement of the California Waivers

7  would have on the oil and gas industry writ large. And, more importantly, *only* Texas has the

8  necessary expertise to provide its unique perspective on the effects reinstatement would have on its

9  economy in particular. Both of these interests would be significantly impaired, and potentially

10  erased, if Texas is not permitted to intervene and defend them.

11  **iv.    Texas's interests are inadequately represented by existing parties.**

12  The fourth and final element to justify intervention of right is inadequate representation of

13  Texas's interests by existing parties to the litigation. The Ninth Circuit "considers three factors in

14  determining the adequacy of representation: (1) whether the interest of a present party is such that

15  it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is

16  capable and willing to make such arguments; and (3) whether a proposed intervenor would offer

17  any necessary elements to the proceeding that other parties would neglect." *United States v. Aerojet

18  Gen. Corp.*, 606 F.3d 1142, 1153 (9th Cir. 2010) (quoting *Arakaki v. Cayetano*, 324 F.3d 1078,

19  1086 (9th Cir. 2003)) (reversing district court's denial of intervention motion). Intervention as of

20  right "requires only a 'minimal' showing that existing parties' representation '*may* be' inadequate."

21  *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 864 (9th Cir. 2016) (quoting *Trbovich v.

22  United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)) (emphasis added).

23  Texas easily satisfies this lenient standard.

24  "Normally, a presumption of adequate representation generally arises when the

25  representative is a governmental body or officer charged by law with representing the interests of

26  the absentee." *United States v. City of Los Angeles*, Cal., 288 F.3d 391, 401 (9th Cir. 2002) (cleaned

27  up). Texas is a sovereign entity in a federal system. It has its own reserved powers different from,

28  and independent of, those of the federal government. Therefore, under our Constitution and its

---

14

principles, the federal government is not charged with representing Texas's interests. Furthermore, nothing in the CRA specifically charges the federal government with representing the interests of States. Here, therefore, no presumption in favor of adequate representation applies merely because the federal government, the EPA, and the President are Defendants.

Nor is there adequate representation under the normal analysis. The existing parties to this litigation cannot adequately represent Texas's unique and significant interests. Defendants in this matter represent the interests of the federal government, and they do not share the same ultimate objective as Texas. The Defendants' objective is to defend a particular interpretation of the CRA. Texas's objective is to defend its authority as a sovereign State within our system, defend its own economic and proprietary interests, and protect the economic interests and welfare of its citizens. Even if the widely divergent ultimate goals between the federal government and Texas could be characterized as somehow still being a common ultimate objective, the Defendants still will not adequately represent Texas's interests. The federal "government's representation of the public interest may not be identical to the individual parochial interest of a particular group just because both entities occupy the same posture in the litigation." *Citizens for Balanced Use*, 647 F.3d at 899 (cleaned up).

There are three particularly salient reasons to find that the federal government's representation of Texas's interests "may be inadequate."

*First*, the federal government does not have a direct interest in preserving the sovereignty of equal States. Such an interest is best presented by a State itself—such as Texas—that has a real and legitimate interest in not being placed in a disfavored category through potential favoritism towards its peers. Defendants are not likely to advance such an argument and, regardless, States such as Texas are more properly positioned to do so in support of their own authority and sovereignty. *Cf. Berger v. N. Carolina State Conf. of the NAACP*, 597 U.S. 179, 180 (2022) ("Permitting the participation of lawfully authorized state agents promotes informed federal-court decisionmaking and avoids the risk of setting aside duly enacted state law based on an incomplete understanding of relevant state interests."); *Maverick Gaming LLC v. United States*, 123 F.4th 960, 974-75 (9th Cir. 2024) (federal government did not adequately represent the sovereign interests of an Indian Tribe

**STATE OF TEXAS'S MOTION TO INTERVENE**                    **4:25-CV-04966-HSG**

despite overlap in ultimate objective).

*Second,* in situations such as this one, the federal government does not adequately represent the State because federal government defendants "do not have an interest in protecting [a State's] property and economic interests." *Ctr. for Biological Diversity*, 640 F. Supp. 3d at 69. Thus, in cases involving environmental regulation such as this one, courts have held that the federal government will not adequately represent a State's interests because a State's "interests in the natural resources within state borders and the economic effects on the state of ... regulation are not necessarily represented by federal agencies" and "it is not difficult to imagine how the interests of [the State] and the other defendants might diverge during the course of litigation." *Wildearth Guardians*, 272 F.R.D. at 19–20 (cleaned up) (quoting *Earthworks v. U.S. Dep't of Interior, No. 09 Civ.1972(HHK)*, 2010 WL 3063143 at *2 (D.D.C. Aug.3, 2010)).

Furthermore, even though the federal government is, like Texas, a holder of vast mineral resources, Texas's reliance on its oil and gas production in its budgeting and general operation is easily distinguishable. For one, Texans do not pay state income taxes. Instead, many public functions within Texas, including public schools and universities, are supported directly through oil and gas production. With regard to Texas's specific interests, only Texas has the expertise and familiarity with the impact the oil and gas industry has within the state. Texas has a unique perspective that cannot be represented by Defendants or other potential state intervenors.

*Third*, the Defendants have already changed position once on the critical questions at issue in this case. *Compare* ACT, 88 Fed. Reg. at 20,725 (claiming "this action is not a rule"); ACC II, 90 Fed. Reg. at 642 (same); Heavy-Duty Omnibus, 90 Fed. Reg. at 643 (same) *with* EPA, *Trump EPA to Transmit California Waivers to Congress in Accordance with Statutory Reporting Requirements* (Feb. 14, 2025), https://perma.cc/7H4L-RJ7D (EPA press release noting transmission of waivers to Congress and characterizing them as "rules"). The Ninth Circuit has held that, even though there was present alignment of objectives, a federal agency's prior "adverse position" to a proposed intervenor was sufficient to show inadequate representation because the federal government's position could change yet again. *Citizens for Balanced Use*, 647 F.3d at 899–01. Litigation of environmental cases such as this one can take years to resolve. It is entirely possible

**STATE OF TEXAS'S MOTION TO INTERVENE**                    **4:25-CV-04966-HSG**

1   that a change of administration in 2028 could cause yet another reversal of the Defendants' position.

2   If this case were still active at that point, it would likely be too late for Texas to intervene.

3                                               * * *

4          Accordingly, because Texas fulfills each of the requisite elements for intervention as of right,

5   this Court should grant Texas's motion to intervene as of right.

6          **B.        <u>Alternatively, This Court Should Grant Permissive Intervention.</u>**

7          Even if the Court declines to grant Texas's motion to intervene as of right, this is precisely

8   the type of case where permissive intervention is warranted. Rule 24(b) allows courts to grant

9   permissive intervention to anyone who "has a claim or defense that shares with the main action a

10  common question of law or fact." A court's discretion in granting permissive intervention may be

11  guided by factors such as "the nature and extent of the intervenors' interest, their standing to raise

12  relevant legal issues, the legal position they seek to advance, and its probable relation to the merits

13  of the case." *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977). Courts

14  "may also consider ... whether the intervenors' interests are adequately represented by other parties,

15  whether intervention will prolong or unduly delay the litigation, and whether parties seeking

16  intervention will significantly contribute to full development of the underlying factual issues in the

17  suit and to the just and equitable adjudication of the legal questions presented." *Id.* Courts also

18  consider "whether the intervention will unduly delay or prejudice the adjudication of the original

19  parties' rights." Fed. R. Civ. P. 24(b)(3). As with intervention as of right, permissive intervention is

20  to be granted liberally. *See* 7C Wright & Miller, Federal Practice and Procedure § 1904 (3d ed.

21  2007).

22         Based on these standards, there are six reasons this Court should grant permissive

23  intervention, most of which are also discussed above in the context of intervention as of right.

24         *First*, intervention is timely and will not prejudice existing parties.

25         *Second*, Texas has significant sovereign interests affected by the case.

26         *Third*, Texas has significant proprietary economic interests affected by the case, including

27  vital revenue streams from oil and gas and increased costs for vehicle purchases for the State fleet.

28         *Fourth*, Texas has significant quasi-sovereign interests on behalf of its citizens, including

                                                    17

**STATE OF TEXAS'S MOTION TO INTERVENE**                                          **4:25-CV-04966-HSG**

1  increased costs and decreased economic well-being.

2      *Fifth*, existing parties do not adequately represent Texas's unique interests.

3      *Sixth*, Texas's defense of the revocation of the California Waivers shares common questions

4  of law and fact with the main action here, and the legal position that it seeks to advance—that the

5  CRA was lawfully invoked here and that it is unlawful and unconstitutional for California to impose

6  emissions and environmental standards that will bind the whole nation—is closely related to the

7  merits of this case.

8  **III.**    **CONCLUSION**

9      Texas's Motion to Intervene should be granted.  An appropriate order is attached.

10

11  DATED: August 19, 2025    By:   /s/ *Brandon Q. Tran*
   Brandon Q. Tran
12  CA Bar No. 223435
   btran@dhillonlaw.com
13  4675 MacArthur Court, Suite 1410
   Newport Beach, CA 92660
14

15  James K. Rogers*
   Ryan Giannetti*
16  America First Legal Foundation
   611 Pennsylvania Ave., SE #231
17  Washington, D.C. 20003
   (202) 964-3721
18  James.Rogers@aflegal.org
   Ryan.Giannetti@aflegal.org
19

20  **Ken Paxton**
   Attorney General of Texas
21

22  **Brent Webster**
   First Assistant Attorney General
23

24  **Ralph Molina**
   Deputy First Assistant Attorney General
25

26  **Austin Kinghorn**
   Deputy Attorney General for Civil Litigation
27

28  **Kellie E. Billings-Ray**
   Chief, Environmental Protection Division

**Ian Lancaster\***
**Wesley S. Williams\***
**Steven Loomis\***
Assistant Attorneys General
Office of the Attorney General
Environmental Protection Division
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2012
Ian.Lancaster@oag.texas.gov
Wesley.Williams@oag.texas.gov
Steven.Loomis@oag.texas.gov

\* *Pro hac vice application forthcoming*

***Counsel for Proposed Intervenor-Defendant,***
***State of Texas***

**STATE OF TEXAS'S MOTION TO INTERVENE**                    **4:25-CV-04966-HSG**

1

**CERTIFICATE OF SERVICE**

2        I hereby certify that on August 22, 2025, I served the STATE OF TEXAS'S MOTION TO

3    INTERVENE PURSUANT TO FRCP RULE 24 by filing it with this Court's ECF system.

4

5                                        By:___/s/ *Brandon Q. Tran*_____
                                              Brandon Q. Tran

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STATE OF TEXAS'S MOTION TO INTERVENE**                                        **4:25-CV-04966-HSG**