1  Steven P. Lehotsky** (DC 992765)
   Michael B. Schon* (DC 989893)
2  LEHOTSKY KELLER COHN LLP
   200 Massachusetts Ave., NW, Suite 700
3  Washington, DC 20001
   Telephone: (512) 693-8350
4  Email: steve@lkcfirm.com
   Email: mike@lkcfirm.com
5
   Katherine C. Yarger* (CO 40387)
6  LEHOTSKY KELLER COHN LLP
   700 Colorado Blvd., #407
7  Denver, CO 80206
   Telephone: (512) 693-8350
8  Email: katie@lkcfirm.com

9  Bradley A. Benbrook (SBN 177786)
   Stephen M. Duvernay (SBN 250957)
10 BENBROOK LAW GROUP, PC
   701 University Avenue, Suite 106
11 Sacramento, CA 95825
   Telephone: (916) 447-4900
12 Email: brad@benbrooklawgroup.com

13 *Attorneys for Proposed Intervenors American Fuel & Petrochemical*
   *Manufacturers, American Petroleum Institute, and the National Association of*
14 *Convenience Stores*

15 Michael Buschbacher* (IN 31251-71)
   James R. Conde* (DC 1031694)
16 James R. Wedeking* (DC 500033)
   Laura B. Ruppalt* (VA 97202)
17 BOYDEN GRAY PLLC
   800 Connecticut Avenue NW, Suite 900
18 Washington, D.C. 20006
   Telephone: (202) 955-0620
19 Email: mbuschbacher@boydengray.com

20 John B. Thomas (SBN 269538)
   HICKS THOMAS LLP
21 701 University Avenue, Suite 106
   Sacramento, California 95825
22 Telephone: (916) 447-4900
   Email: jthomas@hicks-thomas.com
23
   *Attorneys for Proposed Intervenors American Free Enterprise Chamber of*
24 *Commerce, Illinois Corn Growers Association, Indiana Corn Growers*
   *Association, Iowa Corn Growers Association, Kansas Corn Growers Association,*
25 *Kentucky Corn Growers Association, Michigan Corn Growers Association,*
   *Missouri Corn Growers Association, Nebraska Corn Growers Association,*
26 *Tennessee Corn Growers Association, Texas Corn Producers, Wisconsin Corn*
   *Growers Association, and National Corn Growers Association*
27
   ** Motion for admission *pro hac vice* pending.
28 * Admitted *pro hac vice*.

1
2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

3

4
STATE OF CALIFORNIA, et al.,

5
Plaintiffs,

6
v.

7
UNITED STATES OF AMERICA; U.S.
ENVIRONMENTAL PROTECTION

8
AGENCY; LEE ZELDIN, in his official
capacity as Administrator of the U.S.

9
Environmental Protection Agency; and
DONALD J. TRUMP, in his official capacity as

10
President of the United States,

11
Defendants.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 4:25-cv-04966-HSG

**JOINT REPLY OF AMERICAN FUEL &
PETROCHEMICAL MANUFACTURERS,
AMERICAN PETROLEUM INSTITUTE,
THE NATIONAL ASSOCIATION OF
CONVENIENCE STORES, AMERICAN
FREE ENTERPRISE CHAMBER OF
COMMERCE, ILLINOIS CORN
GROWERS ASSOCIATION, INDIANA
CORN GROWERS ASSOCIATION, IOWA
CORN GROWERS ASSOCIATION,
KANSAS CORN GROWERS
ASSOCIATION, KENTUCKY CORN
GROWERS ASSOCIATION, MICHIGAN
CORN GROWERS ASSOCIATION,
MISSOURI CORN GROWERS
ASSOCIATION, NEBRASKA CORN
GROWERS ASSOCIATION, TENNESSEE
CORN GROWERS ASSOCIATION, TEXAS
CORN PRODUCERS, WISCONSIN CORN
GROWERS ASSOCIATION, AND
NATIONAL CORN GROWERS
ASSOCIATION IN SUPPORT OF THEIR
MOTIONS TO INTERVENE**

Date: October 23, 2025
Time: 2:00pm PST
Courtroom: 2, 4th Floor Oakland Courthouse
Judge: Hon. Haywood S. Gilliam, Jr.

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

INTRODUCTION ................................................................................................... 1

ISSUES TO BE DECIDED ...................................................................................... 3

STATEMENT OF FACTS ......................................................................................... 3

ARGUMENT ........................................................................................................ 4

   I.    Movants are entitled to intervene under Rule 24(a)(2)........................................ 4

      A.  Movants' motions are timely and will not cause delay or prejudice. .................. 5

      B.  Movants have significantly protectable interests that this litigation may impair. .............. 6

      C.  Federal Defendants do not adequately represent Movant's interests................................ 11

   II.     Alternatively, the Court should grant Movants permissive intervention......................... 13

   III.    Movants are amenable to reasonable case management conditions. ............................... 14

CONCLUSION ..................................................................................................... 15

1

2

# TABLE OF AUTHORITIES

**Page(s)**

3

**Cases**

4

*Am. Hotel & Lodging Ass'n v. City of Los Angeles*,
No. CV 14-09603-AB (SSX), 2015 WL 12745805 (C.D. Cal. Mar. 25, 2015)...................... 13

5

6

*Am. Rivers v. Wheeler*,
No. C 20-04636 WHA, 2020 WL 5993229 (N.D. Cal. Oct. 9, 2020) .................................... 13

7

8

*Barke v. Banks*,
No. 8:20-cv-00358-JLS-ADS, 2020 WL 2315857 (C.D. Cal. May 7, 2020) ........................ 12

9

*Cal. Chamber of Com. v. Becerra*,
529 F. Supp. 3d 1099 (E.D. Cal. 2021) ................................................................................. 12

10

11

*Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*,
54 F.4th 1078 (9th Cir. 2022) ............................................................................................ 6, 8

12

13

*California v. Bureau of Land Mgmt.*,
Nos. 18-CV-00521-HSG & 18-CV-00524-HSG, 2018 WL 3439453 (N.D. Cal.
July 17, 2018) .......................................................................................................................... 5

14

15

*California v. EPA*,
No. 18-CV-03237-HSG, 2018 WL 6069943 (N.D. Cal. Nov. 20, 2018) ............................... 5

16

17

*California v. Health & Hum. Servs.*,
330 F.R.D. 248 (N.D. Cal. 2019) ........................................................................................... 9

18

*California v. Health & Hum. Servs.*,
No. 17-CV-05783-HSG, 2018 WL 574882 (N.D. Cal. Jan. 26, 2018) ................................... 5

19

20

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
647 F.3d 893 (9th Cir. 2011) ..................................................................................... 5, 7, 12

21

22

*Cooper v. Newsom*,
26 F.4th 1104 (9th Cir. 2022) ................................................................................................. 8

23

*Diamond Alt. Energy, LLC v. EPA*,
145 S. Ct. 2121 (2025) ........................................................... 2, 3, 6, 8, 10, 11, 12

24

25

*Finjan, Inc. v. Symantec Corp.*,
No. 14-cv-02998-HSG, 2017 WL 6610081 (N.D. Cal. Sept. 29, 2017) ................................. 5

26

*Idaho Farm Bureau Fed'n v. Babbitt*,
58 F.3d 1392 (9th Cir. 1995) ............................................................................................ 5, 10

27

28

*Juliana v. United States,*
    No. 6:15-cv-1517-TC, 2016 WL 183903 (D. Or. Jan. 14, 2016)..............................................9

*League of United Latin Am. Citizens v. Wilson,*
    131 F.3d 1297 (9th Cir. 1997).................................................................................................5

*California ex rel. Lockyer v. United States,*
    450 F.3d 436 (9th Cir. 2006).................................................................................5, 11, 12

*S. Cal. Healthcare Sys., Inc. v. City of Culver City,*
    No. 2:21-cv-05052-MCS-RAO, 2021 WL 4817846 (C.D. Cal. July 26, 2021) ....................12

*Sagebrush Rebellion, Inc. v. Watt,*
    713 F.2d 525 (9th Cir. 1983).........................................................................................11, 12

*Sierra Club v. EPA,*
    995 F.2d 1478 (9th Cir. 1993)..................................................................................................5

*Sw. Ctr. for Biological Diversity v. Berg,*
    268 F.3d 810 (9th Cir. 2001).........................................................................................11, 12

*Trbovich v. United Mine Workers of Am.,*
    404 U.S. 528 (1972) ................................................................................................................12

*United States v. Alisal Water Corp.,*
    370 F.3d 915 (9th Cir. 2004)...................................................................................................5

*United States v. Carpenter,*
    526 F.3d 1237 (9th Cir. 2008).................................................................................................9

*United States v. City of Los Angeles,*
    288 F.3d 391 (9th Cir. 2002)...................................................................................................8

*United States v. Oregon,*
    839 F.2d 635 (9th Cir. 1988).................................................................................................11

*United States v. Stringfellow,*
    783 F.2d 821 (9th Cir. 1986).................................................................................................11

*Venegas v. Skaggs,*
    867 F.2d 527 (9th Cir. 1989).................................................................................................13

*W. Watersheds Project v. Haaland,*
    22 F.4th 828 (9th Cir. 2022)..............................................................................................5, 8

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n,*
    834 F.3d 562 (5th Cir. 2016)...............................................................................................8, 9

*Wilderness Soc'y v. U.S. Forest Serv.,*
    630 F.3d 1173 (9th Cir. 2011)..........................................................................2, 5, 6, 7, 12

*Yniguez v. Arizona*,
    939 F.2d 727 (9th Cir. 1991) ................................................................................................ 13

**Statutes**

42 U.S.C. § 7543(a) ............................................................................................................... 2, 3

42 U.S.C. § 7543(b) ................................................................................................................... 2

Congressional Review Act, 5 U.S.C. §§ 801–08 ...................................................................... 3

**Federal Rules**

Fed. R. Civ. P. 24(a) .................................................................................................. 3, 4, 6, 8, 11

Fed. R. Civ. P. 24(b) ................................................................................................... 3, 4, 13, 14

**Other Authorities**

AmFree, *AmFree Heralds Trump's EV Mandate Repeal, Vows to Fight
    California's Legal Challenge* (June 13, 2025), https://perma.cc/PE6V-C9K2 ...................... 10

Cal. Air Res. Bd., *Response to Comments on the Draft Environmental Analysis
    Prepared for the Advanced Clean Cars II Program* (Aug. 24, 2022),
    https://perma.cc/SF59-TC9X ............................................................................................ 1, 7

Ellen Robo et al., Env't Rsch. Mgmt. Grp., *California Clean Trucks Program*
    (2022), https://perma.cc/3RK8-WPP8 ............................................................................. 1, 7

Ill. Corn Growers Ass'n, *California EV Mandates, Clean Air Act, and a
    Congressional Review Act Vote* (May 20, 2025), https://perma.cc/8YAS-6QZD ................ 10

Petition for Review, *California v. Wheeler*, No. 19-1239 (D.C. Cir. Nov. 15, 2019),
    ECF 2 ............................................................................................................................... 12

**INTRODUCTION**

Movants seek intervention to defend their significantly protectable interests that would be harmed by the sweeping and unprecedented relief Plaintiffs request in their Complaint. The Complaint filed by California and 10 other states asks this Court to void duly enacted legislation that revoked three Clean Air Act waivers. California used those waivers to enact and enforce otherwise preempted vehicle emission standards designed to drive down the sale of liquid fuels and, over time, eliminate the sale of vehicles that use liquid fuels altogether. California cannot dispute that the standards it seeks to revive through this litigation impose enormous and concrete economic injury on Movants' members because its own calculations show that the standards would significantly reduce liquid fuel sales. *See* Cal. Air Res. Bd., *Response to Comments on the Draft Environmental Analysis Prepared for the Advanced Clean Cars II Program* 55 & n.54 (Aug. 24, 2022), https://perma.cc/SF59-TC9X (addressing the ultimate ban on the sale of gasoline-powered cars and estimating the reduction of fuel sales); *see also* Ellen Robo et al., Env't Rsch. Mgmt. Grp., *California Clean Trucks Program* 11 (2022), https://perma.cc/3RK8-WPP8 (study of the "Advanced Clean Trucks" program, estimating fuel sales to drop by over 40% by 2050). California's standards also increase the purchase, operation, and maintenance costs of the cars and trucks that members of Movant American Free Enterprise Chamber of Commerce rely on to operate their businesses, imposing yet another form of economic harm. *See* ECF No. 49-1, at 4–5, ¶¶ 11–14 (Collins declaration).

Plaintiffs' objections to intervention attempt to raise barriers that Federal Rule of Civil Procedure 24 ("Rule 24") does not impose. Plaintiffs concede that Movants timely sought intervention and are seriously harmed by the preempted regulations that Plaintiffs seek to resuscitate in this case. Plaintiffs' only real arguments are that this harm is somehow insufficient to give Movants an interest here because there is no statutory source for those interests and some Movants are already involved in ongoing litigation challenging the preempted regulations under the Clean Air Act. No statutory source is required. And the other Clean Air Act litigation is inapposite: Movants' harm here stems from Plaintiffs' attempt to resuscitate waivers that Congress invalidated—actions and issues that were not at issue in the Clean Air Act litigation.

1    As necessary background, the Clean Air Act prohibits any state from "adopt[ing] or
2    attempt[ing] to enforce any standard relating to the control of emissions from new motor vehicles
3    or new motor vehicle engines." 42 U.S.C. § 7543(a). However, Congress authorized the
4    Environmental Protection Agency ("EPA") to waive this prohibition for California alone among the
5    states if California can meet certain requirements. *Id.* § 7543(b). The legislation that Plaintiffs ask
6    this Court to overturn revoked three such waivers that EPA had issued. The legislation's effect is to
7    prohibit California from foisting on the public and Movants' members harms flowing from
8    California's regulations. Movants' separate challenges to the waivers under the Clean Air Act do
9    not change that. Successfully defending the duly enacted federal legislation at issue here will
10   indisputably eliminate harm to Movants' members.

11    This is not the first time in recent years that California has tried to block the liquid fuels
12   industry from reaching court to challenge California's emissions programs. Just a few months ago,
13   the U.S. Supreme Court, in a 7-2 decision, resoundingly rejected California's argument that
14   members of the liquid fuels industry (including many seeking to intervene here) lacked standing to
15   challenge an earlier version of California's rules—"Advanced Clean Cars I." *See Diamond Alt.*
16   *Energy, LLC v. EPA*, 145 S. Ct. 2121, 2134 (2025). Although the standards for intervention and for
17   standing are not identical, there is significant overlap, with standing being harder, not easier, to
18   satisfy. Like Article III standing, Rule 24 is designed to ensure that legally protected interests are
19   heard, and the Ninth Circuit has repeatedly held that Rule 24 must be applied "liberal[ly]" in favor
20   of potential intervenors with a focus on "practical … considerations." *Wilderness Soc'y v. U.S.*
21   *Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (en banc).

22    Because Movants meet the Ninth Circuit's standard for intervention as of right and have also
23   shown that this Court should exercise its discretion to grant permissive intervention, the Court
24   should allow Movants to participate fully in this case.

25   ///
26   ///
27   ///
28   ///

**Movants Joint Reply in Support of Motions to Intervene, No. 4:25-cv-04966-HSG**

**ISSUES TO BE DECIDED**

1.    Whether Movants are entitled to intervene as Defendants in this action as of right under Fed. R. Civ. P. 24(a).

2.    In the alternative, whether Movants should be granted leave to intervene permissively under Fed. R. Civ. P. 24(b).

**STATEMENT OF FACTS**

Movants fully set forth the relevant facts in their motions to intervene. ECF Nos. 49 at 3–8 (American Free Enterprise Chamber of Commerce and Corn Grower Movants, hereafter "AmFree" and "Corn Growers"); 61 at 3–5 (American Fuel & Petrochemical Manufacturers, American Petroleum Institute, and the National Association of Convenience Stores (the "AFPM Movants")). This case arose after Congress passed and the President signed legislation pursuant to the Congressional Review Act ("CRA"), 5 U.S.C. §§ 801–08, repealing three waivers of Clean Air Act preemption granted by EPA. California required these waivers to effectuate stringent emissions standards for new motor vehicle emissions—"Advanced Clean Cars II" ("ACC II"), "Advanced Clean Trucks" ("ACT"), and "Omnibus Low $NO_x$ Program" ("Omnibus"). *See* 42 U.S.C. § 7543(a) (preempting states from adopting or attempting to enforce emissions standards other than those promulgated by EPA), (b) (allowing California to request a waiver of this preemption). As the Supreme Court recently noted, Congress passed and the President signed "legislation to block … [those] California regulations." *Diamond Alt. Energy*, 145 S. Ct. at 2131 n.1.

Nevertheless, within hours of the President signing the CRA Resolutions on June 12, 2025, Plaintiffs filed this suit, raising an array of statutory and constitutional claims seeking to invalidate the legislation. *See* Complaint at 27–39, ¶¶ 114–88 (ECF No. 1). These claims allege (1) that EPA's letters sending the waivers to Congress were illegal; (2) that Congress violated its internal procedures by accepting the waivers for review and by allowing the votes to proceed with the approval of a simple majority of Senators, rather than the three-fifths (60 votes when all 100 Senators are present) that Senate filibuster rules sometimes require; and (3) that the President acted unconstitutionally in signing the legislation. *Id.* Plaintiffs ultimately ask this Court, among other things, to declare the Resolutions unlawful, to declare the waivers "valid and in effect," and to enjoin

EPA "from interfering with Plaintiffs' enforcement" of the ACC II, ACT, and Omnibus standards. *Id.* at 39–40.

Movants moved to intervene as Defendants to represent the distinct interests of fuel producers and other private parties not represented by the Federal Government Defendants, who necessarily represent the public interest. Those motions were filed on August 4 (AmFree and Corn Growers) and August 6 (AFPM Movants), 2025. ECF Nos. 49 at 5–8, 10–13; 61 at 6–9. In addition, the "Zero Emissions Transportation Association" ("ZETA"), a trade organization that represents electric-vehicle manufacturers such as Tesla, moved to intervene on behalf of Plaintiffs on July 25, 2025. ECF No. 43. Texas has also moved to intervene. ECF No. 86. Although Plaintiffs have opposed intervention by AmFree and the Corn Growers and the AFPM Movants, ECF Nos. 84 (Opp. to AmFree and Corn Growers); 85 (Opp. to AFPM Movants), Plaintiffs did not oppose intervention by ZETA. *See* ECF No. 43 at 2 n.2. Plaintiffs make no attempt to explain why intervention by ZETA should be permitted but intervention by Movants should be denied. The Federal Defendants did not oppose intervention by any party. Movants now file this Joint Reply.

## ARGUMENT

The Court should grant the motions to intervene because Movants are entitled to intervene as of right under Rule 24(a)(2) and also because Movants meet the requirements for permissive intervention under Rule 24(b)(1)(B).

### I.    Movants are entitled to intervene under Rule 24(a)(2).

Movants have easily satisfied all four requirements to intervene *as of right*, and accordingly, are entitled to intervene in this case. Under Rule 24(a)(2) of the Federal Rules of Civil Procedure, a non-party has the right to intervene in a proceeding where it "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). The Court must grant intervention under that provision if (1) the motion is "timely," (2) the applicant has a "significantly protectable interest relating to the property or transaction which is the subject of the action," (3) the "disposition of the action may as a practical matter impair or impede its ability to protect that

interest," and (4) the applicant's interest may be "inadequately represented by the parties to the action." *Wilderness Soc'y*, 630 F.3d at 1177 (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993) (internal quotation marks omitted)).

Courts apply Rule 24 "liberally in favor of potential intervenors," *California ex rel. Lockyer v. United States*, 450 F.3d 436, 440 (9th Cir. 2006), guided "primarily by practical considerations," *W. Watersheds Project v. Haaland*, 22 F.4th 828, 835 (9th Cir. 2022); *see also*, *e.g.*, *California v. Bureau of Land Mgmt.*, Nos. 18-CV-00521-HSG & 18-CV-00524-HSG, 2018 WL 3439453, at *8 (N.D. Cal. July 17, 2018) (Gilliam, J., granting motion to intervene); *Finjan, Inc. v. Symantec Corp.*, No. 14-CV-02998-HSG, 2017 WL 6610081, at *3 (N.D. Cal. Sept. 29, 2017) (same); *California v. Health & Hum. Servs.*, No. 17-CV-05783-HSG, 2018 WL 574882, at *5 (N.D. Cal. Jan. 26, 2018) (same); *California v. EPA*, No. 18-CV-03237-HSG, 2018 WL 6069943, at *1 (N.D. Cal. Nov. 20, 2018) (same).

Plaintiffs directly dispute only elements (2) through (4). *See* ECF Nos. 84 at 4–7: 85 at 4–7. But Movants address each requirement for intervention as of right below.

### A. Movants' motions are timely and will not cause delay or prejudice.

The motion is timely. Timeliness is a "flexible concept" committed to the district court's discretion, *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004), and is readily satisfied where intervention is sought at the outset of litigation. *Sierra Club*, 995 F.2d at 1481, *abrogated on other grounds by*, *Wilderness Soc'y*, 630 F.3d 1173. Courts consider the stage of the proceedings, prejudice to existing parties, and the length and reason for any delay. *See League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1308 (9th Cir. 1997). All three factors confirm timeliness here. Movants have sought intervention at the earliest stage of proceedings: Defendants have not yet answered or moved to dismiss, there have been no substantive rulings, and the initial case management conference is still weeks away. This is well within the timeframe the Ninth Circuit has previously held appropriate for intervention. *See Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995); *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011). Because intervention will not disrupt any proceedings, prejudice any party, or delay the case, this factor strongly supports intervention.

1      **B.  Movants have significantly protectable interests that this litigation may impair.**

2          Movants together represent virtually all of the American liquid fuels industry—including

3   upstream producers, midstream transportation companies, refiners, fuel retailers, renewable fuel

4   manufacturers, and the farmers who grow the corn used to manufacture the ethanol used in most

5   automobile fuels. Movant AmFree also represents businesses across the nation that rely on gasoline-

6   and diesel-powered cars and trucks to profitably operate. Each identified multiple protectable

7   interests sufficient to support intervention as of right. As the Supreme Court recently noted in a case

8   that found standing met for many of the same entities seeking intervention here, "the fuel producers

9   persuasively contend that invalidating California's regulations would likely mean more gasoline-

10  powered automobiles, which would in turn likely mean more sales of gasoline and other liquid fuels

11  by the fuel producers." *Diamond Alt. Energy*, 145 S. Ct. at 2137. For similar reasons, ensuring

12  California's programs remain unenforceable protects businesses and consumers from the vehicle

13  cost increases that would inevitably result from California's standards. Those conclusions control

14  here and confirm Movants' significantly protectable interests in this litigation.

15         Plaintiffs make two misplaced arguments to avoid this conclusion, neither of which is

16  persuasive. Plaintiffs first attack Movants' economic injuries, arguing primarily that they do not

17  count because they lack a "statutory source." *See* ECF Nos. 85 at 1 (asserting without citation that

18  a "statutory source" is required); 84 at 4–6. Second, Plaintiffs claim that Movants should be barred

19  from intervening here because they pursued separate Clean Air Act challenges to the waivers.

20  Neither claim has any support in Rule 24(a) or in precedent. Plaintiffs are specifically asking this

21  Court to reinstate California's programs that would slash fuel sales by billions of dollars and drive

22  up vehicle costs. To suggest that the parties most directly injured by that relief have no right to be

23  heard defies both law and common sense.

24         An interest satisfies the requirements of Rule 24(a)(2) if it is "protectable under some law,"

25  and there exists "a relationship between th[at] legally protected interest and the claims at issue."

26  *Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078, 1088 (9th Cir. 2022)

27  (quoting *Wilderness Soc'y*, 630 F.3d at 1179). This is a "practical, threshold inquiry," and contrary

28  to Plaintiffs suggestion, "[n]o specific legal or equitable interest need be established." *Citizens for*

1  *Balanced Use*, 647 F.3d at 897 (quoting *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837

2  (9th Cir. 1996)) (alteration in original). Moreover, exacting review is not required since the whole

3  point of intervention is to provide "both efficient resolution of issues and broadened access to the

4  courts." *Wilderness Soc'y*, 630 F.3d at 1179.

5      ***First – economic injuries and other interests***: Here, Movants established a significantly

6  protectable interest in shielding their members from the economic harm that would result if Plaintiffs

7  were to prevail. The relief Plaintiffs seek would allow all three of California's preempted programs

8  to take effect, each of which would harm Movants' members economically by, among other things,

9  reducing demand for gasoline and thus ethanol and corn and increasing vehicle costs. ECF Nos. 49

10  at 5–7; 61 at 7–8; *see also, e.g.*, ECF Nos. 49-2 (Couser declaration explaining how the preempted

11  programs harm ethanol producer); 49-3 (DeMartini declaration explaining how ACT and Omnibus

12  harm RV retailer); 49-4 (Weinzierl declaration explaining how programs harm Corn Growers); 61-

13  3 (Kantor declaration explaining how ACC II, ACT, and Omnibus programs harm convenience

14  retailers, including problems with selling electric-vehicle charging, reduced fuel sales, and other

15  regulatory burdens); 61-4 (Martini declaration explaining how the programs harm Chevron, a

16  member of AFPM and API, including by disincentivizing other lower-carbon technologies).

17      Ignoring Movants' motions, including declaratory support, and ignoring Plaintiffs' own

18  statements about the impact of California's preempted rules, Plaintiffs suggest that Movants'

19  claimed harms are nonexistent. But causing these economic harms to Movants' members is the goal

20  of the standards Plaintiffs' are trying to revive. *See* Cal. Air Res. Bd., *Response to Comments on the*

21  *Draft Environmental Analysis*, *supra*, at 55 & n.54 (addressing the ultimate ban on the sale of

22  gasoline-powered cars and estimating the reduction of fuel sales); *see also* Robo et al., *supra*, at 11

23  (study of the Advanced Clean Trucks program, estimating fuel sales to drop by over 40% by 2050).

24      Plaintiffs next argue that there is no "relationship" between Movants' harms and interests

25  and the litigation because "the lawfulness of EPA's waiver actions is not implicated by Plaintiffs'

26  claims." ECF Nos. 84 at 4; 85 at 4. But Movants are not asserting an abstract interest in the question

27  of whether the waivers were lawful in the first place. They are asserting their concrete interest in

28  avoiding the economic harm they will suffer if Plaintiffs succeed in persuading this Court to

1    resuscitate California's emissions programs. That harm is no less real because Plaintiffs here seek

2    to re-inflict it by nullifying the CRA Resolutions, rather than by applying for Clean Air Act waivers,

3    which Plaintiffs used to inflict the harm initially. Resolution of this case in Plaintiffs' favor will

4    harm the economic interests of Movants' members, which remain if California's emissions

5    regulations are in effect. *See Diamond Alt. Energy*, 145 S. Ct. at 2135, 2136–37. Indeed, ZETA

6    moved to intervene in this case in support of Plaintiffs by asserting the exact opposite economic

7    interests ECF No. 43 at 6, and Plaintiffs do not oppose ZETA's intervention, *id.* at 2 n.2.[1]

8         Plaintiffs do not dispute that AFPM Movants have standing, *i.e.*, that they face concrete

9    injury from the relief that Plaintiffs' seek, *see* ECF No. 85 at 4, and the standing inquiry is at least

10   as stringent as the inquiry into whether a movant has an interest sufficient to support intervention.

11   For example, the Fifth Circuit has explained that an interest, for the purpose of intervention, "is

12   sufficient if it is of the type that the law deems worthy of protection, even if the intervenor does not

13   have an enforceable legal entitlement or would not have standing to pursue her own claim." *See*

14   *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 566 (5th Cir. 2016). And

15   the Ninth Circuit has repeatedly allowed intervention for less concrete interests that are

16   "significant[ly] protectable" even in the absence of a "specific legal or equitable interest." *United*

17   *States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002); *see also, e.g.*, *Cooper v. Newsom*,

18   26 F.4th 1104, 1112 (9th Cir. 2022) (Bumatay, J., dissenting from the denial of rehearing en banc)

19   (collecting cases where the Ninth Circuit allowed movants to intervene that had "less concrete

20   interests").

21        Plaintiffs' argument that AFPM Movants' standing somehow calls into question their ability

22   to intervene is exactly backwards. *See* ECF No. 85 at 4. Rule 24(a) merely asks whether the legal

23   interest is protectable "under some law" and whether there is a practical relationship between that

24   interest and the claims at issue. *See Jim Dobbas, Inc.*, 54 F.4th at 1088. "[R]eview is guided

25   primarily by practical considerations, not technical distinctions." *W. Watersheds Project*, 22 F.4th

26   at 835 (cleaned up). Contrary to Plaintiffs' assertions, there is no requirement that intervenors like

27   _____

28   [1] Plaintiffs, in contrast, do seek adjudication of the underlying lawfulness of the waivers, asking this
     Court to declare them "valid and in effect." ECF No. 1 at 39.

the Movants here must have a statutory source for their claimed injuries. *See United States v. Carpenter*, 526 F.3d 1237, 1240 (9th Cir. 2008) (holding that environmental group had sufficient interest for Article III standing and to intervene on behalf of its members, which was to ensure that members were not harmed by development on wilderness area); *California v. Health & Hum. Servs.*, 330 F.R.D. 248, 253 (N.D. Cal. 2019) (noting that Oregon had a "significant protectable interest" where California's claims were "related to" its finances and other interests); *Juliana v. United States*, No. 6:15-cv-1517-TC, 2016 WL 183903, at *3 (D. Or. Jan. 14, 2016) (granting motion to intervene by API, AFPM, and others and finding a protectable interest "[b]ecause this action will directly change the nature of many of the members' business or how they carry out their business"); *see also Wal-Mart Stores, Inc.*, 834 F.3d at 567 (explaining "that associations representing licensed business owners have a right to intervene in lawsuits challenging the regulatory scheme that governs the profession").

Plaintiffs further attempt to cabin Movants' economic interests to just two of California's programs at issue (excluding the Omnibus regulations). ECF Nos. 84 at 5–6, 85 at 6. Even if true, Movants' interests in defending any one of the Resolutions at issue is sufficient for intervention. But in any event, Plaintiffs mischaracterize what the Omnibus regulations would do and the nature of the Movants' arguments. Movants specifically noted the harm their liquid fuel producing members would suffer from California's attempt to reinstate the Omnibus regulations (among the others) through this lawsuit. *See, e.g.*, ECF Nos. 49-1, at 3, ¶ 8 (Collins declaration explaining that Omnibus regulations harm fuel producers by forcing manufacturers to sell more electric vehicles and engines to comply); 61-1 at 3, ¶ 9 (Moody declaration noting that the electric-vehicle requirements along with stricter emissions standard "restrict market access for liquid fuel-powered vehicles, distort national fuel markets, and undermine efforts to maintain consumer choice and fuel availability"); 61-4 at 2–3, ¶¶ 8–9 (Martini declaration explaining that "increasingly stringent NOx requirements and mandates for zero-emission vehicle sales" "would have significantly decreased the demand for fuel sales, as the State recognizes"). It is "an odd argument" for California to advance that the regulations would not affect fuel producers and sellers when the "whole point" of all three programs is to "increase the number of electric vehicles in the new automobile market beyond what

9

1  consumers would otherwise demand and what automakers would otherwise manufacture and sell"

2  and to reduce liquid fuel consumption. *Diamond Alt. Energy*, 145 S. Ct. at 2137 (rejecting a near-

3  identical argument). Moreover, Movants AmFree and the National Association of Convenience

4  Stores explained how the Omnibus regulations harm the economic interests of other business

5  members—including truck retailers, fleet owners, lessors, and owner-operators—by reducing

6  availability of and increasing costs of the trucks they rely on to operate. *See, e.g.*, ECF Nos. 49-1,

7  at 4–5, ¶¶ 11–14 (Collins declaration), 49-3, at 2, 5–7, ¶¶ 5, 12–19 (DeMartini declaration

8  explaining that Omnibus regulations harm RV retailer); 61-3 ¶ 5 (Kantor declaration noting that

9  convenience retailers operate fleets of trucks and will suffer increased operational costs under the

10  California standards, including the Omnibus regulations). Movants' economic interests are harmed

11  by all three of California's programs.

12        AmFree and the Corn Growers additionally identified non-economic interests that support

13  their intervention as of right, namely because Plaintiffs' suit "challeng[es] the legality of a measure

14  [they] have supported." *Idaho Farm Bureau Fed'n*, 58 F.3d at 1397. They supported the CRA

15  Resolutions (including before they were enacted into law);[2] some Corn Growers "participated in the

16  administrative process" leading to the ACC II waiver by submitting detailed comments explaining

17  why that waiver is unlawful, *id.*, and AmFree "even filed a suit" to invalidate the ACC II and

18  Omnibus waivers, *id.* at 1398. Plaintiffs cannot waive off this engagement because it "relates to the

19  waivers." ECF No. 84 at 6. All that matters is that their support relates to the preempted California

20  emissions programs that Plaintiffs brought this lawsuit to reimpose. *See* ECF No. 1 at 40 (Prayer for

21  Relief Paragraphs 5 and 6 (asking Court to enjoin EPA from preventing California from enforcing

22  the standards that require the waivers)). And, in any event, Movants *did* support the Resolutions,

23  and Plaintiffs' unsupported claim of a heightened engagement standard, *see* ECF No. 84 at 6

24  (suggesting Movants must show "deeper engagement"), is directly at odds with the "liberal

25

26  ───────────────

27  [2] *See, e.g.*, Ill. Corn Growers Ass'n, *California EV Mandates, Clean Air Act, and a Congressional Review Act Vote* (May 20, 2025), https://perma.cc/8YAS-6QZD; AmFree, *AmFree Heralds Trump's EV Mandate Repeal, Vows to Fight California's Legal Challenge* (June 13, 2025),

28  https://perma.cc/PE6V-C9K2.

1   construction in favor of applications for intervention" that the Ninth Circuit has consistently held

2   applies, *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527 (9th Cir. 1983).

3       Again, "the whole point of the regulations" is to "decrease in purchases of gasoline and other

4   liquid fuels for automobiles." *Diamond Alt. Energy*, 145 S. Ct. at 2135. Plaintiffs' argument that

5   "the targets of its regulation should be locked out of court as unaffected bystanders," *id.* at 2142,

6   should hence be rejected.

7       **Second – separate challenges to the waivers granted under the Clean Air Act**: Plaintiffs

8   claim that Movants should be barred from intervening here because some Movants pursued separate

9   Clean Air Act challenges to California's preempted rules, ECF Nos. 84 at 4, 85 at 5–6, 9, is mistaken.

10  If anything, Movants' pre-existing challenges reinforce Movants' significantly protectable interest

11  in this case, since resolution here could affect the outcome of those challenges and vice versa. *United*

12  *States v. Oregon*, 839 F.2d 635, 638 (9th Cir. 1988) ("[F]actual and legal determinations . . . when

13  upheld by an appellate ruling will have a persuasive *stare decisis* effect in any parallel or subsequent

14  litigation" and "[are] an important consideration in determining the extent to which an applicant's

15  interest may be impaired"); *see also United States v. Stringfellow*, 783 F.2d 821, 826 (9th Cir. 1986)

16  ("The prospect of stare decisis may … supply the requisite practical impairment warranting

17  intervention as of right."), *vacated on other grounds*, 480 U.S. 370 (1987).

18      In short, Movants easily meet the Ninth Circuit's standard for showing an adequate interest

19  to intervene as of right under Rule 24(a).

20      **C.  Federal Defendants do not adequately represent Movants' interests**.

21      Where a private-sector movant seeks to join government defendants, "the presumption of

22  adequacy … is rebutted" if the movant shows that the "interests of government and the private sector

23  *may* diverge" during litigation. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 823 (9th Cir.

24  2001) (emphasis added). The Ninth Circuit recognizes that governmental defendants represent the

25  broad public interest, which may diverge from the "more narrow, parochial interests" of private

26  intervenors. *California ex rel. Lockyer*, 450 F.3d at 445 (citing *Forest Conservation Council v. U.S.*

27  *Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995), *abrogated on other grounds by*, *Wilderness Soc'y*,

28  630 F.3d 1173).

1    Movants have shown that their interests may diverge from the Federal Defendants' here.

2   *First*, although Movants are committed to defend the CRA Resolutions to the last, the government's

3   history of changing position in cases regarding EPA waivers[3] suggests that the Federal Defendants

4   might—for example, after a change in presidential administration—decline to appeal (or dismiss an

5   appeal of) an adverse decision. *See* ECF No. 49 at 14. *Second*, Movants' and Federal Defendants'

6   interests may already diverge. Movants' ultimate interest is ensuring that Plaintiffs' challenges to

7   the Resolution fail, whatever the grounds of decision. In contrast, the Federal Defendants' strongest

8   interest is likely to persuade the Court that the challenged actions are not justiciable, which would

9   set a powerful precedent for future litigation by making similar government actions more difficult

10  to challenge. These different objectives may cause Defendants to forgo meritorious arguments that

11  Movants would vigorously pursue, for example, arguing affirmatively that the waivers are "rules"

12  properly subject to the CRA. *See id.* at 14–15.

13    That showing is more than enough. The Supreme Court has made clear that private parties

14  need not prove an actual conflict with the government; it is sufficient that the government's

15  representation "'may be' inadequate." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538

16  n.10 (1972); *see also Sagebrush Rebellion*, *Inc.*, 713 F.2d at 528 ("This court has consistently

17  followed *Trbovich*."). Indeed, the Ninth Circuit, and district courts within it, regularly admit private

18  parties to intervene of right on the side of governmental defendants. *E.g.*, *Citizens for Balanced Use*,

19  647 F.3d at 899; *California ex rel. Lockyer*, 450 F.3d at 444; *Sw. Ctr. for Biological Diversity*, 268

20  F.3d at 823–24; *Cal. Chamber of Com. v. Becerra*, 529 F. Supp. 3d 1099, 1110 (E.D. Cal. 2021); *S.*

21  *Cal. Healthcare Sys., Inc. v. City of Culver City*, No. 2:21-cv-05052-MCS-RAO, 2021 WL 4817846,

22  at *1 (C.D. Cal. July 26, 2021); *Barke v. Banks*, No. 8:20-cv-00358-JLS-ADS, 2020 WL 2315857,

23  at *3 (C.D. Cal. May 7, 2020); *Am. Rivers v. Wheeler*, No. C 20-04636 WHA, 2020 WL 5993229,

24  at *1 (N.D. Cal. Oct. 9, 2020); *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, No. CV 14-

25

26  _____

27  [3] *See, e.g.*, Petition for Review, *California v. Wheeler*, No. 19-1239 (D.C. Cir. Nov. 15, 2019), ECF
    2 (challenge to withdrawal of ACC I waiver); *see also Diamond Alt. Energy*, 145 S. Ct. at 2130–31

28  (explaining that the Bush EPA denied the ACC I waiver in 2008, the Obama EPA granted it in 2013,
    the Trump EPA rescinded it in 2019, and the Biden EPA reinstated it in 2022).

1    09603-AB (SSX), 2015 WL 12745805, at *1, *5 (C.D. Cal. Mar. 25, 2015); *see also Yniguez v.*

2    *Arizona*, 939 F.2d 727, 738 (9th Cir. 1991).

3    **II.    Alternatively, the Court should grant Movants permissive intervention.**

4            Movants also easily satisfy the requirements for permissive intervention under Rule 24(b),

5    as explained in their motions. *See* ECF Nos. 49 at 15–17; 61 at 9–10. The motions are timely, *see*

6    *supra* Part I.A; ECF Nos. 49 at 10; 61 at 7; and Movants' defenses share common questions of law

7    and fact with the main action, *see* ECF Nos. 49 at 16; 61 at 9–10. Discretionary considerations also

8    support permissive intervention here. *See Venegas v. Skaggs*, 867 F.2d 527, 530, 534 (9th Cir. 1989)

9    (reversing and remanding district court, granting permissive intervention, and noting that district

10   courts have discretion to determine whether permissive intervention is proper, guided by efficiency

11   and fairness to movants and parties). In contrast, denying intervention risks prejudice to Movants

12   by leaving their interests to be defended only by amici status, which, among other disadvantages,

13   provides no right to participate in appeals.

14           Plaintiffs do not dispute that Movants satisfy Rule 24(b)'s minimum requirements. Instead,

15   they argue that Movants' interests are better "vindicated through existing lawsuits" challenging the

16   California waivers and speculate that Movants will attempt to improperly expand the scope of this

17   action to encompass those claims. ECF Nos. 84 at 7; 85 at 7. But such speculation is unfounded and

18   contradicted by Movants' proposed motions to dismiss, which hew closely to Plaintiffs' claims and

19   do not raise extraneous arguments or counterclaims. *See* ECF Nos. 49-9 at 10–25; 61-5 at 6–25.

20   There is thus no risk that permissive intervention will inject collateral issues.

21           Intervention here also will not "prejudice" Plaintiffs "by introducing duplication and delay."

22   ECF Nos. 84 at 8, 85 at 8. Indeed, courts repeatedly reject the notion that participation by trade

23   associations with economic stakes "expands" a case just because they add industry-specific

24   perspectives. *See Venegas*, 867 F.2d at 530. Moreover, any concerns of potential duplication can be

25   managed through reasonable case-management orders, such as coordinated briefing. *See infra* Part

26   III. And Plaintiffs cannot invoke the difficulties of responding "on behalf of 11 States, each with its

27   own internal approval process" to motions "involving complex legal questions," ECF Nos. 84 at 8,

28   when they made the choice to sue together on those precise legal issues. What Plaintiffs describe as

1  "prejudice" is instead the natural result of hearing from the very industries that California is seeking

2  to destroy—precisely the type of participation Rule 24(b) is designed to allow.

3      For these reasons, even if the Court declines to grant intervention as of right, it should permit

4  Movants to intervene under Rule 24(b).

5  **III.    Movants are amenable to reasonable case management conditions.**

6      Plaintiffs conclude by requesting that the Court impose a list of conditions on Movants'

7  participation if granted intervention. ECF Nos. 84 at 9; 85 at 9–10. As an initial matter, Movants

8  submit that any such conditions are appropriately addressed at a future Case Management

9  Conference. Nonetheless, Movants remain open to reasonable conditions on all parties and

10  intervenors that would promote efficiency and conserve judicial resources, and so Movants respond

11  below to Plaintiffs' proposed limitations.

12      Plaintiffs first ask the Court to prohibit Movants from initiating discovery. ECF Nos. 84 at

13  9; 85 at 9. Movants believe that discovery is unnecessary for *all parties* because this case presents

14  only pure questions of law and would therefore consent to a mutual waiver of discovery for the

15  entire litigation. Movants, however, strongly oppose any condition that prohibits Movants from

16  conducting discovery while allowing Plaintiffs to direct discovery at them, which could invite abuse.

17      Plaintiffs also ask that Movants' "arguments and defenses shall be limited to those claims

18  and issues raised in any operative complaints." ECF Nos. 84 at 9; 85 at 9. Movants understand this

19  as a request barring counterclaims or crossclaims by intervenors. At this time, Movants do not intend

20  to bring any such claims.

21      Movants are also open to consolidated briefing. The parties that signed this brief—AmFree

22  and the Corn Growers, and the AFPM Movants—will take efforts to avoid duplication and

23  unnecessary briefing, and indeed are voluntarily submitting this brief jointly in the interest of

24  conserving judicial resources. *See* ECF Nos. 84 at 9; 85 at 9. Movants are therefore open to joint

25  briefing where appropriate. However, at this stage in the proceeding, adopting such conditions

26  would be premature. Among other reasons, limits on the number of pages and briefs for dispositive

27  motions must account for the full scope of parties and intervenors (even future intervenors) on both

28

sides. This can be better addressed, and informed, through the meet-and-confer and case management processes.

Last, Movants oppose Plaintiffs' additional proposed "procedural conditions" relating to meet-and-confer requirements, joint briefing schedules, and restricted page limits for intervenors.[4] *See* ECF Nos. 84 at 9; 85 at 9–10. Movants submit that those requirements are unnecessary and, in any event, premature, since, again, they can be determined, if necessary, after the Court grants intervention. Movants would request that these conditions be discussed at a future case management conference if the Court is nonetheless inclined to impose any of them.

## CONCLUSION

The Court should grant the motions to intervene. The Court should also wait to consider any conditions on Movants' participation until a future case management conference.

---

[4] Movants ask that any page limits the Court places on Movants beyond those prescribed by the Federal Rules of Civil Procedure and Local Rules also apply to Plaintiffs' filings directed at Movants.

1

Dated: August 27, 2025                    Respectfully submitted,

2

3                                         */s/ Katherine C. Yarger*
                                          Katherine C. Yarger* (CO 40387)
4                                         Steven P. Lehotsky** (DC 992765)
                                          Michael B. Schon* (DC 989893)
5                                         LEHOTSKY KELLER COHN LLP

6                                         Bradley A. Benbrook (SBN 177786)
                                          Stephen M. Duvernay (SBN 250957)
7                                         BENBROOK LAW GROUP, PC

8
                                          *Attorneys for Proposed Intervenors American*
9                                         *Fuel & Petrochemical Manufacturers,*
                                          *American Petroleum Institute, and the*
10                                        *National Association of Convenience Stores*

11                                        Michael Buschbacher* (IN 31251-71)
                                          James R. Conde* (DC 1031694)
12                                        James R. Wedeking* (DC 500033)
                                          Laura B. Ruppalt* (VA 97202)
13                                        BOYDEN GRAY PLLC

14
                                          John B. Thomas (SBN 269538)
15                                        HICKS THOMAS LLP

16
                                          *Attorneys for Proposed Intervenors*
17                                        *American Free Enterprise Chamber of*
                                          *Commerce, Illinois Corn Growers*
18                                        *Association, Indiana Corn Growers*
                                          *Association, Iowa Corn Growers Association,*
19                                        *Kansas Corn Growers Association, Kentucky*
                                          *Corn Growers Association, Michigan Corn*
20                                        *Growers Association, Missouri Corn Growers*
                                          *Association, Nebraska Corn Growers*
21                                        *Association, Tennessee Corn Growers*
                                          *Association, Texas Corn Producers,*
22                                        *Wisconsin Corn Growers Association, and*
                                          *National Corn Growers Association*
23

24                                        ** Motion for admission *pro hac vice*
                                          pending.
25                                        * Admitted *pro hac vice*.

26

27

28