1  ROB BONTA
   Attorney General of California
2  MYUNG J. PARK
   Supervising Deputy Attorney General
3  KATHERINE GAUMOND, State Bar No. 349453
   CAITLAN MCLOON, State Bar No. 302798
4  CECILIA D. SEGAL, State Bar No. 310935
   EMMANUELLE S. SOICHET, State Bar No. 290754
5  M. ELAINE MECKENSTOCK, State Bar No. 268861
   Deputy Attorney General
6  1515 Clay Street, 20th Floor
   P.O. Box 70550
7  Oakland, CA  94612-0550
   Telephone:  (510) 879-0299
8  Fax:  (510) 622-2270
   E-mail:  Elaine.Meckenstock@doj.ca.gov
9  *Attorneys for Plaintiff State of California*
   (additional counsel on signature pages)

10

11                IN THE UNITED STATES DISTRICT COURT

12           FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                    SAN FRANCISCO DIVISION

14

15

16  **STATE OF CALIFORNIA, STATE OF**          4:25-cv-04966-HSG
    **COLORADO, STATE OF DELAWARE,**
17  **COMMONWEALTH OF**                         **PLAINTIFFS' OPPOSITION TO**
    **MASSACHUSETTS, STATE OF NEW**             **MOTION TO INTERVENE BY**
18  **JERSEY, STATE OF NEW MEXICO,**            **STATE OF TEXAS**
    **STATE OF NEW YORK, STATE OF**
19  **OREGON, STATE OF RHODE ISLAND,**          (Administrative Procedure Act,
    **STATE OF VERMONT,** and **STATE OF**      5 U.S.C. § 701 et seq.; 5 U.S.C. § 801 et seq.)
20  **WASHINGTON,**
                                                **Date:       October 23, 2025**
21                             Plaintiffs,      **Time:       2:00pm**
                                                **Judge:      Hon. Haywood S. Gilliam, Jr.**
22         v.

23  **UNITED STATES OF AMERICA, U.S.**
    **ENVIRONMENTAL PROTECTION**
24  **AGENCY, LEE ZELDIN,** in his official
    capacity as Administrator of the U.S.
25  Environmental Protection Agency, and
    **DONALD J. TRUMP,** in his official capacity
26  as President of the United States,

27                             Defendants.

28

**STATEMENT OF ISSUES TO BE DECIDED**

Should the Court deny the motion filed by the State of Texas to intervene either as of right or permissively in the above-captioned matter? If the Court grants the motion, should it nonetheless place reasonable conditions on Texas's participation and on this litigation to ensure Plaintiffs are not prejudiced and the case proceeds efficiently?

**INTRODUCTION**

Texas seeks to intervene in this case, based largely on the argument that the Clean Air Act's provision authorizing California to obtain preemption waivers to enforce its own vehicle emission standard offends principles of equal sovereignty. But that and the other interests Texas asserts do not justify intervention as of right because they lack a relationship to Plaintiffs' legal claims. This case concerns the legality of Congress's unprecedented attempt, absent administrative or judicial process, to retroactively annul three Clean Air Act preemption waivers that the U.S. Environmental Protection Agency (EPA) granted to California. In contrast, Texas's asserted interests concern the lawfulness of the waivers themselves—a legal interest that neither relates to Plaintiffs' claims nor would be impaired by the disposition of them, and that is better protected in suits brought under the Clean Air Act's judicial review provision. Indeed, such a suit challenging another EPA waiver is precisely how Texas raised (and lost) its equal sovereignty argument previously. Texas's failure to establish that its claimed interests could be impeded by the disposition of this case is fatal to its motion to intervene as of right.

Permissive intervention is likewise unwarranted. Texas's motion makes clear that its participation risks injecting collateral issues into the case, to Plaintiffs' prejudice. *See* Mot. 18:4-6 (describing the "legal position" it "seeks to advance"). That two groups of trade associations have also moved to intervene defensively, a third intends to so move, and others still might yet file, adds to the risk of prejudice from undue duplication and delay. The Court should therefore deny Texas permissive intervention and instead allow it to air its views in an amicus brief.

Alternatively, if the Court is inclined to grant intervention, Plaintiffs respectfully request that the Court exercise its discretion to place reasonable limitations on Texas's participation along with certain procedural conditions on all parties to ensure the case proceeds efficiently.

**BACKGROUND**

Earlier this year, Congress took the unprecedented and unlawful step of targeting, with resolutions of "rule" disapproval (Resolutions), three Clean Air Act orders that waived preemption of certain emissions standards set by California for new motor vehicles sold in the State. Compl. (ECF 1) ¶¶ 5-7. California has been setting such standards for more than half a century. *Id.* ¶ 33. Since 1967, when Congress generally preempted States from setting new motor vehicle standards, California has done so pursuant to the preemption waivers that the EPA must grant, subject to certain limited conditions. *See* 42 U.S.C. § 7543(b)(1).

Each of the three waivers targeted by the Resolutions permits California to enforce specific amendments to its regulatory program, adopted to reduce harmful pollution and protect public health and welfare. These waivers similarly allow other States to adopt and enforce California's regulations as their own. *Id.* § 7507. The first waiver, published in April 2023 (88 Fed. Reg. 20,688 (Apr. 6, 2023)), authorizes the Advanced Clean Trucks (ACT) regulation, which requires gradual increases in sales of medium- and heavy-duty zero-emission vehicles in California beginning with model year 2024. Compl. ¶ 44. The second and third waivers, published in early January 2025, authorize the Advanced Clean Cars II (ACCII) and Omnibus regulations, respectively. 90 Fed. Reg. 642 (Jan. 6, 2025); 90 Fed. Reg. 643 (Jan. 6, 2025). ACCII gradually strengthens California's longstanding emission standards for light-duty vehicles (passenger cars and light trucks), including the State's zero-emission-vehicle sales requirements and the exhaust emission standards for criteria pollutants, requiring reductions in smog-forming oxides of nitrogen (NOx) and particulate matter. Compl. ¶ 43. The Omnibus regulation likewise strengthens longstanding state emission standards, requiring substantial reductions in NOx exhaust emissions from new medium- and heavy-duty vehicles. *Id.* ¶ 45. All three of these regulations are crucial parts of California's comprehensive plan to improve the air Californians breathe and meet state and federal air quality standards. *Id.* ¶ 46 (noting tens of millions of Californians are affected by some of the worst air quality in the Nation).

The unlawful targeting of these waivers began months (or, in the case of ACT, years) after the waivers were granted. EPA reversed the view it had consistently held for decades—shared by

the Government Accountability Office—and suddenly declared, without any explanation, that waivers were "rules" within the meaning of the Congressional Review Act (CRA). *Id.* ¶¶ 65, 68-70, 73-77; *see also* Mot. 16:19 (describing EPA's "changed position"). Relying on EPA's misinterpretation, Congress enacted the Resolutions that purport to invalidate the three waivers. Compl. ¶¶ 94, 103, 108. The President signed the Resolutions on June 12, 2025. *Id.* ¶ 113. Plaintiff States sued the United States the same day. Plaintiffs seek, *inter alia*, to have the Resolutions declared unconstitutional for violation of separation of powers and federalism principles and, correspondingly, to have the three waivers declared valid and in effect. *Id.* ¶¶ 153-178 & Prayer for Relief.

## LEGAL STANDARD

To intervene as of right under Federal Rule of Civil Procedure 24(a)(2), a movant must show that: (1) the motion is timely; (2) the movant has a "significantly protectable interest" in the subject of the action; (3) disposition of the action may, as a practical matter, impair or impede the movant's ability to protect that interest; and (4) the movant's interest is inadequately represented by the existing parties. *E. Bay Sanctuary Covenant v. Biden*, 102 F.4th 996, 1001 (9th Cir. 2024). "Failure to satisfy any one of the requirements is fatal to the application." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011).

To intervene permissively under Federal Rule of Civil Procedure 24(b)(1), a movant must show that: (1) independent grounds for jurisdiction exist; (2) the motion is timely; and (3) the movant's claim or defense shares a common question of law or fact with the main action. *United States v. City of Los Angeles*, 288 F.3d 391, 403 (9th Cir. 2002). Even if a movant satisfies those "threshold requirements," a court "has discretion to deny permissive intervention," *So. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002), particularly if intervention would "unduly delay or prejudice" the existing parties, Fed. R. Civ. P. 24(b)(3).

Though courts construe Rule 24 broadly in favor of intervention, the movant bears the burden of establishing that the Rule's requirements are met. *See E. Bay Sanctuary Covenant*, 102 F.4th at 1001 & n.2. Conclusory allegations will not suffice. *See Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001).

**ARGUMENT**

**I.     TEXAS DOES NOT MEET THE STANDARD FOR INTERVENTION AS OF RIGHT**

Texas lacks a protectable interest that could be impeded by the disposition of this case.

Texas asserts multiple interests, but they all suffer from the same flaw: they each concern the legality of the EPA waivers for ACCII, ACT, and Omnibus. That is not at issue in this suit. To satisfy Rule 24(a)(2), a movant must establish that its legal interest bears a "relationship" with "the claims at issue." *Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078, 1087-88 & n.8 (9th Cir. 2022). Texas makes clear that its legal interest lies "in the California Waivers." Mot. 10:15. For example, Texas alleges that because California, under the Clean Air Act, can obtain preemption waivers allowing it to enforce its own vehicle emissions standards, the waivers "impermissibly limit" the sovereignty of other States. Mot. 8:23-9:12; *see also id.* at 18:5 (alleging this framework created by the Clean Air Act is "unlawful and unconstitutional"). That claim could be appropriately raised in a petition for review of a waiver pursuant to the Act's judicial review provision. *See* 42 U.S.C. § 7607(b). Texas is well aware of that avenue: it already raised—and lost—its equal sovereignty argument in the D.C. Circuit on petitions for review of another waiver. *See Ohio v. EPA*, 98 F.4th 288, 306-14 (D.C. Cir. 2014), *cert. denied*, 145 S. Ct. 994 (2024).[1] As that previous litigation illustrates, whether the waiver provision is constitutional and whether particular waiver decisions satisfy the Clean Air Act is a step removed from the legal issue presented here: whether the *Resolutions* are lawful and have any legal effect. And while Plaintiffs seek to have the three waivers declared valid, that simply follows from a ruling invalidating the Resolutions. *See, e.g.*, Compl. ¶ 183 ("Because the Resolutions are unlawful, unconstitutional and void, the preemption waivers granted for" ACCII, ACT, and Omnibus "are valid and in effect."). Put simply, Texas's claimed interests do not bear the requisite relationship to Plaintiffs' claims. Because that "core element[] [is] not satisfied," Texas "lacks any 'interest' under Rule 24(a)(2), full stop." *Cal. Dep't of Toxic Substances Control*, 54 F.4th at 1088.

---

[1] The U.S. Supreme Court ultimately reversed on other grounds, but that reversal did not disturb the D.C. Circuit's holding on Texas's equal sovereignty claim. *See generally Diamond Alt. Energy, LLC v. EPA*, 145 S. Ct. 2121 (2025).

For similar reasons, Texas cannot establish that its interest in the waivers' lawfulness would be impaired by the disposition of this case. "Th[is] litigation does not prevent any individual from initiating suit" to challenge a particular waiver. *City of Los Angeles*, 288 F.3d at 402. Texas raised—and lost—its equal sovereignty argument in connection with a petition for review of a different EPA waiver decision. *Supra* at 4:14-17; *contra* Mot. 14:1 (suggesting this suit is "its only" opportunity to make such an argument). Texas could have filed similar petitions for review challenging the waivers for ACCII, ACT, and Omnibus on the grounds complained of here, to the extent they are not precluded by precedent, or else moved to intervene in any such suits filed by others. *See, e.g.*, Pls.' Opp'n to Am. Fuel & Petrochemical Mfrs. (AFPM) et al.'s Mot. to Intervene 5-6, ECF No. 85 (citing petitions for review of all three waivers filed by trade associations); *Iowa v. EPA*, No. 23-1144 (D.C. Cir. filed June 5, 2023) (petition for review of ACT waiver filed by 19 States, but not Texas). It has chosen not to. That Texas presently lacks "other legal means to present its position" on the legality of the waivers (Mot. 13:15-16), is a failure of its own making and should not permit Texas to intervene and unduly complicate this suit—where the legality of the waivers, as issued under the Clean Air Act, is not relevant. *Supra* at 4:17-23. And even if Texas had opted to protect its interests by filing such petitions for review, this suit would not impede them: should Plaintiffs prevail—*e.g.*, should they obtain a determination that the Resolutions were not constitutionally enacted—that disposition would have no legal effect on distinct claims filed as part of a petition for review under the Clean Air Act.

Texas thus cannot show impairment. For that reason, its reliance on *United States v. Oregon* (Mot. 13:16-18) is misplaced. 839 F.2d 635, 638 (9th Cir. 1988) (intervention granted where litigation would "of necessity result in factual and legal determinations" affecting intervenors' ability to "obtain effective remedies in later litigation"). Texas's out-of-circuit district court decisions (Mot. 13:18-22) are even farther off point. *See Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 640 F. Supp. 3d 59, 68 (D.D.C. 2022) (impairment established because order voiding applications for permits to drill would affect state's property and economic interests in those same applications); *Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 16 (D.D.C.

1  2010) (impairment established because order precluding any future leasing in Powder River Basin

2  would implicate similar pending lease applications on other public lands).

3  ## II.   TEXAS DOES NOT MEET THE STANDARD FOR PERMISSIVE INTERVENTION

4      "The intervention rule is . . . not intended to allow the creation of whole new lawsuits by

5  the intervenors." *So. Cal. Edison Co.*, 307 F.3d at 804 (citation omitted). Yet that is precisely the

6  risk posed by Texas's participation. As described above, Texas's interests center on the

7  lawfulness of the waivers, which are "sufficiently different from the issues" presented here, *id.*,

8  and are more properly vindicated through litigation under the Clean Air Act. Texas nonetheless

9  admits that it intends to inject those issues into this case: it asserts that its legal position includes

10  defending the validity of the Resolutions *and also* challenging the waivers as "unlawful and

11  unconstitutional." Mot. 18:5. Indeed, Texas repeatedly attacks as improper California's authority

12  to obtain waivers to enforce its own vehicle emissions standards. *See* Mot. 7:25-10:16. Texas

13  should not be "permitted to inject" these "unrelated issues into the pending litigation." *Arakaki v.*

14  *Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003). To allow otherwise would unduly prejudice the

15  adjudication of Plaintiffs' case. *See* Fed. R. Civ. P. 24(b)(3).[2]

16      Texas's participation as an intervenor-defendant further risks prejudicing Plaintiffs by

17  introducing duplication and delay. As this Court is aware, two sets of organizations have already

18  moved to intervene defensively. A third plans to; more may still follow.[3] Plaintiffs thus face the

19  prospect of having to respond to multiple motions involving complex legal questions from several

20  sets of adverse parties, all of which could significantly slow down the case. Texas makes no effort

21  to address this potential for delay. Nor is there any countervailing efficiency gained by Texas's

22  participation; Texas seeks to intervene as a defendant, not a plaintiff, and does not contend that

23  there is a "separate action that [it] may bring" that could instead be "part of this action,"

24      [2] Texas's views, in any event, are belied by the history and structure of the Clean Air Act.
From the beginning, Congress opted *not* to create a single national standard and instead allowed

25  California—via the waiver provision—"to continue and expand its pioneering efforts" at
emissions control. *Motor & Equip. Mfrs. Ass'n, Inc. v. EPA*, 627 F.2d 1095, 1111 (D.C. Cir.

26  1979); *see also* Pls.' Opp'n to AFPM et al.'s Mot. to Intervene 5 n.1 (explaining that California's
emissions standards do not create a de facto national standard).

27      [3] On September 3, counsel for the Alliance for Automotive Innovation and the National
Automobile Dealers Association contacted counsel for Plaintiffs regarding those associations'

28  intent to move to intervene defensively.

6

promoting judicial economy. *In re Wells Fargo & Co. Hiring Pracs. Derivative Litig.*, No. 22-cv-05173-TLT, 2023 WL 4536883, at *4 (N.D. Cal. July 13, 2023). To prevent this already complex case from becoming unmanageable, the Court should exercise its discretion and decline to permit Texas's intervention. *See Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 380 (1987) ("[I]n a complex case . . . a district judge's decision on how best to balance the rights of the parties against the need to keep the litigation from becoming unmanageable is entitled to great deference."). At most, Texas should instead be permitted to present its views in an amicus brief. *See United States v. De Leon Guerrero*, 4 F.3d 749, 756 (9th Cir. 1993) (affirming district court decision to deny permissive intervention but allow movant to participate as amicus curiae).

## III.    IF THE COURT GRANTS INTERVENTION, IT SHOULD EXERCISE ITS DISCRETION TO IMPOSE REASONABLE CASE MANAGEMENT CONDITIONS

If the Court nonetheless intends to grant Texas intervention, and in light of the concerns identified above, Plaintiffs respectfully request that it impose the following reasonable limitations on its participation:

(1) Texas shall not initiate discovery; and

(2) Texas's arguments and defenses shall be limited to those claims and issues raised in any operative complaints, meaning, *inter alia*, Texas may not challenge the constitutionality of the Clean Air Act's waiver provision.

In addition, Plaintiffs respectfully request that the Court impose the following procedural conditions on all parties, including all intervenors:

(1) the parties must meet and confer at least two weeks before the filing of any dispositive motion and submit a joint proposed briefing schedule to the Court at least one week before the motion's filing; and

(2) the combined total page limit of any intervenor briefs on any dispositive motion must be limited to two-thirds of the page limit allowed to the original parties that the intervenor is supporting. In other words, defendant-intervenors would, collectively, be limited to two-thirds the pages available to Federal Defendants, and plaintiff-intervenors would, collectively, be limited to two-thirds the pages available to Plaintiff States.

The other two groups of movant-intervenor-defendants have indicated they are "amenable to reasonable case management conditions." Joint Reply of AFPM et al. & Am. Free Enterprise Chamber of Com. et al. 14, ECF 88. Such conditions are also authorized under Federal Rule of Procedure 24(a) and 24(b), are routinely applied, and will help promote judicial efficiency. *See Stringfellow*, 480 U.S. at 382-83 & n.2 (Brennan, J., concurring in part and concurring in the judgment) (confirming district courts have discretion to limit intervention as of right and even more discretion to limit permissive intervention (citing Advisory Committee Notes, Fed. R. Civ. P. 24)); *Defs. of Wildlife v. U.S. Fish & Wildlife Serv.*, No. 21-cv-00344-JSW, 2021 WL 4552144, at *3 (N.D. Cal. May 3, 2021) (barring defendant-intervenors from initiating discovery and directing parties to meet and confer on case schedule allowing for efficient adjudication of anticipated motion to dismiss and motions for summary judgment); *California v. Health & Human Servs.*, No. 17-cv-05738-HSG, 2017 WL 6731640, at *9 (N.D. Cal. Dec. 29, 2017) (limiting issues in the case to those raised by the original parties).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the motion to intervene. In the alternative, Plaintiffs respectfully request that the Court impose the case management conditions described above to avoid prejudice to Plaintiffs.

Dated:  September 5, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California
MYUNG J. PARK
Supervising Deputy Attorney General

*/s/ Cecilia D. Segal*
CECILIA D. SEGAL
Deputy Attorney General
455 Golden Gate Ave., Ste. 11000
San Francisco, CA 94102
Telephone:  (415) 510-3545
Fax:  (510) 622-2270
E-mail: Cecilia.Segal@doj.ca.gov
*Attorneys for Plaintiff State of California*

1

2

**PHILIP J. WEISER**
*Attorney General for the State of Colorado*

3

*/s/ Carrie Noteboom*
CARRIE NOTEBOOM*

4

Assistant Deputy Attorney General
1300 Broadway, 10th Floor

5

Denver, CO 80203
(720) 508-6285

6

Carrie.noteboom@coag.gov

7

8

9

**KATHLEEN JENNINGS**
*Attorney General of the State of Delaware*

10

11

By: */s/ Vanessa L. Kassab*
IAN R. LISTON

12

Director of Impact Litigation
RALPH K. DURSTEIN III

13

VANESSA L. KASSAB*
Deputy Attorneys General

14

Delaware Department of Justice

15

820 N. French Street
Wilmington, DE 19801

16

(302) 683-8899
vanessa.kassab@delaware.gov

17

18

**ANDREA JOY CAMPBELL**
*Attorney General for the Commonwealth of*

19

*Massachusetts*

20

*/s/ Seth Schofield*
SETH SCHOFIELD *

21

Senior Appellate Counsel

22

JON WHITNEY*
Special Assistant Attorney General

23

Energy and Environment Bureau
Office of the Attorney General

24

One Ashburton Place, 18th Flr.

25

Boston, Mass. 02108
(617) 727-2200

26

seth.schofield@mass.gov
jon.whitney@mass.gov

27

28

**MATTHEW J. PLATKIN**
*Attorney General for the State of New Jersey*

*/s/ Lisa J. Morelli*
LISA J. MORELLI
Deputy Attorney General
New Jersey Division of Law
25 Market Street
Trenton, New Jersey 08625
(609) 376-2740
Lisa.Morelli@law.njoag.gov

**RAÚL TORREZ**
*Attorney General for the State of New Mexico*

*/s/ William Grantham*
WILLIAM GRANTHAM*
Assistant Attorney General
408 Galisteo Street
Santa Fe, New Mexico 87501
(505) 717-3520
wgrantham@nmdoj.gov

**LETITIA JAMES**
*Attorney General for the State of New York*

*/s/ Ashley M. Gregor*
ASHLEY M. GREGOR*
Assistant Attorney General
Environmental Protection Bureau
28 Liberty Street, 19th Floor
New York, NY 10005
(212) 416-8454
ashley.gregor@ag.ny.gov

9

1

**DAN RAYFIELD**
*Attorney General for the State of Oregon*

**CHARITY R. CLARK**
*Attorney General for the State of Vermont*

2

3

*/s/ Paul Garrahan*
PAUL GARRAHAN*
Sr. Assistant Attorney General
Oregon Department of Justice
1162 Court Street NE
Salem, Oregon 97301-4096
(503) 947-4540
Paul.Garrahan@doj.oregon.gov

*/s/ Hannah Yindra*
HANNAH YINDRA*
Assistant Attorney General
Office of the Attorney General
109 State Street
Montpelier, VT 05609
(802) 828-3186
Hannah.Yindra@vermont.gov

4

5

6

7

8

**PETER F. NERONHA**
*Attorney General for the State of Rhode Island*

**NICHOLAS W. BROWN**
*Attorney General for the State of Washington*

9

10

*/s/ Nicholas M. Vaz*
NICHOLAS M. VAZ*
Special Assistant Attorney General
Office of the Attorney General
Chief, Environmental and Energy Unit
150 South Main Street
Providence, Rhode Island 02903
(401) 274-4400 ext. 2297
nvaz@riag.ri.gov

*/s/ Alexandria Doolittle*
ALEXANDRIA K. DOOLITTLE*
Assistant Attorney General
Office of the Attorney General
P.O. Box 40117
Olympia, Washington 98504-0117
(360) 586-6769
Alex.Doolittle@atg.wa.gov

11

12

13

14

15

16

*Admitted pro hac vice

17

Pursuant to Local Rule 5-1(i), I attest that all signatories to this document concurred in its filing.

18

19

*/s/ Cecilia D. Segal*
Cecilia D. Segal
Counsel for Plaintiff State of California

20

21

OK2025401237
44788248

22

23

24

25

26

27

28