Sean Howell, Bar No. 315967
GIBSON, DUNN & CRUTCHER
One Embarcadero Center
Suite 2600
San Francisco, CA 94111
Tel.: 415-393-8355
Fax: 415-801-7364
showell@gibsondunn.com

Raymond B. Ludwiszewski (*pro hac vice* forthcoming)
Rachel Levick (*pro hac vice* forthcoming)
GIBSON, DUNN & CRUTCHER
1700 M Street, NW
Washington, DC 20036
Tel.: 202-955-8500
Fax: 202-467-0539
rludwiszewski@gibsondunn.com
rlevick@gibsondunn.com

*Attorneys for Proposed Defendant-Intervenors*
*The Alliance for Automotive Innovation and*
*The National Automobile Dealers Association*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| STATE OF CALIFORNIA, et al.,<br><br>          Plaintiffs,<br><br>     v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>          Defendants. | Case No.    4:25-cv-04966-HSG<br><br>**NOTICE OF MOTION AND MOTION TO INTERVENE BY THE ALLIANCE FOR AUTOMOTIVE INNOVATION AND THE NATIONAL AUTOMOBILE DEALERS ASSOCIATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Administrative Procedure Act Case<br>Action Filed: June 12, 2025<br>Trial Date: none<br>Hearing Date: November 13, 2025<br>Judge:  Honorable Haywood S. Gilliam |

1

**TABLE OF CONTENTS**

2    NOTICE OF MOTION AND MOTION ........................................................................ 1

3    STATEMENT OF ISSUES TO BE DECIDED ............................................................ 1

4    MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE .................................. 2

5    STATEMENT OF INTEREST .................................................................................... 2

6    BACKGROUND ........................................................................................................ 4

7        I.     Clean Air Act Preemption ............................................................................ 4

8        II.    California's ACC II Program ......................................................................... 5

9        III.   EPA Waivers and Congressional Actions .................................................... 5

10       IV.    The CRA Litigation ...................................................................................... 7

11   LEGAL STANDARD ................................................................................................. 8

12   GROUNDS FOR INTERVENTION ............................................................................ 8

13       I.     Intervention as of Right ............................................................................... 9

14              A.     The Motion is Timely ....................................................................... 9

15              B.     Proposed Intervenors Claim a Significant, Protectable Interest

16                     in This Action ................................................................................ 10

17              C.     Disposition of this Action May Impair Proposed Intervenors'

18                     Interest .......................................................................................... 13

19              D.     Proposed Intervenors' Interests Are Not Adequately

20                     Represented ................................................................................... 13

21       II.    Permissive Intervention ............................................................................. 16

22   CONCLUSION ........................................................................................................ 16

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

MOTION TO INTERVENE
CASE No. 4:25-cv-04966-HSG

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Rivers v. Wheeler*,
    2020 WL 5993229 (N.D. Cal. Oct. 9, 2020)....................................................................11

*In re California Micro Devices Sec. Litig.*,
    168 F.R.D. 276 (N.D. Cal. 1996) ...................................................................................10

*Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*,
    152 F.3d 1184 (9th Cir. 1998)........................................................................................14

*Citizens for Balanced Use v. Montana Wilderness Ass'n*,
    647 F.3d 893 (9th Cir. 2011)..........................................................................................10

*Conservation L. Found. of New England, Inc. v. Mosbacher*,
    966 F.2d 39 (1st Cir. 1992) ............................................................................................15

*County of Fresno v. Andrus*,
    622 F.2d 436 (9th Cir. 1980)....................................................................................10, 11

*Donnelly v. Glickman*,
    159 F.3d 405 (9th Cir. 1998)..........................................................................................10

*Finjan, Inc. v. Symantec Corp.*,
    2017 WL 6610081 (N.D. Cal. Sept. 29, 2017) ..............................................................10

*Forest Conservation Council v. U.S. Forest Serv.*,
    66 F.3d 1489 (9th Cir. 1995)..........................................................................................14

*Freedom from Religion Found., Inc. v. Geithner*,
    644 F.3d 836 (9th Cir. 2011).......................................................................................8, 16

*Kalbers v. U.S. Dep't of Justice*,
    22 F.4th 816 (9th Cir. 2021) ...........................................................................................9

*Kleissler v. U.S. Forest Serv.*,
    157 F.3d 964 (3d Cir. 1998)...........................................................................................15

*California ex rel. Lockyer v. United States*,
    450 F.3d 436 (9th Cir. 2006)..........................................................................................10

*May v. Google, Inc.*,
    2025 WL 1735671 (N.D. Cal. June 23, 2025) ...............................................................10

*Missouri v. Harris*,
    2014 WL 2506606 (E.D. Cal. June 3, 2014)..................................................................12

MOTION TO INTERVENE
CASE No. 4:25-cv-04966-HSG

Gibson, Dunn &
Crutcher LLP

*Perry v. Schwarzenegger,*
    630 F.3d 898 (9th Cir. 2011)..................................................................................9

*Sagebrush Rebellion, Inc. v. Watt,*
    713 F.2d 525 (9th Cir. 1983)................................................................................13

*Sierra Club v. EPA,*
    995 F.2d 1478 (9th Cir. 1993).........................................................................8, 11

*Sierra Club v. Espy,*
    18 F.3d 1202 (5th Cir. 1994)................................................................................15

*Sw. Ctr. for Biological Diversity v. Berg,*
    268 F.3d 810 (9th Cir. 2001)................................................................8, 9, 13, 14

*Trbovich v. United Mine Workers,*
    404 U.S. 528 (1972)............................................................................................14

*United States v. Alisal Water Corp.,*
    370 F.3d 915 (9th Cir. 2004)...............................................................................10

*United States v. Oregon,*
    913 F.2d 576 (9th Cir. 1990)..................................................................................9

*Washington v. U.S. Food & Drug Admin.,*
    108 F.4th 1163 (9th Cir. 2024) ............................................................................16

*Wilderness Soc'y v. U.S. Forest Serv.,*
    630 F.3d 1173 (9th Cir. 2011)......................................................................2, 8, 9

*Winston v. United States,*
    2015 WL 9474284 (N.D. Cal. Dec. 29, 2015) ....................................................10

**Statutes**

5 U.S.C. § 801 ..............................................................................................................6

5 U.S.C. § 802 ..............................................................................................................6

42 U.S.C. § 7507 ..........................................................................................................5

42 U.S.C. § 7521 .....................................................................................................4, 11

42 U.S.C. § 7543 ..........................................................................................................4

Public Law No. 119-16 .................................................................................................6

**Rules**

Civil L.R. 7-4 ...............................................................................................................1

iii

Gibson, Dunn & Crutcher LLP

Fed. R. Civ. P. 12 ................................................................................................................1

Fed. R. Civ. P. 24 ...........................................................................1, 2, 8, 9, 10, 12, 16

**Regulations**

13 C.C.R. § 1956.8 ..........................................................................................................5

13 C.C.R. § 1962.4 ..........................................................................................................5

13 C.C.R. § 1963.1 ..........................................................................................................5

13 C.C.R. § 2036 .............................................................................................................5

13 C.C.R. § 2139 .............................................................................................................5

88 Fed. Reg. 20,688 (Apr. 6, 2023) ...............................................................................6

90 Fed. Reg. 642 (Jan. 6, 2025) .....................................................................................6

90 Fed. Reg. 643 (Jan. 6, 2025) .....................................................................................6

**Other Authorities**

Alliance for Automotive Innovation, *Automaker Statement on Senate Repeal of
    California Gas Vehicle Ban* (May 21, 2025),
    https://www.autosinnovate.org/posts/press-release/senate-repeal-california-gas-
    vehicle-ban .............................................................................................................11

Alliance for Automotive Innovation, California State Motor Vehicle Pollution Control
    Standards; Advanced Clean Cars II Regulations; Request for Waiver of
    Preemption; Docket ID # EPA-HQ-OAR-2023-0292 (February 27, 2024) ................12

California Air Resources Board, "Section 177 States Regulation Dashboard" (last
    visited June 29, 2025), *available at* https://ww2.arb.ca.gov/our-work/
    programs/advanced-clean-cars-program/states-have-adopted-californias-vehicle-
    regulations ...............................................................................................................5

H.J. Res. 87 (119th Congress)........................................................................................6

H.J. Res. 88 (119th Congress)........................................................................................6

H.J. Res. 89 (119th Congress)........................................................................................6

H. Rep. No. 728, 90th Cong., 1st Sess. (1967) .............................................................4

Manufacturers Advisory Correspondence ECCD-2025-03, CARB (May 23, 2025) ............6

Manufacturers Advisory Correspondence ECCD-2025-08, CARB (August 25, 2025)...6, 7, 10, 11, 13

S. Rep. No. 403, 90th Cong., 1st Sess. (1967) ..............................................................4

iv

S. Rep. No. 403, 90th Cong., 1st Sess., 33 (1967) ............................................................................4

The White House, "Statement by the President" (June 12, 2025), *available at*
    https://www.whitehouse.gov/briefings-statements/2025/06/statement-by-the-
    president/ ...........................................................................................................................................6

Gibson, Dunn &
Crutcher LLP

v

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that on November 13, 2025, or as soon as the matter may be heard[1] in the courtroom of the Honorable Haywood S. Gilliam, Jr. of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, California 94612, the Alliance for Automotive Innovation and the National Automobile Dealers Association (collectively, "Proposed Intervenors") will and hereby do move to intervene as Defendant-Intervenors in this action.

Proposed Intervenors seek an order granting them leave to intervene as Defendant-Intervenors pursuant to Rule 24 of the Federal Rules of Civil Procedure (FRCP). In accordance with Rule 24(c), Proposed Intervenors have attached a Proposed Answer in Intervention as Exhibit A solely to comply with the technical requirements of Rule 24(c). Should the Count grant the motion to intervene, Proposed Intervenors will first file a motion under Rule 12(b) to comply with the requirement that such a motion come before a responsive pleading. Proposed Intervenors will undertake all reasonable efforts to avoid duplicative briefing and would propose that the parties confer on a coordinated briefing schedule for any Rule 12 motions.

This Motion is based on this Notice of Motion, the supporting Memorandum of Points and Authorities, all pleadings and papers filed in this action, and such other written and oral argument or evidence as may be presented at or before the time this Motion is taken under submission.

Plaintiffs have reserved their right to oppose or otherwise respond to this motion to intervene after it has been filed. Defendants take no position on the motion.

**STATEMENT OF ISSUES TO BE DECIDED**

Pursuant to Civil L.R. 7-4, Proposed Intervenors submit that the issues to be decided on this Motion are:

1.    Whether Proposed Intervenors, which have significantly protectable interests that are affected by the outcome of this litigation, meet the requirements set forth in Rule 24(a) to intervene in

---

[1] Proposed Intervenors observe that the hearing on the motions to intervene filed by three other parties is currently set for October 23, 2025. *See* Dkt. 87. Proposed Intervenors would respectfully request that this motion be heard at the same hearing to avoid undue delay.

this action as a matter of right.

2.    Alternatively, whether Proposed Intervenors, which have significantly protectable interests that are affected by the outcome of this litigation, meet the requirements for permissive intervention set forth in Rule 24(b).

## MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE

Plaintiffs filed a complaint in this Court challenging the legality and constitutionality of three joint resolutions passed by Congress and signed by the President.  The joint resolutions, passed pursuant to the Congressional Review Act ("CRA"), invalidated Clean Air Act ("CAA") waivers of preemption for three sets of California vehicle emissions standards.  The Alliance for Automotive Innovation ("Auto Innovators") and the National Automobile Dealers Association ("NADA") (collectively, "Proposed Intervenors") respectfully move to intervene as of right in support of the Defendants pursuant to Federal Rule of Civil Procedure 24(a)(2), or alternatively, to intervene by permission under Rule 24(b)(1)(B).

Auto Innovators represents automobile manufacturers who collectively produce and sell over ninety percent of the new passenger vehicles and light-duty trucks sold in the United States.  NADA is a trade association of new car and truck dealerships.  Proposed Intervenors' members have a vital stake in this litigation and will be significantly harmed if the Court grants Plaintiffs their requested relief. Proposed Intervenors should be granted intervention as of right because (1) this motion is timely; (2) Proposed Intervenors' members have sufficient interest in this litigation because Plaintiffs challenge the invalidation of California regulations that directly affect Proposed Intervenors' members; (3) Proposed Intervenors' ability to protect that interest, absent intervention, would be impaired by disposition of the case; and (4) the existing parties do not adequately represent Proposed Intervenors' members' interests in this case.  *See Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (*en banc*).  Alternatively, permissive intervention is proper under Rule 24(b).

## STATEMENT OF INTEREST

Auto Innovators is a trade association that represents nearly all of the full-line automakers producing and selling motor vehicles in the United States.  Each of Auto Innovators' members does business in California.  Auto Innovators collaborates with industry leaders, legislators, regulators, and

other stakeholders in Washington, D.C. and across the country to develop public policy that promotes innovation, vehicle safety, and environmental responsibility. Auto Innovators carries out its mission by participating in actions, such as rulemaking and litigation, to protect the rights and interests of automobile manufacturers and the other automotive-related stakeholders. Among other goals, Auto Innovators seeks to protect its members' interests in clear, feasible, harmonized regulations addressing the automobile industry, including greenhouse gas emissions and zero-emission vehicle requirements. Auto Innovators' members have a significant interest in clear, common-sense regulations that include realistic, achievable mandates while still providing for consumer choice. They also must make production decisions years in advance for future models, and they rely upon regulatory and legal clarity and certainty in making these costly production decisions. Accordingly, Auto Innovators has a strong interest in intervening to defend the joint resolutions of disapproval at issue in this litigation.

NADA is the voice of franchised new car and truck dealers in the United States, representing more than 16,000 vehicle dealers that engage in the sale of new vehicles throughout the country, including 1,178 new car dealers in California. NADA's members employ more than 1,200,000 people nationwide, and most are small businesses as defined by the Small Business Administration. NADA partners with a broad range of leaders—including lawmakers, agencies, and other stakeholders—at both the federal and state levels to influence policies that promote dealer interests. To that end, NADA has long supported single, national emissions standards that are technologically feasible, economically practicable, and do not restrict consumer choice. NADA seeks to protect its members' interests by opposing unrealistic zero-emission vehicle mandates that will directly impact the fleet mix available to its dealer members and their corresponding ability to satisfy their customers' demands. The American Truck Dealers ("ATD"), a division of NADA, represents over 3,800 franchised commercial truck dealers, all located in the United States, who sell new and used trucks, tractors and trailers, and engage in service, repair, and parts sales. ATD's dealer members are on the front line working with truck owners and operators every day to support the movement of our nation's freight. They collectively employ more than 144,000 people and have a total U.S. payroll of $9.9 billion. In 2024, ATD dealers sold $130 billion of goods and services across the country. Based on the foregoing, NADA also unquestionably has a strong interest in intervening to defend the joint resolutions of disapproval at issue

Gibson, Dunn &
Crutcher LLP

in this litigation.

## BACKGROUND

### I.    Clean Air Act Preemption

When Congress authorized the U.S. Environmental Protection Agency ("EPA") to regulate emissions from new motor vehicles, 42 U.S.C. § 7521(a), it preempted States from setting their own vehicle emissions standards, *id.* § 7543(a).  It did so to prevent the automotive industry from having to comply with numerous, separate standards, thereby minimizing economic strain on the industry and reducing costs for consumers.[2]  Congress gave EPA the authority to "waive" this preemptive effect for California—and only California—under certain conditions.  *Id.* § 7543(b)(1).[3]  If EPA determines that those conditions are met, EPA is authorized to permit California to adopt and enforce vehicle emissions standards, even if they are more stringent than the federal standards.  EPA has considerable discretion in determining whether those conditions have been met.  *See, e.g., id.* § 7543(b)(1)(a) ("No such waiver shall be granted if [EPA] finds that the determination of [California] is arbitrary and capricious" or if California "does not need such State standards to meet compelling and extraordinary conditions").  California received this exemption to preemption in part because it regulated vehicle emissions before Congress gave EPA regulatory authority to do so, and also because the state experienced smog-related air quality issues in local regions.  *See* S. Rep. No. 403, 90th Cong., 1st Sess., 33 (1967).  California's unique ability to be granted a preemption waiver is also the result of a legislative compromise between California congressional representatives and industry.  *See id.*

Congress later enacted Section 177 of the CAA, which permits any other State to adopt and

---

[2] *See* S. Rep. No. 403, 90th Cong., 1st Sess., 33 (1967) ("The auto industry [] was adamant that the nature of their manufacturing mechanism required a single national standard in order to eliminate undue economic strain on the industry. . . .  The industry, confronted with only one potential variation, will be able to minimize economic disruption and therefore provide emission control systems at lower costs to the people of the Nation."); H. Rep. No. 728, 90th Cong., 1st Sess., 21–23 (1967) ("The committee feels that the problems faced by the automobile manufacturing industry arising out of identical Federal and State standards, separately administered, would be difficult for the industry to meet since different administration could easily lead to different answers to identical questions.").

[3] To qualify to seek a waiver, a State must have "adopted standards … for the control of emissions from new motor vehicles or new motor vehicle engines prior to March 30, 1966."  42 U.S.C. § 7543(b)(1).  The only State that qualifies to seek a waiver under § 7543(b)(1) is California.  S. Rep. No. 403, 90th Cong., 1st Sess., 33 (1967).

Gibson, Dunn &
Crutcher LLP

enforce vehicle emissions standards if those standards "are identical to the California standards for which a waiver has been granted for such a model year." 42 U.S.C. § 7507. In recognition of the automotive industry's lengthy fleet planning and production timeline, Section 177 requires the States to adopt the standards at least two years before they apply to a given model year. *Id.*

## II. California's ACC II Program

At issue in this dispute is California's Advanced Clean Cars II ("ACC II") program. Among other requirements which ramped up in stringency over the next decade, ACC II expressly required 100 percent of new passenger vehicles and light trucks sold in California to be zero-emissions vehicles ("ZEVs") by model year 2035. 13 C.C.R. § 1962.4(c)(1)(B). Pursuant to Section 177 of the CAA, 42 U.S.C. § 7507, 11 additional States—including Plaintiff States—have adopted California's ACC II regulations. Combined, these States are estimated to account for approximately 40 percent of new light-duty vehicle registrations in the country. California Air Resources Board, "Section 177 States Regulation Dashboard" (last visited June 29, 2025), *available at* https://ww2.arb.ca.gov/our-work/programs/advanced-clean-cars-program/states-have-adopted-californias-vehicle-regulations. Because of this large share of registrations and the challenges posed to industry in planning product and fleet mixes that vary across states, California's emissions standards become *de facto* national emissions standards.

Also at issue in this case are California's Advanced Clean Trucks regulations and Omnibus Low NOx ("Omnibus") regulations. The Advanced Clean Trucks regulations require medium- and heavy-duty vehicle manufacturers to sell zero-emission vehicles as an increasing percentage of their annual sales in the state from 2024 to 2035. 13 C.C.R. § 1963.1(b). The Omnibus regulations include more stringent NOx and particulate matter emission standards for new heavy-duty engines and vehicles, including enhanced in-use testing and longer warranty periods. 13 C.C.R. §§ 1956.8, 2036, 2139.

## III. EPA Waivers and Congressional Actions

Pursuant to Section 209(b), between April 2023 and January 2025, EPA granted California's requests for the three preemption waivers at issue in this case, authorizing California to enforce three sets of regulatory standards: ACC II regulations, Advanced Clean Trucks regulations, and Omnibus

Gibson, Dunn & Crutcher LLP

regulations.  *See* 88 Fed. Reg. 20,688 (Apr. 6, 2023); 90 Fed. Reg. 642 (Jan. 6, 2025); 90 Fed. Reg. 643 (Jan. 6, 2025).  In February 2025, EPA transmitted these three EPA actions granting California's waivers for those programs to Congress for review under the Congressional Review Act ("CRA").

The CRA was enacted to facilitate congressional review of federal agency rules.  5 U.S.C. § 801(a)(1)(A).  It requires federal agencies to submit rules to Congress for review and gives Congress 60 days to introduce a resolution of disapproval.  *Id.* § 802(a).  The CRA creates an exception to the filibuster that enables the Senate to adopt a resolution disapproving of a federal agency's rule with a simple majority vote.  *Id.* § 802(d)(1).  If a joint resolution passes both houses and is signed into law by the President, the rule in question shall have no legal effect and may not be reissued in substantially the same form.  *Id.* § 801(b)(1), (2).

On May 22, 2025, the Senate joined the House in adopting three joint resolutions disapproving the three CAA preemption waivers, with the joint resolution concerning the ACC II waiver passing both chambers with *bipartisan* majorities.  H.J. Res. 87, 88, 89 (119th Congress).  President Trump signed the resolutions into law on June 12, 2025.  The White House, "Statement by the President" (June 12, 2025), *available at* https://www.whitehouse.gov/briefings-statements/2025/06/statement-by-the-president/; *see also* Public Law No. 119-16.  The joint resolutions have the same force and effect as legislation.

Notwithstanding Congress' and the President's actions, on May 23, 2025, the California Air Resources Board ("CARB") issued an industry directive (in the form of a Manufacturers Advisory Correspondence or "MAC") providing that light-duty engine manufacturers must continue to follow CARB's now-preempted ACC II standards.  Manufacturers Advisory Correspondence ECCD-2025-03, CARB (May 23, 2025).  The MAC noted that continued certification to ACC II "is necessary to . . . ensure the requirements of certification are met to enable lawful vehicle sales in California," indicating that a failure to certify to the preempted standards would render sales of such vehicles illegal.  *Id.*

On August 25, 2025, "in response to uncertainty and to address concerns raised at the time by vehicle manufacturers about the potential effects" of the joint resolutions on CARB's certification authority and process, CARB issued a revised MAC superseding the May 2025 MAC.  Manufacturers Advisory Correspondence ECCD-2025-08, CARB (August 25, 2025) (Ex. A) ("August 2025 MAC")

at 1. The August 2025 MAC encourages light-duty engine manufacturers to continue to certify to ACC II. *Id.* at 2. But the August 2025 MAC also allows manufacturers to certify with CARB by means of two alternative pathways: either (1) certifying current and future model years to the Low-Emission Vehicle III regulations adopted by CARB in 2012, or (2) submitting an EPA certification to CARB. *Id.*

Importantly, the August 2025 MAC *explicitly threatens* industry with retroactive enforcement of the ACC II standards should manufacturers choose to comply with federal law and decline to certify to California's now-preempted standards. The August 2025 MAC provides that "[m]anufacturers who seek certification through the alternative pathways . . . should be advised, however, that ***CARB reserves its right to enforce the regulations covered by the waivers*** targeted by the congressional resolutions in the event a court of law holds those resolutions invalid, ***including with respect to model years that such manufacturers ask CARB to certify under these alternative pathways***." *Id.* at 3 (emphasis added). "Whether CARB opts to pursue such enforcement would be decided if and when that question becomes ripe." *Id.*

## IV.     The CRA Litigation

California and 10 other States filed this lawsuit on June 12, 2025. Plaintiffs allege that the Defendants—the United States of America, EPA, EPA Administrator Lee Zeldin, and President Trump—acted contrary to the CRA because, as Plaintiffs argue, EPA's actions to grant the waivers in question were adjudicatory orders, not rules, and are therefore not subject to the CRA. Dkt. 1, Compl. ¶ 137. Plaintiffs also allege that EPA improperly reclassified the waiver actions from adjudicatory orders to rules after the actions were already complete, and that such a reclassification is arbitrary and capricious under the Administrative Procedure Act. Compl. ¶ 116, 126.

Plaintiffs also raise three constitutional claims, first asserting that President Trump, Administrator Zeldin, and EPA violated the Take Care Clause of Article II of the Constitution because they knew the waiver actions were not rules subject to the CRA and therefore exercised no care in faithfully executing the Nation's laws by submitting them to Congress for CRA review. Compl. ¶ 145. Second, Plaintiffs claim that the *Defendants* violated separation of powers principles, while pointing not to an action of the Executive branch but to Congress' actions, asserting in part that *Congress*

MOTION TO INTERVENE
CASE No. 4:25-cv-04966-HSG

Gibson, Dunn &
Crutcher LLP

improperly delegated its authority to the Executive Branch to "determine the Rules of its Proceedings" under Article I, Section 5 of the Constitution. Compl. ¶ 158. Finally, Plaintiffs allege that Defendants violated the Tenth Amendment and principles of federalism because the use of the CRA to overturn *EPA's* waiver actions is an improper attempt to target *State* regulations. Compl. ¶ 175. Building from these claims, Plaintiffs also assert that by engaging in this conduct, the federal Defendants acted *ultra vires*, Compl. ¶ 119, and violated federal law such that this Court can use its equitable power to enjoin the conduct, Compl. ¶ 180.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 24(a)(2), a movant has a right to intervene when "(1) the motion [is] timely; (2) the applicant [claims] a 'significantly protectable' interest relating to the property or transaction which is the subject of the action; (3) the applicant [is] so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest [is] inadequately represented by the parties to the action." *Wilderness Soc'y*, 630 F.3d at 1177 (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993)). Rule 24(a) is generally "construe[d] … liberally in favor of potential intervenors," "guided primarily by practical considerations, not technical distinctions." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001) (quotation marks omitted).

Permissive intervention is proper under Rule 24(b) where there is "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011) (quotation marks omitted).

## GROUNDS FOR INTERVENTION

This Court should grant Proposed Intervenors' motion to intervene because Proposed Intervenors are entitled to intervene under Rule 24(a)(2) for the reasons set forth herein, most notably because Proposed Intervenors—as the industry most directly regulated by the underlying California regulatory program at issue—possess a sufficient, protectable interest in the outcome of this litigation that is not adequately represented by the existing parties. In the alternative, this Court should permit Proposed Intervenors to intervene under Rule 24(b) for the same reasons.

MOTION TO INTERVENE
CASE No. 4:25-cv-04966-HSG

Gibson, Dunn &
Crutcher LLP

## I.     Intervention as of Right

Proposed Intervenors are entitled to intervene as of right under Rule 24(a)(2) because (1) this motion is timely; (2) Proposed Intervenors' members have sufficient interest in this litigation because Plaintiffs challenge the invalidation of three sets of EPA waivers allowing the enforcement of California regulations that directly affect Proposed Intervenors' members; (3) Proposed Intervenors' ability to protect that interest, absent intervention, would be impaired by disposition of the case; and (4) the Defendants do not adequately represent Proposed Intervenors' members' interests in this case.[4] *Wilderness Soc'y*, 630 F.3d at 1177.

### A.     The Motion is Timely.

The first requirement for intervention under Rule 24(a)(2), timeliness, "is the threshold requirement for intervention." *United States v. Oregon*, 913 F.2d 576, 588 (9th Cir. 1990). The Ninth Circuit evaluates timeliness according to "three primary factors: (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Kalbers v. U.S. Dep't of Justice*, 22 F.4th 816, 822 (9th Cir. 2021).

All three factors favor intervention here. This action was filed on June 12, 2025, and is in its early stages. The federal defendants have not yet filed a responsive pleading, and the intervention motions filed to date have been briefed but not yet heard nor decided. Indeed, the hearing on the proposed interventions is currently set for October 23, 2025, Dkt. 87, meaning that Proposed Intervenors' motion could be fully briefed in time to be heard at that same hearing. Further, no dispositive motions have yet been filed on the docket. As a result, Proposed Intervenors' early intervention will cause no prejudice to the existing parties.[5]

---

4 Proposed Intervenors are not required to separately demonstrate standing *see Perry v. Schwarzenegger*, 630 F.3d 898, 906 (9th Cir. 2011) (per curiam), but their interests in the validity of the CRA resolutions, and the impairment they will experience if Plaintiffs prevail, satisfy the standing requirement, *see Sw. Ctr. for Biological Diversity*, 268 F.3d at 821 n.3.

5 "[P]rejudice must be connected in some way to the timing of the intervention motion—and the fact that including another party in the case might make resolution more difficult does not constitute prejudice." *Kalbers*, 22 F.4th at 825–26 (quotation marks and citation omitted). In any event, to further ensure no prejudice to the existing parties, the Proposed Intervenors will undertake all reasonable efforts to avoid duplicative briefing and would propose that the parties confer on a coordinated briefing schedule for any Rule 12 motions.

Gibson, Dunn & Crutcher LLP

There has also been no delay; less than three months have elapsed since Plaintiffs filed their original complaint. Dkt. 1. Courts in this circuit routinely find motions filed on similar timeframes to be timely. *See, e.g.*, *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (motion to intervene filed "less than three months after the complaint was filed" was timely); *May v. Google, Inc.*, 2025 WL 1735671, at *4 (N.D. Cal. June 23, 2025) (motion to intervene filed when case was "still in the pleading stage" was timely); *In re California Micro Devices Sec. Litig.*, 168 F.R.D. 276, 277 (N.D. Cal. 1996) (motion to intervene filed "at the pleading stage" was timely).

Further supporting the timeliness of Proposed Intervenors' motion is the recent issuance of the August 2025 MAC, which contains CARB's explicit threat that it will seek retroactive enforcement of ACC II should it be successful in this litigation. *See* Ex. A at 3. Proposed Intervenors have moved swiftly to vindicate and protect their interests in response to this statement that CARB is reserving its option to enforce ACC II, "including [retroactively] with respect to model years that such manufacturers ask CARB to certify under the[] alternative pathways." *Id.*

## B. Proposed Intervenors Claim a Significant, Protectable Interest in This Action.

An aspiring intervenor meets Rule 24(a)'s legal interest requirement "if (1) it asserts an interest that is protected under some law, and (2) there is a 'relationship' between its legally protected interest and the plaintiff's claims." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006) (*quoting Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998)). The legal interest requirement is "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *County of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980) (citation omitted). As such, the Ninth Circuit has rejected the notion that Rule 24(a) requires the prospective intervenor to demonstrate a "specific legal or equitable interest." *Id.* An "economic interest," if sufficiently "concrete and related to the underlying subject matter of the litigation," can "easily establish[] a cognizable, legally protectable interest" to trigger the right to intervene. *See Winston v. United States*, 2015 WL 9474284, at *2 (N.D. Cal. Dec. 29, 2015) (citing *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004)); *see also Finjan, Inc. v. Symantec Corp.*, 2017 WL 6610081, at *2 (N.D. Cal. Sept. 29, 2017).

Both legal interest requirement factors are met here. First, Proposed Intervenors represent a

Gibson, Dunn &
Crutcher LLP

substantial portion of the industry that was most directly affected by EPA's action to provide a waiver for California's ACC II regulations, and would be the industry directly regulated by those standards if the waiver is reinstated.  Auto Innovators' members are thus directly impacted by EPA's grant of a waiver for California's ACC II regulations, and their interests are directly protected by the preemptive effect of Section 209(a), 42 U.S.C. § 7521(a), which was authorized by Congress in part to minimize economic strain on the automotive industry and to reduce costs for consumers.  *See Sierra Club*, 995 F.2d at 1485 ("permit-holding property owners" had the right to intervene where the law "directly regulates their conduct").  CARB has "reserve[d] its right to enforce" ACC II "in the event a court of law holds [Congress's] resolutions invalid"—meaning that whether CARB will seek to enforce ACC II is directly tied to the outcome of this litigation.  Ex. A at 3.

NADA similarly represents a significant portion of the industry that was directly impacted by EPA's action to allow California to proceed with the zero-emission vehicle mandates in its ACC II regulations.  Those requirements—if reinstated through invalidation of the CRA action challenged here—would fundamentally alter the fleet mix of NADA's dealer members and hinder their ability to satisfy their customers' demands for internal combustion and hybrid vehicles.  *See Sierra Club*, 995 F.2d at 1485; *cf.*, *e.g.*, *Andrus*, 622 F.2d at 437 (holding that an association of farmers had a sufficient interest to intervene in a case seeking to enjoin the Secretary of the Interior from issuing regulations governing excess land sales); *Am. Rivers v. Wheeler*, 2020 WL 5993229 (N.D. Cal. Oct. 9, 2020) (granting oil and gas associations' motion to intervene to defend EPA's final rule streamlining Clean Water Act permitting timeframes and requirements).

Second, Auto Innovators' members have a significant interest in clear, common-sense regulations that include realistic, achievable mandates while still providing for consumer choice.  But as Auto Innovators has observed, aspects of the ACC II requirements—like the mandate for 100 percent ZEV sales by 2035—were simply "never achievable."  Alliance for Automotive Innovation, *Automaker Statement on Senate Repeal of California Gas Vehicle Ban* (May 21, 2025), https://www.autosinnovate.org/posts/press-release/senate-repeal-california-gas-vehicle-ban.  And while automakers are working diligently to increase ZEV sales, other elements of the ACC II program would be extremely challenging to meet—especially in the other states beyond California that have

11

Gibson, Dunn &
Crutcher LLP

adopted those standards.  Compliance with these mandates would require adjustments to vehicle and fleet mix production choices of Auto Innovators' members in a way that is out of step with consumer demand and available infrastructure.  *See* Alliance for Automotive Innovation, California State Motor Vehicle Pollution Control Standards; Advanced Clean Cars II Regulations; Request for Waiver of Preemption; Docket ID # EPA-HQ-OAR-2023-0292 (February 27, 2024).

If Plaintiffs' requested relief is granted and the waiver is reinstated, Auto Innovators' members would be subjected to highly complex emission standards and requirements, compliance with which was either never achievable in the first place or which will significantly drive up costs and regulatory burdens.  Indeed, the overall cost of ZEVs exceeds the cost of gasoline-fueled vehicles with similar attributes due to costs unique to ZEVs, such as the battery, fuel cell stack, and/or on-board hydrogen storage. *Id.* at 4.  This fact will result in increased costs not just to Auto Innovators' members, but to the American consumer, as well.  In addition, if Plaintiffs' requested relief is awarded, Auto Innovators' members will be required to make additional substantial alterations to their fleet mix, affecting both their production costs and their ability to provide consumers with their choice of vehicle.  Auto Innovators' members who produce light-duty passenger cars and trucks for sale in California and Section 177 states must make forward-looking production decisions *now* for model years well into the future, and so they require regulatory clarity and certainty regarding the current and future validity of EPA's waiver for California's ACC II regulations.  These economic and compliance interests are sufficient to satisfy the requirements of Rule 24(a).  *See, e.g.*, *Missouri v. Harris*, 2014 WL 2506606, at *8 (E.D. Cal. June 3, 2014) (ACEF had significantly protectable interest in litigation because "ACEF members' participation in the egg industry through the production and sale of egg products within California demonstrate an economic interest in the outcome of this action.").

EPA's waiver of preemption for the ACC II standards, if reinstated, would similarly cause significant harm to NADA's members' business interests.  The now-preempted regulations will fundamentally alter the vehicle and fleet mix choices of NADA's members, inherently limiting the supply of internal-combustion engine vehicles that dealers can purchase and requiring dealers to purchase ZEVs at a rate that exceeds consumer demand.  And unlike many other regulated goods, prospective purchasers of new light-duty vehicles have other options, such as buying used vehicles,

repairing their existing vehicles or using alternatives such as public transit. Affordability is one of the most important factors in that assessment, and EPA's action to waive preemption for the ACC II regulations, if reinstated, will increase the cost of new vehicles, driving away prospective customers.

Proposed Intervenors and their members will suffer direct and substantial economic harm if EPA's preemption waiver is reinstated despite Congress' adoption and the President's enactment of the CRA disapproval resolution, and if California is consequently able to enforce its now-preempted ACC II regulations. This interest is especially stark given that the burden of complying with the preempted regulations rests squarely on industry, and in light of California's threat that it will *retroactively* enforce the ACC II regulations as to vehicles already sold and as to model years already past, should it be successful in this litigation.

**C.    Disposition of this Action May Impair Proposed Intervenors' Interests.**

The Ninth Circuit requires an aspiring intervenor to show that it is "so situated that without intervention the disposition of the action may, as a practical matter, impair or impede his ability to protect [its] interest." *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527 (9th Cir. 1983); *see also Sw. Ctr. for Biological Diversity*, 268 F.3d at 822 ("[I]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene.").

Proposed Intervenors' interest in this case is clear: they represent the industry members that will face increased costs and negative business ramifications if Congress' action to preempt California's ACC II regulations were to be overturned. As CARB has just now made explicit, *see* Ex. A at 3, this interest will be substantially affected by this Court's resolution of this action. Plaintiffs seek a declaration that California's preemption waivers are valid and in effect, and they seek an injunction prohibiting any interference with the enforcement of California's regulations against automakers, even retroactively. Compl. at 39–40. For the same reasons as set forth above, *see* Section I.B, *supra*, such an outcome would directly affect Proposed Intervenors' members' interests by obliging them to comply with the costly—and now preempted—ACC II regulations.

**D.    Proposed Intervenors' Interests Are Not Adequately Represented.**

In this Circuit, courts consider three factors in determining the adequacy of representation: "(1)

Gibson, Dunn &
Crutcher LLP

1    whether the interest of a present party is such that it will undoubtedly make all the intervenor's

2    arguments; (2) whether the present party is capable and willing to make such arguments; and (3)

3    whether a [proposed] intervenor would offer any necessary elements to the proceedings that other

4    parties would neglect." *Sw. Ctr. for Biological Diversity*, 268 F.3d at 822.  The "burden of showing

5    inadequacy is 'minimal,'" as the party seeking intervention "need only show that representation of its

6    interests by existing parties 'may be' inadequate."  *Id.* at 823 (quoting *Trbovich v. United Mine*

7    *Workers*, 404 U.S. 528, 538 n.10 (1972)).

8         Applying these factors, the Ninth Circuit has repeatedly allowed intervention as of right for

9    regulated parties where the government also is a party because the governmental entities often have

10   broader interests than private parties.  For example, in *Southwest Center for Biological Diversity*, the

11   Ninth Circuit considered a motion to intervene by private developers in a suit brought by an

12   environmental group against federal defendants and the City of San Diego regarding land management

13   plans and related permits that sought to balance the preservation of natural resources with economic

14   growth.  *Id.* at 814–17.  The district court held that the developers and the City shared the same

15   "ultimate objective" in the preservation of the plans and permits as issued.  *Id.* at 823.  The Ninth

16   Circuit reversed, reasoning that the private developer's interest "might diverge" from the City in "two

17   ways"—first, that the "City's range of considerations in development [wa]s broader than the profit-

18   motives animating developers"; and second, that "developers ha[d] different duties under the Plans

19   relating to mitigation."  *Id.*  The Court of Appeals further concluded that the U.S. Fish and Wildlife

20   Service, "a federal agency, … cannot be expected under the circumstances to protect these private

21   interests."  *Id.*; *accord Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152

22   F.3d 1184, 1190 (9th Cir. 1998) (the aspiring intervenor's interests "were potentially more narrow and

23   parochial than the interests of the public at large"); *cf. Forest Conservation Council v. U.S. Forest*

24   *Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995) ("The Forest Service is required to represent a broader view

25   than the more narrow, parochial interests of the [state and local government applicant intervenors].").

26        Other circuits have likewise concluded that private intervenors would not be adequately

27   represented by government entities.  Because "the government represents numerous complex and

28   conflicting interests," the "business interests asserted by intervenors" can "become lost in the thicket."

*Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 973–74 (3d Cir. 1998).  And "[a]lthough it is unlikely that the intervenors' economic interest will change, it is not realistic to assume that the agency's programs will remain static or unaffected by unanticipated policy shifts."  *Id.* at 974; *accord Sierra Club v. Espy*, 18 F.3d 1202, 1208 (5th Cir. 1994) (the "government must represent the broad public interest, not just the economic concerns of the timber industry"); *Conservation L. Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992) ("The Secretary's judgments are necessarily constrained by his view of the public welfare" and may not account for the "perhaps more parochial" interests of fishermen).

This Court should reach the same conclusion here.  To start, the Plaintiffs plainly do not represent Proposed Intervenors' interests.  But neither do the federal Defendants.  Proposed Intervenors' members face an entirely different set of considerations than the federal Defendants: the economic cost of compliance with the ACC II regulations (regulations which are presently preempted and without legal effect).  Although the federal Defendants have an interest in defending the valid use of the CRA and the disapproval of the preemption waiver for ACC II, those Defendants are not at risk of having to comply with the ACC II regulations themselves.  *See supra*, Parts I(B)–(C).  Because Proposed Intervenors' members are *regulated* parties, and all of the current litigants are *regulators*, Proposed Intervenors' interests are not adequately represented by the litigants themselves.  *See Mosbacher*, 966 F.2d at 44 (explaining that the Secretary of Commerce would not adequately represent fishing groups who were "presently regulated by the Secretary" and could "be subjected to even more stringent rules than those presently in effect" as a result of the pending litigation in part because the "Secretary's judgments are necessarily constrained by his view of the public welfare.").  Moreover, Proposed Intervenors have a unique interest they seek to protect in the litigation that no other party is equally suited to protect, which is preventing California from retroactively enforcing the ACC II standards in the event it should prevail on the merits of this lawsuit.

If Proposed Intervenors' motion is granted, Proposed Intervenors will contribute to the full presentation of the important issues involved in this action and will ensure representation of the interests of members of the automobile industry who would be adversely affected by adjudication in favor of the Plaintiffs.  Because Proposed Intervenors' members' economic interests and interests as

Gibson, Dunn &
Crutcher LLP

1    regulated parties may not be adequately represented by the Defendants, Auto Innovators and NADA

2    have a right to intervene in the litigation.

3    **II.    Permissive Intervention**

4         For the same reasons stated above, Proposed Intervenors easily meet the substantially less

5    burdensome requirements for permissive intervention.  Proposed Intervenors "ha[ve] a claim or defense

6    that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B); *supra*

7    Parts I(B)–(D).  In addition, this motion is timely and does not prejudice the rights of the existing

8    parties.  *See* Fed R. Civ. P. 24(b)(3); *supra* Part I(A).  Proposed Intervenors do not raise any state-law

9    counterclaims, *Geithner*, 644 F.3d at 844, or seek different relief, *Washington v. U.S. Food & Drug*

10   *Admin.*, 108 F.4th 1163, 1171 (9th Cir. 2024).  And because the claims in this case arise from federal

11   law, Proposed Intervenors need not establish an "independent ground for jurisdiction."  *Geithner*, 644

12   F.3d at 843.  Therefore, in the alternative, this Court should grant Proposed Intervenors permission to

13   intervene under Rule 24(b).

14                                    **CONCLUSION**

15        For the foregoing reasons, Proposed Intervenors respectfully request that this Court grant this

16   motion to intervene in the above-captioned proceeding.

17

18    Dated: September 5, 2025                    Respectfully submitted,

19                                              /s/   *Sean Howell*

20                                              Sean Howell, Bar No. 315967
                                                GIBSON, DUNN & CRUTCHER
21                                              One Embarcadero Center
                                                Suite 2600
22                                              San Francisco, CA 94111
                                                Tel.: 415-393-8355
23                                              Fax: 415-801-7364
                                                showell@gibsondunn.com
24

25                                              Raymond B. Ludwiszewski (*pro hac vice*
                                                forthcoming)
26                                              Rachel Levick (*pro hac vice* forthcoming)
                                                GIBSON, DUNN & CRUTCHER
27                                              1700 M Street, NW
                                                Washington, DC 20036
28

Gibson, Dunn &
Crutcher LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Tel.: 202-955-8500
Fax: 202-467-0539
rludwiszewski@gibsondunn.com
rlevick@gibsondunn.com

*Attorneys for Proposed Defendant-
Intervenors The Alliance for Automotive
Innovation and The National Automobile
Dealers Association*

17

MOTION TO INTERVENE
CASE No. 4:25-cv-04966-HSG