Brandon Q. Tran (CA Bar No. 223435)
btran@dhillonlaw.com
(949) 340-1968 (voice and fax)
4675 MacArthur Court, Suite 1410
Newport Beach, CA 92660

James K. Rogers*
Ryan Giannetti*
America First Legal Foundation
611 Pennsylvania Ave., SE #231
Washington, D.C. 20003
(202) 964-3721
James.Rogers@aflegal.org
Ryan.Giannetti@aflegal.org

Additional Counsel listed on second page.

*Counsel for Proposed Intervenor-Defendant*, State of Texas

IN THE UNITED STATES DISTRICT COURT

FOR NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| STATE OF CALIFORNIA, STATE OF COLORADO, STATE OF DELAWARE, COMMONWEALTH OF MASSACHUSETTS, STATE OF NEW JERSEY, STATE OF NEW MEXICO, STATE OF NEW YORK, STATE OF OREGON, STATE OF RHODE ISLAND, STATE OF VERMONT, and STATE OF WASHINGTON, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, U.S. ENVIRONMENTAL PROTECTION AGENCY, LEE ZELDIN, in his official ca- | Case No.: 4:25-CV-04966-HSG <br><br> **REPLY IN SUPPORT OF STATE OF TEXAS'S MOTION TO INTERVENE** <br><br> Judge:     Haywood S. Gilliam, Jr. <br> Date:       October 23, 2025 <br> Time:      2:00 p.m. <br> Place:     Courtroom 2 – 4th Floor <br><br> Complaint filed:     June 12, 2025 |

pacity as Administrator of the U.S. Environmental Protection Agency, and DONALD J. TRUMP, in his official capacity as President of the United States,

Defendants.

**Ken Paxton**
Attorney General of Texas

**Brent Webster**
First Assistant Attorney General

**Ralph Molina**
Deputy First Assistant Attorney General

**Austin Kinghorn**
Deputy Attorney General for Civil Litigation

**Kellie E. Billings-Ray**
Chief, Environmental Protection Division

**Ian Lancaster***
**Wesley S. Williams***
**Steven Loomis***
Assistant Attorneys General
Office of the Attorney General
Environmental Protection Division
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2012
Ian.Lancaster@oag.texas.gov
Wesley.Williams@oag.texas.gov
Steven.Loomis@oag.texas.gov

*Pro hac vice application pending*

**Counsel for Proposed Intervenor-Defendant, State of Texas**

**INTRODUCTION**

The Plaintiffs' opposition fundamentally mischaracterizes both the nature of Texas's interests and the scope of this litigation. Rather than addressing the concrete harms Texas would suffer if the California Waivers were resuscitated, the Plaintiffs attempt to construct artificial barriers that find no support in Federal Rule of Civil Procedure 24 or Ninth Circuit precedent.

The central issue in this case is whether Congress lawfully invalidated three EPA waivers (the "California Waivers") that allowed California to impose vehicle emission standards otherwise preempted by federal law. Texas seeks to defend that congressional action because reviving California's standards would inflict substantial and irreparable harm on Texas. This case is not an abstract legal dispute—if revived, the California Waivers would directly threaten Texas's sovereign authority, devastate its vital oil and gas revenue streams, and force costly regulatory compliance that Texas has specifically rejected within its own borders.

The Plaintiffs' attempt to narrow Texas's interests to purely theoretical concerns about waiver "legality" ignores the concrete, practical harm Texas faces if California's standards are restored to force. The Plaintiffs cannot dispute that their requested relief—declaring the congressional resolutions invalid and the California waivers "valid and in effect," ECF No. 90 ("Opp.") at 3 and ECF No. 1 ("Compl.") at 40, Prayer for Relief ¶ 2—would cause precisely the harms Texas has identified. The Supreme Court recently recognized in *Diamond Alternative Energy* that California's vehicle emission programs "likely cause a decrease in purchases of gasoline and other liquid fuels" and that this economic impact provides a concrete injury sufficient for Article III purposes. 145 S. Ct. 2121, 2135 (2025). The same logic applies with equal force to the intervention analysis here under Rule 24.[1]

**STATEMENT OF ISSUES TO BE DECIDED**

1.  Whether Texas has demonstrated a significantly protectable interest that would be

---

[1] The Plaintiffs' arguments against Texas's motion to intervene are, in many respects, duplicative of the arguments that they made in opposition to the other proposed intervenors' motions. *See* ECF Nos. 84 and 85. The other proposed intervenors' reply in support of intervention, ECF No. 88, very ably addresses many of those arguments. Rather than repeat them here, Texas incorporates by reference the proposed intervenors' reply.

---

1

**TEXAS'S REPLY IN SUPPORT OF MOTION TO INTERVENE**　　　　　　　　　　　　　　　4:25-CV-04966-HSG

impaired by the disposition of this action, entitling it to intervene as of right under Fed. R. Civ. P. 24(a)(2).

2. Whether Texas should be granted permissive intervention under Fed. R. Civ. P. 24(b)(1).

## ARGUMENT

### I. Texas satisfies all requirements for intervention as of right

#### A. Texas has demonstrated significantly protectable interests directly related to the Plaintiffs' claims.

The Plaintiffs erroneously argue that Texas's interests concern only "the legality of the EPA waivers" and lack any "relationship" to the Plaintiffs' claims. Opp. at 4:8-25. This fundamentally mischaracterizes both the nature of this litigation and Texas's concrete interests.

The Plaintiffs seek to "have the three waivers declared valid and in effect," Opp at 3:8, and to enjoin EPA "from interfering with Plaintiffs' enforcement" of California's emission standards. Compl. at 40, Prayer for Relief ¶¶ 5-6. If the Plaintiffs succeed, California's standards will immediately take effect, thereby directly harming Texas's sovereign, quasi-sovereign, and proprietary interests. This is not about abstract waiver "legality"—it is about the concrete economic and regulatory consequences that flow from California's standards being deemed enforceable.

Texas's sovereign interest in equal treatment among the States is directly implicated when one State is permitted to dictate national vehicle emission standards through the practical effects of the waiver system. Texas's economic interests in protecting vital oil and gas revenue streams are directly threatened by standards overtly designed to eliminate internal combustion engines. These harms flow directly from the relief Plaintiffs seek, not from some theoretical debate about waiver procedures.

Texas has demonstrated concrete economic interests that would be severely impaired if Plaintiffs succeed. As the nation's largest oil and gas producer, Texas faces particularized harm from California's emission standards, which are explicitly designed to reduce fossil fuel consumption. The California Air Resources Board's own analyses confirm that these standards would slash liquid fuel sales and accelerate the transition away from internal combustion engines.

The Supreme Court's decision in *Diamond Alternative Energy* directly supports Texas's position. There, the Court held that fuel producers had standing to challenge California's emission standards because the regulations "likely cause a decrease in purchases of gasoline and other liquid fuels," and "that is the whole point of the regulations." 145 S. Ct. at 2135. The same economic logic applies to intervention: if the Plaintiffs' lawsuit succeeds in restoring these waivers, Texas will suffer the identical economic harms that the Supreme Court recognized as sufficient for Article III standing.

And Texas's economic interests extend beyond general fossil fuel production. The State manages over 13 million acres of mineral-rich lands, generating critical revenue for public education through the Permanent School Fund and Permanent University Fund. ECF 86 ("Mot.") at 11:8-11. In fiscal year 2024, the Texas oil and gas industry contributed $27.3 billion in state and local taxes and royalties. Mot. at 11:23-12:2. This revenue, as well as income from state-owned mineral holdings, funds essential state programs including highway construction, emergency disaster relief, and public education. Mot at 11:18-23. The Plaintiffs' requested relief would place all these revenue streams at substantial risk.

Beyond economic harms, Texas has demonstrated sovereign interests in maintaining regulatory authority within its borders and preserving the constitutional principle of equal state sovereignty. Texas has enacted specific statutory provisions governing greenhouse gas regulation and vehicle emissions within its borders, including requirements that the state "encourage and may allow the use of natural gas and other alternative fuels." Tex. Health & Safety Code §§ 382.005(b) and 382.0171(a). California's emission standards would override these policy choices, forcing Texas to accept regulatory approaches it has specifically rejected.

The Plaintiffs' argument that Texas's opposition to the California Waivers could only be "raised in a petition for review of a waiver pursuant to the [Clean Air] Act's judicial review provision" and its reliance on *Ohio v. EPA*, 98 F.4th 288 (D.C. Cir. 2014), is misplaced. Opp. 4:9-21. That case involved a petition for review of a specific waiver decision under the Clean Air Act's judicial review provision—an entirely different legal proceeding with different legal standards and

different relief sought. Here, Texas seeks to defend duly enacted Congressional legislation that invalidated the waivers, not to challenge the EPA's original waiver decisions.

Nor are the Plaintiffs correct when they claim that "the legality of the" California Waivers "is not at issue in this suit." Opp at 4:5. It was the *Plaintiffs* that directly put the legality of the waivers at issue. Their second prayer for relief asks this Court to "[d]eclare that the three preemption waivers at issue are valid and in effect." Compl. at 40, Prayer for Relief ¶ 2. The Plaintiffs are not entitled to such relief unless they can demonstrate that the California Waivers are lawful.

Furthermore, the procedural history of *Ohio v. EPA* demonstrates exactly why Texas's intervention is necessary here. California seeks to use the judiciary to pursue an end-run around Congress and the President, circumventing their valid exercise of legislative and executive power delegated to them by the Constitution. If the Plaintiffs succeed in having the waivers "declared valid and in effect," Opp at 3:8, they will have effectively overturned Congressional action specifically designed to prevent the harms Texas identified in the D.C. Circuit litigation.

The Plaintiffs suggest that Texas could have filed separate petitions for review of the three waivers but "chose[] not to." Opp. at 5:12. This argument proves too much. The reason Texas and other States did not need to file such petitions is precisely because Congress acted through the CRA to invalidate the waivers. Texas should not be penalized for relying on proper Congressional action rather than duplicative litigation.

Moreover, the Plaintiffs' suggestion that "this suit would not impede," Opp at 5:17, separate Clean Air Act challenges ignores the practical realities. If the Plaintiffs obtain a judicial declaration that the waivers are "valid and in effect," this will have significant precedential and practical impact on any future challenges to those same waivers.

Contrary to the Plaintiffs' assertions, Texas's interests directly relate to the claims at issue. The relief Plaintiffs seek would restore California's authority to enforce emission standards that Texas has opposed and that would cause the specific harms Texas has identified. This is not a case where Texas seeks to litigate abstract questions about waiver validity in a collateral proceeding. Rather, the Plaintiffs are asking this Court to take the affirmative step of reinstating waivers that Congress specifically invalidated, thereby directly harming Texas's interests.

The Ninth Circuit's analysis in *California Department of Toxic Substances Control v. Jim Dobbas, Inc.* supports Texas's position. There, the court emphasized that intervention requires only "a relationship between the legally protected interest and the claims at issue." 54 F.4th 1078, 1088 (9th Cir. 2022) (cleaned up). Texas has clearly established such a relationship: the Plaintiffs seek to restore waivers whose effect would be to harm Texas's economy, invade its sovereign interests, and override its regulatory determinations.

### B.    Texas's interests would be impaired if intervention is not permitted.

The Plaintiffs do not deny that Texas faces concrete economic harm from California's emission standards, but argue there is no "impairment" because Texas has other legal avenues available through separate Clean Air Act litigation. Opp. at 5:1-19. This argument fails for four reasons.

*First*, the practical impairment is obvious: if the Plaintiffs succeed in this litigation, California's emission standards will take immediate effect, causing the exact harms Texas identified in its motion. Texas will lose critical oil and gas revenues, face increased costs for its vehicle fleet, and see its regulatory authority undermined—all while any separate legal challenges work their way through the courts. Thus, separate litigation would not adequately protect Texas's interests if the Plaintiffs succeed in this case, and Texas's interests will therefore be impaired by *this* litigation.

*Second*, the Plaintiffs' suggestion that Texas should pursue separate Clean Air Act litigation ignores that such challenges would be subject to the very precedential effects this litigation may create. A judicial determination that the CRA resolutions were invalid necessarily implies something about the underlying validity of the waivers themselves. And if this Court grants the Plaintiffs' second prayer for relief, it will have made a *direct* determination that the California Waivers "are valid." Compl. at 40, Prayer for Relief ¶ 2. The potential for *stare decisis* effect on any other challenges Texas might raise weighs in favor of allowing Texas to participate here. As the Ninth Circuit has recognized, "factual and legal determinations . . . when upheld by an appellate ruling will have a persuasive stare decisis effect in any parallel or subsequent litigation." *United States v. Oregon*, 839 F.2d 635, 638 (9th Cir. 1988).

*Third*, Texas's interests in this case are not identical to challenges it might bring to individual waiver decisions. Here, Texas seeks to defend congressional action that invalidated the waivers—a

distinct legal and practical question from whether EPA properly granted the waivers initially.

*Fourth*, this case presents Texas's only opportunity to defend the Congressional action that protected its interests. Texas supported the CRA resolutions as a proper exercise of Congressional oversight. If Texas cannot intervene here, it will have no ability to defend that legislative victory.

### C. The Plaintiffs concede that Texas's motion is timely and that its interests are not adequately represented.

The Plaintiffs do not dispute the timeliness of Texas's motion, filed approximately ten weeks after the complaint and well before any substantive proceedings have commenced. This concession is appropriate, as courts routinely find intervention timely at this early stage of litigation.

Similarly, the Plaintiffs do not challenge Texas's contention that the Defendants will not adequately represent Texas's interests. This concession is also appropriate because the federal Defendants represent the broad public interest and the federal government's institutional perspective, whereas Texas seeks to protect its specific economic interests, sovereign authority, and policy preferences, which diverge from federal priorities.

## II. Permissive intervention is appropriate.

Even if this Court were to deny intervention as of right, Texas satisfies the requirements for permissive intervention under Rule 24(b), and intervention should be granted on that basis. Texas's defenses share common questions of law and fact with the main action, as both concern the validity of the congressional resolutions and their effect on the California Waivers. Furthermore, the Plaintiffs' arguments about "collateral issues" and "duplication," Opp at 1:21 and 6:17, are overstated and manageable through appropriate case management.

Discretionary factors also support permissive intervention. Texas's participation would enhance the Court's understanding of the practical effects of California's emission standards on State economies and regulatory structures. Denying intervention would leave critical perspectives absent from the litigation and could prejudice Texas by limiting its ability to protect interests that no other party adequately represents.

The Plaintiffs argue against permissive intervention because, in their view, the lawfulness

and constitutionality of the California Waivers are "unrelated issues" that Texas should not be permitted to "inject" into these proceedings. Opp at 6:4-15 (cleaned up). However, as explained above, the *Plaintiffs* have injected that issue into this case. Their second prayer for relief asks this Court to "[d]eclare that the three preemption waivers at issue are valid and in effect." Complaint, Prayer for Relief ¶ 2. Therefore, the lawfulness and constitutionality of the California Waivers are threshold questions that must be considered as part of this litigation, and it would be entirely appropriate for Texas to argue that the California Waivers are unconstitutional and unlawful.

Furthermore, the Plaintiffs' complaints about multiple intervenors causing "duplication and delay" are overstated. Opp. 6:16-24. Texas's interests are distinct from those of the trade associations that have also moved to intervene. Texas represents sovereign State interests in federalism, equal sovereignty, and state-specific economic impacts that private parties cannot adequately represent.

Moreover, as the Plaintiffs acknowledge, such concerns can be addressed through appropriate case management conditions. As stated below, Texas is willing to work within reasonable limitations to ensure efficient proceedings.

### III.     Texas is amenable to reasonable case management conditions.

Texas does not oppose reasonable case management conditions that promote judicial efficiency while preserving its ability to meaningfully participate in this litigation. If the Court grants intervention, Texas is willing to accept reasonable case management conditions that promote judicial efficiency without unduly restricting its ability to protect its interests. Texas agrees to coordinate with other intervenors to avoid duplicative briefing and is amenable to reasonable page limits that apply equally to all parties.

However, some of the Plaintiffs' proposed conditions are inappropriate or premature. Texas objects to the Plaintiffs' proposed prohibition on discovery initiation. Opp at 7:15. If discovery proves necessary, Texas should have equal rights to participate in fact-finding, subject to appropriate proportionality limits that apply to all parties.

Additionally, the suggestion that Texas be prohibited from challenging the "constitutionality of the Clean Air Act's waiver provision," Opp at 7:17-18, would inappropriately limit its ability to

respond to the Plaintiffs' request that this Court declare the California Waivers "valid." Compl. at 40, Prayer for Relief ¶ 2. For the reasons set forth above in Sections I and II, Texas therefore objects to restrictions that would prevent it from raising defenses directly responsive to Plaintiffs' claims, Opp at 7:16-18, and prayer for relief, Compl. at 40, Prayer for Relief ¶ 2, as such limitations would undermine the effectiveness of intervention.

The other procedural conditions the Plaintiffs propose—regarding meet-and-confer requirements and page limits—are better addressed through the normal case management process after intervention is granted.

## CONCLUSION

Texas has demonstrated that it is entitled to intervene as of right in this litigation. The Plaintiffs' arguments against intervention rest on legal standards that find no support in Rule 24 or controlling precedent. The Court should grant Texas's motion to intervene as a defendant, either as of right under Rule 24(a) or permissively under Rule 24(b), subject to reasonable case management conditions to be determined at a future conference.

DATED: September 12, 2025              By:   /s/ *Brandon Q. Tran*
                                              Brandon Q. Tran
                                              CA Bar No. 223435
                                              btran@dhillonlaw.com
                                              4675 MacArthur Court, Suite 1410
                                              Newport Beach, CA 92660

                                              James K. Rogers*
                                              Ryan Giannetti*
                                              America First Legal Foundation
                                              611 Pennsylvania Ave., SE #231
                                              Washington, D.C. 20003
                                              (202) 964-3721
                                              James.Rogers@aflegal.org
                                              Ryan.Giannetti@aflegal.org

                                              **Ken Paxton**
                                              Attorney General of Texas

                                              **Brent Webster**
                                              First Assistant Attorney General

**Ralph Molina**
Deputy First Assistant Attorney General

**Austin Kinghorn**
Deputy Attorney General for Civil Litigation

**Kellie E. Billings-Ray**
Chief, Environmental Protection Division
**Ian Lancaster***
**Wesley S. Williams***
**Steven Loomis***
Assistant Attorneys General
Office of the Attorney General
Environmental Protection Division
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2012
Ian.Lancaster@oag.texas.gov
Wesley.Williams@oag.texas.gov
Steven.Loomis@oag.texas.gov

* *Pro hac vice application forthcoming*

***Counsel for Proposed Intervenor-Defendant,
State of Texas***