Robert Henneke* (TX 24046058)
Theodore Hadzi-Antich (CA 264663)
Eric Heigis (CA 343828)
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701
Telephone:   (512) 472-2700
Email:        tha@texaspolicy.com

*Attorneys for Proposed Intervenor-Defendants*
*Western States Trucking Association, Inc. and*
*Construction Industry Air Quality Coalition, Inc.*

*Motion for admission *pro hac vice* forthcoming

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STATE OF CALIFORNIA, et al., | No.  4:25-cv-04966-HSG |
| *Plaintiffs,* | |
| v. | **MOTION TO INTERVENE AS DEFENDANTS BY WESTERN STATES TRUCKING ASSOCIATION AND CONSTRUCTION INDUSTRY AIR QUALITY COALITION** |
| UNITED STATES OF AMERICA, U.S. ENVIRONMENTAL PROTECTION AGENCY, LEE ZELDIN, in his official capacity as Administrator of the U.S. Environmental Protection Agency, and DONALD J. TRUMP, in his official capacity as President of the United States, | Date:          November 20, 2025 Time:          2:00 p.m. Courtroom: 2, 4th Floor, Oakland Courthouse Judge:        Hon. Haywood S. Gilliam, Jr. |
| *Defendants.* | |

# TABLE OF CONTENTS

Table of Authorities ..................................................................................................iii

Motion to Intervene ................................................................................................... 1

Memorandum of Points and Authorities.................................................................... 1

Statement of Issues .................................................................................................... 3

Background ................................................................................................................. 3

      I.     The Clean Air Act and Federal Preemption of Emission Standards...... 3

      II.    California Imposes an Electric Vehicle Mandate for Cars and Trucks .. 4

      III.   EPA Issues CAA Section 209 Waivers for California's Electric Vehicle Mandate ............................................................................................ 5

      IV.   Congress Repeals EPA's Waivers ............................................................ 6

      V.    The ACT Rule and Omnibus Program Will Harm WSTA and CIAQC ................................................................................................... 6

Standard to Intervene................................................................................................. 7

Argument .................................................................................................................... 8

I.    Movants Are Entitled To Intervene as of Right Because They Are the End-Users Affected by the Regulations at Issue................................................. 8

     A.   The motion is timely because it was filed early in the case prior to any substantive proceedings .......................................................... 9

     B.   Movants have a significantly protectable interest in whether the ACT Rule is valid, and this case's outcome may impair Movants' ability to protect that interest........................................................... 9

     C.   The existing parties will not adequately protect Movants' interests in the case................................................................................... 12

II.   Movants Should Be Granted Permission To Intervene Because There Are Common Questions of Law and Fact Between Movants' Defense and the Main Action ................................................................................................ 15

III.  Movants Are Amenable To Certain Limits That Plaintiffs Have Suggested For Other Proposed Intervenor-Defendants ................................. 16

Conclusion ............................................................................................................... 18

Certificate of Service................................................................................................ 19

Certificate of Compliance........................................................................................ 19

List of Exhibits ........................................................................................................ 20

# TABLE OF AUTHORITIES

*Cases:*                                                                 *Page(s):*

*Arakaki v. Cayetano,*
    324 F.3d 1078 (9th Cir. 2003) .......................................................................... 12

*California v. BLM,*
    No. 18-cv-00521-HSG, 2018 U.S. Dist. LEXIS 119379,
    (N.D. Cal. July 17, 2018) .................................................................................. 14

*California v. EPA,*
    940 F.3d 1342 (D.C. Cir. 2019) .......................................................................... 3

*California ex rel. Lockyer,*
    450 F.3d 436 (9th Cir. 2006) ............................................................................. 14

*Citizens for Balanced Use v. Mont. Wilderness Ass'n,*
    647 F.3d 893 (9th Cir. 2011) ............................................. 7, 8, 10, 11, 12

*Conservation L. Found. of New England, Inc. v. Mosbacher,*
    966 F.2d 39 (1st Cir. 1992) ................................................................................ 15

*Diamond Alt. Energy, LLC v. EPA,*
    145 S. Ct. 2121 (2025) ........................................................................................ 14

*Donnelly v. Glickman,*
    159 F.3d 405 (9th Cir. 1998) ............................................................................. 10

*Encino Motorcars, LLC v. Navarro,*
    579 U.S. 211 (2016) ............................................................................................. 14

*Freedom from Religion Found., Inc. v. Geithner,*
    644 F.3d 836 (9th Cir. 2011) ......................................................................... 8, 15

*Idaho Farm Bureau Fed'n v. Babbitt,*
    58 F.3d 1392 (9th Cir. 1995) ............................................................................... 9

*Kalbers v. United States DOJ,*
    22 F.4th 816 (9th Cir. 2021) .............................................................................. 16

*Levin Richmond Terminal Corp. v. City of Richmond,*
    482 F. Supp. 3d 944 (N.D. Cal. 2020) ............................................................. 15

*Nooksack Indian Tribe v. Zinke,*
    321 F.R.D. 377 (W.D. Wash. 2017) ................................................................. 16

*Nw. Forest Res. Council v. Glickman,*
    82 F.3d 825 (9th Cir. 1996) ............................................................................ 9, 10

*Retail Flooring Dealers of Am., Inc. v. Beaulieu of Am., LLC,*
    339 F.3d 1146 (9th Cir. 2003) ........................................................................... 13

*Sims v. Fla., Dep't of Highway Safety & Motor Vehicles*,
　　862 F.2d 1449 (11th Cir. 1989) ........................................................ 3

*Smith v. L.A. Unified Sch. Dist.*,
　　830 F.3d 843 (9th Cir. 2016) ........................................................ 16

*Sw. Ctr. for Biological Diversity v. Berg*,
　　268 F.3d 810 (9th Cir. 2001) ........................................................ 8, 12

*Trbovich v. United Mine Workers of Am.*,
　　404 U.S. 528 (1972) ........................................................ 13

*United States v. Alisal Water Corp.*,
　　370 F.3d 915 (9th Cir. 2004) ........................................................ 10

*United States v. City of Los Angeles*,
　　288 F.3d 391 (9th Cir. 2002) ........................................................ 8, 10

*United States v. Oregon*,
　　913 F.2d 576 (9th Cir. 1990) ........................................................ 9

*W. Watersheds Project v. Haaland*,
　　22 F.4th 828 (9th Cir. 2022) ........................................................ 7, 8

**Statutes, Regulations and Rules:**

42 U.S.C.
　　§ 7543(a) ........................................................ 2, 3, 6
　　§ 7543(b) ........................................................ 2
　　§ 7543(b)(1) ........................................................ 3, 4
　　§ 7543(b)(1)(A)-(C) ........................................................ 4
　　§ 7507(1) ........................................................ 4

Pub. L. No. 119-15, 139 Stat. 65 (2025) ........................................................ 2, 6

Pub. L. No. 119-16, 139 Stat. 66 (2025) ........................................................ 2, 6

Pub. L. No. 119-17, 139 Stat. 67 (2025) ........................................................ 2, 6

Cal. Code Regs. tit. 13,
　　§ 1962.4 ........................................................ 1
　　§ 1962.4(c)(1)(B) ........................................................ 4
　　§§ 1962.4(b); 1963(a) ........................................................ 2, 5, 6
　　§ 2016(c) ........................................................ 2, 5

40 C.F.R. Part 86 ........................................................ 3

88 Fed. Reg. 20,688 (Apr. 6, 2023) ........................................................ 5

90 Fed. Reg. 642 (Jan. 6, 2025) ........................................................ 5

90 Fed. Reg. 643 (Jan. 6, 2025) ........................................................ 5

Federal Rule of Civil Procedure 24................................................................ 1, 7, 8, 15

***Constitutional Provisions:***

H.R.J. Res. 87, 119th Cong. (2025).............................................................6

H.R.J. Res. 88, 119th Cong. (2025).............................................................6

H.R.J. Res. 89, 119th Cong. (2025).............................................................6

***Other Authorities:***

Cal. Air Res. Bd., States That Have Adopted California's Vehicle
    Regulations, https://tinyurl.com/3ws67cd9 (last updated Apr. 2025) ...........5, 6

Cal. Air Res. Bd., Updated Costs and Benefits Analysis for the Proposed
    Advanced Clean Trucks Regulation 14
    (Apr. 28, 2020), https://tinyurl.com/3ws67cd9................................................10

Cal. Exec. Order No. N-79-20 at 2, *available at* https://tinyurl.com/5hyj3js5.............4

Maeve P. Carey & Christopher M. Davis, Cong. Research Serv., R43992,
    The Congressional Review Act (CRA): Frequently Asked Questions
    (Aug. 29, 2024), https://www.congress.gov/crs-products/R43992 ...................13

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on November 20, 2025, at 2:00 p.m. PST, or as soon thereafter as this matter may be heard[1] in the United States District Court for the Northern District of California, 1301 Clay Street, Courtroom 2 (4th Floor), Oakland, CA 94612, Proposed Intervenors Western States Trucking Association, Inc. and Construction Industry Air Quality Coalition, Inc. will appear and present their motion to intervene in this case pursuant to Federal Rule of Civil Procedure 24.

### MOTION TO INTERVENE

Pursuant to Federal Rule of Civil Procedure 24 ("Rule 24") and Civil Local Rule 7-2, Western States Trucking Association, Inc. ("WSTA") and Construction Industry Air Quality Coalition, Inc. ("CIAQC") (collectively "Movants") respectfully move to intervene, by right or by permission, as Defendants in this civil action. Movants are entitled to intervene under Rule 24(a)(2). Alternatively, this Court should grant permissive intervention under Rule 24(b)(1)(B). This Motion is supported by the following Memorandum of Points and Authorities, its supporting declarations and exhibits, all pleadings and papers filed in this action, and such other written and oral argument or evidence as may be presented at or before the time the Motion is taken under submission.

### MEMORANDUM OF POINTS AND AUTHORITIES

The State of California adopted an electric vehicle mandate for both passenger cars and heavy-duty vehicles. By model year 2035, all cars and light trucks sold in the state must be electric. Cal. Code Regs. tit. 13, § 1962.4. By model year 2036, all medium- and heavy-duty vehicles sold in California (with some emergency vehicles

---

[1] Movants are aware that this Court has set a hearing on other parties' motions to intervene on October 23, 2025. Dkt. No. 87. Movants are prepared to present this motion on that date and respectfully request hearing this motion at that time. Consolidating the hearings will avoid undue delay and will likely be more convenient for the Plaintiffs and the Court.

excepted) must be electric. *Id.* § 2016(c). The express purpose of this mandate is to reduce vehicle emissions. *Id.* §§ 1962.4(b); 1963(a).

The federal Clean Air Act ("CAA") prohibits states from regulating emissions from new motor vehicles. 42 U.S.C. § 7543(a). However, Congress provided a special carveout for California. CAA section 209 allows the Environmental Protection Agency ("EPA") to issue a waiver that allows California to adopt emissions standards that are stricter than federal standards. *Id.* § 7543(b). EPA issued waivers for California's car and heavy-duty electric vehicle mandates in 2025 and 2023, respectively. EPA also issued a waiver that allowed California to implement low nitrogen oxides ($NO_x$) emissions standards for heavy-duty trucks that further incentivizes electric vehicles.

In response, both houses of Congress passed legislation to repeal each of the three waivers. The president signed them into law. *See* Pub. L. No. 119-15, 139 Stat. 65 (2025); Pub. L. No. 119-16, 139 Stat. 66 (2025); Pub. L. No. 119-17, 139 Stat. 67 (2025). Each of those laws states the EPA's waiver "shall have no force or effect." Without a waiver, the CAA prevents California from enforcing emissions standards that effectively mandate electric vehicles. 42 U.S.C. § 7543(a).

Now California and 10 other states have brought the present lawsuit seeking to invalidate those laws. Plaintiffs seek judicial declarations that the laws are invalid and that therefore the car and heavy-duty electric vehicle mandates are valid and in effect. *See* Pls.' Compl., Dkt. No. 1 at 40.

Movants will suffer severe economic harms if California's electric vehicle mandates take effect. For example, the mandates increase the purchase price for all heavy-duty vehicles sold in the state and reduce the availability of reliable diesel-powered heavy-duty vehicles. Movants' members operate these regulated vehicles in California in the ordinary course of their businesses, and California's electrification mandates would directly increase Movants' costs and decrease their profits.

Accordingly, Movants petitioned for review of EPA's grant of California's waiver application for the electric vehicle mandates. *See Western States Trucking Ass'n et al.*

*v. U.S. Envtl. Prot. Agency*, No. 23-1143 (D.C. Cir.), and Movants' case in the D.C. Circuit remains pending. But for the filing of the instant case by the Plaintiffs, the laws repealing EPA's waiver grant would not have been put in question and Movants would have been inclined to voluntarily dismiss the pending action in the D.C. Circuit. Now Movants will not agree to dismiss that case until the instant case is finally resolved. The outcome in this case—especially on whether a CAA section 209 waiver is a rule—will affect how Movants will litigate (or voluntarily dismiss, as the case may be) their pending case in the D.C. Circuit. For this reason, and for all the reasons stated below in more detail, Movants satisfy the requirements to intervene as of right and for permissive intervention.

## STATEMENT OF ISSUES

1.    Whether Movants WSTA and CIAQC are entitled to intervene as of right under Fed. R. Civ. P. 24(a)(2).

2.    Whether Movants WSTA and CIAQC should be permitted to intervene under Fed. R. Civ. P. 24(b).

## BACKGROUND

## I.    The Clean Air Act and Federal Preemption of Emissions Standards

In 1967 Congress amended the CAA to prohibit states from adopting or enforcing "any standard relating to the control of emissions from new motor vehicles." CAA § 209, 42 U.S.C. § 7543(a). "The express language in section 7543(a) indicates Congress's intent to exclusively regulate the control of new motor vehicle emissions prior to their initial sale." *Sims v. Fla., Dep't of Highway Safety & Motor Vehicles*, 862 F.2d 1449, 1455 (11th Cir. 1989). Pursuant to the CAA, the EPA has promulgated national standards for motor vehicle emissions. *See generally* 40 C.F.R. Part 86.

At the same time it enacted the preemption provision, Congress also gave EPA the authority to waive preemption for a state that had its own vehicle emissions standards in 1966. 42 U.S.C. § 7543(b)(1). California is the only state eligible for this waiver. *California v. EPA*, 940 F.3d 1342, 1345 (D.C. Cir. 2019). To be eligible for such

a waiver, California must show that its proposed standards are "at least as protective of public health and welfare as applicable Federal standards." 42 U.S.C. § 7543(b)(1). EPA cannot issue a waiver if it finds the standards are arbitrary and capricious, do not address "compelling and extraordinary conditions" within California, or are not consistent with section 202 of the CAA. *Id.* § 7543(b)(1)(A)–(C). If EPA approves the waiver, California can enforce those emissions standards. The CAA allows other states to adopt these standards so long as "such standards are identical to the California standards for which a waiver has been granted." *Id.* § 7507(1). Because it is expensive and inefficient for auto manufacturers to produce two versions of every vehicle—i.e., one that is California compliant and one that meets EPA's federal standards—California's emissions standards become de facto national standards.

## II.    California Imposes an Electric Vehicle Mandate for Cars and Trucks

In September 2020, California Governor Gavin Newsom announced a goal to ban gas-powered cars and trucks by 2035. *See* Cal. Exec. Order No. N-79-20 at 2, *available at* https://tinyurl.com/5hyj3js5. The state legislature never voted on this mandate. Instead, the California Air Resources Board ("CARB") promulgated a series of regulations in 2022 to implement this electric vehicle mandate:

- **Advanced Clean Cars II ("ACC II")** requires light-duty car manufacturers sell an increasing percentage share of electric vehicles between model year 2026 and model year 2035. In model year 2026, 35% of vehicles sold in California must be a "zero-emission vehicle." Cal. Code Regs. tit. 13, § 1962.4(c)(1)(B). By model year 2035, that percentage increases to 100%. *Id.* The ACC II Rule thus prohibits selling gasoline powered cars beginning in 2035.

- **Advanced Clean Trucks ("ACT")** requires medium- and heavy-duty truck manufacturers to sell an increasing percentage of electric vehicles between model year 2024 and model year 2035. *Id.* § 1963.1. Sales of internal-combustion vehicles must be offset with "credits" generated by sales of electric trucks. *Id.* The required offset increases annually and varies by vehicle class.

In model year 2035, the ACT Rule requires manufacturers to offset at least 55% of their Class 2b-3 sales (heavy-duty pickups), 75% of their Class 4-8 sales (from box trucks to semis), and 40% of their Class 7-8 (day and sleeper cab semi-trucks) with zero emission vehicles. *Id.* After model year 2035 the ACT Rule prohibits selling non-electric heavy-duty vehicles in California. *Id.* § 2016(c).

- **Omnibus Low NO$_x$ Program ("Omnibus Program")** sets nitrogen oxides (NO$_x$) emissions standards for model year 2024 and later medium- and heavy-duty vehicles. These standards are set at levels that further incentivize manufacturers to sell electric vehicles and phase out internal combustion engines. *See id.* § 1956.8(a)(2)(C), (D).

The express purpose of these three rules is to reduce new vehicle emissions. *Id.* §§ 1962.4(b); 1963(a). That means California had to seek a CAA section 209 waiver from EPA for each rule.

## III. EPA Issues CAA Section 209 Waivers for California's Electric Vehicle Mandate

EPA issued waivers for each of the three CARB rules. EPA first issued a waiver for the ACT Rule in 2023. *California State Motor Vehicle and Engine Pollution Control Standards; Heavy-Duty Vehicle and Engine Emission Warranty and Maintenance Provisions; Advanced Clean Trucks; Zero Emission Airport Shuttle; Zero-Emission Power Train Certification; Waiver of Preemption; Notice of Decision*, 88 Fed. Reg. 20,688 (Apr. 6, 2023). EPA then issued a waiver for the ACC II Rule in 2025. *California State Motor Vehicle and Engine Pollution Control Standards; Advanced Clean Cars II; Waiver of Preemption; Notice of Decision*, 90 Fed. Reg. 642 (Jan. 6, 2025). EPA issued a waiver for the Omnibus Program the same day. *California State Motor Vehicle and Engine and Nonroad Engine Pollution Control Standards; The 'Omnibus' Low NOX Regulation; Waiver of Preemption; Notice of Decision*, 90 Fed. Reg. 643 (Jan. 6, 2025). These waivers allowed California, eleven other states, and the District of Columbia to implement these regulations. *See* Cal. Air Res. Bd., States That

1  Have Adopted California's Vehicle Regulations, https://tinyurl.com/3ws67cd9 (last

2  updated Apr. 2025).

3  **IV.    Congress Repeals EPA's Waivers**

4  Following EPA's waiver approvals in 2025, Congress took action to repeal the

5  waivers. In April, three U.S. Representatives introduced joint resolutions to repeal

6  the ACT Rule, ACC II Rule, and Omnibus Program. H.R.J. Res. 87, 119th Cong.

7  (2025); H.R.J. Res. 88, 119th Cong. (2025); H.R.J. Res. 89, 119th Cong. (2025). The

8  legislative text of each resolution named the EPA waiver, included its Federal

9  Register citation, and stated the waiver "shall have no force or effect." *Id.* Each piece

10 of legislation passed the House and Senate without amendment in April and May

11 2025. *See* 139 Stat. 65–67 (2025) (explaining legislative history). President Trump

12 signed them into law on June 12. *See* Pub. L. No. 119-15, 139 Stat. 65 (2025); Pub. L.

13 No. 119-16, 139 Stat. 66 (2025); Pub. L. No. 119-17, 139 Stat. 67 (2025). Following that

14 action, federal law unequivocally states that the ACT, ACC II, and Omnibus Program

15 waivers "shall have no force or effect."

16 As stated above, the express purpose of the ACT Rule, ACC II Rule, and

17 Omnibus Program is to reduce new vehicle emissions. Cal. Code Regs. tit. 13, §§

18 1962.4(b); 1963(a). Without a valid waiver in effect, California cannot "attempt to

19 enforce" these standards. 42 U.S.C. § 7543(a).

20 **V.    The ACT Rule and Omnibus Program Will Harm WSTA and CIAQC**

21 In this lawsuit, Plaintiffs claim the "preemption waivers are valid and in effect"

22 and seek a judicial declaration that the laws repealing the waivers are

23 "unconstitutional, unlawful, void, and of no effect." *See* Pls.' Compl., Dkt. No. 1 at 40.

24 If the ACT Rule and Omnibus Program go into effect, they will inflict serious harm on

25 Movants' members. Movants are trade organizations whose members in California

26 use medium- and heavy-duty trucks as part of the ordinary course of their business.

27 *See* Brown Decl. ¶ 11; Aboudi Decl. ¶ 6; Lewis Decl. ¶ 7. These rules limit the

28

availability of vehicles needed for WSTA and CIAQC members to profitably conduct their businesses.

The ACT Rule's electric vehicle sales requirement imposes increased market scarcity of reliable and cost-effective diesel-powered heavy-duty vehicles, parts, and supplies necessary to maintaining a profitable fleet. *See* Brown Decl. ¶ 14; Aboudi Decl. ¶ 8; Lewis Decl. ¶ 12. The electric trucks the ACT Rule mandates cost $300,000 more per truck as compared to diesel-powered trucks. Aboudi Decl. ¶ 14. Additionally, as fewer diesel-powered heavy-duty vehicles remain on the road thanks to the knock-on effects of the ACT Rule, the cost of diesel fuel will increase and the prevalence of diesel refueling stations will decrease. *See* Brown Decl. ¶ 15; Aboudi Decl. ¶ 10; Lewis Decl. ¶ 13. If WSTA and CIAQC's members wish to continue operating, these regulations will eventually force them to purchase unreliable electric vehicles that often break down or catch fire. There is no nationwide or even statewide charging infrastructure yet available for such vehicles. Their employees will lose valuable time and be made to risk their lives due to these regulations. *See* Brown Decl. ¶ 16; Aboudi Decl. ¶ 11; Lewis Decl. ¶ 14.

## STANDARD TO INTERVENE

Rule 24 allows a party to intervene as of right in subsection (a) and by permission in subsection (b). Fed. R. Civ. P. 24. The Ninth Circuit uses a four-prong test to analyze intervention as of right under Rule 24(a): (1) whether the applicant has a significantly protectable interest in the subject of the action; (2) whether the action's outcome may, as a practical matter, impair the applicant's ability to protect that interest; (3) whether the motion is timely; and (4) whether the existing parties may not adequately represent the applicant's interest. *See W. Watersheds Project v. Haaland*, 22 F.4th 828, 835 (9th Cir. 2022). These factors are not applied rigidly. Courts favor intervention when practical and equitable considerations support it, and the Ninth Circuit has instructed that the rule should be "broadly interpreted in favor of intervention." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893,

897 (9th Cir. 2011). Furthermore, "a district court is required to accept as true the non-conclusory allegations made in support of an intervention motion." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 819 (9th Cir. 2001).

Rule 24(b) allows permissive intervention where the applicant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). To obtain permissive intervention, a party must show: (1) an independent basis for jurisdiction; (2) that the motion is timely; and (3) that its claim or defense shares a legal or factual question with the main action. *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011). But "the independent jurisdictional grounds requirement does not apply . . . in federal-question cases when the proposed intervenor is not raising new claims." *Id*. at 844. The court must also assess whether intervention would "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

The Ninth Circuit has explained that courts should construe Rule 24 "broadly in favor of proposed intervenors" to allow "parties with a *practical* interest in the outcome of a particular case to intervene." *United States v. City of Los Angeles*, 288 F.3d 391, 397–98 (9th Cir. 2002) (emphasis in original).

## ARGUMENT

This Court should grant this motion because Movants are entitled to intervene as of right under Rule 24(a)(2) and because Movants meet the standard for permissive intervention under Rule 24(b)(1)(B).

### I.  Movants Are Entitled To Intervene as of Right Because They Are the End-Users Affected by the Regulations at Issue.

Movants satisfy Rule 24(a)(2)'s requirements to intervene as of right. This motion is timely, the Movants have a significantly protectable interest in the subject of this case, this case's outcome will impair Movants' ability to protect that interest, and the existing parties may not adequately represent Movants' interest. *See W. Watersheds Project v. Haaland*, 22 F.4th 828, 835 (9th Cir. 2022).

**A.    The motion is timely because it was filed early in the case prior to any substantive proceedings.**

"Timeliness is the threshold requirement for intervention." *United States v. Oregon*, 913 F.2d 576, 588 (9th Cir. 1990). The Ninth Circuit uses three factors to assess timeliness: "the stage of the proceeding, prejudice to other parties, and the reason for and length of the delay." *Id*. All three factors favor granting the motion.

Movants are seeking to intervene at the very early stages of this case. Movants filed this motion "before any hearings or rulings on substantive matters." *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995). Plaintiffs have not filed a preliminary injunction or other substantive motion, and Defendants have not filed an answer or motion to dismiss. The initial case management conference has not yet occurred, and Defendants have until September 19 to respond to the complaint. *See* Dkt. Nos. 8, 81. If "the motion was filed before the district court had made any substantive rulings" there is little risk of prejudice to either party. *See Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996).

The Ninth Circuit does not use a strict deadline for timeliness when a case is still in its early stages. Even so, this motion was filed well within the timeframe the Ninth Circuit has used for other motions to intervene. *See e.g., Idaho Farm Bureau Fed'n*, 58 F.3d at 1397 (allowing intervention when motion was filed four months after complaint).

Movants are seeking to intervene shortly after this case was filed and before the parties have filed any substantive motions. Movants have not delayed seeking to intervene, and intervening at this early stage in the proceedings will not prejudice the parties. Thus this motion is timely.

**B.    Movants have a significantly protectable interest in whether the ACT Rule is valid, and this case's outcome may impair Movants' ability to protect that interest.**

This lawsuit seeks to revive California's ACT Rule. Movants have a significant interest in ensuring the ACT Rule remains repealed.

To establish a significant interest, the movant must show "that the interest is protectable under some law and that there is a relationship between the legally protected interest and the claims at issue." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011). "The relationship requirement is met 'if the resolution of the plaintiff's claims actually will affect the applicant.'" *United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002) (quoting *Donnelly v. Glickman*, 159 F.3d 405, 410 (9th Cir. 1998)). This test is a "practical, threshold inquiry, and no specific legal or equitable interest need be established." *Citizens for Balanced Use*, 647 F.3d at 897 (quoting *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 836 (9th Cir. 1996)) (cleaned up). An economic interest is a significant interest if it is "concrete and related to the underlying subject matter of the action." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004)

Movants are the end-users of the trucks the ACT Rule regulates. At the time it adopted the ACT Rule, CARB estimated as part of its cost-benefit analysis that the rule would impose $9.1 billion in costs on vehicle manufacturers through 2040. *See* Cal. Air. Res. Bd., Updated Costs and Benefits Analysis for the Proposed Advanced Clean Trucks Regulation 14 (Apr. 28, 2020), https://tinyurl.com/3ws67cd9 [hereafter "CARB ACT Rule Cost-Benefit Analysis"]. Vehicle manufacturers will naturally pass on those costs to customers. CARB admitted as much when it noted "ZEVs have higher upfront capital costs for the vehicle and infrastructure investments." *Id.* at 12. As an example, Oakland Port Services, Inc. (a member of WSTA) estimates the ACT Rule will increase its purchase price for new trucks by $300,000. Aboudi Decl. ¶ 14. CARB's cost-benefit analysis and the Aboudi Declaration provide sufficient evidence that this economic impact is concrete.

This economic impact is also directly "related to the underlying subject matter of the action." *Alisal Water Corp.*, 370 F.3d at 919. Plaintiffs have one goal in this suit: revive the ACT Rule, ACC II Rule, and Omnibus Program. *See* Pls.' Compl., Dkt. No. 1 at 40 (prayer for relief requesting the Court "[d]eclare that the three preemption

10

waivers at issue are valid and in effect"). Receiving that relief will impose costs on the end-users of the trucks the ACT Rule regulates. Thus the Movants have an economic interest that satisfies the significant interest test.

Once a court finds Movants have a significant protectable interest, there is often "little difficulty concluding that the disposition of the case may, as a practical matter, affect it." *Citizens for Balanced Use*, 647 F.3d at 898 (cleaned up). All that is required is that the Movants "be substantially affected in a practical sense by the determination made in an action." *Id.* If this Court holds that the ACT Rule Waiver is valid and in effect, Movants will be "substantially affected" by the economic consequences of more costly trucks. *See* Brown Decl. ¶ 14; Aboudi Decl. ¶¶ 8, 14; Lewis Decl. ¶ 12.

The Movants also have a significant interest in this case based on how it can affect the Movants' ACT Rule litigation. Movants are petitioners in *Western States Trucking Ass'n et al. v. U.S. Envtl. Prot. Agency*, Case No. 23-1143 (D.C. Cir.)—a petition for review challenging the ACT Rule. Following Congress's repeal of the ACT Rule waiver, EPA sought to voluntarily dismiss that case.[2] Movants were initially inclined to agree to voluntary dismissal. But Movants ultimately declined consent to voluntary dismissal when Plaintiffs filed the instant case. Thus, this case has already affected how Movants are litigating the separate lawsuit pending in the D.C. Circuit. And a favorable outcome for Plaintiffs will require Movants to continue prosecuting that case once the abeyance has been lifted. But for this lawsuit, Movants could avoid the time and costs associated with litigating its case in the D.C. Circuit.

---

[2]     *Western States Trucking Ass'n v. U.S. Envtl. Prot. Agency* is presently held in abeyance pending the outcome of *Texas v. EPA*, No. 22-1031 (D.C. Cir.), even though the two cases are challenging different rules. *See Western States Trucking Ass'n v. U.S. Envtl. Prot. Agency*, No. 23-1143, Doc. No. 2032808 (D.C. Cir. Dec. 21, 2023). The D.C. Circuit recently placed *Texas v. EPA* in abeyance after EPA indicated it was reconsidering the rule being challenged in that case. *Texas v. EPA*, No. 22-1031, Doc. No. 1208758920 (D.C. Cir. filed July 18, 2025).

Furthermore, this case will likely decide whether the ACT Rule Waiver was a "rule" under the Administrative Procedure Act. After all, each of Plaintiffs' counts relies on the argument that the waivers are not properly considered rules. *See* Pls.' Compl., Dkt. No. 1 ¶¶ 116, 118, 126, 128–32, 137–40, 146–48, 157, 172. Treating such waivers as rules rather than orders or other administrative actions provides avenues that otherwise would not be available for Movants to challenge the ACT Rule and future waivers. The federal government may seek to defend this lawsuit on narrow grounds that may not fully support Movants' position that CAA section 209 waivers should always be treated as rules under the Administrative Procedure Act. This is especially troublesome given the fact that the Federal Defendants in this case are also defendants in the ACT Rule challenge pending in the D.C. Circuit, where Movants are plaintiffs rather than defendants. No court has explicitly decided whether a CAA section 209 waiver is a rule. Movants have a strong interest in the outcome of this argument, and a favorable outcome for Plaintiffs could, as a practical matter, impair that interest. Thus Movants have a significantly protectable interest in the subject of this case, and its outcome could impair Movants' ability to protect its interest.

**C.    The existing parties will not adequately protect Movants' interests in the case.**

The Defendants will not adequately represent Movants' interest in this case. "The burden of showing inadequacy of representation is 'minimal' and satisfied if the applicant can demonstrate that representation of its interests 'may be' inadequate." *Citizens for Balanced Use*, 647 F.3d at 898 (quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003)). Although there is a presumption of adequate representation when the Movant and parties share an ultimate objective, "it is sufficient for Applicants to show that, because of the difference in interests, it is likely that Defendants will not advance the same arguments as Applicants." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 824 (9th Cir. 2001). Private parties need not prove an actual conflict with the government; it is sufficient that the

government's representation "'may be' inadequate." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972).

Movants' interests diverge from Defendants in three ways. *First*, Defendants are likely to argue for dismissal on narrow grounds. *Second*, the federal government has a history of changing positions on CAA section 209 waivers. *Third*, Movants have economic interests and interests as regulated parties that the government Defendants do not represent.

Defendants are likely to focus their argument on justiciability.[3] Movants frequently challenge the federal government's actions, especially climate regulations. Deciding this case on justiciability grounds alone could make it more difficult for Movants to bring cases against the federal government in the future. Instead, Movants will primarily focus their arguments on the fact that EPA's waivers are rules under the APA, meaning Congress acted properly under the Congressional Review Act ("CRA"). Movants will also argue that—notwithstanding the CRA—the Constitution empowers Congress to revoke an agency's authority, and that there is no private right of action to enforce the Senate's rules. As explained in its proposed Motion to Dismiss (attached as Exhibit D), the CRA is a procedural mechanism that allows Congress to invalidate an agency rule using expedited procedures. It expedites consideration by limiting debate on a qualifying resolution of disapproval in the Senate to ten hours. *See generally* Maeve P. Carey & Christopher M. Davis, Cong. Research Serv., R43992, The Congressional Review Act (CRA): Frequently Asked Questions (Aug. 29, 2024), https://www.congress.gov/crs-product/R43992.

It should also be noted that Movants are suing many of the same federal defendants in *Western States Trucking Ass'n et al. v. U.S. Envtl. Prot. Agency*. Movants

---

[3]    Movants will also argue for dismissal based on justiciability, but only so that they do not forfeit this alternative ground for dismissal. Movants also recognize that a "federal court's jurisdiction is a threshold question." *Retail Flooring Dealers of Am., Inc. v. Beaulieu of Am.*, LLC, 339 F.3d 1146, 1148 (9th Cir. 2003).

should not have to rely on an adverse party from another case to represent its interests here.

The federal government has a history of changing positions in cases involving CAA section 209 waivers. *See, e.g.*, *California v. Wheeler*, No. 19-1239 and consolidated cases (D.C. Cir.) (challenge to withdrawal of ACC I waiver); *see also Diamond Alt. Energy, LLC v. EPA*, 145 S. Ct. 2121, 2130–31 (2025) (explaining that the Bush EPA denied the ACC I waiver in 2008, the Obama EPA granted it in 2013, the Trump EPA rescinded it in 2019, and the Biden EPA reinstated it in 2022). Additionally, EPA's change in position on whether these three waivers are rules arguably sparked the instant lawsuit. It is far from speculative that Defendants could change positions again, as is their right. *See Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016) ("Agencies are free to change their existing policies as long as they provide a reasoned explanation for the change."). If that happens, Defendants may seek to settle this case or choose not to appeal an adverse ruling. Movants' participation in this case will ensure their interests are protected against the federal government's changing positions.

Finally, Defendants do not represent Movants' significant economic interests in this case. The Ninth Circuit has recognized government defendants represent the public interest at large, which may differ from an industry group's parochial interests. *California ex rel. Lockyer*, 450 F.3d 436, 445 (9th Cir. 2006). This Court has also allowed intervention in part because an industry association's direct economic interest differs from a federal government defendant's interest in the case. *California v. BLM*, No. 18-cv-00521-HSG, 2018 U.S. Dist. LEXIS 119379, at *24 (N.D. Cal. July 17, 2018) (noting the proposed intervenors "have a 'direct economic stake' in this controversy"). Here, while both Defendants and Movants are interested in defending Congress's action, the economic stakes are much higher for Movants. If Movants lose this case, it will cost them dearly. *See* Brown Decl. ¶ 14; Aboudi Decl. ¶¶ 8, 14; Lewis Decl. ¶ 12. Even Plaintiff California agrees that the increased costs associated with the relevant

1  emissions standards could run into the billions. CARB ACT Rule Cost-Benefit
2  Analysis, *supra*, at 12, 14. If Defendants lose, they will not suffer economic loss. This
3  divergent interest also supports intervention.

4      In a similar way, the federal government, as a regulator, does not have the same
5  interests as a regulated party. *See Conservation L. Found. of New England, Inc. v.*
6  *Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992) (explaining that the Secretary of Commerce
7  could not adequately represent groups who are presently subject to the Secretary's
8  regulations). Movants' members are subject to regulations from both Plaintiff State of
9  California and Defendant EPA. Like in *Mosbacher*, Movants cannot rely on one of its
10  regulators (i.e. EPA, whom it is currently suing in another case over one of the waivers
11  at issue here) to represent its interests in the instant case. For these reasons, Movants
12  have satisfied their "minimal" burden of showing inadequate representation.

13      Because Movants satisfy Rule 24(a)(2)'s requirements, they are entitled to
14  intervene as of right.

**II.   Movants Should Be Granted Permission To Intervene Because There**
15  **Are Common Questions of Law and Fact Between Movants' Defense**
16  **and the Main Action.**

17      Movants also satisfy Rule 24(b)'s requirements for permissive intervention.
18  Movants need not show an independent basis for jurisdiction, since this is a federal
19  question case and Movants will not raise any new claims. *Freedom from Religion*
20  *Found., Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011). For the reasons stated
21  above, this motion is timely. Thus the Court need only consider whether there is a
22  common question of law and fact with the main action and whether intervention will
23  cause undue delay or prejudice. *See id.* at 843; Fed. R. Civ. P. 24(b)(2)(B), (b)(3).

24      Movants seek to defend Public Laws 119-15, 119-16, and 119-17 against each
25  of the Plaintiffs' claims. Thus they share a common question of law and fact with the
26  main action. *See Levin Richmond Terminal Corp. v. City of Richmond*, 482 F. Supp.
27  3d 944, 968 (N.D. Cal. 2020) ("Proposed intervenors intend to defend the Ordinance
28

against each of the claims raised in plaintiffs' complaints, and thus, their defenses share common questions of law with the main action."). Movants' interest in this case "arises from the same set of facts as Plaintiff[s'] claims." *Nooksack Indian Tribe v. Zinke*, 321 F.R.D. 377, 383 (W.D. Wash. 2017). Movants do not need additional discovery and do not seek to inject extraneous claims into this case. They seek to defend the same claims that Plaintiffs have brought against the Defendants. Thus the Movants' defenses "undisputed[ly]" share common questions of fact. *Id.*

Allowing permissive intervention will not cause undue delay or prejudice. Movants need no additional time to fully participate in this case. Plaintiffs cannot argue that Movants' mere request to intervene is prejudicial. "[T]he fact that including another party in the case might make resolution more difficult does not constitute prejudice." *Kalbers v. United States DOJ*, 22 F.4th 816, 825 (9th Cir. 2021) (quoting *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 857 (9th Cir. 2016)) (cleaned up). As explained below, Movants will work with other intervenors to avoid duplicative briefing and will work with all parties on reasonable case-management orders to ensure Movants' participation does not cause any undue delay.

Because Movants satisfy Rule 24(b)'s requirements for permissive intervention, the Court should grant permission to intervene as defendants.

## III. Movants Are Amenable To Certain Limits That Plaintiffs Have Suggested For Other Proposed Intervenor-Defendants.

Movants are aware that Plaintiffs have proposed case management conditions in its opposition to other proposed intervenor-defendants' motions. Dkt. No. 84 at 10. To expedite resolution of these issues, Movants will address those proposed conditions here.

Plaintiffs have proposed the following conditions: (1) intervenors may not initiate discovery; (2) intervenors are limited to those claims and issues raised in Plaintiffs' complaint; (3) intervenors must jointly brief and argue all dispositive motions; (4) all parties must meet and confer two weeks prior to filing a dispositive

motion and must submit a joint proposed briefing schedule one week before the motion is filed; and (5) a combined total page limit for intervenors' briefs set at two-thirds the limit of the brief for the party they are supporting.

*First*, like Proposed Intervenor-Defendants American Free Enterprise Chamber of Commerce and American Fuel & Petrochemical Manufacturers, Movants believe discovery is unnecessary for all parties because this case involves only pure questions of law. *See* Dkt. No. 88 at 20. Movants would consent to a mutual waiver of discovery in this case. However, like the other Proposed Intervenor-Defendants, Movants would oppose limiting intervenors' discovery rights without also limiting Plaintiffs' discovery.

*Second*, as to limiting claims and defenses, Movants seek to defend Public Laws 119-15, 119-16, and 119-17 against each of the Plaintiffs' claims. Movants do not intend to bring any counterclaims or crossclaims.

*Third*, Movants are willing to work with other Proposed Intervenor-Defendants on consolidated briefing to avoid duplication. However, Movants would request that any orders on consolidated briefing take place once all Intervenor-Defendants (and any Intervenor-Plaintiffs) are known so that they can properly align their interests on briefs and motions.

*Fourth*, for these same reasons, the notice and briefing schedule conditions are premature and should be revisited once all Intervenor-Defendants (and any Intervenor-Plaintiffs) are known.

*Fifth*, Movants would tend to oppose Plaintiffs' proposed page limits. A major reason for Movants' request to intervene is to ensure its interests, which no other party represents, receive full and fair consideration. Movants have already explained the reasons why Defendants do not adequately represent their interests. Until all of the intervenors are known, Movants would be reticent to agree to allow other Intervenor-Defendants to represent their interests on an abbreviated brief. If the

1  Court is inclined to impose page limits, Movants request it revisit this matter after it

2  has decided all motions to intervene.

3  **CONCLUSION**

4      Movants have demonstrated they meet the requirements for intervention as of

5  right and permissive intervention. This motion is timely, Movants have a significant

6  protectable interest in the validity of California's electric vehicle mandates that is not

7  adequately represented by Defendants, and Movants' defense shares common

8  questions of law and fact with this case. For these reasons, the Court should grant

9  WSTA and CIAQC's motion to intervene as defendants.

10 Dated: September 15, 2025                    Respectfully submitted,

11                                             */s/ Theodore Hadzi-Antich*
12                                             Robert Henneke* (TX 24046058)
                                               Theodore Hadzi-Antich (CA 264663)
13                                             Eric Heigis (CA 343828)
                                               TEXAS PUBLIC POLICY FOUNDATION
14                                             901 Congress Avenue
                                               Austin, Texas 78701
15                                             Telephone:   (512) 472-2700
                                               Email:       tha@texaspolicy.com
16

17                                             *Attorneys for Proposed Intervenor-Defendants*
                                               *Western States Trucking Association, Inc.,*
18                                             *and Construction Industry Air Quality*
                                               *Coalition, Inc.*
19

20                                             *Motion for admission pro hac vice
21                                             forthcoming

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on September 15, 2025, I served WSTA's and CIAQC's Motion to Intervene by filing with the Clerk of the Court for the Northern District of California by using the CM/ECF system, causing electronic service upon all counsel of record.

*/s/ Theodore Hadzi-Antich*
Theodore Hadzi-Antich

**CERTIFICATE OF COMPLIANCE**

I certify that this document complies with the form requirements of Local Rule 7-2(b) because it does not exceed 25 pages in length.

*/s/ Theodore Hadzi-Antich*
Theodore Hadzi-Antich

**LIST OF EXHIBTS**

A.     Declaration of Lee Brown

B.     Declaration of William Aboudi

C.     Declaration of Michael Lewis

D.     Proposed Motion to Dismiss

E.     Proposed Answer

F.     Proposed Order