ADAM R.F. GUSTAFSON
*Acting Assistant Attorney General*
ROBERT N. STANDER (DC Bar #1028454)
*Deputy Assistant Attorney General*
JEFFREY HUGHES (NY Bar #5367214)
United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044
Tel:    (202) 717-7067 (Stander)
          (202) 532-3080 (Hughes)
Email: robert.stander@usdoj.gov
          jeffrey.hughes@usdoj.gov

YAAKOV M. ROTH
*Principal Deputy Assistant Attorney General*
Civil Division
JOSEPH E. BORSON
*Assistant Branch Director*
Federal Programs Branch
STEPHEN M. PEZZI (FL Bar #1041279)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel:    (202) 305-8576
Email: stephen.pezzi@usdoj.gov

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

STATE OF CALIFORNIA, et al.,

Plaintiffs,

v.

UNITED STATES OF AMERICA, et al.,

Defendants.

Case No. 4:25-cv-04966-HSG

**UNITED STATES' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

Date: October 30, 2025
Time: 2:00 p.m. PST
Judge: Hon. Haywood S. Gilliam, Jr.

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................. 3

    A.    The Congressional Review Act contains a set of expedited legislative procedures for enacting statutes that abrogate certain administrative rules. .................................... 3

    B.    The Clean Air Act preempts state-level vehicle emission regulations. ......................... 5

    C.    California promulgates three sets of vehicle emissions standards with the goal of banning sales of internal-combustion vehicles. ............................................... 6

    D.    Congress revokes the preemption waivers........................................................ 7

    E.    California sues, claiming that EPA and Congress failed to follow proper legislative procedures under the Congressional Review Act. ............................................. 8

ARGUMENT ................................................................................................................. 8

  I.    Congress expressly precluded judicial review in 5 U.S.C. § 805. ...................................... 8

  II.    The Court independently lacks subject-matter jurisdiction because this suit amounts to a challenge to House or Senate rules. ....................................................... 13

  III.  Even if the Resolutions conflict with earlier-enacted statutes, they remain valid. ........... 15

  IV.  The statutory and ultra vires claims fail for several other threshold reasons.................... 17

    A.    The APA claim fails because Plaintiffs identify no final agency action. ................ 17

    B.    Plaintiffs' claims against EPA are an improper attempt to evade the Clean Air Act's comprehensive review scheme. ......................................................... 18

    C.    The ultra vires claims fail as a matter of law. ...................................................... 20

  V.    Plaintiffs' constitutional claims fail. .................................................................. 20

    A.    The Take Care Clause is not judicially enforceable. ............................................. 21

    B.    Plaintiffs' nondelegation and judicial power theories fail. .................................... 22

    C.    Plaintiffs fail to identify any interest protected by the Tenth Amendment............. 24

CONCLUSION…………………………………………………………………………25

**TABLE OF AUTHORITIES**

**U.S. Constitution**

U.S. Const. art. I, § 5........................................................................................................4, 13

U.S. Const. art. II, § 3..............................................................................................................12

**Cases**

*Armstrong v. Exceptional Child Ctr., Inc.*,
    575 U.S. 320 (2015) ...........................................................................................................20

*Bank Markazi v. Peterson*,
    578 U.S. 212 (2016) .....................................................................................................23, 24

*Bennett v. Spear*,
    520 U.S. 154 (1997) ...........................................................................................................17

*Cal. Dump Truck Owners Ass'n v. Nichols*,
    924 F. Supp. 2d 1126 (E.D. Cal. 2012) ............................................................................19

*Cal. Dump Truck Owners Ass'n v. Nichols*,
    784 F.3d 500 (9th Cir. 2015) .............................................................................................19

*Citizens for Const. Integrity v. United States*,
    57 F.4th 750 (10th Cir. 2023) .....................................................................................15, 16

*City of Reno v. Netflix, Inc.*,
    52 F.4th 874 (9th Cir. 2022) ..............................................................................................11

*Common Cause v. Biden*,
    748 F.3d 1280 (D.C. Cir. 2014) ........................................................................................15

*Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*,
    482 F.3d 1157 (9th Cir. 2007) ...................................................................................2, 14, 15

*Cook Inlet Treaty Tribes v. Shalala*,
    166 F.3d 986 (9th Cir. 1999) .............................................................................................23

*Ctr. for Biological Diversity v. Bernhardt*,
    946 F.3d 553 (9th Cir. 2019) ...................................................................8, 9, 10, 11, 12, 16, 24

*Dalton Trucking, Inc. v. EPA*,
    808 F.3d 875 (D.C. Cir. 2015) ..........................................................................................19

*Dalton v. Specter*,
    511 U.S. 462 (1994) .....................................................................................................12, 18

*DeVillier v. Texas*,
　601 U.S. 285 (2024) ..............................................................................21

*Dorsey v. United States*,
　567 U.S. 260 (2012) ..............................................................................17

*Engine Mfrs. Ass'n v. EPA*,
　88 F.3d 1075 (D.C. Cir. 1996) .................................................................5

*Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*,
　541 U.S. 246 (2004) ..............................................................................25

*Foster v. USDA*,
　68 F.4th 372 (8th Cir. 2023).................................................................10

*Franklin v. Massachusetts*,
　505 U.S. 788 (1992) .........................................................................18, 21

*Freeman Invs., L.P. v. Pac. Life Ins. Co.*,
　704 F.3d 1110 (9th Cir. 2013).............................................................13

*Gonzaga Univ. v. Doe*,
　536 U.S. 273 (2002) ..............................................................................11

*INS v. Chadha*,
　462 U.S. 919 (1983) ..............................................................................16

*Kan. Nat. Res. Coal. v. Dep't of Interior*,
　971 F.3d 1222 (10th Cir. 2020)........................................................9, 10

*Metzenbaum v. FERC*,
　675 F.2d 1282 (D.C. Cir. 1982) ...........................................................14

*Mississippi v. Johnson*,
　71 U.S. (4 Wall.) 475 (1866)................................................................21

*Montanans for Multiple Use v. Barbouletos*,
　568 F.3d 225 (D.C. Cir. 2009) ...............................................................9

*Motor Vehicle Mfrs. Ass'n v. N.Y. State Dep't of Env't Conservation*,
　17 F.3d 521 (2d Cir. 1994).....................................................................5

*Nat'l Fed'n of Indep. Bus. v. DOL*,
　595 U.S. 109 (2022)..............................................................................24

*New York v. United States*,
　505 U.S. 144 (1992) ..............................................................................25

*NLRB v. Noel Canning*,
573 U.S. 513 (2014) ........................................................................13

*Nuclear Regul. Comm'n v. Texas*,
605 U.S. 665 (2025) .........................................................................20

*Palumbo v. Waste Techs. Indus.*,
989 F.2d 156 (4th Cir. 1993) .............................................................19

*Patchak v. Zinke*,
583 U.S. 244 (2018) .........................................................................23

*Rangel v. Boehner*,
20 F. Supp. 3d 148 (D.D.C. 2013) ......................................................13

*Sierra Club v. Wheeler*,
No. 15-cv-1165-HSG, 2018 WL 6182748 (N.D. Cal. Nov. 27, 2018) ........19

*South Carolina v. Baker*,
485 U.S. 505 (1988) .........................................................................25

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
578 U.S. 590 (2016) .........................................................................17

*UFO Chuting of Haw., Inc. v. Young*,
380 F. Supp. 2d 1166 (D. Haw. 2005) .................................................23

*United States v. Ballin*,
144 U.S. 1 (1892) ..................................................................13, 14, 15

*Via Christi Reg'l Med. Ctr., Inc. v. Leavitt*,
509 F.3d 1259 (10th Cir. 2007) ...........................................................9

*Virginia v. United States*,
74 F.3d 517 (4th Cir. 1996) ...............................................................19

*Wash. All. of Tech. Workers v. DHS*,
892 F.3d 332 (D.C. Cir. 2018) .............................................................9

*Watkins v. United States*,
354 U.S. 178 (1957) .........................................................................23

**Statutes**

2 U.S.C. § 641(e)(2) ........................................................................16

5 U.S.C. § 551(4) ..............................................................................4

5 U.S.C. § 801 ................................................................................................................4

5 U.S.C. § 801(a)(1) ......................................................................................................10

5 U.S.C. § 801(a)(1)(A) ..................................................................................................3

5 U.S.C. § 801(b)(1) ........................................................................................................3

5 U.S.C. § 801(b)(2) ........................................................................................................4

5 U.S.C. § 802 ................................................................................................................4

5 U.S.C. § 802(a) .............................................................................................................3

5 U.S.C. § 802(c) .............................................................................................................4

5 U.S.C. § 802(d)(2) ........................................................................................................4

5 U.S.C. § 802(g) ........................................................................................................4, 14

5 U.S.C. § 802(g)(1) ......................................................................................................13

5 U.S.C. § 802(g)(2) ......................................................................................................15

5 U.S.C. § 804(3) ..................................................................................................4, 10, 11

5 U.S.C. § 805 ........................................................................................................2, 8, 13

5 U.S.C. §§ 801–08 .........................................................................................................3

42 U.S.C. § 7416 .............................................................................................................5

42 U.S.C. § 7507 .............................................................................................................6

42 U.S.C. § 7521(a)(1) ....................................................................................................5

42 U.S.C. § 7543(a) .........................................................................................................5

42 U.S.C. § 7543(b) ....................................................................................................5, 19

42 U.S.C. § 7543(b)(1) ....................................................................................................5

42 U.S.C. § 7607(b)(1) ..............................................................................................18, 19

Pub. L. No. 89-272, § 101, 79 Stat. 992 (1965) ............................................................5

Pub. L. No. 90-148, § 208, 81 Stat. 485 (1967) ............................................................5

Pub. L. No. 104-121, § 251, 110 Stat. 847 (1996) ........................................................3

Pub. L. No. 119-15, 139 Stat. 65 (2025) ........................................................................7

Pub. L. No. 119-16, 139 Stat. 66 (2025) ........................................................................7

Pub. L. No. 119-17, 139 Stat. 67 (2025) .................................................................7

**Federal Register**

84 Fed. Reg. 51310 (Sep. 27, 2019) .......................................................................5

88 Fed. Reg. 20688 (Apr. 6, 2023) .........................................................................6

88 Fed. Reg. 88908 (Dec. 26, 2023) .......................................................................6

90 Fed. Reg. 642 (Jan. 6, 2025) ..............................................................................7

90 Fed. Reg. 643 (Jan. 6, 2025) ..............................................................................6

**Legislative Materials**

159 Cong. Rec. S8419 (Nov. 21, 2013) .................................................................16

163 Cong. Rec. S2450 (Apr. 7, 2017) ...................................................................16

171 Cong. Rec. S3025 (May 21, 2025) ............................................................22, 23

**State Materials**

Cal. Code Regs. tit. 13, § 1956.8 (2025) ................................................................6

Cal. Code Regs. tit. 13, § 1962.4(c)(1)(B) (2025) .................................................7

Cal. Code Regs. tit. 13, § 1963.1 (2025) ................................................................6

**Other Authorities**

CARB, Final Regulation Order, Title 13, https://www.regulations.gov/document/EPA-HQ-OAR-2022-0332-0005 ...............................................................................................6

GAO, *Applicability of Congressional Review Act to Requirement for Persons to Wear Masks While on Conveyances and at Transportation Hubs* (Dec. 14, 2021), https://www.gao.gov/assets/b-333501.pdf. ..............................................................4

Maeve P. Carey et al., Cong. Research Serv., R43992, *The Congressional Review Act: Frequently Asked Questions* 1 (Nov. 12, 2021) ......................................................4

Rule XXII, Standing Rules of Senate .................................................................4, 16

U.S. Census Bureau, Apportionment Population and Number of Representatives by State: 2020 Census, *available at* https://www2.census.gov/programs-surveys/decennial/2020/data/apportionment/apportionment-2020-table01.pdf...................................................................................25

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on October 30, 2025 at 2:00 pm, in Courtroom 2, 4th Floor, United States District Court, Northern District of California, located at 1301 Clay Street, Oakland, California, Defendants will move the Court to dismiss this action.

## MOTION TO DISMISS

Defendants hereby move to dismiss this action in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), for the reasons more fully set forth in the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

This lawsuit asks this Court to invalidate three federal statutes that received majority votes in both Houses of Congress, and that were signed into law by the President of the United States. Primarily, Plaintiffs request that bold relief not because of any violation of the Constitution, but because of alleged violations of another, earlier enacted statute: the Congressional Review Act (CRA). That theory is incoherent as a matter of first principles; a federal law cannot "violate" an earlier-enacted law. And as long as Congress satisfies constitutional requirements like bicameralism and presentment, Congress's procedures are for Congress alone to decide—not California and, respectfully, not the federal courts.

Exercising its constitutional responsibility to legislate on a matter of significant public concern, earlier this year, Congress invoked the procedures of the CRA to abrogate three Clean Air Act preemption waivers that the Environmental Protection Agency (EPA) had previously issued to California. As a result of that unambiguous legislation, California's vehicle emissions regulations are now preempted. Unwilling to accept the outcome of that legislative process, California and ten other states have now sued EPA, its Administrator, and the President. But even a cursory review of the Complaint shows that California's real dispute is with Congress—not with EPA, or even the President. According to California, Congress was wrong to conclude that EPA's preemption waivers are "rules" instead of "orders" under the CRA. On California's view, Congress thus should not have adhered to the CRA's streamlined legislative procedures, but instead

subjected the statutes to other legislative processes, including the Senate filibuster—even though the filibuster itself is purely a creature of Senate rules.

This dispute over internal Congressional procedures fails for several threshold reasons. Plaintiffs' claims are non-justiciable as a statutory matter. The CRA expressly precludes review: "No determination, finding, action, or omission under this chapter shall be subject to judicial review." 5 U.S.C. § 805. That jurisdiction-stripping provision disposes of this case in full.

Plaintiffs' claims are also non-justiciable as a constitutional matter. Congress, after all, is the exclusive judge of its own legislative procedures as a matter of constitutional prerogative. *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1171–72 (9th Cir. 2007).

Even if there were a conflict between the resolutions and the CRA, the latter-in-time statutes—here, the resolutions—are still valid. In other words, at least for purposes of this lawsuit, it makes no difference whether the waivers are best categorized as "rules" or "orders" within the meaning of the CRA. Either way, they have now been invalidated by Congress.

These claims also fail on multiple other levels. The Administrative Procedure Act (and ultra vires) claims fail because vacating an EPA action would not void a federal statute that satisfied the Constitution's requirements of bicameralism and presentment. Nor do Plaintiffs identify any EPA final agency action, and even if they had, the Clean Air Act would vest jurisdiction to challenge that action exclusively in the courts of appeals.

Plaintiffs' constitutional claims also fail on the merits. Their nondelegation claim asserts that Congress unconstitutionally delegated authority to EPA to determine whether EPA waivers are rules under the CRA. In truth, Congress directly shouldered legislative power and responsibility by voting on whether to abrogate the waivers. That is the antithesis of a nondelegation problem. California then reverses course, claiming that Congress usurped judicial or executive power, but no constitutional principle prohibits Congress from amending the law to preempt California's vehicle emissions regulations. California follows that up by asserting a claim under the Take Care Clause, notwithstanding the lack of any cause of action or judicially enforceable standards. In any event, any obligation under the Take Care Clause would require the

President to faithfully execute the disapproval resolutions.

Finally, California asserts that "the Federal Government" violated the Tenth Amendment because Congress did not undertake "rigorous debate," hear "state official testimony," or adhere to "the filibuster" before repealing California's preemption waivers. Compl. ¶¶ 173, 175. But no one has a constitutional right to the filibuster or any congressional procedure other than the constitutional requirements of bicameralism and presentment, which all agree were satisfied here. California insists that "Defendants provided no opportunity for California, or the public, to participate in crucial parts of this scheme," and that "congressional leadership" "prevented" California from "defending [its] own state laws in the political process." *Id.* ¶ 175. That is a political argument, not a legal claim.

California lost a vote in Congress. That does not violate the law.

## BACKGROUND

### A.    The Congressional Review Act contains a set of expedited legislative procedures for enacting statutes that abrogate certain administrative rules.

In 1996, Congress enacted the CRA, 5 U.S.C. §§ 801–08, as part of a package of regulatory reforms collectively known as the Small Business Regulatory Enforcement Fairness Act. *See* Pub. L. No. 104-121, § 251, 110 Stat. 847, 868 (1996). With some exceptions, the CRA provides that "[b]efore a rule can take effect, the Federal agency promulgating such rule shall submit" a report "to each House of the Congress and to the Comptroller General." 5 U.S.C. § 801(a)(1)(A). The report must include "a copy of the rule," "a concise general statement relating to the rule, including whether it is a major rule," and its proposed effective date. *Id.*

Upon receipt of such a report, Congress may enact a joint resolution "disapprov[ing] the rule." 5 U.S.C. § 802(a). The joint resolution must include the following language: "That Congress disapproves the rule submitted by the ___ relating to ___, and such rule shall have no force or effect." *Id.* If a joint resolution of disapproval passes both Houses of Congress, and is signed into law by the President, two consequences follow. First, and most immediately, the rule "shall not take effect (or continue)." *Id.* § 801(b)(1). Second, the rule "may not be reissued in substantially the same form," nor may a "new rule that is substantially the same as such a rule . . . be issued,

unless the reissued or new rule is specifically authorized by a law enacted after the date of the joint resolution disapproving the original rule." *Id.* § 801(b)(2).

Congress also specified various procedures for consideration of CRA disapproval resolutions, in "an exercise of the rulemaking power of the Senate and House of Representatives," 5 U.S.C. § 802(g), consistent with the constitutional authority of each House of Congress to "determine the Rules of its Proceedings," U.S. Const. art. I, § 5, cl. 2. The CRA modifies default legislative procedures to allow for expedited consideration of joint resolutions of disapproval. For example, if a Senate committee has been considering a CRA resolution for at least 20 days, 30 Senators may file a petition to discharge and place the joint resolution on the calendar for consideration by the full Senate. 5 U.S.C. § 802(c). In addition, Senate debate on the joint resolution is limited to 10 hours, *id.* § 802(d)(2), which, under current Senate rules, has the practical effect of preventing a filibuster. *See* Maeve P. Carey et al., Cong. Research Serv., R43992, *The Congressional Review Act: Frequently Asked Questions* 1 (Nov. 12, 2021); *see also* Rule XXII, Standing Rules of Senate. These procedures are "deemed a part of the rules of each House," and either House may "change the rules . . . at any time." 5 U.S.C. § 802(g).

As a general matter, the CRA's procedures apply to disapproval resolutions relating to an agency "rule." *Id.* §§ 801, 802. For purposes of the CRA, "rule" "has the meaning given such term in" the Administrative Procedure Act (APA), with certain CRA-specific exceptions. *Id.* § 804(3). The APA, in turn, defines "rule" broadly to include "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy." *Id.* § 551(4).

Congress sometimes disagrees with the Executive Branch's assessment of whether an agency action is a "rule" subject to CRA procedures. In response to requests from legislators, the Comptroller General (through the Governmental Accountability Office (GAO)) often opines on that subject. *See, e.g.*, GAO, *Applicability of Congressional Review Act to Requirement for Persons to Wear Masks While on Conveyances and at Transportation Hubs* (Dec. 14, 2021) (although "CDC did not submit a CRA report to Congress," "conclud[ing] that the Mask Requirement meets the definition of a rule for purposes of CRA and, therefore, is subject to CRA's

1  requirements for submission and congressional review"), https://www.gao.gov/assets/b-

2  333501.pdf. GAO opinions—issued by an agent of the legislative branch—are not binding on the

3  Executive Branch, nor on Congress itself.

4      **B.**    **The Clean Air Act preempts state-level vehicle emission regulations.**

5      In 1965, Congress amended Title II of the Clean Air Act to authorize federal emission

6  standards for motor vehicles. Pub. L. No. 89-272, § 101, 79 Stat. 992 (1965). As currently codified,

7  Section 202 governs federal emission standards for air pollutants emitted from any class or classes

8  of new motor vehicles or new motor vehicle engines, "which in [the EPA Administrator's]

9  judgment cause, or contribute to, air pollution which may reasonably be anticipated to endanger

10  public health or welfare." 42 U.S.C. § 7521(a)(1).

11      After Section 202's enactment, many states continued developing their own emission

12  programs. *Motor Vehicle Mfrs. Ass'n v. N.Y. State Dep't of Env'tl. Conservation*, 17 F.3d 521, 525

13  (2d Cir. 1994). Congress responded in 1967 by adding a broad preemption provision. Pub. L. No.

14  90-148, § 208, 81 Stat. 485 (1967). That provision, now codified at Section 209(a), is the

15  "cornerstone" of Title II. *Motor Vehicle Mfrs.*, 17 F.3d at 526. It provides: "No State. . . shall adopt

16  or attempt to enforce any standard relating to the control of emissions from new motor

17  vehicles . . . ." 42 U.S.C. § 7543(a). This framework differs from the approach the statute takes

18  for some other programs. For example, Congress chose a greater focus on cooperative federalism

19  in Title I (which regulates stationary sources), while putting greater emphasis on national

20  uniformity for mobile source standards in Title II. *Compare id.* § 7416 (retention of state authority

21  with certain enumerated exceptions including section 209), *with id.* § 7543(a) (preemption of state

22  emission regulations); *see Engine Mfrs. Ass'n v. EPA*, 88 F.3d 1075, 1079 (D.C. Cir. 1996).

23      Congress left only one exception for new motor vehicles to Section 209(a)'s broad

24  preemptive reach in what is now Section 209(b). Pub. L. No. 90-148, § 208(b); *see* 42 U.S.C.

25  § 7543(b). Section 209(b) governs applications for preemption waivers by states that adopted

26  certain standards before March 30, 1966, which means only California. 42 U.S.C. § 7543(b); 84

27  Fed. Reg. 51310, 51331/3 & n.218 (Sept. 27, 2019). Under Section 209(b), EPA shall only grant

28  California a waiver in limited circumstances. 42 U.S.C. § 7543(b)(1). Certain additional States

may adopt standards identical to California standards for which EPA has issued a waiver for the applicable model years. *Id.* § 7507.

### C. California promulgates three sets of vehicle emissions standards with the goal of banning sales of internal-combustion vehicles.

Earlier this decade, the California Air Resources Board (CARB) promulgated a series of regulations imposing stringent emissions standards on motor vehicles. CARB then requested preemption waivers from EPA. Three California regulations are relevant here.

First, CARB adopted the Advanced Clean Trucks rule. *See* Cal. Code Regs. tit. 13, § 1963.1 (2025). This rule required manufacturers of trucks with a gross vehicle weight rating above 8,500 pounds to meet increasing sales quotas for zero-emissions trucks beginning with model year 2024—irrespective of the pace of advances in zero-emissions power-train technology. *Id.* CARB requested and received from EPA a Clean Air Act preemption waiver for its Advanced Clean Trucks rule. *See* California State Motor Vehicle and Engine Pollution Control Standards; Heavy-Duty Vehicle and Engine Emission Warranty and Maintenance Provisions; Advanced Clean Trucks; Zero Emission Airport Shuttle; Zero-Emission Power Train Certification; Waiver of Preemption; Notice of Decision**,** 88 Fed. Reg. 20688 (Apr. 6, 2023).

Second, CARB adopted its Omnibus Low NOx rule. This rule requires truck manufacturers to reduce heavy-duty vehicle nitrogen-oxide and particulate emissions beginning with model year 2024, and it makes extensive changes to other CARB regulations affecting heavy-duty trucks and engines. *See* Cal. Code Regs. tit. 13, § 1956.8 (2025); *see* CARB, Final Regulation Order, Title 13, at 3, https://www.regulations.gov/document/EPA-HQ-OAR-2022-0332-0005. In December 2024, EPA granted a waiver request for this rule. *See* California State Motor Vehicle and Engine and Nonroad Engine Pollution Control Standards; The "Omnibus" Low NOx Regulation; Waiver of Preemption; Notice of Decision, 90 Fed. Reg. 643 (Jan. 6, 2025).

Third, CARB adopted its Advanced Clean Cars II regulations. *See* California State Motor Vehicle Pollution Control Standards; Advanced Clean Cars II Regulations; Request for Waiver of Preemption; Opportunity for Public Hearing and Public Comment, 88 Fed. Reg. 88908 (Dec. 26, 2023). These regulations would require that, starting with model-year 2035, all new light-duty

1   vehicles sold in California *must* be either zero-emission vehicles or plug-in hybrid vehicles. *See*

2   Cal. Code Regs., tit. 13, § 1962.4(c)(1)(B). EPA granted California's waiver request in December

3   2024. *See* California State Motor Vehicle and Engine Pollution Control Standards; Advanced

4   Clean Cars II; Waiver of Preemption; Notice of Decision, 90 Fed. Reg. 642, 642 (Jan. 6, 2025).

5       **D.      Congress revokes the preemption waivers.**

6       EPA submitted the three waivers to Congress in February 2025. Compl. ¶ 77. On April 2,

7   2025, members of the House of Representatives introduced three CRA disapproval resolutions,

8   each one addressing one of the three preemption waivers. Compl. ¶ 85. By May 1, 2025, a majority

9   of the House of Representatives had voted in favor of all three disapproval resolutions. *Id.* ¶ 95.

10  "Leaders in the Senate also ultimately decided to proceed with votes on the Resolutions,

11  disregarding GAO's legal conclusion and overriding the Senate Parliamentarian's determination

12  that the CRA was inapplicable." *Id.* ¶ 98. On May 22, 2025, the Senate voted on each of the

13  resolutions and passed all three with votes of 51-45 (H.J. Res. 87, Advanced Clean Trucks), 51-44

14  (H.J. Res. 88, Advanced Clean Cars II), and 49-46 (H.J. Res. 89, Omnibus). *Id.* ¶ 111. The

15  President signed the joint resolutions into law on June 12, 2025.

16      Each of the enacted statutes track the model language in 5 U.S.C. § 802(a). So, for example,

17  the full text of Public Law 119-15 (Advanced Clean Trucks) reads as follows:

18

19      *Resolved by the Senate and House of Representatives of the United*
        *States of America in Congress assembled*, That Congress

20      disapproves the rule submitted by the Environmental Protection
        Agency relating to ''California State Motor Vehicle and Engine

21      Pollution Control Standards; Heavy-Duty Vehicle and Engine
        Emission Warranty and Maintenance Provisions; Advanced Clean

22      Trucks; Zero Emission Airport Shuttle; Zero-Emission Power Train
        Certification; Waiver of Preemption; Notice of Decision'' (88 Fed.

23      Reg. 20688 (April 6, 2023)), and such rule shall have no force or
        effect.

24

25  Pub. L. No. 119-15, 139 Stat. 65 (2025); *see also* Pub. L. No. 119-16, 139 Stat. 66 (2025); Pub.

26  L. No. 119-17, 139 Stat. 67 (2025).

27

28

E.    **California sues, claiming that EPA and Congress failed to follow proper legislative procedures under the Congressional Review Act.**

Plaintiffs—the State of California, joined by ten other States—filed this suit on June 12, 2025. The suit names four Defendants: the United States of America, EPA, Lee Zeldin (in his official capacity as EPA Administrator), and Donald J. Trump (in his official capacity as President of the United States). Plaintiffs allege that EPA misinterpreted the CRA by labeling the California waivers as "rules" in its most recent CRA submission to Congress. *See* Compl. ¶¶ 73–77. Plaintiffs also argue that the Senate parliamentarian and the GAO were right, and that a majority of the Senate was wrong, in treating the waivers as subject to CRA procedures. *See id.* ¶¶ 78–113. In short, Plaintiffs assert "that use of the CRA here [was] unlawful," and so they "challenge" what they describe as Congress's "unlawful Resolutions, which purport to prevent these States from enforcing" state laws that conflict with the joint resolutions that have now been enacted into law. *Id.* ¶¶ 5, 9. Defendants now move to dismiss.

## ARGUMENT

## I.    **Congress expressly precluded judicial review in 5 U.S.C. § 805.**

"Congress is generally free to limit the jurisdiction of federal courts." *Ctr. for Biological Diversity v. Bernhardt*, 946 F.3d 553, 563 (9th Cir. 2019). In the CRA, Congress did so, providing expressly that "[n]o determination, finding, action, or omission under this chapter [*i.e.*, the CRA] shall be subject to judicial review." 5 U.S.C. § 805. That preclusion provision is fatal to this suit.

**a.** The Ninth Circuit first considered 5 U.S.C. § 805 six years ago, when Congress used the CRA "to rescind a regulation that prevented Alaska from applying certain state hunting regulations on federal wildlife refuges." *Bernhardt*, 946 F.3d at 556. In *Bernhardt*, the plaintiff sued "to compel" the Department of the Interior "to reinstate the rule," on the theory that the rule at issue was "not eligible for disapproval in the new session of Congress" due to certain statutory timing requirements that appear in the CRA—requirements that plaintiff argued had been violated. *Id.* at 556, 563. The plaintiff argued that because of those violations of the CRA, "the Joint Resolution was invalid and it did not authorize Interior to rescind" the rule—even though it had been disapproved through a CRA resolution that passed both Houses of Congress and was signed into

law by the President. *Id.* at 563.

The Ninth Circuit refused to exercise jurisdiction: "Because enacting a joint resolution of disapproval is an action under the CRA," the federal courts "lack jurisdiction to consider this claim." *Id.* And in doing so, the Ninth Circuit rejected the argument that a plaintiff could get around the CRA's review bar by restyling its claims as a challenge to some agency action (rather than a congressional action) under the APA. In particular, the plaintiff in *Bernhardt* argued that, because it was "challenging *Interior*'s rescission of the Refuges Rule and not any action under [the] CRA," "its claim is not barred." *Id.* at 564 (emphasis added). But because the suit ultimately depended on the theory that "Congress did not validly enact the Joint Resolution," the Ninth Circuit held that plaintiff's "claim necessarily involve[d] a challenge to a congressional 'determination, finding, action or omission' under the CRA, and as such is subject to" 5 U.S.C. § 805. *Id.*

The D.C. Circuit, Tenth Circuit, Eighth Circuit, and many district courts have similarly enforced § 805 as written, to broadly foreclose judicial review of all claims asserting a violation of the CRA—including claims alleging agency noncompliance with the CRA. For example, in *Montanans for Multiple Use v. Barbouletos*, 568 F.3d 225, 229 (D.C. Cir. 2009), the D.C. Circuit declined to review a claim that agency amendments to a forest plan were invalid because the agency allegedly failed to comply with CRA reporting requirements. As then-Judge Kavanaugh explained, "[t]he language of § 805 is unequivocal and precludes review of this claim—even assuming that the plan amendments qualify as rules subject to the Act in the first place"—because it "denies courts the power to void rules on the basis of agency noncompliance with the Act." *Id.* The D.C. Circuit later reaffirmed that holding, concluding that § 805 forecloses review of a claim that an agency violated the CRA by publishing a rule fewer than 60 days before it took effect. *Wash. All. of Tech. Workers v. DHS*, 892 F.3d 332, 346 (D.C. Cir. 2018).

Similarly, the Tenth Circuit has long declined to review claims that an agency violated the CRA, noting that the statute "specifically precludes judicial review of an agency's compliance with its terms." *Via Christi Reg'l Med. Ctr., Inc. v. Leavitt*, 509 F.3d 1259, 1271 n.11 (10th Cir. 2007). And more recently, the Tenth Circuit applied § 805 to bar review of the Department of Interior's failure to submit a rule to Congress, as required by the CRA. *Kan. Nat. Res. Coal. v.*

*Dep't of Interior*, 971 F.3d 1222, 1226 (10th Cir. 2020) (*KNRC*) (citing § 801(a)(1)(A)). The Tenth Circuit rejected the argument that the CRA's review bar applies only to decisions, findings, acts, or omissions of Congress, rather than agencies. *Id.* at 1235–36. To the contrary, the provision applies to all conduct "under this chapter," which "unambiguously prohibits judicial review of any omission [or decision, finding, or act] by any of the specified actors," including "agencies, the Comptroller General, the President, and Congress." *Id.*; *accord Foster v. USDA*, 68 F.4th 372, 379 (8th Cir. 2023) ("§ 805's broad language covers all omissions under the CRA, including agency omissions."), *cert. granted, judgment vacated on other grounds*, 144 S. Ct. 2707 (2024).

**b.** Plaintiffs' statutory and ultra vires claims here run directly into 5 U.S.C. § 805—as interpreted by the Ninth Circuit and every other court of appeals to consider the question.

In general, the Plaintiffs purport to challenge (1) EPA's "reclassification" of the waivers as rules under the CRA, and (2) EPA's "submission of these waivers to Congress as 'rules' subject to the CRA." Compl. ¶¶ 73, 77, 117–18, 126, 139. But for that determination and that action, the Plaintiffs say, the joint resolutions would not have passed. Compl. ¶¶ 119, 132. But even if that is true, EPA's determination that the waivers are "rules" subject to the CRA is a determination "under" the CRA because it applies a CRA provision—the definition of a "rule"—to specific facts for purposes of the CRA. 5 U.S.C. § 804(3) (defining "rule" under the CRA). EPA's submission of a CRA report to Congress is likewise an act "under" the CRA—indeed, that submission is generally *required* by the CRA. *Id.* § 801(a)(1). Because Plaintiffs ask this Court to decide whether Defendants complied with the CRA, their claims are barred. *Bernhardt*, 946 F.3d at 563; *KNRC*, 971 F.3d at 1235–36.

The complaint confirms this result. Most obviously, Count III is explicitly styled as a challenge to an alleged "Violation of the Congressional Review Act," Compl. at 31, in which Plaintiffs allege that "[b]y its own plain terms, the CRA does not apply to these waiver decisions." Compl. ¶ 137. That claim is plainly barred by § 805, as the Ninth Circuit held in *Bernhardt*.

Count I—labeled as an "Ultra Vires" claim—is likewise precluded. There, Plaintiffs allege that Defendants may not "intentionally utilize a statute that is inapplicable to these waiver decisions . . . simply because it provides a faster or easier, but unlawful, means to a desired end."

Compl. ¶ 115. But when Plaintiffs say "a statute," they mean the CRA. *Id.* And when they call the government's action "unlawful," they mean it is "unlawful" because they think it violates the CRA. Omitting the name of the statute does not change its applicability.

Count II is labeled as a "Violation of the Administrative Procedure Act," Compl. at 28, but it ultimately suffers from the same jurisdictional defect. There, once again, in Plaintiffs' words, the alleged APA violation was "predicated on a new (albeit implicit) interpretation of the APA term 'rule,'" and Plaintiffs' assertion that "that interpretation is contrary to the statute's text." Compl. ¶ 128. But in fact, "rule" was not an "APA term" at all—what EPA did (and what Plaintiffs object to in Count II) is treat its waivers as a "rule" *within the meaning of the CRA*. Plaintiffs' sleight-of-hand is only possible because the definition of a "rule" in the CRA happens to (in part) incorporate by reference the definition of a "rule" in the APA. *See* 5 U.S.C. § 804(3) (defining "rule" for purposes of the CRA as having "the meaning given such term" in the APA, with certain CRA-specific exceptions). But the fact that the definition of a "rule" in the CRA looks (in part) to the APA for its content does not change the fact that what Plaintiffs are really objecting to in Count II is EPA's interpretation *of the CRA*—not the APA.

In sum, because "federal courts do not have jurisdiction over statutory claims that arise under the CRA," *Bernhardt*, 946 F.3d at 563, Counts I, II, and III are straightforwardly precluded.[1]

**c.** That leaves Plaintiffs' constitutional claims. In *Bernhardt*, the United States did not argue that the plaintiff's constitutional claims were precluded. Even so, the Ninth Circuit acknowledged that, "[o]n its face," the text of 5 U.S.C. § 805 "bars judicial review of all challenges to actions under the CRA, including constitutional challenges." 946 F.3d at 561. Ultimately,

---

[1] Plaintiffs' CRA claim in Count III also fails because they lack a cause of action. In addition to expressly forbidding lawsuits by stripping courts of jurisdiction, the CRA creates no private rights and no cause of action. A claim directly under the CRA is thus squarely foreclosed by the statute's text and binding precedent. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002) ("a plaintiff suing under an implied right of action … must show that the statute manifests an intent to create not just a private *right* but also a private *remedy*") (quotation marks omitted). Plaintiffs cannot avoid this by gesturing to the Declaratory Judgment Act. Compl. ¶¶ 142-43. "The Declaratory Judgment Act does not provide a cause of action." *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878 (9th Cir. 2022).

relying on principles of constitutional avoidance, the Ninth Circuit stated that "the Jurisdiction-Stripping Provision does not include any *explicit* language barring judicial review of constitutional claims," so it "presume[d] that Congress did not intend to bar such review." *Id.* (emphasis added). The Ninth Circuit then went on to consider and reject a constitutional claim on the merits—in which the plaintiff had challenged the facial constitutionality of the CRA itself, as well as the relevant joint resolution of disapproval.

The constitutional claims in this case, however, bear little resemblance to the constitutional claim that the Ninth Circuit rejected on the merits in *Bernhardt*—which was, primarily, an argument that the CRA *itself* impermissibly modified the legislative process set forth in Article I, Section 7 of the Constitution. Here, by contrast, what Plaintiffs label as constitutional claims are simply allegations that EPA, the President, Congress, or some combination thereof all misinterpreted *the CRA*. But not "every action by the President, or by another executive official, in excess of his statutory authority is *ipso facto* in violation of the Constitution." *Dalton v. Specter*, 511 U.S. 462, 472 (1994). Rather, the Supreme Court has carefully "distinguished between claims of constitutional violations and claims that an official has acted in excess of his statutory authority." *Id.* (collecting cases). The Constitution is implicated, for example, if executive officers rely on a statute that itself violates the Constitution, *see id.* at 473 & n.5—which is essentially what the plaintiffs argued in *Bernhardt*, 946 F.3d at 559. But claims alleging simply that an official has "exceeded his statutory authority are not 'constitutional' claims" at all. *Dalton*, 511 U.S. at 473.

For example, when Plaintiffs argue that Defendants failed to "take care that the laws be faithfully executed," U.S. Const. art. II, § 3, the "law" they have in mind is the CRA. *See, e.g.*, Compl. ¶ 150 ("The Executive Branch Defendants' failure to honor their constitutional duties were deliberate efforts to use—and enable Congress's use—of the CRA to disapprove of these waivers."); *see also id.* ¶¶ 146, 147 ("All Executive Branch Defendants were aware that the three waiver decisions at issue are not rules, much less rules of general applicability, subject to the CRA."). Plaintiffs' "Separation of Powers" claim ultimately depends on the theory that "Congress expressly cabined the CRA so it applies only to certain rules promulgated by federal agencies," and that that limitation, in the CRA, was violated. *Id.* ¶ 156. And Plaintiffs' Tenth Amendment

claim is likewise premised on the allegation that the disapproval resolutions "were enacted only because both the Executive and Legislative Branches opted to flout settled procedures and the plain text of the CRA." *Id.* ¶ 172. Even if formally labeled as constitutional claims, all those claims, in substance, challenge a "determination, finding, action, or omission under" the CRA—as a violation *of* the CRA—so they too are not "subject to judicial review." 5 U.S.C. § 805. And "plaintiffs cannot avoid preclusion through artful pleading . . . ." *Freeman Invs., L.P. v. Pac. Life Ins. Co.*, 704 F.3d 1110, 1115 (9th Cir. 2013) (cleaned up).

## II.    The Court independently lacks subject-matter jurisdiction because this suit amounts to a challenge to House or Senate rules.

That Congress chose to preclude judicial review of CRA claims is unsurprising, because the CRA was "enacted by Congress" as "an exercise of the rulemaking power of the Senate and House of Representatives, respectively, and as such it is deemed a part of the rules of each House, respectively." *Id.* § 802(g)(1). Accordingly, this suit is also nonjusticiable for the independent reason that it amounts to an as-applied challenge to House and Senate rules, which are constitutionally committed to each House of Congress to "determine." U.S. Const. art. I, § 5, cl. 2 ("Each House may determine the Rules of its Proceedings . . . ."). Judicial intrusion into the interpretation or application of those rules is forbidden in all but the rarest of circumstances, which are not present here.

"The constitution empowers each house to determine its rules of proceedings." *United States v. Ballin*, 144 U.S. 1, 5 (1892). In doing so, neither House of Congress may "ignore constitutional restraints or violate fundamental rights," but otherwise the power of each house to set its internal rules is "absolute and beyond the challenge of any other body or tribunal." *Id.*; *accord NLRB v. Noel Canning*, 573 U.S. 513, 550–51 (2014) ("[W]e have held that 'all matters of method are open to the determination' of the Senate, as long as there is 'a reasonable relation between the mode or method of proceeding established by the rule and the result which is sought to be attained' and the rule does not 'ignore constitutional restraints or violate fundamental rights.'" (quoting *Ballin*, 144 U.S. at 5)); *see also, e.g.*, *Rangel v. Boehner*, 20 F. Supp. 3d 148, 169 (D.D.C. 2013) ("The House may not, by enacting and enforcing its own rules of procedure,

violate another constitutional provision or an individual's rights under the Constitution, but the exercise of its discretion under the [Rulemaking and Discipline] Clause[s] is otherwise boundless."), *aff'd*, 785 F.3d 19 (D.C. Cir. 2015).

All of Plaintiffs' claims (including their constitutional claims) fall squarely within this "absolute," unreviewable authority of Congress, because all of them depend on an allegation that Congress violated or misapplied its own procedural rules. *Ballin*, 144 U.S. at 5. Indeed, Congress has specified that the disapproval process set forth in § 802 is "an exercise of the rulemaking power of the Senate and House of Representatives, respectively, and as such it is deemed a part of the rules of each House, respectively." 5 U.S.C. § 802(g). And either House may "change the rules . . . at any time." *Id.* As the Ninth Circuit has squarely held, a challenge "based on the asserted failure of Congress to comply with its own procedural rules" is "a non-justiciable political question" that is "beyond [this Court's] power to review." *Consejo*, 482 F.3d at 1171–72 (declining to review claim that Congress, by not holding a hearing, failed to comply with its own procedural rules); *accord Metzenbaum v. FERC*, 675 F.2d 1282, 1288 (D.C. Cir. 1982) ("To invalidate Pub. L. No. 97-93 on the ground that it was enacted in violation of House rules would be to declare as erroneous the understanding of the House of Representatives of rules of its own making, binding upon it only by its own choice. We must assume that the House acted in the belief that its conduct was permitted by its rules, and deference rather than disrespect is due that judgment.").

Again, were there any doubt about this obstacle to review, it is dispelled by Plaintiffs' own filings—which are replete with complaints about internal congressional procedures. For example, the word "parliamentarian" appears in the complaint 113 times, as Plaintiffs expressly seek to elevate the Senate parliamentarian's interpretation of the CRA over that of the Senate itself. In Plaintiffs' view, "the Senate Parliamentarian agreed" that EPA's waivers "are not subject to the CRA," and "[t]hat should have been the end of it." Compl. ¶¶ 90–91. But with respect, the Senate parliamentarian is not mentioned in the Constitution, and thus does not have the last word on Senate procedure—the Senate does. Nor, for that matter, does EPA have any constitutional role in the enactment of legislation; Congress could have passed laws disapproving of these waivers without *any* involvement from EPA, or by explicitly disagreeing with EPA's interpretation of the

CRA. Congress does so routinely. *See, e.g.*, *supra* at 4–5 (citing GAO opinion in which Congress concluded that CDC action was a "rule," not an "order," and thus subject to CRA procedures).

By the same token, at any time, the House or the Senate could amend their rules relating to the process by which it considers all legislation, or all climate-related legislation, or all legislation related to agency rules. *See* 5 U.S.C. § 802(g)(2) (recognizing "the constitutional right of either House to change the rules . . . at any time, in the same manner, and to the same extent as in the case of any other rule"); *Ballin*, 144 U.S. at 5 ("The power to make rules is not one which once exercised is exhausted. It is a continuous power, always subject to be exercised by the house."). And even without the CRA, Congress could have, at any time, passed a law that (1) prohibited California's Clean Air Act waivers, and (2) prohibited the issuance of any similar future waivers. *See, e.g.*, *Citizens for Const. Integrity v. United States*, 57 F.4th 750, 763 (10th Cir. 2023) ("If Congress disagrees with an agency rule, then Congress may pass a law overriding it; such a course of events is not a usurpation of *executive* power but instead a legitimate exercise of *legislative* power."), *cert. denied*, 144 S. Ct. 94 (2023). The fact that such a law (at least, under current Senate rules) might have been subject to a filibuster is of no constitutional significance, as the Senate filibuster is not required by the Constitution, and did not exist at all until 1917, *see Common Cause v. Biden*, 748 F.3d 1280, 1283 (D.C. Cir. 2014). What Plaintiffs challenge, therefore, is not the substance of the joint resolutions, but the process by which Congress considered them. Under settled precedent, such challenges are "not subject to judicial review." *Consejo*, 482 F.3d at 1172.

## III.    Even if the Resolutions conflict with earlier-enacted statutes, they remain valid.

Even if Congress or the EPA violated the CRA, the Resolutions would still be valid—because compliance with CRA procedures is not necessary for Congress to pass a statute, and the Resolutions are now duly enacted statutes. Plaintiffs therefore have no basis to ask this Court to "void" (Compl. ¶¶ 120, 133) the joint resolutions based on an alleged CRA violation, an APA violation, or an ultra vires claim. In short, it is incoherent as a matter of first principles to argue that one law (the joint resolution) is unlawful for violation of another law (the CRA).

"[T]he prescription for legislative action in Art. I, §§ 1, 7 represents the Framers' decision that the legislative power of the Federal government be exercised in accord with a single, finely wrought and exhaustively considered, procedure." *INS v. Chadha*, 462 U.S. 919, 951 (1983). So there are only two procedural requirements to enact legislation: "passage by a majority of both Houses and presentment to the President." *Id.* at 958; *see also Bernhardt*, 946 F.3d at 562 n.6. The concurrence of the Senate parliamentarian, for example, is not required. Nor is compliance with the CRA. So it does not matter to the validity of the disapproval resolutions whether the waivers are properly considered to be "rules" or "orders" within the meaning of the CRA.

To be sure, majorities in the House or the Senate may adopt internal procedures—such as a three-fifths supermajority threshold in the Senate to cut off debate for most votes, [2] *see Standing Rules of the Senate*, Rule XXII—but those procedures are not required by the Constitution, not enforceable by any court, and have no legal significance outside of each House of Congress itself. From the perspective of a federal court, "[i]t makes no difference what internal parliamentary procedures Congress adopts" in enacting legislation, "so long as Congress complies with the fundamental constitutional requirements of bicameralism (approval by both Houses of Congress) and presentment (submission to the President for approval)." *Citizens for Const. Integrity*, 57 F.4th at 763–64. If it complies with those requirements, Congress has enacted a law of the United States, like any other.

As a set of procedural rules governing consideration of bills about agency rules, "[t]he CRA streamlines Congress's typical procedure for enacting legislation." *Bernhardt*, 946 F.3d at 557. But here, all that matters is that "Congress complied with the process of bicameralism and presentment," because the "Joint Resolution[s] passed both houses of Congress and w[ere] signed by the President into law." *Id.* at 562. The Resolutions thus have the force and effect of law, like

---

[2] The CRA process is not the only exception to normal filibuster rules. *See, e.g.*, 2 U.S.C. § 641(e)(2) ("Debate in the Senate on any reconciliation bill . . . shall be limited to not more than 20 hours."); 159 Cong. Rec. S8419-S8420 (Nov. 21, 2013) (allowing cloture to be invoked by majority vote for votes on nominations for Executive Branch positions and lower federal courts); 163 Cong. Rec. S2450-S2451 (Apr. 7, 2017) (extending that precedent to Supreme Court nominations).

1   any other statute. No violation of the CRA could render those statutes "void"—only violations of

2   the legislative procedures set forth in the Constitution. Compl. ¶¶ 120, 133.

3          Put another way, even if Plaintiffs were correct that there is some conflict between the joint

4   resolutions (enacted later in time), and the CRA or the Clean Air Act or the APA (enacted earlier

5   in time), the latest-in-time statute controls. After all, "statutes enacted by one Congress cannot

6   bind a later Congress, which remains free to repeal the earlier statute, to exempt the current statute

7   from the earlier statute, to modify the earlier statute, or to apply the earlier statute but as modified."

8   *Dorsey v. United States*, 567 U.S. 260, 274 (2012). And Congress need not use any "magical

9   passwords" to do so. *Id.* Plaintiffs' statutory and ultra vires claims thus fail for that additional

10  reason, as the only basis to strike down a federal statute is a conflict with the Constitution—not

11  with an older federal statute, much less an internal rule of congressional procedure.

12  **IV.    The statutory and ultra vires claims fail for several other threshold reasons.**

13         **A.    The APA claim fails because Plaintiffs identify no final agency action.**

14         Plaintiffs cannot maintain Count II because APA claims are limited to "final agency

15  action," and Plaintiffs have not identified a "final" EPA agency action. Agency action is "final"

16  only if it (1) "consummat[es] . . . the agency's decisionmaking process," and (2) determines legal

17  "rights or obligations." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (cleaned up). The

18  touchstone of the second prong is whether the action has "direct and appreciable legal

19  consequences." *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 598 (2016).

20         Plaintiffs identify two "actions" they allege are subject to review under the APA, but

21  neither determines any rights or obligations, nor do legal consequences flow from either "action."

22  First, Plaintiffs allege that EPA "reclassified" the waivers from orders to rules. *See* Compl. ¶¶ 126,

23  133. More specifically, the Complaint asserts that the Administrator "referred to the waiver

24  decisions as 'rules' in a press release." *Id.* ¶ 127. Second, Plaintiffs claim that EPA's submission

25  of the waivers in a report to Congress qualifies as final agency action. *See* Compl. ¶¶ 126, 133.

26         EPA's alleged "reclassification" and submission of a report to Congress are not "final"

27  agency actions under *Bennett* and *Dalton*. In *Dalton*, a statute required the Secretary of Defense to

28  submit recommendations for the closure of military bases to a commission, which would submit a

report to the President. 511 U.S. at 465. The President then had two weeks to approve or disapprove the commission's recommendations. *Id*. The plaintiffs sought APA review of these recommendations, but the Court held that they were not final agency actions. *Id*. at 468. While the recommendations were necessary steps in the process, the *final* action was taken by the President: "Without the President's approval, no bases are closed under the Act . . . ." *Id*. at 470. The Court acknowledged that the President's authority was constrained by the earlier action in that he could not "pick and choose among bases" to close, but this limitation was "immaterial." *Id*. "What is crucial is the fact that the President, not the Commission, takes the final action that affects the military installations." *Id*. (alterations and quotation marks omitted).

So too here. Congress and the President, not EPA, "take[] the final action" of enacting the joint resolutions. *Id.* The joint resolutions have legal consequences; EPA's alleged reclassification and submission of the waivers to Congress did not. They "carrie[d] no direct consequences" for Plaintiffs. *Franklin v. Massachusetts*, 505 U.S. 788, 798 (1992) (necessary step by agency not final action when only subsequent presidential action has direct legal consequences). Even if the "reclassification" and submission could be deemed necessary predicates to the disapproval resolutions—and they were not, *see supra* Part II—they would still not qualify as reviewable final agency actions. The commission in *Dalton* played a critical role in identifying what bases to close but because its recommendations did not, without more, close a single base, they were not final agency actions. *See* 511 U.S. at 470. The same reasoning controls here, as EPA's "reclassification" and submission, without more, have no legal consequences for the waivers at issue in this case. That is why Plaintiffs did not (and could not) file suit until the President signed into law the joint resolutions disapproving the waivers, *see* Compl. ¶ 5 (resolutions signed June 12, 2025, the same day Plaintiffs filed the Complaint).

**B.    Plaintiffs' claims against EPA are an improper attempt to evade the Clean Air Act's comprehensive review scheme.**

Even if Plaintiffs had identified final agency actions that were outside the jurisdiction-stripping provision of the CRA, this Court still could not review them. They would be reviewable only by the courts of appeals under § 307(b)(1) of the Clean Air Act, 42 U.S.C. § 7607(b)(1),

1   which confers exclusive "jurisdiction upon the courts of appeals" for final actions taken by EPA

2   under the Clean Air Act. *Dalton Trucking, Inc. v. EPA*, 808 F.3d 875, 879 (D.C. Cir. 2015).

3       Section 307(b)'s scope has been interpreted "broadly" to cover not only challenges to

4   EPA's final actions but also challenges that have the "practical effect" of upsetting EPA's final

5   action or that are "closely related to" such final action. *Cal. Dump Truck Owners Ass'n v. Nichols*,

6   924 F. Supp. 2d 1126, 1139 (E.D. Cal. 2012), *aff'd* 784 F.3d 500 (9th Cir. 2015). And when

7   Congress has chosen to give the circuit courts exclusive jurisdiction over agency decisions, "the

8   district courts are without jurisdiction over the legal issues pertaining to those decisions—whether

9   or not those issues arise from the statute that authorized the agency action in the first place."

10  *Palumbo v. Waste Techs. Indus.*, 989 F.2d 156, 161 (4th Cir. 1993).

11      Here, Plaintiffs seek review of alleged final actions EPA took in connection with the

12  Section 209(b) waivers issued to California. These waivers are, without question, actions taken

13  under chapter 85 of title 42 of the United States Code. *See* 42 U.S.C. §§ 7607(b)(1), 7543(b). And

14  the alleged final EPA actions challenged here—EPA's description of these waivers as rules in a

15  press release and its submission of the waivers to Congress—are (even under Plaintiffs' theory)

16  "closely related to" the waivers. *Nichols*, 924 F. Supp. 2d at 1139. Therefore, to the extent this

17  Court may exercise jurisdiction notwithstanding § 805, the States' claims against EPA belong in

18  the courts of appeals: Section "307(b)(1) 'channels review of final EPA action exclusively to the

19  courts of appeals, *regardless of how the grounds for review are framed*.'" *Nichols*, 784 F.3d at 506

20  (quoting *Virginia v. United States*, 74 F.3d 517, 523 (4th Cir. 1996)) (emphasis in original). So

21  any challenges—including constitutional ones—to EPA's alleged final actions would have to  go

22  to the courts of appeals. *See Sierra Club v. Wheeler*, No. 15-cv-1165-HSG, 2018 WL 6182748, at

23  *4 (N.D. Cal. Nov. 27, 2018) (Gilliam, J.) (dismissing motion to enforce summary judgment order

24  for lack of jurisdiction because the 'practical objective' of [p]laintiffs' motion is to 'nullify final

25  actions of the EPA'" (quoting *Nichols*, 784 F.3d at 506)). Indeed, the States have already filed

26  what they describe as "protective" petitions for review, in both the Ninth and D.C. Circuits.

27  *California v. EPA*, No. 25-5071 (9th Cir.); *California v. EPA*, No. 25-1174 (D.C. Cir.).

28      Therefore, if the Court concludes that the jurisdiction-stripping provision of the CRA does

not apply, and the Court finds the alleged actions to be final agency actions, all claims against EPA must be dismissed in full for lack of jurisdiction.

### C.    The ultra vires claims fail as a matter of law.

Seeking to evade statutory limitations altogether, Plaintiffs throw the "Hail Mary pass" of an "ultra vires" claim. *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 681 (2025) (*NRC*). Such claims are "strictly limited." *Id.* They may be brought "only when an agency has taken action entirely in excess of its delegated powers and contrary to a *specific prohibition* in a statute." *Id.* (quotation marks omitted). "Ultra vires review is also unavailable if . . . a statutory review scheme forecloses all other forms of judicial review." *Id.*

Plaintiffs assert ultra vires or "nonstatutory" claims in Counts I and VII. Count I asserts that EPA could not "reclassify" the waivers from orders to rules, nor could the agency submit the waivers to Congress under the CRA. Compl. ¶¶ 115–20. Count VII claims that, because EPA violated the CRA, it must consider the waivers as in effect. *Id.* ¶¶ 181–86. These claims simply "dress up a typical statutory-authority argument as an ultra vires claim." *NRC*, 605 U.S. at 682. While the Complaint asserts that EPA lacked authority under the Clean Air Act or CRA to take these alleged actions, they fail to identify any "specific prohibition" affirmatively forbidding them. *See NRC*, 605 U.S. at 681. Even more problematically for Plaintiffs, the CRA explicitly forecloses judicial review (*supra* Part I), and the Clean Air Act funnels review to the courts of appeals (*supra* Part IV.C). Plaintiffs cannot use a nonstatutory ultra vires claim to circumvent those statutes' judicial review schemes. *See NRC*, 605 U.S. at 681; *see also Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015) ("The power of federal courts of equity to enjoin unlawful executive action is subject to express and implied statutory limitations.").

### V.    Plaintiffs' constitutional claims fail.

Even if this Court had jurisdiction to hear Plaintiffs' grab bag of constitutional claims, they would still fail as a matter of law. First, Plaintiffs lack a cause of action under the Take Care Clause. Second, the Complaint's separation-of-powers claim fails because (a) Congress did not delegate its authority to prescribe internal rules to EPA and (b) the joint resolutions amended the applicable law, rather than directing how old law should be applied to particular facts, and so do

not encroach on the judiciary's power. Third, Plaintiffs do not allege an interest protected by the Tenth Amendment or a defect in the political process that would give rise to such a claim. Therefore, if the Court concludes that it has jurisdiction with respect to these claims, they must nevertheless be dismissed under Rule 12(b)(6), for failure to state a claim.

### A.    The Take Care Clause is not judicially enforceable.

Count IV fails because the Take Care Clause does not provide a cause of action and is not judicially enforceable in any court. "Constitutional rights do not typically come with a built-in cause of action to allow for private enforcement in courts." *DeVillier v. Texas*, 601 U.S. 285, 291 (2024). Rather, "constitutional rights are generally invoked defensively in cases arising under other sources of law, or asserted offensively pursuant to an independent cause of action designed for that purpose." *Id.* The Take Care Clause is an especially poor fit for a private right of action. The Supreme Court has held that "the duty of the President in the exercise of the power to see that the laws are faithfully executed" is not judicially enforceable, adding that any attempt by the judiciary to oversee the President's Take Care authority "might be justly characterized, in the language of Chief Justice Marshal, as 'an absurd and excessive extravagance.'" *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 499 (1866). Of course, "[r]eview of the legality of Presidential action can ordinarily be obtained in a suit seeking to enjoin the officers who attempt to enforce the President's directive." *Franklin*, 505 U.S. at 828 (Scalia, J., concurring in the judgment). But the Take Care Clause, which speaks to the President alone, provides no means for courts to review the actions of subordinate Executive officials like the EPA Administrator. A subordinate Executive officer cannot violate the President's duty to faithfully execute the laws, and a court cannot direct the actions of subordinate officers on the basis of the Take Care Clause without exercising authority that the Clause commits to the President himself rather than to courts.

Of course, even if this claim were subject to any form of judicial review, the President's Article II duty is to faithfully execute *all* of the laws—not just the ones that the Plaintiff States agree with. That includes the joint resolutions of disapproval at issue here, which definitively resolve the question of the ongoing validity of EPA's previous waivers.

1

**B.    Plaintiffs' nondelegation and judicial power theories fail.**

2      Plaintiffs assert two theories in Count V that the resolutions violate separation-of-powers

3   principles. First, they allege that Congress unlawfully delegated its authority to EPA "to determine

4   the Rules of its Proceedings" by allowing EPA exclusively to decide whether the preemption

5   waivers are rules under the CRA. Compl. ¶ 158. Second, they assert that the resolutions usurp

6   judicial power by directing the specific application of old law to particular circumstances. *Id.*

7   ¶ 164. Both arguments fail.

8      **1.** Plaintiffs' nondelegation theory turns the doctrine on its head. Congress's enactment of

9   the joint resolutions is the opposite of delegation. Congress voted. Congress decided. The decision

10   to use CRA procedures to enact legislation disapproving EPA's preemption waivers was

11   Congress's alone.

12      That EPA first submitted the waivers to Congress does not change the result. Indeed,

13   Congress often rejects agency assessments of whether an agency action qualifies as a rule. *See,*

14   *e.g.*, *supra* at 4–5. More to the point, Congress made its own decision to subject its consideration

15   of these joint resolutions to the more streamlined CRA procedures—because Congress is always

16   free to pass legislation according to whatever procedural rules it chooses, as long as it stays within

17   the bounds set by Article I, Section 7 of the Constitution. *See supra* Parts II, III.

18      Purporting to read the minds of Senators and Representatives, Plaintiffs assert that

19   Congress "relied exclusively on the submission of a report from EPA characterizing the waiver

20   decisions as rules as a sufficient trigger for application of the CRA" and that the "Senate did so

21   explicitly in its second point of order" prior to passage of the resolutions. Compl. ¶ 157. But

22   litigation over the meaning of the Senate's "second point of order," as with the Senate's other

23   procedures, is foreclosed. *Supra* Part II. Regardless, the text of the second point of order did no

24   such thing, *see* 171 Cong. Rec. S3025, S3051 (May 21, 2025), Compl. Ex. C. Rather, the second

25   point of order states that "joint resolutions that meet all the requirements of section 802 of the

26   Congressional Review Act . . . are entitled to expedited procedures under the Congressional

27   Review Act." *Id.* And if, as Plaintiffs suggest, the subjective views of individual Senators are at

28   issue, then the record shows Senate leadership agreeing the waivers are "rules" within the meaning

of the CRA. For example, Senator Thune, Majority Leader of the Senate, stated that the waivers "are clearly rules in substance given their nationwide impact and scope." 171 Cong. Rec. S3025, S3047. Finally, even if Plaintiffs' interpretation of the legislative history were sound, no constitutional principle or precedent bars Senators from relying on EPA's submissions when they made decisions about voting on joint resolutions. *Cf. Watkins v. United States*, 354 U.S. 178, 187 (1957) (Congress may conduct inquiries "concerning the administration of existing laws as well as proposed or possibly needed statutes").

**2.** Plaintiffs' theory of judicial usurpation similarly fails. Plaintiffs contend that Congress usurped judicial power because (1) EPA's preemption waivers "were the subject of pending litigation" when Congress enacted the joint resolutions, and (2) the resolutions "create[d] no new substantive law," but "instead direct[ed] the court how pre-existing law applies to particular circumstances." Compl. ¶¶ 164–65. This theory fails because the joint resolutions did not direct any court to take any action, and they also amended the law.

"Congress does not violate Article III when it changes the law," even if that change has a direct effect on pending litigation. *Patchak v. Zinke*, 583 U.S. 244, 250 (2018) (cleaned up) (plurality opinion). Courts must afford "a high degree of judicial tolerance for an act of Congress that is intended to affect litigation so long as it changes the underlying substantive law in any detectable way." *Cook Inlet Treaty Tribes v. Shalala*, 166 F.3d 986, 991 (9th Cir. 1999) (quotation marks omitted). In *Bank Markazi v. Peterson*, for example, the Supreme Court upheld a statute that identified a "District Court's docket number," "designate[d] a particular set of assets," and "render[ed] them available to satisfy the liability and damages judgments" in the specific case. 578 U.S. 212, 215 (2016). The Court rejected the "flawed" argument that "legislation must be generally applicable," and that "there is something wrong with particularized legislative action." *Id.* at 233. And it cited multiple cases upholding particularized statutes, including a "law that abrogated [a] specific settlement agreement between [the] U.S. Forest Service and environmental groups." *Id.* at 234; *see also Patchak*, 583 U.S. at 251 (plurality opinion) (statute stripping federal courts of jurisdiction to hear suits related to specific piece of property "is well within Congress' authority"); *UFO Chuting of Haw., Inc. v. Young*, 380 F. Supp. 2d 1166, 1169 (D. Haw. 2005) (statute "alters

the substantive law by changing the preemptive effect" of the previously governing statute).

Here, the resolutions do not simply direct a court to hold in a specific case that "Smith wins." *Bank Markazi*, 578 U.S. at 231. The resolutions instead change the law by depriving EPA's preemption waivers of "any force or effect." Indeed, the Ninth Circuit has squarely held, in rejecting a separation-of-powers claim, that a CRA joint resolution "amend[s] the substantive law." *Bernhardt*, 946 F.3d at 562. As *Bernhardt* explains, because joint resolutions under the CRA comply with "bicameralism and presentment," a "Joint Resolution is enforceable as a change to substantive law." *Id.* The same reasoning applies here. By disapproving the three waivers, the joint resolutions amended the substantive law. Before the resolutions, the Clean Air Act did not preempt these vehicle emissions standards because they had received waivers from EPA. After the resolutions, it does. This change to the substantive law is well within Congress's constitutional prerogative. And especially now that significant agency rules are virtually always subject to *some* sort of litigation, Plaintiffs' novel understanding would disempower Congress to act on large swaths of federal policy issues. That can't be right.

The analysis does not change even if Plaintiffs' challenge is interpreted to imply that Congress invaded the Executive's "adjudicatory power." *See* Compl. ¶ 165 ("EPA exercised 'the type of nonpolicymaking adjudicatory power[] typically exercised by a court in the agency-review context' by pronouncing that particular laws are not preempted by the Clean Air Act"). Administrative agencies "are creatures of statute" and "accordingly possess only the authority that Congress has provided." *Nat'l Fed'n of Indep. Bus. v. DOL*, 595 U.S. 109, 117 (2022). Here, Congress has vindicated, not transgressed, separation-of-powers principles, by enacting new federal law on an important issue of public policy—exactly what Congress is supposed to be doing.

### C.    Plaintiffs fail to identify any interest protected by the Tenth Amendment.

Plaintiffs assert that by employing the CRA, "the Federal Government" evaded "procedural mechanisms—such as rigorous debate and state official testimony—that serve to inform members of Congress about the consequences of their actions." Compl. ¶ 173. And so, according to Plaintiffs, "extraordinary defects in the national political process" render the resolutions "invalid under the Tenth Amendment." *Id.* ¶ 176. Not so.

The Tenth Amendment confirms the allocation of power between the Federal and state governments and prevents Congress from trenching on "the province of state sovereignty." *New York v. United States*, 505 U.S. 144, 155 (1992). But Plaintiffs do not allege that vehicle air emissions regulation is exclusively "the province of state sovereignty." *Id.* They also do not challenge Congress's power under the Commerce Clause and the Supremacy Clause to preempt California's emissions regulations. Nor could they. *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 252 (2004) (affirming preemption of California regulations).

Plaintiffs instead rely on dicta from *South Carolina v. Baker*, 485 U.S. 505, 512–13 (1988). There, the Court reflected on the "possibility that some extraordinary defects in the national political process might render congressional regulation of state activities invalid under the Tenth Amendment," but concluded that it could not "identify or define the defects that might lead to such invalidation." *Id.* Here, while the Complaint asserts that use of the CRA precluded the use of procedural devices "that serve to inform members of Congress of the consequences of their actions," Compl. ¶ 173, *Baker* rejected claims that the political process failed because Congress acted with insufficient information, 485 U.S. at 512. Nor have Plaintiffs alleged that they were deprived of any judicially enforceable rights to participate in the national political process or that they were singled out in a way that left them politically isolated and powerless. *See id.* at 513. Rather, they claim that Congress did not follow congressional rules, *see* Compl. ¶¶ 173, 175, which are not subject to judicial review or constitutionally required, *see supra* Part II. And Plaintiffs cannot seriously contend that they could not participate in the national political process; after all, California alone has (by far) more representatives in Congress than any other state. *See* U.S. Census Bureau, Apportionment Population and Number of Representatives by State: 2020 Census, *available at* https://www2.census.gov/programs-surveys/decennial/2020/data/apportionment /apportionment-2020-table01.pdf. Therefore, Count VI fails.

## CONCLUSION

For these reasons, Plaintiffs' Complaint should be dismissed in full.

Dated: September 19, 2025          Respectfully submitted,

ADAM R.F. GUSTAFSON
*Acting Assistant Attorney General*
ROBERT N. STANDER (DC Bar #1028454)
*Deputy Assistant Attorney General*
JEFFREY HUGHES (NY Bar #5367214)
United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044
Tel:     (202) 717-7067 (Stander)
          (202) 532-3080 (Hughes)
Email: robert.stander@usdoj.gov
          jeffrey.hughes@usdoj.gov


YAAKOV M. ROTH
*Principal Deputy Assistant Attorney General*
Civil Division

JOSEPH E. BORSON
*Assistant Branch Director*
Federal Programs Branch

/s/ Stephen M. Pezzi
STEPHEN M. PEZZI (FL Bar #1041279)
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel:     (202) 305-8576
Email: stephen.pezzi@usdoj.gov

*Attorneys for Defendants*