Matthew B. Berry, VA Bar No. 42600
  *General Counsel*
Todd B. Tatelman, VA Bar No. 66008
  *Deputy General Counsel*
Kenneth C. Daines, D.C. Bar No. 1600753
  *Assistant General Counsel*
OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515
(202) 225-9700
matthew.berry@mail.house.gov

*Counsel for Amicus Curiae, U.S. House of Representatives*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| STATE OF CALIFORNIA, et al., | Case No. 4:25-cv-04966-HSG |
| *Plaintiffs*, | |
| v. | **BRIEF OF U.S. HOUSE OF REPRESENTATIVES AS *AMICUS CURIAE* IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |
| UNITED STATES, et al., | |
| *Defendants*. | Date: November 20, 2025 |
| | Time: 2:00 p.m. |
| | Judge: Hon. Haywood S. Gilliam, Jr. |

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION AND INTEREST OF *AMICUS CURIAE* ....................................... 1

ARGUMENT ...................................................................................................................... 2

    I.     The Congressional Review Act precludes review of Plaintiffs' claims ................. 2

          A.     Section 805 bars Plaintiffs' statutory claims that either the Executive Branch or Congress violated the Congressional Review Act ............................................................................................................. 2

          B.     Section 805 also precludes review of Plaintiffs' nominally "constitutional" claims ............................................................................. 5

    II.    Plaintiffs' claims are independently barred because Congress's decision to use CRA procedures is a nonjusticiable exercise of its Rulemaking Clause power .................................................................................................................. 10

CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*Baker v. Carr,*
  369 U.S. 186 (1962) ........................................................................................................... 10

*Barker v. Conroy,*
  921 F.3d 1118 (D.C. Cir. 2019) ......................................................................................... 11

*Christoffel v. United States,*
  338 U.S. 84 (1949) ............................................................................................................. 11

*Citizens for Const. Integrity v. United States,*
  57 F.4th 750 (10th Cir. 2023) ...................................................................................... 10, 14

*Clinton v. City of New York,*
  524 U.S. 417 (1998) ......................................................................................................... 8, 9

*Common Cause v. Biden,*
  909 F. Supp. 2d 9 (D.D.C. 2012) .................................................................................. 14, 15

*Consejo de Desarrollo Economico de Mexicali, A.C. v. United States,*
  482 F.3d 1157 (9th Cir. 2007) ....................................................................................... 11, 12

*Ctr. for Biological Diversity v. Bernhardt,*
  946 F.3d 553 (9th Cir. 2019) ...................................................... 1, 4, 5, 6, 9, 13, 14

*Ctr. for Biological Diversity v. Trump,*
  453 F. Supp. 3d 11 (D.D.C. 2020) ................................................................................... 6, 8

*Dalton v. Specter,*
  511 U.S. 462 (1994) ...................................................................................................... 1, 6, 8

*District of Columbia v. Heller,*
  554 U.S. 570 (2008) ........................................................................................................... 15

*Harrington v. Bush,*
  553 F.2d 190 (D.C. Cir. 1977) ........................................................................................... 11

*In re Operation of the Mo. River Sys. Litig.,*
  363 F. Supp. 2d 1145 (D. Minn. 2004), *aff'd in part,*
  421 F.3d 618 (8th Cir. 2005) ............................................................................................... 5

*Kan. Nat. Res. Coal. v. Dep't of Interior,*
  971 F.3d 1222 (10th Cir. 2020), *cert. denied,*
  141 S. Ct. 2723 (2021) .......................................................................................... 4, 5, 9, 12

*Liesegang v. Sec'y of Veterans Affs.,*
  312 F.3d 1368 (Fed. Cir. 2002) ........................................................................................... 5

*Massie v. Pelosi,*
  590 F. Supp. 3d 196 (D.D.C. 2022) ................................................................................... 15

*Metzenbaum v. FERC*,
  675 F.2d 1282 (D.C. Cir. 1982) ................................................................ 10, 12, 13

*Mistretta v. United States*,
  488 U.S. 361 (1989) ........................................................................................... 7

*Montanans for Multiple Use v. Barbouletos*,
  568 F.3d 225 (D.C. Cir. 2009), *cert. denied*,
  560 U.S. 926 (2010) ........................................................................................... 5

*Murphy Co. v. Biden*,
  65 F.4th 1122 (9th Cir. 2023) ............................................................................. 9

*Newton v. Mahoning Cnty. Comm'rs*,
  100 U.S. 548 (1879) ......................................................................................... 12

*Nixon v. United States*,
  506 U.S. 224 (1993) ......................................................................................... 10

*NLRB v. Noel Canning*,
  573 U.S. 513 (2014) ................................................................................... 14, 15

*NRDC v. Abraham*,
  355 F.3d 179 (2d Cir. 2004) ............................................................................... 5

*O'Connor v. Donaldson*,
  422 U.S. 563 (1975) ........................................................................................... 8

*Rangel v. Boehner*,
  20 F. Supp. 3d 148 (D.D.C. 2013), *aff'd*,
  785 F.3d 19 (D.C. Cir. 2015) ..................................................................... 11, 15

*Sierra Club v. Trump*,
  963 F.3d 874 (9th Cir. 2020), *vacated sub nom.*,
  *Biden v. Sierra Club*, 142 S. Ct. 46 (2021) ..................................................... 8

*Tex. Sav. & Cmty. Bankers Ass'n v. Fed. Hous. Fin. Bd.*,
  No. A97-CA-421, 1998 WL 842181 (W.D. Tex. June 25, 1998), *aff'd*,
  201 F.3d 551 (5th Cir. 2000) ............................................................................. 5

*Tugaw Ranches, LLC v. Dep't of the Interior*,
  362 F. Supp. 3d 879 (D. Idaho 2019) ................................................................ 5

*United States v. Ameren Mo.*,
  No. 11-cv-77, 2012 WL 2821928 (E.D. Mo. July 10, 2012) ............................ 5

*United States v. Ballin*,
  144 U.S. 1 (1892) .................................................................. 1, 10, 11, 15

*United States v. Carlson*,
  No. 12-cr-305, 2013 WL 5125434 (D. Minn. Sept. 12, 2013) .......................... 5

*Walker v. Jones*,
  733 F.2d 923 (D.C. Cir. 1984) ......................................................................... 11

iii

*Webster v. Doe*,
   486 U.S. 592 (1988) ........................................................................................ 6

**Constitution**

U.S. Const. art. I, § 5, cl. 2 ....................................................................... 1, 10

U.S. Const. art. II, § 3 .................................................................................. 8

**Statutes**

5 U.S.C. § 701(a)(1) ..................................................................................... 4

5 U.S.C. §§ 801-808 ..................................................................................... 2

5 U.S.C. § 801

   § 801(a) ............................................................................................... 3, 7

   § 801(b)(2) .............................................................................................. 3

5 U.S.C. § 802 ........................................................................................... 3, 7

   §§ 802(c)-(f) ............................................................................................ 2

   § 802(g) ................................................................................................... 1

   § 802(g)(1) ............................................................................................. 11

   § 802(g)(2) ............................................................................................... 7

   §§ 802(g)(1)-(2) .................................................................................. 11, 13

5 U.S.C. § 805 ............................................................................... 1, 2, 3, 5, 9

5 U.S.C. § 806(b) ........................................................................................ 9

15 U.S.C. § 719f

   § 719f(d)(1)(A)-(B) ................................................................................ 13

   § 719f(d)(5)(B) ....................................................................................... 12

42 U.S.C. § 7507 ......................................................................................... 2

42 U.S.C. § 7543 ......................................................................................... 2

   § 7543(b) ................................................................................................. 1

Cal. Code Regs tit. 13

   § 1956.8 ................................................................................................... 2

   § 1961.4 ................................................................................................... 2

§ 1962.4 .................................................................................................................. 2

§ 1963.1 .................................................................................................................. 2

§ 2016 ..................................................................................................................... 2

**Legislative Authorities**

142 Cong. Rec. S3686 (daily ed. Apr. 18, 1996) ................................................. 12

171 Cong. Rec. S2984 (daily ed. May 20, 2025) .................................................. 3

**Other Authorities**

John C. Roberts, *Are Congressional Committees Constitutional?: Radical
    Textualism, Separation of Powers, and the Enactment Process*, 52 Case. W.
    Rsrv. L. Rev. 489 (2001) ................................................................................. 15

Press Release, EPA, Trump EPA to Transmit California Waivers to Congress in
    Accordance with Statutory Reporting Requirements (Feb. 14, 2025),
    https://perma.cc/8NL8-N3SU ........................................................................... 3

Press Release, H. Comm. on Energy & Com., Chairman Guthrie, Vice Chairman
    Joyce, and Energy and Commerce Republicans Introduce Legislation to Stop
    California EV Mandates (Apr. 3, 2025), https://perma.cc/3RQV-ZEAF ................ 3

1

### INTRODUCTION AND INTEREST OF *AMICUS CURIAE*

2       The United States House of Representatives submits this *amicus* brief in support of

3   Defendants' motion to dismiss.  ECF 118.  The House has a compelling institutional interest in

4   protecting its core constitutional authority to determine its own rules under the Rulemaking

5   Clause, U.S. Const. art. I, § 5, cl. 2, including when it chooses to exercise that power by means of

6   the Congressional Review Act (CRA), *see* 5 U.S.C. § 802(g), as it did in this case.  Because the

7   relief sought by Plaintiffs here directly intrudes upon Congress's fundamental rulemaking

8   authority, the House's participation as an *amicus* is necessary to vindicate its interests.

9       In enacting the CRA, Congress expressly barred judicial review of determinations or

10  actions taken under the statute.  5 U.S.C. § 805.  The Ninth Circuit has spoken clearly on what

11  this means: Courts "are deprived of jurisdiction to review *any claim* challenging a 'determination,

12  finding, action, or omission' under the CRA."  *Ctr. for Biological Diversity v. Bernhardt*, 946

13  F.3d 553, 563 (9th Cir. 2019) (emphasis added) (citing 5 U.S.C. § 805).  Although Plaintiffs here

14  strongly oppose Congress's recent invocation of the CRA to nullify Clean Air Act (CAA) waivers

15  of preemption granted to California by the Environmental Protection Agency (EPA), 42 U.S.C.

16  § 7543(b), this disagreement is not justiciable.  Because Congress used the CRA to enact

17  legislation eliminating those waivers, all statutory claims challenging the validity of that action

18  (as well as the EPA's initial invocation of the CRA to submit the waivers to the House and Senate

19  for review) are categorically barred from judicial review.  And while Plaintiffs separately purport

20  to bring constitutional challenges to this action, those are also barred because they hinge entirely

21  on alleged violations of the CRA.  *See Dalton v. Specter*, 511 U.S. 462, 473-74 (1994).

22      Additionally, even if Congress had never included a jurisdiction-stripping provision like 5

23  U.S.C. § 805 in the CRA, Plaintiffs' claims would still be nonjusticiable because they challenge a

24  procedural choice made by Congress under the Rulemaking Clause, which is (with a few narrow

25  exceptions) "*absolute* and beyond the challenge of any other body or tribunal."  *United States v.

26  Ballin*, 144 U.S. 1, 5 (1892) (emphasis added).  A judicial order overriding such a decision made

27  pursuant to Congress's rulemaking authority would flout the separation of powers.  Accordingly,

28

1    whether by means of Section 805 or the Rulemaking Clause, this Court lacks jurisdiction to hear

2    Plaintiffs' claims, and they must be dismissed.

3                                            **ARGUMENT**

4    **I.    The Congressional Review Act precludes review of Plaintiffs' claims**

5            **A.    Section 805 bars Plaintiffs' statutory claims that either the Executive Branch
               or Congress violated the Congressional Review Act**

6

7            Section 805 of the CRA provides that "[n]o determination, finding, action, or omission

8    under this chapter shall be subject to judicial review." 5 U.S.C. § 805. This provision

9    unambiguously bars judicial review of statutory claims challenging *any* action or decision that is

10   made pursuant to the Act—full stop—including Congress's use of the CRA's expedited

11   procedures to disapprove the three CAA waivers at issue in this case.

12           The facts here make this conclusion inescapable. Under Section 209 of the CAA, a state

13   may not adopt or attempt to enforce any vehicle emissions standard unless the EPA grants a

14   waiver of federal preemption. 42 U.S.C. § 7543. And at every step of the process of submitting

15   and disapproving the waivers at issue here, government actors either invoked the CRA or utilized

16   its expedited procedures (e.g., limiting debate and bypassing a potential Senate filibuster, 5

17   U.S.C. §§ 802(c)-(f)). Specifically, after California requested EPA approval of CAA waivers of

18   preemption for the three state regulatory programs mandating reduced vehicle emissions,[1] the

19   EPA granted California's requests,[2] and subsequently submitted those waivers to Congress for

20   review under the CRA.[3] Then, after reviewing each of the EPA's three waivers utilizing the

21

22           [1] California's programs required (1) light-duty vehicle manufacturers to sell an increasing
     percentage of electric vehicles in California each year (e.g., 35% for 2026, 43% for 2027), with a
23   complete electric transition by 2035; (2) a similar transition for medium- and heavy-duty vehicle
     manufacturers ending in 2036; and (3) significant reductions in nitrogen oxide and particulate
24   matter emissions for new medium- and heavy-duty vehicles. Cal. Code Regs. tit. 13 §§ 1956.8,
     1961.4, 1962.4, 1963.1, 2016.

25           [2] Once California receives such a waiver, the CAA allows any other state to adopt the same
     regulations that California promulgates without any additional factual showing, 42 U.S.C. § 7507,
26   effectively creating an alternative national standard.

27           [3] The CRA requires that agencies submit rules to Congress to allow for their review and
     potential disapproval before taking effect, 5 U.S.C. §§ 801-808.
28

procedures set forth in the CRA, majorities of the House and Senate passed joint resolutions of disapproval pursuant to the statute.  They were then delivered to the President who signed them into law, preempting California's alternative emissions standards and prohibiting the EPA from granting any substantially similar waivers in the future, *see* 5 U.S.C. § 801(b)(2).

Here, Plaintiffs' statutory claims, and indeed their entire complaint, hinge upon their assertion that the EPA and Congress unlawfully used CRA procedures to review and eliminate the CAA waivers because they are allegedly adjudicatory orders rather than "rules" under the statutory language.  *See* ECF 1 ¶¶ 117-18, 128, 138-41.  But the CRA's plain language bars review of these claims that Defendants' actions and determinations violate the CRA.  Specifically, the EPA's submission of CAA waivers to Congress, *see* 5 U.S.C. § 801(a), and Congress's consideration and adoption of joint resolutions of disapproval regarding those waivers, *see* 5 U.S.C. § 802, were plainly "action[s]" taken under the CRA, 5 U.S.C. § 805.  The CRA was the only authority Defendants invoked when submitting the waivers to Congress for review, and Congress accepted those submissions exclusively pursuant to the CRA.[4]

To the extent Plaintiffs argue that Section 805 does not preclude their claims because Defendants and Congress improperly applied the CRA to those waivers, and thus their actions were not really taken under the statute, that position has at least two problems.  First, the EPA's and Congress's conclusions that the waivers were subject to the CRA were "determination[s]" under the Act, 5 U.S.C. § 805, because both entities decided that the CRA's language applied to the waivers.[5]  The CRA's categorical bar on judicial review therefore applies here.

---

[4] *See* Press Release, H. Comm. on Energy & Com., Chairman Guthrie, Vice Chairman Joyce, and Energy and Commerce Republicans Introduce Legislation to Stop California EV Mandates (Apr. 3, 2025) ("By submitting the three California waivers to Congress, Administrator Zeldin is ensuring that Congress has oversight of these major rules … . Energy and Commerce Republicans … will now work to ensure that the Congressional Review Act process finally puts these issues to rest."), https://perma.cc/3RQV-ZEAF.

[5] For instance, in February 2025, EPA Administrator Zeldin announced he would transmit the waivers to Congress as rules. Press Release, EPA, Trump EPA to Transmit California Waivers to Congress in Accordance with Statutory Reporting Requirements (Feb. 14, 2025), https://perma.cc/8NL8-N3SU.  And upon receiving resolutions of disapproval from the House, Senate Majority Leader John Thune stated that "[t]here can be no question that these waivers are rules in substance, given their widespread effects."  171 Cong. Rec. S2984 (daily ed. May 20, 2025).

1    Second, any such argument is foreclosed by Ninth Circuit precedent. In *Bernhardt*, the

2    plaintiffs claimed that an agency had not submitted a rule to Congress in accordance with the

3    procedures set forth in the CRA because the rule had taken effect nearly a month before the

4    agency's submission. 946 F.3d at 562. Thus, plaintiffs argued that Congress's joint resolution of

5    disapproval and the agency's subsequent rescission of the rule were invalid. *Id.* at 556, 562-63.

6    But notwithstanding plaintiffs' argument that the joint resolution was not enacted under the CRA,

7    for purposes of Section 805, because the rule in question was not eligible for disapproval pursuant

8    to the statute, *id.* at 563, the Ninth Circuit held it "lack[ed] jurisdiction to consider this claim," *id*.

9    So too here. Pursuant to *Bernhardt*, this Court does not have jurisdiction to consider any claim

10   that the joint resolutions enacted by Congress are not valid because the waivers in question were

11   improperly submitted to Congress by the EPA or not eligible for disapproval pursuant to the

12   CRA. Plaintiffs' arguments do not change the fact that in this case the relevant actions were

13   taken and determinations were made under the CRA for purposes of Section 805.

14    *Bernhardt* is also instructive for another reason. There, the Ninth Circuit did not treat the

15   plaintiffs' challenge to the propriety of the agency submission to Congress as a separate issue

16   from Congress's subsequent enactment of the joint resolution, since the disapproved rule could

17   not be reinstated while the legislation remained in force. *See id.* at 563. Similarly, reinstating the

18   CAA waivers here would require invalidating joint resolutions of disapproval passed by both

19   Houses of Congress and signed by the President. Therefore, because at the end of the day

20   Plaintiffs' statutory claims necessarily involve challenging Congress's duly enacted joint

21   resolutions of disapproval under the CRA, those claims must all be dismissed as unreviewable.[6]

22    Other circuit courts agree with the Ninth Circuit that Section 805 precludes the judiciary

23   from reviewing claims of noncompliance with the CRA and its terms.[7] While cases from a

---

24   [6] Plaintiffs' APA claim is also unreviewable because it hinges on an alleged violation of the

25   CRA and the APA itself says that it does not apply where other "statutes preclude judicial review," 5 U.S.C. § 701(a)(1).

26

27   [7] *See, e.g.*, *Kan. Nat. Res. Coal. v. Dep't of Interior*, 971 F.3d 1222, 1235-36 (10th Cir. 2020) ("[T]he CRA unambiguously prohibits judicial review of *any* omission by *any* of the

28   specified actors," including Congress. (emphasis added)), *cert. denied*, 141 S. Ct. 2723 (2021);

1    minority of circuits have been cited in support of a contrary position, those cases nowhere address

2    Section 805.  *See, e.g.*, *Bernhardt*, 946 F.3d at 563 n.7 (noting that the Federal Circuit, in

3    *Liesegang v. Sec'y of Veterans Affs.*, 312 F.3d 1368 (Fed. Cir. 2002), "had no occasion to

4    consider" whether "courts have jurisdiction to consider statutory challenges to the CRA").[8]

5        In any event, what controls here is the plain meaning of Section 805 and the Ninth

6    Circuit's decision in *Bernhardt*.  There, the Ninth Circuit affirmed that Section 805's text

7    "deprive[s the courts] of jurisdiction to review *any* claim challenging a 'determination, finding,

8    action, or omission' under the CRA." *Bernhardt*, 946 F.3d at 563 (emphasis added) (citing 5

9    U.S.C. § 805).  Accordingly, this Court "lack[s] authority to consider" Plaintiffs' claims that the

10   EPA or Congress violated the CRA and may not take any action that would nullify the three joint

11   resolutions of disapproval passed by Congress.  *See id.* at 564.

12       **B.    Section 805 also precludes review of Plaintiffs' nominally "constitutional"
             claims**

13

14       Attempting to circumvent Section 805, Plaintiffs also argue that this Court has jurisdiction

15   over their claims that "raise constitutional issues to which [Section 805] does not apply."  ECF 1

16   ¶ 30.  To be sure, statutory provisions barring judicial review generally do not apply to

17   _____

18   *Montanans for Multiple Use v. Barbouletos*, 568 F.3d 225, 229 (D.C. Cir. 2009) (Kavanaugh, J.)
     ("The language of § 805 is unequivocal and precludes review" of a claim that an agency failed to

19   report an action to Congress.), *cert. denied*, 560 U.S. 926 (2010); *In re Operation of the Mo.
     River Sys. Litig.*, 363 F. Supp. 2d 1145, 1173 (D. Minn. 2004) (An agency's "major rule"

20   determination is not reviewable), *aff'd in part*, 421 F.3d 618 (8th Cir. 2005).

21       The majority view among district courts is the same: Section 805 precludes judicial
     review of an agency's compliance with CRA terms.  *See, e.g.*, *United States v. Carlson*, No. 12-

22   cr-305, 2013 WL 5125434, at *14-15 (D. Minn. Sept. 12, 2013); *United States v. Ameren Mo.*,
     No. 11-cv-77, 2012 WL 2821928, at *4 (E.D. Mo. July 10, 2012); *Tex. Sav. & Cmty. Bankers

23   Ass'n v. Fed. Hous. Fin. Bd.*, No. A97-ca-421, 1998 WL 842181, at *7 & n.15 (W.D. Tex. June
     25, 1998), *aff'd*, 201 F.3d 551 (5th Cir. 2000).  And while a few district courts have determined

24   that agency noncompliance with the CRA can be reviewable, *see, e.g.*, *Tugaw Ranches, LLC v.
     Dep't of the Interior*, 362 F. Supp. 3d 879, 883 (D. Idaho 2019), this minority view pre-dates

25   *Bernhardt* and has been explicitly rejected by subsequent courts, *see Kan. Nat. Res. Coal.*, 971

26   F.3d at 1235-36.

27       [8] Likewise, the Second Circuit, in *NRDC v. Abraham*, 355 F.3d 179 (2d Cir. 2004), did not
     address Section 805 in the context of analyzing when an agency rule took effect under the CRA.

28

1    constitutional claims unless Congress's "intent to do so [is] clear," *Webster v. Doe*, 486 U.S. 592,

2    603 (1988).  And the Ninth Circuit has held that because Section 805 "does not include any

3    explicit language barring judicial review of constitutional claims," "Congress did not intend to

4    bar such review."  *Bernhardt*, 946 F.3d at 561.  However, to fall outside the scope of Section 805,

5    claims must actually be constitutional in nature.  The Supreme Court has made clear that

6    prohibitions on judicial review cannot be avoided merely by framing statutory violations as

7    constitutional violations.  In *Dalton v. Specter*, for example, the plaintiffs there argued that the

8    President had run afoul of the separation of powers by failing to comply with the procedural

9    requirements set forth in the Defense Base Closure and Realignment Act of 1990.  511 U.S. at

10   471.  But the Court rejected this attempt to dress a non-reviewable statutory claim up as a

11   reviewable constitutional claim.  It stated, "[c]laims simply alleging that the President has

12   exceeded his statutory authority are not 'constitutional' claims, subject to judicial review" but are

13   instead treated as "statutory one[s]."  *Id.* at 473-74.  Here, because Plaintiffs' "constitutional"

14   claims are merely statutory claims "recast" in constitutional terms, they are similarly

15   unreviewable.  *See Ctr. for Biological Diversity v. Trump*, 453 F. Supp. 3d 11, 53 (D.D.C. 2020)

16   (dismissing as unreviewable constitutional claims that were not distinct from statutory claims).

17       Specifically, each of Plaintiffs' nominally constitutional claims ultimately hinges on

18   questions of statutory interpretation—namely, whether the Executive Branch and Congress

19   complied with the CRA—rather than on constitutional interpretation.  *First*, Plaintiffs claim that

20   Defendants violated the Take Care Clause by employing the CRA to rescind actions "not subject

21   to that statute," even though they allegedly knew the CRA did not permit doing so, *see* ECF 1

22   ¶ 146.  But this is simply "another way of saying that the President and officials violated [the]

23   statute[]," *Ctr. for Biological Diversity*, 453 F. Supp. 3d at 53, because the argument depends on

24   whether the actions were subject to the statute, *i.e.* whether the waivers qualify as rules under the

25   CRA.  This "constitutional" claim is thus unreviewable under Section 805.

26       *Second*, Plaintiffs claim that Congress violated separation of powers principles by

27   delegating its constitutional rulemaking authority to the Executive Branch, allegedly relying

28   exclusively on the Executive's "spurious" determinations that the CAA waivers were rules when

1    invoking the CRA.  ECF 1 ¶ 158.  This alleged "separation of powers" violation is also a statutory

2    claim masquerading as a constitutional one.[9]  Indeed, Plaintiffs' claim depends entirely on their

3    argument that the CAA waivers at issue here are not "rules" for purposes of the CRA, because if

4    Plaintiffs are wrong on that question of statutory interpretation, their separation-of-powers

5    concern would vanish.  Supposed reliance on the Executive's determination that the CAA waivers

6    were rules would not raise any legal concern if that determination was correct.[10]

7         *Third*, Plaintiffs claim that Defendants violated the Tenth Amendment by unlawfully

8    invoking the CRA to prevent the Plaintiffs from defending their own state laws in the political

9    process, *see* ECF 1 ¶¶ 172-75.  But this is yet another statutory claim dressed up in constitutional

10   garb.  Rather than alleging that any provision of the CRA itself violates the Tenth Amendment,

11   Plaintiffs assert that Defendants violated "the plain text of the CRA in order to extend that

12   statute's expedited procedures beyond the bounds to which all States agreed," *id.* ¶ 175, and then

13   speculate that such conduct was designed to "evade" engaging with the States, limit debate, and

14   avoid judicial review.  *See id.*  While the House emphatically disputes this characterization, these

15   allegations are all likewise unreviewable because they are entirely predicated on an alleged

16   violation of the CRA.  Congress's use of the CRA's expedited procedures and its accompanying

17   limits on debate would raise no Tenth Amendment concerns whatsoever for Plaintiffs in this case

18   if they agreed with the Executive and Congress that the CAA waivers here are "rules" under the

19   _____

20   [9] In any event, Plaintiffs' argument that Congress unlawfully "abdicat[ed]" its rulemaking authority to the Executive Branch by allegedly allowing it to be the "sole arbiter" of the CRA's

21   applicability, ECF 1 ¶¶ 158, 162-63, is belied by the facts.  During the entire review process, Congress retained full authority to decide whether the waivers were covered by the CRA and

22   whether to pass joint resolutions of disapproval, and it lawfully exercised that authority in accordance with the Rulemaking Clause.  Indeed, once the EPA fulfilled its obligations under

23   the CRA, 5 U.S.C. § 801(a), it had no role to play in Congress's subsequent passing of the resolutions of disapproval, *see* 5 U.S.C. § 802.  The CRA itself directly acknowledges Congress's

24   perennial power, 5 U.S.C. § 802(g)(2), which is not diluted or relinquished by approvingly citing an agency's interpretation as part of that process.  Had Congress disagreed with the agency's

25   determination, it could have declined to pass the joint resolutions of disapproval challenged here.

26   [10] Separately, "the separation-of-powers principle ... do[es] not prevent Congress from obtaining the assistance of its coordinate Branches," *Mistretta v. United States*, 488 U.S. 361, 372

27   (1989), meaning the Constitution does not bar Congress from citing or relying on the Executive Branch's analysis when making legal determinations.  And in any event, for the reasons set forth

28   *supra* at note 9, Plaintiffs fail to plausibly allege that the Executive Branch unconstitutionally usurped Congress's rulemaking authority here.

1    statute.  While Plaintiffs could have brought a facial challenge arguing that these features of the

2    CRA (or the CAA itself) violate the Tenth Amendment, they did not do so.[11]

3         Admittedly, the Ninth Circuit did apply a narrower reading of *Dalton* than some other

4    courts in *Sierra Club v. Trump*, 963 F.3d 874, 889 (9th Cir. 2020) (noting that "*Dalton* suggests

5    that some actions in excess of statutory authority may be constitutional violations").  However,

6    that decision was subsequently vacated, *Biden v. Sierra Club*, 142 S. Ct. 46 (2021), meaning it

7    has no binding precedential effect, *see O'Connor v. Donaldson*, 422 U.S. 563, 577 n.12 (1975).

8    And perhaps more importantly, *Sierra Club* is distinguishable from the present case.

9         There, the government argued that *Dalton* foreclosed review of the plaintiff's

10   "constitutional" claim because it depended entirely on the violation of a statute, the Defense

11   Appropriations Act.  The Ninth Circuit disagreed, reasoning that *Dalton* did not govern when

12   officials applied a statute in a manner that violated an *express* constitutional prohibition (in *Sierra*

13   *Club*, the provision stating that "[n]o Money shall be drawn from the Treasury, but in

14   Consequence of Appropriations made by Law").  *See Sierra Club*, 963 F.3d at 889-90 (noting

15   "the distinction between 'actions contrary to [a] constitutional prohibition,' and those 'merely

16   said to be in excess of [statutory] authority'" (quoting *Dalton*, 511 U.S. at 472)).  Such an express

17   prohibition is not present here—not the Take Care Clause, the Tenth Amendment, or any

18   separation of powers principle expressly prohibits delivering agency actions to Congress for

19   review or nullifying preemption waivers via legislation.  Instead, the Constitution authorizes the

20   President to "recommend to [Congress's] Consideration such Measures as he shall judge

21   necessary and expedient," U.S. Const. art. II, § 3, meaning the President "may initiate and

22   influence legislative proposals," provided he does not circumvent the Article I, section 7

23   requirements of bicameralism and presentment in the enactment of legislation, *Clinton v. City of*

24   *New York*, 524 U.S. 417, 438 (1998).  Because EPA's delivery of agency actions to Congress and

25   Congress's enactment of joint resolutions of disapproval accord with these constitutional

26

27   [11] *See, e.g.*, *Ctr. for Biological Diversity*, 453 F. Supp. 3d. at 53 (Where plaintiff did "not claim that the statutes themselves are unconstitutional," its constitutional claims were not distinguishable from its statutory claims because officials' actions could not violate the

28   Appropriations Clause or the separation of powers if the officials acted lawfully under the statutes.).

1  principles and do not violate an express constitutional prohibition, *Sierra Club*'s interpretation of

2  *Dalton* does not lead to a different outcome here.[12]  Plaintiffs' claims should be treated as

3  statutory rather than constitutional, meaning they must be dismissed under Section 805.

4        Turning back to the language of the CRA, the inclusion of a severability clause, *see* 5

5  U.S.C. § 806(b), suggests that certain challenges to the Act itself arising under the Constitution

6  are reviewable.  *See, e.g.*, *Kan. Nat. Res. Coal.*, 971 F.3d at 1237 ("[T]he severability clause

7  would apply if a plaintiff with standing claimed that *a portion of the CRA* violated the separation

8  of powers doctrine … because such a claim would not be covered by § 805." (emphasis added)).

9  But instead of arguing that any "portion" of the CRA violates the Constitution, *id.*, Plaintiffs

10  merely contend that Defendants misapplied the CRA in an unconstitutional manner because they

11  did not abide by the Act's terms.  Their argument runs headlong into Section 805 which denies

12  review for all "action[s]" and "determination[s] ... under this chapter," 5 U.S.C. § 805.

13        Indeed, Plaintiffs' claims are a far cry from cases where courts reviewed constitutional

14  claims involving the CRA.  *See, e.g.*, *Bernhardt*, 946 F.3d at 561.  For instance, although *Dalton*

15  was not raised in *Bernhardt*, the constitutional claims brought in that case did not rely upon a

16  CRA violation.  There, the plaintiffs challenged whether CRA resolutions "interfere with the

17  Executive Branch's dut[ies] under the Take Care Clause of the Constitution," *id.*, by requiring

18  that agencies revoke a rule without actually "amend[ing]" the applicable law, *id.* at 561-62.

19  Adjudicating that issue required determining whether the CRA itself violates the Take Care

20  Clause, and not whether the defendants had complied with the CRA's terms.  By contrast,

21  Plaintiffs' "constitutional" claims here hinge entirely on whether the CRA's statutory

22        [12] Neither does the Ninth Circuit's decision in *Murphy Company v. Biden*, 65 F.4th 1122
(9th Cir. 2023), indicate that Plaintiffs' separation-of-powers claim is reviewable.  In *Murphy
23  Company*, the Ninth Circuit held that the plaintiffs' claim that the President exceeded his statutory
authority by directing an Executive official to act in contravention of another statute "could be
24  considered constitutional" where the plaintiffs alleged that action violated the separation of
powers.  *Id.* at 1130.  But as the court made clear in that case, to qualify as constitutional (and
25  thus reviewable), the claim must plausibly allege that the government's action lacked both
"statutory authority" *and* "background constitutional authority," both of which the plaintiffs
26  alleged the President lacked in his action purportedly taken under the Antiquities Act.  *See id.*  By
contrast, here the Executive Branch plainly has "background constitutional authority" to submit
27  legislative proposals to Congress, *see Clinton*, 524 U.S. at 438, and Congress has "background
constitutional authority" under Article I to pass the legislation at issue here.

28

1  requirements were satisfied in a particular circumstance, meaning *Dalton* governs.

2      Other courts have taken a similar approach to the Ninth Circuit. For instance, the Tenth

3  Circuit in *Citizens for Constitutional Integrity v. United States* reviewed claims alleging that the

4  CRA was *facially* unconstitutional on separation-of-powers, equal-protection, and substantive-

5  due-process grounds, and thus that Congress's joint resolution of disapproval in that case was

6  unlawful. 57 F.4th 750, 756-59 (10th Cir. 2023) ("Plaintiffs assert that the CRA is facially

7  unconstitutional."); *id.* at 759 (Because "[p]laintiffs exclusively bring constitutional claims ... we

8  have statutory jurisdiction to hear" their CRA challenge.). By contrast, Plaintiffs here bring no

9  claim that the CRA is facially unconstitutional; instead, their concern is entirely with Defendants'

10  interpretation of, and alleged failure to follow, the CRA's mandates.

11      In sum, Plaintiffs' purported constitutional claims at their core are statutory claims that

12  entirely depend upon Plaintiffs' allegations that Defendants and Congress violated the CRA. And

13  just as the Supreme Court in *Dalton* rejected an effort to repackage a nonreviewable statutory

14  claim as a reviewable constitutional claim, this Court should do the same here and hold that

15  Section 805 precludes this Court from reviewing plaintiffs' nominally "constitutional" claims.

16  **II.    Plaintiffs' claims are independently barred because Congress's decision to use CRA**
**procedures is a nonjusticiable exercise of its Rulemaking Clause power**

17

18      Separate from the CRA's preclusion of judicial review, Plaintiffs' action is independently

19  barred because Congress's decision to use CRA procedures to invalidate the CAA waivers is a

20  nonjusticiable exercise of its exclusive Rulemaking Clause power, U.S. Const. art. I, § 5, cl. 2.

21  Under the political question doctrine, which is "part and parcel of separation-of-powers doctrine,"

22  *Metzenbaum v. FERC*, 675 F.2d 1282, 1287 (D.C. Cir. 1982) (citation omitted), a controversy is

23  nonjusticiable when there is "a textually demonstrable constitutional commitment of the issue to a

24  coordinate political department; or a lack of judicially discoverable and manageable standards for

25  resolving it." *Nixon v. United States*, 506 U.S. 224, 228 (1993) (citing *Baker v. Carr*, 369 U.S.

26  186, 217 (1962)). Such a commitment is found in the Rulemaking Clause, which textually

27  "empowers each house to determine its rules of proceedings." *Ballin*, 144 U.S. at 5. The

28

1   Rulemaking Clause sits "[a]t the very core of our constitutional separation of powers," *Walker v.*

2   *Jones*, 733 F.2d 923, 938 (D.C. Cir. 1984) (MacKinnon, J., concurring in part and dissenting in

3   part), and is a "classic example of a demonstrable textual commitment to another branch of

4   government." *Rangel v. Boehner*, 20 F. Supp. 3d 148, 168-69 (D.D.C. 2013), *aff'd*, 785 F.3d 19

5   (D.C. Cir. 2015).

6        Within constitutional limits, Congress's power to decide the procedural rules by which it

7   enacts legislation is thus "*absolute* and beyond the challenge of any other body or tribunal."

8   *Ballin*, 144 U.S. at 5 (emphasis added); *see also Consejo de Desarrollo Economico de Mexicali,*

9   *A.C. v. United States*, 482 F.3d 1157, 1172 (9th Cir. 2007) ("[T]he Constitution textually commits

10  the question of legislative procedural rules to Congress."); *Christoffel v. United States*, 338 U.S.

11  84, 88 (1949) ("Congressional practice in the transaction of ordinary legislative business is of

12  course none of our concern... ."). "In deference to the fundamental constitutional principle of

13  separation of powers, the judiciary must take special care to avoid intruding into a constitutionally

14  delineated prerogative of the Legislative Branch." *Harrington v. Bush*, 553 F.2d 190, 214 (D.C.

15  Cir. 1977); *see also Barker v. Conroy*, 921 F.3d 1118, 1130 (D.C. Cir. 2019) ("[I]nterpreting a

16  congressional rule 'differently than would the Congress itself' is tantamount to '*making* the

17  Rules—a power that the Rulemaking Clause reserves to each House alone.'" (citation omitted)).

18       Plaintiffs' grievance here is ultimately with Congress's decision to invoke the CRA to

19  invalidate the CAA waivers. But that decision was entirely procedural; it unlocked an expedited

20  process for considering and passing resolutions of disapproval, including bypassing a potential

21  Senate filibuster. Indeed, as the CRA itself indicates, the statute's disapproval procedure was

22  "enacted by Congress as an exercise of the rulemaking power of the Senate and House[.]" 5

23  U.S.C. § 802(g)(1). Thus, when Congress enacted the CRA's disapproval procedure, it

24  "exercise[d] [its] rulemaking power," meaning that process "is deemed a part of the rules of each

25  House," which either House has the constitutional right to "change ... at any time." 5 U.S.C.

26  § 802(g)(1)-(2). Invoking the CRA here did not give Congress any additional substantive power;

27  it already had the constitutional authority to pass legislation through ordinary procedures to

28  nullify the waivers and to prohibit the EPA from issuing any substantially similar rules.

At best, Plaintiffs' complaint that Congress failed to comply with the CRA's requirements amounts to an as-applied challenge to House and Senate Rules,[13] no different from a claim that a statute is invalid because Congress failed to comply with its own internal rules when enacting it. But because Plaintiffs' claims are "based on the asserted failure of Congress to comply with its own procedural rules," and courts cannot decide the rules or procedures by which Congress considers and enacts legislation, Plaintiffs' claims are "non-justiciable political question[s]" "beyond [the court's] power to review." *See Consejo*, 482 F.3d at 1171-72. Therefore, these claims would be barred even if Section 805 did not exist. In fact, Section 805's "limitation on the scope of judicial review was drafted in recognition of the constitutional right of each House of Congress" to determine its own rules, "which includes being the *final arbiter* of compliance with such Rules." *Kan. Nat. Res. Coal*, 971 F.3d at 1227 (emphasis added) (quoting 142 Cong. Rec. S3686 (daily ed. Apr. 18, 1996)).

For these reasons, the D.C. Circuit's decision in *Metzenbaum* is directly on point here. The complainants in *Metzenbaum* argued that a joint resolution approving presidentially-proposed waivers using expedited procedures set forth in the Alaskan Natural Gas Transportation Act (ANGTA) was invalid because the House allegedly violated the parliamentary rules set forth in ANGTA when passing the resolution. 675 F.2d at 1286-87. Citing the prohibition on either House of Congress using ANGTA for consideration of a resolution within 60 days of considering "any other resolution respecting the same Presidential [recommendation]," 15 U.S.C. § 719f(d)(5)(B), the complainants argued that the House had not observed ANGTA's procedural rules when it considered the Senate's resolution almost immediately after having passed its own nearly-identical resolution. *Metzenbaum*, 675 F.2d at 1286-87. In other words, complainants argued that the resolution adopted by the House was not eligible for consideration under ANGTA

---

[13] To the extent Plaintiffs argue that the CRA prohibits Congress from utilizing the statute's procedures to enact legislation invalidating the CAA waivers without first amending the CRA through bicameralism and presentment, that would make the CRA an unconstitutional exercise of legislative entrenchment because it would permit a previous Congress to tie the hands of the present Congress respecting the exercise of its constitutional powers under the Rulemaking Clause, which Congress cannot do. *See Newton v. Mahoning Cnty. Comm'rs*, 100 U.S. 548, 559 (1879) ("Every succeeding legislature possesses the same jurisdiction and power … as its predecessors. The latter have the same power of repeal and modification which the former had of enactment[.]").

1   (just as Plaintiffs here argue that the joint resolutions adopted by Congress were not eligible for

2   consideration under the CRA).

3          However, because there was "no question … whether Constitutional procedural

4   requirements of a lawful enactment were observed," but only "whether the House observed the

5   rules it had established for its own deliberations" in ANGTA, the D.C. Circuit held that plaintiffs'

6   complaint was nonjusticiable.  *Id.* at 1287.  Like the CRA, ANGTA's parliamentary rules were

7   enacted "as an exercise of the rulemaking power of each House," making them "a part of the rules

8   of each House … with full recognition of the constitutional right of either House to change the

9   rules … at any time."  *Compare* 15 U.S.C. § 719f(d)(1)(A)-(B) *with* 5 U.S.C. § 802(g)(1)-(2).

10  And as with ANGTA claims then, "[t]o invalidate [the joint resolutions here] on the ground that

11  [they were] enacted in violation of House rules would be to declare as erroneous the

12  understanding of the House of Representatives of rules of its own making, binding upon it only

13  by its own choice."  *Metzenbaum*, 675 F.2d at 1288.  Instead, the Court "must assume that the

14  House [and the Senate] acted in the belief that its conduct was permitted by its rules, and

15  deference rather than disrespect is due that judgment."  *Id.*

16         It is only in the rarest of circumstances where the constitutional powers of other branches

17  of the government were allegedly encroached upon, or where the fundamental rights of third

18  parties were "jeopardized by Congressional failure to follow its own procedures," *id.* at 1287, that

19  courts have reviewed challenges to the CRA or other congressional procedures.  None of these

20  exceptions apply to Plaintiffs' complaint here, as addressed below.

21         *First*, when courts have reached the merits of facial constitutional challenges to non-

22  procedural aspects of otherwise procedural statutes like the CRA, it is because those statutes are

23  alleged to encroach upon powers committed to another branch of the government.  This exception

24  is reflected in *Bernhardt*, where the Ninth Circuit reviewed claims that the CRA's disapproval

25  provision (including the joint resolution enacted pursuant to it) violated separation-of-powers

26  principles and interfered with the Take Care Clause.  946 F.3d at 561.  Because the substantive

27  acts were allegedly not amended through the constitutionally required process of bicameralism

28  and presentment, the plaintiff in *Bernhardt* argued that the agency retained all authority delegated

1    by Congress in those acts, meaning the joint resolutions of disapproval enacted pursuant to the

2    CRA prevented the agency from implementing its constitutional duty to faithfully execute the

3    laws.  *Id.* at 561-62.  While the Ninth Circuit did not discuss the issue of nonjusticiability when it

4    ruled against the plaintiff's claims on the merits, these claims are fundamentally different from

5    those at issue here because they alleged that the CRA itself impinged on the Executive Branch's

6    constitutional authority to faithfully execute the law.  *See id.* (arguing that the CRA prevented

7    Interior from implementing its duty under the Take Care Clause).  Those constitutional claims did

8    not second-guess Congress's choice to use CRA procedures in that particular case or Congress's

9    compliance with those procedures.

10          Similarly, the Tenth Circuit reviewed a facial constitutional challenge arguing that the

11    CRA impermissibly treaded on executive authority by permitting the use of joint resolutions of

12    disapproval to preclude agency rules from taking effect.  *See Citizens for Const. Integrity*, 57

13    F.4th at 763-65.  While that court did not consider (and the parties did not brief) the issue of

14    nonjusticiability in denying the plaintiffs' claim, their separation-of-powers challenge there

15    targeted alleged encroachment on executive authority by the CRA itself, not Congress's decision

16    to use the CRA's procedures or its compliance with those procedures in that instance.  *See id.*

17          Here, Plaintiffs' "constitutional" allegations are distinguishable from those in *Bernhardt*

18    and *Citizens for Constitutional Integrity* because they all turn on whether Congress should have

19    employed CRA procedures when reviewing EPA waivers that Plaintiffs claim are not "rules," *see*

20    *supra* Section I.B.—a purely procedural (i.e., political) question that is nonjusticiable.

21          *Second*, Plaintiffs do not plausibly contend that the CRA procedures utilized to adopt the

22    joint resolutions of disapproval "ignore constitutional restraints or violate fundamental rights"

23    such that this case is justiciable.  *NLRB v. Noel Canning*, 573 U.S. 513, 551 (2014); *see also*

24    *Common Cause v. Biden*, 909 F. Supp. 2d 9, 28 (D.D.C. 2012) ("[T]o present a justiciable

25    challenge to congressional procedural rules, Plaintiffs must identify a separate provision of the

26    Constitution that limits the rulemaking power.").  The closest Plaintiffs come is suggesting

27    Defendants have invaded "the rights of the individual States," *see* ECF 1 ¶ 176 (citation omitted).

28    But Tenth Amendment rights protect state sovereignty and are not traditionally regarded as

1   "fundamental" individual rights akin to those protected under the Fourteenth Amendment. *See*

2   *District of Columbia v. Heller*, 554 U.S. 570, 579-80 (2008) ("[T]he Tenth Amendment ... deal[s]

3   with the exercise or reservation of powers, not rights."). In any event, California has no

4   constitutional right (let alone a fundamental right) not to have Congress invalidate its CAA

5   waivers pursuant to expedited legislative procedures. Thus, this exception is inapplicable.

6        *Third*, in dicta the Supreme Court has suggested that claims about congressional

7   procedures being used without "a reasonable relation between the mode or method of

8   proceeding ... and the result ... sought to be attained" may be justiciable. *Noel Canning*, 573 U.S.

9   at 550-51 (quoting *Ballin*, 144 U.S. at 5).[14] But Plaintiffs cannot meet their heavy burden of

10  showing that there was no reasonable relation between the expedited procedures Congress used

11  under the CRA (including their conclusion that waivers are "rules" under that statute due to likely

12  far-reaching impacts on emissions standards outside California) and the outcome of ending the

13  CAA waivers. *Cf.* ECF 1 ¶¶ 141, 161; *Ballin*, 144 U.S. at 6. Indeed, determining the procedural

14  rules that will apply when considering specific legislation, including whether a supermajority is

15  necessary to end Senate debate, is a quintessentially legislative choice, the wisdom of which may

16  not be second-guessed by courts. *See Common Cause*, 909 F. Supp. 2d at 31 (noting, in rejecting

17  justiciability of challenge to the Senate's cloture rule, that "absent a clear constitutional restraint

18  … it is for the Senate, and not this Court, to determine the rules governing debate").

19                                    **CONCLUSION**

20       For the reasons set forth above, Plaintiffs' claims are nonjusticiable, and the Court should

21  grant Defendants' Motion to Dismiss.

22

---

23       [14] Notably, this exception has apparently not been applied in any subsequent case after
    *Ballin*'s pronouncement. *See* John C. Roberts, *Are Congressional Committees Constitutional?:*
24  *Radical Textualism, Separation of Powers, and the Enactment Process*, 52 Case W. Rsrv. L. Rev.
    489, 532 (2001). It has largely been ignored, *see, e.g.*, *Rangel*, 20 F. Supp. 3d at 168-69 ("[T]he
25  authority possessed by the House to make its own rules is bounded only by 'constitutional restraints
    and fundamental rights.'"), or even subsumed as a second step under the constitutional limits
26  exception, *see Massie v. Pelosi*, 590 F. Supp. 3d 196, 231 n.25 (D.D.C. 2022) ("Because the Court
    concludes that the House has not 'ignore[d] constitutional restraints or violate[d] fundamental
27  rights,' … it need not proceed to the next step of the inquiry under *Ballin*, namely whether there is
    'a reasonable relation between the mode or method of proceeding established by the rule and the
28  result which is sought to be attained[.]'" (quoting *Ballin*, 144 U.S. at 5)).

---

Respectfully submitted,

*/s/ Matthew B. Berry*
Matthew B. Berry, VA Bar No. 42600
   *General Counsel*
Todd B. Tatelman, VA Bar No. 66008
   *Deputy General Counsel*
Kenneth C. Daines, D.C. Bar No. 1600753
   *Assistant General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515
(202) 225-9700
matthew.berry@mail.house.gov

*Counsel for Amicus Curiae, U.S. House of Representatives*

September 26, 2025