1  ROB BONTA
   Attorney General of California
2  MYUNG J. PARK
   Supervising Deputy Attorney General
3  KATHERINE GAUMOND, State Bar No. 349453
   CAITLAN MCLOON, State Bar No. 302798
4  CECILIA D. SEGAL, State Bar No. 310935
   EMMANUELLE S. SOICHET, State Bar No. 290754
5  M. ELAINE MECKENSTOCK, State Bar No. 268861
   Deputy Attorney General
6  1515 Clay Street, 20th Floor
   P.O. Box 70550
7  Oakland, CA 94612-0550
   Telephone: (510) 879-0299
8  Fax: (510) 622-2270
   E-mail: Elaine.Meckenstock@doj.ca.gov
9  *Attorneys for Plaintiff State of California*
   (additional counsel on signature pages)
10

11                 IN THE UNITED STATES DISTRICT COURT

12               FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                          OAKLAND DIVISION

14

15

16 | **STATE OF CALIFORNIA, STATE OF COLORADO, STATE OF DELAWARE, COMMONWEALTH OF MASSACHUSETTS, STATE OF NEW JERSEY, STATE OF NEW MEXICO, STATE OF NEW YORK, STATE OF OREGON, STATE OF RHODE ISLAND, STATE OF VERMONT,** and **STATE OF WASHINGTON,** | 4:25-cv-04966-HSG

17

18                                          **PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE BY WESTERN STATES TRUCKING ASSOCIATION, INC. AND CONSTRUCTION INDUSTRY AIR QUALITY COALITION, INC.**

19

20                                  Plaintiffs,

21                                          (Administrative Procedure Act, 5 U.S.C. § 701 et seq.; 5 U.S.C. § 801 et seq.)

22         v.

23 **UNITED STATES OF AMERICA, U.S. ENVIRONMENTAL PROTECTION**     **Date**:        October 23, 2025
24 **AGENCY, LEE ZELDIN,** in his official                          **Time**:        2:00 PM
   capacity as Administrator of the U.S.                           **Judge**:       Hon. Haywood S. Gilliam, Jr,
25 Environmental Protection Agency, and                            **Action Filed**: June 12, 2025
   **DONALD J. TRUMP,** in his official capacity
26 as President of the United States,

27                                  Defendants.

28

# TABLE OF CONTENTS

**Page**

Statement of Issues to Be Decided ................................................................................. 1

Introduction ..................................................................................................................... 1

Background ...................................................................................................................... 2

Legal Standard ................................................................................................................ 3

Argument ......................................................................................................................... 4

I.     WSTA and CIAQC Do Not Meet the Standard for Intervention  as of Right ........ 4

      A.     WSTA and CIAQC lack a protectable interest that could be
impeded by disposition of this case ........................................... 4

      B.     WSTA's and CIAQC's interests are adequately represented by
Federal Defendants................................................................... 6

II.     WSTA And CIAQC Do Not Meet The Standard for Permissive
Intervention ................................................................................ 9

III.     If the Court Grants Intervention, It Should Exercise Its Discretion to
Impose Reasonable Case Management Conditions .............................................. 12

Conclusion ...................................................................................................................... 13

i

Plaintiffs' Opposition to Mot. to Intervene by Western States Trucking Association, Inc. et al. (4:25-cv-04966-HSG)

1

**TABLE OF AUTHORITIES**

2

**Page**

3    CASES

4
*Akina v. Hawaii*
5          835 F.3d 1003 (9th Cir. 2016).................................................................................. 9

6    *Apple Inc. v. Iancu*
          No. 5:20-cv-06128-EJD, 2021 WL 411157 (N.D. Cal. Feb. 5, 2021) .................................... 10
7
*Arakaki v. Cayetano*
8          324 F.3d 1078 (9th Cir. 2003)....................................................................................... 7

9    *Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*
          54 F.4th 1078 (9th Cir. 2022)......................................................................................... 5
10
*California ex rel. Lockyer v. United States*
11          450 F.3d 436 (9th Cir. 2006).................................................................................... 7, 8

12
*California v. BLM*
13          No. 18-cv-000521-HSG, 2018 WL 3439453 (N.D. Cal. July 17, 2018) ................................ 8

14    *California v. Health & Human Servs.*
          No. 17-cv-05738-HSG, 2017 WL 6731640 (N.D. Cal. Dec. 29, 2017) ................................ 12
15
*Conservation Law Foundation v. Mosbacher*
16          966 F.2d 39 (1st Cir. 1992) ........................................................................................ 8

17
*Defs. of Wildlife v. U.S. Fish & Wildlife Serv.*
18          No. 21-cv-00344-JSW, 2021 WL 4552144 (N.D. Cal. May 3, 2021) .................................... 12

19    *E. Bay Sanctuary Covenant v. Biden*
          102 F.4th 996 (9th Cir. 2024)................................................................................... 3, 4
20
*Freedom from Religion Found., Inc. v. Geithner*
21          644 F.3d 836 (9th Cir. 2011)................................................................................... 3, 7

22
*H.R. Ewell, Inc. et al. v. EPA*
23          No. 25-1475 (9th Cir. filed Mar. 7, 2025)......................................................................... 6

24    *In re Wells Fargo & Co. Hiring Pracs. Derivative Litig.*
          No. 22-cv-05173-TLT, 2023 WL 4536883 (N.D. Cal. July 13, 2023)................................. 11
25
*Kalbers v. U.S. Dep't of Justice*
26          22 F.4th 816 (9th Cir. 2021)....................................................................................... 11

27    *Mi Pueblo San Jose, Inc. v. City of Oakland*
28          No. 06-cv-4094, 2007 WL 578987, at *1 (N.D. Cal. Feb. 21, 2007) ...................................... 4

ii

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3
*Montgomery v. Rumsfeld*
572 F.2d 250 (9th Cir. 1978)............................................................................................. 11

4

5
*N. Arapaho Tribe v. LaCounte*
No. 16-cv-11, 2016 WL 8710178 (D. Mont. Apr. 4, 2016)...................................... 5

6

7
*Or. Nat. Res. Council v. Allen*
No. CV 03-888-PA, 2003 WL 27386127 (D. Or. Nov. 4, 2003)............................. 8

8
*S. Cal. Edison Co. v. Lynch*
307 F.3d 794 (9th Cir. 2002)........................................................................................ 3, 9

9

10
*Stringfellow v. Concerned Neighbors in Action*
480 U.S. 370 (1987) ................................................................................................. 11, 12

11
*Sw. Ctr. for Biological Diversity v. Berg*
268 F.3d 810 (9th Cir. 2001).......................................................................................... 4

12

13
*U.S. ex rel. Richards v. De Leon Guerrero*
4 F.3d 749 (9th Cir. 1993).............................................................................................. 12

14

15
*United States v. Alisal Water Corp.*
370 F.3d 915 (9th Cir. 2004).......................................................................................... 9

16

17
*United States v. City of Los Angeles*
288 F.3d 391 (9th Cir. 2002).................................................................................... 3, 6, 9

18
*W. States Trucking Ass'n, Inc. v. EPA*
No. 23-1143 (D.C. Cir.) .................................................................................................. 6

19

20
*Wellington Hills Park, LLC v. Assurance Co. of Am.*
No. 10-cv-01916, 2011 WL 1344249 (W.D. Wash. Apr. 7, 2011).................... 4, 6

21
**STATUTES**

22
28 U.S.C.

23
§ 530D(a)(1)(B)(ii)......................................................................................................... 8

24
42 U.S.C.
§ 7507................................................................................................................................ 2

25
§ 7543(b) ...................................................................................................................... 2, 4

26
§ 7607(b) ........................................................................................................................... 5

27

28

iii

## TABLE OF AUTHORITIES
### (continued)

Page

**COURT RULES**

Federal Rules of Civil Procedure
    Rule 24(a)................................................................................................ 3, 4, 11, 12
    Rule 24(b) ............................................................................................... 3, 9, 11, 12

**OTHER AUTHORITIES**

California Code of Regulations, Title 13
    § 1956.8(a)(2)..................................................................................................... 10
    § 1962.4(b) ......................................................................................................... 10

**FEDERAL REGULATIONS**

74 Fed. Reg. 32,744 (July 8, 2009) ................................................................................ 7

88 Fed. Reg. 20,688 (Apr. 6, 2023) ............................................................................... 2

90 Fed. Reg. 642 (Jan. 6, 2025) ..................................................................................... 2

90 Fed. Reg. 643 (Jan. 6, 2025) ..................................................................................... 2

iv

**STATEMENT OF ISSUES TO BE DECIDED**

Should the Court deny the motion filed by Western States Trucking Association, Inc. (WSTA) and Construction Industry Air Quality Coalition, Inc. (CIAQC) to intervene either as of right or permissively in the above-captioned matter? If the Court grants the motion, should it nonetheless place reasonable conditions on WSTA's and CIAQC's participation and on this litigation to ensure Plaintiffs are not prejudiced and the case proceeds efficiently?

**INTRODUCTION**

To date, 21 entities have filed five separate motions to intervene defensively in this case. All claim that they have a significantly protectable interest in the litigation that will not adequately be represented by Federal Defendants. All are mistaken.

WSTA and CIAQC, the latest movants to file, cannot overcome the flaws identified by Plaintiffs in the previous movants' papers. Their asserted protectable interest lies in the lawfulness of the U.S. Environmental Protection Agency's (EPA) decision to grant California's requests for Clean Air Act preemption waivers that authorize enforcement of state vehicle emissions standards known as the Omnibus and Advanced Clean Trucks regulations. But that interest is simply not relevant to this suit. That interest is also better protected via petitions for review under the Clean Air Act challenging the waivers themselves—as WSTA and CIAQC well know, having filed two such petitions. WSTA and CIAQC thus cannot show that their interest would be impaired by the Court's resolution of Plaintiffs' claims here. Nor can they rebut the presumption that the federal government will adequately represent their interest. Intervention as of right is not warranted.

Furthermore, and again as with prior movants, WSTA's and CIAQC's intervention threatens to expand the scope of the litigation to encompass extraneous issues and facts, prejudicing Plaintiffs. That they could become the 20th and 21st parties on Federal Defendants' side of the case adds to the risk of prejudice from undue duplication and delay, and underscores that such intervention is neither practical nor equitable. The Court should deny WSTA and CIAQC permissive intervention and instead allow them to air their views in an amicus brief.

1

Alternatively, if the Court is inclined to grant intervention, Plaintiffs respectfully request that the Court exercise its discretion to place reasonable limitations on WSTA's and CIAQC's participation, along with certain procedural conditions on all parties to ensure the case proceeds efficiently.

## BACKGROUND

Earlier this year, Congress took the unprecedented and unlawful step of targeting, with resolutions of "rule" disapproval (Resolutions), three Clean Air Act orders that waived preemption of certain emissions standards set by California for new motor vehicles sold in the State. Compl. ¶¶ 5-7, ECF 1. California has been setting such standards for more than half a century. *Id.* ¶ 33. Since 1967, when Congress generally preempted States from setting new motor vehicle standards, California has done so pursuant to the preemption waivers that EPA must grant, subject to certain limited conditions. *See* 42 U.S.C. § 7543(b)(1).

Each of the three waivers targeted by the Resolutions permits California to enforce specific amendments to its regulatory program, adopted to reduce harmful pollution and protect public health and welfare. These waivers similarly allow other States to adopt and enforce California's regulations as their own. *Id.* § 7507. The first waiver, published in April 2023 (88 Fed. Reg. 20,688 (Apr. 6, 2023)), authorizes the Advanced Clean Trucks (ACT) regulation, which requires gradual increases in sales of medium- and heavy-duty zero-emission vehicles in California beginning with model year 2024. Compl. ¶ 44. The second and third waivers, published in early January 2025, authorize the Advanced Clean Cars II (ACCII) and Omnibus regulations, respectively. 90 Fed. Reg. 642 (Jan. 6, 2025); 90 Fed. Reg. 643 (Jan. 6, 2025). ACCII gradually strengthens California's longstanding emission standards for light-duty vehicles (passenger cars and light trucks), including the State's zero-emission-vehicle sales requirements and the exhaust emission standards for criteria pollutants, requiring reductions in smog-forming oxides of nitrogen (NOx) and particulate matter. Compl. ¶ 43. The Omnibus regulation likewise strengthens longstanding state emission standards, requiring substantial reductions in NOx exhaust emissions from new medium- and heavy-duty vehicles. *Id.* ¶ 45. All three of these regulations are crucial parts of California's comprehensive plan to improve the air Californians

2

breathe and meet state and federal air quality standards. *Id.* ¶ 46 (noting tens of millions of Californians are affected by some of the worst air quality in the Nation).

The unlawful targeting of these waivers began months (or, in the case of ACT, years) after the waivers were granted. EPA reversed the view it had consistently held for decades—shared by the Government Accountability Office—and suddenly declared, without any explanation, that waivers were "rules" within the meaning of the Congressional Review Act (CRA). *Id.* ¶¶ 65, 68-70, 73-77; *see also* Mot. 14:8-10 (referring to "EPA's change in position"). Relying on EPA's misinterpretation, Congress enacted the Resolutions that purport to invalidate the three waivers. Compl. ¶¶ 94, 103, 108. The President signed the Resolutions on June 12, 2025. *Id.* ¶ 113. Plaintiff States sued the United States the same day. Plaintiffs seek, *inter alia*, to have the Resolutions declared unconstitutional for violation of separation of powers and federalism principles and, correspondingly, to have the three waivers declared valid and in effect. *Id.* ¶¶ 153-178 & Prayer for Relief.

## LEGAL STANDARD

To intervene as of right under Federal Rule of Civil Procedure 24(a)(2), a movant must show that: (1) the motion is timely; (2) the movant has a "significantly protectable interest" in the subject of the action; (3) disposition of the action may, as a practical matter, impair or impede the movant's ability to protect that interest; and (4) the movant's interest is inadequately represented by the existing parties. *E. Bay Sanctuary Covenant v. Biden*, 102 F.4th 996, 1001 (9th Cir. 2024). "Failure to satisfy any one of the requirements is fatal to the application." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011).

To intervene permissively under Federal Rule of Civil Procedure 24(b)(1), a movant must show that: (1) independent grounds for jurisdiction exist; (2) the motion is timely; and (3) the movant's claim or defense shares a common question of law or fact with the main action. *United States v. City of Los Angeles*, 288 F.3d 391, 403 (9th Cir. 2002). Even if a movant satisfies those "threshold requirements," a court "has discretion to deny permissive intervention," *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002), particularly if intervention would "unduly delay or prejudice" the existing parties, Fed. R. Civ. P. 24(b)(3).

3

1     Though courts construe Rule 24 broadly in favor of intervention, the movant bears the

2   burden of establishing that the Rule's requirements are met. *See E. Bay Sanctuary Covenant*, 102

3   F.4th at 1001 & n.2. Conclusory allegations will not suffice. *See Sw. Ctr. for Biological Diversity*

4   *v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001).

5                                          **ARGUMENT**

6   **I.    WSTA AND CIAQC DO NOT MEET THE STANDARD FOR INTERVENTION**
        **AS OF RIGHT**
7
            **A.    WSTA and CIAQC lack a protectable interest that could be impeded by**
8                   **disposition of this case**

9       As in the four sets of defensive intervention motions filed before this one, WSTA's and

10  CIAQC's asserted interest lies in the legality of certain EPA waiver decisions, not the legality of

11  the Resolutions. That interest is neither sufficiently related to Plaintiffs' claims nor impaired by

12  the disposition of this case.

13      *Mi Pueblo San Jose, Inc. v. City of Oakland* is instructive. There, Mi Pueblo sought to

14  open a new grocery store in Oakland and obtained the necessary building permits. No. 06-cv-

15  4094, 2007 WL 578987, at *1 (N.D. Cal. Feb. 21, 2007). The City later revoked the permits. *Id.*

16  Mi Pueblo challenged the revocation as violating the Constitution and relevant statutes. *Id.* An

17  association of local businesses moved to intervene, arguing that Mi Pueblo needed to obtain a

18  conditional use permit for the store to operate. *Id.* at *2. The court denied intervention, finding

19  that the association lacked a protectable interest because "[w]hether a conditional use permit is

20  required for the . . . store is not related to Mi Pueblo's constitutional claims against the City." *Id.*

21  at *6. So too here. Whether EPA's waiver decisions satisfied the specific criteria set out in the

22  Clean Air Act's waiver provision, 42 U.S.C. § 7543(b), is "not related" to Plaintiffs'

23  constitutional and statutory claims against the Resolutions. *Id.*; *see also Wellington Hills Park,*

24  *LLC v. Assurance Co. of Am.*, No. 10-cv-01916, 2011 WL 1344249, at *3 (W.D. Wash. Apr. 7,

25  2011) (proposed intervenor's interest not sufficiently related to plaintiff's breach of contract

26  claim because it involved the interpretation of an entirely different document than the contested

27  contract).

28

WSTA and CIAQC—well "aware" that Plaintiffs made this argument in opposing other motions to intervene (*see* Mot. 16:20-21)—attempt to frame their interest as "whether the ACT rule is valid" and peg that interest to Plaintiffs' prayer for relief. Mot. 9:25-26, 10:26-11:1. That gambit fails. Plaintiffs' "goal in this suit" (Mot. 10:26) is to invalidate the Resolutions for, *inter alia*, violating separation of powers principles in several respects along with the Tenth Amendment and structural principles of federalism. *See, e.g.*, Compl. ¶ 9 ("The Federal Government ran roughshod over federalism and separation of powers principles in applying the [Congressional Review Act] to these three preemption waiver decisions."); *id.* ¶ 12 ("With every step, the workings of the National Government failed to follow the law and likewise failed to honor the special restraints on federal power over the States." (cleaned up)). Plaintiffs' request to have the three waivers declared valid simply follows from a ruling invalidating the Resolutions under one or more of Plaintiffs' legal theories and would not predispose pending challenges to the waiver decisions under a separate statute. *See id.* ¶ 183 ("Because the Resolutions are unlawful, unconstitutional and void, the preemption waivers granted for" ACCII, ACT, and Omnibus "are valid and in effect."). WSTA's and CIAQC's stated interest in that *outcome* as to two of the three waivers (Mot. 3:6-8, 9:24-26, 11:20-21) should not be "confused" with "a legally protectable interest in the subject of the action." *N. Arapaho Tribe v. LaCounte*, No. 16-cv-11, 2016 WL 8710178, at *2 (D. Mont. Apr. 4, 2016). WSTA's and CIAQC's failure to demonstrate a "relationship between [their] legally protected interest and the claims at issue" is fatal to their intervention as of right. *Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078, 1088 (9th Cir. 2022) (cleaned up); *id.* at 1087-88 & n.8 (clarifying Ninth Circuit interpretation of interest test).

WSTA and CIAQC likewise strain to explain how their alleged interest would be impeded by this suit. They implicitly concede that a petition for review under the Clean Air Act's judicial review provision, 42 U.S.C. § 7607(b), is an appropriate mechanism for challenging EPA's waiver decisions, citing their own lawsuit against the waiver for ACT pending in the D.C. Circuit.

1   *See* Mot. 11:12-15.[1] But any argument that this case would impair that separate litigation falls

2   flat. First, EPA has *not* moved to dismiss the D.C. Circuit petition for review, *supra* n.1, and so

3   "this case" has *not* "already affected" how WSTA and CIAQC "are litigating" it. Mot. 11:15-19;

4   *see also W. States Trucking Ass'n, Inc. v. EPA*, No. 23-1143 (D.C. Cir.) (no substantive filings

5   since case placed in abeyance on December 21, 2023). Second, that WSTA and CIAQC might

6   choose to "continue prosecuting" their cases—in either the D.C. or Ninth Circuit, or both, *supra*

7   n.1—following the disposition of this suit (Mot. 11:20-21) undermines, rather than supports, their

8   position. *See Wellington Hills Park*, 2011 WL 1344249, at * 3 (no impairment where movant-

9   intervenor could assert its rights in state court proceedings); *accord City of Los Angeles*, 288 F.3d

10  at 402. Finally, WSTA and CIAQC profess an unspecified interest in whether the waiver for ACT

11  (and presumably Omnibus) is a "'rule' under the Administrative Procedure Act," claiming that a

12  decision on that question could open "avenues" for challenging those or future waivers. Mot.

13  12:1-7. Notably, WSTA and CIAQC identify no such avenues. Indeed, they fail to explain how a

14  decision that certain waivers are "rules" makes any difference to them at all. Their argument is a

15  transparent attempt to connect their actual interest in certain waiver decisions with this litigation;

16  the conclusory nature of the argument only highlights the absence of any such connection.

17        **B.    WSTA's and CIAQC's interests are adequately represented by Federal
              Defendants**

18

19        WSTA and CIAQC acknowledge the presumption of adequate representation that arises

20  where, as here, movant-intervenors and an existing party "share an ultimate objective." Mot.

21  12:22-24. They attempt to overcome that presumption by arguing that their interests diverge from

22  those of the federal government in three respects. *Id.* at 13:3-7. None is persuasive.

23        [1] WSTA's and CIAQC's garbled description of the case's procedural posture bears
    correcting. EPA has not sought to dismiss that case. Rather, EPA moved to dismiss WSTA's and

24  CIAQC's petition for review of the waiver for *Omnibus* in the *Ninth* Circuit, *H.R. Ewell, Inc. et
    al. v. EPA*, No. 25-1475 (9th Cir. filed Mar. 7, 2025)—a suit they neglect to mention. In response,

25  WSTA and CIAQC explained that they may seek to continue litigating their petition for review
    should another court deem the Resolutions invalid. *See* Petrs.' Resp. to Mot. to Dismiss at 12-13,

26  *H.R. Ewell*, No. 25-1475, Dkt. 30.1; *id.* at 13 n.5 ("[I]t might be more appropriate to hold this
    case in abeyance pending resolution of California's lawsuit."). They later appeared to change

27  position, asserting that they oppose abeyance and support EPA's motion to dismiss. *See* Petrs.'
    Resp. to State Intervenors' Cross-Mot. for Abeyance & Resp. to EPA's Mot. to Dismiss at 2, 8-9,

28  *H.R. Ewell*, No. 25-1475, Dkt. 37.1.

1    WSTA and CIAQC first suggest that Federal Defendants may focus on justiciability

2    arguments, to the exclusion of others. *Id.* at 13:8-23. But the presumption of adequacy is

3    "nowhere more applicable than in a case where the Department of Justice deploys its formidable

4    resources to defend the constitutionality of a congressional enactment." *Freedom from Religion*

5    *Found.*, 644 F.3d at 841. Rebutting that presumption requires a "very compelling showing."

6    *California ex rel. Lockyer v. United States*, 450 F.3d 436, 443-44 (9th Cir. 2006). Here, WSTA

7    and CIAQC offer no evidence that the federal government's defense of the Resolutions will be

8    anything less than rigorous. Indeed, their contention regarding the focus of the federal

9    government's attention is belied by the government's motion to dismiss, which is not limited to

10   arguments on justiciability. *See, e.g.*, United States' Mot. to Dismiss 15:20-17:11, 20:3-25:24,

11   ECF 118. And while WSTA and CIAQC assert that they will focus on arguments going beyond

12   justiciability, one of the arguments they identify relates to the reviewability of the Senate's

13   rules—which the federal government also makes. *Id.* at 13:8-15:19. Any "differences in litigation

14   strategy" WSTA and CIAQC purport to have with the federal government are thus illusory and,

15   in any event, insufficient to rebut the presumption of adequacy. *See Arakaki v. Cayetano*, 324

16   F.3d 1078, 1086-88 (9th Cir. 2003); *see also Freedom from Religious Found.*, 644 F.3d at 841-42

17   (presumption not rebutted where proposed intervenor merely speculated that interests might

18   diverge, presenting no evidence that federal defendants would take an inconsistent position or

19   abandon key arguments).[2]

20   WSTA and CIAQC next reference the federal government's history of changing course on

21   two earlier waivers—out of more than 75—and of changing course on the question of whether

22   waivers constitute rules—for the first time in decades. Mot. 14:3-16; Compl. ¶ 41.[3] As noted,

23   *supra* at 6:10-16, WSTA and CIAQC have not identified any actual interest in whether waivers

24   are "rules." But, regardless, changing course on an administrative action is not the same as

25       [2] WSTA and CIAQC assert that they—for institutional reasons—will refrain from making
certain arguments Federal Defendants are likely to raise. Mot. 13:8-11 & n.3. That has it exactly

26   backwards. The adequacy of representation inquiry looks to whether the *existing party* will make
the *proposed intervenors'* arguments—not the other way around. *See Arakaki*, 324 F.3d at 1086.

27       [3] WSTA and CIAQC incorrectly assert that "the Bush EPA denied the ACC I waiver in
2008" and "the Obama EPA granted it in 2013." Mot. 14:6-7. The 2008 denial involved a

28   different waiver request that was granted in 2009. 74 Fed. Reg. 32,744 (July 8, 2009).

1   changing course on a statute. Most relevant here, should the U.S. Department of Justice later wish

2   to refrain from defending the constitutionality of the Resolutions at issue, it would have to submit

3   a report to Congress divulging and explaining that decision pursuant to 28 U.S.C.

4   § 530D(a)(1)(B)(ii), at which point WSTA and CIAQC may renew their motion to intervene, *see*

5   *Or. Nat. Res. Council v. Allen*, No. CV 03-888-PA, 2003 WL 27386127, at *3 (D. Or. Nov. 4,

6   2003). WSTA's and CIAQC's reliance on a limited history of EPA action is again insufficient to

7   rebut the presumption of adequacy.

8       Finally, WSTA and CIAQC rely on the fact that Federal Defendants are not regulated

9   parties. But neither are WSTA and CIAQC. Their members are not regulated by the Resolutions

10  that are the subject of this suit. They are also not regulated by the California standards with which

11  they disagree. As WSTA and CIAQC concede, those regulations apply to *manufacturers* of

12  vehicles and engines (Mot. 4:18-5:10), while WSTA's and CIACQ's members "use"—but do not

13  manufacture—"medium- and heavy-duty vehicles" (*id.* at 6:25-26). In any event, their cited

14  authorities finding inadequate representation where regulated parties sought to intervene

15  alongside the federal government are inapposite because the circumstances underlying those

16  findings are absent here. *See Lockyer*, 450 F.3d at 445 (cited at Mot. 14:20) (presumption of

17  adequacy overcome where movants provided "direct evidence that the United States will take a

18  position that actually compromises (and potentially eviscerates)" their legal position); *California

19  v. BLM*, No. 18-cv-000521-HSG, 2018 WL 3439453, at *8 (N.D. Cal. July 17, 2018) (cited at

20  Mot. 14:22-23) (plaintiffs did not oppose movants' "substantive rationales for intervention").

21  Indeed, in *Conservation Law Foundation v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992) (cited at

22  Mot. 15:5-8), the Secretary of Commerce decided not to file an answer to the complaint and

23  instead accepted a consent decree providing for "virtually all the relief sought," demonstrating

24  that the Secretary was "less than wholeheartedly dedicated to opposing the [plaintiff's] aims." Of

25  course, here, Federal Defendants have already moved to dismiss Plaintiffs' Complaint. WSTA

26  and CIAQC also rely on the fact that they are adverse to EPA in their petition for review of the

27  ACT waiver. Mot. 13:23-14:2. They cite no authority for the proposition that "an adverse party

28  from another case" could not adequately represent an intervenor's interests in the case in

8

1  question. *Id.* In both cases, the Federal Government is defending its own actions; it just so

2  happens that WSTA and CIAQC have different views of the actions in question. That does not,

3  by itself, suggest inadequate representation.

4      More broadly, WSTA and CIAQC seem to argue that, because their members are affected

5  by California's vehicle emissions standards, their intervention should be granted. *E.g.*, Mot.

6  10:13, 15:4-5. Taken to its logical conclusion, their argument opens the door to intervention by

7  countless others, "creat[ing] a slippery slope where anyone" with such an undifferentiated stake

8  in the litigation "could bootstrap that stake into an interest in the litigation itself." *United States v.*

9  *Alisal Water Corp.*, 370 F.3d 915, 920 n.3 (9th Cir. 2004). Intervention as of right "involves an

10  accommodation between two potentially conflicting goals: to achieve judicial economies of scale

11  by resolving related issues in a single lawsuit, and to prevent the single lawsuit from becoming

12  fruitlessly complex or unending." *Akina v. Hawaii*, 835 F.3d 1003, 1012 (9th Cir. 2016) (quoting

13  *Smuck v. Hobson*, 408 F.2d 175, 179 (D.C. Cir. 1969)). WSTA and CIAQC imply that their

14  intervention promotes judicial economy because, absent this suit, they need not continue litigating

15  a separate case. *See* Mot. 11:21-22. But, even taken at face value, that establishes only that

16  WSTA and CIAQC would have preferred Plaintiffs not file this suit. That preference is

17  insufficient to support intervention. Moreover, judicial economy is only served where *related*

18  claims are litigated together. *See Akina*, 835 F.3d at 1012. That is not the case here. *Supra* at 5:1-

19  22. And courts have denied intervention as of right where the movant was able to protect its

20  interests by filing another lawsuit, even though doing so would generate additional litigation. *See*

21  *Akina*, 835 F.3d at 1012; *City of Los Angeles*, 288 F.3d at 402.

22  **II.    WSTA AND CIAQC DO NOT MEET THE STANDARD FOR PERMISSIVE**
       **INTERVENTION**

23

24      WSTA and CIAQC proclaim that "[c]ourts favor intervention when practical and

25  equitable considerations support it." Mot. 7:26. But those considerations weigh *against*

26  intervention here. *See* Fed. R. Civ. P. 24(b)(3); *S. Cal. Edison Co.*, 307 F.3d at 803 (court has

27  discretion to deny permissive intervention even where Rule 24(b)'s threshold elements are met).

28

9

As with every movant-intervenor-defendant to date, WSTA's and CIAQC's interests plainly concern the lawfulness of EPA's waivers—specifically, EPA's waivers for ACT and Omnibus. While those interests are more properly vindicated through existing lawsuits under the Clean Air Act, and are irrelevant to Plaintiffs' claims, WSTA and CIAQC may nonetheless attempt to inject them into this suit. For example, WSTA and CIAQC repeatedly (and erroneously) refer to California's "electric vehicle mandates," while implicitly conceding that their petition for review of the ACT waiver will air that grievance. *See, e.g.*, Mot. 2:21-22, 2:27-28; *see also, e.g.*, Mot. 7:3-16 (describing purported drawbacks of electric vehicles).[4] Defending against such "collateral issues" risks prejudicing Plaintiffs, *Apple Inc. v. Iancu*, No. 5:20-cv-06128-EJD, 2021 WL 411157, at *5 (N.D. Cal. Feb. 5, 2021); at minimum, it risks wasting judicial and party resources on unnecessary disputes about the case's scope.

WSTA's and CIAQC's participation as intervenor-defendants further risks prejudicing Plaintiffs by introducing (and compounding) duplication and delay. Indeed, that risk is already apparent. Plaintiffs have now filed five separate responses to five serial motions to intervene defensively. And though the hearing date on these motions has been consolidated, the Court must likewise review all five sets of papers. Additional groups may yet seek to intervene defensively. Each group of movant-intervenor-defendants to date has also indicated an intent to file a motion to dismiss. Mot. 13:16-17; ECF 49 at 2 n.1; ECF 61 at 2 n.2; ECF 86 at 5:4; ECF 92 at 1:12. If all pending motions to intervene are granted, and all intervenors are allowed to file full-length motions to dismiss, that could amount to 150 pages of briefing on Defendants' side of the case, before replies are even factored in.[5] None of the movants on Defendants' side has demonstrated an interest worth subjecting the Court or Plaintiffs to such voluminous briefing. Nor can Plaintiffs reasonably be expected to respond to such voluminous briefing without additional time and

---

[4] None of these California regulations is an "electric vehicle mandate." Some of the provisions of ACCII and ACT require the sale of *zero-emission* vehicles, but those vehicles need not be *electric* vehicles. *E.g.*, Cal. Code Regs., tit. 13, § 1962.4(b). And the Omnibus regulation simply requires certain vehicles with tailpipe emissions—*e.g.*, not electric vehicles—to emit less. *See id.* § 1956.8(a)(2)(C), (a)(2)(D).

[5] That also does not account for amicus briefs that may be filed in support of those motions to dismiss. Indeed, three motions seeking leave to file such amicus briefs have already been filed to date. ECF 120, 138, 139.

1   pages. Plaintiffs should not be burdened with having to seek that relief from the Court; and the

2   Court should not be burdened by having to resolve disputes between Defendants over who should

3   jointly brief with whom, under what page limits. Similar challenges and issues will arise in all

4   motion practice and merits briefing throughout the case—and that assumes each group that

5   moved to intervene will continue to file jointly, which is far from guaranteed. Critically, there is

6   no countervailing efficiency gained by WSTA's and CIAQC's participation; they seek to

7   intervene as defendants, not plaintiffs, and do not contend that there is a "separate action that

8   [they] may bring" that could instead be "part of this action," promoting judicial economy. *In re

9   Wells Fargo & Co. Hiring Pracs. Derivative Litig.*, No. 22-cv-05173-TLT, 2023 WL 4536883, at

10  *4 (N.D. Cal. July 13, 2023).[6]

11          If granted intervention, WSTA and CIAQC would not be "another party in the case," Mot.

12  16:11 (quoting *Kalbers v. U.S. Dep't of Justice*, 22 F.4th 816, 825 (9th Cir. 2021)); they could

13  very well be the 20th and 21st on the side of Federal Defendants. *Contra Kalbers*, 22 F.4th at 825

14  ("three parties are more than two").[7] That result is neither equitable nor practical. To prevent this

15  already complex case from becoming unmanageable, this Court should exercise its discretion and

16  decline to permit Movants' intervention. *See Montgomery v. Rumsfeld*, 572 F.2d 250, 255 (9th

17  Cir. 1978) ("The district judge acted well within his discretion when he decided that 13 additional

18  plaintiffs would unnecessarily delay and complicate the case."); *Stringfellow v. Concerned

19  Neighbors in Action*, 480 U.S. 370, 380 (1987) ("[I]n a complex case . . . a district judge's

20  decision on how best to balance the rights of the parties against the need to keep the litigation

21  from becoming unmanageable is entitled to great deference."). At most, WSTA and CIAQC

22  _____

23          [6] As to the Zero Emission Transportation Association's unopposed motion to intervene as
    a plaintiff-intervenor, *see* ECF 43, that association is in a materially different position than the
24  movant-defendant-intervenors. For example, Zero Emission Transportation Association's
    participation will increase rather than impede judicial efficiency because it could bring a separate
25  lawsuit on legal issues in common with those presented by Plaintiffs' suit. We respectfully
    request that the Court consider acting on that unopposed motion, which, if granted, would allow
26  the October 23 hearing to focus solely on the multiple contested motions by the movant-
    defendant-intervenors.
27          [7] Notably, the *Kalbers* line of cases stands for the proposition that future delay associated
    with adding another party to the case should not bear on the question of whether the motion to
28  intervene was timely in the first instance, as Rule 24(a)(2) requires. Those cases do not hold that
    delay caused by adding more parties is irrelevant to the question of prejudice under Rule 24(b).

11

Plaintiffs' Opposition to Mot. to Intervene by Western States Trucking Association, Inc. et al. (4:25-cv-04966-HSG)

1  should instead be permitted to present their views in an amicus brief, as numerous other groups

2  are now seeking to do. *See supra* n.5; *see also United States ex rel. Richards v. De Leon*

3  *Guerrero*, 4 F.3d 749, 756 (9th Cir. 1993) (affirming district court decision to deny permissive

4  intervention but allow movant to participate as amicus curiae).

5  **III.  IF THE COURT GRANTS INTERVENTION, IT SHOULD EXERCISE ITS DISCRETION TO
       IMPOSE REASONABLE CASE MANAGEMENT CONDITIONS**

6

7        If the Court nonetheless intends to grant WSTA's and CIAQC's intervention, and in light

8  of the concerns identified above, Plaintiffs respectfully request that the Court impose reasonable

9  limitations on their participation. Such conditions are authorized under Federal Rule of Civil

10  Procedure 24(a) and 24(b), are routinely applied, and will help promote judicial efficiency. *See*

11  *Stringfellow*, 480 U.S. at 382-83 & n.2 (Brennan, J., concurring in part and concurring in the

12  judgment) (confirming district courts have discretion to limit intervention as of right and even

13  more discretion to limit permissive intervention (citing Advisory Committee Notes, Fed. R. Civ.

14  P. 24)); *Defs. of Wildlife v. U.S. Fish & Wildlife Serv.*, No. 21-cv-00344-JSW, 2021 WL

15  4552144, at *3 (N.D. Cal. May 3, 2021) (barring defendant-intervenors from initiating discovery

16  and directing parties to meet and confer on case schedule allowing for efficient adjudication of

17  anticipated motion to dismiss and motions for summary judgment); *California v. Health &*

18  *Human Servs.*, No. 17-cv-05738-HSG, 2017 WL 6731640, at *9 (N.D. Cal. Dec. 29, 2017)

19  (limiting issues in the case to those raised by the original parties).

20        In particular, Plaintiffs request the following conditions:

21        (1) WSTA and CIAQC shall not initiate discovery;

22        (2) WSTA's and CIAQC's arguments and defenses shall be limited to those claims and

23  issues raised in any operative complaints;[8]

24        (3) if two or more sets of private movant-intervenor-defendants are granted intervention,

25  they shall be required to jointly brief and argue all dispositive motions; and

26

27        _____

       [8] WSTA and CIAQC preemptively respond to this condition, asserting that they "do not
28  intend to bring any counterclaims or crossclaims." Mot. 17:12-13. If that is so, then the condition
       should not prejudice them.

12

1    (4) all such private intervenor-defendants shall otherwise file papers and appear before the

2    Court in the same groups that moved to intervene together. For example, WSTA and CIAQC, if

3    granted intervention, would be required to appear jointly on all non-dispositive motions and at all

4    status conferences.[9]

5          In addition, Plaintiffs respectfully request that the Court impose the following procedural

6    conditions on all parties, including all intervenors:

7          (1) the parties must meet and confer at least two weeks before the filing of any dispositive

8    motion and submit a joint proposed briefing schedule to the Court at least one week before the

9    motion's filing; and

10          (2) the combined total page limit of any intervenor briefs on any dispositive motion must

11    be limited to two-thirds of the page limit allowed to the original parties that the intervenor is

12    supporting. In other words, defendant-intervenors would, collectively, be limited to two-thirds the

13    pages available to Federal Defendants, and plaintiff-intervenors would, collectively, be limited to

14    two-thirds the pages available to Plaintiff States.

15                                          **CONCLUSION**

16          For the foregoing reasons, Plaintiffs respectfully request that the Court deny the motion to

17    intervene. In the alternative, Plaintiffs respectfully request that the Court impose the case

18    management conditions described above to avoid prejudice to Plaintiffs.

19

20

21

22

23

24

25

26

27          [9] That American Free Enterprise Chamber of Commerce et al. and American Fuel &
28    Petrochemical Manufacturers et al. filed a joint reply on their separate motions to intervene, ECF
      88, illustrates that further consolidation may be both appropriate and achievable.

1    Dated:  September 29, 2025                    Respectfully submitted,

2                                                 ROB BONTA
                                                  Attorney General of California
3                                                 MYUNG J. PARK
                                                  Supervising Deputy Attorney General
4

5                                                 */s/ Cecilia D. Segal*
                                                  CECILIA D. SEGAL
6                                                 Deputy Attorney General
                                                  455 Golden Gate Ave., Ste. 11000
7                                                 San Francisco, CA 94102
                                                  Telephone:  (415) 510-3545
8                                                 Fax:  (510) 622-2270
                                                  E-mail: Cecilia.Segal@doj.ca.gov
9                                                 *Attorneys for Plaintiff State of California*

10

11   **PHILIP J. WEISER**                         **ANDREA JOY CAMPBELL**
     *Attorney General for the State of Colorado*  *Attorney General for the Commonwealth of*
12                                                 *Massachusetts*

13   */s/ Carrie Noteboom*
     CARRIE NOTEBOOM*                             */s/ Seth Schofield*
14   Assistant Deputy Attorney General            SETH SCHOFIELD *
     1300 Broadway, 10th Floor                    Senior Appellate Counsel
15   Denver, CO 80203                             JON WHITNEY*
     (720) 508-6285                               Special Assistant Attorney General
16   carrie.noteboom@coag.gov                     Energy and Environment Bureau
                                                  Office of the Attorney General
17                                                 One Ashburton Place, 18th Flr.
     **KATHLEEN JENNINGS**                        Boston, Mass. 02108
18   *Attorney General of the State of Delaware*   (617) 727-2200
                                                  seth.schofield@mass.gov
19   By: */s/ Vanessa L. Kassab*                   jon.whitney@mass.gov
     IAN R. LISTON
20   Director of Impact Litigation
     RALPH K. DURSTEIN III
21   VANESSA L. KASSAB*
     Deputy Attorneys General
22   Delaware Department of Justice
     820 N. French Street
23   Wilmington, DE 19801
     (302) 683-8899
24   vanessa.kassab@delaware.gov

25

26

27

28

1

2

**MATTHEW J. PLATKIN**
*Attorney General for the State of New Jersey*

3

4

*/s/ Lisa J. Morelli*
LISA J. MORELLI
Deputy Attorney General
New Jersey Division of Law

5

6

25 Market Street
Trenton, New Jersey 08625
(609) 376-2740

7

Lisa.Morelli@law.njoag.gov

8

9

**RAÚL TORREZ**
*Attorney General for the State of New Mexico*

10

11

*/s/ William Grantham*
WILLIAM GRANTHAM*
Assistant Attorney General

12

408 Galisteo Street
Santa Fe, New Mexico 87501

13

(505) 717-3520

14

wgrantham@nmdoj.gov

15

16

**LETITIA JAMES**
*Attorney General for the State of New York*

17

18

*/s/ Ashley M. Gregor*
ASHLEY M. GREGOR*
Assistant Attorney General

19

Environmental Protection Bureau
28 Liberty Street, 19th Floor

20

New York, NY 10005
(212) 416-8454

21

ashley.gregor@ag.ny.gov

22

23

**DAN RAYFIELD**
*Attorney General for the State of Oregon*

24

25

*/s/ Paul Garrahan*
PAUL GARRAHAN*
Sr. Assistant Attorney General

26

Oregon Department of Justice
1162 Court Street NE

27

Salem, Oregon 97301-4096
(503) 947-4540

28

Paul.Garrahan@doj.oregon.gov

**PETER F. NERONHA**
*Attorney General for the State of Rhode Island*

*/s/ Nicholas M. Vaz*
NICHOLAS M. VAZ*
Special Assistant Attorney General
Office of the Attorney General
Chief, Environmental and Energy Unit
150 South Main Street
Providence, Rhode Island 02903
(401) 274-4400 ext. 2297
nvaz@riag.ri.gov

**CHARITY R. CLARK**
*Attorney General for the State of Vermont*

*/s/ Hannah Yindra*
HANNAH YINDRA*
Assistant Attorney General
Office of the Attorney General
109 State Street
Montpelier, VT 05609
(802) 828-3186
Hannah.Yindra@vermont.gov

**NICHOLAS W. BROWN**
*Attorney General for the State of Washington*

*/s/ Alexandria Doolittle*
ALEXANDRIA K. DOOLITTLE*
Assistant Attorney General
Office of the Attorney General
P.O. Box 40117
Olympia, Washington 98504-0117
(360) 586-6769
Alex.Doolittle@atg.wa.gov

15

1   *Admitted pro hac vice

2   Pursuant to Local Rule 5-1(i), I attest that all signatories to this document concurred in its filing.

3

4   /s/ Cecilia D. Segal
    Cecilia D. Segal
    Counsel for Plaintiff State of California

5

6
    OK2025401237
7   92035894

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs' Opposition to Mot. to Intervene by Western States Trucking Association, Inc. et al. (4:25-cv-04966-HSG)