# Exhibit 1

Michael Buschbacher (*pro hac vice*)
James R. Conde (*pro hac vice*)
James R. Wedeking (*pro hac vice*)
Laura B. Ruppalt (*pro hac vice*)
Boyden Gray PLLC
800 Connecticut Avenue NW, Suite 900
Washington, D.C. 20006
(202) 955-0620
mbuschbacher@boydengray.com

John B. Thomas (Bar No. 269538)
Jessica Wahl (Bar No. 321887)
Hicks Thomas LLP
701 University Avenue, Suite 106
Sacramento, California 95825
(916) 241-8414
jthomas@hicks-thomas.com

*Counsel for Proposed Intervenor-Defendants*
*American Free Enterprise Chamber of Commerce, et al.*
(additional counsel and parties on signature pages)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| STATE OF CALIFORNIA, STATE OF COLORADO, STATE OF DELAWARE, COMMONWEALTH OF MASSACHUSETTS, STATE OF NEW JERSEY, STATE OF NEW MEXICO, STATE OF NEW YORK, STATE OF OREGON, STATE OF RHODE ISLAND, STATE OF VERMONT, and STATE OF WASHINGTON, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, U.S. ENVIRONMENTAL PROTECTION AGENCY, LEE ZELDIN, in his official capacity as Administrator of the U.S. Environmental Protection Agency, and DONALD J. TRUMP, in his official capacity as President of the United States, <br><br> Defendants. | No. 4:25-cv-04966-HSG <br><br> **PROPOSED INTERVENOR-DEFENDANTS' STATEMENT OPPOSING PLAINTIFFS' NOTICE OF PENDENCY OF OTHER ACTIONS** |

Pursuant to Civil Local Rule 3-13(c) and in response to the Notice of Pendency of Other Actions filed by Plaintiffs State of California and other States ("Plaintiffs"), ECF No. 142 ("Plaintiffs' Notice"), Proposed Intervenor-Defendants listed on the signature page respectfully submit this statement in opposition to Plaintiffs' Notice of Pendency of Other Actions.

## I.   Summary of This Case and Plaintiffs' Notice

On June 12, 2025, Plaintiffs filed this suit, alleging that three federal laws that invalidated waivers of Clean Air Act preemption issued by the U.S. Environmental Protection Agency ("EPA") are unconstitutional or were otherwise unlawfully enacted. *See* Compl., ECF No. 1. Plaintiffs seek to have the laws declared void and the waivers declared "valid and in effect." *Id.* at 39.

The invalidated EPA actions waived Clean Air Act preemption for three California regulatory programs—Advanced Clean Cars II ("ACC II"), Advanced Clean Trucks ("ACT"), and the Heavy-Duty Low NO$_x$ Omnibus regulations ("Omnibus")—that impose onerous emissions standards on new motor vehicles in order to compel sales of new electric cars and trucks, both in California and in other States.

The challenged laws are bipartisan joint resolutions under the Congressional Review Act ("CRA") that were passed by Congress and signed by the President, and which declare that the waivers now "have no force or effect." Pub. L. No. 119-15, 139 Stat. 65 (2025) (ACT); Pub. L. No. 119-16, 139 Stat. 66 (2025) (ACC II); Pub. L. No. 119-17, 139 Stat. 67 (2025) (Omnibus). As a result of this legislation, ACC II, ACT, and the Omnibus regulations are again expressly preempted by the Clean Air Act, and Plaintiffs cannot "adopt or attempt to enforce" them. 42 U.S.C. § 7543(a). Proposed Intervenor-Defendants are a State and several trade associations whose members are harmed by the California programs, and who have moved to intervene in this case to defend their interests in ensuring the programs are not enforced.

On September 26, 2025, Plaintiffs filed a Notice identifying two suits pending in federal district court and arguing that transfer of this case "may be appropriate" in light of one suit, but not in light of the other. Plaintiffs' Notice at 5, 7. Plaintiffs are wrong. Neither district court suit warrants transferring this case. The identified suits challenge different transactions, raise different claims,

1   and involve different parties than this case. No judicial economy would be achieved by transfer.

2   Plaintiffs picked this forum; there is no reason to let them pick a different one now that they know

3   the judicial assignments.

4       Proposed Intervenor-Defendants also notify this Court of developments in two other actions

5   pending in the original jurisdiction of the U.S. Court of Appeals for the Ninth Circuit that address

6   issues raised in this case.

7   **II.  Neither District Court Suit Warrants Transfer of This Case**

8           **A.  *Am. Free Enter. Chamber of Com. v. Cliff*, No. 3:24-cv-50504 (N.D. Ill.)**

9       Plaintiffs are correct that *American Free Enterprise Chamber of Commerce v. Cliff* ("*AmFree*

10  *Illinois*"), No. 3:24-cv-50504, currently pending in the U.S. District Court for the District of

11  Illinois, does not warrant transfer of this case. Plaintiffs' Notice at 4–5.

12      In *AmFree Illinois*, plaintiff American Free Enterprise Chamber of Commerce ("AmFree")—

13  a Proposed Intervenor-Defendant here—alleges that an agreement between the California Air

14  Resources Board ("CARB"), manufacturers of heavy-duty vehicles, and the heavy-duty-vehicle-

15  manufacturers' trade association ("Agreement") for certain regulatory treatment in exchange for

16  compliance with certain California emissions standards is an "attempt to enforce" preempted

17  vehicle emissions standards, in violation of the Clean Air Act, 42 U.S.C. § 7543(a). *See* Plaintiffs'

18  Notice, Ex. D at 31–34, ¶¶ 163–182, ECF No. 142-4 (Third Am. Compl., *AmFree Illinois*, ECF

19  No. 142). The Agreement purports to commit the manufacturers to meeting various California

20  emissions standards, including some of the ACT and Omnibus standards, even if those standards

21  are unlawful. *Id.* at 18–20, ¶¶ 99–110. The sole defendant in the suit at present is Steven S. Cliff,

22  the Executive Officer of CARB. Cliff has moved to dismiss for lack of personal jurisdiction and lack

23  of proper venue, or, in the alternative, to transfer to the Eastern District of California. *AmFree*

24  *Illinois*, ECF No. 125. The United States has moved to intervene as plaintiff, and Cliff opposed

25  intervention. *AmFree Illinois*, ECF Nos. 121 (motion to intervene), 132 (opposition to motion).

26  Briefing on both motions is complete, and both remain pending.

27      *AmFree Illinois* provides no reason for transfer. AmFree challenges an Agreement that is not at

28  issue in this case. Its claim invokes the Clean Air Act, which is far afield from the constitutional,

CRA, and Administrative Procedure Act ("APA") claims that Plaintiffs raise here. And even if all motions to intervene are granted, *AmFree Illinois* will include only a small subset of the parties to this case: the United States, AmFree, and California (through Cliff). None of the other ten Plaintiff States are parties in *AmFree Illinois*, nor is any other movant-intervenor. *AmFree Illinois* and this case thus do not "involve[] all or a material part of the same subject matter" or "all or substantially all of the same parties." Civil L.R. 3-13(a). We therefore agree with Plaintiffs that transferring this case to the Northern District of Illinois "would not serve the purposes of the transfer statutes." Plaintiffs' Notice at 5; *see Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (the purpose of venue transfer statutes "is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense" (quotation marks omitted)).

**B.  *Daimler Truck N. Am. LLC v. Cal. Air Res. Bd.*, No. 2:25-cv-02255 (E.D. Cal.)**

Plaintiffs are wrong, however, in asserting that transfer to the Eastern District of California "may be appropriate" in light of *Daimler Truck North America LLC v. California Air Resources Board* ("*Daimler*"), No. 2:25-cv-02255. Plaintiffs' Notice at 5, 7. Like *AmFree Illinois*, *Daimler* challenges different transactions, raises different claims, and involves different parties. Transfer is not appropriate.

In *Daimler*, four heavy-duty vehicle manufacturers that are signatories to the Agreement sued CARB, Cliff, and California Governor Gavin Newsom. Plaintiffs' Notice, Ex. A, ECF No. 142-1 (Compl., *Daimler*, ECF No. 1). The plaintiffs allege that ACC II, ACT, the Omnibus regulations, and several other California programs (Advanced Clean Fleets, Phase 2 Greenhouse Gas standards, and Heavy-Duty On-Board Diagnostic standards) are preempted by the Clean Air Act for several reasons, including because of the joint resolutions. *Id.* at 30–33, ¶¶ 71–78 (Count I). They also allege that the Agreement, a Manufacturer Advisory Correspondence ("MAC") released by CARB, and an Executive Order signed by Governor Newsom are "attempt[s] to enforce" preempted vehicle emissions standards, in violation of the Clean Air Act. *Id.* at 33–36, ¶¶ 79–94 (Counts II–III). They further allege that aspects of the Agreement, the MAC, and the Executive Order violate the First Amendment, the California Constitution, and the California

APA. *Id.* at 36–47, ¶¶ 95–137 (Counts IV–VII). The *Daimler* plaintiffs moved for preliminary relief. *Daimler*, ECF No. 23. Briefing on that motion is scheduled to be completed by October 14, 2025, and a hearing is scheduled for October 31, 2025. *Daimler*, ECF Nos. 54 (setting briefing schedule), 71 (minute order denying plaintiffs' motions to expedite hearing). The United States has intervened as plaintiff. *Daimler*, ECF Nos. 43 (motion to intervene), 54 (minute order granting intervention).

For the same reasons that *AmFree Illinois* does not support transfer to the Northern District of Illinois, transfer to the Eastern District of California in light of *Daimler* would be inappropriate. *Daimler* challenges a host of actions that are not at issue in this case, including (i) California regulations not addressed by the joint resolutions; (ii) an Agreement to which no participant in this case is a signatory; and (iii) a MAC and Executive Order released by California officials who are not, themselves, parties to this case. The *Daimler* claims invoke the Clean Air Act, the First Amendment, the California constitution, and the California APA, none of which have been raised in this case. And *Daimler* has even less overlap in parties than *AmFree Illinois*. *Daimler* includes only two entities that are parties to this case—the United States and California (through CARB, Cliff, and Newsom); but four parties that are not—the four heavy-duty vehicle manufacturers. None of the other ten Plaintiff States are parties in *Daimler*, nor is any movant-intervenor.

The only commonality that Plaintiffs identify—aside from the participation of the United States and California—is their assertion that CARB, Cliff, and Newsom plan to raise, among their defenses, the claims Plaintiffs have raised here. Plaintiffs' Notice at 3. But that another court is considering similar legal arguments in a different context is insufficient grounds for transfer, especially when the actions challenge different transactions, raise different claims, and involve different parties. *See Discovery House LLC v. Cigna Corp.*, No. 2:22-cv-01418-DOC-JDE, 2025 WL 354192, at *2 (C.D. Cal. Jan. 2, 2025) (denying transfer where it would be "inefficient as the cases involve different parties, distinct contractual agreements, and varying stages of litigation"); *Cont'l Cas. Co. v. Platinum Training LLC*, No. CV-19-05163-PHX-DJH, 2021 WL 4522281, at *2–3 (D. Ariz. Oct. 4, 2021) (denying transfer where events and questions of law were different); *see also Miller v. Cal. Dep't of Corr. & Rehab.*, 1:12-cv-00353-DAD-EPG-PC, 2016 WL 6095742, at *3–4

(E.D. Cal. Oct. 19, 2016) (noting that plaintiff's motion to transfer seemed like "an attempt to forum shop" and not "a genuine concern for the convenience of the witnesses and judicial economy"). The U.S. District Court for the Eastern District of California has already concluded as much, declining to transfer *Daimler* to this Court after considering briefing on the subject. *Daimler*, ECF No. 72 (minute order retaining case in Eastern District of California). Transferring this case to the Eastern District of California would thus undermine that court's considered judgment. For this reason, and for the additional reasons stated above, transfer is unwarranted.

**III. The Ninth Circuit Has Been Asked to Consider the Validity of the Joint Resolutions in Motions to Dismiss Pending Actions**

This Court should also be aware of developments in two sets of consolidated petitions pending before the Ninth Circuit in its original jurisdiction that put at issue the validity of the joint resolutions: *Am. Free Enter. Chamber of Com. v. EPA*, No. 25-89, and consolidated cases ("Omnibus Petitions"),[1] and *Am. Free Enter. Chamber of Com. v. EPA*, No. 25-106, and consolidated cases ("ACC II Petitions").[2] Those petitions, filed before the joint resolutions became law, challenge EPA's issuance of two of the three Clean Air Act waivers that Plaintiffs ask this Court to resurrect. Several Proposed Intervenor-Defendants are petitioners, and ten of the eleven Plaintiff States have moved to intervene in the petitions.[3]

On August 13, 2025, EPA moved to dismiss the Omnibus and ACC II Petitions as moot in light of the joint resolutions. Ex. G (*AmFree*, No. 25-89, ECF No. 31.1); Ex. H (*AmFree*, No. 25-106, ECF No. 33.1). EPA explained that the joint resolutions "are presumed valid" and moot the petitions "by nullifying the challenged EPA rule[s], which now 'ha[ve] no force or effect.'" Ex. G

---

[1] *See* Ex. A (*AmFree*, No. 25-89, ECF No. 1.1); Ex. B (*H.R. Ewell, Inc. v. EPA*, No. 25-1475, ECF No. 1.1); Ex. C (*AFPM v. EPA*, No. 25-1480, ECF No. 1.1).

[2] *See* Ex. D (*AmFree*, No. 25-106, ECF No. 1.1); Ex. E (*API v. EPA*, No. 25-1478, ECF No. 1.1); Ex. F (*AFPM v. EPA*, No. 25-1493, ECF No. 1.1).

[3] *See AmFree*, No. 25-89, ECF No. 5.1; *H.R. Ewell*, No. 25-1475, ECF No. 14.1; *AFPM*, No. 25-1480, ECF No. 11.1; *AmFree*, No. 25-106, ECF No. 8.1; *API*, No. 25-1478, ECF No. 17.1; *AFPM*, No. 25-1493, ECF No. 13.1. Intervention has been granted in one petition, and the motions remain pending in the others. *See AmFree*, No. 25-89, ECF Nos. 10.1 (granting motion to intervene).

at 4 (quoting Pub. L. No. 119-17, 139 Stat. at 67); Ex. H at 4 (quoting Pub. L. No. 119-16, 139 Stat. at 66). Petitioners did not oppose. *AmFree*, No. 25-89, ECF Nos. 36.1, 37.1; *AmFree*, No. 25-106, ECF No. 38.1.

The intervening States did oppose, suggesting that the joint resolutions are invalid for the same reasons Plaintiffs claim in this case. Ex. I at 8–10, 20–24 (*AmFree*, No. 25-89, ECF No. 41.1); Ex. J at 8–10, 20–24 (*AmFree*, No. 25-106, ECF No. 44.1). They further moved for abeyance of the Petitions in light of this case, or, in the alternative, for supplemental briefing before the Ninth Circuit. Ex. I at 12–24; Ex. J at 12–24. Petitioners opposed abeyance. *AmFree*, No. 25-89, ECF No. 46.1; *AmFree*, No. 25-106, ECF No. 50.1. The deadlines for EPA's responses and replies have been stayed in light of the federal government shutdown. *See* U.S. Ct. of Appeals for the Ninth Circuit, Supplemental Administrative Order (Oct. 1, 2025), https://cdn.ca9.uscourts.gov/datastore/announcements/Final-Order.pdf.

## CONCLUSION

For the foregoing reasons, this case does not involve "all or a material part of the same subject matter" or "all or substantially all of the same parties" with the district court suits *AmFree Illinois* or *Daimler*, and transfer is not warranted. Civil L.R. 3-13(a). Finally, this Court should be aware of pending motions in the Omnibus and ACC II Petitions before the Ninth Circuit asking that court to consider the validity of the joint resolutions.

| | | |
|---|---|---|
| 1 | Dated: October 10, 2025 | Respectfully submitted, |
| 2 | Sean Howell, Bar No. 315967 | */s/ Michael Buschbacher* |
| | GIBSON, DUNN & CRUTCHER LLP | Michael Buschbacher (*pro hac vice*) |
| 3 | One Embarcadero Center | James R. Conde (*pro hac vice*) |
| | Suite 2600 | James R. Wedeking (*pro hac vice*) |
| 4 | San Francisco, CA 94111 | Laura B. Ruppalt (*pro hac vice*) |
| | Tel.: 415-393-8355 | Boyden Gray PLLC |
| 5 | Fax: 415-801-7364 | 800 Connecticut Avenue NW, Suite 900 |
| | showell@gibsondunn.com | Washington, D.C. 20006 |
| 6 | | (202) 955-0620 |
| 7 | */s/ Rachel Levick* | mbuschbacher@boydengray.com |
| | Raymond B. Ludwiszewski (*pro hac vice*) | |
| 8 | Rachel Levick (*pro hac vice*) | John B. Thomas (Bar No. 269538) |
| | GIBSON, DUNN & CRUTCHER LLP | Jessica Wahl (Bar No. 321887) |
| 9 | 1700 M Street, NW | Hicks Thomas LLP |
| | Washington, DC 20036 | 701 University Avenue, Suite 106 |
| 10 | Tel.: 202-955-8500 | Sacramento, California 95825 |
| | Fax: 202-467-0539 | (916) 241-8414 |
| 11 | rludwiszewski@gibsondunn.com | jthomas@hicks-thomas.com |
| | rlevick@gibsondunn.com | |
| 12 | | *Counsel for Proposed Intervenor-Defendants* |
| | *Attorneys for Proposed Intervenor-Defendants* | *American Free Enterprise Chamber of* |
| 13 | *The Alliance for Automotive Innovation and* | *Commerce, Illinois Corn Growers Association,* |
| | *The National Automobile Dealers Association* | *Indiana Corn Growers Association, Iowa Corn* |
| 14 | | *Growers Association, Kansas Corn Growers* |
| | Steven P. Lehotsky* (DC 992765) | *Association, Kentucky Corn Growers Association,* |
| 15 | Michael B. Schon* (DC 989893) | *Michigan Corn Growers Association, Missouri* |
| | Lehotsky Keller Cohn LLP | *Corn Growers Association, Nebraska Corn* |
| 16 | 200 Massachusetts Ave., NW | *Growers Association, Tennessee Corn Growers* |
| | Suite 700 | *Association, Texas Corn Producers, Wisconsin* |
| 17 | Washington, DC 20001 | *Corn Growers Association, and National Corn* |
| | Email: steve@lkcfirm.com | *Growers Association* |
| 18 | Email: mike@lkcfirm.com | |
| | Tel.: (512) 693-8350 | */s/ Theodore Hadzi-Antich* |
| 19 | Fax: (512) 727-4755 | Robert Henneke (pro hac vice) |
| | | Theodore Hadzi-Antich (Bar No. 264663) |
| 20 | */s/ Katherine C. Yarger* | Eric Heigis (Bar No. 343828) |
| | Katherine C. Yarger* (CO 40387) | Texas Public Policy Foundation |
| 21 | Lehotsky Keller Cohn LLP | 901 Congress Avenue |
| | 700 Colorado Blvd., #407 | Austin, Texas 78701 |
| 22 | Denver, CO 80206 | (512) 472-2700 |
| | Email: katie@lkcfirm.com | tha@texaspolicy.com |
| 23 | Tel.: (512) 693-8350 | |
| | Fax: (512) 727-4755 | *Attorneys for Proposed Intervenors Western States* |
| 24 | | *Trucking Association, Inc. and Construction* |
| | *Attorneys for Proposed Intervenors American Fuel* | *Industry Air Quality Coalition, Inc.* |
| 25 | *& Petrochemical Manufacturers, American* | |
| | *Petroleum Institute, and the National Association* | |
| 26 | *of Convenience Stores* | |
| 27 | * Admitted *pro hac vice*. | |
| 28 | | |

1  */s/James K. Rogers*\
   James K. Rogers*
2  Ryan Giannetti*
   America First Legal Foundation
3  611 Pennsylvania Ave., SE #231
   Washington, D.C. 20003
4  (202) 964-3721
   James.Rogers@aflegal.org
5  Ryan.Giannetti@aflegal.org

6  Brandon Q. Tran
   CA Bar No. 223435
7  btran@dhillonlaw.com
   4675 MacArthur Court, Suite 1410
8  Newport Beach, CA 92660

9  Ken Paxton
   Attorney General of Texas
10
   Brent Webster
11 First Assistant Attorney General

12 Ralph Molina
   Deputy First Assistant Attorney General
13
   Austin Kinghorn
14 Deputy Attorney General for Civil Litigation

15 Kellie E. Billings-Ray
   Chief, Environmental Protection Division
16
   Ian Lancaster*
17 Wesley S. Williams*
   Assistant Attorneys General
18 Office of the Attorney General
   Environmental Protection Division
19 Special Litigation Division
   P.O. Box 12548, Capitol Station
20 Austin, Texas 78711-2548
   (512) 463-2012
21 Ian.Lancaster@oag.texas.gov
   Wesley.Williams@oag.texas.gov
22
   * Admitted *pro hac vice*.
23
   *Counsel for Proposed Intervenor-Defendant*
24 *State of Texas*
   Pursuant to Local Rule 5-1(i)(3), I attest that all signatories to this document concurred in its filing.
25

26 */s/ Michael Buschbacher*
   Michael Buschbacher
27 *Counsel for Proposed Intervenor-Defendants*
   *American Free Enterprise Chamber of Commerce, et al.*

28

Ex. A

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AMERICAN FREE ENTERPRISE
CHAMBER OF COMMERCE

*Petitioner*,

v.

U.S. ENVIRONMENTAL
PROTECTION AGENCY,

*Respondent*.

No. _____

## PETITION FOR REVIEW

Pursuant to Section 307(b)(1) of the Clean Air Act, 42 U.S.C. § 7607(b)(1), Section 702 of the Administrative Procedure Act, 5 U.S.C. § 702, and Rule 15(a) of the Federal Rules of Appellate Procedure, Petitioner American Free Enterprise Chamber of Commerce hereby petitions this Court for review of a final action of the United States Environmental Protection Agency (EPA). *See* Notice of Decision, *California State Motor Vehicle and Engine and Nonroad Engine Pollution Control Standards; The "Omnibus" Low NOx Regulation; Waiver of Preemption; Notice of Decision*, 90 Fed. Reg. 643 (Jan. 6, 2025)

("Notice of Decision"). A copy of the Notice of Decision is attached as Exhibit A to this petition.

This Petition is timely. "Any petition for review" of final EPA actions under chapter 85 of title 42 of the U.S. Code "shall be filed within sixty days from the date notice of such promulgation, approval, or action appears in the Federal Register." 42 U.S.C. § 7607(b)(1). The challenged final EPA action was published in the Federal Register on January 6, 2025.

Jurisdiction is proper because Petitioner is adversely affected by this final agency action, which can be challenged in a U.S. Court of Appeals under 42 U.S.C. § 7607(b)(1). Venue is proper because the challenged final action grants the State of California's request for a waiver of Clean Air Act preemption under 42 U.S.C. § 7543(b). Such an action is "locally or regionally applicable" and thus "may be filed only in the United States Court of Appeals for the appropriate circuit," unless EPA determines that the waiver has "nationwide scope or effect" and publishes a contemporaneous finding "that such action is based on such determination," in which case the U.S. Court of Appeals for the D.C. Circuit is the exclusive venue. 42 U.S.C. § 7607(b)(1); *see also Texas v.*

2

*EPA*, 829 F.3d 405, 419 (5th Cir. 2016) ("The finding must be published as part of the action itself."). Here, EPA did not publish such a venue determination. The Ninth Circuit is thus the "appropriate circuit" under the Clean Air Act because the waiver applicant, the State of California, resides within the Ninth Circuit.

Petitioner respectfully requests that this Court (1) grant the petition and declare that the final agency action is unlawful; (2) vacate, enjoin, and set aside the final agency action; and (3) provide such other relief as this Court deems appropriate.

Dated: January 6, 2025

Respectfully submitted,

Michael Buschbacher
  *Counsel of Record*
James R. Conde
Andrew W. Smith
Nicholas A. Cordova
BOYDEN GRAY PLLC
800 Connecticut Avenue NW
Suite 900
Washington, DC 20006
202-955-0620
mbuschbacher@boydengray.com
jconde@boydengray.com
asmith@boydengray.com
ncordova@boydengray.com

# RULE 26.1 STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Ninth Circuit Rule 26.1-1, Petitioners hereby make the following disclosures:

Petitioner American Free Enterprise Chamber of Commerce ("AmFree") is a non-profit, tax-exempt entity organized in the manner allowed by Section 501(c)(6) of the Internal Revenue Code. AmFree has no parent corporation, and no publicly held company has 10% or greater ownership in AmFree.

Dated: January 6, 2025                     /s/ Michael Buschbacher

# CERTIFICATE OF SERVICE

Pursuant to Federal Rules of Appellate Procedure 3(d), 15(c), and 25, Ninth Circuit Rule 25-5, and 40 C.F.R. § 23.12(a), I hereby certify that that on January 6, 2025, I directed the foregoing Petition for Review and Rule 26.1 Statement to be served by United States certified mail, return receipt requested, upon the following:

> U.S. Environmental Protection Agency
> Correspondence Control Unit
> Office of General Counsel (2311)
> 1200 Pennsylvania Avenue NW
> Washington, DC 20460

> Jane Nishida
> Acting Administrator
> U.S. Environmental Protection Agency
> 1200 Pennsylvania Avenue NW
> Washington, DC 20460

Dated: January 6, 2025          /s/ Michael Buschbacher

# Exhibit A

vehicles under the existing fleet-average standard and aim to reduce cold-start emissions by applying the emissions standards to a broader range of in-use driving conditions. The ZEV requirements of ACC II include, for example, a requirement for vehicle manufacturers to sell increasing percentages of ZEVs beginning with the 2026 MY. Manufacturers can meet up to 20 percent of their sales requirements using plug-in hybrid vehicles (PHEVs) that meet specified requirements. A comprehensive description of California's ACC II program can be found in the Decision Document for this waiver and in materials submitted to the Docket by CARB.

Section 209(b) of the Act provides that the Administrator, after notice and opportunity for public hearing, shall waive Federal preemption for California to enforce new motor vehicle emission standards and accompanying enforcement procedures unless certain criteria are met. The criteria for denying such a waiver include consideration of whether California arbitrarily and capriciously determined that its standards are, in the aggregate, at least as protective of public health and welfare as the applicable Federal standards; whether California does not need such State standards to meet compelling and extraordinary conditions; and whether such State standards and accompanying enforcement procedures are not consistent with section 202(a) of the Act.

CARB determined that these standards and accompanying enforcement procedures do not cause California's standards, in the aggregate, to be less protective to public health and welfare than the applicable Federal standards. The administrative record, including information presented to me by parties opposing California's waiver, did not demonstrate that California arbitrarily or capriciously reached this protectiveness determination. Therefore, based on the record, I cannot find California's determination to be arbitrary and capricious under section 209(b)(1)(A).

CARB has demonstrated the existence of compelling and extraordinary conditions justifying the need for such State standards. The administrative record, including information presented to me by parties opposing California's waiver request, did not demonstrate that California does not need such State standards to meet compelling and extraordinary conditions. Thus, based on the record, I cannot deny the waiver based on section 209(b)(1)(B).

CARB has submitted information that its emission standards and test procedures are technologically feasible, present no inconsistency with Federal requirements, and are consistent with section 202(a) of the Act. The administrative record, including information presented to me by parties opposing California's waiver request, did not satisfy the burden of persuading EPA that the standards are not consistent with section 202(a). Thus, based on the record, I cannot deny the waiver based on section 209(b)(1)(C).

Accordingly, I hereby granted the waiver requested by California.

Section 307(b)(1) of the CAA governs judicial review of final actions by the EPA. Petitions for review must be filed by March 7, 2025.

As with past waiver decisions, this action is not a rule as defined by Executive Order 12866. Therefore, it is exempt from review by the Office of Management and Budget as required for rules and regulations by Executive Order 12866.

In addition, this action is not a rule as defined in the Regulatory Flexibility Act, 5 U.S.C. 601(2). Therefore, EPA has not prepared a supporting regulatory flexibility analysis addressing the impact of this action on small business entities.

The Congressional Review Act, 5 U.S.C. 801 *et seq.,* as added by the Small Business Regulatory Enforcement Fairness Act of 1996, does not apply because this action is not a rule, for purposes of 5 U.S.C. 804(3).

**Michael S. Regan,**
*Administrator.*

[FR Doc. 2024–31128 Filed 1–3–25; 8:45 am]

**BILLING CODE 6560–50–P**

---

# ENVIRONMENTAL PROTECTION AGENCY

**[EPA–HQ–OAR–2022–0332; FRL–9902–02–OAR]**

## California State Motor Vehicle and Engine and Nonroad Engine Pollution Control Standards; The "Omnibus" Low NO$_X$ Regulation; Waiver of Preemption; Notice of Decision

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Notice of decision.

**SUMMARY:** The Environmental Protection Agency ("EPA") is providing notice of its decision to grant the California Air Resources Board's ("CARB") request for a waiver of Clean Air Act (CAA) preemption for its Heavy-Duty Vehicle and Engine "Omnibus" Low NO$_X$

Regulations ("Omnibus Low NO$_X$ program"). EPA's decision also includes an authorization for portions of the Omnibus Low NO$_X$ program that pertain to off-road diesel engines. This decision was issued under the authority of the Clean Air Act ("CAA" or "Act") section 209.

**DATES:** Petitions for review must be filed by March 7, 2025.

**ADDRESSES:** EPA has established a docket for this action under Docket ID EPA–HQ–OAR–2022–0332. All documents relied upon in making this decision, including those submitted to EPA by CARB, are contained in the public docket. Publicly available docket materials are available either electronically through *www.regulations.gov* or in hard copy at the EPA Docket Center, WJC West Building, Room 3334, 1301 Constitution Avenue NW, Washington, DC 20004. The Docket Center's hours of operation are 8:30 a.m. to 4:30 p.m.; generally, it is open Monday through Friday, except Federal holidays. The electronic mail (email) address for the EPA Docket is: *a-and-r-Docket@epa.gov.* An electronic version of the public docket is available through the Federal government's electronic public docket and comment system. You may access EPA dockets at *http://www.regulations.gov.* After opening the *www.regulations.gov* website, enter EPA–HQ–OAR–2022–0332 in the "Enter Keyword or ID" fill-in box to view documents in the record. Although a part of the official docket, the public docket does not include Confidential Business Information ("CBI") or other information whose disclosure is restricted by statute.

EPA's Office of Transportation and Air Quality ("OTAQ") maintains a web page that contains general information on its review of California waiver and authorization requests. Included on that page are links to prior waiver **Federal Register** notices, some of which are cited in this notice; the page can be accessed at: *https://www.epa.gov/state-and-local-transportation/vehicle-emissions-california-waivers-and-authorizations.*

**FOR FURTHER INFORMATION CONTACT:** Brian Nelson, Office of Transportation and Air Quality, U.S. Environmental Protection Agency, 2000 Traverwood Drive, Ann Arbor, Michigan 48105. Telephone: 734–214–4278. Email: *California-Waivers-and-Authorizations@epa.gov.*

**SUPPLEMENTARY INFORMATION:** On June 13, 2022, EPA published a **Federal Register** notice announcing its receipt of California's waiver request. In that notice, EPA invited public comment on

**644** Federal Register / Vol. 90, No. 3 / Monday, January 6, 2025 / Notices

California's waiver request and an opportunity to present testimony at a public hearing.[1] EPA held a public hearing on June 29 and June 30, 2022; EPA has considered all comments submitted, including those submitted after the close of the comment period.[2]

On December 17, 2024, I signed a Decision Document granting California a waiver of preemption pursuant to section 209(b) of the CAA, as amended, 42 U.S.C. 7543(b), for regulations applicable to new 2024 and subsequent model year (MY) California on-road heavy-duty vehicles and engines, hereafter the Omnibus Low NOₓ regulations.[3] The Omnibus Low NOₓ program includes requirements for revised heavy-duty emission standards, test procedures, regulatory useful life, and emissions warranty. As part of my decision, I have also decided to grant an authorization pursuant to section 209(e) of the CAA, as amended, 42 U.S.C. 7543(e) for portions of the Omnibus Low NOₓ program regarding off-road diesel engines. The Omnibus Low NOₓ program includes new PM emission standards for off-road diesel-fueled auxiliary power units. A comprehensive description of California's Omnibus Low NOₓ program can be found in the Decision Document for this waiver and in materials submitted to the Docket by the California Air Resources Board (CARB).[4]

For the portions of the Omnibus Low NOₓ program that pertain to on-road emission standards, section 209(b) of the Act provides that the Administrator, after notice and opportunity for public hearing, shall waive Federal preemption for California to enforce new motor vehicle emission standards and accompanying enforcement procedures unless certain criteria are met. The criteria of denying such a waiver include consideration of whether California arbitrarily and capriciously determined that its standards are, in the aggregate, at least as protective of public health and welfare as the applicable Federal standards; whether California does not need such State standards to meet compelling and extraordinary conditions; and whether such State standards and accompanying enforcement procedures are not consistent with section 202(a) of the Act.

For the portions of the Omnibus Low NOₓ program that pertain to nonroad emission standards, section 209(e)(1) of the Act permanently preempts any state, or political subdivision thereof, from adopting or attempting to enforce any standard or other requirement relating to the control of emissions for certain new nonroad engines or vehicles.[5] For all other nonroad engines (including "non-new" engines), states generally are preempted from adopting and enforcing standards and other requirements relating to the control of emissions, except that section 209(e)(2)(A) of the Act requires EPA, after notice and opportunity for public hearing, to authorize California to adopt and enforce such regulations unless EPA makes one of three enumerated findings. Specifically, EPA must deny authorization if the Administrator finds that (1) California's protectiveness determination (i.e., that California standards will be, in the aggregate, as protective of public health and welfare as applicable federal standards) is arbitrary and capricious, (2) California does not need such standards to meet compelling and extraordinary conditions, or (3) the California standards and accompanying enforcement procedures are not consistent with section 209 of the Act.

On July 20, 1994, EPA promulgated a rule interpreting the three criteria set forth in section 209(e)(2)(A) that EPA must consider before granting any California authorization request for nonroad engine or vehicle emission standards.[6] EPA revised these regulations in 1997.[7] As stated in the preamble to the 1994 rule, EPA has interpreted the consistency inquiry under the third criterion, outlined above and set forth in section 209(e)(2)(A)(iii), to require, at minimum, that California standards and enforcement procedures be consistent with section 209(a), section 209(e)(1), and section 209(b)(1)(C) of the Act.[8] In order to be consistent with section 209(a), California's nonroad standards and enforcement procedures must not apply to new motor vehicles or new motor vehicle engines. To be consistent with section 209(e)(1), California's nonroad standards and enforcement procedures must not attempt to regulate engine categories that are permanently preempted from state regulation. To determine consistency with section 209(b)(1)(C), EPA typically reviews nonroad authorization requests under the same "consistency" criteria that are applied to motor vehicle waiver requests under section 209(b)(1)(C). That provision provides that the Administrator shall not grant California a motor vehicle waiver if the Administrator finds that California "standards and accompanying enforcement procedures are not consistent with section 202(a)" of the Act.

CARB determined that these standards and accompanying enforcement procedures do not cause California's standards, in the aggregate, to be less protective to public health and welfare than the applicable Federal standards. The administrative record, including information presented to me by parties opposing California's waiver, did not demonstrate that California arbitrarily or capriciously reached this protectiveness determination. Therefore, based on the record, I cannot find California's determination to be arbitrary and capricious under section 209(b)(1)(A) or section 209(e)(2)(A)(i).

CARB has demonstrated the existence of compelling and extraordinary conditions justifying the need for its own motor vehicle emission control

[1] 87 FR 35765 (June 13, 2022).

[2] A transcript for each day of the hearing (June 29th and 30th, 2022) can be found in the docket: June 29th Hearing Transcript, Docket No. EPA–HQ–OAR–2022–0332–0035; June 30th Hearing Transcript, Docket No. EPA–HQ–OAR–2022–0332–0036. All written comments are also located at regulations.gov at EPA–HQ–OAR–2022–0332.

[3] EPA's Decision Document is located at EPA–HQ–OAR–2022–0332. EPA's waiver decision includes the Omnibus Low NOₓ Regulation which was adopted by the California Air Resources Board on August 27, 2020 by Resolution 20–23, and includes amendments approved by the CARB Executive Officer on September 9, 2021 under CARB Order No. R–21–007. The Omnibus Low NOₓ Regulation is comprised of new title 13, California Code of Regulations (Cal. Code Regs.) sections 2139.5, and 2169.1 through 2169.8; amendments to title 13, Cal. Code Regs., sections 1900, 1956.8, 1961.2, 1965, 1968.2, 1971.1, 1971.5, 2035, 2036, 2111, 2112, 2113, 2114, 2115, 2116, 2117, 2118, 2119, 2121, 2123, 2125, 2126, 2127, 2128, 2129, 2130, 2131, 2133, 2137, 2139, 2140, 2141, 2142, 2143, 2144, 2145, 2146, 2147, 2148, 2149, 2166, 2166.1, 2167, 2168, 2169, 2170, 2423, and 2485; and amendments to title 17 Cal. Code Regs. sections 95562 and 95563. EPA's waiver decision also includes the 2023 Targeted Amendments to Omnibus which were adopted on December 28, 2023 by CARB Executive Order No. R–23–006. The 2023 Targeted Amendments are comprised of title 13, California Code of Regulations (Cal. Code Regs.) sections 1956.8, 1971.1, and 1971.5.

[4] The Decision Document can be found at EPA–HQ–OAR–2022–0332.

[5] States are expressly preempted from adopting or attempting to enforce any standard or other requirement relating to the control of emissions from new nonroad engines which are used in construction equipment or vehicles or used in farm equipment or vehicles and which are smaller than 175 horsepower. Such express preemption under section 209(e)(1) of the Act also applies to new locomotives or new engines used in locomotives.

[6] See "Air Pollution Control; Preemption of State Regulation for Nonroad Engine and Vehicle Standards," 59 FR 36969 (July 20, 1994).

[7] See "Control of Air Pollution: Emission Standards for New Nonroad Compression-Ignition Engines at or Above 37 Kilowatts; Preemption of State Regulation for Nonroad Engine and Vehicle Standards; Amendments to Rules," 62 FR 67733 (December 30, 1997). The applicable regulations are now found in 40 CFR part 1074, subpart B, Part 1074.

[8] EPA has interpreted section 209(b)(1)(C) in the context of section 209(b) motor vehicle waivers.

program as well and justifying the need for its own nonroad vehicle emission control program, which includes the subject standards and procedures. Although EPA believes it unnecessary, CARB has also demonstrated the need for the Omnibus Low $NO_X$ standards within the Omnibus regulations. The administrative record, including information presented to me by parties opposing California's waiver (and authorization) request, did not demonstrate that California no longer has compelling and extraordinary conditions justifying a need for its own motor vehicle emission control program and its own nonroad vehicle emission control program, or alternatively, a need for the Omnibus Low $NO_X$ standards. Therefore, based on the record, I agree that California continues to have compelling and extraordinary conditions which require its own programs, or alternatively, a need for the Omnibus Low $NO_X$ standards. Information presented to me by parties opposing the waiver did not demonstrate otherwise. Thus, I cannot deny the waiver based on section 209(b)(1)(B) or section 209(e)(2)(A)(ii).

CARB has submitted information that its emission standards and test procedures are technologically feasible and present no inconsistency with Federal requirements and are, therefore, consistent with section 202(a) of the Act and are consistent with section 209 as required by section 209(e)(2)(A)(iii). The administrative record, including information presented to me by parties opposing California's waiver and authorization requests, did not satisfy the burden of persuading EPA that the standards are not technologically feasible within the available lead time, considering costs, or are otherwise inconsistent with section 202(a) (for onroad) or section 209 (for nonroad). Thus, based on the record, I cannot deny the waiver based on section 209(b)(1)(C) or section 209(e)(2)(A)(iii).

Accordingly, I hereby granted the waiver and authorization requested by California.

Section 307(b)(1) of the CAA govern judicial review of final actions by EPA. Petitions for review must be filed by March 7, 2025.

As with past waiver and authorization decisions, this action is not a rule as defined by Executive Order 12866. Therefore, it is exempt from review by the Office of Management and Budget as required for rules and regulations by Executive Order 12866.

In addition, this action is not a rule as defined in the Regulatory Flexibility Act, 5 U.S.C. 601(2). Therefore, EPA has not prepared a supporting regulatory flexibility analysis addressing the impact of this action on small business entities.

The Congressional Review Act, 5 U.S.C. 801 *et seq.*, as added by the Small Business Regulatory Enforcement Fairness Act of 1996, does not apply because this action is not a rule, for purposes of 5 U.S.C. 804(3).

**Michael S. Regan,**

*Administrator.*

[FR Doc. 2024–31125 Filed 1–3–25; 8:45 am]

**BILLING CODE 6560–50–P**

---

## ENVIRONMENTAL PROTECTION AGENCY

**[EPA–HQ–OPPT–2018–0320; FRL–11655–02–OCSPP]**

## Toxic Substances Control Act (TSCA) Review of CBI Claims for the Identity of Chemicals in the TSCA Inventory; Extension of Review Period

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Notice.

**SUMMARY:** The Environmental Protection Agency (EPA or Agency) is announcing the extension of the review period for Confidential Business Information (CBI) claims for specific identities of all active chemical substances listed on the confidential portion of the Toxic Substances Control Act (TSCA) Inventory submitted to the EPA under TSCA. EPA has determined that a further extension of the statutory review period for the review of CBI claims under TSCA is necessary to allow the Agency to complete the required reviews under TSCA.

**DATES:** The review period is extended to February 19, 2026.

**ADDRESSES:** The docket for this action, identified by docket identification (ID) number EPA–HQ–OPPT–2018–0320, is available online at *https://www.regulations.gov*. Additional instructions for visiting the docket, along with more information about dockets generally, is available at *https://www.epa.gov/dockets*.

**FOR FURTHER INFORMATION CONTACT:**

*For technical information:* Jessica Barkas, Project Management and Operations Division (7401), Office of Pollution Prevention and Toxics, Environmental Protection Agency, 1200 Pennsylvania Ave. NW, Washington, DC 20460–0001; telephone number: (202) 250–8880; email address: *barkas.jessica@epa.gov*.

*For general information:* The TSCA-Hotline, ABVI-Goodwill, 422 South Clinton Ave., Rochester, NY 14620;

telephone number: (202) 554–1404; email address: *TSCA-Hotline@epa.gov*.

**SUPPLEMENTARY INFORMATION:**

## I. Does this action apply to me?

You may be affected by this action if you submitted a Notice of Activity Form A to EPA under TSCA section 8(b)(4) and 40 CFR part 710, subpart B and asserted any CBI claims concerning the specific identities of the chemical substances you reported. Persons who seek information on such submissions may also be affected by this action. The following list of North American Industrial Classification System (NAICS) codes is not intended to be exhaustive, but rather provides a guide to help readers determine whether this document applies to them. Potentially affected entities may include:

• Manufacturers, importers, or processors of chemical substances (NAICS codes 325 and 324110), *e.g.*, chemical manufacturing and petroleum refineries.

If you have any questions regarding the applicability of this action to a particular entity, consult the technical contact person listed under **FOR FURTHER INFORMATION CONTACT**.

## II. What is the Agency's authority for taking this action?

TSCA authorizes the extension of the Review Plan deadline in TSCA section 8(b)(4)(E)(ii)(I), 15 U.S.C. 2607(b)(4)(E)(ii)(I).

## III. What action is the Agency taking?

EPA is announcing to the public that it is further extending an Agency review deadline pursuant to the authority in TSCA section 8(b)(4)(E)(ii)(I), 15 U.S.C. 2607(b)(4)(E)(ii)(I). The additional time is necessary to complete the reviews given the volume of submissions that require review, information technology issues, insufficient resources and other legal and administrative delays that have affected the review process. EPA previously extended the review period by one year, to February 19, 2025 (89 FR 4605, January 24, 2024 (FRL–11655–01–OCSPP)). As discussed in that document, EPA has evaluated its progress toward completing the requirements for the Agency to review CBI substantiations outlined in the final rule titled "Procedures for Review of CBI Claims for the Identity of Chemicals in the TSCA Inventory" (Review Plan rule), (85 FR 13062, March 6, 2020 (FRL–10005–48)) and has concluded that a further one year extension will be necessary to complete the Review Plan reviews.

Ex. B

————————————————————

No. _____

————————————————————

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

————————————————————

H.R. EWELL, INC., WESTERN STATES TRUCKING ASSOCIATION,
CALIFORNIA FUELS AND CONVENIENCE ALLIANCE,
CALIFORNIA ASPHALT PAVEMENT ASSOCIATION,
NEW YORK CONSTRUCTION MATERIALS ASSOCIATION, INC.,
AND ASSOCIATED GENERAL CONTRACTORS OF NEW YORK
STATE LLC,

Petitioners,

v.

U.S. ENVIRONMENTAL PROTECTION AGENCY,

Respondent.

————————————————————

**PETITION FOR REVIEW**

————————————————————

KERRY C. HUNT
  Pacific Legal Foundation
  3100 Clarendon Blvd., Ste. 1000
  Arlington, Virginia 22201
  Telephone: (202) 888-6881
  Facsimile: (916) 419-7747
  KerryHunt@pacificlegal.org

LUKE A. WAKE
  Pacific Legal Foundation
  555 Capitol Mall, Ste. 1290
  Sacramento, California 95814
  Telephone: (916) 419-7111
  Facsimile: (916) 419-7747
  LWake@pacificlegal.org

*Counsel for Petitioners*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Ninth Circuit Rule 26.1-1, Petitioners make the following disclosures:

Petitioner H.R. Ewell, Inc. is a Pennsylvania S-Corp. H.R. Ewell, Inc. does not have a parent corporation, and no publicly held company has a 10% or greater ownership interest in H.R. Ewell, Inc.

Petitioner Western States Trucking Association ("WSTA") is a non-profit, tax-exempt trade association. WSTA does not have a parent corporation, and no publicly held company has a 10% or greater ownership interest in WSTA.

Petitioner California Fuels and Convenience Alliance ("CFCA") is a non-profit, tax-exempt trade association. CFCA does not have a parent corporation, and no publicly held company has a 10% or greater ownership interest in CFCA.

Petitioner California Asphalt Pavement Association ("CalAPA") is a non-profit, tax-exempt trade association. CalAPA does not have a parent corporation, and no publicly held company has a 10% or greater ownership interest in CalAPA.

Petitioner New York Construction Materials Association, Inc. ("NYMaterials") is a non-profit, tax-exempt trade association. NYMaterials does not have a parent corporation, and no publicly held company has a 10% or greater ownership interest in NYMaterials.

Petitioner Associated General Contractors of New York State, LLC ("AGC NYS") is a New York State not for profit entity that is a product of a combination of two other construction industry trade associations. As such, AGC NYS has two parent corporations: The General Building Contractors of New York State, Inc. and Associated General Contractors of America New York State Chapter, Inc.

# PETITION FOR REVIEW

Pursuant to Rule 15(a) of the Federal Rules of Appellate Procedure; Section 307(b)(1) of the Clean Air Act, 42 U.S.C. § 7607(b)(1); and Section 702 of the Administrative Procedure Act, 5 U.S.C. § 702; H.R. Ewell, Inc., the Western States Trucking Association, California Fuels and Convenience Alliance, California Asphalt Pavement Association, New York Construction Materials Association, Inc., and Associated General Contractors of New York State LLC petition for review of a final action of the United States Environmental Protection Agency (EPA). *See* Exhibit A, Notice of Decision, *California State Motor Vehicle and Engine and Nonroad Engine Pollution Control Standards; The "Omnibus" Low NOx Regulation; Waiver of Preemption; Notice of Decision*, 90 Fed. Reg. 643 (Jan. 6, 2025) ("Notice of Decision"). This Petition is timely under Section 307(b)(1) of the Clean Air Act because it is filed within sixty days from EPA's publication of its January 6, 2025, Notice of Decision. 42 U.S.C. § 7607(b)(1) (providing that petitions for review must "be filed within sixty days from the date notice of such promulgation, approval, or action appears in the Federal Register.").

This Court has jurisdiction because Petitioners are adversely affected by the final agency action, which can be challenged in a United States Court of Appeals under § 307(b)(1) of the Clean Air Act. 42 U.S.C. §7607(b)(1). And venue is proper in the Ninth Circuit because the Clean Air Act provides that petitions for review of final actions by the EPA be filed "in the United States Court of Appeals for the appropriate circuit" unless the action "is based on a determination of nationwide scope or effect"—a determination that the EPA Administrator must find and publish. *Id.* The EPA Administrator published no such venue determination in the Notice of Decision. *See generally* 90 Fed. Reg. 643. Accordingly, the Ninth Circuit is the "appropriate circuit" because the agency action at issue is EPA's grant of a waiver request submitted by the State of California, which resides in this Circuit. Additionally, the Ninth Circuit is the appropriate circuit because several of the associational petitioners reside in California, and because the Western States Trucking Association has affected members both in California and in other Ninth Circuit states. Further, venue is appropriate because there is already a pending challenge to EPA's Notice of Decision in the Ninth Circuit. *See Am. Free Enter. Chamber of Commerce v. U.S. Envtl.*

*Prot. Agency*, No. 25-89 (9th Cir. filed Jan. 6, 2025). *See also* 28 U.S.C. § 2112.

Petitioners respectfully request that this Court (1) grant the Petition and declare that the EPA's final action is unlawful, (2) vacate, enjoin, and set aside the EPA's final action, and (3) provide such other relief as this Court deems appropriate.

DATED: March 7, 2025.

Respectfully submitted,

By /s/ Luke A. Wake
    LUKE A. WAKE
    Pacific Legal Foundation
    555 Capitol Mall, Ste. 1290
    Sacramento, California 95814
    Telephone: (916) 419-7111
    LWake@pacificlegal.org

    KERRY C. HUNT
    Pacific Legal Foundation
    3100 Clarendon Blvd., Ste. 1000
    Arlington, Virginia 22201
    Telephone: (202) 888-6881
    KerryHunt@pacificlegal.org

    *Counsel for Petitioners*

# CERTIFICATE OF SERVICE

I hereby certify that on March 7, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that I caused a copy of this Petition for Review to be served on Respondent by U.S. Certified Mail:

U.S. Environmental Protection Agency
Correspondence Control Unit
Office of General Counsel (2811)
1200 Pennsylvania Avenue NW
Washington, DC 20460

Jane Nishida
Acting Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue NW
Washington, DC 20460

/s/ Luke A. Wake
LUKE A. WAKE
*Counsel for Petitioners*

Ex. C

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| AMERICAN FUEL & PETROCHEMICAL MANUFACTURERS and ENERGY MARKETERS OF AMERICA,<br><br>          Petitioners,<br><br>   v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and LEE M. ZELDIN, Administrator, United States Environmental Protection Agency,<br><br>          Respondents. | Case No.<br><br>_____ |

## PROTECTIVE PETITION FOR REVIEW

Pursuant to Section 307(b)(1) of the Clean Air Act, 42 U.S.C. § 7607(b)(1) and Federal Rule of Appellate Procedure 15(a), American Fuel & Petrochemical Manufacturers ("AFPM") and Energy Marketers of America ("EMA") hereby petition this Court for review of a final action of the United States Environmental Protection Agency ("EPA"). *See California State Motor Vehicle and Engine and Nonroad Engine Pollution Control Standards; The "Omnibus" Low NO$_X$ Regulation; Waiver of Preemption; Notice of Decision*, 90 Fed. Reg. 643 (Jan. 6, 2025) (attached as Exhibit A). Petitioners believe that the U.S. Circuit Court

for the District of Columbia Circuit has jurisdiction and is the proper
venue pursuant to 42 U.S.C. § 7607(b)(1). However, Petitioners are filing
this Petition for Review as a protective measure to preserve their right
to judicial review in the event that this Court is determined to be the
proper venue.

Dated: March 7, 2025                    Respectfully submitted,

                                          /s/ Carter G. Phillips

                                        Carter G. Phillips
                                        Daniel J. Feith
                                        Kathleen M. Mueller
                                        SIDLEY AUSTIN LLP
                                        1501 K Street, N.W.
                                        Washington, D.C. 20005
                                        (202) 736-8000
                                        cphllips@sidley.com
                                        dfeith@sidley.com
                                        kmueller@sidley.com

                                        *Counsel for Petitioners*

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| AMERICAN FUEL & PETROCHEMICAL MANUFACTURERS and ENERGY MARKETERS OF AMERICA, | |
| | Case No. |
| Petitioners, | |
| | _____ |
| v. | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and LEE M. ZELDIN, Administrator, United States Environmental Protection Agency, | |
| Respondents. | |

## RULE 26.1 STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, petitioners American Fuel & Petrochemical Manufacturers ("AFPM") and Energy Marketers of America ("EMA") hereby make the following disclosure:

AFPM is a national trade association that represents American refining and petrochemical companies. AFPM has no parent corporation, and no publicly held corporation has a 10% or greater ownership in AFPM.

EMA is a federation of 49 state and regional trade associations representing energy marketers throughout the United States. EMA,

which is incorporated under the laws of the Commonwealth of Virginia,

has no parent corporation, and no publicly held corporation has a 10%

or greater ownership in EMA.

Dated: March 7, 2025                    Respectfully submitted,


                                         /s/ Carter G. Phillips
                                        _____

                                        Carter G. Phillips
                                        Daniel J. Feith
                                        Kathleen M. Mueller
                                        SIDLEY AUSTIN LLP
                                        1501 K Street, N.W.
                                        Washington, D.C. 20005
                                        (202) 736-8000
                                        cphllips@sidley.com
                                        dfeith@sidley.com
                                        kmueller@sidley.com

                                        *Counsel for Petitioners*

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| AMERICAN FUEL & PETROCHEMICAL MANUFACTURERS and ENERGY MARKETERS OF AMERICA,<br><br>      Petitioners,<br><br> v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and LEE M. ZELDIN, Administrator, United States Environmental Protection Agency,<br><br>      Respondents. | Case No.<br><br>_____ |

## CERTIFICATE OF SERVICE

Pursuant to Federal Rules of Appellate Procedure 3(d), 15(c), and 25, and 40 C.F.R. § 23.12(a), I hereby certify that the foregoing Protective Petition for Review and Rule 26.1 Statement have been served by United States certified mail, return receipt requested, this 7th day of March, 2025, upon each of the following:

Hon. Lee Zeldin, Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460


U.S. Environmental Protection Agency
Correspondence Control Unit

Office of General Counsel (2311)
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

Hon. Pam Bondi
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530

Hon. Adam Gustafson
Acting Assistant Attorney General
Environmental and Natural Resources Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530

Dated: March 7, 2025                    /s/ Carter G. Phillips

                                        Carter G. Phillips

                                        *Counsel for Petitioners*

# Exhibit A



vehicles under the existing fleet-average standard and aim to reduce cold-start emissions by applying the emissions standards to a broader range of in-use driving conditions. The ZEV requirements of ACC II include, for example, a requirement for vehicle manufacturers to sell increasing percentages of ZEVs beginning with the 2026 MY. Manufacturers can meet up to 20 percent of their sales requirements using plug-in hybrid vehicles (PHEVs) that meet specified requirements. A comprehensive description of California's ACC II program can be found in the Decision Document for this waiver and in materials submitted to the Docket by CARB.

Section 209(b) of the Act provides that the Administrator, after notice and opportunity for public hearing, shall waive Federal preemption for California to enforce new motor vehicle emission standards and accompanying enforcement procedures unless certain criteria are met. The criteria for denying such a waiver include consideration of whether California arbitrarily and capriciously determined that its standards are, in the aggregate, at least as protective of public health and welfare as the applicable Federal standards; whether California does not need such State standards to meet compelling and extraordinary conditions; and whether such State standards and accompanying enforcement procedures are not consistent with section 202(a) of the Act.

CARB determined that these standards and accompanying enforcement procedures do not cause California's standards, in the aggregate, to be less protective to public health and welfare than the applicable Federal standards. The administrative record, including information presented to me by parties opposing California's waiver, did not demonstrate that California arbitrarily or capriciously reached this protectiveness determination. Therefore, based on the record, I cannot find California's determination to be arbitrary and capricious under section 209(b)(1)(A).

CARB has demonstrated the existence of compelling and extraordinary conditions justifying the need for such State standards. The administrative record, including information presented to me by parties opposing California's waiver request, did not demonstrate that California does not need such State standards to meet compelling and extraordinary conditions. Thus, based on the record, I cannot deny the waiver based on section 209(b)(1)(B).

CARB has submitted information that its emission standards and test procedures are technologically feasible, present no inconsistency with Federal requirements, and are consistent with section 202(a) of the Act. The administrative record, including information presented to me by parties opposing California's waiver request, did not satisfy the burden of persuading EPA that the standards are not consistent with section 202(a). Thus, based on the record, I cannot deny the waiver based on section 209(b)(1)(C).

Accordingly, I hereby granted the waiver requested by California.

Section 307(b)(1) of the CAA governs judicial review of final actions by the EPA. Petitions for review must be filed by March 7, 2025.

As with past waiver decisions, this action is not a rule as defined by Executive Order 12866. Therefore, it is exempt from review by the Office of Management and Budget as required for rules and regulations by Executive Order 12866.

In addition, this action is not a rule as defined in the Regulatory Flexibility Act, 5 U.S.C. 601(2). Therefore, EPA has not prepared a supporting regulatory flexibility analysis addressing the impact of this action on small business entities.

The Congressional Review Act, 5 U.S.C. 801 *et seq.*, as added by the Small Business Regulatory Enforcement Fairness Act of 1996, does not apply because this action is not a rule, for purposes of 5 U.S.C. 804(3).

**Michael S. Regan,**
*Administrator.*

[FR Doc. 2024–31128 Filed 1–3–25; 8:45 am]

**BILLING CODE 6560–50–P**

---

## ENVIRONMENTAL PROTECTION AGENCY

**[EPA–HQ–OAR–2022–0332; FRL–9902–02–OAR]**

### California State Motor Vehicle and Engine and Nonroad Engine Pollution Control Standards; The "Omnibus" Low NO$_X$ Regulation; Waiver of Preemption; Notice of Decision

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Notice of decision.

**SUMMARY:** The Environmental Protection Agency ("EPA") is providing notice of its decision to grant the California Air Resources Board's ("CARB") request for a waiver of Clean Air Act (CAA) preemption for its Heavy-Duty Vehicle and Engine "Omnibus" Low NO$_X$

Regulations ("Omnibus Low NO$_X$ program"). EPA's decision also includes an authorization for portions of the Omnibus Low NO$_X$ program that pertain to off-road diesel engines. This decision was issued under the authority of the Clean Air Act ("CAA" or "Act") section 209.

**DATES:** Petitions for review must be filed by March 7, 2025.

**ADDRESSES:** EPA has established a docket for this action under Docket ID EPA–HQ–OAR–2022–0332. All documents relied upon in making this decision, including those submitted to EPA by CARB, are contained in the public docket. Publicly available docket materials are available either electronically through *www.regulations.gov* or in hard copy at the EPA Docket Center, WJC West Building, Room 3334, 1301 Constitution Avenue NW, Washington, DC 20004. The Docket Center's hours of operation are 8:30 a.m. to 4:30 p.m.; generally, it is open Monday through Friday, except Federal holidays. The electronic mail (email) address for the EPA Docket is: *a-and-r-Docket@epa.gov.* An electronic version of the public docket is available through the Federal government's electronic public docket and comment system. You may access EPA dockets at *http://www.regulations.gov.* After opening the *www.regulations.gov* website, enter EPA–HQ–OAR–2022–0332 in the "Enter Keyword or ID" fill-in box to view documents in the record. Although a part of the official docket, the public docket does not include Confidential Business Information ("CBI") or other information whose disclosure is restricted by statute.

EPA's Office of Transportation and Air Quality ("OTAQ") maintains a web page that contains general information on its review of California waiver and authorization requests. Included on that page are links to prior waiver **Federal Register** notices, some of which are cited in this notice; the page can be accessed at: *https://www.epa.gov/state-and-local-transportation/vehicle-emissions-california-waivers-and-authorizations.*

**FOR FURTHER INFORMATION CONTACT:** Brian Nelson, Office of Transportation and Air Quality, U.S. Environmental Protection Agency, 2000 Traverwood Drive, Ann Arbor, Michigan 48105. Telephone: 734–214–4278. Email: *California-Waivers-and-Authorizations@epa.gov.*

**SUPPLEMENTARY INFORMATION:** On June 13, 2022, EPA published a **Federal Register** notice announcing its receipt of California's waiver request. In that notice, EPA invited public comment on

California's waiver request and an opportunity to present testimony at a public hearing.[1] EPA held a public hearing on June 29 and June 30, 2022; EPA has considered all comments submitted, including those submitted after the close of the comment period.[2]

On December 17, 2024, I signed a Decision Document granting California a waiver of preemption pursuant to section 209(b) of the CAA, as amended, 42 U.S.C. 7543(b), for regulations applicable to new 2024 and subsequent model year (MY) California on-road heavy-duty vehicles and engines, hereafter the Omnibus Low $NO_X$ regulations.[3] The Omnibus Low $NO_X$ program includes requirements for revised heavy-duty emission standards, test procedures, regulatory useful life, and emissions warranty. As part of my decision, I have also decided to grant an authorization pursuant to section 209(e) of the CAA, as amended, 42 U.S.C. 7543(e) for portions of the Omnibus Low $NO_X$ program regarding off-road diesel engines. The Omnibus Low $NO_X$ program includes new PM emission standards for off-road diesel-fueled auxiliary power units. A comprehensive description of California's Omnibus Low $NO_X$ program can be found in the Decision Document for this waiver and in materials submitted to the Docket by the California Air Resources Board (CARB).[4]

For the portions of the Omnibus Low $NO_X$ program that pertain to on-road

emission standards, section 209(b) of the Act provides that the Administrator, after notice and opportunity for public hearing, shall waive Federal preemption for California to enforce new motor vehicle emission standards and accompanying enforcement procedures unless certain criteria are met. The criteria of denying such a waiver include consideration of whether California arbitrarily and capriciously determined that its standards are, in the aggregate, at least as protective of public health and welfare as the applicable Federal standards; whether California does not need such State standards to meet compelling and extraordinary conditions; and whether such State standards and accompanying enforcement procedures are not consistent with section 202(a) of the Act.

For the portions of the Omnibus Low $NO_X$ program that pertain to nonroad emission standards, section 209(e)(1) of the Act permanently preempts any state, or political subdivision thereof, from adopting or attempting to enforce any standard or other requirement relating to the control of emissions for certain new nonroad engines or vehicles.[5] For all other nonroad engines (including "non-new" engines), states generally are preempted from adopting and enforcing standards and other requirements relating to the control of emissions, except that section 209(e)(2)(A) of the Act requires EPA, after notice and opportunity for public hearing, to authorize California to adopt and enforce such regulations unless EPA makes one of three enumerated findings. Specifically, EPA must deny authorization if the Administrator finds that (1) California's protectiveness determination (i.e., that California standards will be, in the aggregate, as protective of public health and welfare as applicable federal standards) is arbitrary and capricious, (2) California does not need such standards to meet compelling and extraordinary conditions, or (3) the California standards and accompanying enforcement procedures are not consistent with section 209 of the Act.

On July 20, 1994, EPA promulgated a rule interpreting the three criteria set forth in section 209(e)(2)(A) that EPA must consider before granting any

California authorization request for nonroad engine or vehicle emission standards.[6] EPA revised these regulations in 1997.[7] As stated in the preamble to the 1994 rule, EPA has interpreted the consistency inquiry under the third criterion, outlined above and set forth in section 209(e)(2)(A)(iii), to require, at minimum, that California standards and enforcement procedures be consistent with section 209(a), section 209(e)(1), and section 209(b)(1)(C) of the Act.[8] In order to be consistent with section 209(a), California's nonroad standards and enforcement procedures must not apply to new motor vehicles or new motor vehicle engines. To be consistent with section 209(e)(1), California's nonroad standards and enforcement procedures must not attempt to regulate engine categories that are permanently preempted from state regulation. To determine consistency with section 209(b)(1)(C), EPA typically reviews nonroad authorization requests under the same "consistency" criteria that are applied to motor vehicle waiver requests under section 209(b)(1)(C). That provision provides that the Administrator shall not grant California a motor vehicle waiver if the Administrator finds that California "standards and accompanying enforcement procedures are not consistent with section 202(a)" of the Act.

CARB determined that these standards and accompanying enforcement procedures do not cause California's standards, in the aggregate, to be less protective to public health and welfare than the applicable Federal standards. The administrative record, including information presented to me by parties opposing California's waiver, did not demonstrate that California arbitrarily or capriciously reached this protectiveness determination. Therefore, based on the record, I cannot find California's determination to be arbitrary and capricious under section 209(b)(1)(A) or section 209(e)(2)(A)(i).

CARB has demonstrated the existence of compelling and extraordinary conditions justifying the need for its own motor vehicle emission control

---

[1] 87 FR 35765 (June 13, 2022).

[2] A transcript for each day of the hearing (June 29th and 30th, 2022) can be found in the docket: June 29th Hearing Transcript, Docket No. EPA–HQ–OAR–2022–0332–0035; June 30th Hearing Transcript, Docket No. EPA–HQ–OAR–2022–0332–0036. All written comments are also located at regulations.gov at EPA–HQ–OAR–2022–0332.

[3] EPA's Decision Document is located at EPA–HQ–OAR–2022–0332. EPA's waiver decision includes the Omnibus Low $NO_X$ Regulation which was adopted by the California Air Resources Board on August 27, 2020 by Resolution 20–23, and includes amendments approved by the CARB Executive Officer on September 9, 2021 under CARB Order No. R–21–007. The Omnibus Low $NO_X$ Regulation is comprised of new title 13, California Code of Regulations (Cal. Code Regs.) sections 2139.5, and 2169.1 through 2169.8; amendments to title 13, Cal. Code Regs., sections 1900, 1956.8, 1961.2, 1965, 1968.2, 1971.1, 1971.5, 2035, 2036, 2111, 2112, 2113, 2114, 2115, 2116, 2117, 2118, 2119, 2121, 2123, 2125, 2126, 2127, 2128, 2129, 2130, 2131, 2133, 2137, 2139, 2140, 2141, 2142, 2143, 2144, 2145, 2146, 2147, 2148, 2149, 2166, 2166.1, 2167, 2168, 2169, 2170, 2423, and 2485; and amendments to title 17 Cal. Code Regs. sections 95562 and 95663. EPA's waiver decision also includes the 2023 Targeted Amendments to Omnibus which were adopted on December 28, 2023 by CARB Executive Order No. R–23–006. The 2023 Targeted Amendments are comprised of title 13, California Code of Regulations (Cal. Code Regs.) sections 1956.8, 1971.1, and 1971.5.

[4] The Decision Document can be found at EPA–HQ–OAR–2022–0332.

[5] States are expressly preempted from adopting or attempting to enforce any standard or other requirement relating to the control of emissions from new nonroad engines which are used in construction equipment or vehicles or used in farm equipment or vehicles and which are smaller than 175 horsepower. Such express preemption under section 209(e)(1) of the Act also applies to new locomotives or new engines used in locomotives.

[6] See "Air Pollution Control; Preemption of State Regulation for Nonroad Engine and Vehicle Standards," 59 FR 36969 (July 20, 1994).

[7] See "Control of Air Pollution: Emission Standards for New Nonroad Compression-Ignition Engines at or Above 37 Kilowatts; Preemption of State Regulation for Nonroad Engine and Vehicle Standards; Amendments to Rules," 62 FR 67733 (December 30, 1997). The applicable regulations are now found in 40 CFR part 1074, subpart B, Part 1074.

[8] EPA has interpreted section 209(b)(1)(C) in the context of section 209(b) motor vehicle waivers.

program as well and justifying the need for its own nonroad vehicle emission control program, which includes the subject standards and procedures. Although EPA believes it unnecessary, CARB has also demonstrated the need for the Omnibus Low NO$_X$ standards within the Omnibus regulations. The administrative record, including information presented to me by parties opposing California's waiver (and authorization) request, did not demonstrate that California no longer has compelling and extraordinary conditions justifying a need for its own motor vehicle emission control program and its own nonroad vehicle emission control program, or alternatively, a need for the Omnibus Low NO$_X$ standards. Therefore, based on the record, I agree that California continues to have compelling and extraordinary conditions which require its own programs, or alternatively, a need for the Omnibus Low NO$_X$ standards. Information presented to me by parties opposing the waiver did not demonstrate otherwise. Thus, I cannot deny the waiver based on section 209(b)(1)(B) or section 209(e)(2)(A)(ii).

CARB has submitted information that its emission standards and test procedures are technologically feasible and present no inconsistency with Federal requirements and are, therefore, consistent with section 202(a) of the Act and are consistent with section 209 as required by section 209(e)(2)(A)(iii). The administrative record, including information presented to me by parties opposing California's waiver and authorization requests, did not satisfy the burden of persuading EPA that the standards are not technologically feasible within the available lead time, considering costs, or are otherwise inconsistent with section 202(a) (for onroad) or section 209 (for nonroad). Thus, based on the record, I cannot deny the waiver based on section 209(b)(1)(C) or section 209(e)(2)(A)(iii).

Accordingly, I hereby granted the waiver and authorization requested by California.

Section 307(b)(1) of the CAA govern judicial review of final actions by EPA. Petitions for review must be filed by March 7, 2025.

As with past waiver and authorization decisions, this action is not a rule as defined by Executive Order 12866. Therefore, it is exempt from review by the Office of Management and Budget as required for rules and regulations by Executive Order 12866.

In addition, this action is not a rule as defined in the Regulatory Flexibility Act, 5 U.S.C. 601(2). Therefore, EPA has not prepared a supporting regulatory

flexibility analysis addressing the impact of this action on small business entities.

The Congressional Review Act, 5 U.S.C. 801 *et seq.*, as added by the Small Business Regulatory Enforcement Fairness Act of 1996, does not apply because this action is not a rule, for purposes of 5 U.S.C. 804(3).

**Michael S. Regan,**

*Administrator.*

[FR Doc. 2024–31125 Filed 1–3–25; 8:45 am]

**BILLING CODE 6560–50–P**

---

**ENVIRONMENTAL PROTECTION AGENCY**

**[EPA–HQ–OPPT–2018–0320; FRL–11655–02–OCSPP]**

**Toxic Substances Control Act (TSCA) Review of CBI Claims for the Identity of Chemicals in the TSCA Inventory; Extension of Review Period**

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Notice.

---

**SUMMARY:** The Environmental Protection Agency (EPA or Agency) is announcing the extension of the review period for Confidential Business Information (CBI) claims for specific identities of all active chemical substances listed on the confidential portion of the Toxic Substances Control Act (TSCA) Inventory submitted to the EPA under TSCA. EPA has determined that a further extension of the statutory review period for the review of CBI claims under TSCA is necessary to allow the Agency to complete the required reviews under TSCA.

**DATES:** The review period is extended to February 19, 2026.

**ADDRESSES:** The docket for this action, identified by docket identification (ID) number EPA–HQ–OPPT–2018–0320, is available online at *https:// www.regulations.gov.* Additional instructions for visiting the docket, along with more information about dockets generally, is available at *https:// www.epa.gov/dockets.*

**FOR FURTHER INFORMATION CONTACT:**

*For technical information:* Jessica Barkas, Project Management and Operations Division (7401), Office of Pollution Prevention and Toxics, Environmental Protection Agency, 1200 Pennsylvania Ave. NW, Washington, DC 20460–0001; telephone number: (202) 250–8880; email address: *barkas.jessica@epa.gov.*

*For general information:* The TSCA-Hotline, ABVI-Goodwill, 422 South Clinton Ave., Rochester, NY 14620;

telephone number: (202) 554–1404; email address: *TSCA-Hotline@epa.gov.*

**SUPPLEMENTARY INFORMATION:**

**I. Does this action apply to me?**

You may be affected by this action if you submitted a Notice of Activity Form A to EPA under TSCA section 8(b)(4) and 40 CFR part 710, subpart B and asserted any CBI claims concerning the specific identities of the chemical substances you reported. Persons who seek information on such submissions may also be affected by this action. The following list of North American Industrial Classification System (NAICS) codes is not intended to be exhaustive, but rather provides a guide to help readers determine whether this document applies to them. Potentially affected entities may include:

• Manufacturers, importers, or processors of chemical substances (NAICS codes 325 and 324110), *e.g.*, chemical manufacturing and petroleum refineries.

If you have any questions regarding the applicability of this action to a particular entity, consult the technical contact person listed under **FOR FURTHER INFORMATION CONTACT.**

**II. What is the Agency's authority for taking this action?**

TSCA authorizes the extension of the Review Plan deadline in TSCA section 8(b)(4)(E)(ii)(I), 15 U.S.C. 2607(b)(4)(E)(ii)(I).

**III. What action is the Agency taking?**

EPA is announcing to the public that it is further extending an Agency review deadline pursuant to the authority in TSCA section 8(b)(4)(E)(ii)(I), 15 U.S.C. 2607(b)(4)(E)(ii)(I). The additional time is necessary to complete the reviews given the volume of submissions that require review, information technology issues, insufficient resources and other legal and administrative delays that have affected the review process. EPA previously extended the review period by one year, to February 19, 2025 (89 FR 4605, January 24, 2024 (FRL–11655–01–OCSPP)). As discussed in that document, EPA has evaluated its progress toward completing the requirements for the Agency to review CBI substantiations outlined in the final rule titled "Procedures for Review of CBI Claims for the Identity of Chemicals in the TSCA Inventory" (Review Plan rule), (85 FR 13062, March 6, 2020 (FRL–10005–48)) and has concluded that a further one year extension will be necessary to complete the Review Plan reviews.

Ex. D

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

AMERICAN FREE ENTERPRISE
CHAMBER OF COMMERCE

*Petitioner*,

v.                                     No. _____

U.S. ENVIRONMENTAL
PROTECTION AGENCY,

*Respondent.*

## PETITION FOR REVIEW

Pursuant to Section 307(b)(1) of the Clean Air Act, 42
U.S.C. § 7607(b)(1), Section 702 of the Administrative Procedure Act, 5
U.S.C. § 702, and Rule 15(a) of the Federal Rules of Appellate Procedure,
Petitioner American Free Enterprise Chamber of Commerce hereby
petitions this Court for review of a final action of the United States
Environmental Protection Agency (EPA). *See* Notice of Decision,
*California State Motor Vehicle and Engine Pollution Control Standards;*
*Advanced Clean Cars II; Waiver of Preemption; Notice of Decision*, 90 Fed.

Reg. 642 (Jan. 6, 2025) ("Notice of Decision"). A copy of the Notice of Decision is attached as Exhibit A to this petition.

This Petition is timely. "Any petition for review" of final EPA actions under chapter 85 of title 42 of the U.S. Code "shall be filed within sixty days from the date notice of such promulgation, approval, or action appears in the Federal Register." 42 U.S.C. § 7607(b)(1). The challenged final EPA action was published in the Federal Register on January 6, 2025.

Jurisdiction is proper because Petitioner is adversely affected by this final agency action, which can be challenged in a U.S. Court of Appeals under 42 U.S.C. § 7607(b)(1). Venue is proper because the challenged final action grants the State of California's request for a waiver of Clean Air Act preemption under 42 U.S.C. § 7543(b). Such an action is "locally or regionally applicable" and thus "may be filed only in the United States Court of Appeals for the appropriate circuit," unless EPA determines that the waiver has "nationwide scope or effect" and publishes a contemporaneous finding "that such action is based on such determination," in which case the U.S. Court of Appeals for the D.C. Circuit is the exclusive venue. 42 U.S.C. § 7607(b)(1); *see also Texas v.*

2

*EPA*, 829 F.3d 405, 419 (5th Cir. 2016) ("The finding must be published as part of the action itself."). Here, EPA did not publish such a venue determination. The Ninth Circuit is thus the "appropriate circuit" under the Clean Air Act because the waiver applicant, the State of California, resides within the Ninth Circuit.

Petitioner respectfully requests that this Court (1) grant the petition and declare that the final agency action is unlawful; (2) vacate, enjoin, and set aside the final agency action; and (3) provide such other relief as this Court deems appropriate.

Dated: January 6, 2025

Respectfully submitted,

Michael Buschbacher
  *Counsel of Record*
James R. Conde
Andrew W. Smith
Nicholas A. Cordova
BOYDEN GRAY PLLC
800 Connecticut Avenue NW
Suite 900
Washington, DC 20006
202-955-0620
mbuschbacher@boydengray.com
jconde@boydengray.com
asmith@boydengray.com
ncordova@boydengray.com

3

# RULE 26.1 STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Ninth Circuit Rule 26.1-1, Petitioners hereby make the following disclosures:

Petitioner American Free Enterprise Chamber of Commerce ("AmFree") is a non-profit, tax-exempt entity organized in the manner allowed by Section 501(c)(6) of the Internal Revenue Code. AmFree has no parent corporation, and no publicly held company has 10% or greater ownership in AmFree.

Dated: January 6, 2025                      /s/ Michael Buschbacher

# CERTIFICATE OF SERVICE

Pursuant to Federal Rules of Appellate Procedure 3(d), 15(c), and 25, Ninth Circuit Rule 25-5, and 40 C.F.R. § 23.12(a), I hereby certify that that on January 6, 2025, I directed the foregoing Petition for Review and Rule 26.1 Statement to be served by United States certified mail, return receipt requested, upon the following:

> U.S. Environmental Protection Agency
> Correspondence Control Unit
> Office of General Counsel (2311)
> 1200 Pennsylvania Avenue NW
> Washington, DC 20460
>
> Jane Nishida
> Acting Administrator
> U.S. Environmental Protection Agency
> 1200 Pennsylvania Avenue NW
> Washington, DC 20460

Dated: January 6, 2025                 /s/ Michael Buschbacher

# Exhibit A

authorization request, did not demonstrate that California arbitrarily or capriciously reached this protectiveness determination. Therefore, based on the record, I cannot find California's determination to be arbitrary and capricious under section 209(e)(2)(A)(i).

CARB has demonstrated the existence of compelling and extraordinary conditions justifying the need for such State standards. The administrative record, including information presented to me by parties opposing California's authorization request, did not demonstrate that California does not need such State standards to meet compelling and extraordinary conditions. Thus, based on the record, I cannot deny the authorization based on section 209(e)(2)(A)(ii).

CARB has submitted information that its emission standards and test procedures are consistent with section 209(a), section 209(e)(1), and section 209(b)(1)(C) of the Act. The administrative record, including information presented to me by parties opposing California's authorization request, did not satisfy the burden of persuading EPA that the standards are not consistent with section 209. Thus, based on the record, I cannot deny the authorization based on section 209(e)(2)(A)(iii).

Accordingly, I hereby granted the authorization requested by California.

Section 307(b)(1) of the CAA governs judicial review of final actions by the EPA. Petitions for review must be filed by March 7, 2025.

As with past authorization decisions, this action is not a rule as defined by Executive Order 12866. Therefore, it is exempt from review by the Office of Management and Budget as required for rules and regulations by Executive Order 12866.

In addition, this action is not a rule as defined in the Regulatory Flexibility Act, 5 U.S.C. 601(2). Therefore, EPA has not prepared a supporting regulatory flexibility analysis addressing the impact of this action on small business entities.

The Congressional Review Act, 5 U.S.C. 801 *et seq.,* as added by the Small Business Regulatory Enforcement Fairness Act of 1996, does not apply because this action is not a rule, for purposes of 5 U.S.C. 804(3).

**Michael S. Regan,**
*Administrator.*
[FR Doc. 2024–31123 Filed 1–3–25; 8:45 am]
**BILLING CODE 6560–50–P**

# ENVIRONMENTAL PROTECTION AGENCY

[EPA–HQ–OAR–2023–0292; FRL–11010–02–OAR]

## California State Motor Vehicle and Engine Pollution Control Standards; Advanced Clean Cars II; Waiver of Preemption; Notice of Decision

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Notice of decision.

**SUMMARY:** The Environmental Protection Agency ("EPA") is providing notice of its decision granting the California Air Resources Board's ("CARB's") request for a waiver of Clean Air Act preemption for its Advanced Clean Cars II ("ACC II") regulations. EPA's decision was issued under the authority of the Clean Air Act ("CAA" or "Act") section 209.

**DATES:** Petitions for review must be filed by March 7, 2025.

**ADDRESSES:** EPA has established a docket for this action under Docket ID EPA–HQ–OAR–2023–0292. All documents relied upon in making this decision, including those submitted to EPA by CARB, are contained in the public docket. Publicly available docket materials are available either electronically through *www.regulations.gov* or in hard copy at the EPA Docket Center, WJC West Building, Room 3334, 1301 Constitution Avenue NW, Washington, DC 20004. The Docket Center's hours of operation are 8:30 a.m. to 4:30 p.m.; generally, it is open Monday through Friday, except Federal holidays. The electronic mail (email) address for the EPA Docket Center is: *a-and-r-Docket@epa.gov.* An electronic version of the public docket is available through the Federal government's electronic public docket and comment system. You may access EPA dockets at *http://www.regulations.gov.* After opening the *www.regulations.gov* website, enter EPA–HQ–OAR–2023–0292 in the "Enter Keyword or ID" fill-in box to view documents in the record. Although a part of the official docket, the public docket does not include Confidential Business Information ("CBI") or other information whose disclosure is restricted by statute.

EPA's Office of Transportation and Air Quality ("OTAQ") maintains a web page that contains general information on its review of California waiver and authorization requests. Included on that page are links to prior waiver **Federal Register** notices, some of which are cited in this notice; the page can be

accessed at: *https://www.epa.gov/state-and-local-transportation/vehicle-emissions-california-waivers-and-authorizations.*

**FOR FURTHER INFORMATION CONTACT:** Michael Olechiw, Office of Transportation and Air Quality, U.S. Environmental Protection Agency, 2000 Traverwood Drive, Ann Arbor, MI 48105. Telephone: 734–214–4297. Email: *California-Waivers-and-Authorizations@epa.gov.*

**SUPPLEMENTARY INFORMATION:** On December 26, 2023, EPA published a **Federal Register** notice announcing its receipt of CARB's waiver request. In that notice, EPA invited public comment on California's waiver request and an opportunity to present testimony at a public hearing.[1] EPA held a public hearing on January 10, 2024, and the written comment period closed on February 27, 2024.[2] EPA has considered all comments submitted to the public docket on this matter.

On December 17, 2024, I signed a Decision Document granting California a waiver of preemption pursuant to section 209(b) of the CAA, as amended, 42 U.S.C. 7543(b), for regulations applicable to new 2026 and subsequent model year (MY) California on-road light- and medium-duty vehicles, hereafter the Advanced Clean Cars II ("ACC II") regulations.[3] The ACC II program includes a series of requirements regarding California's low emission vehicle ("LEV") IV regulation and a series of requirements regarding its zero-emission vehicle ("ZEV") program.[4] The LEV IV requirements include, for example, applying exhaust and evaporative emission fleet-average standards solely to vehicles powered by internal combustion engines and excluding ZEVs from the fleet calculation. The LEV IV requirements reduce the maximum allowed exhaust and evaporative emission rates from

---

[1] 88 FR 88908 (December 26, 2023).

[2] A transcript of the public hearing is located at EPA–HQ–OAR–2023–0292–0056 and all written comments are also located at *regulations.gov* at EPA–HQ–OAR–2023–0292.

[3] EPA's Decision Document can be found at EPA–HQ–OAR–2023–0292. In addition to the Decision Document, EPA prepared a Supplemental Response to Comments document that is also part of the Administrator's waiver decision. The Supplemental Response to Comments document can also be found at EPA–HQ–OAR–2023–0292.

[4] EPA's waiver decision includes the entire ACC II regulatory text that can be found in Attachment 7 to CARB's May 22, 2023, ACC II waiver request (the ACC II Waiver Support Document) found at EPA–HQ–OAR–2023–0292–0034. (CARB's entire waiver submission to EPA is found at EPA–HQ–OAR–2023–0292). The specific regulatory provisions under EPA's waiver consideration can be found at footnote 36 to the ACC II Waiver Support Document.

vehicles under the existing fleet-average standard and aim to reduce cold-start emissions by applying the emissions standards to a broader range of in-use driving conditions. The ZEV requirements of ACC II include, for example, a requirement for vehicle manufacturers to sell increasing percentages of ZEVs beginning with the 2026 MY. Manufacturers can meet up to 20 percent of their sales requirements using plug-in hybrid vehicles (PHEVs) that meet specified requirements. A comprehensive description of California's ACC II program can be found in the Decision Document for this waiver and in materials submitted to the Docket by CARB.

Section 209(b) of the Act provides that the Administrator, after notice and opportunity for public hearing, shall waive Federal preemption for California to enforce new motor vehicle emission standards and accompanying enforcement procedures unless certain criteria are met. The criteria for denying such a waiver include consideration of whether California arbitrarily and capriciously determined that its standards are, in the aggregate, at least as protective of public health and welfare as the applicable Federal standards; whether California does not need such State standards to meet compelling and extraordinary conditions; and whether such State standards and accompanying enforcement procedures are not consistent with section 202(a) of the Act.

CARB determined that these standards and accompanying enforcement procedures do not cause California's standards, in the aggregate, to be less protective to public health and welfare than the applicable Federal standards. The administrative record, including information presented to me by parties opposing California's waiver, did not demonstrate that California arbitrarily or capriciously reached this protectiveness determination. Therefore, based on the record, I cannot find California's determination to be arbitrary and capricious under section 209(b)(1)(A).

CARB has demonstrated the existence of compelling and extraordinary conditions justifying the need for such State standards. The administrative record, including information presented to me by parties opposing California's waiver request, did not demonstrate that California does not need such State standards to meet compelling and extraordinary conditions. Thus, based on the record, I cannot deny the waiver based on section 209(b)(1)(B).

CARB has submitted information that its emission standards and test procedures are technologically feasible, present no inconsistency with Federal requirements, and are consistent with section 202(a) of the Act. The administrative record, including information presented to me by parties opposing California's waiver request, did not satisfy the burden of persuading EPA that the standards are not consistent with section 202(a). Thus, based on the record, I cannot deny the waiver based on section 209(b)(1)(C).

Accordingly, I hereby granted the waiver requested by California.

Section 307(b)(1) of the CAA governs judicial review of final actions by the EPA. Petitions for review must be filed by March 7, 2025.

As with past waiver decisions, this action is not a rule as defined by Executive Order 12866. Therefore, it is exempt from review by the Office of Management and Budget as required for rules and regulations by Executive Order 12866.

In addition, this action is not a rule as defined in the Regulatory Flexibility Act, 5 U.S.C. 601(2). Therefore, EPA has not prepared a supporting regulatory flexibility analysis addressing the impact of this action on small business entities.

The Congressional Review Act, 5 U.S.C. 801 *et seq.*, as added by the Small Business Regulatory Enforcement Fairness Act of 1996, does not apply because this action is not a rule, for purposes of 5 U.S.C. 804(3).

**Michael S. Regan,**
*Administrator.*

[FR Doc. 2024–31128 Filed 1–3–25; 8:45 am]

**BILLING CODE 6560–50–P**

---

## ENVIRONMENTAL PROTECTION AGENCY

**[EPA–HQ–OAR–2022–0332; FRL–9902–02–OAR]**

### California State Motor Vehicle and Engine and Nonroad Engine Pollution Control Standards; The "Omnibus" Low NO$_X$ Regulation; Waiver of Preemption; Notice of Decision

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Notice of decision.

**SUMMARY:** The Environmental Protection Agency ("EPA") is providing notice of its decision to grant the California Air Resources Board's ("CARB") request for a waiver of Clean Air Act (CAA) preemption for its Heavy-Duty Vehicle and Engine "Omnibus" Low NO$_X$

Regulations ("Omnibus Low NO$_X$ program"). EPA's decision also includes an authorization for portions of the Omnibus Low NO$_X$ program that pertain to off-road diesel engines. This decision was issued under the authority of the Clean Air Act ("CAA" or "Act") section 209.

**DATES:** Petitions for review must be filed by March 7, 2025.

**ADDRESSES:** EPA has established a docket for this action under Docket ID EPA–HQ–OAR–2022–0332. All documents relied upon in making this decision, including those submitted to EPA by CARB, are contained in the public docket. Publicly available docket materials are available either electronically through *www.regulations.gov* or in hard copy at the EPA Docket Center, WJC West Building, Room 3334, 1301 Constitution Avenue NW, Washington, DC 20004. The Docket Center's hours of operation are 8:30 a.m. to 4:30 p.m.; generally, it is open Monday through Friday, except Federal holidays. The electronic mail (email) address for the EPA Docket is: *a-and-r-Docket@epa.gov.* An electronic version of the public docket is available through the Federal government's electronic public docket and comment system. You may access EPA dockets at *http://www.regulations.gov.* After opening the *www.regulations.gov* website, enter EPA–HQ–OAR–2022–0332 in the "Enter Keyword or ID" fill-in box to view documents in the record. Although a part of the official docket, the public docket does not include Confidential Business Information ("CBI") or other information whose disclosure is restricted by statute.

EPA's Office of Transportation and Air Quality ("OTAQ") maintains a web page that contains general information on its review of California waiver and authorization requests. Included on that page are links to prior waiver **Federal Register** notices, some of which are cited in this notice; the page can be accessed at: *https://www.epa.gov/state-and-local-transportation/vehicle-emissions-california-waivers-and-authorizations.*

**FOR FURTHER INFORMATION CONTACT:** Brian Nelson, Office of Transportation and Air Quality, U.S. Environmental Protection Agency, 2000 Traverwood Drive, Ann Arbor, Michigan 48105. Telephone: 734–214–4278. Email: *California-Waivers-and-Authorizations@epa.gov.*

**SUPPLEMENTARY INFORMATION:** On June 13, 2022, EPA published a **Federal Register** notice announcing its receipt of California's waiver request. In that notice, EPA invited public comment on

Ex. E

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| AMERICAN PETROLEUM INSTITUTE,<br><br>            *Petitioner*,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and LEE M. ZELDIN, in his official capacity as Administrator of the United States Environmental Protection Agency,<br><br>            *Respondents*. | Case No. 25-_____ |

## PETITION FOR REVIEW

Pursuant to Section 307(b)(1) of the Clean Air Act, 42 U.S.C. §7607(b)(1), Section 702 of the Administrative Procedure Act, 5 U.S.C. §702, and Federal Rule of Appellate Procedure 15(a), Petitioner American Petroleum Institute ("API") petitions this Court for review of the final action of Respondents the United States Environmental Protection Agency ("EPA") and Lee M. Zeldin, in his official capacity as Administrator of the EPA, entitled "California State Motor Vehicle and Engine Pollution Control Standards; Advanced Clean Cars II; Waiver of Preemption; Notice of Decision," published at 90 Fed. Reg. 642 (Jan. 6, 2025). A copy of that final agency action is attached to this petition as Exhibit A.

EPA's final action exceeds the agency's statutory authority and is otherwise arbitrary, capricious, an abuse of discretion, and not in accordance with law.  *See* 5 U.S.C. §706(2)(A), (C).  Petitioner accordingly asks this Court to declare unlawful and vacate EPA's final action.  *See id.*

This Court has jurisdiction over this case under Section 307(b)(1) of the Clean Air Act, 42 U.S.C. §7607(b)(1).  Section 307(b)(1) provides that review of any final action by the Administrator that is "locally or regionally applicable" may be sought "only in the United States Court of Appeals for the appropriate circuit," while review of any final action that is "nationally applicable" may be sought "only in the United States Court of Appeals for the District of Columbia."  *Id.*[1]  The challenged final action here by its terms waives preemption for regulations issued by the State of California, which is located within this Circuit.  As such, insofar as the challenged final action here is "locally or regionally applicable" because it waives preemption for regulations issued by the State of California, Section 307(b)(1) makes this Court the "appropriate circuit" for API's petition for review.  *Id.*[2]

---

[1] Review is also limited to the United States Court of Appeals for the District of Columbia if the challenged action "is based on a determination of nationwide scope or effect and if in taking such action the Administrator finds and publishes that such action is based on such a determination."  42 U.S.C. §7607(b)(1).  The Administrator did not make or publish any such finding here.

[2] As a protective measure, to the extent that the challenged final action here is "nationally applicable" under Section 307(b)(1), 42 U.S.C. §7607(b)(1), API is also

Dated: March 7, 2025

Respectfully submitted,

s/Paul D. Clement
PAUL D. CLEMENT
*Counsel of Record*
C. HARKER RHODES IV
NICHOLAS A. AQUART*
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com

*Supervised by principals of the firm who are members of the Virginia bar

*Counsel for Petitioner*

---

simultaneously filing a parallel petition for review in the United States Court of Appeals for the District of Columbia.

## RULE 26.1 DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Ninth Circuit Rule 26.1-1, Petitioner American Petroleum Institute ("API") hereby discloses that it is a national trade association that represents all segments of America's natural gas and oil industry, which supports more than 11 million U.S. jobs and is backed by a growing grassroots movement of millions of Americans. API's nearly 600 members produce, process, and distribute most of the Nation's energy, and participate in API Energy Excellence, which is accelerating environmental and safety progress by fostering new technologies and transparent reporting. API has no parent entity, and no publicly held corporation has a 10% or greater ownership stake in API.

Dated: March 7, 2025                         Respectfully submitted,

                                             s/Paul D. Clement
                                             PAUL D. CLEMENT
                                             *Counsel of Record*
                                             C. HARKER RHODES IV
                                             NICHOLAS A. AQUART*
                                             CLEMENT & MURPHY, PLLC
                                             706 Duke Street
                                             Alexandria, VA 22314
                                             (202) 742-8900
                                             paul.clement@clementmurphy.com

                                             *Supervised by principals of the firm who are
                                             members of the Virginia bar

                                             *Counsel for Petitioner*

# CERTIFICATE OF SERVICE

I certify that on March 7, 2025, I served a copy of the foregoing petition, Exhibit A thereto, and Rule 26.1 disclosure statement by United States first-class mail on the following:

> Lee M. Zeldin, Administrator
> United States Environmental Protection Agency
> Office of the Administrator
> Mail Code 1101A
> 1200 Pennsylvania Avenue NW
> Washington, D.C. 20460
>
> Correspondence Control Unit
> Office of General Counsel
> United States Environmental Protection Agency
> Mail Code 2311
> 1200 Pennsylvania Avenue NW
> Washington, D.C. 20460
>
> The Honorable Pamela J. Bondi
> Attorney General of the United States
> United States Department of Justice
> 950 Pennsylvania Avenue NW
> Washington, DC 20530-0001

Dated: March 7, 2025

Respectfully submitted,

s/Paul D. Clement
PAUL D. CLEMENT
*Counsel of Record*
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com

*Counsel for Petitioner*

# Exhibit A

authorization request, did not demonstrate that California arbitrarily or capriciously reached this protectiveness determination. Therefore, based on the record, I cannot find California's determination to be arbitrary and capricious under section 209(e)(2)(A)(i).

CARB has demonstrated the existence of compelling and extraordinary conditions justifying the need for such State standards. The administrative record, including information presented to me by parties opposing California's authorization request, did not demonstrate that California does not need such State standards to meet compelling and extraordinary conditions. Thus, based on the record, I cannot deny the authorization based on section 209(e)(2)(A)(ii).

CARB has submitted information that its emission standards and test procedures are consistent with section 209(a), section 209(e)(1), and section 209(b)(1)(C) of the Act. The administrative record, including information presented to me by parties opposing California's authorization request, did not satisfy the burden of persuading EPA that the standards are not consistent with section 209. Thus, based on the record, I cannot deny the authorization based on section 209(e)(2)(A)(iii).

Accordingly, I hereby granted the authorization requested by California.

Section 307(b)(1) of the CAA governs judicial review of final actions by the EPA. Petitions for review must be filed by March 7, 2025.

As with past authorization decisions, this action is not a rule as defined by Executive Order 12866. Therefore, it is exempt from review by the Office of Management and Budget as required for rules and regulations by Executive Order 12866.

In addition, this action is not a rule as defined in the Regulatory Flexibility Act, 5 U.S.C. 601(2). Therefore, EPA has not prepared a supporting regulatory flexibility analysis addressing the impact of this action on small business entities.

The Congressional Review Act, 5 U.S.C. 801 *et seq.,* as added by the Small Business Regulatory Enforcement Fairness Act of 1996, does not apply because this action is not a rule, for purposes of 5 U.S.C. 804(3).

**Michael S. Regan,**
*Administrator.*
[FR Doc. 2024–31123 Filed 1–3–25; 8:45 am]
**BILLING CODE 6560–50–P**

# ENVIRONMENTAL PROTECTION AGENCY

[EPA–HQ–OAR–2023–0292; FRL–11010–02–OAR]

## California State Motor Vehicle and Engine Pollution Control Standards; Advanced Clean Cars II; Waiver of Preemption; Notice of Decision

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Notice of decision.

**SUMMARY:** The Environmental Protection Agency ("EPA") is providing notice of its decision granting the California Air Resources Board's ("CARB's") request for a waiver of Clean Air Act preemption for its Advanced Clean Cars II ("ACC II") regulations. EPA's decision was issued under the authority of the Clean Air Act ("CAA" or "Act") section 209.

**DATES:** Petitions for review must be filed by March 7, 2025.

**ADDRESSES:** EPA has established a docket for this action under Docket ID EPA–HQ–OAR–2023–0292. All documents relied upon in making this decision, including those submitted to EPA by CARB, are contained in the public docket. Publicly available docket materials are available either electronically through *www.regulations.gov* or in hard copy at the EPA Docket Center, WJC West Building, Room 3334, 1301 Constitution Avenue NW, Washington, DC 20004. The Docket Center's hours of operation are 8:30 a.m. to 4:30 p.m.; generally, it is open Monday through Friday, except Federal holidays. The electronic mail (email) address for the EPA Docket Center is: *a-and-r-Docket@epa.gov.* An electronic version of the public docket is available through the Federal government's electronic public docket and comment system. You may access EPA dockets at *http://www.regulations.gov.* After opening the *www.regulations.gov* website, enter EPA–HQ–OAR–2023–0292 in the "Enter Keyword or ID" fill-in box to view documents in the record. Although a part of the official docket, the public docket does not include Confidential Business Information ("CBI") or other information whose disclosure is restricted by statute.

EPA's Office of Transportation and Air Quality ("OTAQ") maintains a web page that contains general information on its review of California waiver and authorization requests. Included on that page are links to prior waiver **Federal Register** notices, some of which are cited in this notice; the page can be

accessed at: *https://www.epa.gov/state-and-local-transportation/vehicle-emissions-california-waivers-and-authorizations.*

**FOR FURTHER INFORMATION CONTACT:** Michael Olechiw, Office of Transportation and Air Quality, U.S. Environmental Protection Agency, 2000 Traverwood Drive, Ann Arbor, MI 48105. Telephone: 734–214–4297. Email: *California-Waivers-and-Authorizations@epa.gov.*

**SUPPLEMENTARY INFORMATION:** On December 26, 2023, EPA published a **Federal Register** notice announcing its receipt of CARB's waiver request. In that notice, EPA invited public comment on California's waiver request and an opportunity to present testimony at a public hearing.[1] EPA held a public hearing on January 10, 2024, and the written comment period closed on February 27, 2024.[2] EPA has considered all comments submitted to the public docket on this matter.

On December 17, 2024, I signed a Decision Document granting California a waiver of preemption pursuant to section 209(b) of the CAA, as amended, 42 U.S.C. 7543(b), for regulations applicable to new 2026 and subsequent model year (MY) California on-road light- and medium-duty vehicles, hereafter the Advanced Clean Cars II ("ACC II") regulations.[3] The ACC II program includes a series of requirements regarding California's low emission vehicle ("LEV") IV regulation and a series of requirements regarding its zero-emission vehicle ("ZEV") program.[4] The LEV IV requirements include, for example, applying exhaust and evaporative emission fleet-average standards solely to vehicles powered by internal combustion engines and excluding ZEVs from the fleet calculation. The LEV IV requirements reduce the maximum allowed exhaust and evaporative emission rates from

---

[1] 88 FR 88908 (December 26, 2023).

[2] A transcript of the public hearing is located at EPA–HQ–OAR–2023–0292–0056 and all written comments are also located at *regulations.gov* at EPA–HQ–OAR–2023–0292.

[3] EPA's Decision Document can be found at EPA–HQ–OAR–2023–0292. In addition to the Decision Document, EPA prepared a Supplemental Response to Comments document that is also part of the Administrator's waiver decision. The Supplemental Response to Comments document can also be found at EPA–HQ–OAR–2023–0292.

[4] EPA's waiver decision includes the entire ACC II regulatory text that can be found in Attachment 7 to CARB's May 22, 2023, ACC II waiver request (the ACC II Waiver Support Document) found at EPA–HQ–OAR–2023–0292–0034. (CARB's entire waiver submission to EPA is found at EPA–HQ–OAR–2023–0292). The specific regulatory provisions under EPA's waiver consideration can be found at footnote 36 to the ACC II Waiver Support Document.

vehicles under the existing fleet-average standard and aim to reduce cold-start emissions by applying the emissions standards to a broader range of in-use driving conditions. The ZEV requirements of ACC II include, for example, a requirement for vehicle manufacturers to sell increasing percentages of ZEVs beginning with the 2026 MY. Manufacturers can meet up to 20 percent of their sales requirements using plug-in hybrid vehicles (PHEVs) that meet specified requirements. A comprehensive description of California's ACC II program can be found in the Decision Document for this waiver and in materials submitted to the Docket by CARB.

Section 209(b) of the Act provides that the Administrator, after notice and opportunity for public hearing, shall waive Federal preemption for California to enforce new motor vehicle emission standards and accompanying enforcement procedures unless certain criteria are met. The criteria for denying such a waiver include consideration of whether California arbitrarily and capriciously determined that its standards are, in the aggregate, at least as protective of public health and welfare as the applicable Federal standards; whether California does not need such State standards to meet compelling and extraordinary conditions; and whether such State standards and accompanying enforcement procedures are not consistent with section 202(a) of the Act.

CARB determined that these standards and accompanying enforcement procedures do not cause California's standards, in the aggregate, to be less protective to public health and welfare than the applicable Federal standards. The administrative record, including information presented to me by parties opposing California's waiver, did not demonstrate that California arbitrarily or capriciously reached this protectiveness determination. Therefore, based on the record, I cannot find California's determination to be arbitrary and capricious under section 209(b)(1)(A).

CARB has demonstrated the existence of compelling and extraordinary conditions justifying the need for such State standards. The administrative record, including information presented to me by parties opposing California's waiver request, did not demonstrate that California does not need such State standards to meet compelling and extraordinary conditions. Thus, based on the record, I cannot deny the waiver based on section 209(b)(1)(B).

CARB has submitted information that its emission standards and test procedures are technologically feasible, present no inconsistency with Federal requirements, and are consistent with section 202(a) of the Act. The administrative record, including information presented to me by parties opposing California's waiver request, did not satisfy the burden of persuading EPA that the standards are not consistent with section 202(a). Thus, based on the record, I cannot deny the waiver based on section 209(b)(1)(C).

Accordingly, I hereby granted the waiver requested by California.

Section 307(b)(1) of the CAA governs judicial review of final actions by the EPA. Petitions for review must be filed by March 7, 2025.

As with past waiver decisions, this action is not a rule as defined by Executive Order 12866. Therefore, it is exempt from review by the Office of Management and Budget as required for rules and regulations by Executive Order 12866.

In addition, this action is not a rule as defined in the Regulatory Flexibility Act, 5 U.S.C. 601(2). Therefore, EPA has not prepared a supporting regulatory flexibility analysis addressing the impact of this action on small business entities.

The Congressional Review Act, 5 U.S.C. 801 *et seq.,* as added by the Small Business Regulatory Enforcement Fairness Act of 1996, does not apply because this action is not a rule, for purposes of 5 U.S.C. 804(3).

**Michael S. Regan,**
*Administrator.*
[FR Doc. 2024–31128 Filed 1–3–25; 8:45 am]
**BILLING CODE 6560–50–P**

---

## ENVIRONMENTAL PROTECTION AGENCY

**[EPA–HQ–OAR–2022–0332; FRL–9902–02–OAR]**

### California State Motor Vehicle and Engine and Nonroad Engine Pollution Control Standards; The "Omnibus" Low $NO_X$ Regulation; Waiver of Preemption; Notice of Decision

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Notice of decision.

**SUMMARY:** The Environmental Protection Agency ("EPA") is providing notice of its decision to grant the California Air Resources Board's ("CARB") request for a waiver of Clean Air Act (CAA) preemption for its Heavy-Duty Vehicle and Engine "Omnibus" Low $NO_X$

Regulations ("Omnibus Low $NO_X$ program"). EPA's decision also includes an authorization for portions of the Omnibus Low $NO_X$ program that pertain to off-road diesel engines. This decision was issued under the authority of the Clean Air Act ("CAA" or "Act") section 209.

**DATES:** Petitions for review must be filed by March 7, 2025.

**ADDRESSES:** EPA has established a docket for this action under Docket ID EPA–HQ–OAR–2022–0332. All documents relied upon in making this decision, including those submitted to EPA by CARB, are contained in the public docket. Publicly available docket materials are available either electronically through *www.regulations.gov* or in hard copy at the EPA Docket Center, WJC West Building, Room 3334, 1301 Constitution Avenue NW, Washington, DC 20004. The Docket Center's hours of operation are 8:30 a.m. to 4:30 p.m.; generally, it is open Monday through Friday, except Federal holidays. The electronic mail (email) address for the EPA Docket is: *a-and-r-Docket@epa.gov.* An electronic version of the public docket is available through the Federal government's electronic public docket and comment system. You may access EPA dockets at *http://www.regulations.gov.* After opening the *www.regulations.gov* website, enter EPA–HQ–OAR–2022–0332 in the "Enter Keyword or ID" fill-in box to view documents in the record. Although a part of the official docket, the public docket does not include Confidential Business Information ("CBI") or other information whose disclosure is restricted by statute.

EPA's Office of Transportation and Air Quality ("OTAQ") maintains a web page that contains general information on its review of California waiver and authorization requests. Included on that page are links to prior waiver **Federal Register** notices, some of which are cited in this notice; the page can be accessed at: *https://www.epa.gov/state-and-local-transportation/vehicle-emissions-california-waivers-and-authorizations.*

**FOR FURTHER INFORMATION CONTACT:** Brian Nelson, Office of Transportation and Air Quality, U.S. Environmental Protection Agency, 2000 Traverwood Drive, Ann Arbor, Michigan 48105. Telephone: 734–214–4278. Email: *California-Waivers-and-Authorizations@epa.gov.*

**SUPPLEMENTARY INFORMATION:** On June 13, 2022, EPA published a **Federal Register** notice announcing its receipt of California's waiver request. In that notice, EPA invited public comment on

Ex. F

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| AMERICAN FUEL & PETROCHEMICAL MANUFACTURERS, ENERGY MARKETERS OF AMERICA, and NATIONAL ASSOCIATION OF CONVENIENCE STORES, <br><br> Petitioners, <br><br> v. <br><br> UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and LEE M. ZELDIN, Administrator, United States Environmental Protection Agency, <br><br> Respondents. | Case No. <br><br> _____ |

## PROTECTIVE PETITION FOR REVIEW

Pursuant to Section 307(b)(1) of the Clean Air Act, 42 U.S.C. § 7607(b)(1) and Federal Rule of Appellate Procedure 15(a), American Fuel & Petrochemical Manufacturers ("AFPM"), Energy Marketers of America ("EMA"), and National Association of Convenience Stores ("NACS") hereby petition this Court for review of a final action of the United States Environmental Protection Agency ("EPA"). *See California State Motor Vehicle and Engine Pollution Control Standards; Advanced Clean Cars II; Waiver of Preemption; Notice of Decision*, 90 Fed. Reg. 642 (Jan. 6, 2025) (attached as Exhibit A). Petitioners believe that the U.S.

Circuit Court for the District of Columbia Circuit has jurisdiction and is the proper venue pursuant to 42 U.S.C. § 7607(b)(1). However, petitioners are filing this Petition for Review as a protective measure to preserve their right to judicial review in the event that this Court is determined to be the proper venue.

Dated: March 7, 2025                          Respectfully submitted,

                                               /s/ Carter G. Phillips

                                              Carter G. Phillips
                                              Daniel J. Feith
                                              Kathleen M. Mueller
                                              SIDLEY AUSTIN LLP
                                              1501 K Street, N.W.
                                              Washington, D.C. 20005
                                              (202) 736-8000
                                              cphllips@sidley.com
                                              dfeith@sidley.com
                                              kmueller@sidley.com

                                              *Counsel for Petitioners*

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| AMERICAN FUEL & PETROCHEMICAL MANUFACTURERS, ENERGY MARKETERS OF AMERICA, and NATIONAL ASSOCIATION OF CONVENIENCE STORES, <br><br> Petitioners, <br><br> v. <br><br> UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and LEE M. ZELDIN, Administrator, United States Environmental Protection Agency, <br><br> Respondents. | Case No. <br><br> _____ |

### RULE 26.1 STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, petitioners American Fuel & Petrochemical Manufacturers ("AFPM"), Energy Marketers of America ("EMA") and National Association of Convenience Stores ("NACS") hereby make the following disclosure:

AFPM is a national trade association that represents American refining and petrochemical companies. AFPM has no parent corporation, and no publicly held corporation has a 10% or greater ownership in AFPM.

EMA is a federation of 49 state and regional trade associations representing energy marketers throughout the United States. EMA, which is incorporated under the laws of the Commonwealth of Virginia, has no parent corporation, and no publicly held corporation has a 10% or greater ownership in EMA.

NACS is an international trade association that represents both the convenience and fuel retailing industries with more than 1,300 retail and 1,600 supplier company members. The United States convenience industry has more than 152,000 stores across the country, employs 2.74 million people, and had more than $859 billion in sales in 2023, of which more than $532 billion were fuel sales. The Association has no parent corporation, and no publicly held corporation has a 10% or greater ownership interest in it.

Dated: March 7, 2025        Respectfully submitted,

  /s/ Carter G. Phillips           

Carter G. Phillips
Daniel J. Feith
Kathleen M. Mueller
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000
cphllips@sidley.com
dfeith@sidley.com
kmueller@sidley.com

*Counsel for Petitioners*

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| AMERICAN FUEL & PETROCHEMICAL MANUFACTURERS, ENERGY MARKETERS OF AMERICA, and NATIONAL ASSOCIATION OF CONVENIENCE STORES,<br><br>               Petitioners,<br><br>    v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and LEE M. ZELDIN, Administrator, United States Environmental Protection Agency,<br><br>             Respondents. | Case No.<br><br>_____ |

## CERTIFICATE OF SERVICE

Pursuant to Federal Rules of Appellate Procedure 3(d), 15(c), and 25, and 40 C.F.R. § 23.12(a), I hereby certify that the foregoing Protective Petition for Review and Rule 26.1 Statement have been served by United States certified mail, return receipt requested, this 7th day of March, 2025, upon each of the following:

Hon. Lee Zeldin, Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

U.S. Environmental Protection Agency
Correspondence Control Unit
Office of General Counsel (2311)
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

Hon. Pam Bondi
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530

Hon. Adam Gustafson
Acting Assistant Attorney General
Environmental and Natural Resources Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530

Dated: March 7, 2025              /s/ Carter G. Phillips

                                  Carter G. Phillips

                                  *Counsel for Petitioners*

# Exhibit A

authorization request, did not demonstrate that California arbitrarily or capriciously reached this protectiveness determination. Therefore, based on the record, I cannot find California's determination to be arbitrary and capricious under section 209(e)(2)(A)(i).

CARB has demonstrated the existence of compelling and extraordinary conditions justifying the need for such State standards. The administrative record, including information presented to me by parties opposing California's authorization request, did not demonstrate that California does not need such State standards to meet compelling and extraordinary conditions. Thus, based on the record, I cannot deny the authorization based on section 209(e)(2)(A)(ii).

CARB has submitted information that its emission standards and test procedures are consistent with section 209(a), section 209(e)(1), and section 209(b)(1)(C) of the Act. The administrative record, including information presented to me by parties opposing California's authorization request, did not satisfy the burden of persuading EPA that the standards are not consistent with section 209. Thus, based on the record, I cannot deny the authorization based on section 209(e)(2)(A)(iii).

Accordingly, I hereby granted the authorization requested by California.

Section 307(b)(1) of the CAA governs judicial review of final actions by the EPA. Petitions for review must be filed by March 7, 2025.

As with past authorization decisions, this action is not a rule as defined by Executive Order 12866. Therefore, it is exempt from review by the Office of Management and Budget as required for rules and regulations by Executive Order 12866.

In addition, this action is not a rule as defined in the Regulatory Flexibility Act, 5 U.S.C. 601(2). Therefore, EPA has not prepared a supporting regulatory flexibility analysis addressing the impact of this action on small business entities.

The Congressional Review Act, 5 U.S.C. 801 *et seq.,* as added by the Small Business Regulatory Enforcement Fairness Act of 1996, does not apply because this action is not a rule, for purposes of 5 U.S.C. 804(3).

**Michael S. Regan,**
*Administrator.*

[FR Doc. 2024–31123 Filed 1–3–25; 8:45 am]

**BILLING CODE 6560–50–P**

# ENVIRONMENTAL PROTECTION AGENCY

[EPA–HQ–OAR–2023–0292; FRL–11010–02–OAR]

## California State Motor Vehicle and Engine Pollution Control Standards; Advanced Clean Cars II; Waiver of Preemption; Notice of Decision

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Notice of decision.

**SUMMARY:** The Environmental Protection Agency ("EPA") is providing notice of its decision granting the California Air Resources Board's ("CARB's") request for a waiver of Clean Air Act preemption for its Advanced Clean Cars II ("ACC II") regulations. EPA's decision was issued under the authority of the Clean Air Act ("CAA" or "Act") section 209.

**DATES:** Petitions for review must be filed by March 7, 2025.

**ADDRESSES:** EPA has established a docket for this action under Docket ID EPA–HQ–OAR–2023–0292. All documents relied upon in making this decision, including those submitted to EPA by CARB, are contained in the public docket. Publicly available docket materials are available either electronically through *www.regulations.gov* or in hard copy at the EPA Docket Center, WJC West Building, Room 3334, 1301 Constitution Avenue NW, Washington, DC 20004. The Docket Center's hours of operation are 8:30 a.m. to 4:30 p.m.; generally, it is open Monday through Friday, except Federal holidays. The electronic mail (email) address for the EPA Docket Center is: *a-and-r-Docket@epa.gov.* An electronic version of the public docket is available through the Federal government's electronic public docket and comment system. You may access EPA dockets at *http:// www.regulations.gov.* After opening the *www.regulations.gov* website, enter EPA–HQ–OAR–2023–0292 in the "Enter Keyword or ID" fill-in box to view documents in the record. Although a part of the official docket, the public docket does not include Confidential Business Information ("CBI") or other information whose disclosure is restricted by statute.

EPA's Office of Transportation and Air Quality ("OTAQ") maintains a web page that contains general information on its review of California waiver and authorization requests. Included on that page are links to prior waiver **Federal Register** notices, some of which are cited in this notice; the page can be accessed at: *https://www.epa.gov/state-and-local-transportation/vehicle-emissions-california-waivers-and-authorizations.*

**FOR FURTHER INFORMATION CONTACT:** Michael Olechiw, Office of Transportation and Air Quality, U.S. Environmental Protection Agency, 2000 Traverwood Drive, Ann Arbor, MI 48105. Telephone: 734–214–4297. Email: *California-Waivers-and-Authorizations@epa.gov.*

**SUPPLEMENTARY INFORMATION:** On December 26, 2023, EPA published a **Federal Register** notice announcing its receipt of CARB's waiver request. In that notice, EPA invited public comment on California's waiver request and an opportunity to present testimony at a public hearing.[1] EPA held a public hearing on January 10, 2024, and the written comment period closed on February 27, 2024.[2] EPA has considered all comments submitted to the public docket on this matter.

On December 17, 2024, I signed a Decision Document granting California a waiver of preemption pursuant to section 209(b) of the CAA, as amended, 42 U.S.C. 7543(b), for regulations applicable to new 2026 and subsequent model year (MY) California on-road light- and medium-duty vehicles, hereafter the Advanced Clean Cars II ("ACC II") regulations.[3] The ACC II program includes a series of requirements regarding California's low emission vehicle ("LEV") IV regulation and a series of requirements regarding its zero-emission vehicle ("ZEV") program.[4] The LEV IV requirements include, for example, applying exhaust and evaporative emission fleet-average standards solely to vehicles powered by internal combustion engines and excluding ZEVs from the fleet calculation. The LEV IV requirements reduce the maximum allowed exhaust and evaporative emission rates from

---

[1] 88 FR 88908 (December 26, 2023).

[2] A transcript of the public hearing is located at EPA–HQ–OAR–2023–0292–0056 and all written comments are also located at *regulations.gov* at EPA–HQ–OAR–2023–0292.

[3] EPA's Decision Document can be found at EPA–HQ–OAR–2023–0292. In addition to the Decision Document, EPA prepared a Supplemental Response to Comments document that is also part of the Administrator's waiver decision. The Supplemental Response to Comments document can also be found at EPA–HQ–OAR–2023–0292.

[4] EPA's waiver decision includes the entire ACC II regulatory text that can be found in Attachment 7 to CARB's May 22, 2023, ACC II waiver request (the ACC II Waiver Support Document) found at EPA–HQ–OAR–2023–0292–0034. (CARB's entire waiver submission to EPA is found at EPA–HQ–OAR–2023–0292.) The specific regulatory provisions under EPA's waiver consideration can be found at footnote 36 to the ACC II Waiver Support Document.

vehicles under the existing fleet-average standard and aim to reduce cold-start emissions by applying the emissions standards to a broader range of in-use driving conditions. The ZEV requirements of ACC II include, for example, a requirement for vehicle manufacturers to sell increasing percentages of ZEVs beginning with the 2026 MY. Manufacturers can meet up to 20 percent of their sales requirements using plug-in hybrid vehicles (PHEVs) that meet specified requirements. A comprehensive description of California's ACC II program can be found in the Decision Document for this waiver and in materials submitted to the Docket by CARB.

Section 209(b) of the Act provides that the Administrator, after notice and opportunity for public hearing, shall waive Federal preemption for California to enforce new motor vehicle emission standards and accompanying enforcement procedures unless certain criteria are met. The criteria for denying such a waiver include consideration of whether California arbitrarily and capriciously determined that its standards are, in the aggregate, at least as protective of public health and welfare as the applicable Federal standards; whether California does not need such State standards to meet compelling and extraordinary conditions; and whether such State standards and accompanying enforcement procedures are not consistent with section 202(a) of the Act.

CARB determined that these standards and accompanying enforcement procedures do not cause California's standards, in the aggregate, to be less protective to public health and welfare than the applicable Federal standards. The administrative record, including information presented to me by parties opposing California's waiver, did not demonstrate that California arbitrarily or capriciously reached this protectiveness determination. Therefore, based on the record, I cannot find California's determination to be arbitrary and capricious under section 209(b)(1)(A).

CARB has demonstrated the existence of compelling and extraordinary conditions justifying the need for such State standards. The administrative record, including information presented to me by parties opposing California's waiver request, did not demonstrate that California does not need such State standards to meet compelling and extraordinary conditions. Thus, based on the record, I cannot deny the waiver based on section 209(b)(1)(B).

CARB has submitted information that its emission standards and test procedures are technologically feasible, present no inconsistency with Federal requirements, and are consistent with section 202(a) of the Act. The administrative record, including information presented to me by parties opposing California's waiver request, did not satisfy the burden of persuading EPA that the standards are not consistent with section 202(a). Thus, based on the record, I cannot deny the waiver based on section 209(b)(1)(C).

Accordingly, I hereby granted the waiver requested by California.

Section 307(b)(1) of the CAA governs judicial review of final actions by the EPA. Petitions for review must be filed by March 7, 2025.

As with past waiver decisions, this action is not a rule as defined by Executive Order 12866. Therefore, it is exempt from review by the Office of Management and Budget as required for rules and regulations by Executive Order 12866.

In addition, this action is not a rule as defined in the Regulatory Flexibility Act, 5 U.S.C. 601(2). Therefore, EPA has not prepared a supporting regulatory flexibility analysis addressing the impact of this action on small business entities.

The Congressional Review Act, 5 U.S.C. 801 *et seq.*, as added by the Small Business Regulatory Enforcement Fairness Act of 1996, does not apply because this action is not a rule, for purposes of 5 U.S.C. 804(3).

**Michael S. Regan,**
*Administrator.*

[FR Doc. 2024–31128 Filed 1–3–25; 8:45 am]

**BILLING CODE 6560–50–P**

---

**ENVIRONMENTAL PROTECTION AGENCY**

**[EPA–HQ–OAR–2022–0332; FRL–9902–02–OAR]**

**California State Motor Vehicle and Engine and Nonroad Engine Pollution Control Standards; The "Omnibus" Low NOₓ Regulation; Waiver of Preemption; Notice of Decision**

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Notice of decision.

**SUMMARY:** The Environmental Protection Agency ("EPA") is providing notice of its decision to grant the California Air Resources Board's ("CARB") request for a waiver of Clean Air Act (CAA) preemption for its Heavy-Duty Vehicle and Engine "Omnibus" Low NOₓ

Regulations ("Omnibus Low NOₓ program"). EPA's decision also includes an authorization for portions of the Omnibus Low NOₓ program that pertain to off-road diesel engines. This decision was issued under the authority of the Clean Air Act ("CAA" or "Act") section 209.

**DATES:** Petitions for review must be filed by March 7, 2025.

**ADDRESSES:** EPA has established a docket for this action under Docket ID EPA–HQ–OAR–2022–0332. All documents relied upon in making this decision, including those submitted to EPA by CARB, are contained in the public docket. Publicly available docket materials are available either electronically through *www.regulations.gov* or in hard copy at the EPA Docket Center, WJC West Building, Room 3334, 1301 Constitution Avenue NW, Washington, DC 20004. The Docket Center's hours of operation are 8:30 a.m. to 4:30 p.m.; generally, it is open Monday through Friday, except Federal holidays. The electronic mail (email) address for the EPA Docket is: *a-and-r-Docket@epa.gov*. An electronic version of the public docket is available through the Federal government's electronic public docket and comment system. You may access EPA dockets at *http://www.regulations.gov*. After opening the *www.regulations.gov* website, enter EPA–HQ–OAR–2022–0332 in the "Enter Keyword or ID" fill-in box to view documents in the record. Although a part of the official docket, the public docket does not include Confidential Business Information ("CBI") or other information whose disclosure is restricted by statute.

EPA's Office of Transportation and Air Quality ("OTAQ") maintains a web page that contains general information on its review of California waiver and authorization requests. Included on that page are links to prior waiver **Federal Register** notices, some of which are cited in this notice; the page can be accessed at: *https://www.epa.gov/state-and-local-transportation/vehicle-emissions-california-waivers-and-authorizations*.

**FOR FURTHER INFORMATION CONTACT:** Brian Nelson, Office of Transportation and Air Quality, U.S. Environmental Protection Agency, 2000 Traverwood Drive, Ann Arbor, Michigan 48105. Telephone: 734–214–4278. Email: *California-Waivers-and-Authorizations@epa.gov*.

**SUPPLEMENTARY INFORMATION:** On June 13, 2022, EPA published a **Federal Register** notice announcing its receipt of California's waiver request. In that notice, EPA invited public comment on

Ex. G

NOT YET SCHEDULED FOR ORAL ARGUMENT

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| American Free Enterprise Chamber of Commerce, | No. 25-89 Consolidated with No. 25-1475 No. 25-1480 |
| Petitioner, | |
| v. | |
| U.S. Environmental Protection Agency, | |
| Respondent. | |

## EPA'S MOTION TO DISMISS

EPA moves to dismiss these consolidated petitions as moot. A recent statute enacted under the Congressional Review Act invalidated the agency rule challenged in these petitions, which means Petitioners have already obtained from Congress the full remedy they sought from this Court. The Court should therefore grant the States' pending motion to intervene and dismiss the petitions as moot.

Petitioners have informed the undersigned counsel that they do not oppose dismissal on the ground that the recent Congressional Review Act resolution invalidating the relevant waiver makes their challenges moot. Petitioners will file a response to fully state their position on the motion. Intervenors have informed the undersigned counsel that they reserve their right to file a response.

## The Petitions Are Moot

The petitions for review challenge a preemption waiver that EPA issued under Section 209(b) of the Clean Air Act, 42 U.S.C. § 7543(b), for a set of California vehicle-emissions regulations. "California State Motor Vehicle and Engine and Nonroad Engine Pollution Control Standards; The 'Omnibus' Low NOx Regulation; Waiver of Preemption; Notice of Decision," 90 Fed. Reg. 643 (Jan. 6, 2025).

Section 209(a) of the Clean Air Act provides that "[n]o State . . . shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines." 42 U.S.C. § 7543(a). But under Section 209(b), EPA can waive preemption for California's emission standards in certain limited circumstances. *Id.* § 7543(b)(1).

In 2022, California requested an EPA preemption waiver for its Omnibus Low NOx Regulation, which establishes criteria pollutant exhaust emission standards for new 2024 and subsequent model year on-road medium- and heavy-duty engines and vehicles. "California State Motor Vehicle Pollution Control Standards and Nonroad Engine Pollution Control Standards; The 'Omnibus' Low NOx Regulation; Request for Waivers of Preemption; Opportunity for Public Hearing and Public Comment," 87 Fed. Reg. 35765 (June 13, 2022) (notice of public hearing and comment). EPA granted the waiver in December 2024. 90 Fed. Reg. at 644. Three sets of petitioners

timely petitioned for review of that rule, contending that it was unlawful.  *See, e.g.*, Case No. 25-89, ECF No. 1 at 3 (Jan. 6, 2025) (Petition for Review).  These cases have been in abeyance since almost their inception.

In May 2025, Congress passed a bipartisan joint resolution under the Congressional Review Act disapproving the challenged preemption waiver.  *See* 5 U.S.C. § 802; H.R.J. Res. 89, 119th Cong. (2025).  Soon after that, the President signed the resolution into law.  Pub. L. No. 119-17, 139 Stat. 67 (2025).  The enacted statute spells out the waiver's demise:

> Resolved by the Senate and House of Representatives of the United States of America in Congress assembled*, That **Congress disapproves the rule** submitted by the Environmental Protection Agency relating to "California State Motor Vehicle and Engine and Nonroad Engine Pollution Control Standards; The "Omnibus" Low NOX Regulation; Waiver of Preemption; Notice of Decision" (90 Fed. Reg. 643 (January 6, 2025)), **and such rule shall have no force or effect**.

Pub. L. No. 119-17 (emphases added).

The challenged waiver, in short, has been invalidated by statute.  *See Ctr. for Biological Diversity v. Bernhardt*, 946 F.3d 553, 562–64 (9th Cir. 2019) ("By enacting the Joint Resolution, Congress . . . deprived the . . . Rule of any force or effect.").  That invalidation, in turn, means that "there is no longer a possibility that [Petitioners] can obtain relief" from this Court.  *Foster v. Carson*, 347 F.3d 742, 745 (9th Cir. 2003) (internal quotation marks omitted).  These petitions are thus moot.

To be sure, California (and other states), which has intervened here, sued the United States in federal district court, arguing that the statute invalidating the waiver should be struck down. *California v. United States*, Case No. 25-4966 (N.D. Cal.).[1] But the existence of California's baseless allegations in a separate district-court lawsuit does not absolve this Court from its duty to dismiss these petitions on the ground that the challenged waiver has been voided by statute. This Court should resolve that question now.

And it should conclude that the petitions are moot. After all, Acts of Congress, including the statute here, are presumed valid. *See United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32 (1963). And it could not be clearer that the joint resolution moots these petitions by nullifying the challenged EPA rule, which now "ha[s] no force or effect." Pub. L. No. 119-17. This Court must therefore dismiss these petitions because it "lacks jurisdiction to hear moot cases." *In re Pattullo*, 271 F.3d 898, 900 (9th Cir. 2001) (internal quotation marks omitted); *see id.* ("If a case becomes moot while pending on appeal, it must be dismissed.").

---

[1] California's motion to intervene was granted in the lead case, No. 25-89, ECF No. 10. California filed separate motions to intervene in the consolidated cases, Nos. 25-1475, 25-1480. Insofar as those motions have not been resolved through intervention in No. 25-89, they should be granted.

In sum: The Court should enter an order dismissing these petitions as moot on the ground that Public Law No. 119-17 voided the challenged EPA preemption waiver.

Submitted on August 13, 2025.

ADAM R.F. GUSTAFSON
 *Acting Assistant Attorney General*

ROBERT N. STANDER
 *Deputy Assistant Attorney General*

*/s/ Jeffrey Hughes*
Daniel R. Dertke
Jeffrey Hughes
U.S. Department of Justice
Environment & Natural Res. Div.
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
(202) 514-0994 (Dertke)
(202) 305-4598 (Hughes)
Daniel.Dertke@usdoj.gov
Jeffrey.Hughes@usdoj.gov

## Certificates of Service and Compliance

I certify that this filing complies with Fed. R. App. P. 27(d)(1)(E) because it uses 14-point Times New Roman, a proportionally spaced font.

I also certify that this motion complies with Fed. R. App. P. 27(d)(2)(A), because by Microsoft Word's count, it has 850 words, excluding the parts exempted under Fed. R. App. P. 32(f). I further certify that this motion complies with Circuit R. 27-1(d) because it does not exceed 20 pages.

Finally, I certify that on August 13, 2025, I filed the foregoing with the Court's ACMS system, which will notify each represented party.

*/s/ Jeffrey Hughes*
Jeffrey Hughes

6

Ex. H

NOT YET SCHEDULED FOR ORAL ARGUMENT

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| American Free Enterprise Chamber of Commerce, <br><br>         Petitioner, <br><br>    v. <br><br> U.S. Environmental Protection Agency, <br><br>         Respondent. | No. 25-106 <br> Consolidated with <br> No. 25-1478 <br> No. 25-1493 |

## EPA'S MOTION TO DISMISS

EPA moves to dismiss these consolidated petitions as moot. A recent statute enacted under the Congressional Review Act invalidated the agency rule challenged in these petitions, which means Petitioners have already obtained from Congress the full remedy they sought from this Court. The Court should therefore grant the States' pending motion to intervene and dismiss the petitions as moot.

Petitioners have informed the undersigned counsel that they do not oppose dismissal on the ground that the recent Congressional Review Act resolution invalidating the relevant waiver makes their challenges moot. Petitioners will file a response to fully state their position on the motion. Movant-intervenors have informed the undersigned counsel that they reserve their right to file a response.

## The Petitions Are Moot

The petitions for review challenge a preemption waiver that EPA issued under Section 209(b) of the Clean Air Act, 42 U.S.C. § 7543(b), for a set of California vehicle-emissions regulations. "California State Motor Vehicle and Engine Pollution Control Standards; Advanced Clean Cars II; Waiver of Preemption; Notice of Decision," 90 Fed. Reg. 642 (Jan. 6, 2025).

Section 209(a) of the Clean Air Act provides that "[n]o State . . . shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines." 42 U.S.C. § 7543(a). But under Section 209(b), EPA can waive preemption for California's emission standards in certain limited circumstances. *Id.* § 7543(b)(1).

In 2023, California requested an EPA preemption waiver for its Advanced Clean Cars II regulations, which would apply to emissions from light- and medium-duty vehicles. *See* "California State Motor Vehicle Pollution Control Standards; Advanced Clean Cars II Regulations; Request for Waiver of Preemption; Opportunity for Public Hearing and Public Comment," 88 Fed. Reg. 88908 (Dec. 26, 2023) (notice of public hearing and comment). EPA granted the wavier in December 2024. *See* 90 Fed. Reg. at 642. Petitioners timely petitioned for review of that rule, contending that it was unlawful. *See, e.g.*, Case No. 25-1478, ECF No.

1 at 2 (Mar. 7, 2025) (Petition for Review).  These cases have been in abeyance since

almost their inception.

In May 2025, Congress passed a bipartisan joint resolution under the

Congressional Review Act disapproving the challenged preemption waiver. *See* 5

U.S.C. § 802; H.R.J. Res. 88, 119th Cong. (2025).  On June 12, 2025, the President

signed the resolution into law.  Pub. L. No. 119-16, 139 Stat. 66 (2025).  The enacted

statute spells out the waiver's demise:

> Resolved by the Senate and House of Representatives of the
> United States of America in Congress assembled, That **Congress
> disapproves the rule** submitted by the Environmental Protection
> Agency relating to ''California State Motor Vehicle and Engine
> Pollution Control Standards; Advanced Clean Cars II; Waiver of
> Preemption; Notice of Decision'' (90 Fed. Reg. 642 (January 6,
> 2025)), **and such rule shall have no force or effect**.

Pub. L. No. 119-16 (emphases added).

The challenged waiver, in short, has been invalidated by statute.  *See Ctr. for*

*Biological Diversity v. Bernhardt*, 946 F.3d 553, 562–64 (9th Cir. 2019) ("By

enacting the Joint Resolution, Congress . . . deprived the . . . Rule of any force or

effect.").  That invalidation, in turn, means "there is no longer a possibility that

[Petitioners] can obtain relief" from this Court.  *Foster v. Carson*, 347 F.3d 742, 745

(9th Cir. 2003) (internal quotation marks omitted).  These petitions are thus moot.

To be sure, California (and other states), which has moved to intervene here,

has challenged the statute's validity in federal district court.  *California v. United*

3

*States*, Case No. 25-4966 (N.D. Cal.). EPA thus agrees that California's pending motion to intervene in this case should be granted. ECF No. 8 (Jan. 15, 2025). But the existence of California's baseless allegations in a separate district-court lawsuit does not absolve this Court from its duty to dismiss these petitions on the ground that the challenged waiver has been voided by statute. This Court should resolve that question now.

And it should conclude that the petitions are moot. After all, Acts of Congress, including the statute here, are presumed valid. *See United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32 (1963). And it could not be clearer that the joint resolution moots these petitions by nullifying the challenged EPA rule, which now "ha[s] no force or effect." Pub. L. No. 119-16. This Court must therefore dismiss these petitions because it "lacks jurisdiction to hear moot cases." *In re Pattullo*, 271 F.3d 898, 900 (9th Cir. 2001) (internal quotation marks omitted); *see id.* ("If a case becomes moot while pending on appeal, it must be dismissed.").

In sum: The Court should enter an order granting California's intervention motion and dismissing these petitions as moot on the ground that Public Law No. 119-16 voided the challenged EPA preemption waiver.

4

Submitted on August 13, 2025.

ADAM R.F. GUSTAFSON
  *Acting Assistant Attorney General*

ROBERT N. STANDER
  *Deputy Assistant Attorney General*

<u>*/s/ Jeffrey Hughes*</u>
Sue Chen
Jeffrey Hughes
U.S. Department of Justice
Environment & Natural Res. Div.
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
(202) 305-0283 (Chen)
(202) 305-4598 (Hughes)
Sue.Chen@usdoj.gov
Jeffrey.Hughes@usdoj.gov

## Certificates of Service and Compliance

I certify that this filing complies with Fed. R. App. P. 27(d)(1)(E) because it uses 14-point Times New Roman, a proportionally spaced font.

I also certify that this motion complies with Fed. R. App. P. 27(d)(2)(A), because by Microsoft Word's count, it has 798 words, excluding the parts exempted under Fed. R. App. P. 32(f). I further certify that this motion complies with Circuit R. 27-1(d) because it does not exceed 20 pages.

Finally, I certify that on August 13, 2025, I filed the foregoing with the Court's ACMS system, which will notify each represented party.

*/s/ Jeffrey Hughes*
Jeffrey Hughes

Ex. I

Nos. 25-89, 25-1475, 25-1480

―――――――――――――――――

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

―――――――――――――――――

AMERICAN FREE ENTERPRISE CHAMBER OF COMMERCE,

*Petitioner*,

V.

U.S. ENVIRONMENTAL PROTECTION AGENCY,

*Respondent*,

AND

STATE OF CALIFORNIA, ET AL.,

*Respondent-Intervenors*.

―――――――――――――――――

**On Petition for Review from the**
**U.S. Environmental Protection Agency**
EPA-HQ-OAR-2022-0332

―――――――――――――――――

## STATE INTERVENORS' CROSS-MOTION FOR ABEYANCE AND
## RESPONSE TO EPA'S MOTION TO DISMISS

―――――――――――――――――

ROB BONTA
  *Attorney General of California*
ANNADEL ALMENDRAS
  *Senior Asst. Attorney General*
DENNIS L. BECK, JR.
  *Acting Senior Asst. Attorney*
  *General*
MYUNG J. PARK
  *Supervising Deputy Attorney*
  *General*

KAVITA LESSER
CAITLAN MCLOON
M. ELAINE MECKENSTOCK
KATHERINE GAUMOND
  *Deputy Attorneys General*
STATE OF CALIFORNIA
DEPARTMENT OF JUSTICE
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA 94102
  Telephone: (415) 510 4439
  Email: katherine.gaumond@doj.ca.gov
  *Attorneys for State of California*
(additional counsel on signature pages)

September 8, 2025

# INTRODUCTION

Despite repeatedly urging this Court to hold these cases in abeyance since shortly after their inception, Respondent EPA now suddenly asks the Court to lift the abeyance and dismiss the cases as moot, invoking a congressional resolution signed by the President on June 12, 2025 (the Resolution).  But the validity of the Resolution is actively being contested in separate district court litigation.  Joined by Petitioners and Amici, EPA is attempting to use its motion to dismiss to secure an order that it would then use—as purportedly precedential, or at least preclusive, authority—against Intervenor States in that separate litigation.  There is no other explanation for: EPA's decision to move to dismiss the petitions filed here, but not the parallel ones filed in the D.C. Circuit; multiple parties' requests for a published dismissal order; the parties' requests that this Court grant any pending intervention motions from Intervenor-States before dismissing; or Petitioners' refusal to voluntarily dismiss their petitions, while contending they are moot.

The Court should not countenance this attempt to misuse abbreviated motions practice here to short-circuit separate litigation that raises novel and complex constitutional claims against unprecedented actions by the federal government. Instead, State Intervenors respectfully request, pursuant to Federal Rule of Appellate Procedure 27(a)(B)(3), that the Court defer resolving EPA's motion to dismiss and continue to hold these cases in abeyance, pending disposition of the

1

separate district court litigation.  The Court could ask the parties to notify the Court within 30 days of such final disposition, at which time this Court may order motions to govern further proceedings in these cases.

Courts routinely hold cases in abeyance in such circumstances—i.e., where separate litigation could affect or narrow the relevant issues, including by determining the validity of an intervening government action that may have mooted the earlier case.  EPA has conceded that courts have authority to issue such an abeyance, even when jurisdictional questions may be pending, and has expressly asked for that approach in similar cases.  Continuing to hold these cases in abeyance would not prejudice any party.  If anything, as one set of Petitioners acknowledged, abeyance could be beneficial by allowing them to pursue their challenges in these cases, should the intervening Resolution be held invalid.

Abeyance would also avoid the need for this Court to wade into novel constitutional questions about the Resolution's invalidity without the benefit of a reasoned district court opinion, and accompanying record, that addresses those questions in the first instance.  By contrast, resolving EPA's motion now, on abbreviated motions papers, would prejudice State Intervenors, interfering with their fulsome development and presentation of their claims and defenses in separate litigation.

In the alternative, if the Court wishes to pass upon such issues now, it should—at the very least—refer EPA's motion to a merits panel and order full briefing and argument on the validity of the Resolution. That question is substantial and warrants careful treatment, not truncated consideration on a short timeline initiated with a four-page motion to dismiss.

Public Interest Intervenors support this motion. Petitioners and Respondent EPA oppose continued abeyance.

## BACKGROUND

### A.   California's Regulation of Vehicle Emissions

California has long faced severe air quality challenges, including for smog, which increases incidences of respiratory ailments, and for particulate matter, which can lead to heart attacks and even premature deaths.[1] California is also experiencing drastic climate change impacts caused by greenhouse gases, including extreme droughts, dangerous heatwaves, and worsening air quality. *E.g.*, Cal. Health & Saf. Code § 38501. Motor vehicle emissions contribute significantly to all these challenges. *Id.* § 43000(a).

Accordingly, California has been setting emission standards for new motor vehicles sold in the State for more than half a century. *Motor & Equip. Mfrs.*

---

[1] CARB, *2022 State Strategy for the State Implementation Plan* 2 (Sept. 22, 2022), https://ww2.arb.ca.gov/sites/default/files/2022-08/2022_State_SIP_Strategy.pdf.

3

*Ass'n, Inc. v. EPA*, 627 F.2d 1095, 1109 (D.C. Cir. 1979) ("*MEMA*") (describing history).  Since 1967, when Congress authorized federal standards and generally preempted States, California has maintained its own regulatory program, pursuant to waivers of preemption that EPA "shall" grant, absent certain limited conditions. 42 U.S.C. § 7543(b)(1).

California is the only State that may obtain a waiver to design its own regulations.  42 U.S.C. § 7543(b)(1); *see Engine Mfrs. Ass'n v. EPA*, 88 F.3d 1075, 1079 n.9 (D.C. Cir. 1996).  But other qualifying States may choose to adopt California's standards as their own, subject to certain conditions.  42 U.S.C. § 7507.  This approach to vehicle emission regulation reflects a "legislative compromise" that preserves the benefits of a state "laboratory for innovation," while also protecting manufacturers from their fears of "51 different standards." *Engine Mfrs.*, 88 F.3d at 1080 (cleaned up).  Thus, since 1967, "manufacturers must cope with two," but only two, sets of emission standards, meaning "motor vehicles must be either 'federal cars' designed to meet the EPA's standards or 'California cars' designed to meet California's standards."  *Id.*

Congress's design has operated as intended for almost sixty years.  EPA has

granted California more than seventy-five preemption waivers as the State has

expanded and strengthened its regulatory program.[2]

### B.    The Omnibus Regulation and Waiver

Consistent with Congress's intent that the State "continue and expand its

pioneering efforts," *MEMA*, 627 F.2d at 1111, the California Air Resources Board

promulgated the Heavy-Duty Engine and Vehicle Omnibus Regulation (Omnibus)

in in 2021.  That regulation primarily strengthened certain emissions standards for

heavy-duty vehicles (those with a gross vehicle weight rating greater than 8,500

pounds), requiring reduced emissions of smog-forming oxides of nitrogen and fine

particulate matter as compared to the pre-existing standards for those

pollutants.  The revised standards take effect in two steps, with the first set starting

in model year 2024, Cal. Code Regs., tit. 13, § 1956.8(a)(2)(C), and a second, more

stringent set beginning with model year 2027, *id.* § 1956.8(a)(2)(D).

The EPA Administrator signed the waiver authorizing enforcement of the

Omnibus regulation in December 2024, and EPA published its notice of decision in

the Federal Register a few weeks later.  90 Fed. Reg. 643 (Jan. 6, 2025).  In so

doing, EPA followed a course charted over decades, including a host of prior

---

[2] *See* EPA, *Vehicle Emissions California Waivers and Authorizations* (July
24, 2025), https://www.epa.gov/state-and-local-transportation/vehicle-emissions-
california-waivers-and-authorizations.

waivers for increasingly more rigorous emission standards for heavy-duty

vehicles.[3]

### C.    The Resolutions of Disapproval

Beginning in February 2025, the federal government took unprecedented

steps to target three Clean Air Act preemption waivers granted to California,

namely those for the Omnibus, Advanced Clean Cars II, and Advanced Clean

Trucks regulations.  The Executive Branch set the wheels in motion when

President Trump and EPA Administrator Zeldin declared by fiat in a press

release—and without any administrative process—that these already final waivers

were no longer adjudicatory orders (as defined by the Administrative Procedure

Act), but, rather, EPA "rules."[4]  EPA provided no explanation for reversing its

longstanding and consistent position—reaffirmed in each of these three waiver

decisions—that such waivers are not rules.  90 Fed. Reg. at 645 ("As with past

waiver decisions, this action is not a rule….").  EPA likewise provided no rationale

for disagreeing with the reasoned opinion of the Government Accountability

Office (GAO)—issued in response to an inquiry from members of Congress—that

---

[3] *See* EPA, *Vehicle Emissions California Waivers and Authorizations*
https://www.epa.gov/state-and-local-transportation/vehicle-emissions-california-waivers-and-authorizations (last visited September 4, 2025).
    [4] EPA, *Trump EPA to Transmit California Waivers to Congress in Accordance with Statutory Reporting Requirements* (Feb. 14, 2025), available at https://www.epa.gov/newsreleases/trump-epa-transmit-california-waivers-congress-accordance-statutory-reporting (last visited August 26, 2025).

an earlier preemption waiver was "not a rule because it is, instead, an order," as those terms are defined in the Administrative Procedure Act.[5]

The President and EPA purported to reclassify these three waivers from orders to rules solely for the purpose of subjecting them to the Congressional Review Act (CRA).[6]  The CRA establishes streamlined procedures—including limited debate and a simple majority vote requirement, with no filibuster, in the Senate—for Congress to review the Executive Branch's use of delegated lawmaking authority.  5 U.S.C. § 802(d).  Accordingly, on its face, the CRA only applies to certain "rules" (i.e., actions that proscribe law), as that term is defined in the Administrative Procedure Act and narrowed by the CRA itself.  *Id.* § 801(a)(1)(A) (requiring submission of "report" after promulgation of "rule"); *id.* § 804(3) (defining "rule").  An administrative action is thus not subject to the CRA unless it is such a "rule."

After the waivers were purportedly reclassified and submitted to Congress, the GAO and the Senate Parliamentarian—non-partisan advisers to Congress—were asked whether the CRA applied.  Both concluded it did not because these waivers are not rules.  *See California v. United States*, Compl., Case No. 4:25-cv-

---

[5] GAO, *Decision: Environmental Protection Agency—Applicability of the Congressional Review Act to Notice of Decision on Clean Air Act Waiver of Preemption* 4 (Nov. 30, 2023), available at https://www.gao.gov/assets/870/863746.pdf (last visited August 26, 2025).

[6] *Supra* n.4.

7

04966, Dkt. No. 1 (N.D. Cal. June 12, 2025) (Exhibit 1) at ¶¶ 78-80, 82-84, 89-91,

Exhibit B. Congress plowed ahead anyway. In order to do so, the Senate had to

pass two separate procedural changes (called points of order). The first allowed

points of order in CRA proceedings despite contrary text in the statute. *See id.* at

¶¶ 100-102. The second point of order empowered the Executive Branch to decide

when CRA-like expedited procedures can be used, with the Senate accepting that

"[w]hen an Agency says it is a rule, it is a rule." 171 Cong. Rec. S3140 (May 22,

2025); *see also* 171 Cong. Rec. S3018 (May 21, 2025) (using "Agency-submitted

rule" instead of "rule"); *id.* at S3088 (same). Pursuant to that second point of

order, Congress passed the Resolution purporting to disapprove of the Omnibus

waiver. H.J. Res. 88. The President signed the Resolution—along with two others

targeting the other above-mentioned waivers—on June 12, 2025.[7]

### D. Litigation Involving the Congressional Resolutions

California and other States sued the federal government in the Northern

District of California on the same day the President signed the three resolutions.

Exh. 1. The Plaintiff States (which include ten of the State Intervenors here) assert

seven counts and seek, *inter alia*, a declaration that the three congressional

resolutions are unlawful and invalid. *Id.* at 27-40. Plaintiff States allege that a

---

[7] A more thorough discussion of the defects in the enactment of the congressional resolutions can be found in the attached Complaint (Exh. 1) at ¶¶ 71-113.

Clean Air Act preemption waiver is not a "rule" as that term is defined in the

Administrative Procedure Act or the CRA, that the President and EPA lacked any

authority to reclassify already finalized waiver actions from orders into rules, and

that doing so was unlawful.  *Id.* at ¶¶ 114-152.

Plaintiff States also assert that this unprecedented use of an inapplicable

statute to attack state laws involved "extraordinary defects in the national political

process" that render the congressional resolutions "invalid under the Tenth

Amendment" and structural principles of federalism.  *South Carolina v. Baker*, 485

U.S. 505, 512 (1988); Exh. 1 ¶¶ 171-176.  Additionally, Plaintiff States—and the

Zero Emission Transportation Association (a Movant-Intervenor in the parallel

Ninth Circuit challenges to the Advanced Clean Cars II waiver (Case No. 25-106),

and in the Northern District of California case (Case No. 4:25-cv-04966))—allege

that the congressional resolutions violate separation of powers principles.  First,

Congress acted outside its powers by overruling Executive Branch adjudications—

actions taken to execute, rather than make, law—without altering the applicable

substantive law.  "The Constitution … is concerned with means as well as ends,"

*Horne v. Dep't of Agric.*, 576 U.S. 350, 362 (2015), and "does not permit Congress

to execute the laws," *Bowsher v. Synar*, 478 U.S. 714, 726 (1986).  *See also* Exh. 1

¶¶ 164-166; *California v. United States*, ZETA's Complaint-in-Intervention., Case

No. 4:25-cv-04966, Dkt. No. 43-1 (N.D. Cal. July 25, 2025) (Exhibit 2) ¶¶ 100-

113.  Second, the Senate impermissibly delegated the power to determine its own rules of procedure to the Executive Branch.  The authority to direct legislative procedure "only empowers Congress to bind itself," but for precisely that reason internal procedural rules must remain formally "independent … of the President." *INS v. Chadha*, 462 U.S. 919, 955 & n.21 (1983).  Here, however, the Senate opted to allow the Executive Branch to determine whether extraordinary, fast-track Senate procedures apply:  "When an Agency says it is a rule, is it a rule?… The answer is, yes, it is a rule. And then [the Senate] acted on that."  171 Cong. Rec. S3140 (May 22, 2025); *see also* Exh. 1 ¶¶ 157-162.  The United States' response to the *California* complaint is due September 19, 2025.

Meanwhile, on August 11, 2025, four manufacturers filed a separate district court case in which the validity of the congressional resolutions is actively being litigated.  These manufacturers allege that California is preempted from enforcing certain regulations (including Omnibus) because of the congressional resolutions. *Daimler v. Cal. Air Resources Board*, Compl, Case No. 2:25-cv-02255, Dkt. No. 1 (E.D. Cal. Aug 11, 2025) (Exhibit 3).  The *Daimler* Plaintiffs have moved for a preliminary injunction on all seven of their causes of action.  The United States intervened as a plaintiff, with claims predicated on the congressional resolutions, *id.* at Dkt. No. 43 (Exhibit 4), and joined the preliminary injunction motion, *id*. at Dkt. No. 57 (Exhibit 5).  Defendants' opposition to that motion is due September

16, 2025 and will include arguments that the congressional resolutions are unconstitutional or otherwise invalid.[8]

### E.   Procedural History of Relevant Petitions for Review

Prior to the congressional resolutions targeting them, each of the three EPA waivers was challenged in petitions for review under the Clean Air Act. All petitions challenging the Advanced Clean Trucks waiver were filed in the D.C. Circuit in 2023. *W. States Trucking Ass'n v. EPA*, Case No. 23-1143 (D.C. Cir. 2023). Those cases have been in abeyance—at EPA's request—since December 2023, after petitioners' opening briefs raised numerous issues overlapping with other cases recently argued in the same court.

Petitions seeking review of the Omnibus and Advanced Clean Cars II waivers were filed in this Court and in the D.C. Circuit in 2025.[9]  No briefing has occurred, because—at EPA's repeated request—all of these cases "have been in abeyance almost since their inception." EPA Mot. at 3, Dkt. No. 31.

---

[8] Other private plaintiffs—and the United States as movant-intervenor—are also attempting to litigate these issues in the district court for the Northern District of Illinois. *American Free Enterprise Chamber of Commerce v. Engine Manufacturers Association*, Case No. 3:24-cv-50504 (N.D. Ill.). The California official named in that case has moved to dismiss for lack of personal jurisdiction and improper venue. *Id.* at Dkt. No. 125.

[9] The lead Omnibus waiver cases are Ninth Circuit Case No. 25-89 and D.C. Circuit Case No. 25-1083. The lead Advanced Clean Cars II waiver cases are Ninth Circuit Case No. 25-106 and D.C. Circuit Case No. 25-1078.

EPA has now moved to dismiss the petitions filed *in this Court only*, arguing

that they are moot.  But tellingly, EPA has not moved to dismiss any of the above-

referenced petitions filed in the D.C. Circuit.  In fact, EPA has continued to leave

all of those cases in abeyance, even seeking to extend abeyances as needed to keep

those D.C. Circuit cases inactive.[10]

## ARGUMENT

### I.  THE COURT SHOULD CONTINUE TO HOLD THESE CASES IN ABEYANCE

No party has disputed that this Court has authority and discretion to continue

to hold these cases in abeyance.  Nor could they.  Indeed, one set of Petitioners has

requested it under certain circumstances.  H.R. Ewell MTD Response at 13 n.5,

Dkt. No. 37.  The Court has "broad discretion to stay proceedings as an incident to

its power to control its own docket."  *Clinton v. Jones*, 520 U.S. 681, 706 (1997);

*see also Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  EPA itself has confirmed

recently that abeyance is perfectly appropriate and within a court's authority, even

when there may be questions about the court's jurisdiction.  *See W. States*

*Petroleum Ass'n v. EPA*, EPA's Reply in Support of Motion to Hold Case in

Abeyance or Alternatively to Dismiss, Case No. 25-1080, Doc. 2113831 at 2 (D.C.

---

[10] *See Am. Fuel & Petrochemical Mfrs v. EPA*, Case No. 25-1083, Doc. 2133787 (D.C. Cir. Sep. 5, 2025); *Valero Renewable Fuels Co. v. EPA*, Case No. 25-1078, Doc. 2132195 (D.C. Cir. Aug. 27, 2025); *W. States Trucking Ass'n v. EPA*, Case No. 23-1143, Doc. 2028475 at 1-2 (D.C. Cir. Nov. 24, 2023).

Cir. May 1, 2025) ("No party has questioned this Court's authority to hold this

case in abeyance rather than deciding the jurisdictional dispute right now.").  In

these cases as well, "[i]t is appropriate for the Court to exercise that authority." *Id.*

Continuing to hold these cases in abeyance would promote judicial economy,

facilitate the development of a record and reasoned decision for this Court's future

review, and cause no hardship to any parties.

> **A.    Continued abeyance promotes judicial economy, including allowing orderly consideration of complex issues**

Courts "often" hold cases in abeyance "in light of other pending proceedings

that may affect the outcome of the case before [them]." *Basardh v. Gates*, 545

F.3d 1068, 1069 (D.C. Cir. 2008).  That is a quintessential use of abeyance.  *See*

*Am. Life Ins. Co. v. Stewart*, 300 U.S. 203, 215 (1937) ("In the exercise of a sound

discretion [a court] may hold one lawsuit in abeyance to abide the outcome of

another, especially where the parties and issues are the same.").  EPA itself sought

an abeyance in the petitions challenging the Advanced Clean Trucks waiver for

this reason, i.e., where the "resolution of [separate] cases could decide or

substantially narrow the issues."  *See, e.g.*, *W. States Trucking Ass'n v. EPA*,

EPA's Mot. to Hold Case in Abeyance, Case No. 23-1143, Doc. 2028475 at 1-2

(D.C. Cir. Nov. 24, 2023).

The same principles also commonly justify abeyance in instances like this

one: when separate litigation challenges the validity of a subsequent government

action that allegedly moots an existing case. *See, e.g.*, *California v. DOE*, Case No. 21-108, Dkt. No. 220 (2d Cir. Apr. 29, 2022) (holding challenges to 2020 rule in abeyance pending disposition of challenges to 2022 repeal of that rule); *Murray Energy Corp. v. EPA*, Order, Case No. 16-1127, Doc. 1858346 (D.C. Cir. Aug. 26, 2020) (holding challenges to 2016 rules in abeyance pending disposition of challenges to overriding 2020 rule); *see also State of Texas v. EPA*, API's Docketing Statement, Case No. 24-1054, Doc. 2058541 at 3 (D.C. Cir. June 7, 2024) (listing multiple challenges in abeyance due to changing regulations).

Intervenor States respectfully submit that the same course is warranted here. The validity of the subsequent action that has allegedly mooted these petitions—the Resolution purporting to disapprove the Omnibus waiver—is actively being litigated in district courts. Holding these petitions in abeyance and allowing the separate litigation to proceed in the ordinary course would allow this Court to consider the validity of the Resolution with the benefit of a district court opinion and a relevant record (as opposed to the record here which concerns the waiver decisions). This "will sharpen and narrow the legal issues that must eventually be decided," whether in an appeal of a district court decision, or later in these petitions. *Green v. Dep't of Commerce*, 618 F.2d 836, 842 (D.C. Cir. 1980); *see Ecological Rts. Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1154 (9th Cir. 2000) ("Usually, an appellate court does not consider legal issues in the first instance but

instead has the benefit of the district judge's initial analysis.").  That approach best respects the role of "a federal court of appeals" as "a court of review, not first view," *Shirk v. U.S. Dep't of Interior*, 773 F.3d 999, 1007 (9th Cir. 2014), a particularly important consideration in constitutional adjudication, which is "the most important and delicate of [a court's] responsibilities," *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 221 (1974).

Rather than allow the ongoing district court litigation to proceed and determine the validity of the Resolution in the ordinary course, EPA (and Petitioners and Amici) ask the Court to subvert that orderly course by leapfrogging the district courts and deciding the issues now.  Moreover, they make this ask by moving to dismiss cases that have been in abeyance since their inception and that challenge the validity of the Omnibus waiver, *not* the Resolution.  If the Court entertained that request, it would have to consider complex and novel questions of constitutional and statutory law in the first instance, without the benefit of a full record or any reasoned lower court opinion, *see* Exh. 1 at ¶¶ 114-188 (asserting seven separate counts challenging validity of resolutions); *see also infra* Section II—simply for the purpose of mooting a challenge that has been inactive since it was filed.  As in most cases, "the district court is better positioned to address these questions in the first instance with the benefit of briefing and specific analysis." *Bluetooth SIG Inc. v. FCA US LLC*, 30 F.4th 870, 874 (9th Cir. 2022).

15

Contrary to Petitioners' assertion, AFPM MTD Response at 2-3, Dkt. No. 36, a dismissal order here would not actually promote judicial economy. For example, even if the Court granted EPA's motion and issued an order that directly addressed the validity of the congressional resolutions targeting the Omnibus waiver (at issue here) and the Advanced Clean Cars II waiver (at issue in Case No. 25-106), that order could not address the congressional resolution targeting the Advanced Clean Trucks waiver—which was never challenged in this circuit. That congressional resolution presents distinct issues because, *inter alia*, the Advanced Clean Trucks waiver was in effect for more than two years before it was targeted, purportedly through use of a statute that requires submission to Congress before an action's effective date. 5 U.S.C. § 801(a)(1)(A). Thus, an order dismissing these petitions as moot could not fully resolve *California* (which challenges all three congressional resolutions) or *Daimler* (which challenges California's authority to enforce the Advanced Clean Trucks regulation).

Dismissal would not promote judicial economy for yet another reason. Petitioners explain that they may want to refile their petitions for review of the Omnibus waiver, after dismissal, if the Resolution is later invalidated in the separate litigation. AFPM MTD Response at 2 n.2; H.R. Ewell MTD Response at 12-13. But all Petitioners acknowledge this would be far from economical., as it would require this Court to rule on threshold issues like the timeliness of such a

16

petition under 42 U.S.C. § 7607(b)(1) and the authority of this Court to recall

mandates—issues not presented if this Court simply keeps these timely filed

petitions in abeyance. *See* AFPM MTD Response at 2 n.2; H.R. Ewell MTD

Response at 12-13. One set of Petitioners even admits that, for these very reasons,

"it might be more appropriate to hold this case in abeyance pending resolution of

California's lawsuit." H.R. Ewell MTD Response at 13 n.5. Holding these cases

in abeyance is undoubtedly the more economical route. *See Ctr. for Biological*

*Diversity v. EPA*, 56 F.4th 55, 71 (D.C. Cir. 2022) (courts "routinely stay [their]

hand when parties identify developments that are likely to render judicial

resolution unnecessary").

### B.  Continued abeyance causes no hardship to any party

A continued abeyance is also proper here because it would not cause

prejudice or hardship to any party. Petitioners' and EPA's own actions

demonstrate as much. At the repeated request of EPA, and without opposition

from Petitioners, these consolidated "cases have been in abeyance since almost

their inception." EPA Mot. at 3; *see* Dkt. Nos. 20, 24-26. And though the

Resolution was signed by the President in June, Petitioners never affirmatively

moved to dismiss these petitions, and EPA waited two months. If EPA or

Petitioners were harmed or prejudiced by an abeyance, they presumably would

have asked for it to be lifted sooner—and, for that matter, would not be

simultaneously asking the D.C. Circuit to keep identical petitions for review in abeyance. *See supra* Background Section E; *see also* H.R. Ewell MTD Response at 13 n.5.

In contrast, granting EPA's motion to dismiss on truncated briefing and no record could prejudice the State Intervenors by cutting short the separate litigation in which the validity of the Resolution is directly at issue. As noted above, this appears to be the sole purpose of EPA's motion—and Petitioners' and Amici's support for that motion: to obtain a ruling *from this Court* that the Resolution is valid, in the hopes that such a ruling will pre-determine the separate district court litigation. They have revealed as much via their unusual, and otherwise inexplicable, additional requests. They make clear that they specifically seek a published opinion from this Court, AFPM MTD Response at 10; Amicus at 12, Dkt. No. 34, and that they would not be satisfied if their support for dismissal was construed as a voluntary dismissal, AFPM MTD Response at 2 n.2. Moreover, the parties now insist that this Court grant any pending motions to intervene from Intervenor States' in the consolidated cases prior to dismissal, EPA Mot. at 4 n.1; AFPM MTD Response at 2 n.3; H.R. Ewell MTD Response at 4, even though they expressed no similar desire during the prior months these cases have been in abeyance. EPA has provided no reason for this request, but the reason is apparent:

EPA intends to assert preclusion against California and other district court litigants who are also Intervenor States.

In short, dismissal is not appropriate because it may force the Court into an unnecessary and premature decision on novel issues of constitutional law and potentially prevent States (and others) from litigating their challenges to the Resolution in the normal course.  The Court should instead allow that normal course to proceed and continue to hold this petition in abeyance, as it has been for months.  That approach would cause no hardship to any party and would allow the Court to consider those novel issues with the benefit of a lower court opinion and full record.

## II. IF THE COURT INTENDS TO CONSIDER DISMISSAL, IT SHOULD ORDER FULL BRIEFING AND REFER THE ISSUE TO A MERITS PANEL

If the Court declines to keep these cases in abeyance and intends to consider dismissing them as moot based on the validity of the Resolution, it should—at the very least—refer EPA's motion to a merits panel and order full briefing and oral argument on those issues.[11]  Courts are usually "reluctant to render a decision on … important jurisdictional questions without the benefit of briefing and oral argument."  *Nat'l Juvenile Law Ctr., Inc. v. Regnery*, 738 F.2d 455, 467 (D.C. Cir.

---

[11] If the Court chooses this option, it also might consider consolidating these cases with Case No. 25-106 (and consolidated) for purposes of such briefing and argument.

1984).  Unlike the current abbreviated motions' posture, full briefing would provide the Court with a relevant factual record and more developed legal arguments.  *See In re Lorillard Tobacco Co.*, 370 F.3d 982, 988 (9th Cir. 2004) (noting how the Court is "in a particularly poor position" to decide issues "[w]ithout a full record and without the benefit of an adversarial proceeding."). That process is more consistent with how this Court considers most legal issues—and, given significant questions of first impression, would be particularly warranted here.

The Resolution is the culmination of an unprecedented attack by the federal government on state regulatory programs that have stood for more than half a century.  California and the other States whose laws were targeted by those attacks deserve a full opportunity to be heard on the Resolution's invalidity.  They are pursuing those claims in the normal course—presenting them in the complaint filed in *California* (and asserting them as defenses to the preliminary injunction motion in *Daimler*).  If this Court intends to short-circuit that district court litigation, it should—at a minimum—allow the States full briefing, including an opportunity to respond to arguments from EPA.

The federal government has never before sought to use expedited legislative procedures designed to respond to federal rules to upend state regulatory programs. These extraordinary actions raise serious, novel questions of constitutional law that

20

require full-length briefing and adequate time to prepare.  To illustrate, as the Supreme Court and this Court have both recognized, "the contours of the 'extraordinary defect' test" for Tenth Amendment violations—articulated in *South Carolina*—"remain[] fuzzy" because Congress generally respects the vertical federalism boundaries built into the Constitution.  *Nevada v. Skinner*, 884 F.2d 445, 452 (9th Cir. 1989); *see also South Carolina*, 485 U.S. at 512 (declining to "attempt any definitive articulation" of test).  The States' challenge to the Resolution will bring that fuzziness into focus because, unlike in prior cases, there were myriad unparalleled defects in the process leading to the Resolution: from EPA's unexplained about-face purporting to reclassify already finalized agency actions all the way through the Senate's decision to let the Executive Branch decide which Senate procedures apply.  *Cf. Nevada v. Watkins*, 914 F.2d 1545, 1556 (9th Cir. 1990) (rejecting an "extraordinary defects" claim because "Nevada cannot point to *any* defect in the political process") (emphasis added).  However, to bring that focus to an infrequently litigated federalism claim, the States require the ability to fully brief the issues and to present their arguments in their entirety.

The same is true of the separation of powers arguments.  For example, Intervenors are unaware of another instance where a chamber of Congress has abdicated its exclusive constitutional power to make its own rules, letting the

Executive Branch dictate which rules apply to a particular legislative proposal.[12]

Nor is it commonplace for Congress to veto the Executive Branch's exercise of its

power to execute the law, as Congress did here by purportedly disapproving of

EPA's adjudicatory orders without changing the applicable statutory criteria.  This

Court should have the benefit of full briefing on these issues (and preferably a

reasoned decision from a district court judge) before deciding them.  And that is all

the more true given the consequences here—the fate of vehicle emission

regulations on which more than ten States rely to protect their residents from

harmful pollution and to meet federal air quality standards (where failing to do so

can result in sanctions).

Petitioners' contention that 5 U.S.C. § 805 bars these challenges to the

Resolution only underscores the complexity of the issues this Court would need to

resolve if it does not hold this case in abeyance.  That provision only applies to

actions or omissions "under" the CRA, *id.*, but it is disputed whether any relevant

action here ever qualified.  By its plain terms, actions under the CRA apply only to

"rules" as that term is defined, *supra* Background Sections C-D, and no one

---

[12] Further highlighting why full briefing would be necessary for the Court to
properly consider the issues, Petitioners' political question argument is based on
mischaracterizing this separation of powers claim as one about "the asserted failure
of Congress to comply with its own procedural rules," AFPM MTD Response at 6,
rather than one about abdication, to another branch, of a power vested exclusively
in Congress.  *See also* H.R. Ewell MTD Response at 9.

contends that definition encompasses the waivers at issue. And, even if 5 U.S.C. § 805 did bar *some* claims, it plainly does not bar the States' constitutional challenges. *Ctr. for Biological Diversity v. Bernhardt*, 946 F.3d 553, 561 (9th Cir. 2019).

These (and other) issues certainly should not be decided based on a four-page motion that presented no argument supporting the Resolution's validity. EPA's conclusory characterization of these challenges as "baseless" and its equally conclusory assertion that the Resolution should be "presumed valid" do not ask for, much less support, a determination that the Resolution *is* valid. EPA Mot. at 4. Petitioners' arguments in response cannot cure any defects in the motion itself on that point (nor can any arguments EPA may make in reply).

And Petitioners' mischaracterizations of the claims in the *California* complaint, *see, e.g.*, *supra* n.12, only underscore that these issues would benefit from development in—and a reasoned decision from—a district court. Moreover, the Resolution—and the myriad legal defects that led to it—are unprecedented actions taken by the federal government. The constitutionality of those actions should not turn on private parties' characterizations or arguments, particularly where those are submitted ten days after, *and in response to*, the motion at issue. Rather, Intervenor States should have an opportunity to respond to the federal government's positions—something EPA's four-page motion notably declined to

provide.  This is not an appropriate process to resolve complex, unusual

constitutional questions of substantial import to Intervenor States.

## CONCLUSION

Intervenor States respectfully request that the Court grant their cross-motion

for continued abeyance pending the final disposition of either *California v. United

States* or *Daimler v. California Air Resources Board*.  If it does so, it should defer

deciding EPA's motion to dismiss in the meantime.  Alternatively, if the Court

wishes to take up EPA's motion, it should refer the motion to a merits panel and

order full briefing and argument.


Dated:  September 8, 2025                    Respectfully submitted,


    *s/ Katherine Gaumond*
_____


Rob Bonta
  *Attorney General of California*
ANNADEL ALMENDRAS
  *Senior Asst. Attorney General*
DENNIS L. BECK, JR.
  *Acting Senior Asst. Attorney General*
Myung J. Park
  *Supervising Deputy Attorney General*
KATHERINE GAUMOND
  *Deputy Attorney General*

  *Attorneys for State of California*

FOR THE STATE OF COLORADO

PHILIP J. WEISER
ATTORNEY GENERAL

*/s/ David A. Beckstrom*
DAVID A. BECKSTROM
Second Assistant Attorney General
Colorado Department of Law
Natural Resources and Environment
Section
1300 Broadway, Tenth Floor
Denver, Colorado 80203
(720) 508-6306
david.beckstrom@coag.gov

FOR THE STATE OF CONNECTICUT

WILLIAM TONG
ATTORNEY GENERAL

MATTHEW I. LEVINE
Deputy Associate Attorney General

*/s/ Scott N. Koschwitz*
SCOTT N. KOSCHWITZ
Assistant Attorney General
Connecticut Office of the Attorney
General
165 Capitol Avenue
Hartford, Connecticut 06106
(860) 808-5250
scott.koschwitz@ct.gov

FOR THE STATE OF DELAWARE

KATHLEEN JENNINGS
ATTORNEY GENERAL

*/s/ Vanessa L. Kassab*
IAN R. LISTON
Director of Impact Litigation
RALPH K. DURSTEIN III
VANESSA L. KASSAB
Deputy Attorneys General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
vanessa.kassab@delaware.gov

FOR THE STATE OF HAWAII

ANNE E. LOPEZ
ATTORNEY GENERAL

*/s/ Lyle T. Leonard*
LYLE T. LEONARD
Deputy Attorney General
465 S. King Street, #200
Honolulu, Hawaii 96813
(808) 587-3050
lyle.t.leonard@hawaii.gov

FOR THE STATE OF ILLINOIS

KWAME RAOUL
ATTORNEY GENERAL

*/s/ Jason E. James*
MATTHEW J. DUNN
Chief, Environmental
Enforcement/Asbestos Litigation Division
JASON E. JAMES
Assistant Attorney General
Office of the Attorney General
201 W. Pointe Drive, Suite 7
Belleville, IL 62226
(217) 843-0322
jason.james@ilag.gov

FOR THE STATE OF MAINE

AARON M. FREY
ATTORNEY GENERAL

*/s/ Scott Boak*
SCOTT BOAK
Assistant Attorney General
6 State House Station
Augusta, ME 04333
(207) 626-8800
Scott.boak@maine.gov

FOR THE STATE OF MARYLAND

ANTHONY G. BROWN
ATTORNEY GENERAL

*/s/ Steven J. Goldstein*
STEVEN J. GOLDSTEIN
Special Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place
Baltimore, MD 21202
410-576-6414
sgoldstein@oag.state.md.us

KARA A. DORR
Assistant Attorney General
Office of the Attorney General
Maryland Department of the Environment
1800 Washington Blvd.
Baltimore, MD 21230
(410) 537-3047
kara.dorr@maryland.gov

FOR THE COMMONWEALTH OF
MASSACHUSETTS

ANDREA JOY CAMPBELL
ATTORNEY GENERAL

*/s/ Seth Schofield*
SETH SCHOFIELD
Senior Appellate Counsel
JON WHITNEY
Assistant Attorney General
Office of the Attorney General
Energy and Environment Bureau
One Ashburton Place, 18th Floor
Boston, MA 02108
(617) 727-2200
seth.schofield@mass.gov

FOR THE STATE OF MINNESOTA

KEITH ELLISON
ATTORNEY GENERAL

*/s/ Peter Surdo*
PETER N. SURDO
Special Assistant Attorney General
445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2127
(651) 757-1061
peter.surdo@ag.state.mn.us

FOR THE STATE OF NEW JERSEY

MATTHEW J. PLATKIN
ATTORNEY GENERAL

*/s/Lisa Morelli*
Lisa Morelli
Deputy Attorney General
Division of Law
25 Market St., P.O. Box 093
Trenton, NJ 08625
(609) 376-2735
lisa.morelli@law.njoag.gov

FOR THE STATE OF NEW YORK

LETITIA JAMES
ATTORNEY GENERAL

JUDITH N. VALE
Deputy Solicitor General
ELIZABETH A. BRODY
Assistant Solicitor General
YUEH-RU CHU
Chief, Affirmative Litigation Section
Environmental Protection Bureau

*/s/ Ashley M. Gregor*
ASHLEY M. GREGOR
Assistant Attorney General
28 Liberty Street, 19th Floor
New York, NY 10005
(212) 416-8454
ashley.gregor@ag.ny.gov


FOR THE STATE OF OREGON

DAN RAYFIELD
ATTORNEY GENERAL

*/s/ Paul Garrahan*
PAUL GARRAHAN
Sr. Assistant Attorney General
Natural Resources Section
Oregon Department of Justice
1162 Court Street NE
Salem, Oregon 97301-4096
(503) 947-4540
Paul.Garrahan@doj.oregon.gov


FOR THE STATE OF RHODE ISLAND

PETER F. NERONHA
ATTORNEY GENERAL

*/s/ Nicholas M. Vaz*
Nicholas M. Vaz
Special Assistant Attorney General
Office of the Attorney General
Environmental and Energy Unit
150 South Main Street
Providence, Rhode Island 02903
(401) 274-4400 ext. 2297
nvaz@riag.ri.gov


FOR THE STATE OF VERMONT

CHARITY R. CLARK
ATTORNEY GENERAL

*/s/ Hannah Yindra*
HANNAH YINDRA
Assistant Attorney General
Office of the Attorney General
109 State Street
Montpelier, VT 05609
(802) 828-3186
Hannah.Yindra@vermont.gov

FOR THE STATE OF WASHINGTON

NICHOLAS W. BROWN
ATTORNEY GENERAL

*/s/ Alexandria Doolittle*
ALEXANDRIA K. DOOLITTLE
Assistant Attorney General
Office of the Attorney General
P.O. Box 40117
Olympia, Washington 98504-0117
(360) 586-6769
Alex.Doolittle@atg.wa.gov

FOR THE DISTRICT OF COLUMBIA

BRIAN L. SCHWALB
ATTORNEY GENERAL

*/s/ Caroline S. Van Zile*
CAROLINE S. VAN ZILE
Solicitor General
Office of the Attorney General for the
District of Columbia
400 6th Street N.W., Suite 8100
Washington, D.C. 20001
(202) 724-6609
caroline.vanzile@dc.gov

FOR THE CITY OF CHICAGO

MARY B. RICHARDSON-LOWRY
CORPORATION COUNSEL

*/s/ Elizabeth Mary Tisher*
ELIZABETH MARY TISHER
Assistant Corporation Counsel
2 N. LaSalle Street, Suite 580
Chicago, IL 60602
(312) 744-3173
elizabeth.tisher@cityofchicago.org

FOR THE CITY OF LOS ANGELES

HYDEE FELDSTEIN SOTO
LOS ANGELES CITY ATTORNEY

*/s/ Michael J. Bostrom*
MICHAEL J. BOSTROM
Senior Assistant City Attorney
201 N. Figueroa St., 13th Floor
Los Angeles, CA 90012
(213) 978-1867
Michael.Bostrom@lacity.org

FOR THE CITY OF NEW YORK

MURIEL GOODE-TRUFANT
CORPORATION COUNSEL

*/s/ Hilary Meltzer*
HILARY MELTZER
Chief, Environmental Law Division
New York City Law Department
100 Church Street, Rm 6-146
New York, NY 10007
Telephone: (212) 356-2070
hmeltzer@law.nyc.gov

# CERTIFICATE OF COMPLIANCE

This document complies with the word limit of Fed. R. App. P. 27(d)(2)(a) and Ninth Circuit Rules 27-1(1)(d) and 32-3, as, excluding the portions of the document exempted by Fed. R. App. P. 32(f), this document contains 5,497 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) as this document has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14 point font.

Dated:  September 8, 2025                    Respectfully submitted,


                                   *s/ Katherine Gaumond*
                                   _____

                                   KATHERINE GAUMOND
                                   *Deputy Attorney General*

                                   *Attorney for State of California*

Ex. J

Nos. 25-106, 25-1478, 25-1493

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

AMERICAN FREE ENTERPRISE CHAMBER OF COMMERCE,

*Petitioner*,

V.

U.S. ENVIRONMENTAL PROTECTION AGENCY,

*Respondent*,

AND

STATE OF CALIFORNIA, ET AL.,

*Movant Respondent-Intervenors*.

_____

**On Petition for Review from the
U.S. Environmental Protection Agency**
EPA-HQ-OAR-2023-0292

_____

## STATE MOVANT-INTERVENORS' CROSS-MOTION FOR ABEYANCE AND RESPONSE TO EPA'S MOTION TO DISMISS

_____

ROB BONTA
  *Attorney General of California*
ANNADEL ALMENDRAS
  *Senior Asst. Attorney General*
DENNIS L. BECK, JR.
  *Acting Senior Asst. Attorney
  General*
MYUNG J. PARK
  *Supervising Deputy Attorney
  General*

KAVITA LESSER
CAITLAN MCLOON
M. ELAINE MECKENSTOCK
KATHERINE GAUMOND
  *Deputy Attorneys General*
STATE OF CALIFORNIA
DEPARTMENT OF JUSTICE
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA 94102
  Telephone: (415) 510 4439
  Email: katherine.gaumond@doj.ca.gov
  *Attorneys for State of California*
(additional counsel on signature pages)

September 8, 2025

# INTRODUCTION

Despite repeatedly urging this Court to hold these cases in abeyance since shortly after their inception, Respondent EPA now suddenly asks the Court to lift the abeyance and dismiss the cases as moot, invoking a congressional resolution signed by the President on June 12, 2025 (the Resolution). But the validity of the Resolution is actively being contested in separate district court litigation. Joined by Petitioners and Amici, EPA is attempting to use its motion to dismiss to secure an order that it would then use—as purportedly precedential, or at least preclusive, authority—against Movant-Intervenor States in that separate litigation. There is no other explanation for: EPA's decision to move to dismiss the petitions filed here, but not the parallel ones filed in the D.C. Circuit; EPA's request that this Court grant Movant-Intervenor States' long-pending intervention motion before dismissing; multiple parties' requests for a published dismissal order; or Petitioners' refusal to voluntarily dismiss their petitions, while contending they are moot.

The Court should not countenance this attempt to misuse abbreviated motions practice here to short-circuit separate litigation that raises novel and complex constitutional claims against unprecedented actions by the federal government. Instead, State Movant-Intervenors respectfully request, pursuant to Federal Rule of Appellate Procedure 27(a)(B)(3), that the Court defer resolving EPA's motion to

1

dismiss and continue to hold these cases in abeyance, pending disposition of the separate district court litigation. The Court could ask the parties to notify the Court within 30 days of such final disposition, at which time this Court may order motions to govern further proceedings in these cases.

Courts routinely hold cases in abeyance in such circumstances—i.e., where separate litigation could affect or narrow the relevant issues, including by determining the validity of an intervening government action that may have mooted the earlier case. EPA has conceded that courts have authority to issue such an abeyance, even when jurisdictional questions may be pending, and has expressly asked for that approach in similar cases. Continuing to hold these cases in abeyance would not prejudice any party. If anything, as petitioners in identical circumstances acknowledged, abeyance could be beneficial by allowing them to pursue their challenges in these cases, should the intervening Resolution be held invalid.

Abeyance would also avoid the need for this Court to wade into novel constitutional questions about the Resolution's invalidity without the benefit of a reasoned district court opinion, and accompanying record, that addresses those questions in the first instance. By contrast, resolving EPA's motion now, on abbreviated motions papers, would prejudice State Movant-Intervenors, interfering

with their fulsome development and presentation of their claims and defenses in separate litigation.

In the alternative, if the Court wishes to pass upon such issues now, it should—at the very least—refer EPA's motion to a merits panel and order full briefing and argument on the validity of the Resolution. That question is substantial and warrants careful treatment, not truncated consideration on a short timeline initiated with a four-page motion to dismiss.

Zero Emission Transportation Association (ZETA) Movant-Intervenor and Public Interest Movant-Intervenors support this motion. Petitioners and Respondent EPA oppose continued abeyance.

## BACKGROUND

### A.    California's Regulation of Vehicle Emissions

California has long faced severe air quality challenges, including for smog, which increases incidences of respiratory ailments, and for particulate matter, which can lead to heart attacks and even premature deaths.[1] California is also experiencing drastic climate change impacts caused by greenhouse gases, including extreme droughts, dangerous heatwaves, and worsening air quality. *E.g.,*

---

[1] CARB, *2022 State Strategy for the State Implementation Plan* 2 (Sept. 22, 2022), https://ww2.arb.ca.gov/sites/default/files/2022-08/2022_State_SIP_Strategy.pdf.

3

Cal. Health & Saf. Code § 38501.  Motor vehicle emissions contribute significantly

to all these challenges.  *Id.* § 43000(a).

Accordingly, California has been setting emission standards for new motor

vehicles sold in the State for more than half a century.  *Motor & Equip. Mfrs.*

*Ass'n, Inc. v. EPA*, 627 F.2d 1095, 1109 (D.C. Cir. 1979) ("*MEMA*") (describing

history).  Since 1967, when Congress authorized federal standards and generally

preempted States, California has maintained its own regulatory program, pursuant

to waivers of preemption that EPA "shall" grant, absent certain limited conditions.

42 U.S.C. § 7543(b)(1).

California is the only State that may obtain a waiver to design its own

regulations.  42 U.S.C. § 7543(b)(1); *see Engine Mfrs. Ass'n v. EPA*, 88 F.3d 1075,

1079 n.9 (D.C. Cir. 1996).  But other qualifying States may choose to adopt

California's standards as their own, subject to certain conditions.  42 U.S.C.

§ 7507.  This approach to vehicle emission regulation reflects a "legislative

compromise" that preserves the benefits of a state "laboratory for innovation,"

while also protecting manufacturers from their fears of "51 different standards."

*Engine Mfrs.*, 88 F.3d at 1080 (cleaned up).  Thus, since 1967, "manufacturers

must cope with two," but only two, sets of emission standards, meaning "motor

vehicles must be either 'federal cars' designed to meet the EPA's standards or

'California cars' designed to meet California's standards."  *Id.*

4

Congress's design has operated as intended for almost sixty years. EPA has

granted California more than seventy-five preemption waivers as the State has

expanded and strengthened its regulatory program.[2]

## B.   The Advanced Clean Cars II Regulation and Waiver

Consistent with Congress's intent that the State "continue and expand its

pioneering efforts," *MEMA*, 627 F.2d at 1111, the California Air Resources Board

promulgated the Advanced Clean Cars II regulation in 2022. That regulation

gradually strengthened the zero-emission-vehicle sales requirements for light-duty

vehicles—i.e., passenger cars and light trucks—that California first adopted

decades ago. *See* Cal. Code Regs. tit. 13, § 1960.1(g)(2) (1991). Under the new

requirements, at least 80% of the vehicles sold in California would have to be zero-

emission by model year 2035, while the other 20% could be plug-in hybrids. *Id.*

§ 1962.4(c), (e)(1)(C). Advanced Clean Cars II also strengthened several emission

standards for light-duty vehicles with internal combustion engines—including

those for fine particulate matter and smog-forming oxides of nitrogen. *Id.*

§ 1961.4.

EPA approved the waiver authorizing enforcement of Advanced Clean Cars II

in December 2024 and published its notice of decision a few weeks later. 90 Fed.

---

[2] *See* EPA, *Vehicle Emissions California Waivers and Authorizations* (July 24, 2025), https://www.epa.gov/state-and-local-transportation/vehicle-emissions-california-waivers-and-authorizations.

5

Reg. 642 (Jan. 6, 2025). In so doing, EPA followed a course charted over decades, including prior waivers for California's zero-emission-vehicle requirements and for increasingly rigorous standards for light-duty vehicles with internal combustion engines.[3]

### C. The Resolutions of Disapproval

Beginning in February 2025, the federal government took unprecedented steps to target three Clean Air Act preemption waivers granted to California, namely those for the Advanced Clean Cars II, Omnibus, and Advanced Clean Trucks regulations. The Executive Branch set the wheels in motion when President Trump and EPA Administrator Zeldin declared by fiat in a press release—and without any administrative process—that these already final waivers were no longer adjudicatory orders (as defined by the Administrative Procedure Act), but, rather, EPA "rules."[4] EPA provided no explanation for reversing its longstanding and consistent position—reaffirmed in each of these three waiver decisions—that such waivers are not rules. 90 Fed. Reg. at 643 ("As with past waiver decisions, this action is not a rule…."). EPA likewise provided no rationale

---

[3] *See* EPA, *Vehicle Emissions California Waivers and Authorizations*, https://www.epa.gov/state-and-local-transportation/vehicle-emissions-california-waivers-and-authorizations (last visited Aug. 24, 2025).

[4] EPA, *Trump EPA to Transmit California Waivers to Congress in Accordance with Statutory Reporting Requirements* (Feb. 14, 2025), available at https://www.epa.gov/newsreleases/trump-epa-transmit-california-waivers-congress-accordance-statutory-reporting (last visited August 26, 2025).

for disagreeing with the reasoned opinion of the Government Accountability Office (GAO)—issued in response to an inquiry from members of Congress—that an earlier preemption waiver was "not a rule because it is, instead, an order," as those terms are defined in the Administrative Procedure Act.[5]

The President and EPA purported to reclassify these three waivers from orders to rules solely for the purpose of subjecting them to the Congressional Review Act (CRA).[6]  The CRA establishes streamlined procedures—including limited debate and a simple majority vote requirement, with no filibuster, in the Senate—for Congress to review the Executive Branch's use of delegated lawmaking authority.  5 U.S.C. § 802(d).  Accordingly, on its face, the CRA only applies to certain "rules" (i.e., actions that proscribe law), as that term is defined in the Administrative Procedure Act and narrowed by the CRA itself.  *Id.* § 801(a)(1)(A) (requiring submission of "report" after promulgation of "rule"); *id.* § 804(3) (defining "rule").  An administrative action is thus not subject to the CRA unless it is such a "rule."

After the waivers were purportedly reclassified and submitted to Congress, the GAO and the Senate Parliamentarian—non-partisan advisers to Congress—

---

[5] GAO, *Decision: Environmental Protection Agency—Applicability of the Congressional Review Act to Notice of Decision on Clean Air Act Waiver of Preemption* 4 (Nov. 30, 2023), available at https://www.gao.gov/assets/870/863746.pdf (last visited August 26, 2025).

[6] *Supra* n.4.

7

were asked whether the CRA applied.  Both concluded it did not because these waivers are not rules.  *See California v. United States*, Compl., Case No. 4:25-cv-04966, Dkt. No. 1 (N.D. Cal. June 12, 2025) (Exhibit 1) at ¶¶ 78-80, 82-84, 89-91, Exhibit B.  Congress plowed ahead anyway.  In order to do so, the Senate had to pass two separate procedural changes (called points of order).  The first allowed points of order in CRA proceedings despite contrary text in the statute.  *See id.* at ¶¶ 100-102.  The second point of order empowered the Executive Branch to decide when CRA-like expedited procedures can be used, with the Senate accepting that "[w]hen an Agency says it is a rule, it is a rule."  171 Cong. Rec. S3140 (May 22, 2025); *see also* 171 Cong. Rec. S3018 (May 21, 2025) (using "Agency-submitted rule" instead of "rule"); *id.* at S3088 (same).  Pursuant to that second point of order, Congress passed the Resolution purporting to disapprove of the Advanced Clean Cars II waiver.  H.J. Res. 88.  The President signed the Resolution—along with two others targeting the other above-mentioned waivers—on June 12, 2025.[7]

### D.   Litigation Involving the Congressional Resolutions

California and other States sued the federal government in the Northern District of California on the same day the President signed the three resolutions.  Exh. 1.  The Plaintiff States (which include ten of the State Movant-Intervenors

---

[7] A more thorough discussion of the defects in the enactment of the congressional resolutions can be found in the attached Complaint (Exh. 1) at ¶¶ 71-113.

here) assert seven counts and seek, *inter alia*, a declaration that the three congressional resolutions are unlawful and invalid. *Id.* at 27-40. Plaintiff States allege that a Clean Air Act preemption waiver is not a "rule" as that term is defined in the Administrative Procedure Act or the CRA, that the President and EPA lacked any authority to reclassify already finalized waiver actions from orders into rules, and that doing so was unlawful. *Id.* at ¶¶ 114-152.

Plaintiff States also assert that this unprecedented use of an inapplicable statute to attack state laws involved "extraordinary defects in the national political process" that render the congressional resolutions "invalid under the Tenth Amendment" and structural principles of federalism. *South Carolina v. Baker*, 485 U.S. 505, 512 (1988); Exh. 1 ¶¶ 171-176. Additionally, Plaintiff States—and ZETA (a Movant-Intervenor here and in the Northern District of California case)— allege that the congressional resolutions violate separation of powers principles. First, Congress acted outside its powers by overruling Executive Branch adjudications—actions taken to execute, rather than make, law—without altering the applicable substantive law. "The Constitution … is concerned with means as well as ends," *Horne v. Dep't of Agric.*, 576 U.S. 350, 362 (2015), and "does not permit Congress to execute the laws," *Bowsher v. Synar*, 478 U.S. 714, 726 (1986). *See also* Exh. 1 ¶¶ 164-166; *California v. United States*, ZETA's Complaint-in-Intervention., Case No. 4:25-cv-04966, Dkt. No. 43.1 (N.D. Cal. July 25, 2025)

9

(Exhibit 2) ¶¶ 100-113.  Second, the Senate impermissibly delegated the power to determine its own rules of procedure to the Executive Branch.  The authority to direct legislative procedure "only empowers Congress to bind itself," but for precisely that reason internal procedural rules must remain formally "independent … of the President."  *INS v. Chadha*, 462 U.S. 919, 955 & n.21 (1983).  Here, however, the Senate opted to allow the Executive Branch to determine whether extraordinary, fast-track Senate procedures apply:  "When an Agency says it is a rule, is it a rule?… The answer is, yes, it is a rule. And then [the Senate] acted on that."  171 Cong. Rec. S3140 (May 22, 2025); *see also* Exh. 1 ¶¶ 157-162.  The United States' response to the *California* complaint is due September 19, 2025.

Meanwhile, on August 11, 2025, four manufacturers filed a separate district court case in which the validity of the congressional resolutions is actively being litigated. These manufacturers allege that California is preempted from enforcing certain regulations (including parts of Advanced Clean Cars II) because of the congressional resolutions.  *Daimler v. Cal. Air Resources Board*, Compl, Case No. 2:25-cv-02255, Dkt. No. 1 (E.D. Cal. Aug 11, 2025) (Exhibit 3).  The *Daimler* Plaintiffs have moved for a preliminary injunction on all seven of their causes of action.  The United States intervened as a plaintiff, with claims predicated on the congressional resolutions, *id.* at Dkt. No. 43 (Exhibit 4), and joined the preliminary

injunction motion, *id*. at Dkt. No. 57 (Exhibit 5). Defendants' opposition to that motion is due September 16, 2025 and will include arguments that the congressional resolutions are unconstitutional or otherwise invalid.[8]

### E.    Procedural History of Relevant Petitions for Review

Prior to the congressional resolutions targeting them, each of the three EPA waivers was challenged in petitions for review under the Clean Air Act. All petitions challenging the Advanced Clean Trucks waiver were filed in the D.C. Circuit in 2023. *W. States Trucking Ass'n v. EPA*s, Case No. 23-1143 (D.C. Cir. 2023). Those cases have been in abeyance—at EPA's request—since December 2023, after petitioners' opening briefs raised numerous issues overlapping with other cases recently argued in the same court.

Petitions seeking review of the Advanced Clean Cars II and Omnibus waivers were filed in this Court and in the D.C. Circuit in 2025.[9] No briefing has occurred, because—at EPA's repeated request—all of these cases "have been in abeyance almost since their inception." EPA Mot. at 3, Dkt. No. 33.

---

[8] Other private plaintiffs—and the United States as movant-intervenor—are also attempting to litigate these issues in the district court for the Northern District of Illinois. *American Free Enterprise Chamber of Commerce v. Engine Manufacturers Association*, Case No. 3:24-cv-50504 (N.D. Ill.). The California official named in that case has moved to dismiss for lack of personal jurisdiction and improper venue. *Id.* at Dkt. No. 125.

[9] The lead Omnibus waiver cases are Ninth Circuit Case No. 25-89 and D.C. Circuit Case No. 25-1083. The lead Advanced Clean Cars II waiver cases are Ninth Circuit Case No. 25-106 and D.C. Circuit Case No. 25-1078.

EPA has now moved to dismiss the petitions filed *in this Court only*, arguing that they are moot. But tellingly, EPA has not moved to dismiss any of the above-referenced petitions filed in the D.C. Circuit. In fact, EPA has continued to leave all of those cases in abeyance, even seeking to extend abeyances as needed to keep those D.C. Circuit cases inactive.[10]

## ARGUMENT

### I.    THE COURT SHOULD CONTINUE TO HOLD THESE CASES IN ABEYANCE

No party has disputed that this Court has authority and discretion to continue to hold these cases in abeyance. Nor could they. The Court has "broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). EPA itself has confirmed recently that abeyance is perfectly appropriate and within a court's authority, even when there may be questions about the court's jurisdiction. *See W. States Petroleum Ass'n v. EPA*, EPA's Reply in Support of Motion to Hold Case in Abeyance or Alternatively to Dismiss, Case No. 25-1080, Doc. 2113831 at 2 (D.C. Cir. May 1, 2025) ("No party has questioned this Court's authority to hold this case in abeyance rather than deciding

---

[10] *See Valero Renewable Fuels Co. v. EPA*, Case No. 25-1078, Doc. 2132195 (D.C. Cir. Aug. 27, 2025); *Am. Fuel & Petrochemical Mfrs v. EPA*, Case No. 25-1083, Doc. 2133787 (D.C. Cir. Sep. 5, 2025); *W. States Trucking Ass'n v. EPA*, Case No. 23-1143, Doc. 2028475 at 1-2 (D.C. Cir. Nov. 24, 2023).

the jurisdictional dispute right now.").  In these cases as well, "[i]t is appropriate for the Court to exercise that authority." *Id.*  Continuing to hold these cases in abeyance would promote judicial economy, facilitate the development of a record and reasoned decision for this Court's future review, and cause no hardship to any parties.

### A.    Continued abeyance promotes judicial economy, including allowing orderly consideration of complex issues

Courts "often" hold cases in abeyance "in light of other pending proceedings that may affect the outcome of the case before [them]." *Basardh v. Gates*, 545 F.3d 1068, 1069 (D.C. Cir. 2008).  That is a quintessential use of abeyance.  *See Am. Life Ins. Co. v. Stewart*, 300 U.S. 203, 215 (1937) ("In the exercise of a sound discretion [a court] may hold one lawsuit in abeyance to abide the outcome of another, especially where the parties and issues are the same.").  EPA itself sought an abeyance in the petitions challenging the Advanced Clean Trucks waiver for this reason, i.e., where the "resolution of [separate] cases could decide or substantially narrow the issues."  *See, e.g.*, *W. States Trucking Ass'n v. EPA*, EPA's Mot. to Hold Case in Abeyance, Case No. 23-1143, Doc. 2028475 at 1-2 (D.C. Cir. Nov. 24, 2023).

The same principles also commonly justify abeyance in instances like this one: when separate litigation challenges the validity of a subsequent government action that allegedly moots an existing case. *See, e.g.*, *California v. DOE*, Case

13

No. 21-108, Dkt. No. 220 (2d Cir. Apr. 29, 2022) (holding challenges to 2020 rule in abeyance pending disposition of challenges to 2022 repeal of that rule); *Murray Energy Corp. v. EPA*, Order, Case No. 16-1127, Doc. 1858346 (D.C. Cir. Aug. 26, 2020) (holding challenges to 2016 rules in abeyance pending disposition of challenges to overriding 2020 rule); *see also State of Texas v. EPA*, API's Docketing Statement, Case No. 24-1054, , Doc. 2058541, at 3 (D.C. Cir. June 7, 2024) (listing multiple challenges in abeyance due to changing regulations).

Movant-Intervenor States respectfully submit that the same course is warranted here. The validity of the subsequent action that has allegedly mooted these petitions—the Resolution purporting to disapprove the Advanced Clean Cars II waiver—is actively being litigated in district courts. Holding these petitions in abeyance and allowing the separate litigation to proceed in the ordinary course would allow this Court to consider the validity of the Resolution with the benefit of a district court opinion and a relevant record (as opposed to the record here which concerns the waiver decisions). This "will sharpen and narrow the legal issues that must eventually be decided," whether in an appeal of a district court decision, or later in these petitions. *Green v. Dep't of Commerce*, 618 F.2d 836, 842 (D.C. Cir. 1980); *see Ecological Rts. Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1154 (9th Cir. 2000) ("Usually, an appellate court does not consider legal issues in the first instance but instead has the benefit of the district judge's initial analysis."). That

approach best respects the role of "a federal court of appeals" as "a court of review, not first view," *Shirk v. U.S. Dep't of Interior*, 773 F.3d 999, 1007 (9th Cir. 2014), a particularly important consideration in constitutional adjudication, which is "the most important and delicate of [a court's] responsibilities," *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 221 (1974).

Rather than allow the ongoing district court litigation to proceed and determine the validity of the Resolution in the ordinary course, EPA (and Petitioners and Amici) ask the Court to subvert that orderly course by leapfrogging the district courts and deciding the issues now. Moreover, they make this ask by moving to dismiss cases that have been in abeyance since their inception and that challenge the validity of the Advanced Clean Cars II waiver, *not* the Resolution. If the Court entertained that request, it would have to consider complex and novel questions of constitutional and statutory law in the first instance, without the benefit of a full record or any reasoned lower court opinion, *see* Exh. 1 at ¶¶ 114-188 (asserting seven separate counts challenging validity of resolutions); *see also infra* Section II—simply for the purpose of mooting a challenge that has been inactive since it was filed. As in most cases, "the district court is better positioned to address these questions in the first instance with the benefit of briefing and specific analysis." *Bluetooth SIG Inc. v. FCA US LLC*, 30 F.4th 870, 874 (9th Cir. 2022).

Contrary to Petitioners' assertion, Pet. MTD Response at 2-3, Dkt. No. 38, a dismissal order here would not actually promote judicial economy. For example, even if the Court granted EPA's motion and issued an order that directly addressed the validity of the congressional resolutions targeting the Advanced Clean Cars II waiver (at issue here) and the Omnibus waiver (at issue in Case No. 25-89), that order could not address the congressional resolution targeting the Advanced Clean Trucks waiver—which was never challenged in this circuit. That congressional resolution presents distinct issues because, *inter alia*, the Advanced Clean Trucks waiver was in effect for more than two years before it was targeted, purportedly through use of a statute that requires submission to Congress before an action's effective date. 5 U.S.C. § 801(a)(1)(A). Thus, an order dismissing these petitions as moot could not fully resolve *California* (which challenges all three congressional resolutions) or *Daimler* (which challenges California's authority to enforce the Advanced Clean Trucks regulation).

Dismissal would not promote judicial economy for yet another reason. Petitioners explain in a footnote that they may want to refile their petitions for review of the Advanced Clean Cars II waiver, after dismissal, if the Resolution is later invalidated in the separate litigation. Pet. MTD Response at 2 n.1. But Petitioners acknowledge this would be far from economical, *id.*, as it would require this Court to rule on threshold issues like the timeliness of such a petition under 42

16

U.S.C. § 7607(b)(1) and the authority of this Court to recall mandates—issues not presented if this Court simply keeps these timely filed petitions in abeyance, *see* Pet. MTD Response at 2 n.1.  Holding these cases in abeyance is undoubtedly the more economical route.  *See Ctr. for Biological Diversity v. EPA*, 56 F.4th 55, 71 (D.C. Cir. 2022) (courts "routinely stay [their] hand when parties identify developments that are likely to render judicial resolution unnecessary").

**B.    Continued abeyance causes no hardship to any party**

A continued abeyance is also proper here because it would not cause prejudice or hardship to any party.  Petitioners' and EPA's own actions demonstrate as much.  At the repeated request of EPA, and without opposition from Petitioners, these consolidated "cases have been in abeyance since almost their inception." EPA Mot. at 3; *see* Dkt. Nos. 21, 25-29.  And though the Resolution was signed by the President in June, Petitioners never affirmatively moved to dismiss these petitions, and EPA waited two months.  If EPA or Petitioners were harmed or prejudiced by an abeyance, they presumably would have asked for it to be lifted sooner—and, for that matter, would not be simultaneously asking the D.C. Circuit to keep identical petitions for review in abeyance.  *See supra* Background Section E.  In fact, as similarly situated petitioners recognize in the parallel challenge to the Omnibus waiver, abeyance may better protect their interests in these cases by avoiding the need to refile

17

petitions for review and litigate timeliness questions under 42 U.S.C. § 7607(b) if the Resolution is later held invalid.  *See Am. Free Enterprise Chamber of Com. v. EPA*, Pet. Resp. to Mot. to Dismiss, Case No. 25-89, Dkt. No. 37 at 13 n.5 (9th Cir. Aug 25, 2025).

In contrast, granting EPA's motion to dismiss on truncated briefing and no record could prejudice the State Movant-Intervenors by cutting short the separate litigation in which the validity of the Resolution is directly at issue.  As noted above, this appears to be the sole purpose of EPA's motion—and Petitioners' and Amici's support for that motion: to obtain a ruling *from this Court* that the Resolution is valid, in the hopes that such a ruling will pre-determine the separate district court litigation.  They have revealed as much via their unusual, and otherwise inexplicable, additional requests.  They make clear that they specifically seek a published opinion from this Court, Pet. MTD Response at 10; Amicus at 11, Dkt. No. 37, and that they would not be satisfied if their support for dismissal was construed as a voluntary dismissal, Pet. MTD Response at 2 n.1.  Moreover, the parties now insist that this Court grant Movant-Intervenor States' long-pending motion to intervene prior to dismissing these cases, EPA Mot. at 4; Pet. MTD Response at 2-3, even though they expressed no similar desire during the seven months that intervention motion has been pending.  EPA has provided no reason

for this request, but the reason is apparent: EPA intends to assert preclusion against California and other district court litigants who are also Movant-Intervenor States.

In short, dismissal is not appropriate because it may force the Court into an unnecessary and premature decision on novel issues of constitutional law and potentially prevent States (and others) from litigating their challenges to the Resolution in the normal course. The Court should instead allow that normal course to proceed and continue to hold this petition in abeyance, as it has been for months. That approach would cause no hardship to any party and would allow the Court to consider those novel issues with the benefit of a lower court opinion and full record.

## II. IF THE COURT INTENDS TO CONSIDER DISMISSAL, IT SHOULD ORDER FULL BRIEFING AND REFER THE ISSUE TO A MERITS PANEL

If the Court declines to keep these cases in abeyance and intends to consider dismissing them as moot based on the validity of the Resolution, it should—at the very least—refer EPA's motion to a merits panel and order full briefing and oral argument on those issues.[11] Courts are usually "reluctant to render a decision on … important jurisdictional questions without the benefit of briefing and oral argument." *Nat'l Juvenile Law Ctr., Inc. v. Regnery*, 738 F.2d 455, 467 (D.C. Cir.

---

[11] If the Court chooses this option, it also might consider consolidating these cases with Case No. 25-89 (and consolidated) for purposes of such briefing and argument.

1984).  Unlike the current abbreviated motions' posture, full briefing would provide the Court with a relevant factual record and more developed legal arguments.  *See In re Lorillard Tobacco Co.*, 370 F.3d 982, 988 (9th Cir. 2004) (noting how the Court is "in a particularly poor position" to decide issues "[w]ithout a full record and without the benefit of an adversarial proceeding.").  That process is more consistent with how this Court considers most legal issues— and, given significant questions of first impression, would be particularly warranted here.

The Resolution is the culmination of an unprecedented attack by the federal government on state regulatory programs that have stood for more than half a century.  California and the other States whose laws were targeted by those attacks deserve a full opportunity to be heard on the Resolution's invalidity.  They are pursuing those claims in the normal course—presenting them in the complaint filed in *California* (and asserting them as defenses to the preliminary injunction motion in *Daimler*).  If this Court intends to short-circuit that district court litigation, it should—at a minimum—allow the States full briefing, including an opportunity to respond to arguments from EPA.

The federal government has never before sought to use expedited legislative procedures designed to respond to federal rules to upend state regulatory programs.  These extraordinary actions raise serious, novel questions of constitutional law that

require full-length briefing and adequate time to prepare.  To illustrate, as the Supreme Court and this Court have both recognized, "the contours of the 'extraordinary defect' test" for Tenth Amendment violations—articulated in *South Carolina*—"remain[] fuzzy" because Congress generally respects the vertical federalism boundaries built into the Constitution.  *Nevada v. Skinner*, 884 F.2d 445, 452 (9th Cir. 1989); *see also South Carolina*, 485 U.S. at 512 (declining to "attempt any definitive articulation" of test).  The States' challenge to the Resolution will bring that fuzziness into focus because, unlike in prior cases, there were myriad unparalleled defects in the process leading to the Resolution: from EPA's unexplained about-face purporting to reclassify already finalized agency actions all the way through the Senate's decision to let the Executive Branch decide which Senate procedures apply.  *Cf. Nevada v. Watkins*, 914 F.2d 1545, 1556 (9th Cir. 1990) (rejecting an "extraordinary defects" claim because "Nevada cannot point to *any* defect in the political process") (emphasis added).  However, to bring that focus to an infrequently litigated federalism claim, the States require the ability to fully brief the issues and to present their arguments in their entirety.

The same is true of the separation of powers arguments.  For example, Movant-Intervenors are unaware of another instance where a chamber of Congress has abdicated its exclusive constitutional power to make its own rules, letting the

Executive Branch dictate which rules apply to a particular legislative proposal.[12]

Nor is it commonplace for Congress to veto the Executive Branch's exercise of its

power to execute the law, as Congress did here by purportedly disapproving of

EPA's adjudicatory orders without changing the applicable statutory criteria.  This

Court should have the benefit of full briefing on these issues (and preferably a

reasoned decision from a district court judge) before deciding them.  And that is all

the more true given the consequences here—the fate of vehicle emission

regulations on which more than ten States rely to protect their residents from

harmful pollution and to meet federal air quality standards (where failing to do so

can result in sanctions).

Petitioners' contention that 5 U.S.C. § 805 bars these challenges to the

Resolution only underscores the complexity of the issues this Court would need to

resolve if it does not hold this case in abeyance.  That provision only applies to

actions or omissions "under" the CRA, *id.*, but it is disputed whether any relevant

action here ever qualified.  By its plain terms, actions under the CRA apply only to

"rules" as that term is defined, *supra* Background Sections C-D, and no one

---

[12] Further highlighting why full briefing would be necessary for the Court to
properly consider the issues, Petitioners' political question argument is based on
mischaracterizing this separation of powers claim as one about "the asserted failure
of Congress to comply with its own procedural rules," Pet. MTD Response at 6,
rather than one about abdication, to another branch, of a power vested exclusively
in Congress.

contends that definition encompasses the waivers at issue.  And, even if 5 U.S.C.

§ 805 did bar *some* claims, it plainly does not bar the States' constitutional

challenges.  *Ctr. for Biological Diversity v. Bernhardt*, 946 F.3d 553, 561 (9th Cir.

2019).

These (and other) issues certainly should not be decided based on a four-page

motion that presented no argument supporting the Resolution's validity.  EPA's

conclusory characterization of these challenges as "baseless" and its equally

conclusory assertion that the Resolution should be "presumed valid" do not ask for,

much less support, a determination that the Resolution *is* valid.  EPA Mot. at 4.

Petitioners' arguments in response cannot cure any defects in the motion itself on

that point (nor can any arguments EPA may make in reply).

And Petitioners' mischaracterizations of the claims in the *California*

complaint, *see, e.g.*, *supra* n.12, only underscore that these issues would benefit

from development in—and a reasoned decision from—a district court.  Moreover,

the Resolution—and the myriad legal defects that led to it—are unprecedented

actions taken by the federal government.  The constitutionality of those actions

should not turn on private parties' characterizations or arguments, particularly

where those are submitted ten days after, *and in response to*, the motion at issue.

Rather, Movant-Intervenor States should have an opportunity to respond to the

federal government's positions—something EPA's four-page motion notably

declined to provide.  This is not an appropriate process to resolve complex, unusual constitutional questions of substantial import to Movant-Intervenor States.

## CONCLUSION

Movant-Intervenor States respectfully request that the Court grant their cross-motion for continued abeyance pending the final disposition of either *California v. United States* or *Daimler v. California Air Resources Board*.  If it does so, it should defer deciding EPA's motion to dismiss in the meantime.  Alternatively, if the Court wishes to take up EPA's motion, it should refer the motion to a merits panel and order full briefing and argument.


Dated:  September 8, 2025                              Respectfully submitted,


                                                              *s/ Katherine Gaumond*
                                                    _____


                                              Rob Bonta
                                                *Attorney General of California*
                                              ANNADEL ALMENDRAS
                                                *Senior Asst. Attorney General*
                                              DENNIS L. BECK, JR.
                                                *Acting Senior Asst. Attorney General*
                                              Myung J. Park
                                                *Supervising Deputy Attorney General*
                                              KATHERINE GAUMOND
                                                *Deputy Attorney General*

                                                *Attorneys for State of California*

FOR THE STATE OF COLORADO

PHILIP J. WEISER
ATTORNEY GENERAL

*/s/ David A. Beckstrom*
DAVID A. BECKSTROM
Second Assistant Attorney General
Colorado Department of Law
Natural Resources and Environment
Section
1300 Broadway, Tenth Floor
Denver, Colorado 80203
(720) 508-6306
david.beckstrom@coag.gov

FOR THE STATE OF CONNECTICUT

WILLIAM TONG
ATTORNEY GENERAL

MATTHEW I. LEVINE
Deputy Associate Attorney General

*/s/ Scott N. Koschwitz*
SCOTT N. KOSCHWITZ
Assistant Attorney General
Connecticut Office of the Attorney
General
165 Capitol Avenue
Hartford, Connecticut 06106
(860) 808-5250
scott.koschwitz@ct.gov

FOR THE STATE OF DELAWARE

KATHLEEN JENNINGS
ATTORNEY GENERAL

*/s/ Vanessa L. Kassab*
IAN R. LISTON
Director of Impact Litigation
RALPH K. DURSTEIN III
VANESSA L. KASSAB
Deputy Attorneys General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
vanessa.kassab@delaware.gov

FOR THE STATE OF HAWAII

ANNE E. LOPEZ
ATTORNEY GENERAL

*/s/ Lyle T. Leonard*
LYLE T. LEONARD
Deputy Attorney General
465 S. King Street, #200
Honolulu, Hawaii 96813
(808) 587-3050
lyle.t.leonard@hawaii.gov

FOR THE STATE OF ILLINOIS

KWAME RAOUL
ATTORNEY GENERAL

*/s/ Jason E. James*
MATTHEW J. DUNN
Chief, Environmental
Enforcement/Asbestos Litigation Division
JASON E. JAMES
Assistant Attorney General
Office of the Attorney General
201 W. Pointe Drive, Suite 7
Belleville, IL 62226
(217) 843-0322
jason.james@ilag.gov

FOR THE STATE OF MAINE

AARON M. FREY
ATTORNEY GENERAL

*/s/ Scott Boak*
SCOTT BOAK
Assistant Attorney General
6 State House Station
Augusta, ME 04333
(207) 626-8800
Scott.boak@maine.gov

FOR THE STATE OF MARYLAND

ANTHONY G. BROWN
ATTORNEY GENERAL

*/s/ Steven J. Goldstein*
STEVEN J. GOLDSTEIN
Special Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place
Baltimore, MD 21202
410-576-6414
sgoldstein@oag.state.md.us

KARA A. DORR
Assistant Attorney General
Office of the Attorney General
Maryland Department of the Environment
1800 Washington Blvd.
Baltimore, MD 21230
(410) 537-3047
kara.dorr@maryland.gov

FOR THE COMMONWEALTH OF
MASSACHUSETTS

ANDREA JOY CAMPBELL
ATTORNEY GENERAL

*/s/ Seth Schofield*
SETH SCHOFIELD
Senior Appellate Counsel
JON WHITNEY
Assistant Attorney General
Office of the Attorney General
Energy and Environment Bureau
One Ashburton Place, 18th Floor
Boston, MA 02108
(617) 727-2200
seth.schofield@mass.gov

FOR THE STATE OF MINNESOTA

KEITH ELLISON
ATTORNEY GENERAL

*/s/ Peter Surdo*
PETER N. SURDO
Special Assistant Attorney General
445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2127
(651) 757-1061
peter.surdo@ag.state.mn.us

FOR THE STATE OF NEW JERSEY

MATTHEW J. PLATKIN
ATTORNEY GENERAL

*/s/Lisa Morelli*
Lisa Morelli
Deputy Attorney General
Division of Law
25 Market St., P.O. Box 093
Trenton, NJ 08625
(609) 376-2735
lisa.morelli@law.njoag.gov

FOR THE STATE OF NEW YORK

LETITIA JAMES
ATTORNEY GENERAL

JUDITH N. VALE
Deputy Solicitor General
ELIZABETH A. BRODY
Assistant Solicitor General
YUEH-RU CHU
Chief, Affirmative Litigation Section
Environmental Protection Bureau

*/s/ Ashley M. Gregor*
ASHLEY M. GREGOR
Assistant Attorney General
28 Liberty Street, 19th Floor
New York, NY 10005
(212) 416-8454
ashley.gregor@ag.ny.gov

FOR THE STATE OF OREGON

DAN RAYFIELD
ATTORNEY GENERAL

*/s/ Paul Garrahan*
PAUL GARRAHAN
Sr. Assistant Attorney General
Natural Resources Section
Oregon Department of Justice
1162 Court Street NE
Salem, Oregon 97301-4096
(503) 947-4540
Paul.Garrahan@doj.oregon.gov

FOR THE STATE OF RHODE ISLAND

PETER F. NERONHA
ATTORNEY GENERAL

*/s/ Nicholas M. Vaz*
Nicholas M. Vaz
Special Assistant Attorney General
Office of the Attorney General
Environmental and Energy Unit
150 South Main Street
Providence, Rhode Island 02903
(401) 274-4400 ext. 2297
nvaz@riag.ri.gov

FOR THE STATE OF VERMONT

CHARITY R. CLARK
ATTORNEY GENERAL

*/s/ Hannah Yindra*
HANNAH YINDRA
Assistant Attorney General
Office of the Attorney General
109 State Street
Montpelier, VT 05609
(802) 828-3186
Hannah.Yindra@vermont.gov

FOR THE STATE OF WASHINGTON

NICHOLAS W. BROWN
ATTORNEY GENERAL

*/s/ Alexandria Doolittle*
ALEXANDRIA K. DOOLITTLE
Assistant Attorney General
Office of the Attorney General
P.O. Box 40117
Olympia, Washington 98504-0117
(360) 586-6769
Alex.Doolittle@atg.wa.gov

FOR THE DISTRICT OF COLUMBIA

BRIAN L. SCHWALB
ATTORNEY GENERAL

*/s/ Caroline S. Van Zile*
CAROLINE S. VAN ZILE
Solicitor General
Office of the Attorney General for the
District of Columbia
400 6th Street N.W., Suite 8100
Washington, D.C. 20001
(202) 724-6609
caroline.vanzile@dc.gov

FOR THE CITY OF CHICAGO

MARY B. RICHARDSON-LOWRY
CORPORATION COUNSEL

*/s/ Elizabeth Mary Tisher*
ELIZABETH MARY TISHER
Assistant Corporation Counsel
2 N. LaSalle Street, Suite 580
Chicago, IL 60602
(312) 744-3173
elizabeth.tisher@cityofchicago.org

FOR THE CITY OF LOS ANGELES

HYDEE FELDSTEIN SOTO
LOS ANGELES CITY ATTORNEY

*/s/ Michael J. Bostrom*
MICHAEL J. BOSTROM
Senior Assistant City Attorney
201 N. Figueroa St., 13th Floor
Los Angeles, CA 90012
(213) 978-1867
Michael.Bostrom@lacity.org

FOR THE CITY OF NEW YORK

MURIEL GOODE-TRUFANT
CORPORATION COUNSEL

*/s/ Hilary Meltzer*
HILARY MELTZER
Chief, Environmental Law Division
New York City Law Department
100 Church Street, Rm 6-146
New York, NY 10007
Telephone: (212) 356-2070
hmeltzer@law.nyc.gov

## CERTIFICATE OF COMPLIANCE

This document complies with the word limit of Fed. R. App. P. 27(d)(2)(a) and Ninth Circuit Rules 27-1(1)(d) and 32-3, as, excluding the portions of the document exempted by Fed. R. App. P. 32(f), this document contains 5,497 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) as this document has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14 point font.

Dated:  September 8, 2025                    Respectfully submitted,


_s/ Katherine Gaumond_

KATHERINE GAUMOND
_Deputy Attorney General_

_Attorney for State of California_