ADAM R.F. GUSTAFSON
*Principal Deputy Assistant Attorney General*
ROBERT N. STANDER (DC Bar #1028454)
*Deputy Assistant Attorney General*
JEFFREY HUGHES (NY Bar #5367214)
United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044
(202) 717-7067 (Stander)
(202) 532-3080 (Hughes)
robert.stander@usdoj.gov
jeffrey.hughes@usdoj.gov

*Attorneys for Defendants*

YAAKOV M. ROTH
*Principal Deputy Assistant Attorney General*
Civil Division
JOSEPH E. BORSON
*Assistant Branch Director*
Federal Programs Branch
STEPHEN M. PEZZI (FL Bar #1041279)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
(202) 305-8576
stephen.pezzi@usdoj.gov

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

STATE OF CALIFORNIA, et al.,

Plaintiffs,

v.

UNITED STATES OF AMERICA, et al.,

Defendants.

Case No. 4:25-cv-04966-HSG

**UNITED STATES' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

Date: January 29, 2026
Time: 2:00 p.m. PST
Judge: Hon. Haywood S. Gilliam, Jr.

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

NOTICE OF MOTION AND MOTION TO DISMISS ...................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................... 1

BACKGROUND................................................................................................................ 3

    A.    The Congressional Review Act creates expedited legislative procedures for enacting statutes that abrogate certain administrative rules ............. 3

    B.    The Clean Air Act preempts state-level vehicle emission regulations.... 4

    C.    California promulgates three sets of vehicle emissions standards with the goal of banning sales of internal-combustion vehicles .......................... 4

    D.    Congress revokes the preemption waivers............................................. 5

    E.    California sues, claiming that EPA and Congress failed to follow proper legislative procedures under the Congressional Review Act................. 6

ARGUMENT ..................................................................................................................... 6

    I.    Congress expressly precluded judicial review over Plaintiffs' statutory and ultra vires claims (Counts I, II, V, and VI) ............................................................ 6

    II.    The Court lacks subject-matter jurisdiction over Plaintiffs' claims that challenge the application or interpretation of House or Senate rules.............................. 11

    III.    Plaintiffs lack Article III standing to bring several of their claims and to seek some of their requested relief........................................................................ 14

        A.    Plaintiffs' alleged injuries were neither caused by the EPA nor redressable by an order vacating any action by EPA........................... 14

        B.    Plaintiffs lack standing to challenge the possible future applicability of the CRA's reenactment provision ...................................................... 15

    IV.    Even if the Resolutions conflict with earlier-enacted statutes, they remain valid.................................................................................... 16

V. The statutory and ultra vires claims fail for several other threshold reasons.................................................................................. 18

    A. The APA claim fails because Plaintiffs identify no final agency action................................................................ 18

    B. Plaintiffs' claims against EPA are an improper attempt to evade the Clean Air Act's comprehensive review scheme................................. 19

    C. The ultra vires claims fail as a matter of law........................................ 21

VI. Plaintiffs' constitutional claims fail.............................................................. 21

    A. The Resolutions amend the law and do not usurp Executive power..... 21

    B. The challenge to the Senate's "second point of order" is nonjusticiable and otherwise fails............................................................ 25

    C. California and its Co-Plaintiff States were not unconstitutionally deprived of the right to participate in the political process.................. 28

CONCLUSION .................................................................................................... 30

## <u>TABLE OF AUTHORITIES</u>

**U.S. Constitution**

U.S. Const. art. I, § 5 .................................................................................................... 12

U.S. Const. art. I, § 5, cl. 2 ...................................................................................... 3, 12

U.S. Const. art. I, § 7 .................................................................................................... 28

**Cases**

*Armstrong v. Exceptional Child Ctr., Inc.*,
   575 U.S. 320 (2015) ................................................................................................ 21

*Bank Markazi v. Peterson*,
   578 U.S. 212 (2016) ................................................................................................ 22

*Bennett v. Spear*,
   520 U.S. 154 (1997) ................................................................................................ 18

*Cal. Dump Truck Owners Ass'n v. Nichols*,
   924 F. Supp. 2d 1126 (E.D. Cal. 2012) .................................................................. 20

*Citizens for Const. Integrity v. United States*,
   57 F.4th 750 (10th Cir. 2023) ........................................................................... 17, 27

*Common Cause v. Biden*,
   909 F. Supp. 2d 9 (D.D.C. 2012) ..................................................................... 12, 13

*Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*,
   482 F.3d 1157 (9th Cir. 2007) .................................................................... 1, 12, 13

*Cook Inlet Treaty Tribes v. Shalala*,
   166 F.3d 986 (9th Cir. 1999) ........................................................................... 22, 24

*Ctr. for Biological Diversity v. Bernhardt*,
   946 F.3d 553 (9th Cir. 2019) .......................................... 7, 9, 10, 11, 16, 17, 23

*Dalton Trucking, Inc. v. EPA*,
   808 F.3d 875 (D.C. Cir. 2015) ............................................................................... 20

*Dalton v. Specter*,
   511 U.S. 462 (1994) ................................................................................. 18, 19, 29

*Dorsey v. United States*,
   567 U.S. 260 (2012) ................................................................................................ 18

*Fletcher v. Peck*,
   10 U.S. 87 (1810) .................................................................................................... 25

*Foster v. USDA*,
    68 F.4th 372 (8th Cir. 2023) ........................................................................ 8

*Franklin v. Massachusetts*,
    505 U.S. 788 (1992) .................................................................................. 19

*Freeman Invs., L.P. v. Pac. Life Ins. Co.*,
    704 F.3d 1110 (9th Cir. 2013) ............................................................. 11, 29

*Heckler v. Ringer*,
    466 U.S. 602 (1984) .................................................................................. 10

*INS v. Chadha*,
    462 U.S. 919 (1983) ....................................................................... 16, 17, 24

*J.E.F.M. v. Lynch*,
    837 F.3d 1026 (9th Cir. 2016) ................................................................... 10

*Kaiser v. Blue Cross of California*,
    347 F.3d 1107 (9th Cir. 2003) ................................................................... 10

*Kan. Nat. Res. Coal. v. Dep't of Interior*,
    971 F.3d 1222 (10th Cir. 2020) ............................................................... 8, 9

*Kougasian v. TMSL, Inc.*,
    359 F.3d 1136 (9th Cir. 2004) ................................................................... 10

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) .................................................................................. 14

*Merck Sharp & Dohme Corp. v. Albrecht*,
    587 U.S. 299 (2019) .................................................................................. 24

*Metzenbaum v. FERC*,
    675 F.2d 1282 (D.C. Cir. 1982) ................................................................ 12

*Michel v. Anderson*,
    14 F.3d 623 (D.C. Cir. 1994) .................................................................... 28

*Montanans for Multiple Use v. Barbouletos*,
    568 F.3d 225 (D.C. Cir. 2009) .................................................................... 8

*Motor Vehicle Mfrs. Ass'n v. N.Y. State Dep't of Env't Conservation*,
    17 F.3d 521 (2d Cir. 1994) .......................................................................... 4

*Mount Graham Coal. v. Thomas*,
    89 F. 3d 554 (9th Cir. 1996) ..................................................................... 23

*Murphy Co. v. Biden*,
    65 F.4th 1122 (9th Cir. 2023) ................................................................. 29

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
    538 U.S. 803 (2003) .............................................................................. 16

*Nevada v. Skinner*,
    884 F.2d 445 (9th Cir. 1989) ................................................................. 30

*Nevada v. Watkins*,
    914 F.2d 1545 (9th Cir. 1990) ................................................... 13, 29, 30

*NFIB v. DOL*,
    595 U.S. 109 (2022) ........................................................................ 24, 27

*NFIB v. Sebelius*,
    567 U.S. 519 (2012) .............................................................................. 24

*Nixon v. United States*,
    506 U.S. 224 (1993) ........................................................................ 12, 13

*Nuclear Regul. Comm'n v. Texas*,
    605 U.S. 665 (2025) .............................................................................. 21

*O'Donoghue v. United States*,
    289 U.S. 516 (1933) .............................................................................. 28

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*,
    584 U.S. 325 (2018) .............................................................................. 24

*Palumbo v. Waste Techs. Indus.*,
    989 F.2d 156 (4th Cir. 1993) ................................................................. 20

*Patchak v. Zinke*,
    583 U.S. 244 (2018) .............................................................................. 22

*Pennsylvania v. Wheeling and Belmont Bridge Co.*,
    59 U.S. 421 (1855) ................................................................... 22, 23, 25

*Powell v. McCormack*,
    395 U.S. 486 (1969) .............................................................................. 13

*Pub. Citizen v. DOJ*,
    491 U.S. 440 (1989) .............................................................................. 28

*Rangel v. Boehner*,
    20 F. Supp. 3d 148 (D.D.C. 2013) ........................................................ 13

*Robertson v. Seattle Audubon Soc'y,*
 503 U.S. 429 (1992).................................................................................22, 23

*SEC v. Jarkesy,*
 603 U.S. 109 (2024)......................................................................................24

*Sierra Club v. Wheeler,*
 No. 15-cv-1165-HSG, 2018 WL 6182748 (N.D. Cal. Nov. 27, 2018)..........................20

*South Carolina v. Baker,*
 485 U.S. 505 (1988)...........................................................................28, 29, 30

*TransUnion LLC v. Ramirez,*
 594 U.S. 413 (2021)......................................................................................14

*Trump v. Hawaii,*
 585 U.S. 667 (2018)......................................................................................27

*U.S. Army Corps of Eng'rs v. Hawkes Co.,*
 578 U.S. 590 (2016)......................................................................................18

*United States v. Ballin,*
 144 U.S. 1 (1892).........................................................................................13

*Via Christi Reg'l Med. Ctr., Inc. v. Leavitt,*
 509 F.3d 1259 (10th Cir. 2007)..........................................................................8

*Virginia v. United States,*
 74 F.3d 517 (4th Cir. 1996).............................................................................20

*Wash. All. of Tech. Workers v. DHS,*
 892 F.3d 332 (D.C. Cir. 2018)...........................................................................8

*Watkins v. United States,*
 354 U.S. 178 (1957)......................................................................................28

**Statutes**

2 U.S.C. § 641(e)(2)..........................................................................................17

5 U.S.C. § 551(4)...............................................................................................4

5 U.S.C. § 801...................................................................................................3

5 U.S.C. § 801(a)(1)............................................................................................9

5 U.S.C. § 801(a)(1)(A)........................................................................................3

5 U.S.C. § 801(b)(1)............................................................................................3

5 U.S.C. § 801(b)(2).............................................................................3, 15, 16, 23-24

5 U.S.C. § 802 ................................................................................................................ 3

5 U.S.C. § 802(a) ........................................................................................................... 3

5 U.S.C. § 802(d)(2) ...................................................................................................... 3

5 U.S.C. § 802(g) ........................................................................................................... 3

5 U.S.C. § 802(g)(1) .................................................................................................... 11

5 U.S.C. § 802(g)(2) ...................................................................................................... 3

5 U.S.C. § 804(3) ....................................................................................................... 4, 9

5 U.S.C. § 805 ............................................................................................................ 1, 7

5 U.S.C. §§ 801–08 ........................................................................................................ 3

42 U.S.C. 7507 ........................................................................................................ 4, 25

42 U.S.C. § 7543(a) ................................................................................................. 4, 25

42 U.S.C. § 7543(b) ................................................................................................. 4, 20

42 U.S.C. § 7543(b)(1) .................................................................................................. 4

42 U.S.C. § 7607(b)(1) ................................................................................................ 20

Pub. L. No. 89-272, § 101, 79 Stat. 992 (1965) ........................................................... 4

Pub. L. No. 90-148, § 208, 81 Stat. 485 (1967) ........................................................... 4

Pub. L. No. 119-15, 139 Stat. 65 (2025) ...................................................................... 6

Pub. L. No. 119-16, 139 Stat. 66 (2025) ...................................................................... 6

Pub. L. No. 119-17, 139 Stat. 67 (2025) ...................................................................... 6

**Federal Register**

84 Fed. Reg. 51310 (Sept. 27, 2019) ............................................................................ 4

88 Fed. Reg. 20688 (Apr. 6, 2023) ............................................................................... 5

90 Fed. Reg. 642 (Jan. 6, 2025) .................................................................................... 5

90 Fed. Reg. 643 (Jan. 6, 2025) .................................................................................... 5

**Legislative History**

159 Cong. Rec. S8413 (Nov. 21, 2013) ...................................................................... 17

163 Cong. Rec. S2435 (Apr. 7, 2017) ......................................................................... 17

171 Cong. Rec. S3017 (May 21, 2025)........................................... 25, 26, 27, 28, 30

171 Cong. Rec. S3099 (May 22, 2025)........................................... 25, 26, 27

H.R. 3126, 97th Cong., Priv. L. No. 97-27, 96 Stat. 2623 (1982)........................................... 24

H.R. 5826, 97th Cong., Priv. L. No. 97-55, 96 Stat. 2636 (1983)........................................... 24

H.R. 6228, 98th Cong., Priv. L. No. 98-46, 98 Stat. 3434 (1984)........................................... 24

**State Materials**

Cal. Code Regs. tit. 13, § 1956.8 (2025) ........................................... 5

Cal. Code Regs. tit. 13, § 1962.4(c)(1)(B) (2025)........................................... 5

Cal. Code Regs. tit. 13, § 1963.1 (2025) ........................................... 5

**Other Authorities**

Congress.gov, Statutes at Large and Private Laws, https://www.congress.gov/private-laws/.. 24

GAO, *Applicability of Congressional Review Act to Requirement for Persons to Wear Masks While on Conveyances and at Transportation Hubs* (Dec. 14, 2021), https://www.gao.gov/assets/b-333501.pdf. ........................................... 4

Maeve P. Carey et al., Cong. Research Serv., R43992, *The Congressional Review Act: Frequently Asked Questions* 1 (Nov. 12, 2021)........................................... 3

Rule XXII, Standing Rules of Senate........................................... 17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on January 29, 2026, at 2:00 pm, in Courtroom 2, 4th Floor, United States District Court, Northern District of California, located at 1301 Clay Street, Oakland, California, Defendants will move the Court to dismiss this action. Defendants move to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for the reasons in the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

Exercising its constitutional responsibility to legislate on a matter of significant public concern, earlier this year, Congress invoked the legislative procedures of the Congressional Review Act (CRA) to enact three statutes abrogating three Clean Air Act preemption waivers that the Environmental Protection Agency (EPA) had previously issued to California. As a result, the California vehicle emissions regulations premised on those waivers are now expressly preempted under § 209(a) of the Clean Air Act. Unwilling to accept the outcome of that legislative process, California and ten other states have now sued EPA, its Administrator, and the President. But even a cursory review of the Amended Complaint shows that Plaintiffs' real dispute is with Congress—not with EPA, or even the President. According to Plaintiffs, Congress was wrong to conclude that EPA's preemption waivers are "rules" instead of "orders" under the CRA. In their view, Congress thus should not have used the CRA's streamlined procedures for debating the legislation, but instead should have used non-expedited procedures, including the Senate filibuster—even though the filibuster itself is purely a creature of Senate rules. This dispute over procedures for debating legislation in Congress fails for several threshold reasons.

Plaintiffs' claims are non-justiciable as a statutory matter. The CRA expressly precludes review: "No determination, finding, action, or omission under this chapter shall be subject to judicial review." 5 U.S.C. § 805. That provision bars most of Plaintiffs' claims.

Plaintiffs' claims are also non-justiciable as a constitutional matter. Congress, after all, is the exclusive judge of its own legislative procedures. *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1171-72 (9th Cir. 2007). It is not up to Plaintiffs or this Court to determine whether the waivers are best categorized as "rules" or "orders" within

1    the meaning of the CRA, and therefore whether Congress should have used the CRA's expedited

2    procedures for debating the legislation. That determination is Congress's to make, and Congress

3    conclusively made it when it decided to enact the statutes using the CRA process.

4         Plaintiffs lack Article III standing for their claims against EPA because Congress, not

5    EPA, invalidated the waivers, and enjoining any alleged EPA actions cannot redress Plaintiffs'

6    asserted harms stemming from three statutes. Moreover, Plaintiffs have not even attempted to

7    demonstrate standing to seek an order that EPA may, in the future, issue preemption waivers for

8    substantially similar—and entirely hypothetical—California emissions regulations. Nor do

9    Plaintiffs identify any EPA final agency action subject to review. Even if they had, the Clean Air

10   Act would vest jurisdiction to challenge that action exclusively in the courts of appeals.

11        Even if they are subject to review, Plaintiffs' constitutional claims are meritless. Plaintiffs

12   first say Congress usurped executive power by invalidating an adjudicatory order without

13   amending the law. But Plaintiffs rely on cases that apply to judicial power and Article III courts,

14   not executive power and administrative agencies. In any event, binding precedent holds that

15   statutes enacted under the CRA amend the law. Plaintiffs next challenge a "point of order"

16   adopted in the Senate, contending that the Senate unlawfully allowed EPA to be the "sole trigger"

17   for deciding whether Congress would use the CRA. This presents a nonjusticiable political

18   question that also fails for multiple reasons on the merits, most notably because the Senate voted

19   for itself whether to use the CRA.

20        Finally, Plaintiffs assert that "the Federal Government" violated the Tenth Amendment

21   because Congress did not undertake "rigorous debate," hear "state official testimony," or adhere

22   to the filibuster before repealing California's preemption waivers. FAC ¶ 164. But no one has a

23   constitutional right to the filibuster, or to any congressional procedure other than the

24   constitutional requirements of bicameralism and presentment—which all agree were satisfied

25   here. Plaintiffs' other allegations of "failings in the national political process" (FAC ¶ 162) assert

26   a political argument, not a legal claim.

27        Plaintiffs lost a vote in Congress. That does not violate the law.

28

1

## BACKGROUND

### A. The Congressional Review Act creates expedited legislative procedures for enacting statutes that abrogate certain administrative rules.

Enacted in 1996, the CRA creates a set of procedures for Congress to review and repeal agency rules. 5 U.S.C. §§ 801-08. The CRA provides that "[b]efore a rule can take effect, the Federal agency promulgating such rule shall submit" a report "to each House of the Congress." 5 U.S.C. § 801(a)(1)(A). Upon receipt of such a report, Congress may enact a joint resolution "disapprov[ing] the rule." 5 U.S.C. § 802(a). The joint resolution must include the following language: "That Congress disapproves the rule submitted by the ___ relating to ___, and such rule shall have no force or effect." *Id.* If a joint resolution of disapproval passes both Houses of Congress, and is signed into law by the President, two consequences follow. First, and most immediately, the rule "shall not take effect (or continue)." *Id.* § 801(b)(1). Second, the rule "may not be reissued in substantially the same form," nor may a "new rule that is substantially the same as such a rule . . . be issued, unless the reissued or new rule is specifically authorized by a law enacted after the date of the joint resolution disapproving the original rule." *Id.* § 801(b)(2).

The CRA also creates a set of expedited procedures for debating disapproval resolutions in Congress. *Id.* § 802. These procedures were enacted in "an exercise of the rulemaking power of the Senate and House of Representatives," *id.* § 802(g), consistent with the constitutional authority of each House of Congress to "determine the Rules of its Proceedings," U.S. Const. art. I, § 5, cl. 2. Most notably, Senate debate on a joint resolution is limited to 10 hours, 5 U.S.C. § 802(d)(2), which, under current Senate rules, has the practical effect of preventing a filibuster. *See* Maeve P. Carey et al., Cong. Research Serv., R43992, *The Congressional Review Act: Frequently Asked Questions* 1 (Nov. 12, 2021); *see also* Rule XXII, Standing Rules of Senate (requiring a 60-vote supermajority to end debate). These procedures are "deemed a part of the rules of each House," and either House may "change the rules . . . at any time." 5 U.S.C. § 802(g).

As a general matter, the CRA's procedures apply to disapproval resolutions relating to an agency "rule." *Id.* §§ 801, 802. Under the CRA, "rule" "has the meaning given such term in" the Administrative Procedure Act (APA), with certain CRA-specific exceptions. *Id.* § 804(3).

The APA, in turn, broadly defines "rule" as any "agency statement of general . . . applicability and future effect designed to implement, interpret, or prescribe law or policy." *Id.* § 551(4).

Congress sometimes disagrees with the Executive Branch's assessment of whether an agency action is a "rule" subject to CRA procedures. In response to requests from legislators, the Comptroller General (through the Governmental Accountability Office (GAO)) often opines on that subject. *See, e.g.*, GAO, *Applicability of Congressional Review Act to Requirement for Persons to Wear Masks While on Conveyances and at Transportation Hubs* (Dec. 14, 2021), https://www.gao.gov/assets/b-333501.pdf. GAO opinions are advisory only; they do not bind Congress, the Executive Branch, or the courts.

### B.  The Clean Air Act preempts state-level vehicle emission regulations.

In 1965, Congress amended Title II of the Clean Air Act to authorize federal emission standards for motor vehicles. Pub. L. No. 89-272, § 101, 79 Stat. 992 (1965). Even so, many states continued developing their own emission programs. *Motor Vehicle Mfrs. Ass'n v. N.Y. State Dep't of Env't Conservation*, 17 F.3d 521, 525 (2d Cir. 1994). Congress responded in 1967 by adding a broad preemption provision. Pub. L. No. 90-148, § 208, 81 Stat. 485 (1967). That provision, now codified at § 209(a), is the "cornerstone" of Title II. *Motor Vehicle Mfrs.*, 17 F.3d at 526. It provides: "No State . . . shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles . . . ." 42 U.S.C. § 7543(a).

Congress left only one exception for new motor vehicles to § 209(a)'s broad preemptive reach in what is now § 209(b). 42 U.S.C. § 7543(b). Section 209(b) governs applications for preemption waivers by states that adopted certain standards before March 30, 1966, which means only California. 42 U.S.C. § 7543(b); "The Safer Affordable Fuel-Efficient Vehicles Rule," 84 Fed. Reg. 51310, 51331-32 n.218 (Sept. 27, 2019). Under § 209(b), EPA shall only grant California a waiver in limited circumstances. 42 U.S.C. § 7543(b)(1). Additional states may adopt standards identical to California standards for which EPA has issued a waiver. *Id.* § 7507.

### C.  California promulgates three sets of vehicle emissions standards with the goal of banning sales of internal-combustion vehicles.

Earlier this decade, the California Air Resources Board (CARB) promulgated a series of

regulations imposing mandatory electric vehicle quotas and other stringent emissions standards on motor vehicles. CARB then requested preemption waivers from EPA. Three California regulations are relevant here.

First, CARB adopted the Advanced Clean Trucks rule. This rule required manufacturers of trucks with a gross vehicle weight rating above 8,500 pounds to meet increasing sales quotas for zero-emissions trucks beginning with model year 2024—irrespective of the pace of advances in zero-emissions power-train technology. *See* Cal. Code Regs. tit. 13, § 1963.1 (2025). CARB requested and received from EPA a Clean Air Act preemption waiver for its Advanced Clean Trucks rule. *See* Waiver of Preemption; Notice of Decision, 88 Fed. Reg. 20688 (Apr. 6, 2023).

Second, CARB adopted its Omnibus Low NOx rule. This rule requires truck manufacturers to reduce heavy-duty vehicle emissions beginning with model year 2024, and it makes extensive changes to other CARB regulations affecting heavy-duty trucks and engines. *See* Cal. Code Regs. tit. 13, § 1956.8 (2025). In December 2024, EPA granted a waiver request for this rule. *See* Waiver of Preemption; Notice of Decision, 90 Fed. Reg. 643 (Jan. 6, 2025).

Third, CARB adopted its Advanced Clean Cars II regulations. These regulations would require that all new light-duty vehicles sold in California *must* be either zero-emission vehicles or plug-in hybrid vehicles by model-year 2035. *See* Cal. Code Regs., tit. 13, § 1962.4(c)(1)(B). EPA granted California's waiver request in December 2024. *See* Waiver of Preemption; Notice of Decision, 90 Fed. Reg. 642, 642 (Jan. 6, 2025).

### D.  Congress revokes the preemption waivers.

EPA submitted the three waivers to Congress in February 2025. FAC ¶ 78. On April 2, 2025, members of the House of Representatives introduced three CRA disapproval resolutions, each one targeting one of the three preemption waivers (the Resolutions). *Id.* ¶ 86. By May 1, 2025, a majority of the House of Representatives had voted in favor of all three Resolutions. *Id.* ¶ 96. "Leaders in the Senate also ultimately decided to proceed with votes on the Resolutions, disregarding GAO's legal conclusion and overriding the Senate Parliamentarian's determination" that the CRA was inapplicable. *Id.* ¶ 99. On May 22, 2025, the Senate voted on each of the Resolutions and passed all three with votes of 51-45 (H.J. Res. 87, Advanced Clean

Trucks), 51-44 (H.J. Res. 88, Advanced Clean Cars II), and 49-46 (H.J. Res. 89, Omnibus). *Id.* ¶ 111. The President signed the Resolutions into law on June 12, 2025.

Each of the enacted statutes track the model language in 5 U.S.C. § 802(a). So, for example, the Advanced Clean Trucks Resolution reads as follows:

> *Resolved by the Senate and House of Representatives of the United States of America in Congress assembled*, That Congress disapproves the rule submitted by the Environmental Protection Agency relating to "California State Motor Vehicle and Engine Pollution Control Standards . . . Advanced Clean Trucks . . . Waiver of Preemption; Notice of Decision" (88 Fed. Reg. 20688 (April 6, 2023)), and such rule shall have no force or effect.

Pub. L. No. 119-15, 139 Stat. 65 (2025); *see also* Pub. L. No. 119-16, 139 Stat. 66 (2025); Pub. L. No. 119-17, 139 Stat. 67 (2025).

### E. California sues, claiming that EPA and Congress failed to follow proper legislative procedures under the Congressional Review Act.

Plaintiffs—the State of California and ten other States—filed this suit on June 12, 2025, and filed an amended complaint on October 10, 2025. The suit names four Defendants: the United States of America, EPA, Lee Zeldin (in his official capacity as EPA Administrator), and Donald J. Trump (in his official capacity as President of the United States). Plaintiffs allege that EPA misinterpreted the CRA by labeling the waivers as "rules" in its most recent CRA submission to Congress. *See* FAC ¶¶ 74-77. Plaintiffs also allege that the Senate parliamentarian and the GAO were right, and that a majority of the Senate was wrong, in treating the waivers as subject to CRA procedures. *See id.* ¶¶ 79-110. In short, Plaintiffs assert that using the CRA's procedures for debating legislation here was unlawful, and so they "challenge" what they describe as Congress's "unlawful Resolutions, which purport to prevent these States from enforcing" state regulations that conflict with the Resolutions. *Id.* ¶ 5.

### ARGUMENT

### I. Congress expressly precluded judicial review over Plaintiffs' statutory and ultra vires claims (Counts I, II, V, and VI).

"Congress is generally free to limit the jurisdiction of federal courts." *Ctr. for Biological*

*Diversity v. Bernhardt*, 946 F.3d 553, 563 (9th Cir. 2019). In the CRA, Congress did so, providing expressly that "[n]o determination, finding, action, or omission under this chapter [*i.e.*, the CRA] shall be subject to judicial review." 5 U.S.C. § 805. That preclusion provision is fatal to Plaintiffs' statutory and ultra vires claims (Counts I, II, V, and VI), all of which depend on the theory that Defendants violated the CRA.

**a.** The Ninth Circuit first considered 5 U.S.C. § 805 six years ago, when Congress used CRA procedures "to rescind a regulation that prevented Alaska from applying certain state hunting regulations on federal wildlife refuges." *Bernhardt*, 946 F.3d at 556. The plaintiff sued "to compel" the Department of the Interior "to reinstate the rule," on the theory that the rule at issue was "not eligible for disapproval in the new session of Congress" due to certain statutory timing requirements that appear in the CRA—requirements that plaintiff argued had been violated. *Id.* at 556, 563. The plaintiff argued that because of those violations of the CRA, "the Joint Resolution was invalid and it did not authorize Interior to rescind" the rule. *Id.* at 563.

The Ninth Circuit refused to exercise jurisdiction: "Because enacting a joint resolution of disapproval is an action under the CRA," the federal courts "lack jurisdiction to consider this claim." *Id.* And in doing so, the Ninth Circuit rejected the argument that a plaintiff could get around the CRA's review bar by restyling its claims as a challenge to some agency action (rather than a congressional action) under the APA. In particular, the plaintiff in *Bernhardt* argued that, because it was "challenging *Interior*'s rescission of the Refuges Rule and not any action under [the] CRA," "its claim is not barred." *Id.* at 564 (emphasis added). But because the suit ultimately depended on the theory that "Congress did not validly enact the Joint Resolution," the Ninth Circuit held that plaintiff's "claim necessarily involve[d] a challenge to a congressional 'determination, finding, action or omission' under the CRA, and as such is subject to" the CRA's jurisdiction-stripping provision, § 805. *Id.*

The D.C. Circuit, Tenth Circuit, Eighth Circuit, and many district courts have similarly applied the plain text of § 805 to broadly foreclose judicial review of statutory claims asserting a violation of the CRA—including claims alleging agency noncompliance with the CRA. For example, in *Montanans for Multiple Use v. Barbouletos*, 568 F.3d 225, 229 (D.C. Cir. 2009), the

D.C. Circuit declined to review a claim that agency amendments to a forest plan were invalid because the agency allegedly failed to comply with CRA reporting requirements. As then-Judge Kavanaugh explained, "[t]he language of § 805 is unequivocal and precludes review of this claim—even assuming that the plan amendments qualify as rules subject to the Act in the first place"—because it "denies courts the power to void rules on the basis of agency noncompliance with the Act." *Id.* The D.C. Circuit later reaffirmed that holding, concluding that § 805 forecloses review of a claim that an agency violated the CRA by publishing a rule fewer than 60 days before it took effect. *Wash. All. of Tech. Workers v. DHS*, 892 F.3d 332, 346 (D.C. Cir. 2018).

Similarly, the Tenth Circuit has long declined to review claims that an agency violated the CRA, noting that the statute "specifically precludes judicial review of an agency's compliance with its terms." *Via Christi Reg'l Med. Ctr., Inc. v. Leavitt*, 509 F.3d 1259, 1271 n.11 (10th Cir. 2007). More recently, the Tenth Circuit applied § 805 to bar review of the Department of Interior's failure to submit a rule to Congress, as required by the CRA. *Kan. Nat. Res. Coal. v. DOI*, 971 F.3d 1222, 1226 (10th Cir. 2020) (*KNRC*) (citing § 801(a)(1)(A)). The court rejected the argument that the CRA's review bar applies only to decisions, findings, acts, or omissions of Congress, rather than agencies. *Id.* at 1235-36. To the contrary, the provision applies to all conduct "under this chapter," which "unambiguously prohibits judicial review of any omission [or decision, finding, or act] by any of the specified actors," including "agencies, the Comptroller General, the President, and Congress." *Id.*; *accord Foster v. USDA*, 68 F.4th 372, 379 (8th Cir. 2023) ("§ 805's broad language covers all omissions under the CRA, including agency omissions."), *cert. granted, judgment vacated on other grounds*, 144 S. Ct. 2707 (2024).

**b.** Plaintiffs' statutory and ultra vires claims here run directly into 5 U.S.C. § 805—as interpreted by the Ninth Circuit and every other court of appeals to consider the question.

Plaintiffs purport to challenge "EPA's relabeling (or purported reclassification) of these preemption waivers from adjudicatory orders into 'rules' and the agency's submission of those orders as 'rules' to Congress." FAC ¶ 123. But for that determination and that action, Plaintiffs say, the resolutions would not have passed. *See id.* ¶¶ 138, 145. But even if that were true, EPA's determination that the waivers are "rules" subject to the CRA is a determination "under" the

CRA because it applies a CRA provision—the definition of a "rule"—to specific facts for purposes of the CRA. 5 U.S.C. § 804(3) (defining "rule" under the CRA). EPA's submission of a CRA report to Congress is likewise an "action" "under" the CRA—indeed, that submission is generally *required* by the CRA. *Id.* § 801(a)(1). Because Plaintiffs ask this Court to decide whether Defendants complied with the CRA, their statutory and ultra vires claims are barred. *Bernhardt*, 946 F.3d at 563; *KNRC*, 971 F.3d at 1235-36.

In Count I, for example, Plaintiffs argue that "EPA's 'rule' labels were transparently erroneous," and offer their theory as to why these waivers were not "rules"—though citing the definition in the APA, rather than the CRA. FAC ¶ 133 (citing 5 U.S.C. § 551(4) rather than 5 U.S.C. § 804(3)). Despite that attempt at artful pleading, the meaning of the term "rule" in this case is not an APA question—what EPA did (and what Plaintiffs object to in Count I) is treat its waivers as "rules" *within the meaning of the CRA*. Plaintiffs' sleight-of-hand is only possible because the definition of a "rule" in the CRA happens to incorporate (in part) the definition of a "rule" in the APA. *See* 5 U.S.C. § 804(3) (defining "rule" for purposes of the CRA as having "the meaning given such term" in the APA, with certain CRA-specific exceptions). The fact that the definition of a "rule" in the CRA looks (in part) to the APA for its content does not change that what Plaintiffs object to in Count I is EPA's interpretation *of the CRA*—not the APA.

Other allegations make this jurisdictional defect even more obvious. For example, Plaintiffs allege that "[n]othing in this text"—that is, the text of the CRA—"empowers EPA to slap a 'rule' label on any action it wishes and purport to send a 'report' to Congress . . . without any attempt to explain how the action comports with the CRA's definition of a 'rule.'" FAC ¶ 132. Even if that were true, that would mean that EPA violated *the CRA*, or failed to adequately explain its invocation *of the CRA*. All those claims are precluded by § 805.

More generally, if a litigant could bring APA claims like these—explicitly premised on alleged violations of the CRA—then it is hard to understand what Congress thought it was accomplishing in § 805. With trivial edits, every alleged CRA violation could be restyled as being "not in accordance with law" or "arbitrary and capricious" or "without observance of procedure required by law" within the meaning of the APA, like Plaintiffs try here. FAC ¶ 124.

That result cannot be squared with *Bernhardt*, in which the Ninth Circuit held that "federal courts do not have jurisdiction over statutory claims that *arise under* the CRA," *Bernhardt*, 946 F.3d at 563 (emphasis added)—not just claims explicitly styled as CRA claims.

Plaintiffs may respond that they allege violations of *both* the CRA and the APA. But that was equally true in *Bernhardt*. *See* Am. Compl., *Ctr. For Biological Diversity v. Zinke*, 3:17-cv-91 (D. Alaska), ECF No. 104. Regardless, Plaintiffs' APA claims here are (at a minimum) "inextricably intertwined with" their allegations of CRA violations, and thus are equally "barred" by the CRA's preclusion provision. *Heckler v. Ringer*, 466 U.S. 602, 624 (1984); *see also, e.g.*, *Kaiser v. Blue Cross of California*, 347 F.3d 1107, 1112 (9th Cir. 2003) ("claims that are 'inextricably intertwined' with a Medicare benefits determination may arise under Medicare" for purposes of the Medicare Act's preclusion-of-review provisions); *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1142 (9th Cir. 2004) ("If issues presented in a federal suit are 'inextricably intertwined' with issues presented in a forbidden de facto appeal from a state court decision, *Rooker-Feldman* dictates that those intertwined issues may not be litigated."); *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1033 (9th Cir. 2016) (alien's right-to-counsel claim is channeled out of federal court because it "possesses a direct link to, and is inextricably intertwined with, the administrative process that Congress so painstakingly fashioned"). In short, because Plaintiffs cannot prevail on any of their APA claims without first persuading the Court that Defendants violated the CRA, at a minimum, Plaintiffs' claims are "inextricably intertwined" with precluded determinations, and thus covered by preclusion provision in 5 U.S.C. § 805.

Counts II and V—labeled as an "Ultra Vires" claim and a (largely duplicative) "nonstatutory review" claim[1]—are likewise precluded. In Count II, Plaintiffs allege that "no statute empowers any EPA Defendant to invoke a statute that is inapplicable . . . simply because that statute would provide a faster or easier, but unlawful, means to a desired end." FAC ¶ 143. But again, when Plaintiffs say "a statute that is inapplicable," they mean the CRA. *Id.* And when

---

[1] The States' "nonstatutory review" claim asks this Court to enjoin EPA from implementing or giving legal effect to the Resolutions in light of their asserted legal and constitutional flaws alleged in Counts I-IV. *See* FAC ¶¶ 175-76. Because all those claims fail, so does Count V.

they call the government's action "unlawful," they mean it is "unlawful" because they think it *violates* the CRA. Omitting the name of the statute does not change the nature of the claim. "[P]laintiffs cannot avoid preclusion through artful pleading." *Freeman Invs., L.P. v. Pac. Life Ins. Co.*, 704 F.3d 1110, 1115 (9th Cir. 2013) (citation modified).

**c.** Having already seen Defendants' original motion to dismiss, Plaintiffs now try to avoid preclusion by arguing in their Amended Complaint that "[t]he EPA Defendants cannot claim to have acted 'under' the CRA here, as their actions are untethered from any text in that statute." FAC ¶ 132. But that question-begging assertion, if taken seriously, would nullify § 805. On Plaintiffs' reading, the preclusion provision would never apply—after all, every party challenging a CRA action alleges that Congress or an agency somehow violated the CRA.

Yet again, the Ninth Circuit has already rejected this kind of improper attempt to evade the CRA's jurisdictional bar. In *Bernhardt*, the plaintiffs claimed that the agency rule at issue was "not eligible for disapproval" under the CRA because the agency failed to comply with the CRA's timing requirements. 946 F.3d at 562-63. And those plaintiffs argued, as Plaintiffs do here, that because the rule was "not eligible for disapproval" under the CRA, "the Joint Resolution was not enacted 'under' the CRA" for purposes of § 805's jurisdictional bar. *Id.* at 563. The Ninth Circuit rejected this argument, holding that the joint resolution was "an action under CRA" that was subject to the statute's jurisdiction-stripping provision. *Id* at 564.

In sum, because "federal courts do not have jurisdiction over statutory claims that arise under the CRA," *Bernhardt*, 946 F.3d at 563, Counts I, II, V, and VI are precluded, and should be dismissed for lack of statutory subject-matter jurisdiction under Rule 12(b)(1).

## II.    The Court lacks subject-matter jurisdiction over Plaintiffs' claims that challenge the application or interpretation of House or Senate rules.

That Congress chose to broadly preclude judicial review over CRA claims is unsurprising, because the CRA's expedited procedures were "enacted by Congress" as "an exercise of the rulemaking power of the Senate and House of Representatives, respectively, and as such it is deemed a part of the rules of each House, respectively." 5 U.S.C. § 802(g)(1). Accordingly, Plaintiffs' claims are also nonjusticiable to the extent they amount to challenges to

1    House and Senate rules for debating legislation.

2        "A controversy is nonjusticiable—i.e., involves a political question—where there is a

3    textually demonstrable constitutional commitment of the issue to a coordinate political

4    department; or a lack of judicially discoverable and manageable standards for resolving

5    it." *Nixon v. United States,* 506 U.S. 224, 228 (1993) (quotation marks omitted). Here, "the

6    Constitution textually commits the question of legislative procedural rules to Congress."

7    *Consejo*, 482 F.3d at 1172; *see* U.S. Const. art. I, § 5, cl. 2 ("Each House may determine the

8    Rules of its Proceedings . . . ."). And "no judicially manageable standards exist against which to

9    review the Senate's [or House's] rules governing debate." *Common Cause v. Biden*, 909 F. Supp.

10   2d 9, 30 (D.D.C. 2012), *aff'd on other grounds,* 748 F.3d 1280 (D.C. Cir. 2014).

11       There are no manageable judicial standards because the "only relevant Constitutional

12   provision is the Rules Clause, which grants Congress exclusive power to "determine the Rules

13   of its Proceedings." U.S. Const., art. I, § 5; *Consejo*, 482 F.3d at 1172. No other relevant

14   constitutional provisions speak to procedures for debating legislation, and judicial review in this

15   context would create untenable interference with legislative prerogatives. *See, e.g.*, *Common*

16   *Cause*, 909 F. Supp. 2d at 31 (challenge to filibuster rule "would require an invasion into internal

17   Senate processes at the heart of the Senate's constitutional prerogatives as a House of Congress,

18   and would thus express a lack of respect for the Senate as a coordinate branch of government");

19   *Metzenbaum v. FERC*, 675 F.2d 1282, 1288 (D.C. Cir. 1982) ("To invalidate Pub. L. No. 97-93

20   on the ground that it was enacted in violation of House rules would be to declare as erroneous

21   the understanding of the House of Representatives of rules of its own making, binding upon it

22   only by its own choice. We must assume that the House acted in the belief that its conduct was

23   permitted by its rules, and deference rather than disrespect is due that judgment.").

24       This case is thus governed by *Consejo* and *Nixon*, which held that challenges to disputes

25   over congressional procedures are nonjusticiable. *Consejo*, 482 F.3d at 1171-72 ("whether

26   Congress decides to hold a hearing on legislation . . . is a non-justiciable political question");

27   *Nixon*, 506 U.S. at 228-29 (challenge to Senate's procedures for impeachment was nonjusticiable

28   political question); *see also Nevada v. Watkins*, 914 F.2d 1545, 1556-57 (9th Cir. 1990)

1  (challenge to statute based on State's lack of representation on Congressional committee was

2  "not justiciable"); *Common Cause*, 909 F. Supp. 2d at 13 (challenge to Senate filibuster rule was

3  nonjusticiable political question). This is not a case alleging that Congress failed to comply with

4  some other constitutional provision, such as the Qualifications Clause, *see Nixon*, 506 U.S. at

5  236-37 (discussing *Powell v. McCormack*, 395 U.S. 486 (1969)), or the Quorum Clause, *see*

6  *United States v. Ballin*, 144 U.S. 1, 6 (1892); *see also, e.g.*, *Rangel v. Boehner*, 20 F. Supp. 3d

7  148, 169 (D.D.C. 2013) ("The House may not, by enacting and enforcing its own rules of

8  procedure, violate another constitutional provision or an individual's rights under the

9  Constitution, but the exercise of its discretion under the [Rulemaking and Discipline] Clause[s]

10  is otherwise boundless."), *aff'd*, 785 F.3d 19 (D.C. Cir. 2015).

11      At a minimum, all of Plaintiffs' statutory claims—as well as constitutional claims

12  premised on alleged CRA violations, *see infra* at 28-29—fall squarely within this "absolute,"

13  unreviewable authority of Congress, because all of them depend on an allegation that Congress

14  violated or misapplied its own procedural rules for debating legislation. *Consejo*, 482, F.3d at

15  1172. Indeed, Plaintiffs' bottom-line grievance is that the Senate wrongly applied expedited

16  procedures for debating legislation rather than adhering to the filibuster, and that the Resolutions

17  are therefore invalid. FAC ¶¶ 6, 56, 74, 109, 138, 145, 155-58, 163-66, 173-74. That core

18  allegation dominates the Amended Complaint and the relief it requests. The reason Plaintiffs

19  complain about EPA's submission of the rules to Congress is only because Congress then used

20  expedited procedures for debating the Resolutions. FAC ¶¶ 138, 145. The Amended Complaint

21  does not try to hide that Plaintiffs are challenging internal legislative procedures. For example,

22  the words "parliamentarian" or "GAO" appear in the Complaint over 50 times, as Plaintiffs

23  expressly seek to elevate the Senate parliamentarian's interpretation of the CRA over that of the

24  Senate itself. In Plaintiffs' view, "the Senate Parliamentarian agreed with the GAO" that EPA's

25  waivers "are not subject to the CRA," and "[t]hat should have been the end of the matter." FAC

26  ¶¶ 91-92. But with respect, the Senate parliamentarian is not mentioned in the Constitution, and

27  does not have the last word on Senate procedure—the Senate does.

28      Nor, for that matter, does EPA have any constitutional role in the enactment of

legislation; Congress could have passed laws disapproving of these waivers without *any* involvement from EPA, or by explicitly disagreeing with EPA's interpretation of the CRA and passing joint resolutions without submissions from EPA. Congress does so often. *See, e.g., supra* at 4 (citing GAO opinion).

Similarly, for purposes of this case, it would not matter if EPA's actions, as Plaintiffs allege, "provided a pretextual basis for Congress to use CRA-like procedures to disapprove these waivers, and the Resolutions would not have been introduced, much less enacted, without that pretextual basis." FAC ¶ 138; *see also id.* ¶ 145. This Court cannot look behind the curtain of a coordinate branch to second-guess the procedures (much less the motivations) of legislators exercising independent constitutional roles. The remedy for legislative procedures that California dislikes is not found in the federal courts, but in Congress or at the ballot box.

**III.    Plaintiffs lack Article III standing to bring several of their claims and to seek some of their requested relief.**

"[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *Id.* at 431.

**A.    Plaintiffs' alleged injuries were neither caused by the EPA nor redressable by an order vacating any action by EPA.**

As a general matter, Defendants do not dispute that Plaintiffs have standing to bring, for example, constitutional claims arguing that Congress's enactment of the Resolutions caused them an Article III injury by preempting State laws—though all those claims fail on the merits. *See infra*, Part VI. But some of Plaintiffs' claims seek to more narrowly challenge actions by EPA—for example, in issuing press releases or submitting CRA reports to Congress. Plaintiffs lack Article III standing to bring those claims (which in any event, are not "final agency action" within the meaning of the APA, *see infra*, Part V(a)).

First, none of Plaintiffs' injuries was caused by any alleged action taken by the EPA. In fact, the last action by the EPA that had any legal significance here was EPA's *grant* of the waivers Plaintiffs now seek to restore. It was Congress, not the EPA, that invalidated those waivers. Whatever press releases EPA issued did not dictate Congress's own independent actions. Congress could have taken the exact same action with or without any action from EPA.

Second, for similar reasons, an order from this Court that would, for example, "[v]acate EPA's purported reclassifications of these orders as rules," FAC, Prayer for Relief ¶ 6, could not remedy any injury to Plaintiffs. Such an order would not change the fact that majorities in both Houses of Congress enacted legislation, signed by the President, which nullifies EPA's waivers. The only way Plaintiffs could obtain meaningful relief from this suit is if they could obtain review of the Resolutions themselves by prevailing on one of their constitutional arguments. So, all of Plaintiffs' claims against EPA should be dismissed for lack of Article III standing.

### B. Plaintiffs lack standing to challenge the possible future applicability of the CRA's reenactment provision.

For the first time in their Amended Complaint, Plaintiffs add a new and dramatic claim for relief (though only in the alternative) that seeks to prophylactically neuter a significant feature of the congressional enactments at issue here: Congress's prohibition on the reenactment of future rules by EPA that are "substantially the same" as the disapproved rules. 5 U.S.C. § 801(b)(2). Plaintiffs make this request in Count VI (and in their Prayer for Relief) with minimal explanation: "In the event the Resolutions remain in effect despite Plaintiffs' other claims, Plaintiffs are entitled . . . to a declaration that the Resolutions were not enacted under the CRA and that no provision of that statute, including 5 U.S.C. § 801, is triggered or otherwise rendered applicable by the Resolutions." FAC ¶ 184. In other words, even if they lose their challenge to the Resolutions, they still want an order from this Court that would allow EPA to issue *future* rules that are "substantially the same" as the rules that Congress disapproved.[2]

---

[2] Defendants do not take any position here about what sort of possible future actions by EPA, if any, would be "substantially the same" as the waivers that Congress disapproved here. 5 U.S.C. § 801(b)(2). That question is not before the Court.

Even ignoring the lack of any legal justification for that bold request—essentially, to blue pencil three duly enacted federal statutes—Plaintiffs lack standing to seek that relief. Plaintiffs' "challenge to the Reenactment Provision is legally distinct" from its other challenges to "the Joint Resolution[s]." *Bernhardt*, 946 F.3d at 560. That means Plaintiffs "must separately establish standing for [their] argument" relating to "the Reenactment Provision." *Id.* Despite the clarity of that Ninth Circuit precedent, Plaintiffs have not even tried to do so. Nor could they succeed, as any alleged injury from application of that provision would have to be "premised on the assumption that" EPA "would reissue" these waivers "or a substantially similar rule if a court ruled that the Reenactment Provision" did not apply. *Id.* There is no basis for that kind of assumption, which the Ninth Circuit has already rejected as too "speculative" to support standing. *Id.* Ripeness principles also independently foreclose that request, for similar reasons. *See, e.g.*, *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003).

## IV.    Even if the Resolutions conflict with earlier-enacted statutes, they remain valid.

Even if Defendants violated the CRA or the APA (as opposed to the Constitution), the Resolutions would still be valid—because compliance with those statutes is not necessary for Congress to pass a statute, and the Resolutions are now duly enacted statutes. Plaintiffs thus have no basis to ask this Court to "void," FAC, Prayer for Relief ¶¶ 1-2, the Resolutions based on an alleged APA or CRA violation, or an ultra vires claim. In short, it is incoherent as a matter of first principles to argue that one law (the Resolution) is unlawful for violation of another law. This elementary fact independently dooms all of Plaintiffs' non-constitutional claims.

"[T]he prescription for legislative action in Art. I, §§ 1, 7 represents the Framers' decision that the legislative power of the Federal government be exercised in accord with a single, finely wrought and exhaustively considered, procedure." *INS v. Chadha*, 462 U.S. 919, 951 (1983). So there are only two procedural requirements to enact legislation: "passage by a majority of both Houses and presentment to the President." *Id.* at 958; *see also Bernhardt*, 946 F.3d at 562 n.6. The concurrence of the Senate parliamentarian, for example, is not required. Nor is compliance with the CRA. So it does not matter to the validity of the disapproval resolutions whether the

waivers are properly considered to be "rules" or "orders" within the meaning of the CRA.

To be sure, majorities in the House or the Senate may adopt internal procedures—such as a three-fifths supermajority threshold in the Senate to cut off debate for most votes, [3] *see* Rule XXII, Standing Rules of Senate—but those procedures are not required by the Constitution, not enforceable by any court, and have no legal significance outside of each House of Congress itself. From the perspective of a federal court, "[i]t makes no difference what internal parliamentary procedures Congress adopts" in enacting legislation, "so long as Congress complies with the fundamental constitutional requirements of bicameralism (approval by both Houses of Congress) and presentment (submission to the President for approval)." *Citizens for Const. Integrity*, 57 F.4th 750, 763-64 (10th Cir. 2023), *cert. denied* 144 S. Ct. 94 (2023). If it complies with those requirements, Congress has enacted a law of the United States.

As a set of procedural rules governing debate on legislation in Congress, "[t]he CRA streamlines Congress's typical procedure for enacting legislation." *Bernhardt*, 946 F.3d at 557. But here, all that matters is that "Congress complied with the process of bicameralism and presentment," because the "Joint Resolution[s] passed both houses of Congress and w[ere] signed by the President into law." *Id.* at 562. The Resolutions thus have the force and effect of law, like any other statute. No violation of the CRA could render those statutes "void"—only violations of the legislative procedures set forth in the Constitution.

Put another way, even if Plaintiffs were correct that there is some conflict between the Resolutions (later in time), and the CRA or the Clean Air Act or the APA (earlier in time), that would not provide grounds for this Court to invalidate the Resolutions. After all, "statutes enacted by one Congress cannot bind a later Congress, which remains free to repeal the earlier statute, to exempt the current statute from the earlier statute, to modify the earlier statute, or to

---

[3] The CRA process is not the only exception to the filibuster rule. *See, e.g.*, 2 U.S.C. § 641(e)(2) ("Debate in the Senate on any reconciliation bill . . . shall be limited to not more than 20 hours."); 159 Cong. Rec. S8419-20 (Nov. 21, 2013) (allowing cloture to be invoked by majority vote for votes on nominations for Executive Branch positions and lower federal courts); 163 Cong. Rec. S2450-51 (Apr. 7, 2017) (extending that precedent to Supreme Court nominations).

apply the earlier statute but as modified." *Dorsey v. United States*, 567 U.S. 260, 274 (2012). And Congress need not use any "magical passwords" to do so. *Id.* Plaintiffs' statutory and ultra vires claims thus fail for that additional reason, as the only basis to strike down a federal statute is a conflict with the Constitution—not with an older federal statute, much less an internal rule of congressional procedure.

## V. The statutory and ultra vires claims fail for several other threshold reasons.

### A. The APA claim fails because Plaintiffs identify no final agency action.

Plaintiffs cannot maintain Count I because APA claims are limited to "final agency action," and Plaintiffs have not identified a "final" EPA agency action. Agency action is "final" only if it (1) "consummat[es] . . . the agency's decisionmaking process," and (2) determines legal "rights or obligations." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citation modified). The touchstone of the second prong is whether the action has "direct and appreciable legal consequences." *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 598 (2016).

Plaintiffs identify two "actions" they allege are subject to review under the APA, but neither determines any rights or obligations, nor do legal consequences flow from either. First, Plaintiffs allege that EPA "reclassified" the waivers from orders to rules. *See* FAC ¶ 123. Second, Plaintiffs claim that EPA's submission of the waivers in a report to Congress qualifies as final agency action. *See id.*

EPA's alleged "reclassification" and submission of a report to Congress are not "final" agency actions under *Bennett* and *Dalton v. Specter*, 511 U.S. 462 (1994). In *Dalton*, a statute required the Secretary of Defense to submit recommendations for the closure of military bases to a commission, which would submit a report to the President, who could approve or disapprove those recommendations. 511 U.S. at 465. The plaintiffs sought APA review of these recommendations, but the Court held that they were not final agency actions. *Id.* at 468. While the recommendations were necessary steps in the process, the *final* action was taken by the President: "Without the President's approval, no bases are closed under the Act . . . ." *Id.* at 470. The Court acknowledged that the President's authority was constrained by the earlier action in that he could not "pick and choose among bases" to close, but this limitation was "immaterial."

1    *Id*. "What is crucial is the fact that the President, not the Commission, takes the final action that

2    affects the military installations." *Id*. (alterations and quotation marks omitted).

3    So too here. Congress and the President, not EPA, "take[] the final action" of enacting

4    the Resolutions. *Id*. The Resolutions have legal consequences; EPA's alleged reclassification

5    and submission of the waivers to Congress did not. They "carrie[d] no direct consequences" for

6    Plaintiffs. *Franklin v. Massachusetts*, 505 U.S. 788, 798 (1992) (necessary step by agency not

7    final action when only subsequent presidential action has direct legal consequences). Even if the

8    "reclassification" and submission could be deemed necessary predicates to the disapproval

9    resolutions—and they were not, *see supra* at 13-14—they would still not qualify as reviewable

10   final agency actions. The commission in *Dalton* played a critical role in identifying what bases

11   to close but because its recommendations did not, without more, close a single base, they were

12   not final agency actions. *See* 511 U.S. at 470. The same reasoning controls here, as EPA's

13   "reclassification" and submission, without more, have no legal consequences for the waivers at

14   issue in this case. That is why Plaintiffs did not (and could not) file suit until the President signed

15   into law the Resolutions disapproving the waivers. *See* FAC ¶ 5.

16   Even more obviously, Plaintiffs have not stated a claim with respect to *other* preemption

17   waivers that EPA has not submitted to Congress under the CRA. The Amended Complaint asks

18   this Court to enter an injunction "prohibiting EPA from relabeling other Clean Air Act

19   preemption waiver actions" as rules and submitting those actions as reports to Congress. FAC

20   ¶ 140. But since EPA has taken *no* action with respect to these unidentified preemption waivers,

21   Plaintiffs have not identified any final agency action by EPA with respect to those non-actions

22   (much less any violation of any law).

23       **B. Plaintiffs' claims against EPA are an improper attempt to evade the Clean**
          **Air Act's comprehensive review scheme.**

24

25   Even if Plaintiffs had identified final agency actions outside the jurisdiction-stripping

26   provision of the CRA, *this* Court still could not review them. Instead, they would be reviewable

27   only by the courts of appeals under § 307(b)(1) of the Clean Air Act, 42 U.S.C. § 7607(b)(1),

28   which confers exclusive "jurisdiction upon the courts of appeals" for final actions taken by EPA

DEFENDANTS' MOTION TO DISMISS
CASE NO. 4:25-CV-04966

19

1    under the Clean Air Act. *Dalton Trucking, Inc. v. EPA*, 808 F.3d 875, 879 (D.C. Cir. 2015).

2         Section 307(b)'s scope has been interpreted "broadly" to cover not only challenges to

3    EPA's final actions but also challenges that have the "practical effect" of upsetting EPA's final

4    action or that are "closely related to" such final action. *Cal. Dump Truck Owners Ass'n v.*

5    *Nichols*, 924 F. Supp. 2d 1126, 1139 (E.D. Cal. 2012), *aff'd* 784 F.3d 500 (9th Cir. 2015). And

6    when Congress has chosen to give the circuit courts exclusive jurisdiction over agency decisions,

7    "the district courts are without jurisdiction over the legal issues pertaining to those decisions—

8    whether or not those issues arise from the statute that authorized the agency action in the first

9    place." *Palumbo v. Waste Techs. Indus.*, 989 F.2d 156, 161 (4th Cir. 1993).

10        Here, Plaintiffs seek review of alleged final actions EPA took in connection with the

11   § 209(b) waivers issued to California. These waivers are, without question, actions taken under

12   chapter 85 of title 42 of the U.S. Code. *See* 42 U.S.C. §§ 7607(b)(1), 7543(b); *see also* FAC ¶ 42

13   (acknowledging that preemption waivers are subject to review in the courts of appeals). And the

14   alleged EPA actions challenged here—EPA's description of these waivers as rules and its

15   submission of the waivers to Congress—are (even under Plaintiffs' theory) "closely related to"

16   the waivers. *Nichols*, 924 F. Supp. 2d at 1139. Therefore, to the extent any court may exercise

17   jurisdiction notwithstanding § 805, Plaintiffs' claims against EPA belong in the courts of

18   appeals: § "307(b)(1) 'channels review of final EPA action exclusively to the courts of appeals,

19   *regardless of how the grounds for review are framed*.'" *Nichols*, 784 F.3d at 506 (quoting

20   *Virginia v. United States*, 74 F.3d 517, 523 (4th Cir. 1996)) (emphasis in original). So any

21   challenges—including constitutional claims—to EPA's alleged final actions must go to the

22   courts of appeals. *See Sierra Club v. Wheeler*, 2018 WL 6182748, at *4 (N.D. Cal. Nov. 27,

23   2018) (Gilliam, J.) (dismissing motion to enforce summary judgment order for lack of

24   jurisdiction because "the 'practical objective' of [p]laintiffs' motion is to 'nullify final actions of

25   the EPA'" (quoting *Nichols*, 784 F.3d at 506)). Indeed, Plaintiffs have already filed what they

26   describe as "protective" petitions for review, in both the Ninth and D.C. Circuits. *California v.*

27   *EPA*, No. 25-5071 (9th Cir.); *California v. EPA*, No. 25-1174 (D.C. Cir.).

28

**C. The ultra vires claims fail as a matter of law.**

Seeking to evade statutory limitations altogether, Plaintiffs throw the "Hail Mary pass" of an "ultra vires" claim. *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 681 (2025) (*NRC*). Such claims are "strictly limited." *Id.* They may be brought "only when an agency has taken action entirely in excess of its delegated powers and contrary to a *specific prohibition* in a statute." *Id.* (quotation marks omitted). "Ultra vires review is also unavailable if . . . a statutory review scheme forecloses all other forms of judicial review." *Id.*

Plaintiffs assert ultra vires or "nonstatutory" claims in Counts II and V. These claims simply "dress up a typical statutory-authority argument as an ultra vires claim." *NRC*, 605 U.S. at 682. While the Amended Complaint asserts that EPA lacked authority to take these alleged actions, Plaintiffs fail to identify any "specific prohibition" affirmatively forbidding them. *See NRC*, 605 U.S. at 681. Even more problematically for Plaintiffs, the CRA explicitly forecloses judicial review (*supra* Part I), and the Clean Air Act funnels review to the courts of appeals (*supra* Part V.B). Plaintiffs cannot use a nonstatutory ultra vires claim to circumvent those statutes' review schemes. *See NRC*, 605 U.S. at 681; *see also Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015) ("The power of federal courts of equity to enjoin unlawful executive action is subject to express and implied statutory limitations.").

**VI.    Plaintiffs' constitutional claims fail.**

Plaintiffs assert three baseless claims that the Resolutions are unconstitutional. Among other problems, these theories lack any precedent remotely on point, ask this Court to oversee the Senate's internal procedures for debating legislation, and urge the Court to create rather than avoid constitutional conflict where none exists. Even if they are subject to any form of judicial review, each fails as a matter of law and should be dismissed.

**A. The Resolutions amend the law and do not usurp Executive power.**

Plaintiffs allege that the Resolutions usurp Executive power because they "create no new substantive law," and instead dictate only "how pre-existing law applies to particular circumstances." FAC ¶ 153 (quoting *Bank Markazi v. Peterson*, 578 U.S. 212, 225 n.17 (2016)).

This argument fails, both because the Resolutions amended the law and because *Bank Markazi* applies to Article III courts and judicial power, not administrative agencies and executive power, and certainly not to statutes implementing Congress's broad policy choices about the regulation of vehicle emissions affecting millions of people in states across the Nation.

**a.** First, even assuming (incorrectly) that *Bank Markazi* applies to administrative agencies, its "amend the law" test would be easily satisfied here. Under *Bank Markazi*, "Congress . . . may amend the law and make the change applicable to pending cases, even when the amendment is outcome determinative." 578 U.S. at 215. Although Congress may not "compel judicial findings or results under old law," *id.* at 231 (brackets omitted), a statute must be upheld if it does not "direct any particular findings of fact or applications of law . . . to fact." *Robertson v. Seattle Audubon Soc'y*, 503 U.S. 429, 438 (1992). Courts must afford "a high degree of judicial tolerance for an act of Congress that is intended to affect litigation so long as it changes the underlying substantive law in any detectable way." *Cook Inlet Treaty Tribes v. Shalala*, 166 F.3d 986, 991 (9th Cir. 1999).

The Supreme Court has been extremely deferential to Congress in applying these principles. In *Bank Markazi*, for example, the Court upheld a statute that identified a "District Court's docket number," "designate[d] a particular set of assets," and "render[ed] them available to satisfy the liability and damages judgments" in the specific case. 578 U.S. at 215. The Court rejected the "flawed" argument that "there is something wrong with particularized legislative action," citing valid statutes that, for example, applied to "a single bridge," a "single oil tanker," or "abrogated [a] specific settlement agreement." *Id.* at 233-34. The Court has elsewhere upheld statutes directing a federal court to "promptly dismiss[]" a pending suit over a specific piece of property, *Patchak v. Zinke*, 583 U.S. 244, 251 (2018) (plurality opinion), identifying pending cases by docket number and specifying how statutory requirements are met, *Robertson*, 503 U.S. at 434-35, and legalizing a specific bridge that the Court had previously deemed a nuisance, *Pennsylvania v. Wheeling and Belmont Bridge Co.*, 59 U.S. 421 (1855) ("*Wheeling Bridge*").

*Wheeling Bridge* is particularly instructive. It holds that Congress can nullify a specific final judgment by statute in cases involving public rights. There, a federal court had declared the

1    Wheeling Bridge an unlawful obstruction of commerce and entered a permanent injunction

2    ordering its removal. 59 U.S. at 429. After final judgment, Congress enacted a statute providing

3    that the bridge was "declared to be lawful," thus nullifying the court's judgment and permanent

4    injunction. *Id.* at 429. The Supreme Court upheld the statute on the grounds that it "modified"

5    the status of the bridge "in the contemplation of law," *id*. at 430, and that the case involved a

6    "public right," not an adjudication of a "private right to damages," *id*. at 431.

7        The Ninth Circuit upheld an analogous statute in *Mount Graham Coalition v. Thomas*,

8    89 F. 3d 554 (9th Cir. 1996). A district court had ruled that the Forest Service's approval of a

9    site for building a telescope was inconsistent with the Arizona-Idaho Conservation Act of 1988

10   and therefore violated other environmental laws, and the court enjoined the project. *Id.* at 556.

11   After final judgment, Congress enacted a statute providing that the "Forest Service approval of

12   [the] site . . . is hereby authorized and approved and shall be deemed to be consistent with the

13   terms of . . . the Arizona-Idaho Conservation Act." *Id.* The Ninth Circuit held that the case fell

14   "squarely within *Wheeling Bridge*," and that it was valid because the statute constituted "a

15   change in the [Conservation Act], which Congress is entitled to make." *Id.* at 557.

16       Under these cases, the Resolutions must be upheld. They do not "direct any particular

17   findings of fact or applications of law . . . to fact." *Robertson*, 503 U.S. at 438. They instead

18   amend the law by depriving the corresponding EPA waivers of "any force or effect." *Supra* at 3,

19   6. It cannot be fairly disputed that this amends the law because the Ninth Circuit has squarely

20   held, in rejecting a separation of powers claim, that a CRA resolution "amend[s] the substantive

21   environmental law," and is "enforceable as a change to substantive law, even though it d[oes]

22   not state that it constitute[s] an amendment." *Bernhardt*, 946 F.3d at 562. The same reasoning

23   applies here. Before the Resolutions, California's regulations were not preempted because

24   California had obtained a waiver under § 209(b) of the Clean Air Act. After the Resolutions, the

25   regulations are preempted as a matter of law, *regardless* of whether California satisfies the

26   criteria under § 209(b). And, under the CRA's reenactment provision, 5 U.S.C. § 801(b)(2), EPA

27   is now prohibited from issuing a waiver that is "substantially the same" as the waivers Congress

28   repealed—regardless of whether California's request satisfies the criteria under CAA § 209(b).

Plaintiffs' claim is thus foreclosed by *Bernhardt*, and the statute readily clears the constitutional threshold of changing the "substantive law in any detectable way." *Cook Inlet*, 166 F.3d at 991. More still, while Plaintiffs urge this Court to hunt for a constitutional problem, the bedrock principle is that "every reasonable construction must be resorted to, in order to save a statute from unconstitutionality." *NFIB v. Sebelius*, 567 U.S. 519, 521 (2012).

**b.** Regardless, *Bank Markazi* is inapplicable. That line of cases concerns judicial power, not executive power, and administrative agencies are fundamentally different from Article III courts. Agencies "exercise no part of th[e] judicial power." *SEC v. Jarkesy*, 603 U.S. 109, 148 (2024) (Gorsuch, J., concurring). Unlike courts, they permissibly adjudicate only "public rights," not "private rights." *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 584 U.S. 325, 334 (2018). Congress's authority over administrative agencies is different from and broader than its authority over the courts. Agencies "possess only the authority that Congress has provided," *NFIB v. DOL*, 595 U.S. 109, 117 (2022), which means "an agency literally has no power to act . . . unless and until Congress confers power upon it." *Merck Sharp & Dohme Corp. v. Albrecht*, 587 U.S. 299, 315 (2019).

Demonstrating the point, Congress routinely enacts private laws directing administrative agencies, unlike courts, to take specific actions as to specific individuals or property.[4] And the Supreme Court has already rejected the argument that such private laws are improperly "adjudicatory," concluding instead they are "legislative in purpose and effect." *Chadha*, 462 U.S. at 957 n.22. Plaintiffs cite no case extending *Bank Markazi* to the administrative context, and offer no reason for this Court to take that leap.

Nor would it make sense to do so here, as to Congress's repeal of an EPA preemption waiver. Because of the way the Clean Air Act operates, a waiver allows California to regulate

---

[4] *See, e.g.*, H.R. 5826, 97th Cong., Priv. L. No. 97-55, 96 Stat. 2636 (1983) (directing the Secretary of Interior to deem a specific oil and gas lease "not to have terminated"); H.R. 3126, 97th Cong., Priv. L. No. 97-27, 96 Stat. 2623 (1982) (directing a Secretary to document a specific ship as "a vessel of the United States"); H.R. 6228, 98th Cong., Priv. L. No. 98-46, 98 Stat. 3434 (1984) (directing the Secretary of Commerce to extend the term of five patents); *see* Congress.gov, *Statutes at Large and Private Laws*, https://www.congress.gov/private-laws/.

an entire industry that affects millions of people, and allows other states to adopt California's regulations, as the other Plaintiff States in this case have done. *See* 42 U.S.C. §§ 7543(a), 7507. This is a classic example of public rights: Determining whether states or the federal government should regulate motor vehicle emissions is a public policy issue of nationwide importance, not a particularized adjudication of individual rights, much less an adjudication of a "private right to damages." *Wheeling Bridge*, 59 U.S. at 429, 431. Look no further than the legislative record here. The Senate debated whether there should be "a near nationwide mandate on electric vehicle sales," 171 Cong. Rec. S3099, S3140 (May 22, 2025) (Sen. Lankford), that would "affect all States," 171 Cong. Rec. S3017, S3086-87 (May 21, 2025) (Sen. Capito), "cost the economy about $100 billion a year," "bury small businesses," and harm "[e]very American citizen," *Id.* at S3018 (Sen. Barrasso). Preempting California's electric-vehicle mandate and other emissions regulations, which is what Congress did by repealing the waivers, is exactly the type of "general rule[] for the government of society" that Congress has the power to enact. *Fletcher v. Peck*, 10 U.S. 87, 136 (1810).

### B. The challenge to the Senate's "second point of order" is nonjusticiable and otherwise fails.

Plaintiffs next contend that the Senate adopted a procedural rule that unconstitutionally delegated to EPA "unbridled discretion to trigger extraordinary legislative procedures" under the CRA, giving EPA unlawful "coercive influence" "on internal legislative procedure." FAC ¶ 157. The "procedural rule" California appears to challenge is the "second point of order" the Senate adopted on May 21, 2025. *Id.* ¶ 104. This point of order provides that a joint resolution that meets the requirements of § 802 of the CRA is subject to the CRA's expedited procedures. *Id.* ¶ 104; 171 Cong. Rec. S3017, S3051. According to California, the "second point of order" is unconstitutional because its "sole purpose and effect" was to "allow the Senate to proceed" with fast-track debate procedures under the CRA "simply because EPA submitted reports labeling the waiver decisions as 'rules.'" FAC ¶ 109. This claim fails for several reasons.

**a.** To begin, this claim presents a nonjusticiable political question because it contests the Senate's procedures for debating legislation. When Plaintiffs refer to "extraordinary legislative

1    procedures," FAC ¶ 157, they mean the Senate declined to adhere to the "filibuster rule requiring

2    60 votes" to end debate and instead used the CRA's procedures. *Id.* ¶¶ 6, 56, 74, 109. But

3    disputes about procedures for debating legislation in Congress are nonjusticiable. *Supra*, Part II.

4        **b.** The claim is also wrong on the merits for multiple reasons. It ignores the votes of the

5    full Senate, misrepresents the congressional record, and conflicts with existing precedent.

6        **(i).** Contrary to Plaintiffs' core assertion, the Senate did not delegate authority to EPA to

7    decide whether to use the CRA's fast-track procedures. For each Resolution, Senator Thune put

8    that choice to the Senate by moving to proceed with debate using the CRA's fast-track

9    procedures, and the full Senate voted to approve those motions. 171 Cong. Rec. S3017, S3052;

10   (H.J. Res. 88); 171 Cong. Rec. S3099, S3102, S3105 (H.J. Res. 87, 89). After debate, the full

11   Senate then voted again to enact the Resolutions into law. *Id.* at S3101, S3105, S3109-10. These

12   votes necessarily constitute the full Senate's independent determination that these waivers were

13   properly subject to the CRA's fast-track debate procedures. EPA had no "unbridled discretion"

14   and obviously did not "coerce[]" the Senate. FAC ¶ 157. The Senate voted for itself.

15       **(ii).** A separate problem is that the procedural rule Plaintiffs challenge does not say what

16   Plaintiffs allege. The "second point of order" states, in full:

17       Joint Resolutions that meet all the requirements of Section 802 of the Congressional
         Review Act or are disapproving of agency actions which have been determined to be rules
18       subject to the Congressional Review Act by a legal decision from the Government
         Accountability Office [are] entitled to expedited procedures under the Congressional
19       Review Act.

20   FAC ¶ 104; 171 Cong. Rec. S3017, S3051. This says nothing about EPA, nor anything about

21   delegating EPA "unbridled discretion" to require the Senate to use the CRA. Plaintiffs cherry-

22   pick snippets of legislative history for their assertion that EPA's submission of the waivers to

23   Congress was "the sole trigger" for using fast-track debate procedures rather than adhering to

24   the filibuster. FAC ¶¶ 108-09. Not only do "floor statements by individual legislators rank

25   among the least illuminating forms of legislative history," *Trump v. Hawaii*, 585 U.S. 667, 692

26   (2018), but Plaintiffs' "sole trigger" allegation is incorrect as a matter of law: the trigger was the

27   Senate's vote, without which the CRA process would never have been used. Plaintiffs would

1    have this Court ignore the Senate's vote and use a smattering of inapposite floor statements to

2    misconstrue a Senate procedural rule, all to create a supposed constitutional conflict. These

3    arguments are woefully inadequate to strike down three statutes passed by the Senate and the

4    House, and signed into law by the President. *See Citizens for Const. Integrity*, 57 F.4th at 768

5    (rejecting claim that a CRA resolution was unconstitutional because "the statements of a few

6    legislators concerning their motives for voting for legislation is a reed too thin to support

7    invalidation of a statute"); *NFIB*, 567 U.S. at 521 ("every reasonable construction must be

8    resorted to, in order to save a statute from unconstitutionality"); *see also supra* Part III.

9          Insofar as Senate floor statements are relevant at all, the record refutes Plaintiffs' telling.

10   The dispute in the Senate was about whether the GAO or the Senate would have the final say as

11   to whether these preemption waivers are rules under the CRA.[5] It was not about whether the

12   Senate would defer to EPA (an executive agency), but about whether it would defer to GAO or

13   instead decide for itself.[6] The second point of order reflected the Senate's decision to decide for

14   itself. As Senator Thune explained, "it [was] appropriate for the Senate to speak as a body to the

15   question—something the Senate does when questions over application of the rules arise." 171

16   Cong. Rec. S3017, S3047. The full Senate would therefore "vote on what qualifies for th[e] fast-

17   track procedure." *Id* at S3048. And the full Senate did vote, first to adopt a rule that it would not

18   defer to "GAO staff," *id.* at S3088, then to proceed with fast-track debate on each of the

19   Resolutions, and then again to enact each Resolution into law. Along the way, Senator Thune

20   recorded his own independent conclusion that the waivers "are clearly rules in substance given

_____

22       [5] 171 Cong. Rec. S3017, S3088 (Sen. Capito) ("the procedural issue before the Senate
     was simply whether GAO staff should be able to block resolutions of disapproval against
23   Agency-submitted rules"); *id.* at S3047 (Sen. Thune) ("in an unprecedented move, the
     Government Accountability Office has inserted itself into this situation and declared that these
24   rules submitted to Congress by the EPA as rules are not, in fact, rules").

25       [6] 171 Cong. Rec. S3099, S3102 (Sen. Fischer) ("GAO's role is just an advisory one and
     … it is up to us—it is up to Congress—to determine what constitutes a rule…. We are reclaiming
26   our congressional authority under the Congressional Review Act"); 171 Cong. Rec. S3017,
     S3088 (Sen. Capito) ("Delegating to the unelected GAO staff the authority to determine if
27   Members of Congress can use the CRA against Agency-submitted rules turns the statute
     completely on its head").

28

their nationwide impact and scope." *Id.* at S3047.

(iii). Finally, even if this claim were justiciable, and even if Plaintiffs' interpretation of the legislative history were accurate and relevant, no constitutional principle or precedent bars Senators from considering EPA's submissions when deciding on procedures for debating legislation. Plaintiffs offer no case even remotely on point. FAC ¶ 156. They cite an abrogated case about judicial compensation for D.C. courts, *O'Donoghue v. United States*, 289 U.S. 516, 530 (1933), and a concurrence from a case about judicial nominations, *Pub. Citizen v. DOJ*, 491 U.S. 440, 485 (1989) (Kennedy, J., concurring). In truth, Congress has plenary power to conduct inquiries and receive reports "concerning the administration of existing laws as well as proposed or possibly needed statutes." *Watkins v. United States*, 354 U.S. 178, 187 (1957). And courts have upheld far greater intrusions into legislative procedure than Plaintiffs allege here, including a rule allowing non-members to *vote* in committee. *Michel v. Anderson*, 14 F.3d 623, 624 (D.C. Cir. 1994). Here, EPA voted on nothing; it simply sent a report to Congress. Congress made its own decision to use the CRA to repeal EPA's waivers, and Congress is always free to pass legislation according to whatever procedural rules it chooses, as long as it stays within the bounds of bicameralism and presentment set by Article I, Section 7 of the Constitution. It did so here.

### C. California and its Co-Plaintiff States were not unconstitutionally deprived of the right to participate in the political process.

Plaintiffs further allege that "extraordinary defects in the national political process" render the Resolutions "invalid under the Tenth Amendment." FAC ¶ 167 (quoting *South Carolina v. Baker*, 485 U.S. 505, 512 (1988)). They complain that Congress used "extraordinary procedures"—meaning it did not adhere to the filibuster—and it passed the Resolutions with insufficiently "rigorous debate," without hearing "state official testimony," and in disregard of "both the GAO and the Senate Parliamentarian." FAC ¶¶ 163, 164.

Again, this claim raises a nonjusticiable political question about procedures for debating legislation in Congress. *Supra* Part II. It should be dismissed on that basis. Separately, insofar as Plaintiffs assert that EPA violated the CRA and therefore failed "to faithfully execute the Nation's laws," FAC ¶¶ 163-65, that is a statutory claim dressed in constitutional language that

should be barred by 5 U.S.C. § 805, the CRA's jurisdiction-stripping provision. *See Dalton*, 511 U.S. at 472 (claims alleging simply that an official has "exceeded his statutory authority are not 'constitutional' claims" at all). This is not a case alleging that EPA violated the CRA *and* "independently violate[d]" another statute. *Murphy Co. v. Biden*, 65 F.4th 1122, 1130 (9th Cir. 2023) (discussing justiciability, not jurisdiction stripping). Under *Dalton*, faux constitutional claims are barred by § 805's jurisdiction stripping provision. [7] *See Freeman Invs.*, 704 F.3d at 1115 (citation modified) ("plaintiffs cannot avoid preclusion through artful pleading").

As for the merits, Plaintiffs' argument fails as a matter of law. Their own lead case holds that, under the Tenth Amendment, "States must find their protection from congressional regulation through the national political process" not the courts. *Baker*, 485 U.S. at 512. In dicta, the Court suggested the "possibility" that "extraordinary defects in the national political process" might render a statute invalid, but it could not "identify or define the defects that might lead to such invalidation." *Id.* It then rejected the State's claim because it had "not even alleged that it was deprived of any right to participate in the national political process or that it was singled out in a way that left it politically isolated and powerless." *Id.* at 513.

No court to our knowledge has invalidated any statute under *Baker*'s dictum, and the Ninth Circuit has repeatedly rejected such claims. *See Watkins*, 914 F.2d at 1556; *Nevada v. Skinner*, 884 F.2d 445, 452 (9th Cir. 1989). In *Watkins*, the Ninth Circuit rejected Nevada's claim that a statute applicable only to Yucca Mountain in Nevada was invalid because Nevada lacked representation on a congressional committee. 914 F.2d at 1549, 1556-57. In doing so, the court questioned whether establishing a "political process" claim is even "possible," noting the view that *Baker* "unequivocally repudiate[d] the suggestion that the tenth amendment requires any substantive or qualitative analysis of the national political process." *Id.* at 1556.

---

[7] To the extent California's other two constitutional theories also rely on an alleged CRA violation underlying statutory determination as to whether preemption waivers are "rules," those claims are barred by Section 805 as well.

Plaintiffs cannot plausibly contend they were "deprived of [the] right to participate in the national political process." *Baker*, 485 U.S. at 513. For example, in the House, California's 52 representatives are more than any other state. Not only did California's representatives vote on the Resolutions, but at least 9 voted *in favor* of all of them. *See* House Roll Call Votes 111, 112, & 114 (11 California members voted in favor of disapproving the ACC II regulation waiver). In the Senate, California's senators both fully participated in debate, voted on the procedural rules, voted on each motion to proceed with debate, and voted on the final decision to enact the Resolutions into law.[8] As for Plaintiffs' argument they were deprived of the right to "participate in the Executive Branch's relabeling of the waivers," FAC ¶ 165, the political process for the Executive Branch happens every four years during a presidential election.

Nor was California "singled out in a way that left it politically isolated and powerless." *Baker*, 485 U.S. at 513. Dozens of senators and over a hundred representatives from states across the country voted against the Resolutions. California continues to be supported by 10 states as plaintiffs here, and each participated in the same political process discussed above. Far from politically isolated, California and its supporters simply lost a vote. "[T]he tenth amendment does not protect a State from being outvoted in Congress." *Watkins*, 914 F.2d at 1556.

## CONCLUSION

For these reasons, Plaintiffs' Amended Complaint should be dismissed.

---

[8] *See, e.g.*, 171 Cong. Rec. S3017, S3032 (Sen. Padilla); *id.* at S3033-34 (Sen. Schiff); *id.* at S3050-51 (roll call on points of order); 171 Cong. Rec. S3099, S3101 (roll call on Resolution disapproving ACC II waiver); *id.* at S3105 (roll call on Resolution disapproving Advanced Clean Trucks waiver); *id.* at S3109-10 (roll call on Resolution disapproving Omnibus waiver).

1    Dated: November 17, 2025                    Respectfully submitted,

2

3    YAAKOV M. ROTH                              ADAM R.F. GUSTAFSON
     *Principal Deputy Assistant Attorney General*  *Principal Deputy Attorney General*
4    Civil Division

5    JOSEPH E. BORSON                            ROBERT N. STANDER (DC Bar
     *Assistant Branch Director*                 #1028454)
6    Federal Programs Branch                     *Deputy Assistant Attorney General*

7                                                JEFFREY HUGHES (NY Bar
8    /s/ Stephen M. Pezzi                        #5367214)
     STEPHEN M. PEZZI (FL Bar #1041279)          United States Department of Justice
9    Senior Trial Counsel                        Environment and Natural Resources
     United States Department of Justice         Division
10   Civil Division, Federal Programs Branch     P.O. Box 7611
     1100 L Street NW                            Washington, D.C. 20044
11   Washington, DC 20005                        (202) 717-7067 (Stander)
     (202) 305-8576                              (202) 532-3080 (Hughes)
12   stephen.pezzi@usdoj.gov                     robert.stander@usdoj.gov
13                                               jeffrey.hughes@usdoj.gov

14

15

16                                               *Attorneys for Defendants*

17

18

19

20

21

22

23

24

25

26

27

28