# Exhibit A

Steven P. Lehotsky* (DC 992765)
Michael B. Schon* (DC 989893)
LEHOTSKY KELLER COHN LLP
200 Massachusetts Ave., NW, Suite 700
Washington, DC  20001
Telephone: (512) 693-8350
Email: steve@lkcfirm.com
Email: mike@lkcfirm.com

Katherine C. Yarger* (CO 40387)
LEHOTSKY KELLER COHN LLP
700 Colorado Blvd., #407
Denver, CO  80206
Email: katie@lkcfirm.com
Telephone: (512) 693-8350

Bradley A. Benbrook (SBN 177786)
Stephen M. Duvernay (SBN 250957)
BENBROOK LAW GROUP, PC
701 University Avenue, Suite 106
Sacramento, CA  95825
Telephone: (916) 447-4900
Email: brad@benbrooklawgroup.com

*Attorneys for Proposed Intervenors American
Fuel & Petrochemical Manufacturers,
American Petroleum Institute, and the
National Association of Convenience Stores*

* Admitted *pro hac vice*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STATE OF CALIFORNIA, et al., | ) |
| | ) |
| Plaintiffs, | ) Case No. 4:25-cv-04966 |
| | ) |
| v. | ) **PROPOSED INTERVENORS' NOTICE OF** |
| | ) **MOTION AND MOTION TO DISMISS** |
| UNITED STATES OF AMERICA; U.S. | ) **PLAINTIFFS' AMENDED COMPLAINT;** |
| ENVIRONMENTAL PROTECTION | ) **MEMORANDUM OF POINTS AND** |
| AGENCY; LEE ZELDIN, in his official | ) **AUTHORITIES IN SUPPORT** |
| capacity as Administrator of the U.S. | ) |
| Environmental Protection Agency; and | ) Date: January 29, 2026 |
| DONALD J. TRUMP, in his official | ) Time: 2:00 p.m. PST |
| capacity as President of the United | ) Judge: Hon. Haywood S. Gilliam, Jr. |
| States, | ) |
| | ) |
| Defendants. | ) |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**INTRODUCTION** ......................................................................................................... 1

**ISSUES TO BE DECIDED** ........................................................................................... 2

**STATMEMENT OF FACTS** .......................................................................................... 2

**LEGAL STANDARD** ..................................................................................................... 4

**ARGUMENT** ................................................................................................................... 5

    I.   Plaintiffs' claims are not justiciable...........................................................................6

        A.      Section 805 of the CRA bars judicial review. ..............................................6

        B.      Plaintiffs' challenge presents nonjusticiable political questions............................11

        C.      Plaintiffs lack standing for their statutory claims challenging EPA's

                 actions under the CRA. ...............................................................................14

        D.      The Amended Complaint seeks relief the court cannot grant. ................................16

    II.  The Amended Complaint fails to state a claim because the resolutions were lawfully

        enacted and constitutionally valid.......................................................................17

**CONCLUSION** .............................................................................................................. 25

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Alperin v. Vatican Bank,*
    410 F.3d 532 (9th Cir. 2005) ................................................................................ 12

5

*Arizona v. United States,*
6
    567 U.S. 387 (2012) ............................................................................................. 24

7

*Ashcroft v. Iqbal,*
8
    556 U.S. 662 (2009) ............................................................................................... 5

9

*Ashwander v. Tenn. Valley Auth.,*
    297 U.S. 288 (1936) ....................................................................................... 15, 16

10

*Baker v. Carr,*
11
    369 U.S. 186 (1962) ............................................................................................. 12

12

*Bank Markazi v. Peterson,*
    578 U.S. 212 (2016) ............................................................................................. 22

13

*Bell Atl. Corp. v. Twombly,*
14
    550 U.S. 544 (2007) ............................................................................................... 5

15

*Bennett v. Spear,*
16
    520 U.S. 154 (1997) ....................................................................................... 15, 19

17

*Bowen v. Mich. Acad. of Fam. Physicians,*
    476 U.S. 667 (1986) ............................................................................................. 11

18

*Ctr. for Biological Diversity v. Bernhardt,*
19
    946 F.3d 553 (9th Cir. 2019) ...................................................... 7, 8, 9, 10, 16, 19

20

*Chenoweth v. Clinton,*
21
    181 F.3d 112 (D.C. Cir. 1999) ............................................................................ 13

22

*Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp.,*
    333 U.S. 103 (1948) ............................................................................................. 15

23

*Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.,*
24
    710 F.3d 946 (9th Cir. 2013) ................................................................................ 5

25

*City of Los Angeles v. Lyons,*
26
    461 U.S. 95 (1983) ............................................................................................... 16

27

*Cmty. House, Inc. v. City of Boise,*
    623 F.3d 945 (9th Cir. 2010) ......................................................................... 24, 25

28

*Coleman v. Miller,*
  307 U.S. 433 (1939) ................................................................................................. 12

*Common Cause v. Biden,*
  748 F.3d 1280 (D.C. Cir. 2014) .............................................................................. 15

*Consejo de Desarrollo Economico de Mexicali, A.C. v. United States,*
  482 F.3d 1157 (9th Cir. 2007) ........................................................................... 12, 13

*Corrie v. Caterpillar Inc.,*
  503 F.3d 974 (9th Cir. 2007) .................................................................................. 11

*Crosby v. Nat'l Foreign Trade Council,*
  530 U.S. 363 (2000) ................................................................................................. 24

*Dalton v. Specter,*
  511 U.S. 462 (1994) .......................................................................................... 20, 21

*Davis v. District of Columbia,*
  158 F.3d 1342 (D.C. Cir. 1998) .............................................................................. 16

*Delta Chem. Corp. v. West,*
  33 F.3d 380 (4th Cir. 1994) ...................................................................................... 6

*Demore v. Kim,*
  538 U.S. 510 (2003) ................................................................................................. 11

*Effinger v. Ancient Organics LLC,*
  657 F. Supp. 3d 1290 (N.D. Cal. 2023) .................................................................... 4

*In re EPA,*
  B-334309, 2023 WL 8353888 (Comp. Gen. Nov. 30, 2023) .................................... 3

*Fla. Audubon Soc'y v. Bentsen,*
  94 F.3d 658 (D.C. Cir. 1996) .................................................................................. 15

*Franklin v. Massachusetts,*
  505 U.S. 788 (1992) ...................................................................................... 20, 21, 24

*Gest v. Bradbury,*
  443 F.3d 1177 (9th Cir. 2006) ................................................................................... 5

*Grossman v. City of Portland,*
  33 F.3d 1200 (9th Cir. 1994) ................................................................................... 25

*INS v. Chadha,*
  462 U.S. 919 (1983) ................................................................................................. 21

*Kan. Nat. Res. Coal. v. Dep't of Interior,*
  971 F.3d 1222 (10th Cir. 2020) ............................................................................ 7, 9

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ........................................................................................... 4

*Leedom v. Kyne*,
    358 U.S. 184 (1958) ......................................................................................... 17

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ......................................................................................... 14

*Made in the USA Found. v. United States*,
    242 F.3d 1300 (11th Cir. 2001) ....................................................................... 12

*Mendoza-Linares v. Garland*,
    51 F.4th 1146 (9th Cir. 2022) ......................................................................... 10

*Metzenbaum v. Fed. Energy Regul. Comm'n*,
    675 F.2d 1282 (D.C. Cir. 1982) ................................................................. 12, 14

*Montanans for Multiple Use v. Barbouletos*,
    568 F.3d 225 (D.C. Cir. 2009) ................................................................ 7, 9, 16

*Nat. Res. Def. Council, Inc. v. S. Coast Air Quality Mgmt. Dist.*,
    651 F.3d 1066 (9th Cir. 2011) ........................................................................... 5

*Nat'l Warranty Ins. Co. RRG v. Greenfield*,
    214 F.3d 1073 (9th Cir. 2000) ......................................................................... 24

*Nevada v. Watkins*,
    914 F.2d 1545 (9th Cir. 1990) ......................................................................... 13

*Nixon v. United States*,
    506 U.S. 224 (1993) ......................................................................................... 13

*Nuclear Regul. Comm'n v. Texas*,
    605 U.S. 665 (2025) ................................................................................... 17, 19

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ......................................................................................... 16

*Patchak v. Zinke*,
    583 U.S. 244 (2018) ......................................................................................... 22

*Perez v. Mortg. Bankers Ass'n*,
    575 U.S. 92 (2015) ........................................................................................... 18

*Prutehi Litekyan: Save Ritidian v. U.S. Dep't of Air Force*,
    128 F.4th 1089 (9th Cir. 2025) ....................................................................... 18

*Robertson v. Seattle Audubon Soc'y*,
    503 U.S. 429 (1992) ......................................................................................... 22

*Simon v. E. Ky. Welfare Rts. Org.*,
    426 U.S. 26 (1976) ........................................................................................... 15

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ......................................................................................... 15

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ........................................................................................... 15

*Tex. Sav. & Cmty. Bankers Ass'n v. Fed. Hous. Fin. Bd.*,
    1998 WL 842181 (W.D. Tex. June 25, 1998) .................................................. 8

*The Centech Grp., Inc. v. United States*,
    78 Fed. Cl. 496 (2007) ...................................................................................... 6

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ........................................................................................... 5

*United States v. Am. Elec. Power Serv. Corp.*,
    218 F. Supp. 2d 931 (S.D. Ohio 2002) ............................................................. 8

*United States v. Ballin*,
    144 U.S. 1 (1892) ............................................................................................. 12

*United States v. Klein*,
    80 U.S. (13 Wall.) 128 (1872) .................................................................... 22, 23

*United States v. McIntosh*,
    833 F.3d 1163 (9th Cir. 2016) ........................................................................... 7

*United States v. Or. State Med. Sch.*,
    343 U.S. 326 (1952) ......................................................................................... 16

*United States v. Orr Water Ditch Co.*,
    600 F.3d 1152 (9th Cir. 2010) ........................................................................... 4

*United States v. Padelford*,
    76 U.S. (9 Wall.) 531 (1870) ........................................................................... 23

*United States v. S. Ind. Gas & Elec. Co.*,
    2002 WL 31427523 (S.D. Ind. Oct. 24, 2002) ................................................. 8

*Via Christi Reg'l Med. Ctr., Inc. v. Leavitt*,
    509 F.3d 1259 (10th Cir. 2007) ...................................................................... 8, 9

*Warren v. Fox Fam. Worldwide, Inc.*,
    328 F.3d 1136 (9th Cir. 2003) ........................................................................... 5

*Wash. All. of Tech. Workers v. DHS*,
    892 F.3d 332 (D.C. Cir. 2018) ...................................................................... 9, 16

*Webster v. Doe,*
    486 U.S. 592 (1988) ............................................................................................. 10, 11

*Yesler Terrace Cmty. Council v. Cisneros,*
    37 F.3d 442 (9th Cir. 1994) ....................................................................................... 3, 18

*Zivotofsky ex rel. Zivotofsky v. Clinton,*
    566 U.S. 189 (2012) .................................................................................................... 14

**Statutes and Rules**

88 Fed. Reg. 20,688 (Apr. 6, 2023) .................................................................................. 3

90 Fed. Reg. 642 (Jan. 6, 2025) ...................................................................................... 3

90 Fed. Reg. 643 (Jan. 6, 2025) ...................................................................................... 3

5 U.S.C. § 551 .............................................................................................. 3, 6, 18

5 U.S.C. § 553 ................................................................................................... 17

5 U.S.C. § 704 ................................................................................................... 19

5 U.S.C. § 801 ................................................................. 3, 4, 6, 7, 8, 17, 22

5 U.S.C. § 802 ........................................................................................... 4, 5, 12

5 U.S.C. § 804 ...................................................................................... 3, 18, 21

5 U.S.C. § 805 ............................................ 1, 4, 5, 6, 7, 8, 9, 10, 11, 16, 19, 21

8 U.S.C. § 1252 ................................................................................................. 10

42 U.S.C. § 7401 ............................................................................................... 2

42 U.S.C. § 7507 ............................................................................................... 3

42 U.S.C. § 7521 .............................................................................................. 17

42 U.S.C. § 7543 ....................................................................................... 2, 11, 23

42 U.S.C. § 7607 .............................................................................................. 17

Fed. R. Civ. P. 12(b)(1) ................................................................................... 1, 4

Fed. R. Civ. P. 12(b)(6) ................................................................................... 1, 5

Pub. L. No. 119-15, 139 Stat. 65 (June 12, 2025) .......................................... 4, 7

Pub. L. No. 119-16, 139 Stat. 66 (June 12, 2025) .......................................... 4, 7

Pub. L. No. 119-17, 139 Stat. 67 (June 12, 2025) ..................................................... 4, 7

**Other Authorities**

Government Accountability Office, *The Safer Affordable Fuel-Efficient (SAFE)
    Vehicles Rule Part One: One National Program*, FRL010000-45,
    https://www.gao.gov/fedrules/196015 ....................................................... 7

Russell T. Vought, *Post-CRA Resolutions Response to GAO's March 6, 2025
    "Observations Regarding the Environmental Protection Agency's Submission
    of Notices of Decision on Clean Air Act Preemption Waivers as Rules Under
    the Congressional Review Act,"* Exec. Off. Of the Pres. (June 18, 2025),
    https://perma.cc/DR9Z-CHWX ................................................................ 7

Statement by the President (June 12, 2025), https://perma.cc/7U7Y-6EFZ ................................... 4

*Tongass Land Management: Joint Hearings Before the S. Comm. On Energy and
    Nat. Res. And H. Comm. on Res.*, 105th Cong. 20 (1997) .................................... 6, 7

U.S. Const. art. I, § 1 ............................................................................. 7, 13

U.S. Const. art. VI, cl. 2 ............................................................................. 24

Valerie C. Brannon & Maeve P. Carey, *The Congressional Review Act:
    Determining Which "Rules" Must Be Submitted to Congress*, Congress.gov
    (Oct. 22, 2024), https://www.congress.gov/crs-product/R45248 ............................... 6

**NOTICE**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on January 29, 2026 at 2:00 p.m. PST, or as soon thereafter as this matter may be heard in the United States District Court for the Northern District of California, 1301 Clay Street, Courtroom 2 (4th Floor), Oakland, CA 94612, Proposed Intervenors American Fuel & Petrochemical Manufacturers, American Petroleum Institute, and the National Association of Convenience Stores will move to dismiss this case pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.

**RELIEF SOUGHT BY THE MOVANTS**

The Proposed Intervenors seek an order dismissing this case for lack of subject matter jurisdiction under Rule 12(b)(1) and/or for failure to state a claim under Rule 12(b)(6).

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Plaintiffs' Amended Complaint must be dismissed because this Court lacks jurisdiction to review it. Earlier this year, Congress exercised its oversight authority under the Congressional Review Act (CRA) to disapprove three Environmental Protection Agency (EPA) waivers that had exempted California from federal preemption under the Clean Air Act (CAA). These waivers had authorized California to enforce aggressive vehicle emission regulatory and sales mandate schemes—the Advanced Clean Trucks, Advanced Clean Cars II, and "Omnibus" Low NOx rules—that together aimed to reduce internal combustion engine sales and the accompanying demand for liquid fuels. Several other States had adopted the California programs, turning what were nominally state regulations into de facto national standards. Congress responded as the Constitution permits: Through bicameralism and presentment, it enacted three joint resolutions of disapproval under the CRA, and President Trump signed each into law on June 12, 2025.

The CRA squarely bars judicial review of actions taken under it: "No determination, finding, action, or omission under this chapter shall be subject to judicial review." 5 U.S.C. § 805. Plaintiffs cannot evade that jurisdictional bar by dropping an explicit CRA claim while continuing to attack actions taken under the CRA.

In addition, Plaintiffs' claims seek to inject this Court into disputes over the internal workings of the Legislative and Executive branches—clear political questions that are unfit for judicial review. Finally, Plaintiffs lack Article III standing because their claimed injury is complete, no longer imminent, and cannot be redressed by this Court. The Amended Complaint thus suffers from the same fatal flaws as the original and must be dismissed in its entirety.

Even if there were jurisdiction, and there is not, dismissal would still be required. The waivers that Congress disapproved were "rules" under the Administrative Procedure Act (APA); EPA lawfully submitted them for review; and Congress, the President, and other Executive officials acted within their constitutional authority to disapprove them through duly enacted legislation.

Congress's resolutions are now binding law. Plaintiffs may not circumvent the Constitution's legislative process by challenging that outcome in court. The Amended Complaint should be dismissed.

## ISSUES TO BE DECIDED

1.   Whether this Court lacks jurisdiction because:

    a.   Plaintiffs' claims are barred by the CRA's jurisdiction-stripping provision;

    b.   Plaintiffs' claims present nonjusticiable political questions;

    c.   Plaintiffs lack standing to challenge EPA's actions; and

    d.   The relief requested is unavailable.

2.   Whether Plaintiffs fail to state any claim upon which relief can be granted because the challenged CRA resolutions were duly enacted and consistent with constitutional and statutory requirements.

## STATEMENT OF FACTS

The CAA creates a national framework for regulating emissions from new motor vehicles. *See* 42 U.S.C. §§ 7401, *et seq.* It gives EPA exclusive authority to set standards and bars states from regulating in this space. *Id.* § 7543(a). Congress included one narrow exception: California may request a federal waiver to enforce its own emissions standards if certain criteria are met. *Id.* § 7543(b) (detailing exception for California). After the federal waiver is granted, states may then

1  adopt California's standards in place of the federal standards, if certain conditions are met, but they

2  may not create their own. *See id.* § 7507.

3      As relevant here, between April 2023 and January 2025, EPA granted California three

4  waivers—authorizing the State to implement the Advanced Clean Trucks, Advanced Clean Cars II,

5  and the "Omnibus" Low NOx programs. *See* 88 Fed. Reg. 20,688 (Apr. 6, 2023) (Advanced Clean

6  Trucks); 90 Fed. Reg. 642 (Jan. 6, 2025) (Advanced Clean Cars II); 90 Fed. Reg. 643 (Jan. 6, 2025)

7  ("Omnibus" Low NOx). Each program imposed sweeping new restrictions on vehicle emissions and

8  mandated increasing sales of electric vehicles. Because other States had, and still others could have,

9  adopted California's rules before they were disapproved, *see* 42 U.S.C. § 7507 (authorizing other

10  states to adopt California's standards), the waivers functionally authorized a prospective regulatory

11  scheme that dictated what vehicles consumers and businesses may drive across a large swath of the

12  American car and truck market—creating an alternative national regulatory framework.

13      In early 2025, EPA submitted the three waivers to Congress under the CRA.[1] The CRA

14  requires, with certain exceptions, that agencies "submit to each House of the Congress and to the

15  Comptroller General" each rule along with a report detailing the rule before it may take effect.

16  5 U.S.C. § 801(a)(1)(A). By contrast, agencies need not send to Congress orders, licenses, or rules

17  of particular applicability. 5 U.S.C. § 551(6), (8); 5 U.S.C. § 804(3). The CRA defines "rule"

18  broadly, adopting the APA definition. *Id.* § 804(3); *see also* 5 U.S.C. § 551(4); *see, e.g.*, *Yesler*

19  *Terrace Cmty. Council v. Cisneros*, 37 F.3d 442, 448 (9th Cir. 1994) ("[R]ulemaking affects the

20  rights of broad classes of unspecified individuals" and "is prospective," "hav[ing] a definitive effect

21  on individuals only after the rule subsequently is applied."). Once a rule is submitted, Congress may

22  _____

23  [1] When EPA transmitted these waivers to Congress, some Senators requested a GAO opinion on
   whether the submitted waivers qualified as "rules" under the CRA, and the GAO provided
24  substantive "observations" despite the irregularity of providing guidance at that time. *See* Dkt. 157-
   2, Am. Compl. Ex. B (March 6, 2025 GAO Observations). The GAO's observations discuss an
25  earlier 2023 GAO opinion, *see id.* (discussing *In re EPA*, B-334309, 2023 WL 8353888 (Comp.
   Gen. Nov. 30, 2023) (hereafter "B-334309")), that is neither legally compelled nor legally binding
26  on anyone, *see infra* pp. 6–7 & n.3. There, GAO advised that EPA's March 14, 2022 Notice of
   Decision (waiver) for ACC I was an adjudicatory order rather than a rule under the APA, and that
27  even if it could be considered a rule, it would fall under the CRA's exclusion for rules of particular
   applicability. *See* B-334309 at *6. Congress reviewed these arguments and ultimately rejected
28  GAO's position, as Congress has the authority to do. *See infra* pp. 6–7 & n.3.

MOTION TO DISMISS, NO. 4:25-cv-04966

1    "enact[] a joint resolution of disapproval." 5 U.S.C. § 802(a). If the President signs the resolution,

2    the rule is invalidated and "may not be reissued in substantially the same form." *Id.* § 801(b)(2). The

3    CRA expressly bars judicial review of actions or omissions taken under the CRA: "No

4    determination, finding, action, or omission under this chapter shall be subject to judicial review. *Id.*

5    § 805.

6        Congress and the President disapproved the waivers via three joint resolutions enacted

7    through bicameralism and presentment. *See* Pub. L. No. 119-15, 139 Stat. 65 (June 12, 2025); Pub.

8    L. No. 119-16, 139 Stat. 66 (June 12, 2025); Pub. L. No. 119-17, 139 Stat. 67 (June 12, 2025); *see*

9    *also* Statement by the President (June 12, 2025), https://perma.cc/7U7Y-6EFZ. The disapproved

10   waivers are now without legal effect, States may not implement them, and, by operation of the CRA,

11   EPA may not reissue similar rules without new congressional authorization.

12       California and ten other States now seek this Court's reversal of those duly enacted laws.

13   They sued the United States, the President, and EPA and have now filed their Amended Complaint.

14   Like the original complaint, the Amended Complaint concerns internal political process beyond this

15   Court's jurisdiction. Plaintiffs nevertheless claim that the waivers are not rules under the CRA, that

16   EPA's submission to the Congress was unlawful, and that the resolutions violate the Constitution.

17   *See generally* Dkt. 157, Am. Compl. None of these claims can succeed.

18       Proposed Intervenors, American Fuel & Petrochemical Manufacturers, American Petroleum

19   Institute, and the National Association of Convenience Stores, have sought to intervene to protect

20   their members' rights, which are independent of and not represented by Defendants. Since Plaintiffs

21   have now filed an Amended Complaint that removes some claims and makes other changes,

22   Proposed Intervenors submit this new Motion to Dismiss Plaintiffs' Amended Complaint.

23                                   **LEGAL STANDARD**

24       A motion to dismiss under Rule 12(b)(1) tests whether the court has subject-matter

25   jurisdiction over the claims asserted. *See Effinger v. Ancient Organics LLC*, 657 F. Supp. 3d 1290,

26   1295 (N.D. Cal. 2023). Plaintiffs bear the burden of establishing that jurisdiction exists. *Kokkonen*

27   *v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *United States v. Orr Water Ditch Co.*,

28   600 F.3d 1152, 1157 (9th Cir. 2010). To satisfy Article III's standing requirement, "plaintiffs must

1    demonstrate standing for each claim that they press and for each form of relief that they seek."

2    *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). "[W]here, as here, [Plaintiffs] seek

3    declaratory and injunctive relief, they must demonstrate that they are 'realistically threatened by a

4    repetition of the violation.'" *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006) (cleaned up).

5    Where jurisdiction is lacking, the court must dismiss the action. *See, e.g.*, *Nat. Res. Def. Council,*

6    *Inc. v. S. Coast Air Quality Mgmt. Dist.*, 651 F.3d 1066, 1073 (9th Cir. 2011) (affirming district

7    court dismissal for lack of jurisdiction).

8           A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint.

9    Courts must dismiss a complaint under Rule 12(b)(6) where the complaint lacks a cognizable legal

10   theory or sufficient facts alleged under a cognizable legal theory. *See Chubb Custom Ins. Co. v.*

11   *Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013). To survive such a motion, the complaint

12   must also contain enough factual allegations to state a claim that is plausible on its face. *Ashcroft v.*

13   *Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Courts will

14   not, however, "assume the truth of legal conclusions merely because they are cast in the form of

15   factual allegations." *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003)

16   (citation omitted).

17                                            **ARGUMENT**

18          Plaintiffs' Amended Complaint must be dismissed. The CRA provides expedited procedures

19   for Congress to review and disapprove of agency rules, and expressly prohibits judicial review of

20   *any* "determination, finding, action, or omission" made by Congress under the statute.

21   5 U.S.C. §§ 802, 805. This Court simply cannot adjudicate those acts or omissions. The Amended

22   Complaint suffers from numerous other jurisdictional defects: It presents quintessential political

23   questions about how Congress exercises its legislative oversight; Plaintiffs lack standing to bring

24   their claims against EPA because EPA's actions did not cause Plaintiffs' alleged injury; and the

25   relief requested is unavailable. Even if the Court could reach the merits, the Amended Complaint

26   fails to state any claim upon which relief could be granted. The three joint resolutions at issue reflect

27   a lawful exercise of legislative and executive power. As explained below, the Amended Complaint

28   should be dismissed.

**I.      Plaintiffs' claims are not justiciable.**

Plaintiffs' lawsuit fails because it presents nonjusticiable claims. First, Section 805 of the CRA withdraws jurisdiction over challenges to actions taken under the statute—including efforts to nullify disapproval resolutions. Second, Plaintiffs' claims raise political questions that the Constitution commits to the elected branches and that courts may not resolve. Third, Plaintiffs lack standing. And fourth, this Court cannot award the relief Plaintiffs seek. Any of these grounds independently requires dismissal.

**A.      Section 805 of the CRA bars judicial review.**

Each of Plaintiffs' claims fails because the CRA prohibits courts from reviewing actions taken "under" it. Section 805 of the CRA states: "No determination, finding, action, or omission *under this chapter* shall be subject to judicial review." 5 U.S.C. § 805 (emphasis added). This bar applies where a plaintiff challenges a law passed through the CRA's process, including the agency's submission of the rule, Congress's disapproval, and the President's signature. That is the case here.

The CRA requires agencies to "submit to each House of the Congress and to the Comptroller General" each rule along with a report detailing the rule. *Id.* § 801(a)(1). The CRA broadly defines "rule" according to the APA's definition. *Id.* § 551(4).[2] Congress, however, need not rely on an agency's determination of whether the action is rules or not. It has also developed its own internal process to determine whether agency actions are reviewable as a rule under the CRA, treating certain rules as constructively submitted and therefore subject to the CRA. Ultimately, Congress is permitted to decide for itself when to take up an agency action under the CRA and when to pass laws disapproving it.[3] After all, it is Congress, not the Executive, that is responsible for making law.

---

[2] *See also* Valerie C. Brannon & Maeve P. Carey, *The Congressional Review Act: Determining Which "Rules" Must Be Submitted to Congress*, Congress.gov (Oct. 22, 2024), https://www.congress.gov/crs-product/R45248.

[3] Plaintiffs have identified no authority, and there is none, for the proposition that GAO's observations or opinions as to whether an agency action is a "rule" are legally required or legally binding rather than merely advisory. *See The Centech Grp., Inc. v. United States*, 78 Fed. Cl. 496, 507 (2007) (neither agencies nor courts are bound by GAO decisions); *Delta Chem. Corp. v. West*, 33 F.3d 380, 382 (4th Cir. 1994) ("[T]he lack of consistency in . . . GAO opinions, both internally and between opinions, renders them of little value and undeserving of judicial deference."). GAO itself recognizes that it has no power "to decide what a rule is." *Tongass Land Management: Joint*

*See* U.S. Const. art. I, § 1 (granting "[a]ll legislative Powers" to Congress); *United States v. McIntosh*, 833 F.3d 1163, 1172 (9th Cir. 2016) ("It is emphatically . . . the exclusive province of the Congress not only to formulate legislative policies and mandate programs and projects, but also to establish their relative priority for the Nation." (cleaned up)).[4]

Here, EPA submitted three waivers to Congress as rules under the CRA. Both chambers passed resolutions disapproving them. The President signed each resolution. Those resolutions became law.[5] These laws voided the waivers and barred EPA from "reissu[ing] [new rules] in substantially the same form." § 801(b)(2).

Plaintiffs now seek to undo Congress's duly enacted legislation. They attack EPA's treatment of the waiver decisions as rules, *see, e.g.*, Am. Compl. ¶¶ 132, 137, 143; and its decision to send the rules to Congress, *see, e.g.*, *id.* ¶ 143; Congress's decision to take up the rules, *see, e.g.*, *id.* ¶¶ 138, 154; the procedures by which Congress did so, *see, e.g.*, *id.* ¶¶ 154–58; Congress's adoption of the resolutions, *see, e.g.*, *id.* ¶ 163; and the President's signing of the Resolutions, *see, e.g.*, *id.* ¶¶ 163, 172. None of these are reviewable.

What California seeks to have this Court review are precisely the types of actions Section 805 forecloses courts from reviewing because, at their core, each claim challenges a "determination, finding, action, or omission" under the statute.[6] In *Center for Biological Diversity v. Bernhardt*, 946

---

*Hearings Before the S. Comm. On Energy and Nat. Res. And H. Comm. on Res.*, 105th Cong. 20 (1997). In any event, GAO has previously concluded that an action revoking a preemption waiver is a "final rule." *See* Government Accountability Office, *The Safer Affordable Fuel-Efficient (SAFE) Vehicles Rule Part One: One National Program*, FRL010000-45, https://www.gao.gov/fedrules/196015 (adopting EPA's description of a 2019 waiver decision as a final rule).

[4] *See also* Russell T. Vought, *Post-CRA Resolutions Response to GAO's March 6, 2025 "Observations Regarding the Environmental Protection Agency's Submission of Notices of Decision on Clean Air Act Preemption Waivers as Rules Under the Congressional Review Act*," Exec. Off. Of the Pres. (June 18, 2025), https://perma.cc/DR9Z-CHWX.

[5] Pub. L. No. 119-15, 139 Stat. 65; Pub. L. No. 119-16, 139 Stat. 66; Pub. L. No. 119-17, 139 Stat. 67.

[6] Courts overwhelmingly agree that Section 805's jurisdictional bar applies equally to agency acts or omissions as it does to Congressional ones. *See Kan. Nat. Res. Coal. v. Dep't of Interior*, 971 F.3d 1222, 1235–36 (10th Cir. 2020) ("[T]he CRA unambiguously prohibits judicial review of any omission by any of the specified actors," which include "agencies, the Comptroller General, the President, and Congress."); *Montanans for Multiple Use v. Barbouletos*, 568 F.3d 225, 229 (D.C.

1  F.3d 553, 563–64 (9th Cir. 2019), the Ninth Circuit rejected a nearly identical effort to circumvent

2  the CRA's jurisdictional bar. *See id.* (rejecting plaintiff's attempt to shirk the jurisdictional bar by

3  describing it as something other than a "'determination, finding, action or omission' under the

4  CRA"). There, the plaintiff argued that a joint resolution was invalid because the disapproved rule

5  had taken effect before the agency submitted it to Congress. *See id.* at 562 (arguing the rule "could

6  not be submitted 'in accordance with' § 801(a)(1)(A), because that section requires a federal agency

7  to submit a report to Congress '[b]efore a rule can take effect,' but the [rule] took effect . . . nearly

8  a month before the report was submitted to Congress"). The plaintiff claimed the submission was

9  untimely and the resolution was therefore improperly enacted. *See id.* at 562–63. But the court held

10 that Section 805 bars judicial review of any claim that challenges a "determination, finding, action,

11 or omission" under the CRA—including procedural challenges to the validity of a joint resolution.

12 *Id.* at 563 (Plaintiff "challenges Congress's enactment of the Joint Resolution. Because enacting a

13 joint resolution of disapproval is an action under the CRA, we lack jurisdiction to consider this

14 claim."). The court explained that the plaintiff's real grievance was with Congress's act of

15 disapproval. *See id.* at 564 (plaintiff's challenge to the agency's rescission of the rule after the CRA

16 process was a "claim [that] necessarily involves a challenge to a congressional 'determination,

17 finding, action or omission' under the CRA"). Because the agency acted under the CRA, and

18 because the relief sought would nullify the resolution, Section 805 stripped the court of jurisdiction.

19 *See id.* The court emphasized that Congress's intent to preclude judicial review was "fairly

20 discernible" from the statutory scheme. *Id.* at 563. It does not matter if the plaintiff frames the claim

21

22 _____

23 Cir. 2009) (holding that CRA precludes review of agency compliance with submission requirements); *Via Christi Reg'l Med. Ctr., Inc. v. Leavitt*, 509 F.3d 1259, 1271 n.11 (10th Cir. 2007) *overruled in part on other grounds by Azar v. Allina Health Servs.*, 587 U.S. 566, 572 (2019)
24 (noting CRA precludes judicial review of failure to submit a rule); *Tex. Sav. & Cmty. Bankers Ass'n v. Fed. Hous. Fin. Bd.*, 1998 WL 842181, at *7 n.15 (W.D. Tex. June 25, 1998), *aff'd*, 201 F.3d 551
25 (5th Cir. 2000) (Section 805 barred judicial review of agency omission to submit rule); *United States v. Am. Elec. Power Serv. Corp.*, 218 F. Supp. 2d 931, 949 (S.D. Ohio 2002) (same); *but see United*
26 *States v. S. Ind. Gas & Elec. Co.*, 2002 WL 31427523, at *4–5 (S.D. Ind. Oct. 24, 2002) (Section 805 jurisdictional bar applies only to congressional action). Even were this Court persuaded by the
27 stand-alone, unpublished position of the Southern District of Indiana, the waivers here, unlike the action at issue in that case, have already been submitted to Congress and disapproved, making the
28 factual circumstances inapposite.

1    as a challenge to agency action, as Plaintiffs attempt here. *See, e.g.*, Am. Compl. ¶¶ 127, 138, 145,

2    163, 172; *see also id.* ¶¶ 139–40, 146–47, 159–60, 168–69, 178–79 (each of Plaintiffs' substantive

3    counts request that actions under the CRA are declared unlawful and vacated). The challenge is still

4    covered by the plain text of the act, and the bar applies. *See Bernhardt*, 946 F.3d at 563–64.

5          The D.C. and Tenth Circuits have similarly enforced Section 805's bar against CRA

6    challenges. *See Wash. All. of Tech. Workers v. DHS*, 892 F.3d 332, 346 (D.C. Cir. 2018) (holding

7    that § 805 forecloses review of claim that rule was invalid for taking effect fewer than 60 days after

8    publication, where the CRA mandates a 60-day waiting period); *Montanans for Multiple Use*, 568

9    F.3d at 229 (holding that § 805 bars review of claim that agency violated CRA by failing to report

10    plan amendments, because the statute "denies courts the power to void rules on the basis of agency

11    noncompliance"); *Kan. Nat. Res. Coal.*, 971 F.3d at 1226–28, 1235–38 (discussing legislative

12    history of CRA and dismissing case for lack of subject-matter jurisdiction under the broad

13    jurisdictional bar in § 805); *Via Christi Reg'l Med. Ctr., Inc.*, 509 F.3d at 1271 n.11 (explaining that

14    CRA "specifically precludes judicial review of an agency's compliance with its terms"). These

15    decisions underscore what the text makes plain: Courts lack power to second-guess congressional

16    and executive actions taken under the CRA.

17          California cannot plead around the CRA's jurisdictional bar. Deleting the explicit CRA

18    count from the Amended Complaint does not change what this suit is about or what it seeks to undo.

19    Every claim still targets actions taken under the CRA and seeks relief that would nullify Congress's

20    disapproval of the waivers. The Amended Complaint asks this Court to declare that the "Resolutions

21    are unlawful, void, and of no effect," Am. Compl. ¶¶ 159, 168, 178–79; to vacate EPA's

22    submissions to Congress, which is, in effect, a challenge to the Resolutions, *id.* ¶ 140; and to enjoin

23    EPA and its Administrator from giving the resolutions "any legal effect," *id.* ¶¶ 160, 169. Each

24    request strikes directly at the operation of the CRA and at the legislative acts taken under it. Section

25    805 bars judicial review of any "determination, finding, action, or omission" under the CRA, 5

26    U.S.C. § 805, and that prohibition cannot be evaded by repackaging a CRA challenge in other

27    statutory or constitutional terms.

28

1    Although the Ninth Circuit has glanced at a narrow exception to Section 805's broad

2    jurisdictional bar for constitutional claims, it did not engage with the CRA's text or its legislative

3    history and instead merely invoked the general canon from *Webster v. Doe*, 486 U.S. 592, 603

4    (1988), requiring a "clear" statement before Congress can foreclose judicial review of constitutional

5    claims. *See Bernhardt*, 946 F.3d at 561.

6    That principle is inapplicable here. Section 805 clearly states, "[n]o determination, finding,

7    action, or omission under this chapter shall be subject to judicial review." 5 U.S.C. § 805. That

8    language is clear. It does not differentiate between statutory and constitutional claims. Instead, it

9    says "[t]his chapter shall apply notwithstanding any other provision of law." *Id.* § 806(a). That

10   unmistakably indicates that Congress intended the bar to override every other source of law. If

11   Congress wanted to exempt constitutional claims from this bar, it would have used specific language

12   to do so. In *Mendoza-Linares v. Garland*, the Ninth Circuit held that Congress barred judicial review

13   of an asylum-seeker's constitutional claims through similarly broad language. 51 F.4th 1146, 1161

14   (9th Cir. 2022); *see id.* at 1148–49. The statute at issue there stated, in part, that "no court shall have

15   jurisdiction to review" certain immigration decisions and claims. *See id.* at 1154 (quoting 8 U.S.C.

16   § 1252(a)(2)). The Ninth Circuit found this language clear enough to overcome the presumption of

17   reviewability for constitutional claims. That conclusion was bolstered by other language in the

18   statute expressly preserving constitutional claims in other contexts, showing that Congress knows

19   how to preserve such claims when it so desires. *Id.* at 1161. Section 805 of the CRA is equally clear:

20   "No determination, finding, action, or omission under [the CRA] shall be subject to judicial review."

21   5 U.S.C. § 805.

22   Moreover, *Webster* and its progeny's principle that courts should presume constitutional

23   claims remain reviewable absent a clear statement to the contrary arose in cases involving individual

24   rights, such as liberty, due process, and access to habeas relief.[7] The concern animating those

25

26   _____
     [7] *See Webster*, 486 U.S. at 596, 603 (individual raising, among others, due process and equal

27   protection claims) (citing *Bowen v. Mich. Acad. of Fam. Physicians*, 476 U.S. 667, 681 n.12 (1986)
     (individuals raising equal protection and due process claims)); *see also Demore v. Kim*, 538 U.S.

28   510, 517 (2003) (noting that particularly clear statement is needed to bar review of habeas claims

10

decisions was that Congress cannot, consistent with separation of powers, deny all judicial review when a citizen-claimant asserts a fundamental personal right. That concern does not apply here. This case does not involve liberty or individual rights. It involves institutional power. California and the other Plaintiffs ask this Court to prioritize California's policy preferences over the prerogatives of Congress, which legislates for the entire nation. But California (and the other States) are only permitted to implement California's desired regulatory regime under a narrow exception to federal preemption and only if EPA concludes that certain statutory conditions are met. 42 U.S.C. § 7543(b). California has no independent constitutional right to its preferred alternative to federal standards. The CRA reflects Congress's clear legislative judgment to preclude judicial review. That judgment is not subject to judicial oversight—even when framed as a constitutional challenge.

This Court has no authority to review or reverse the outcome of the legislative process Congress used here. Section 805 requires dismissal of all of Plaintiffs' claims.

**B.    Plaintiffs' challenge presents nonjusticiable political questions.**

Plaintiffs ask this Court to pass judgment on how Congress exercised its internal legislative procedures in enacting the joint resolutions. *See, e.g.*, Am. Compl. ¶¶ 155–58, 162–67. But this Court cannot do what Plaintiffs ask. Plaintiffs present textbook political questions over which federal courts have no authority.

Where a case presents a nonjusticiable political question, the court lacks jurisdiction. *See Corrie v. Caterpillar Inc.*, 503 F.3d 974, 982 (9th Cir. 2007). To determine a political question's presence, this Court considers six equally sufficient factors:

> [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

and indicating that the underlying constitutional concern for inability to review constitutional claims lies with particular liberty interests).

11

*Alperin v. Vatican Bank*, 410 F.3d 532, 544 (9th Cir. 2005) (quoting *Baker v. Carr*, 369 U.S. 186, 217 (1962)); *see also Corrie*, 503 F.3d at 980. If any one of these factors is "inextricable" from the case, it is nonjusticiable. *Alperin*, 410 F.3d at 544.

Here, the first factor is "inextricable" from and disposes of the challenges to Congress's internal procedures. The expedited procedures that are challenged here, *see* Am. Compl. ¶¶ 155–58, 163–64; *see also id.* ¶¶ 56, 102–06, are "an exercise of the rulemaking power of the Senate and House of Representatives, respectively," and as such are "deemed a part of the rules of each House, respectively," 5 U.S.C. § 802(g) (noting that either House may "change the rules . . . at any time"). As the Ninth Circuit has explained, a challenge "based on the asserted failure of Congress to comply with its own procedural rules" is a nonjusticiable "political question" that is "beyond [this Court's] power to review." *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1171–72 (9th Cir. 2007) (declining to review claim that Congress, by not holding a hearing on legislation, failed to comply with its own procedural rules).

The Supreme Court and numerous other federal courts have agreed and routinely refrain from deciding questions like those Plaintiffs ask this Court to resolve. *See, e.g.*, *United States v. Ballin*, 144 U.S. 1, 5 (1892) ("The constitution empowers each house to determine its rules of proceedings."); *Coleman v. Miller*, 307 U.S. 433, 450 (1939) (holding that Congress's treatment of state ratification of constitutional amendment as a nonjusticiable political question); *Made in the USA Found. v. United States*, 242 F.3d 1300, 1311–12 (11th Cir. 2001) (holding that political branches' choices of how to handle an international agreement—*i.e.*, whether to have the Senate review and approve it as a "treaty"—was a nonjusticiable political question); *Metzenbaum v. Fed. Energy Regul. Comm'n*, 675 F.2d 1282, 1286–87 (D.C. Cir. 1982) (per curiam) (holding that a question that would require a court to "construe the rules of the House of Representatives [and] additionally to impose upon the House [the court's] interpretation of its rules" was "political in nature" and therefore nonjusticiable (cleaned up)); *Consejo de Desarrollo Economico de Mexicali, A.C.*, 482 F.3d at 1172 ("In short, the Constitution textually commits the question of legislative procedural rules to Congress. Thus, whether Congress decides to hold a hearing on legislation applicable to the general public is a non-justiciable political question beyond our power to review.");

*Chenoweth v. Clinton*, 181 F.3d 112, 116 (D.C. Cir. 1999) (holding that plaintiffs lacked standing to challenge President's decision implementing legislative program because their injury was inherently political); *Nevada v. Watkins*, 914 F.2d 1545, 1556–57 (9th Cir. 1990) (holding that challenge to composition of conference committee and resulting legislation as violating Tenth Amendment was nonjusticiable to the extent it sought to require Nevada representation on the congressional committee).

This overwhelming body of law confirms that Plaintiffs' challenges to Congress's internal procedures in enacting the joint resolutions lie beyond the Court's jurisdiction and must be dismissed.

Factors two and three also support dismissal. Plaintiffs ask this Court to decide when and how Congress must apply the Congressional Review Act. That question lacks judicially manageable standards and requires policy judgments about legislative procedure that the Constitution assigns to Congress alone. *See* U.S. Const. art. I, § 1 (granting "[a]ll legislative Powers" to Congress); *see also Nixon v. United States*, 506 U.S. 224, 229–30 (1993) (finding that there are no judicially manageable standards for assessing the Senate's conducting of an impeachment trial because the Constitution commits impeachment trials to the Senate). Plaintiffs' challenge raises institutional concerns about how Congress exercises its own oversight powers under the CRA. *See* Am. Compl. ¶¶ 157–58. Plaintiffs do not seek review of agency action. They ask this Court to second-guess Congress's internal decision about whether and when to invoke its disapproval process. That request implicates both the absence of judicial standards and the danger of disrespecting a coordinate branch. The CRA ultimately commits the determination whether Congress's expedited procedures apply to Congress alone.

The other factors also support dismissal. Factor four supports dismissal because resolving Plaintiffs' claims would require the Court to second-guess how Congress exercised its internal procedures, effectively inviting judicial oversight of the legislative process and expressing a clear lack of respect for a coequal branch. *See Metzenbaum*, 675 F.2d at 1287–88 (Courts have declined to resolve questions about internal Congressional proceedings because it is "impossibl[e]" for them to "undertake independent resolution" in situations such as this "without expressing lack of the

13

respect due coordinate branches of government." (cleaned up)). Finally, factors five and six support dismissal because second-guessing Congress's procedure here would undermine the need for finality in legislative decisions and create a serious risk of conflicting pronouncements from the branches on a live policy issue, generating the very interbranch friction and political embarrassment the political question doctrine is meant to prevent. *See, e.g.*, *Zivotofsky ex rel. Zivotofsky v. Clinton*, 566 U.S. 189, 205–06 (2012) (Sotomayor, J., concurring in part) (noting that "courts properly resist calls to question the good faith with which another branch attests to the authenticity of its internal acts"). Prudential considerations should also foreclose review. *See Metzenbaum*, 675 F.2d at 1287–88.

C.      **Plaintiffs lack standing for their statutory claims challenging EPA's actions under the CRA.**

Even were the CRA to permit Plaintiffs to challenge EPA's submission of the waivers as rules or to claim that submission tainted the final resolutions of disapproval, *see* Am. Compl. ¶¶ 125–38, 143–44; *see also id.* ¶ 184, Plaintiffs lack standing to do so. Plaintiffs' alleged injury flows from Congress's resolutions, not EPA's actions. No relief directed at EPA would redress Plaintiffs' injury. This is because Congress's independent determinations and actions break the causal chain. The legal force and operative effects of the invalidation of the waiver decisions result directly and solely from the actions of Congress.

EPA's transmission of the waivers is neither a legal cause of the injury nor a source of redress. No remedy directed at EPA could alter the fact that Congress reviewed the waivers and enacted binding statutes that nullified them. Those statutes have the full force of law. They reflect the independent and constitutionally grounded decisions of both Houses of Congress and the President. That chain of lawful legislative action breaks any causal connection to EPA's earlier transmission and Plaintiffs' alleged injury. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) ("[T]he injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" (citing *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41–42 (1976)); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (injury must be "fairly traceable to the challenged conduct of the defendant").

1    Plaintiffs cannot overcome this traceability problem by labeling EPA's submission as the

2    cause of their harm. As the Supreme Court made clear in *Bennett v. Spear*, "it does not suffice if the

3    injury complained of is 'the result of the independent action of some third party not before the

4    court.'" 520 U.S. 154, 169 (1997) (cleaned up). Here, that third party is Congress itself. EPA's

5    transmission of the waivers did not dictate or compel Congress's disapproval votes. Congress

6    remained entirely free to act or not act. Its independent legislative choice is what triggered the legal

7    consequences at issue here.

8    These interrelated causation and traceability defects are fatal to standing. *See Common*

9    *Cause v. Biden*, 748 F.3d 1280, 1284 (D.C. Cir. 2014) ("[T]he causation element requires that a

10   proper defendant be sued."). Plaintiffs cannot hold EPA responsible for an injury caused by

11   Congress. As in *Common Cause*, Plaintiffs' "alleged injury was caused not by any of the defendants,

12   but by an 'absent third party'"—namely, Congress. *See id.* (quoting *Fla. Audubon Soc'y v. Bentsen*,

13   94 F.3d 658, 663 (D.C. Cir. 1996)).

14   Nor could a court order directed at EPA redress Plaintiffs' asserted injury. *See Steel Co. v.*

15   *Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) (holding that a court cannot grant relief for a

16   past violation when the relief would not redress the plaintiff's injury and would serve only to declare

17   a violation of law). The disapproval resolutions are valid acts of Congress. They remain binding

18   regardless of the manner in which EPA transmitted the waivers. A declaration that EPA's

19   submissions were improper would not undo Congress's enactments, nor would it reinstate the

20   waivers. The requested declaration would offer no benefit. It would serve only to express judicial

21   disapproval of a completed executive act that has no ongoing effect. Article III forbids such advisory

22   opinions. *See, e.g.*, *Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113 (1948) ("To

23   revise or review an administrative decision, which has only the force of a recommendation . . .,

24   would be to render an advisory opinion in its most obnoxious form . . . ."); *Ashwander v. Tenn.*

25   *Valley Auth.*, 297 U.S. 288, 345–46 (1936) (Brandeis, J., concurring) ("[F]ederal courts . . . have no

26   power to give advisory opinions.").

27   Because the injury is not caused by or fairly traceable to EPA and cannot be redressed by

28   relief against EPA, Plaintiffs lack standing to assert their statutory CRA claims.

15

1

**D.      The Amended Complaint seeks relief the Court cannot grant.**

As already explained, in each count, Plaintiffs seek relief that this Court cannot grant. Section 805's judicial-review prohibition "denies courts the power to void rules on the basis of agency noncompliance with the Act." *Montanans for Multiple Use*, 568 F.3d at 229. As such, whether or not EPA correctly submitted the rule to Congress, there is no relief this Court can grant. *See Wash. All. of Tech. Workers*, 892 F.3d at 346 (motion to dismiss may be granted if plaintiff "would not have a claim upon which relief could be granted even with [sufficiently pleaded] facts" (alteration in original) (quoting *Davis v. District of Columbia*, 158 F.3d 1342, 1349 (D.C. Cir. 1998))).

Further, equitable relief may not be used to undo past completed acts. Injunctions prevent future harm, not past conduct. *See United States v. Or. State Med. Sch.*, 343 U.S. 326, 333 (1952); *City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06 (1983); *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). Here, EPA has completed the submission of the waiver decisions, and the legislative process is complete. Plaintiffs do not credibly allege any imminent agency action or future resolution under the CRA that presents a real and immediate threat of harm to them. The possibility that similar waivers might be submitted to, or disapproved by, Congress in the future is speculative and too contingent to support equitable relief. *See Bernhardt*, 946 F.3d at 560. This Court could no more prevent those transmissions than it could a Congressional committee's consideration of a bill California's dislikes. The lack of concrete, ongoing harm forecloses any viable remedy.

Each of these independent grounds requires dismissal.

**II.      The Amended Complaint fails to state a claim because the resolutions were lawfully enacted and constitutionally valid.**

Even if the Court could reach the merits, Plaintiffs' claims still fail as a matter of law.

***Ultra Vires.*** The gravamen of Plaintiffs' *ultra vires* claim is that EPA's waivers are not rules and are therefore not subject to the CRA. *See* Am. Compl. ¶¶ 143–45. Plaintiffs argue that EPA and its Administrator acted beyond their authority by classifying the waivers as "rules" subject to the CRA and by labeling certain documents as a "report." *Id.* ¶ 143. Plaintiffs further contend that no

statute authorizes EPA to take these actions, that EPA failed to follow notice-and-comment procedures under 5 U.S.C. § 553 and 42 U.S.C. § 7607(d), and that EPA was required to comply with the CAA's distinct provisions governing the promulgation of federal vehicle emission standards under 42 U.S.C. § 7521. *Id.* ¶ 144.

To sustain an *ultra vires* challenge against a federal agency, a plaintiff must demonstrate that the agency acted in plain contravention of an unambiguous statutory command. As the Supreme Court explained in *Leedom v. Kyne*, *ultra vires* jurisdiction exists only where an agency acts "in excess of its delegated powers and contrary to a specific prohibition." 358 U.S. 184, 188 (1958). Setting aside for a moment Plaintiffs' lack of Article III standing (already discussed above), Plaintiffs cannot show that EPA violated any "clear and mandatory" duty, *see id.*; *see also Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 680–82 (2025), because EPA did not exceed any statutory limit. The CRA assigns EPA the task of determining how to classify its actions. 5 U.S.C. § 801 (explaining that the federal agency submits rules under the CRA). That duty presupposes agency discretion to classify its actions for CRA purposes, precisely what EPA did here. And no provision bars EPA from making such a determination after an action's effective date. Finally, Plaintiffs point to no statute that requires a distinct public process for such classification decisions, and none exists. The CRA itself contains no procedural prerequisites to the submission to Congress.

Plaintiffs' reliance on the APA's rulemaking provisions and the CAA's procedural requirements is misplaced. Those provisions govern the promulgation of substantive rules of general applicability, not the ministerial act of classifying or transmitting existing agency actions to Congress under the CRA.

Were it to matter for this Court's purposes here, and it does not for the reasons already discussed, EPA's waiver determinations nevertheless fit comfortably within the broad definition of a rule. As noted above, the CRA adopts the APA's broad definition of "rule." 5 U.S.C. § 804(3). A "rule" includes "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy." *Id.* § 551(4). Courts have construed this definition broadly. *See Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 95–96 (2015) (noting the "broad" scope of the rule definition); *Prutehi Litekyan: Save Ritidian v. U.S. Dep't of*

17

1    *Air Force*, 128 F.4th 1089, 1107 (9th Cir. 2025) (same). In contrast, adjudicatory orders "resolve

2    disputes among specific individuals in specific cases" and "have an immediate effect on specific

3    individuals (those involved in the dispute)." *Yesler Terrace*, 37 F.3d at 448.

4        Here, EPA's grant of waivers to California establishes standards of general and prospective

5    effect. They are not adjudicatory resolutions confined to specific parties. *Yesler Terrace* is

6    instructive: There the Ninth Circuit explained that even decisions addressing particular parties can

7    qualify as rules when they establish standards of general applicability that affect the rights of others.

8    *See* 37 F.3d at 448. In *Yesler Terrace*, the United States Department of Housing and Urban

9    Development (HUD) authorized a state housing authority to use its eviction procedures in place of

10   federally required grievance hearings. HUD argued this was an "order," not a rule. *Id.* But the Ninth

11   Circuit held that HUD's determination bore all the characteristics of a rule because it had a

12   prospective effect, applied broadly, and altered the rights of a class of individuals not yet identified.

13   *Id.* "HUD's determination had no immediate, concrete effect on anyone, but merely permitted [the

14   housing authority] to evict tenants in the future without providing them with informal grievance

15   hearings. At the same time, the determination affected the rights of a broad category of individuals

16   not yet identified." *Id.*

17       So too here. EPA's waivers let California use those standards (and other states that have

18   adopted them under Section 177 of the CAA) in place of federally required emissions standards. It

19   thereby prospectively altered the rights of automakers, constrained consumer choice, and reduced

20   the market for gasoline, diesel, and other liquid fuels.

21       Put simply, Plaintiffs cannot use an *ultra vires* theory to relabel an ordinary interpretive

22   action as unlawful conduct or a failure to follow rulemaking procedures. The doctrine of *ultra vires*

23   review exists to police clear departures from the law. *See, e.g.*, *Nuclear Regul. Comm'n*, 605 U.S.

24   at 680–82. Plaintiffs' failure to identify a "clear and mandatory" duty forecloses this claim.

25       ***APA.*** The APA claim fails for a similar reason. As discussed above, the waivers are rules

26   under the APA definition of "rule." *See supra* pp. 17–18. The APA claims are unreviewable for two

27   additional reasons. First, Plaintiffs cannot avoid the CRA's jurisdictional bar by strategic pleading.

28   Their APA theory is that EPA violated the APA by categorizing the waivers as rules without

comment or following the traditional rulemaking procedure. *See* Am. Compl. ¶¶ 123–38. As *Bernhardt* explains, procedural attacks cannot circumvent the CRA's jurisdictional bar where the ultimate goal is to challenge Congress's final disapproval. *See* 946 F.3d at 564. In *Bernhardt*, the plaintiff challenged the agency's rescission of a rule as not in accord with the procedures set out in the CRA. The court held that even if that argument targeted agency conduct, it was in substance a challenge to congressional action and was barred by § 805. 946 F.3d at 563–64. Here, although Plaintiffs attempt to artfully plead their requested relief as an APA claim and frame their claim as one challenging an underlying procedural issue (EPA's "interpretation"), the requested relief would still invalidate Congress's resolution, *see* Am. Compl. ¶¶ 139–41, which means this claim is unreviewable. At bottom, Plaintiffs challenge EPA's "determination" and "action" under the CRA. As already explained, that claim is thus barred by § 805.

Second, the APA claims are unreviewable because EPA's decision to submit the waivers to Congress under the CRA is not "final agency action" reviewable under the APA. The APA provides for judicial review only of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. In *Bennett v. Spear*, the Supreme Court explained that to be reviewable under the APA, an agency action must satisfy two conditions. It must mark the "consummation" of the agency's decision-making process rather than be merely tentative or interlocutory. 520 U.S. at 178. And it must be one by which "*rights or obligations have been determined or from which legal consequences will flow.*" *Id.* (cleaned up) (emphasis added).

EPA's determination to submit waivers to Congress under the CRA does not meet *Bennett's* second requirement. Although the submission is a procedural step required by statute, it does not itself determine rights or obligations nor create binding legal consequences. Instead, legal consequences flow *only if* Congress then disapproves the rule (which is a final legislative action, not an agency action). The decision to submit is merely a conduit step. *Contra* Am. Compl. ¶ 123 (alleging that the submission to Congress was a final agency action). After all, the waivers remained in effect even after EPA submitted them and were not disapproved until the resolutions were passed and signed into law. The only final agency action was EPA's issuance of the waivers themselves,

1  but the later transmittal by EPA to Congress was procedural—it altered no rights and imposed no

2  obligations. Plaintiffs do not dispute this despite labeling the submission as final agency action.

3        Thus, EPA's submission decision is more like the non-final agency submissions discussed

4  in *Franklin v. Massachusetts*, 505 U.S. 788 (1992), and *Dalton v. Specter*, 511 U.S. 462 (1994). In

5  *Franklin*, the Court held that the Secretary of Commerce's report to the President on the results of

6  the census was not final agency action. *See* 505 U.S. at 798–99. Although the Secretary played a

7  significant role in the apportionment process, the Court reasoned that legal consequences flowed

8  only from the President's subsequent decision to submit the final apportionment to Congress. *See*

9  *id.* at 797–99 (explaining that the legal consequences flowed from the President, not the Secretary,

10  because the President could reject the Secretary's report). Because the President—not the

11  "agency"—made the dispositive legal determination, the challenged report was advisory and non-

12  final. *See id.* at 796–801. Similarly, in *Dalton*, the Court held that the Defense Secretary's

13  recommendations under the Base Closure and Realignment Act were not final because they required

14  presidential approval to take effect. *See* 511 U.S. at 476. Again, legal consequences attached only

15  after the President acted. The agencies' submissions in both cases were essential procedural steps,

16  but neither marked the end of decision-making nor carried legal force on their own. *See id.* at 468–

17  76.

18        Same with EPA's submission here. It was a statutory step that triggered congressional

19  *consideration* under the CRA. It did not create binding rights or obligations and did not determine

20  any legal outcome. The legal consequences—the disapproval of the waiver rules and the resulting

21  prohibition on their reissuance—were achieved by Congress and the President through duly enacted

22  legislation—not EPA. Like the agency actions in *Franklin* and *Dalton*, EPA's decision to submit

23  the waivers functioned as part of a larger decision-making framework in which final legal authority

24  rested elsewhere. Accordingly, Plaintiffs' APA claims should be dismissed.

25        Moreover, Plaintiffs' theory—that EPA's submission of the waiver decisions to Congress

26  was arbitrary and capricious and did not follow the procedures required by law, *see* Am. Compl.

27  ¶ 125—would lead to an untenable result: Any time an agency submits a rule to Congress under the

28  CRA, it would have to conduct full notice-and-comment rulemaking just to determine whether the

20

1    underlying action qualifies as a "rule." That would convert a ministerial statutory step, authorized

2    by Congress, into a separate, reviewable agency rulemaking—expressly contrary to the CRA's text,

3    purpose, and structure. Plaintiffs' reading would gut § 805's bar and create the very judicial review

4    process that Congress expressly foreclosed.

5         ***Separation of Powers.*** Plaintiffs argue that the CRA resolutions violate foundational

6    separation-of-powers principles. *See* Am. Compl. ¶¶ 149–60. They advance two related theories.

7    First, they argue Defendants violated the separation of powers by using legislative action to overturn

8    EPA waiver adjudications, because those waivers constitute case-specific determinations applying

9    existing law—an adjudicatory function reserved to the Executive and Judiciary, not the Legislature.

10   *See id.* ¶¶ 151–54. Second, they claim that Congress unlawfully delegated to the Executive Branch

11   the authority to determine whether the CRA applies at all, by relying on EPA's classification of the

12   waivers as "rules" under 5 U.S.C. § 804(3). *See id.* ¶ 157. They contend this violated Article I,

13   Section 5, which vests each chamber with power to determine its own rules of proceeding. *See id.*

14   ¶¶ 155–58.

15        These theories are wrong at each turn. Congress did not usurp the adjudicatory function of

16   the Executive or Judicial branch. Where Congress acts through the full legislative process, it acts

17   squarely within its constitutional role. *INS v. Chadha*, 462 U.S. 919, 954–55 (1983). That is what

18   happened here. Congress enacted laws under Article I; the President signed those laws. Nothing in

19   the Constitution forbids Congress from legislating in response to agency action or considering

20   agency submissions.

21        Nor did Congress intrude on Article III. Limiting judicial review in this context is not a

22   constitutional flaw. Article III does not guarantee review of every congressional action. *See Patchak*

23   *v. Zinke*, 583 U.S. 244, 254 (2018) (noting that Congress's power to restrain the courts from acting

24   is an essential ingredient in separation of powers). And the CRA leaves untouched the courts'

25   authority to interpret the APA in cases that do not implicate determinations, acts, or omissions under

26   the CRA.

27        It does not matter that the resolutions had consequences for pending regulatory and judicial

28   proceedings. *See* Am. Compl. ¶¶ 153–54. Congress has full authority to override agency actions by

21

1    statute. When it enacts a resolution under the CRA, it replaces the agency's decision with new law,

2    and the action disapproved "shall not take effect (or continue)." 5 U.S.C. § 801(b)(1).

3          The Supreme Court has long held that Congress may enact legislation that affects the

4    outcome of pending cases so long as it changes the law itself, rather than dictating results under

5    preexisting law. For example, in *Robertson v. Seattle Audubon Society*, 503 U.S. 429, 438–41

6    (1992), Congress replaced environmental protections with new statutory provisions that permitted

7    certain logging operations, even though those changes affected ongoing litigation. The Court upheld

8    the statute because it amended the governing law rather than ordering courts to reach a particular

9    result under the old regime. *See id.* at 438. The Court reaffirmed this distinction in *Bank Markazi v.*

10   *Peterson*, 578 U.S. 212, 225–26 & n.17 (2016), explaining that Congress may "amend [] applicable

11   law" even in ways that affect pending litigation, so long as it does not "prescribe [a] rule of decision"

12   in a specific case. That is exactly what happened here. Congress enacted a new law of general

13   applicability through the CRA, withdrawing EPA's waivers and preempting the underlying state

14   law. The fact that the law affects pending litigation does not make it unconstitutional. To the

15   contrary, that is a core feature of Article I lawmaking.

16         Further, *United States v. Klein*, 80 U.S. (13 Wall.) 128 (1872), where the Court held that

17   Congress acted impermissibly, and which was cited in *Bank Markazi*, makes the result here even

18   clearer. *Klein* involved post-Civil War legislation under which persons whose property had been

19   seized during the war could recover funds if they proved they had not aided the rebellion. *Id.* at 131,

20   139. After the statute was enacted, the President pardoned rebels, and the Court held that a

21   presidential pardon operated as a substitute for the proof of loyalty required by the statute. *See*

22   *United States v. Padelford*, 76 U.S. (9 Wall.) 531 (1870). In response, Congress passed a statute

23   forbidding courts from accepting pardons as evidence of loyalty and requiring dismissal of such

24   claims. *Klein*, 13 Wall. at 129. The Court struck down the new law because it altered the legal effect

25   of presidential pardons—an executive power the Constitution commits solely to the President—and

26   directed the judiciary to apply that new interpretation retroactively in pending cases. *Id.* at 147. The

27   statute dictated outcomes under preexisting law without changing the legal rule and thereby intruded

28   on both executive and judicial functions.

1    Nothing like that happened here. Congress did not redefine the legal effect of an executive

2    act, nor did it instruct the judiciary to reach a particular result under existing law. It enacted a

3    resolution, through constitutionally prescribed procedures, to override EPA's prior decisions and

4    prospectively eliminate their legal effect. That is not usurpation. It is legislation. And it fits squarely

5    within the structural design the Framers adopted to separate powers and assign legislative authority

6    to Congress.

7        **Federalism.** Plaintiffs' federalism claim rest on the assertion that Congress's disapproval of

8    California's waivers unlawfully invaded state sovereignty. They allege that the Executive and

9    Legislative Branches ignored established procedures and expert determinations to reclassify past

10   EPA adjudications as rules, thereby triggering CRA procedures that bypassed meaningful debate

11   and state input. This maneuver, they argue, stripped California and other states of regulatory

12   authority without proper process or notice, retroactively altered legal standards, and blocked judicial

13   review. *See* Am. Compl. ¶¶ 161–69.[8]

14       This argument misreads the CAA and misunderstands the States' roles. Although the States

15   play a role in protecting air quality, Congress retains ultimate control over the extent of state

16   authority, given the nationwide implications of any regulation. The CAA expressly preempts state

17   emission standards *unless EPA grants a waiver to California*. *See* 42 U.S.C. § 7543(a)–(b); *see also*

18   *Arizona v. United States*, 567 U.S. 387, 399 (2012) (noting that "state laws are preempted when they

19   conflict with federal law" or when Congress expresses a clear intent to occupy a field). The waiver

20   provision does not grant California an absolute right to regulate emissions or mandate sales of

21   specific types of vehicles through a compliance credit system (the costs of which are borne by

22   consumers nationwide). Rather, it reflects a conditional permission that *depends on* EPA approval

23   and, by extension, congressional oversight of EPA's decisions. Congress may change, limit, or

24   withdraw that permission at any time through valid legislation. Where Congress disapproves a

25   waiver, it exercises its constitutional authority to regulate commerce and set national policy. It is

26

27   ─────────────
     [8] California's complaint brims with colorful allegations about the process Congress and the
28   Executive followed in enacting this legislation, but, as the old adage goes—laws are like sausages;
     it's better not to see them being made.

axiomatic in our federal system that Congress may preempt state law so long as it acts within its enumerated powers. *See* U.S. Const. art. VI, cl. 2; *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000) ("A fundamental principle of the Constitution is that Congress has the power to preempt state law."); *Nat'l Warranty Ins. Co. RRG v. Greenfield*, 214 F.3d 1073, 1076 (9th Cir. 2000).

Plaintiffs mischaracterize the nature of Congress's actions here in disapproving the waivers that the three Resolutions preempted. *See* Am. Compl. ¶¶ 6–7, 165–66. Congress did not strike down state law or override state authority. It invalidated EPA's grant of waivers using procedures Congress itself enacted in the CRA to serve as a democratic check on executive power. The resolutions do not erase state regulations; they nullify federal decisions that had temporarily allowed those regulations to stand. That is an exercise of Congress's constitutional power to regulate commerce and supervise federal agencies.

Last, any attempt through federalism arguments to adjudicate Congress's own procedural rules cannot stand: Congress determines its own rules, without court interference. *See supra* pp. 11–13.

**Violations of Federal Law by Federal Officials.** Plaintiffs also seek to hold federal officials liable for carrying out Congress's resolutions. *See* Am. Compl. ¶¶ 170–79. But implementing a duly enacted statute or performing the Executive's duties under a statute is not unlawful. *See Franklin*, 505 U.S. at 800–01 (courts lack authority to enjoin the President in the performance of discretionary duties); *see also Cmty. House, Inc. v. City of Boise*, 623 F.3d 945, 965 (9th Cir. 2010) ("[W]hen a public official acts in reliance on a duly enacted statute or ordinance, that official is entitled to qualified immunity." (citing *Grossman v. City of Portland*, 33 F.3d 1200, 1210 (9th Cir. 1994))). This count rises or falls with the others. Because the preceding claims fail, so too does this claim.[9]

---

[9] Last, Plaintiffs' Declaratory Judgment count, which is an unreviewable challenge barred by the CRA, *see supra* p. 9, fails for an independent reason—because Plaintiffs' other claims are also unreviewable and otherwise fail, the Declaratory Judgment count cannot stand alone. *See, e.g.*, *SVB Fin. Tr. v. Fed. Deposit Ins. Corp.*, 2025 WL 661599, at *4 (N.D. Cal. Feb. 27, 2025) ("It is well-established that declaratory judgment is not an independent cause of action, but an equitable remedy." (citing *Brown v. Transworld Sys., Inc.*, 73 F.4th 1030, 1038 (9th Cir. 2023) (noting that

1

## CONCLUSION

2    The Proposed Intervenors' Motion to Dismiss should be granted and the Amended

3  Complaint should be dismissed with prejudice.

4       Dated:   November 18, 2025       Respectfully submitted,

5
                                          */s/ Steven P. Lehotsky*
6                                         Steven P. Lehotsky* (DC 992765)
                                          Katherine C. Yarger* (CO 40387)
7                                         Michael B. Schon* (DC 989893)
                                          LEHOTSKY KELLER COHN LLP
8
                                          Bradley A. Benbrook (SBN 177786)
9                                         Stephen M. Duvernay (SBN 250957)
                                          BENBROOK LAW GROUP, PC
10
                                          *Attorneys for Proposed Intervenors American*
11                                        *Fuel & Petrochemical Manufacturers, American*
                                          *Petroleum Institute, and the National Association*
12                                        *of Convenience Stores*

13                                        * Admitted *pro hac vice*

14

15

16

17

18

19

20

21

22

23

24

25

26

27  ───────────────────
    requests for declaratory and injunctive relief are not "stand-alone claims" and "do not survive the
    dismissal" of other claims); *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878 (9th Cir. 2022) ('[T]he
28  Declaratory Judgment Act does not provide an affirmative cause of action where none otherwise
    exists.').").