TONY FRANCOIS (SBN 184100)
BRISCOE PROWS KAO IVESTER & BAZEL LLP
235 Montgomery Street, Suite 935
San Francisco, CA 94104
(415) 402-2700
tfrancois@briscoefirm.com

BRENNA BIRD
Iowa Attorney General
ERIC WESSAN  [*pro hac vice* application to be filed]
Solicitor General
1305 E. Walnut St.
Des Moines, IA 50263
(515) 823-9117
eric.wessan@ag.iowa.gov
***Counsel for Amicus Curiae*, State of Iowa**

## IN THE UNITED STATES DISTRICT COURT
## FOR NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| **STATE OF CALIFORNIA, STATE OF COLORADO, STATE OF DELAWARE, COMMONWEALTH OF MASSACHUSETTS, STATE OF NEW JERSEY, STATE OF NEW MEXICO, STATE OF NEW YORK, STATE OF OREGON, STATE OF RHODE ISLAND, STATE OF VERMONT, and STATE OF WASHINGTON,**<br><br>Plaintiffs,<br>v.<br><br>**UNITED STATES OF AMERICA, U.S. ENVIRONMENTAL PROTECTION AGENCY, LEE ZELDIN, in his official capacity as Administrator of the U.S. Environmental Protection Agency, and DONALD J. TRUMP, in his official capacity as President of the United States**<br><br>Defendants,<br>v.<br><br>**STATE OF TEXAS, *et al.*,**<br><br>Proposed Intervenor-Defendants. | Case No.: 4:25-CV-04966-HSG<br><br>**PROPOSED AMICUS CURIAE STATE OF IOWA AND 22 OTHER STATES AND THE ARIZONA LEGISLATURE MOTION FOR LEAVE TO FILE AMICUS CURIAE BRIEF IN SUPPORT OF DISMISSAL, PROPOSED ORDER GRANTING LEAVE TO FILE AMICUS BRIEF, AND PROPOSED AMICUS BRIEF**<br><br>Judge:       Haywood S. Gilliam, Jr.<br>Date:        January 22, 2026<br>Time:        2:00 p.m.<br>Place:       Courtroom 2 – 4th Floor<br><br>Complaint filed:       June 12, 2025 |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE:** that this Motion to for Leave to file an Amicus Curiae Brief in support of Defendants' Motion to Dismiss.

Pursuant to this Motion, Proposed Amicus Curiae State of Iowa, joined by a coalition of 22 additional States ("Iowa") and the Arizona Legislature, by and through its undersigned counsel, will and hereby does respectfully move the Court to grant leave to file an amicus curiae brief for the following reasons:

- Iowa's Motion for Leave to File Amicus Brief is timely;

- Iowa has a significant interest in this litigation;

- Iowa's brief as a friend of the Court will present a helpful perspective to the Court; and

- Plaintiffs and Defendant have both consented to amicus filings related to this motion to dismiss in the agreed to stipulation and subsequent order.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities herein, all pleadings, records, and papers on file in this action, and such further evidence and argument as may be presented at the hearing.

DATED: November 24, 2025          By: ___/s/ *Tony Francois*_____
                                                      Tony Francois
                                             **BRISCOE PROWS KAO IVESTER & BAZEL LLP**

DATED: November 24, 2025          By: ___/s/ *Eric Wessan*_____
                                                      Eric Wessan
                                             **COUNSEL FOR PROPOSED AMICUS CURIAE, STATE OF IOWA**
                                             ***(Pro Hac Vice application to follow)***

[PROPOSED] ORDER

GOOD CAUSE APPEARING, the State Of Iowa's Motion for Leave To File Amicus Brief is GRANTED.

BY: _____
                    DISTRICT JUDGE

1

2
# TABLE OF CONTENTS

3
TABLE OF CONTENTS ....................................................................................................III

4
TABLE OF AUTHORITIES ............................................................................................. IV

5
STATEMENT OF THE ISSUE ...........................................................................................1

6
STATEMENT OF AMICUS CURIAE.................................................................................2

7
SUMMARY OF ARGUMENT ............................................................................................4

8
ARGUMENT .......................................................................................................................4

9
    I.    Congress Properly Disapproved of EPA's Waiver under the Congressional
10
        Review Act. ............................................................................................................4

11
    II.    This Court Should Dismiss this Case as Moot. .......................................................6

12
    III.    The Constitution Establishes that States have Equal Sovereignty. ...........................7

13
        A.    The Constitutional equal-sovereignty doctrine forbids singling out
            States for special treatment. ...........................................................................7
14

15
        B.    The Clean Air Act violates the equal-sovereignty doctrine by
            allowing California to exercise sovereign authority withdrawn from
16
            every other state. ...........................................................................................11

17
CONCLUSION ....................................................................................................................14

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

3    Cases

4    *City of New York v. Chevron Corp.*,
        993 F.3d 81 (2d Cir. 2021).................................................................................................. 18

5    *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*,
        482 F.3d 1157 (9th Cir. 2007).............................................................................................. 9

6    *Corrie v. Caterpillar, Inc.*,
        503 F.3d 974 (9th Cir. 2007)............................................................................................... 10

7    *Coyle v. Smith*,
        221 U.S. 559 (1911)................................................................................................... 11, 16

8    *Ctr. for Biological Diversity v. Bernhardt*,
        946 F.3d 553 (9th Cir. 2019)............................................................................................ 4, 8

9

10   *Diamond Alt. Energy, LLC v. EPA*,
        145 S. Ct. 2121 (2025)......................................................................................................... 4

11   *Franchise Tax Bd. v. Hyatt*,
        578 U.S. 171 (2016)........................................................................................................... 11

12   *Franchise Tax Bd. v. Hyatt*,
        587 U.S. 230 (2019)........................................................................................................... 11

13   *Freytag v. Comm'r*,
        501 U.S. 868 (1991)........................................................................................................... 12

14   *Garcia v. Lawn*,
        805 F.2d 1400 (9th Cir. 1986).............................................................................................. 9

15   *Hoptowit v. Ray*,
        682 F.2d 1237 (9th Cir. 1982).............................................................................................. 1

16   *Japan Whaling Ass'n v. Am. Cetacean Soc'y*,
        478 U.S. 221 (1986)........................................................................................................... 10

17

18   *McCulloch v. Maryland*,
        17 U.S. 316 (1819)...................................................................................................... 16, 17

19   *Miller-Wohl Co. v. Comm'r of Lab. & Indus. State of Mont.*,
        694 F.2d 203 (9th Cir. 1982)................................................................................................ 2

20   *Morrison v. Olson*,
        487 U.S. 654 (1988)........................................................................................................... 11

21   *Murphy v. Nat'l Collegiate Athletic Assoc.*,
        584 U.S. 453 (2018)........................................................................................................... 12

22   *NetChoice v. Bonta*,
        2023 WL 6131619 (N.D. Cal. Sept. 18, 2023).................................................................. 1, 2

23   *Nevada v. Watkins*,
        943 F.2d 1080 (9th Cir. 1991).............................................................................................. 9

24   *New York v. United States*,
        505 U.S. 144 (1992)........................................................................................................... 12

25

26   *Nw. Austin Mun. Util. Dist. No. One v. Holder*,
        557 U.S. 193 (2009)........................................................................................................... 15

27   *Parker Drilling Mgmt. Servs., Ltd. v. Newton*,
        587 U.S. 601 (2019)........................................................................................................... 16

28   *Pollard v. Hagan*,

44 U.S. 212 (1845) .................................................................................................... 14

*Sandin v. Conner*,
  515 U.S. 472 (1995) ............................................................................................... 1

*Sec'y of Agric. v. Cent. Roig Ref. Co.*,
  338 U.S. 604 (1950) ............................................................................................. 16

*Seila Law LLC v. CFPB*,
  591 U.S. 197 (2020) ............................................................................................. 12

*Shelby County, Ala. v. Holder*,
  570 U.S. 529 (2013) ............................................................................... 14, 15, 17

*South Carolina v. Katzenbach*,
  383 U.S. 301 (1966) ............................................................................................. 15

*State ex rel. Webber v. Felton*,
  84 N.E. 85 (Ohio 1908) ...................................................................................... 15

*United States v. State of Texas*,
  339 U.S. 707 (1950) ....................................................................................... 16, 17

Statutes

5 U.S.C. § 801 ..................................................................................................... 4, 6, 7
5 U.S.C. § 802 ............................................................................................................ 7
5 U.S.C. § 805 ..................................................................................................... 8, 10
42 U.S.C. § 7543 .................................................................................................... 3, 5
U.S. Const., amend. 15, § 2 .................................................................................... 14

**STATE OF IOWA'S MOTION FOR LEAVE TO FILE AMICUS BRIEF**          4:25-CV-04966-HSG

1

## STATEMENT OF THE ISSUE

2      This matter concerns certain waivers previously granted to Plaintiff State of California under

3  the Clean Air Act. Recently, invoking the Congressional Review Act, Congress adopted, and on

4  June 12, 2025, Defendant President Donald J. Trump signed, resolutions disapproving California's

5  waivers under the Act. The same day, California and the other States filed a complaint challenging

6  Congress's enactment that reviewed and disapproved the waivers.

7      The Northern District of California has recognized that the "district court has broad

8  discretion to appoint amici curiae." *NetChoice v. Bonta*, 2023 WL 6131619, at *1 (N.D. Cal. Sept.

9  18, 2023) (quoting *Hoptowit v. Ray*, 682 F.2d 1237, 1260 (9th Cir. 1982), *abrogated on other*

10  *grounds by Sandin v. Conner*, 515 U.S. 472 (1995)). "There are no strict prerequisites to qualify as

11  amici." *Id.* (quotation omitted). "Amici need show only that their participation is useful to the court."

12  *Id.* And the "'classic role' of amici curiae encompasses 'assisting in a case of general public interest,

13  supplementing the efforts of counsel, and drawing the court's attention to law that escaped

14  consideration.'" *Id.* (quoting *Miller-Wohl Co. v. Comm'r of Lab. & Indus. State of Mont.*, 694 F.2d

15  203, 204 (9th Cir. 1982)).

16      Here, the States present a unique viewpoint and offer a short explanation as to why the

17  Motion to Dismiss should be granted. The States move to file an amicus curiae brief, through this

18  timely motion, because many States challenged and have ongoing litigation against the now-

19  rescinded waivers. The States move to play the classic role of friend of the Court to raise awareness

20  of the potential implications of a ruling here.

21

22

23

24

25

26

27

28

STATE OF IOWA'S MOTION FOR LEAVE TO FILE AMICUS BRIEF                4:25-CV-04966-HSG

## STATEMENT OF AMICUS CURIAE

What Congress gives, Congress may take away. Congress, in the Clean Air Act, tasked the Environmental Protection Agency with setting federal standards for new motor vehicle emissions. Every State was thereby preempted from developing its own emissions standards—every State, that is, but California. The Act permits EPA to grant a state waiver—in this case, it went to California—to enact vehicle emission standards more stringent than those imposed by the federal government. *See* 42 U.S.C. § 7543(b)(1). The forty-nine other States must either follow the federal government's standards or California's. That is, States other than California must either submit to EPA's one-size-fits-all federal regulatory scheme for vehicle emissions or adopt California's more demanding scheme. But the sole supposed purpose of giving California this unique—and likely unconstitutional as applied here—authority is to address local air pollution problems in California.

Given this awesome grant of authority under the Act, California sought to use its authority to the fullest extent by banning new internal-combustion-engine vehicles and requiring so-called "zero-emission" vehicles. *See* Office of Gov. Gavin Newsom, Exec. Order N-79-20 (Sept. 23, 2020), https://perma.cc/VK64-G93C. Specifically, EPA issued waivers for three California programs enacted to allow Governor Newsom's Executive Order, as implemented by the California Air Resources Board, to set the following three standards: (1) Advanced Clean Cars II, *see* Cal. Code Regs. tit. 13, § 1962.4, (2) Advanced Clean Trucks, *id*. §§ 1963.1, 1963.2, and (3) Omnibus Low NOx ("Omnibus") Program. *id.* § 1956.8. All three are at issue in this lawsuit.

While California can set its own standard, the Clean Air Act allows other States to opt-in to California's standard. And because there is a national market for cars and trucks, California's actions reverberate across the country. So States and industry members challenged each of those waivers in lawsuits across the country. *See, e.g.*, *Iowa v. EPA*, 23-1144 (D.C. Circuit) (challenging Advanced Clean Trucks standard); *Ohio v. EPA*, 22-1081 (D.C. Circuit) (challenging Advanced Clean Cars standard). And as part of those challenges, the petitioners highlighted the Act's unconstitutionality.

Perhaps recognizing the unconstitutional basis of these EPA waivers, Congress acted. *See* 5 U.S.C. §§ 801–07; *see, e.g.*, H.J. Res. 87, 119th Cong. (2025) (enacted as Pub. L. No. 119-15, 139 Stat. 65 (June 12, 2025)). It acted by disapproving the three waivers, issued in January 2025, just weeks before President Biden left office and months after President Trump won the election

**STATE OF IOWA'S MOTION FOR LEAVE TO FILE AMICUS BRIEF**          **4:25-CV-04966-HSG**

promising to stop issuing this type of waiver. *See* California State Motor Vehicle and Engine Pollution Control Standards; Advanced Clean Cars II; Waiver of Preemption; Notice of Decision, 90 Fed. Reg. 642 (Jan. 6, 2025) ("ACC II Waiver"); California State Motor Vehicle and Engine and Nonroad Engine Pollution Control Standards; The "Omnibus" Low NOX Regulation; Waiver of Preemption; Notice of Decision, 90 Fed. Reg. 643 (Jan. 6, 2025) ("Omnibus Waiver").

Using a decades-old but rarely used procedural mechanism by which Congress can exercise oversight over particularly problematic decisions from executive agencies it created, Congress revoked the three waivers, including the waiver for the Omnibus program. The President signed all three revocations. And when Congress passes, and the President signs, a "joint resolution" of disapproval, then the rule "shall not . . . continue," and the rule "may not be reissued in substantially the same form." 5 U.S.C. § 801(b). The joint resolution becomes federal law. *See Ctr. for Biological Diversity v. Bernhardt*, 946 F.3d 553, 562 & n.6 (9th Cir. 2019); *see also Diamond Alt. Energy, LLC v. EPA*, 145 S. Ct. 2121, 2131 (2025) (This "legislation . . . block[s] [these] California regulations.").

Given Congress's rebuke, California filed this Hail Mary lawsuit seeking to reinstate its revoked waivers. California's efforts must fail.

That is why the undersigned amici curiae States file this amicus brief in support of dismissal.

## **BACKGROUND**

The Clean Air Act preempts States from enacting their own vehicle emissions standards. *See* 42 U.S.C. § 7543(a) (broadly prohibiting States and their subdivisions from enforcing "any standard related to the control of emissions from new motor vehicles" or their engines, or other related regulations). That preemption approach has a carve out that allows California—and only California—to establish its own emissions standards if "the State determines that the State standards will be, in the aggregate, at least as protective of public health and welfare as applicable by Federal standards." 42 U.S.C. § 7543(b)(1). While written as if it could apply to all States, only States that "adopted standards . . . for the control of emissions . . . prior to March 30, 1966" are eligible for that carve out. *Id.* Only one state qualifies: California. That said, if California applies for and receives a waiver under that carve-out, then any State complying with California's standards will be treated "as compliance with applicable federal standards." 42 U.S.C. § 7543(b)(3).

California sought and received three waivers relevant here: (1) Advanced Clean Cars II, *see*

Cal. Code Regs. tit. 13, § 1962.4, (2) Advanced Clean Trucks, *id*. §§ 1963.1, 1963.2, and (3) Omnibus Low NOx ("Omnibus") Program. *id*. § 1956.8. And Congress asserted its authority under the Congressional Review Act to disapprove of those waivers—in effect, revoking them. *Infra* Argument I.

This lawsuit rises from California seeking to undo the waiver recissions. Amici States weigh in to give their perspective on why California's case should be dismissed.

## SUMMARY OF ARGUMENT

1. Congress may enact a law under the Congressional Review Act stopping federal rules, like EPA's waivers, from continuing in effectiveness.

2. This case is only moot if Congress's enactment is effective—and it is.

3. The equal-sovereignty doctrine made the initial waivers illegal and revoking an illegal waiver cannot itself be illegal.

## ARGUMENT

### I.    Congress Properly Disapproved of EPA's Waivers under the Congressional Review Act.

Faced with California's unprecedent war on liquid-fuel-powered vehicles, Congress responded to EPA's post-election waivers with disapproval. EPA's waivers allowed California, and the eleven other States that opted to follow California's rules, to effectively ban internal-combustion engine cars and light trucks over time.

Congress responded. It brushed off a decades-old tool known as the Congressional Review Act to help the auto and truck industries focus on their core strengths: producing the cars and trucks Americans want. And not focusing on what the Government sometimes wants: electrification without market justification.

The Congressional Review Act (or "CRA") establishes an expedited legislative procedure for Congress to review, and ultimately nullify, rules issued by federal agencies. Pub. L. No. 104-121, § 251, 110 Stat. 847, 868–74 (1996), codified at 5 U.S.C. §§ 801–808. If Congress passes, and the President signs, a "joint resolution" of disapproval of an agency's rule, then the rule "shall not take effect (or continue)," and the rule "may not be reissued in substantially the same form" unless

"specifically authorized by a law enacted after the date of the joint resolution." 5 U.S.C. § 801(b). The joint resolution is federal law, enacted in accordance with the constitutional requirements of bicameralism and presentment. One feature of the CRA is that joint resolutions are put on a legislative fast track that is exempt from the Senate's ordinary filibuster rule and that limits the motions that Senators may raise. 5 U.S.C. § 802(d).

The CRA requires federal agencies to "submit to each House of the Congress and to the Comptroller General" each rule it promulgates, along with a report that includes "a concise general statement relating to the rule." 5 U.S.C. § 801(a)(1)(A). Once Congress receives the rule, it generally has 60 days to introduce a joint resolution if it wishes to "disapprove" of it. *Id.* § 802(a).

When an agency fails to submit a rule to Congress, Congress has alternatives for how to review a rule—should it want to. One approach is to ask the Government Accountability Office for an opinion on whether the agency action is a rule for Congressional Review Act purposes. If it is, Congress tends to use publication of the GAO's opinion in the Congressional Record as the date to start the 60-day timer. Maeve P. Carey & Christopher M. Davis, Cong. Rsch. Serv., R43992, *The Congressional Review Act (CRA): Frequently Asked Questions* 12–13 (updated Nov. 12, 2021). GAO's rule is not laid out in statute or code; this informal approach is meant to be helpful and is purely advisory because the Congressional Review Act leaves to Congress the question of "whether" CRA disapproval applies. GAO, B-325553, *GAO's Role and Responsibilities Under the Congressional Review Act* 9 (May 29, 2014) ("GAO Letter B-32552").

One concern raised by Plaintiffs—including California—is that EPA did not submit its waivers, including the Omnibus Waiver, to Congress. Because of that failure, they contend, the statutory 60-day timer did not start until the EPA transmitted the waivers to Congress, which did not occur until *after* EPA concluded that the waivers were rules subject to the Congressional Review Act. *See* 171 Cong. Rec. S1311 (daily ed. Feb. 24, 2025) (EC-439, EC-440, EC-441); 171 Cong. Rec. H875 (daily ed. Feb. 26, 2025) (EC-484, EC-485, EC-486); 171 Cong. Rec. H1035 (daily ed. Mar. 6, 2025) (EC-518, EC-519, EC-520); 171 Cong. Rec. S1871 (daily ed. Mar. 26, 2025) (EC-660, EC-661, EC-662).

After some internal Congressional procedural wrangling, resolutions of disapproval for all three waivers were introduced in the U.S. House of Representatives. By May 1, 2025, the House

had passed all three Resolutions with bipartisan majorities, including 35 Democratic House members, voting to repeal the ACC II Waiver. Roll Call 114 | Bill Number: H.J. Res. 88, U.S. House of Representatives (May 1, 2025), *see* https://perma.cc/46A6-JNK3.

Next, the Senate moved to consider the three Resolutions by majority vote. On May 22, the Senate voted to adopt all three. The Senate's disapproval of the ACC II Waiver was also bipartisan, with Senator Elissa Slotkin voting with Senate Republicans. Roll Call Vote Summary on H.J. Res. 88, U.S. Senate (May 22, 2025), *see* https://perma.cc/B4X7- YA4U. On June 12, President Trump signed the Resolutions into law. Pub. L. No. 119-15, 139 Stat. 65 (2025); Pub. L. No. 119-16, 139 Stat. 66 (2025); Pub. L. No. 119-17, 139 Stat. 67 (2025).

This should have ended the saga of EPA's waivers purporting to allow for, effectively, the widespread banning of internal-combustion powered cars. Not only is a joint disapproval conclusive and prohibitive of the agency rule, but a joint resolution is, by law, unreviewable. Specifically, the Congressional Review Act strips jurisdiction from courts to hear challenges to laws enacted under its authority: "No determination, finding, action, or omission under this chapter shall be subject to judicial review." 5 U.S.C. § 805. "On its face, this language bars judicial review of all challenges to actions under the CRA, including constitutional challenges." *Ctr. for Biological Diversity*, 946 F.3d at 561.

Yet despite this, Plaintiffs challenged all three CRA disapprovals.

## II.    This Court Should Dismiss this Case.

Plaintiffs want this Court to undo Congress's action. There are many reasons why this Court should decline that invitation. Indeed, there are several preceding grounds that deprive this Court of jurisdiction. For example, one reason that this challenge must fail is the political question doctrine. Another is standing—at least as it pertains to redressability. This Court cannot grant "'any effective relief' to [Plaintiffs] if [it] were to rule in its favor on the merits." *Nevada v. Watkins*, 943 F.2d 1080, 1083 (9th Cir. 1991) (citing *Garcia v. Lawn*, 805 F.2d 1400, 1402 (9th Cir. 1986)).

In an analogous circumstance, the Ninth Circuit held that if "legislation passing constitutional muster is enacted while a case is pending on appeal that makes it impossible for the court to grant any effectual relief, the appeal must be dismissed as moot." *Consejo de Desarrollo*

*Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1168 (9th Cir. 2007).

So too here. Congress has passed a Congressional Review Act law that disapproves and vacates the Omnibus Waiver. Without closing the door to challenging Congressional Review Act abrogation in other circumstances, here there are no nonfrivolous challenges to Congress's abrogation of that waiver. This challenge raises separation of powers issues. And any challenges to that waiver run headlong into the Congressional Review Act's jurisdiction stripping. *See* 5 U.S.C. § 805; *see also Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 980–81 (9th Cir. 2007) ("[P]olitical question[s] deprive[] a court of subject matter jurisdiction."); *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 (1986) (political questions "revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch.").

This Court should simply dismiss Plaintiffs' challenge. Indeed, any challenges to the Congressional Review Act disapprovals risks resuscitating dead claims. And that could very well prejudice parties that rely on Congress and their authority in dismissing challenges to rules they believe were properly vacated by Congress lawfully applying the Congressional Review Act. 3, 1179 (9th Cir. 2011).

### III.    The Clean Air Act Violates the Equal Sovereignty Doctrine Insofar As It Preempts State Laws Unequally, the EPA's Waivers Are Thus Unlawful.

#### A.    The Constitutional equal-sovereignty doctrine forbids singling out States for special treatment.

The United States of America "was and is a union of States, equal in power, dignity, and authority, each competent to exert that residuum of sovereignty not delegated to the United States by the Constitution itself." *Coyle v. Smith*, 221 U.S. 559, 567 (1911). Indeed, "'constitutional equality' among the States," can be found in the U.S. Constitution's text and structure. *Franchise Tax Bd. v. Hyatt*, 578 U.S. 171, 179 (2016) (citation omitted). Equal sovereignty of the States, while "not spelled out in the Constitution," is "nevertheless implicit in its structure and supported by historical practice." *Franchise Tax Bd. v. Hyatt*, 587 U.S. 230, 247 (2019).

1    While the separation of powers is often described as checks and balances between the three

2    branches of federal government, that concept also plays a role in federalism—the respect between

3    the federal government and States and between the States themselves. The equal-sovereignty

4    doctrine thus accords with the "separation of powers," which the Framers viewed "as the absolutely

5    central guarantee of a just Government." *Morrison v. Olson*, 487 U.S. 654, 697 (1988) (Scalia, J.,

6    dissenting).

7    Moreover, separation of powers depends as much on "preventing the diffusion" of power as

8    it does on stopping the centralization of power. *Freytag v. Comm'r*, 501 U.S. 868, 878 (1991). After

9    all, to avoid "a gradual concentration" of governmental authority in either the States or federal

10   government, or within a particular branch of the federal government, *see The Federalist* No. 51,

11   p.349 (James Madison) (Jacob Cooke ed., 1961), the States and the federal branches must retain the

12   power the Constitution assigns to them. *See Seila Law LLC v. CFPB*, 591 U.S. 197, 223–24 (2020).

13   The equal-sovereignty doctrine thus works to preserve this constitutional balance. It allows

14   Congress to enact preemptive laws, which necessarily limit State sovereignty, but prevents Congress

15   from selectively limiting State sovereignty or, even worse, targeting or discriminating against

16   specific States. "[T]he Framers explicitly chose a Constitution that confers upon Congress the power

17   to regulate individuals, not States." *New York v. United States*, 505 U.S. 144, 166 (1992); *see also*

18   *Murphy v. Nat'l Collegiate Athletic Assoc.*, 584 U.S. 453, 471 (2018).

19   As such, no State should be subjected to disparate treatment of its sovereign authority. But

20   the EPA waivers to California allows California—and California alone—to effectively mandate

21   motor vehicle emission standards. Due to both the national market and the Clean Air Act allowing

22   other States to join California's alternative standards, Automobile manufacturers have shown they

23   are not willing to produce two sets of vehicles for sale within the United States. Instead, they want

24   "nationwide regulatory certainty and a remit from the possibility of a 'patchwork quilt' of numerous

and differing state-level regulatory programs for emissions from newly manufactured motor vehicles or newly manufactured motor vehicle engines. Congressional Research Service, *California and the Clean Air Act (CAA) Waiver: Frequently Asked Questions* at 3 (May 9, 2025), https://perma.cc/C98Y-Z23E. Thus, regardless of whether any of California's sister States opt in to California's draconian standards, those standards would become the de facto national standard governing our nation's automobile industry. Indeed, the California Air Resources Board has explained that California's intent when adopting the emissions standards at issue here was to create "an alternative path forward for clean vehicle standards nationwide" that circumvents federal standards. Press Release, *California and major automakers reach groundbreaking framework agreement on clean emission standards*, Cali. Air Res. Bd. (July 25, 2019) https://perma.cc/2PP8-63RJ.

California's policies also affect other States because they purchase many vehicles and so California's actions could limit the vehicles available to States. Regardless, the California Waivers, impermissibly limit the authority and sovereignty of sister States.

Every State, as a matter of "the constitution" and "laws" of admission is "admitted into the union on an equal footing with the original states." *Pollard v. Hagan*, 44 U.S. 212, 229 (1845). No State may be admitted on either more or less favorable terms than others.

The Supreme Court most recently confirmed that the equal-sovereignty doctrine limits Congress's power to unequally burden the States' sovereign authority in *Shelby County, Ala. v. Holder*, 570 U.S. 529, 544–45 (2013). *Shelby County* challenged the Voting Rights Act's imposition on only some States of the duty to obtain federal permission before amending their election laws. *Id.* So Section 4 of the Voting Rights Act, which contained the formula used to decide which States needed federal preclearance before changing their election laws, was unconstitutional.

Moreover, *Shelby County* held that section 4 of the Voting Rights Act exceeded Congress's

authority under the Fifteenth Amendment, which empowers Congress to pass "appropriate legislation" enforcing the Amendment's prohibition on denying or abridging the right to vote based on race. U.S. Const., amend. 15, § 2; *see Shelby Cnty.*, 570 U.S. at 536. In deciding whether such legislation was "appropriate," courts must consult the background principle of equal sovereignty. *Shelby Cnty.*, 570 U.S. at 536. When legislation departs from that principle—as Section 4 did, by unequally limiting the States' power to adopt and enforce election laws—it will be upheld as "appropriate legislation" only if the disparate treatment is justified. *Shelby Cnty.*, 570 U.S. at 544–45, 552; *accord Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 203 (2009). Because the federal government failed to justify Section 4's differential treatment of States, Congress had no authority to enact that provision. *Shelby Cnty.*, 570 U.S. at 551–55.

*Shelby County* shows the equal-sovereignty doctrine's strength and importance within our constitutional structure. Even with the Fifteenth Amendment's explicit grant of authority to Congress, Section 4, without a solid rationale undergirding discriminating against certain States, could not survive. *See South Carolina v. Katzenbach*, 383 U.S. 301, 329 (1966); *Shelby Cnty.*, 570 U.S. at 551–55. Still, considering the background presumption of equal sovereignty, legislation under the authority of the Fifteenth Amendment that departs from the equal-sovereignty baseline is "appropriate" only if the need for such differential treatment is solidly grounded in evidence. *Shelby Cnty.*, 570 U.S. at 554. If the equal-sovereignty doctrine retains some strength even in contexts where the States lack complete sovereign equality, it ipso facto endures in contexts where the States have *not* lost any entitlement to sovereign equality.

The equal-sovereignty doctrine is not unlimited. The Constitution guarantees "equal sovereignty, not . . . equal treatment in all respects." Thomas Colby, *In Defense of the Equal Sovereignty Principle*, 65 Duke L. J. 1087, 1149 (2016) (emphasis omitted). To demand that every law benefit every State equally "would make legislation impossible and would be as wise as to try

to shut off the gentle rain from heaven because every man does not get the same quantity of water." *State ex rel. Webber v. Felton*, 84 N.E. 85, 88 (Ohio 1908).

The equal-sovereignty doctrine demands "parity" only "as respects political standing and sovereignty." *United States v. State of Texas*, 339 U.S. 707, 716 (1950), *superseded by statute on other grounds recognized by Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 587 U.S. 601, 606 (2019). Congress may not unequally limit or expand the States' "political and sovereign power," *id.* at 719 and must instead adhere to the principle that no State is "less or greater . . . in dignity or power" than another, *Coyle*, 221 U.S. at 566.

But differential treatment *unrelated* to a States's core sovereign authority does not violate equal sovereignty. "Congress may devise . . . national policy with due regard for the varying and fluctuating interests of different regions." *Sec'y of Agric. v. Cent. Roig Ref. Co.*, 338 U.S. 604, 616 (1950). In other words, Congress may pass legislation treating States differently, as long as it does not give some States favorable or unfavorable treatment regarding the exercise of their sovereign authority.

Because of the preceding jurisdictional issues, this Court need not resolve that issue here: even if Congress can empower States to exercise authority to regulate State-specific concerns, EPA's waivers applied to a situation in which California has no unique interest and cannot claim that the lack of waiver infringed a core sovereign power.

**B.    The Clean Air Act violates the equal-sovereignty doctrine by allowing California to exercise sovereign authority withdrawn from every other state.**

The Clean Air Act's section 209(a), by preempting State laws setting vehicle emission standards, limits the States' sovereign authority, since the States would have the power to regulate new-car emissions but for section 209(a). After all, the "power of giving the law on any subject whatever, is a sovereign power." *McCulloch v. Maryland*, 17 U.S. 316, 409 (1819). Preemption is permissible—but problems enter the picture when that preemption is selectively applied between

---

**STATE OF IOWA'S MOTION FOR LEAVE TO FILE AMICUS BRIEF**          **4:25-CV-04966-HSG**

the States.

And section 209(a) not only limits State sovereignty, it does so unequally. Section 209(b)(1) allows California, and only California, to obtain a federal waiver that permits it to set vehicle emission standards. While other States may adopt California's standards, California alone may set those standards. California alone retains some of its "sovereign power" to "giv[e] the law" in this area. *McCulloch*, 17 U.S. at 409. Section 209(b) thus creates an "extension of the sovereignty of [California] into a domain of political and sovereign power of the United States from which the other States have been excluded." *Texas*, 339 U.S. at 719–20.

Congress passed section 209 under its Commerce Clause authority. And in ratifying the Commerce Clause, States did not "compromise[] their right to equal sovereignty," Bellia & Clark, *International Law Origins*, 120 Colum. L. Rev. at 938; *see Shelby Cnty.*, 570 U.S. at 551–55. Thus, the Commerce Clause provides no basis for disrupting the States' retained right to equal sovereignty.

At the very least, section 209(b) is unconstitutional as applied to EPA's Clean Air Act waiver. While the equal-sovereignty doctrine may permit laws allowing only some States to regulate issues that only those States face, *see* Bellia & Clark, *supra*, at 26–27, section 209(b) is not that sort of law. Every State contends with the potential downstream effects, including environmental effects, of trucks and other heavy-duty vehicles.

Even accepting a narrow version of the equal-sovereignty doctrine, section 209(b) is unconstitutional. Rather than allow all States with their own unique environmental concerns to seek a waiver, it gives special treatment to only California. The Act forever excludes all other States, no matter if those States face their own localized environmental concerns. That special treatment that cannot be changed other than by Congress amending the statute violates equal sovereignty.

So even if EPA tries to justify section 209(b) as addressing a California-specific air-quality concern, that justification does not suffice here. The waivers purport to allow California to regulate

greenhouse gases as part of the State's effort to curb global climate change. But that is precisely the problem: Congress did not authorize California to solve a California problem. Instead, it created a single-state carve out that allows California to create an alternative system to EPA to address a nationwide or global problem. Courts recognize that the causes and effects of any relevantly alleged climate change are "global," not State-specific, in nature. *City of New York v. Chevron Corp.*, 993 F.3d 81, 88 (2d Cir. 2021). And even if section 209(b) may constitutionally authorize some waiver to allow California to address California-specific issues, it is unconstitutional in its application here because climate change is not just a problem in California.

According to EPA, carbon dioxide and other greenhouse gases produced by human activity "changed the earth's climate." *Causes of Climate Change*, U.S. Environmental Protection Agency, *see* https://perma.cc/WR4F-TFDP. EPA also contends that greenhouse gases "remain in the atmosphere long enough to become well mixed, meaning that the amount that is measured in the atmosphere is roughly the same all over the world, regardless of the source of the emissions." *Overview of Greenhouse Gases*, U.S. Environmental Protection Agency, https://perma.cc/5777-TJRN. So nothing California-specific there.

Indeed, EPA has never disturbed its finding that California's standards "will not meaningfully address global air pollution problems of the sort associated with [greenhouse-gas] emissions." 84 Fed. Reg. at 51,349. Nor did it make any new finding in this waiver decision.

There is no evidence even that California will suffer effects from climate change that are worse than those experienced by other States. EPA's own projections contend that temperature changes are projected to be greater in the Northeast. *See Climate Change and Social Vulnerability in the United States* 12, EPA (Sept. 2021), *see* https://perma.cc/5VAE-9VLG. So EPA believes that sea-level rise is projected to affect New York, Houston, and Philadelphia more than coastal California cities. *Id.* at 14. So too with the effects of automotive pollution. EPA contends that

STATE OF IOWA'S MOTION FOR LEAVE TO FILE AMICUS BRIEF                  4:25-CV-04966-HSG

changes in particulate matter will more likely affect the Southeast. *Id*. at 22.

The bottom line: "Climate change affects all Americans." *Id*. at 4. California is not uniquely challenged and its interest in slowing global climate change cannot justify a departure from the constitutional principle of equal State sovereignty. Nor can it justify an ex post attempt to maintain a waiver granted unconstitutionally by the EPA.

\* \* \*

In sum, the equal sovereignty of the States forbids Congress from giving California alone the power to regulate a global risk faced by every State in the country and by every nation on Earth. And so what Congress did in disapproving the waivers must be lawful on the merits—if this Court chooses to reach that issue.

## <u>CONCLUSION</u>

This Court should grant Defendants' motion to dismiss.

DATED: November 24, 2025                 By: ___/s/ *Tony Francois*_____
                                                                Tony Francois
                                                                **BRISCOE PROWS KAO IVESTER & BAZEL LLP**

DATED: November 24, 2025                 By: ___/s/ *Eric Wessan*_____
                                                                Eric Wessan
                                                                **COUNSEL FOR PROPOSED AMICUS CURIAE, STATE OF IOWA**
                                                                ***(Pro Hac Vice application to follow)***

1

<u>**ADDITIONAL ATTORNEYS GENERAL AND THE**</u>
<u>**ARIZONA LEGISLATURE IN SUPPORT**</u>

2

3
Steve Marshall
Attorney General of Alabama

4
Stephen J. Cox
Attorney General of Alaska

5

6
Tim Griffin
Attorney General of Arkansas

7
James Uthmeier
Attorney General of Florida

8

9
Chris Carr
Attorney General of Georgia

10
Raúl R. Labrador
Attorney General of Idaho

11

12
Theodore E. Rokita
Attorney General of Indiana

13
Kris Kobach
Attorney General of Kansas

14

15
Liz Murrill
Attorney General of Louisiana

16
Lynn Fitch
Attorney General of Mississippi

17

18
Catherine Hanaway
Attorney General of Missouri

19
Austin Knudsen
Attorney General of Montana

20

21
Michael T. Hilgers
Attorney General of Nebraska

22
Drew Wrigley
Attorney General of North Dakota

23

24
Gentner Drummond
Attorney General of Oklahoma

25
Alan Wilson
Attorney General of South Carolina

26

27
Marty Jackley
Attorney General of South Dakota

28
Jonathan Skrmetti

**STATE OF IOWA'S MOTION FOR LEAVE TO FILE AMICUS BRIEF**          **4:25-CV-04966-HSG**

Attorney General of Tennessee

Derek E. Brown
Attorney General of Utah

Jason S. Miyares
Attorney General of Virginia

John B. McCuskey
Attorney General of West Virginia

Keith G. Kautz
Attorney General of Wyoming

Warren Petersen
President of the Arizona State Senate

Steve Montenegro
Speaker of the Arizona House of Representatives