ANDREW KIM (CA SBN 288925)
andrewkim@goodwinlaw.com
WILLIAM M. JAY (*pro hac vice*)
wjay@goodwinlaw.com
**GOODWIN PROCTER LLP**
1900 N Street, NW
Washington, DC 20036
Tel.: +1 202 346 4000
Fax: +1 202 346 4444

KATAHDIN RENDINO (CA SBN 351915)
KRendino@goodwinlaw.com
**GOODWIN PROCTER LLP**
601 Marshall Street
Redwood City, California 94063
Tel.: +1 650 752 3100
Fax: +1 650 853 1038

Attorneys for Amicus Curiae

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| STATE OF CALIFORNIA, STATE OF COLORADO, STATE OF DELAWARE, COMMONWEALTH OF MASSACHUSETTS, STATE OF NEW JERSEY, STATE OF NEW MEXICO, STATE OF NEW YORK, STATE OF OREGON, STATE OF RHODE ISLAND, STATE OF VERMONT, and STATE of WASHINGTON,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, U.S. ENVIRONMENTAL PROTECTION AGENCY, LEE ZELDIN, in his official capacity as Administrator of the U.S. Environmental Protection Agency, and DONALD J. TRUMP, in his official capacity as President of the United States,<br><br>Defendants. | Case No. 4:25-cv-04966-HSG<br><br>**BRIEF OF *AMICUS CURIAE* THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA IN SUPPORT OF MOTION TO DISMISS**<br><br>Date:        January 29, 2026<br>Time:       2:00 p.m. PST<br>Courtroom: 2, 4th Floor Oakland Courthouse<br>Judge:      Hon. Haywood S. Gilliam, Jr. |

# TABLE OF CONTENTS

Page

IDENTITY AND INTEREST OF *AMICUS*...................................................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................2

ARGUMENT.................................................................................................................................4

    I.    Plaintiffs' Constitutional Challenge To Legislative Procedure Raises No Justiciable Question. ...........................................................................................................................4

        A.    Plaintiffs do not dispute that Congress has power under Article I of the Constitution to preempt California law and disapprove exceptions to the Clean Air Act..................................4

        B.    Plaintiffs cannot sue to invalidate legislation based on their disagreement with Congress's interpretation of its own rules..................................................................................6

        C.    The claims against the executive officials based on transmitting the waivers to Congress are nonjusticiable. ........................................................................................................8

    II.    The Senate Correctly Concluded That the Agency Actions At Issue in This Case Are Rules Under the Congressional Review Act. .........................................................................9

CONCLUSION ...........................................................................................................................13

CERTIFICATE OF SERVICE ...................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**U.S. Constitution:**

U.S. Const. art. I, § 1 .................................................................................................................. 4

U.S. Const. art. I, § 5, cl. 1 .......................................................................................................... 7

U.S. Const. art. I, § 5, cl. 2 .......................................................................................................... 7

U.S. Const. art. I, § 7, cl. 2 .......................................................................................................... 5

**Cases:**

*Batterton v. Marshall*,
    648 F.2d 694 (D.C. Cir. 1980) .............................................................................................. 10

*Bowsher v. Synar*,
    478 U.S. 714 (1986) ............................................................................................................... 8

*Cent. Valley Chrysler-Jeep, Inc. v. Goldstene*,
    529 F. Supp. 2d 1151 (E.D. Cal. 2007) ................................................................................ 12

*Chamber of Com. of U.S. v. EPA.*,
    642 F.3d 192 (D.C. Cir. 2011) ............................................................................................... 2

*Citizens for Const. Integrity v. United States*,
    57 F.4th 750 (10th Cir. 2023) ................................................................................................ 5

*Common Cause v. Biden*,
    748 F.3d 1280 (D.C. Cir. 2014) ......................................................................................... 8, 9

*Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*,
    482 F.3d 1157 (9th Cir. 2007) ............................................................................................... 7

*Ctr. for Biological Diversity v. Bernhardt*,
    946 F.3d 553 (9th Cir. 2019) ......................................................................................... 5, 6, 9

*Diamond Alt. Energy, LLC v. EPA*,
    145 S. Ct. 2121 (2025) ..................................................................................................... 5, 10

*Green Mountain Chrysler Plymouth Dodge Jeep v. Crombie*,
    508 F. Supp. 2d 295 (D. Vt. 2007) ....................................................................................... 12

*Kan. Nat. Res. Coal. v. U.S. Dep't of Interior*,
    971 F.3d 1222 (10th Cir. 2020) ............................................................................................. 6

*La. Pub. Serv. Comm'n v. FCC*,
    476 U.S. 355 (1986) ............................................................................................................... 5

*Marshall Field & Co. v. Clark*,
   143 U.S. 649 (1892) .................................................................................................... 5

*Perez v. Mortg. Bankers Ass'n*,
   575 U.S. 92 (2015) .................................................................................................... 10

*Prutehi Litekyan: Save Ritidian v. U.S. Dep't of Air Force*,
   128 F.4th 1089 (9th Cir. 2025) ................................................................................. 10

*Tenn. Valley Auth. v. Hill*,
   437 U.S. 153 (1978) .................................................................................................... 5

*United States v. Ballin*,
   144 U.S. 1 (1892) ........................................................................................................ 7

*Yesler Terrace Cmty. Council v. Cisneros*,
   37 F.3d 442 (9th Cir. 1994) ................................................................................. 10, 11

**Statutes:**

5 U.S.C. § 551(4) ............................................................................................................ 10

5 U.S.C. § 801(b)(1) ..................................................................................................... 3, 6

5 U.S.C. § 801(f) .............................................................................................................. 2

5 U.S.C. § 802(g) ............................................................................................................. 3

5 U.S.C. § 802(g)(1) ..................................................................................................... 6, 8

5 U.S.C. § 804(3) ........................................................................................................... 10

42 U.S.C. § 7507 ...................................................................................................... 10, 11

42 U.S.C. § 7521(a)(1) ..................................................................................................... 3

Pub. L. No. 115-172, 132 Stat. 1290 (2018) ................................................................... 9

**Federal Register:**

88 Fed. Reg. 20,688 (Apr. 6, 2023) .................................................................................. 3

90 Fed. Reg. 642 (Jan. 6, 2025) ....................................................................................... 3

90 Fed. Reg. 643 (Jan. 6, 2025) ....................................................................................... 3

**Other Authorities:**

*Attorney General's Manual on the Administrative Procedure Act* 13 (1947) ............... 11

iii

Valerie C. Brannon & Maeve P. Carey, Cong. Rsch. Serv., CRS Prod. No. R45248, *The Congressional Review Act: Determining Which "Rules" Must Be Submitted to Congress* (Oct. 22, 2024), available at https://www.congress.gov/crs-product/R45248 .................................................................................................................. 8

Thomas J. Donohue, U.S. Chamber of Commerce, *Little-Known Law Makes a Big Difference* (May 22, 2017), available at https://www.uschamber.com/regulations/little-known-law-makes-big-difference .................. 2

Government Accountability Office, *The Safer Affordable Fuel-Efficient (SAFE) Vehicles Rule Part One: One National Program*, FRL010000-45 (Sep. 27, 2019) available at https://www.gao.gov/fedrules/196015 ........................................................ 12

Letter from Marty Durbin, Senior Vice President of Policy, U.S. Chamber of Commerce, to U.S. Environmental Protection Agency (Sept. 16, 2024), available at https://www.uschamber.com/assets/documents/CA-ACF-Waiver-FINAL_-Sep-2024.pdf ........................................................................................................ 1

Letter from Neil Bradley, U.S. Chamber of Commerce, to Members of the U.S. Senate (May 13, 2025), available at https://www.uschamber.com/assets/documents/250513_Hill_CRA-EPA-PreemptionWaivers_Senate-FINAL.pdf ............................................................... 1, 13

Letter from Russell T. Vought, Director, Office of Management and Budget, to Gene Dodaro, Comptroller General, U.S. Government Accountability Office (June 18, 2025), available at https://www.whitehouse.gov/wp-content/uploads/2025/03/CA-Waiver-Letter-to-GAO.pdf ....................................... 11

Senate Rule XX, Standing Rules of the Senate, S. Doc. No. 113-18 (2013) .............................. 6, 8

Chad Whiteman, U.S. Chamber of Commerce, *Chamber Is Keeping the Focus on Re-Balancing Regulations through CRAs* (Apr. 25, 2025), available at https://www.uschamber.com/regulations/chamber-is-keeping-the-focus-on-re-balancing-regulations-through-cras ....................................................................... 2

# IDENTITY AND INTEREST OF *AMICUS*[1]

The Chamber of Commerce of the United States of America ("Chamber") is the world's largest business federation. It represents approximately 300,000 direct members and indirectly represents the interests of more than three million companies and professional organizations of every size, in every industry sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files *amicus curiae* briefs in cases, like this one, that raise issues of concern to the nation's business community.

The Chamber is interested in protecting Congress's authority to act under the Congressional Review Act ("CRA") to disapprove of agency actions such as the three decisions of the Environmental Protection Agency ("EPA") that are at issue in this litigation. The EPA decisions, known as "waivers" because they waive the ordinary operation of preemption under the Clean Air Act ("CAA"), concern regulations adopted by California and by other states that would effectively ban sales of internal combustion engine-powered cars and trucks. These measures have far-reaching consequences for a wide range of the Chamber's members.

The Chamber has publicly opposed the preemption waivers, and supported the corresponding CRA disapproval resolutions, that are at issue here. *See, e.g.*, Letter from Marty Durbin, Senior Vice President of Policy, U.S. Chamber of Commerce, to U.S. Environmental Protection Agency (Sept. 16, 2024)[2]; Letter from Neil Bradley, U.S. Chamber of Commerce, to Members of the U.S. Senate (May 13, 2025) ("Disapproval of the rules [under the CRA] is essential to ensuring a unified national vehicle marketplace that promotes continued progress on fuel economy while safeguarding economic growth and consumer interests.").[3] More generally, the Chamber is no stranger to the CRA. It has supported a number of congressional decisions to

---

[1] No counsel for any party authored this brief in whole or in part and no entity or person, aside from the Chamber, its members, or its counsel, made any monetary contribution intended to fund the preparation or submission of this brief. The Chamber is simultaneously filing a motion for leave to submit this *amicus* brief.

[2] Available at https://www.uschamber.com/assets/documents/CA-ACF-Waiver-FINAL_-Sep-2024.pdf.

[3] Available at https://www.uschamber.com/assets/documents/250513_Hill_CRA-EPA-Preemption Waivers_Senate-FINAL.pdf.

disapprove administrative action using CRA joint resolutions. *See, e.g.*, Chad Whiteman, U.S. Chamber of Commerce, *Chamber Is Keeping the Focus on Re-Balancing Regulations through CRAs* (Apr. 25, 2025)[4] (calling for disapproval of the EPA actions at issue in this litigation, as well as actions by the Consumer Financial Protection Bureau, the Department of Energy, and the Federal Trade Commission); Thomas J. Donohue, U.S. Chamber of Commerce, *Little-Known Law Makes a Big Difference* (May 22, 2017)[5] (summarizing CRA disapproval resolutions enacted by Congress in 2017 with the Chamber's support). The Chamber has also participated as a party or *amicus* in a number of judicial challenges to EPA waiver decisions—and would likely need to participate in more such challenges if Congress were hindered in disapproving waiver decisions under the CRA. *See, e.g.*, *Western States Trucking Ass'n, Inc. v. EPA*, No. 23-1143, 2023 WL 7548089 (D.C. Cir. Nov. 13, 2023) (amicus brief); *Chamber of Com. of U.S. v. EPA*, 642 F.3d 192 (D.C. Cir. 2011) (decision in case where Chamber was petitioner).

As set forth in the motion for leave to file that accompanies this brief, the Chamber is well positioned to advise the Court on these issues, and this *amicus* brief will aid the Court in evaluating the First Amended Complaint and the federal Defendants' motion to dismiss (Dkt. 172).

## INTRODUCTION AND SUMMARY OF ARGUMENT

Administrative agencies have only the power that Congress delegates to them. Here, Congress has adopted a comprehensive federal statute preempting state standards relating to the control of emissions from new motor vehicles or new motor vehicle engines, subject to a limited exception when EPA acts to waive that preemption. After EPA took three actions purporting to waive that preemption with respect to certain California regulations, Congress withdrew the agency's power to grant those waivers, rendering the waivers "of no force or effect"—in other words, "as though [they] had never taken effect." 5 U.S.C. § 801(f). Both Houses of Congress passed the relevant legislation, and the President signed it. That should be the end of this case.

Plaintiffs want this Court to declare three public laws invalid on the theory that they do not

---

[4] Available at https://www.uschamber.com/regulations/chamber-is-keeping-the-focus-on-re-balancing-regulations-through-cras.

[5] Available at https://www.uschamber.com/regulations/little-known-law-makes-big-difference.

comply with the CRA, but that is not a cognizable theory to invalidate a law. The CRA is not a constitutional provision. A disapproval resolution is simply an exercise of the legislative power that the Constitution already confers; the CRA does not create any new substantive power. And with regard to the *procedures* that the CRA outlines for each House's consideration of disapproval resolutions, the CRA is simply an exercise of each House's own "rulemaking power." 5 U.S.C. § 802(g). Under Article I of the Constitution, the sole authority to enforce congressional rules rests with each House of Congress, including its presiding officer and, ultimately, its voting membership. When legislation has been passed by both Houses of Congress and signed by the President, this Court does not look behind the signed legislation to inquire whether it *should* have been able to pass through Congress. Points of order, parliamentary objections, and requests for further debate belong in the House and Senate chambers, not the federal courts. This Court should dismiss this case.

This case concerns state measures that plainly are preempted without some extraordinary action to save them from preemption. Under the CAA, EPA's authority to set vehicle emissions standards is exclusive. There is a limited exception allowing (but not requiring) EPA to waive preemption with respect to certain California standards. 42 U.S.C. § 7521(a)(1). The three actions at issue in this case (the "Waivers") were issued in April 2023 and January 2025: Advanced Clean Cars II (90 Fed. Reg. 642 (Jan. 6, 2025)), Advanced Clean Trucks (88 Fed. Reg. 20,688 (Apr. 6, 2023)), and the "Omnibus" Low NOx programs (90 Fed. Reg. 643 (Jan. 6, 2025)).

EPA submitted the three Waivers to Congress for review under the CRA. After concluding that the Waivers were "rules" within the meaning of the CRA, Congress passed three joint resolutions (the "Resolutions") disapproving each Waiver. Each of the three Resolutions passed the House and Senate in identical form, and each one was signed by the President, complying with every aspect of the constitutional lawmaking procedure. That means that the three Resolutions are federal law, and thus the three Waivers can have no effect. 5 U.S.C. § 801(b)(1).

The challenges to the Resolutions fail for the simple reason that a claim of deviation from legislative procedure does not raise a justiciable question fit for a court to answer. Plaintiffs do not dispute that Congress (with the concurrence of the President or by overriding a presidential veto, if necessary) has the power both to preempt California law (the power Congress exercised in the CAA)

3

and to take away EPA's statutorily conferred ability to grant state-specific exceptions to that nationwide rule of preemption (the power Congress exercised here). Plaintiffs cannot come into court to undo that legislative decision by claiming that Congress misapplied its own procedural rules.

Nor can Plaintiffs undo Congress's legislative judgment (or, for that matter, the President's decision to sign Congress's legislation) through a work-around, by purporting to attack EPA's action in transmitting the Waivers to Congress. Congress was entitled to consider and disapprove the Waivers whether or not EPA transmitted them. As a result, litigants cannot block Congress from exercising its legislative power by impeding the transmission of rules—or by asking courts to do so. Plaintiffs' grievance is not with EPA, the primary target of their suit; it is with Congress, which they have not sued—likely because it would lay bare the degree to which the relief Plaintiffs seek would violate the separation of powers.

If this Court were to consider the merits of the question, this Court should conclude that Congress correctly concluded that the actions by EPA were "rules" under the CRA. EPA's Waivers changed the rights of regulated entities, with serious economic impacts not just in California but across the nation. The Waivers thus were prospective rules of general applicability, each fitting comfortably within the CRA's capacious definition of "rule."

The Court should dismiss the Complaint.[6]

## ARGUMENT

### I. PLAINTIFFS' CONSTITUTIONAL CHALLENGE TO LEGISLATIVE PROCEDURE RAISES NO JUSTICIABLE QUESTION.

#### A. Plaintiffs do not dispute that Congress has power under Article I of the Constitution to preempt California law and disapprove exceptions to the Clean Air Act.

Congress has the exclusive power to legislate for the Nation. "All legislative Powers herein granted shall be vested in a Congress of the United States." U.S. Const. art. I, § 1. "While it is emphatically the province and duty of the judicial department to say what the law is, it is equally— and emphatically—the exclusive province of the Congress not only to formulate legislative policies

---

[6] This brief focuses on the non-justiciability of the legislative-procedure claims and the claims attacking the transmission to Congress, as well as whether Congress (and especially the Senate) properly concluded that the Waivers were "rules" under the CRA. This brief does not opine on any other arguments for dismissal.

and mandate programs and projects, but also to establish their relative priority for the Nation." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 194 (1978) (internal citations omitted).

There is no doubt that the Resolutions passed both Houses of Congress and were signed by the President, as the Constitution provides. *See* U.S. Const. art. I, § 7, cl. 2; *Diamond Alt. Energy, LLC v. EPA*, 145 S. Ct. 2121, 2131 n.1 (2025) (describing one of the Resolutions as "legislation" passed by Congress and signed by the President); *see also, e.g.*, *Ctr. for Biological Diversity v. Bernhardt*, 946 F.3d 553, 562 (9th Cir. 2019) (explaining that the adoption of a joint resolution to disapprove a rule under the CRA "complie[s] with the process of bicameralism and presentment . . . because the [j]oint [r]esolution passed both houses of Congress and was signed by the President into law."). That undisputed fact should end this case.

Under the enrolled bill doctrine, the enrollment of a bill (in which the presiding officers of the two chambers sign an official copy) and transmission of it to the President is conclusive evidence that the bill passed Congress. *Marshall Field & Co. v. Clark*, 143 U.S. 649, 672 (1892) ("The signing by the Speaker of the House of Representatives, and by the President of the Senate, in open session, of an enrolled bill, is an official attestation by the two houses of such bill as one that has passed Congress."). When an enrolled bill receives the President's approval, "its authentication as a bill that has passed Congress should be deemed complete and unimpeachable." *Id*.

Nothing more is necessary in order to give effect to the Resolutions. Bicameralism and presentment make the Resolutions "enforceable as a change to substantive law." *Ctr. for Biological Diversity*, 946 F.3d at 562. Nor is a change like the one here—taking away agency authority to grant a preemption waiver—disfavored in any way. To the contrary: because "'an agency literally has no power to act'" except what "'Congress confers,'" Congress's "limitation or withdrawal of statutory grants" through the CRA merely reclaims authority that it once delegated. *Citizens for Const. Integrity v. United States*, 57 F.4th 750, 764 (10th Cir. 2023) (quoting *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986)) (rejecting separation-of-powers and other constitutional challenges to the CRA). Congress has unquestioned authority to preempt state law, and it has exercised that authority in the CAA, with a limited exception allowing EPA to act to waive such preemption. The Resolutions simply reclaim a part of EPA's congressionally granted power to *undo* congressional

preemption—a power that Congress is by no means *required* to grant to the Executive Branch. "Indeed, the President now has the constitutional obligation to execute the [Resolutions]." *Ctr. for Biological Diversity*, 946 F.3d at 562.

### B. Plaintiffs cannot sue to invalidate legislation based on their disagreement with Congress's interpretation of its own rules.

Because Congress properly followed bicameralism and presentment, that is the end of the matter. Plaintiffs do not have a cognizable interest in policing Congress's internal lawmaking procedures. *See, e.g.*, *Kan. Nat. Res. Coal. v. U.S. Dep't of Interior*, 971 F.3d 1222, 1233 (10th Cir. 2020) ("[Plaintiff] has no legally protected interest in Congress's internal lawmaking procedures, so long as Congress complies with the requirements of bicameralism and presentment."). Members of Congress do have such an interest, which they can vindicate through taking action as members of their respective Houses of Congress. In particular, a Representative or Senator can make points of order in the legislative chamber and secure an authoritative ruling from the presiding officer and, ultimately, from the House or Senate itself. *See, e.g.*, Senate Rule XX, Standing Rules of the Senate, S. Doc. No. 113-18, at 15 (2013).

Yet Plaintiffs claim that the Resolutions are void and of no effect and must be enjoined. *E.g.*, Dkt. No. 157 ("Am. Compl.") ¶¶ 159–160; *see also* Dkt. No. 43-1 ("ZETA Compl.") ¶¶ 91–92. Plaintiffs seem to claim that this legislation is ineffective—even though it complies fully with the constitutional requirements of bicameralism, presentment, and legislative power—because it does not comply with the CRA. They complain that a disapproval resolution under the CRA is too hard to stop with procedural warfare; for example, that it cannot be filibustered to death through unlimited debate. Am. Compl. ¶¶ 56, 59, 74. That is not a justiciable claim that the law is invalid.

To the contrary, Plaintiffs are requesting that this Court substitute its own judgment for Congress's in the enforcement of congressional rules, because the CRA, to the extent it purports to constrain Congress, is an exercise of Congress's power to make rules for itself. *See* 5 U.S.C. § 802(g)(1) ("This section is enacted by Congress . . . as an exercise of the rulemaking power of the Senate and House of Representatives, respectively[.]"); *see also id*. § 801(b)(1) (cross-referencing § 802). Indeed, the statute itself states that it was passed "with full recognition of the *constitutional*

6

1  *right* of either House to change the rules . . . at any time." *Id.* § 802(g)(2) (emphasis added). That
2  power belongs to Congress alone—and, indeed, to each House separately: "Article I of the
3  Constitution provides that '[e]ach House may determine the Rules of its Proceedings.' U.S. Const.,
4  art. I, § 5[, cl. 2]. In short, the Constitution textually commits the question of legislative procedural
5  rules to Congress." *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d
6  1157, 1172 (9th Cir. 2007) (brackets in original); *see also United States v. Ballin*, 144 U.S. 1, 5
7  (1892) ("The Constitution empowers each house to determine its rules of proceedings.").

8     A challenge "based on the asserted failure of Congress to comply with its own procedural
9  rules" is a "political question" "beyond [this Court's] power to review." *Consejo de Desarrollo*
10  *Economico*, 482 F.3d at 1171–72; *see, e.g.*, *Ballin*, 144 U.S. at 5 ("The power to make rules is . . .
11  within the limitations [of the Constitution], absolute and beyond the challenge of any other body or
12  tribunal."). Indeed, the Supreme Court has even held that where the question is whether those rules
13  comply with the Constitution itself (*e.g.*, the requirement of a quorum, *see* U.S. Const. art. I, § 5, cl.
14  1), the courts *still* must defer to Congress's choice (*e.g.*, a decision to count members present but
15  not responding to the quorum call). *Ballin*, 144 U.S. at 6 ("[I]t is therefore within the competency
16  of the house to prescribe any method which shall be reasonably certain to ascertain the fact.").
17  Certainly where there is no constitutional requirement at stake, there is no authority whatsoever for
18  a court to invalidate legislation based on the court's disagreement with the presiding officer's rulings
19  en route to final passage. Even if the Speaker or the Senate President could have prevented the
20  legislation from passing by sustaining some objection under one of the myriad rules of the House or
21  Senate, such judgments are not subject to judicial second-guessing.

22     Remarkably, Plaintiffs refuse to recognize the authority of each House of Congress to make
23  these determinations for itself. Rather, they seem to argue, "experts" and other "arbiter[s]" whom
24  Plaintiffs prefer, such as the Government Accountability Office ("GAO") or the Parliamentarian,
25  should take priority over the votes of each House of Congress, Am. Compl. ¶¶ 5, 9, 67, 71, 88, 90,
26  94, and the votes by which the Senate, in particular, established the relevant precedent were "entirely
27  unnecessary" and even "impermissible," *id.* ¶¶ 104. Yet, at the same time, Plaintiffs criticize the
28  Senate for supposedly abdicating its authority to determine what is a rule. Am. Compl. ¶¶ 108, 157;

7

*see also* ZETA Compl. ¶ 108.

Each House retains its own rulemaking power and has not delegated it—to the GAO, the Parliamentarian, or anyone else. The majority of the Senate can, and has, changed its own precedent and rejected an agency's characterization of its action. *See, e.g.*, 5. U.S.C. § 802(g)(1) (noting "constitutional right of either House to change the rules . . . at any time"); Senate Rule XX, Standing Rules of the Senate, S. Doc. No. 113-18, at 15 (2013) ("The Presiding Officer may submit any question of order for the decision of the Senate."). The Senate is under no requirement to follow the GAO or the Parliamentarian if a majority of its members disagree. *See, e.g.*, Valerie C. Brannon & Maeve P. Carey, Cong. Rsch. Serv., CRS Prod. No. R45248, *The Congressional Review Act: Determining Which "Rules" Must Be Submitted to Congress*, at 26 (Oct. 22, 2024) ("[A] GAO opinion deciding whether an agency action is a 'rule' covered by the CRA does not have binding legal effect. . . . .The opinions do not have any immediate effect other than advising Congress as to whether GAO considers an agency action to meet the definition of 'rule' under the CRA.")[7]; *see also Bowsher v. Synar*, 478 U.S. 714, 728, 730 (1986) (describing the Comptroller General, the head of the GAO, as "subservient to Congress").

Plaintiffs' gripe is with the two Houses of Congress, which (Plaintiffs insist) should not have let the sponsors call up the Resolutions for a vote, should have subjected them to extended debate and blockage by filibuster, and should not have reached their own interpretation of the CRA by majority vote. But Plaintiffs have not sued the Senate, or its presiding officer—because to do so would give the game away. *See, e.g., Common Cause v. Biden*, 748 F.3d 1280, 1283 (D.C. Cir. 2014) (rejecting as nonjusticiable a constitutional challenge to a Senate rule permitting extended debate and holding that the plaintiffs could not escape suing the Senate itself, because "it will be the Senate that [would have] to conduct its legislative business according to a court-ordered change in its rule" if the plaintiffs prevailed).

### C. The claims against the executive officials based on transmitting the waivers to Congress are nonjusticiable.

Trying to avoid confronting the separation-of-powers problem their claims would create,

---

[7] Available at https://www.congress.gov/crs-product/R45248.

1  Plaintiffs have sued EPA, the President, and the Administrator as if this were a garden-variety
2  challenge to administrative action. But Plaintiffs are seeking to invalidate *legislation*, not an agency
3  action—indeed, they do not dispute that as long as the Resolutions remain on the books, the
4  President "has the constitutional obligation to execute [them]." *Ctr. for Biological Diversity*, 946
5  F.3d at 562. And the executive officials did not *cause* the passage of the Resolutions through
6  Congress.

Litigants cannot block Congress from disapproving a rule by preventing the transmission of the rule to Congress—including by asking a court to invalidate the transmission. The transmission is not even a prerequisite to the passage of a resolution under the CRA. To the contrary, it is well established that because the CRA is an exercise of Congress's own rulemaking power, Congress itself can make its own determination about when its procedures are triggered. Thus, for example, when the Consumer Financial Protection Bureau refused to send a "guidance" bulletin to Congress under the CRA, Congress determined that it was a "rule" and passed a resolution disapproving it. *See* Pub. L. No. 115-172, 132 Stat. 1290 (2018) (concluding "that the Bulletin is a rule under the Congressional Review Act"); *see generally* Brannon & Carey, *supra*, at 25–26 & nn.233–38. As a result, Plaintiffs cannot obtain any form of redress by attacking the transmission of the Waivers to Congress. And even if they could, it would not be *retroactive* redress that would serve to invalidate legislation Congress has already passed. Plaintiffs have no standing to sue the Executive Branch on this theory.

Plaintiffs' quarrel is with Congress—and they cannot hide that fact by suing a different defendant. *See Common Cause*, 748 F.3d at 1283.

\* \* \* \* \*

For the foregoing reasons, this suit is nonjusticiable.

**II.  THE SENATE CORRECTLY CONCLUDED THAT THE AGENCY ACTIONS AT ISSUE IN THIS CASE ARE RULES UNDER THE CONGRESSIONAL REVIEW ACT.**

All of Plaintiffs' claims hinge on whether Congress (and especially the Senate) properly concluded that the EPA Waivers at issue in this case were "rules" under the CRA. Even Plaintiffs' repackaged constitutional claims (*i.e.*, separation of powers and Tenth Amendment) are just the statutory claims in disguise, as at bottom, they are arguments that the Waivers should not have been

9

able to pass through Congress using the CRA's streamlined legislative procedures. For the reasons already stated, those arguments are not justiciable. But if the Court reaches the merits of the CRA argument, it should hold that Congress correctly treated the Waivers as rules within the meaning of the CRA. These agency actions are excellent examples of the type of nationally significant decision that Congress chose to designate for review under the CRA.

The CRA largely adopts the Administrative Procedure Act ("APA") definition of a rule. *See* 5 U.S.C. §§ 551(4), 804(3). Under the CRA and APA, a "rule" is "an agency statement of general . . . applicability and future effect designed to implement, interpret, or prescribe law or policy." *Id.* § 551(4) (APA definition); *see id.* § 804(3) (excluding, from the definition of "rule" under the CRA, rules of "particular applicability"; rules relating to "agency management or personnel"; and "rule[s] of agency organization, procedure, or practice that do[] not substantially affect the rights or obligations of non-agency parties"). "The statutory definition of an agency 'rule' is 'broad.'" *Prutehi Litekyan: Save Ritidian v. U.S. Dep't of Air Force*, 128 F.4th 1089, 1107 (9th Cir. 2025) (quoting *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 95 (2015)). "The definition of 'rule' includes 'nearly every statement an agency may make.' *Id.* (quoting *Batterton v. Marshall*, 648 F.2d 694, 700 (D.C. Cir. 1980)). Rules are "prospective[] and ha[ve] a definitive effect on individuals only after the rule subsequently is applied." *Yesler Terrace Cmty. Council v. Cisneros*, 37 F.3d 442, 448 (9th Cir. 1994). "The form of the proceeding is not dispositive; what counts is its effect." *Id.* at 449.

Here, EPA's Waivers allowed California, and any other states that chose to adopt California's standards pursuant to 42 U.S.C. § 7507, to adopt more stringent emissions policies than promulgated by EPA. Like the regulations that were recently at issue in the Supreme Court's decision on standing in *Diamond Alternative Energy*, the California regulations that were the subject of the Waivers "requir[ed] automakers [and truck manufacturers] to alter their fleets of new vehicles," "caus[ing] a decrease in purchases of gasoline and other liquid fuels for" such vehicles. 145 S. Ct. at 2135. But those state regulations would have no force without EPA's action—they would be displaced by federal law. Thus, by operation of law, the Waivers functionally transformed California law into federal regulation—a compliance pathway that satisfies federal law in lieu of the

federal standards that would otherwise apply.  Letter from Russell T. Vought, Director, Office of Management and Budget, to Gene Dodaro, Comptroller General, U.S. Government Accountability Office (June 18, 2025), at 5 (explaining why each of the Waivers "directly governs the conduct of motor-vehicle manufacturers *nationwide*" by creating this "unique alternative nationwide compliance pathway").[8]  In sum, EPA's Waivers had a direct, prospective impact on the interests of a broad category of regulated entities, not just in California, but across the nation.  "These are the effects of a rule[.]"  *Yesler Terrace*, 37 F.3d 449 (finding that a federal agency's decision allowing Washington state's eviction procedures to be used, as an alternative to the federal grievance procedure that would otherwise be required, was a "rule" because of its prospective effect on "a broad category of people" and the consequent "legal consequences" for those people).  They are likewise effects of general, not particular, applicability:  they fall not just on particular "named persons," but on every manufacturer nationwide subject to the relevant CAA rules.  *See Attorney General's Manual on the Administrative Procedure Act* 13 (1947).  Even if the Waivers affected only California, the prospective regulation of the Nation's largest market remains one of "general" applicability:  in the overlapping, interstate market for automobiles in the United States, deviation by a state as large as California leads to nationwide impacts on manufacturers' compliance obligations (and their costs of compliance), necessarily affecting their core business decisions about which products to manufacture and sell for the U.S. market.  And it is not just California whose direct coercive power is at stake:  a waiver for California allows *other* states to adopt regulations "identical" to California's under 42 U.S.C. § 7507, further augmenting the Waivers' impact and significance.  *See generally* Am. Compl. ¶¶ 15–24 (reciting that most of the Plaintiff States, including New York, New Jersey, and Washington, had adopted all three of the California measures that the Waivers authorized).

The GAO itself has previously concluded that a revocation of a preemption waiver was a rule.  Government Accountability Office, *The Safer Affordable Fuel-Efficient (SAFE) Vehicles Rule Part One: One National Program*, FRL010000-45 (Sep. 27, 2019) (describing EPA's decision to

---

[8] Available at https://www.whitehouse.gov/wp-content/uploads/2025/03/CA-Waiver-Letter-to-GAO.pdf.

11

withdraw California waiver as a "Final Rule" under CAA).[9] Likewise, other courts have found EPA waivers to constitute federal regulations. As one example, the court in *Central Valley Chrysler-Jeep, Inc. v. Goldstene* determined that there was "no legal basis for the proposition that an EPA-promulgated regulation or standard functions any differently than a California-promulgated and EPA-approved standard or regulation." 529 F. Supp. 2d 1151, 1173 (E.D. Cal. 2007), *as corrected* (Mar. 26, 2008). Similarly, in *Green Mountain Chrysler Plymouth Dodge Jeep v. Crombie*, the court determined that it was "beyond serious dispute . . . that once EPA issues a waiver for a California emissions standard, it becomes a motor vehicle standard of the government, with the same stature as a federal regulation. . . . . Congress . . . could not have intended that an EPA-approved emissions reduction regulation did not have the force of a federal regulation." 508 F. Supp. 2d 295, 347 (D. Vt. 2007). As Plaintiffs admit, "the text of the CRA is exclusively concerned with federal rules promulgated by federal agencies." Am. Compl. ¶ 58 (citing 5 U.S.C. § 801(a)(1)(B)).

In sum, the Waivers would allow the law of an entire state (plus other states that follow it) to escape preemption and to simultaneously disrupt and augment what would otherwise be a nationally uniform legal and regulatory framework. This is exactly the type of "general applicability" and "prospective effect" that fit the broad definition of a rule. Indeed, the Waivers here have *outsize* nationwide impacts because of their effects on the national markets for vehicles, technology, and energy. As the Chamber has explained:

> [The Resolutions] would severely restrict consumer choice and impose substantial costs on businesses, not only in California but also in other states that have adopted California's regulatory programs. By mandating adoption of technologies not yet commercially viable at scale, and on a recklessly accelerated timeline, these rules risk significant increases to transportation costs and could hinder the movement of people and goods nationwide. Additionally, factors such as insufficient vehicle charging infrastructure, which are beyond the control of manufacturers, further deter market adoption of electric vehicles and exacerbate compliance challenges.

Letter from Neil Bradley, Executive Vice President, U.S. Chamber of Commerce, to Members of

---

[9] Available at https://www.gao.gov/fedrules/196015.

the U.S. Senate (May 13, 2025).[10]

The crucial public policy choice made by each of the Waivers—whether to create an exception to federal preemption for a key component of the U.S. transportation sector, and to allow California and other states to reshape key aspects of the nationwide economy—is exactly the type of decision, with sweeping impacts, that Congress reasonably concluded should be subject to the CRA's streamlined review procedures. The CRA ensures that the people's representatives can expeditiously review such a consequential agency decision. As explained above, Congress's compliance with the CRA is not justiciable in this Court; to hold otherwise would be to trigger serious separation of powers concerns. But if that question *were* justiciable, the answer is that Congress complied with the CRA in accepting the Waivers for review as "rules" under that statute.

## **CONCLUSION**

The Court should grant the federal Defendants' motion to dismiss the First Amended Complaint (Dkt. 172).

---

[10] Available at https://www.uschamber.com/assets/documents/250513_Hill_CRA-EPA-Preemption Waivers_Senate-FINAL.pdf.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: November 24, 2025 | By: */s/ Andrew Kim* |
|  | ANDREW KIM (CA SBN 288925) |
|  | *andrewkim@goodwinlaw.com* |
|  | WILLIAM M. JAY (*pro hac vice*) |
|  | *wjay@goodwinlaw.com* |
|  | **GOODWIN PROCTER LLP** |
|  | 1900 N Street, NW |
|  | Washington, DC  20036 |
|  | Tel.: +1 202 346 4000 |
|  | Fax: +1 202 346 4444 |
|  |  |
|  | KATAHDIN RENDINO (CA SBN 351915) |
|  | *Krendino@goodwinlaw.com* |
|  | **GOODWIN PROCTER LLP** |
|  | 601 Marshall Street |
|  | Redwood City, CA 94063 |
|  | Tel.: +1 650 752 3100 |
|  | Fax: +1 650 853 1038 |
|  |  |
|  | Attorneys for Amicus Curiae |

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on **November 24, 2025**. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on **November 24, 2025**.

*/s/ Andrew Kim*
ANDREW KIM