Matthew B. Berry, VA Bar No. 42600
  *General Counsel*
Todd B. Tatelman, VA Bar No. 66008
  *Deputy General Counsel*
Kenneth C. Daines, D.C. Bar No. 1600753
  *Assistant General Counsel*
OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515
(202) 225-9700
matthew.berry@mail.house.gov

*Counsel for Amicus Curiae, U.S. House of Representatives*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| STATE OF CALIFORNIA, et al., | Case No. 4:25-cv-04966-HSG |
| *Plaintiffs*, | |
| v. | **BRIEF OF U.S. HOUSE OF REPRESENTATIVES AS *AMICUS CURIAE* IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |
| UNITED STATES, et al., | |
| *Defendants*. | Date: January 29, 2026 |
| | Time: 2:00 p.m. |
| | Judge: Hon. Haywood S. Gilliam, Jr. |

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION AND INTEREST OF *AMICUS CURIAE* ........................................ 1

ARGUMENT ..................................................................................................................... 2

    I.       Section 805 precludes review of claims that hinge on alleged violations of
           the Congressional Review Act ................................................................................ 2

          A.      Section 805 bars Plaintiffs' statutory and *ultra vires* claims ...................... 2

          B.      Section 805 also precludes review of Plaintiffs' Tenth Amendment
               claim ............................................................................................................ 6

    II.      Plaintiffs' Tenth Amendment, statutory, and *ultra vires* claims are
          independently barred because Congress's decision to use CRA procedures
          is a nonjusticiable exercise of its Rulemaking Clause power ................................ 9

    III.     Plaintiffs' separation-of-powers claim lacks merit ............................................. 15

CONCLUSION ................................................................................................................ 16

# TABLE OF AUTHORITIES

**Cases**                                                                                   **Page(s)**

*Baker v. Carr,*
   369 U.S. 186 (1962) ............................................................................................ 10

*Bank Markazi v. Peterson,*
   578 U.S. 212 (2016) ............................................................................................ 15

*Barker v. Conroy,*
   921 F.3d 1118 (D.C. Cir. 2019) ......................................................................... 10

*Christoffel v. United States,*
   338 U.S. 84 (1949) .............................................................................................. 11

*Citizens for Const. Integrity v. United States,*
   57 F.4th 750 (10th Cir. 2023) ......................................................................... 9, 13

*Common Cause v. Biden,*
   909 F. Supp. 2d 9 (D.D.C. 2012) .................................................................. 14, 15

*Consejo de Desarrollo Economico de Mexicali, A.C. v. United States,*
   482 F.3d 1157 (9th Cir. 2007) ....................................................................... 10, 11

*Ctr. for Biological Diversity v. Bernhardt,*
   946 F.3d 553 (9th Cir. 2019) .......................................... 1, 4, 5, 6, 9, 13, 15

*Ctr. for Biological Diversity v. Trump,*
   453 F. Supp. 3d 11 (D.D.C. 2020) ...................................................................... 7

*Dalton v. Specter,*
   511 U.S. 462 (1994) ............................................................................ 1, 6, 7, 8

*District of Columbia v. Heller,*
   554 U.S. 570 (2008) ............................................................................................ 14

*Harrington v. Bush,*
   553 F.2d 190 (D.C. Cir. 1977) ........................................................................... 10

*In re Operation of the Mo. River Sys. Litig.,*
   363 F. Supp. 2d 1145 (D. Minn. 2004), *aff'd in part,*
   421 F.3d 618 (8th Cir. 2005) ................................................................................ 5

*Kan. Nat. Res. Coal. v. Dep't of Interior,*
   971 F.3d 1222 (10th Cir. 2020), *cert. denied,*
   141 S. Ct. 2723 (2021) .......................................................................... 5, 6, 8, 11

*Liesegang v. Sec'y of Veterans Affs.,*
   312 F.3d 1368 (Fed. Cir. 2002) ........................................................................... 5

*Massie v. Pelosi,*
   590 F. Supp. 3d 196 (D.D.C. 2022) ................................................................... 14

*Metzenbaum v. FERC*,
  675 F.2d 1282 (D.C. Cir. 1982) ...................................................... 10, 12

*Mistretta v. United States*,
  488 U.S. 361 (1989) ........................................................................ 16

*Montanans for Multiple Use v. Barbouletos*,
  568 F.3d 225 (D.C. Cir. 2009), *cert. denied*,
  560 U.S. 926 (2010) .......................................................................... 5

*Newton v. Mahoning Cnty. Comm'rs*,
  100 U.S. 548 (1879) ........................................................................ 11

*Nixon v. United States*,
  506 U.S. 224 (1993) ........................................................................ 10

*NLRB v. Noel Canning*,
  573 U.S. 513 (2014) ........................................................................ 14

*O'Connor v. Donaldson*,
  422 U.S. 563 (1975) .......................................................................... 8

*Rangel v. Boehner*,
  20 F. Supp. 3d 148 (D.D.C. 2013), *aff'd*,
  785 F.3d 19 (D.C. Cir. 2015) ...................................................... 10, 14

*Sierra Club v. Trump*,
  963 F.3d 874 (9th Cir. 2020), *vacated sub nom.*,
  *Biden v. Sierra Club*, 142 S. Ct. 46 (2021) .................................... 8

*United States v. Ballin*,
  144 U.S. 1 (1892) ................................................... 1, 10, 14, 15

*Walker v. Jones*,
  733 F.2d 923 (D.C. Cir. 1984) ...................................................... 10

*Webster v. Doe*,
  486 U.S. 592 (1988) .......................................................................... 6

**Constitution**

U.S. Const. art. I, § 5, cl. 2 .............................................................. 1, 10

**Statutes**

5 U.S.C. § 701(a)(1) .......................................................................... 6

5 U.S.C. § 801

  § 801(a) ...................................................................................... 3, 16

  § 801(b)(2) .................................................................................. 3, 15

5 U.S.C. §§ 801-808 ........................................................................ 2

5 U.S.C. § 802 ....................................................................................... 3, 16

    §§ 802(c)-(f) .................................................................................... 2

    § 802(g) ............................................................................................. 1

    § 802(g)(1) ...................................................................................... 11

    §§ 802(g)(1)-(2) ........................................................................ 11, 12

    § 802(g)(2) ...................................................................................... 16

5 U.S.C. § 805 ........................................................................... 1, 2, 3, 5, 8

5 U.S.C. § 806(b) ...................................................................................... 8

15 U.S.C. § 719f

    § 719f(d)(1)(A)-(B) ...................................................................... 12

    § 719f(d)(5)(B) .............................................................................. 12

42 U.S.C. § 7507 ................................................................................. 2, 15

42 U.S.C. § 7543 ...................................................................................... 2

    § 7543(b) .......................................................................................... 1

Cal. Code Regs tit. 13

    § 1956.8 ............................................................................................ 2

    § 1961.4 ............................................................................................ 2

    § 1962.4 ............................................................................................ 2

    § 1963.1 ............................................................................................ 2

**Legislative Authorities**

142 Cong. Rec. S3686 (daily ed. Apr. 18, 1996) .................................... 11

171 Cong. Rec. S2984 (daily ed. May 20, 2025) ..................................... 4

**Other Authorities**

John C. Roberts, *Are Congressional Committees Constitutional?: Radical
Textualism, Separation of Powers, and the Enactment Process*, 52 Case. W.
Rsrv. L. Rev. 489 (2001) ..................................................................... 14

Press Release, EPA, Trump EPA to Transmit California Waivers to Congress in
Accordance with Statutory Reporting Requirements (Feb. 14, 2025),
https://perma.cc/8NL8-N3SU ................................................................ 4

Press Release, H. Comm. on Energy & Com., Chairman Guthrie, Vice Chairman
   Joyce, and Energy and Commerce Republicans Introduce Legislation to Stop
   California EV Mandates (Apr. 3, 2025), https://perma.cc/3RQV-ZEAF ................................ 3

**INTRODUCTION AND INTEREST OF *AMICUS CURIAE***

The United States House of Representatives submits this *amicus* brief in support of Defendants' motion to dismiss, ECF 172. The House has a compelling institutional interest in protecting its core constitutional authority to determine its own rules under the Rulemaking Clause, U.S. Const. art. I, § 5, cl. 2, including when it chooses to exercise that power by means of the Congressional Review Act (CRA), *see* 5 U.S.C. § 802(g), as it did in this case. Because the relief sought by Plaintiffs here directly intrudes upon Congress's fundamental rulemaking authority, the House's participation as an *amicus* is necessary to vindicate its interests.

In enacting the CRA, Congress expressly barred judicial review of determinations or actions taken under the statute. 5 U.S.C. § 805. The Ninth Circuit has spoken clearly on what this means: Courts "are deprived of jurisdiction to review *any claim* challenging a 'determination, finding, action, or omission' under the CRA." *Ctr. for Biological Diversity v. Bernhardt*, 946 F.3d 553, 563 (9th Cir. 2019) (emphasis added) (quoting 5 U.S.C. § 805). Although Plaintiffs here strongly oppose Congress's invocation of the CRA to nullify Clean Air Act (CAA) waivers of preemption granted to California by the Environmental Protection Agency (EPA), 42 U.S.C. § 7543(b), this disagreement is largely not justiciable. Because Congress used the CRA to enact legislation eliminating those waivers, all statutory and *ultra vires* claims challenging the validity of that action (as well as the EPA's initial invocation of the CRA to submit the waivers for review) are categorically barred from judicial review. And while Plaintiffs separately purport to bring a Tenth Amendment challenge to this action, that is also barred because it hinges entirely on an alleged violation of the CRA. *See Dalton v. Specter*, 511 U.S. 462, 473-74 (1994).

Additionally, even if Congress had never included a jurisdiction-stripping provision like 5 U.S.C. § 805 in the CRA, those claims would still be nonjusticiable because they challenge a procedural choice made by Congress under the Rulemaking Clause, which is (with a few narrow exceptions) "*absolute* and beyond the challenge of any other body or tribunal." *United States v. Ballin*, 144 U.S. 1, 5 (1892) (emphasis added). A judicial order overriding such a decision made pursuant to Congress's rulemaking authority would flout the separation of powers. Finally, to the

extent Plaintiffs' separation-of-powers claim is justiciable, it lacks merit.  *See infra* Section III.

Accordingly, Plaintiffs' claims must be dismissed.

## ARGUMENT

**I.**    **Section 805 precludes review of claims that hinge on alleged violations of the Congressional Review Act**

    **A.**    **Section 805 bars Plaintiffs' statutory and *ultra vires* claims**

Section 805 of the CRA provides that "[n]o determination, finding, action, or omission under this chapter shall be subject to judicial review."  5 U.S.C. § 805.  This provision unambiguously bars judicial review of statutory claims challenging *any* action or decision that is made pursuant to the Act—full stop—including Congress's use of the CRA's expedited procedures to disapprove the three CAA waivers at issue in this case.

The facts here make this conclusion inescapable.  Under Section 209 of the CAA, a state may not adopt or attempt to enforce any vehicle emissions standard unless the EPA grants a waiver of federal preemption.  42 U.S.C. § 7543.  At every step of the process of submitting and disapproving the waivers at issue here, government actors either invoked the CRA or utilized its expedited procedures (e.g., limiting debate and bypassing a potential Senate filibuster, 5 U.S.C. §§ 802(c)-(f)).  Specifically, after California requested EPA approval of CAA waivers of preemption for the three state regulatory programs mandating reduced vehicle emissions,[1] the EPA granted California's requests,[2] and subsequently submitted those waivers to Congress for review under the CRA.[3]  Then, after reviewing each of the EPA's three waivers utilizing the

---

[1] California's programs required (1) light-duty vehicle manufacturers to sell an increasing percentage of electric vehicles in California each year (e.g., 35% for 2026, 43% for 2027), with a complete electric transition by 2035; (2) a similar transition for medium- and heavy-duty vehicle manufacturers ending in 2036; and (3) significant reductions in nitrogen oxide and particulate matter emissions for new medium- and heavy-duty vehicles. Cal. Code Regs. tit. 13 §§ 1956.8, 1961.4, 1962.4, 1963.1.

[2] Once California receives such a waiver, the CAA allows any other state to adopt the same regulations that California promulgates without any additional factual showing, 42 U.S.C. § 7507, effectively creating an alternative national standard.

[3] The CRA requires that agencies submit rules to Congress to allow for their review and potential disapproval before taking effect, 5 U.S.C. §§ 801-808.

procedures set forth in the CRA, majorities of the House and Senate passed joint resolutions of disapproval pursuant to the statute. The joint resolutions were then sent to the President who signed them into law, preempting California's alternative emissions standards and prohibiting the EPA from granting any substantially similar waivers in the future, *see* 5 U.S.C. § 801(b)(2).

Here, each of Plaintiffs' statutory and *ultra vires* claims hinge upon their assertion that the EPA and Congress unlawfully used CRA procedures to review and eliminate the CAA waivers because the waivers are allegedly adjudicatory orders rather than "rules" under the statute. While Plaintiffs' Amended Complaint removes their previous CRA-specific count (formerly Count III), it adds a new "Declaratory Judgment" count that is simply a repackaged version of their prior CRA claim. *Compare* ECF 157 ¶¶ 180-84 *with* ECF 1 ¶¶ 136-43. It also retains other counts that ultimately amount to complaints about actions taken under the CRA. *See infra* at 5-6. But the CRA's plain language bars review of each of these claims. *See id.* Specifically, both the EPA's submission of CAA waivers to Congress, *see* 5 U.S.C. § 801(a), and Congress's consideration and adoption of joint resolutions of disapproval regarding those waivers, *see* 5 U.S.C. § 802, were plainly "action[s]" taken under the CRA, 5 U.S.C. § 805. The CRA was the only authority Defendants invoked when submitting the waivers to Congress for review, and Congress accepted those submissions exclusively pursuant to the CRA.[4]

While Plaintiffs argue that Section 805 does not preclude their claims because Defendants and Congress improperly applied the CRA to those waivers, and thus their actions were not really taken under the statute, *see, e.g.*, ECF 157 ¶¶ 132, 184, that position has at least two problems. First, the EPA's and Congress's conclusions that the waivers were subject to the CRA were "determination[s]" under the Act, 5 U.S.C. § 805, because both entities decided that the CRA's

---

[4] *See* Press Release, H. Comm. on Energy & Com., Chairman Guthrie, Vice Chairman Joyce, and Energy and Commerce Republicans Introduce Legislation to Stop California EV Mandates (Apr. 3, 2025) ("By submitting the three California waivers to Congress, Administrator Zeldin is ensuring that Congress has oversight of these major rules … . Energy and Commerce Republicans … will now work to ensure that the Congressional Review Act process finally puts these issues to rest."), https://perma.cc/3RQV-ZEAF.

language applied to the waivers.[5] The CRA's bar on judicial review therefore applies here.

Second, any such argument is foreclosed by Ninth Circuit precedent. In *Bernhardt*, the plaintiffs claimed that an agency had not submitted a rule to Congress in accordance with the procedures set forth in the CRA because the rule had taken effect nearly a month before the agency's submission. 946 F.3d at 562. Thus, plaintiffs argued that Congress's joint resolution of disapproval and the agency's subsequent rescission of the rule were invalid. *Id.* at 556, 562-63. But notwithstanding plaintiffs' argument that the joint resolution was not enacted under the CRA, for purposes of Section 805, because the rule in question was not eligible for disapproval pursuant to the statute, *id.* at 563, the Ninth Circuit held it "lack[ed] jurisdiction to consider this claim," *id.* So too here. Pursuant to *Bernhardt*, this Court does not have jurisdiction to consider any claim that the joint resolutions enacted by Congress are not valid because the waivers in question were improperly submitted to Congress by the EPA or not eligible for disapproval pursuant to the CRA. Plaintiffs' arguments do not change the fact that in this case the relevant actions were taken and determinations were made under the CRA for purposes of Section 805.

*Bernhardt* is also instructive for another reason. There, the Ninth Circuit did not treat the plaintiffs' challenge to the propriety of the agency submission to Congress as a separate issue from Congress's subsequent enactment of the joint resolution, since the disapproved rule could not be reinstated while the legislation remained in force. *See id.* at 563. Similarly, reinstating the CAA waivers here would require invalidating joint resolutions of disapproval passed by both Houses of Congress and signed by the President. Therefore, because at the end of the day Plaintiffs' statutory and *ultra vires* claims necessarily involve challenging Congress's duly enacted joint resolutions of disapproval under the CRA, *see infra* at 5-6, those claims must all be dismissed as unreviewable.

---

[5] For instance, in February 2025, EPA Administrator Zeldin announced he would transmit the waivers to Congress as rules. Press Release, EPA, Trump EPA to Transmit California Waivers to Congress in Accordance with Statutory Reporting Requirements (Feb. 14, 2025), https://perma.cc/8NL8-N3SU. And upon receiving resolutions of disapproval from the House, Senate Majority Leader John Thune stated that "there can be no question that these waivers are rules in substance, given their widespread effects." 171 Cong. Rec. S2984 (daily ed. May 20, 2025).

Other circuit courts agree with the Ninth Circuit that Section 805 precludes the judiciary from reviewing claims of noncompliance with the CRA and its terms.[6] While cases from a minority of circuits have been cited in support of a contrary position, those cases nowhere address Section 805. *See, e.g.*, *Bernhardt*, 946 F.3d at 563 n.7 (noting that the Federal Circuit, in *Liesegang v. Sec'y of Veterans Affs.*, 312 F.3d 1368 (Fed. Cir. 2002), "had no occasion to consider" whether "courts have jurisdiction to consider statutory challenges to the CRA").

In any event, what controls here is the plain meaning of Section 805 and the Ninth Circuit's decision in *Bernhardt*. There, the Ninth Circuit affirmed that Section 805's text "deprive[s the courts] of jurisdiction to review *any* claim challenging a 'determination, finding, action, or omission' under the CRA." *Bernhardt*, 946 F.3d at 563 (emphasis added) (quoting 5 U.S.C. § 805). Those are exactly the kinds of allegations Plaintiffs bring here, notwithstanding the revisions in the Amended Complaint. For instance, Plaintiffs' newly added "Declaratory Judgment" claim (Count VI) seeks a declaration, *see* ECF 157 ¶ 184, that the EPA's waivers and Congress's joint resolutions of disapproval are "outside the scope of the CRA" because the waivers were not "'rules' of general applicability subject to the CRA," *id.* ¶ 181. In other words, Count VI complains about the same thing that Plaintiffs' CRA-specific claim did in their initial complaint, *cf.* ECF 1 ¶¶ 136-43. Similarly, Plaintiffs' *ultra vires* claim (Count II) asserts that the EPA exceeded its authority by labeling the waivers as "rules" under the CRA and asks the Court to bar labeling future CAA waiver actions as "rules" under the CRA. ECF 157 ¶¶ 143, 147. But this too is just a challenge to the EPA's determination that the waivers were "rules" under the CRA, making it squarely prohibited by Section 805.

For similar reasons, Plaintiffs' Administrative Procedure Act (APA) claim (Count I) is

---

[6] *See, e.g.*, *Kan. Nat. Res. Coal. v. Dep't of Interior*, 971 F.3d 1222, 1235-36 (10th Cir. 2020) ("[T]he CRA unambiguously prohibits judicial review of *any* omission by *any* of the specified actors," including Congress. (emphasis added)), *cert. denied*, 141 S. Ct. 2723 (2021); *Montanans for Multiple Use v. Barbouletos*, 568 F.3d 225, 229 (D.C. Cir. 2009) (Kavanaugh, J.) ("The language of § 805 is unequivocal and precludes review" of a claim that an agency failed to report an action to Congress.), *cert. denied*, 560 U.S. 926 (2010); *In re Operation of the Mo. River Sys. Litig.*, 363 F. Supp. 2d 1145, 1173 (D. Minn. 2004) (an agency's "major rule" determination is not reviewable), *aff'd in part*, 421 F.3d 618 (8th Cir. 2005).

also unreviewable; they argue that the EPA's actions were not in accordance with law and exceeded statutory authority because the CRA does not authorize reclassifying waivers as rules. *Id.* ¶¶ 128-29, 132, 139-40. While Plaintiffs' arguments sound in an APA violation (e.g., alleging inadequate "public process" and lack of explanation for reclassifying the waiver decisions as rules, *id.* ¶¶ 126-27), these complaints are all ultimately about the EPA's decision to submit the waivers to Congress for review, which was done via the CRA. Because the APA does not apply where other "statutes preclude judicial review," 5 U.S.C. § 701(a)(1), Section 805 bars Plaintiffs' APA claim. *See Kan. Nat. Res. Coal.*, 971 F.3d. at 1234 (stating that if Section 805 precludes review of a claim, the APA cannot independently "confer[] subject matter jurisdiction" over it).

Accordingly, this Court "lack[s] authority to consider" Plaintiffs' statutory and *ultra vires* claims and may not take any action pursuant to those claims that would nullify the three joint resolutions of disapproval passed by Congress. *See Bernhardt*, 946 F.3d 564.

## B. Section 805 also precludes review of Plaintiffs' Tenth Amendment claim

Attempting to circumvent Section 805, Plaintiffs also argue that this Court has jurisdiction over their claims that "raise constitutional issues to which [Section 805] does not apply." ECF 157 ¶ 30. To be sure, statutory provisions barring judicial review generally do not apply to constitutional claims unless Congress's "intent to do so [is] clear," *Webster v. Doe*, 486 U.S. 592, 603 (1988). And the Ninth Circuit has held that because Section 805 "does not include any explicit language barring judicial review of constitutional claims," "Congress did not intend to bar such review." *Bernhardt*, 946 F.3d at 561. However, to fall outside the scope of Section 805, claims must actually be constitutional in nature. The Supreme Court has made clear that prohibitions on judicial review cannot be avoided merely by framing statutory violations as constitutional violations. In *Dalton v. Specter*, for example, the plaintiffs there argued that the President had run afoul of the separation of powers by failing to comply with the procedural requirements set forth in the Defense Base Closure and Realignment Act of 1990. 511 U.S. at 471. But the Court rejected this attempt to dress a non-reviewable statutory claim up as a reviewable constitutional claim. It stated, "claims simply alleging that the President has exceeded his statutory authority are not 'constitutional' claims, subject to judicial review" but are instead

treated as "statutory one[s]." *Id.* at 473-74.

Here, Plaintiffs' Tenth Amendment claim (Count IV) is merely a statutory claim "recast" in constitutional terms, making it similarly unreviewable. *See Ctr. for Biological Diversity v. Trump*, 453 F. Supp. 3d 11, 53-54 (D.D.C. 2020) (dismissing as unreviewable constitutional claims that were not distinct from statutory claims). That claim ultimately turns on statutory interpretation—namely, whether the Executive Branch and Congress complied with the CRA— rather than on constitutional interpretation. Specifically, Plaintiffs claim that Defendants violated the Tenth Amendment by unlawfully invoking the CRA without the States' consent and without giving Plaintiffs the opportunity to defend their own state laws in the political process, *see* ECF 157 ¶¶ 164-67. But this is simply a statutory claim dressed up in constitutional garb. Rather than alleging that any provision of the CRA itself violates the Tenth Amendment, Plaintiffs assert that the national political process was defective because the States never consented and "had no opportunity to participate in the Executive Branch's relabeling of the waivers as 'rules' and submission of a 'report' to Congress," rendering the Resolutions "invalid under the Tenth Amendment." *Id.* ¶¶ 165-67 (citation omitted). While the House disputes this characterization, these allegations are unreviewable because they are entirely predicated on an alleged violation of the CRA. Congress's use of the CRA's expedited procedures and its accompanying limits on debate would raise no Tenth Amendment concerns whatsoever for Plaintiffs in this case if they agreed with the Executive and Congress that the CAA waivers here are "rules" under the statute. While Plaintiffs could have brought a facial challenge arguing that these features of the CRA (or the CAA itself) violate the Tenth Amendment, they did not do so. Instead, their gripe is with the decision to use CRA procedures for this fact pattern, and Congress placed that decision outside the realm of judicial review when it enacted Section 805.[7]

Admittedly, the Ninth Circuit did apply a narrower reading of *Dalton* than some other courts in *Sierra Club v. Trump*, 963 F.3d 874, 889 (9th Cir. 2020) (noting that "*Dalton* suggests

---

[7] *See, e.g.*, *Ctr. for Biological Diversity*, 453 F. Supp. 3d. at 53 (Where plaintiff did "not claim that the statutes themselves are unconstitutional," its constitutional claims were not distinguishable from its statutory claims because officials' actions could not violate the Appropriations Clause or the separation of powers if the officials acted lawfully under the statutes.).

that some actions in excess of statutory authority may be constitutional violations"). However, that decision was subsequently vacated, *Biden v. Sierra Club*, 142 S. Ct. 46 (2021), meaning it has no binding precedential effect, *see O'Connor v. Donaldson*, 422 U.S. 563, 577 n.12 (1975). And perhaps more importantly, *Sierra Club* is distinguishable from the present case.

There, the government argued that *Dalton* foreclosed review of the plaintiff's "constitutional" claim because it depended entirely on the violation of a statute, the Defense Appropriations Act. The Ninth Circuit disagreed, reasoning that *Dalton* did not govern when officials applied a statute in a manner that violated an *express* constitutional prohibition (in *Sierra Club*, the provision stating that "[n]o Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law"). *See Sierra Club*, 963 F.3d at 889-90 (noting "the distinction between 'actions contrary to [a] constitutional prohibition,' and those 'merely said to be in excess of [statutory] authority'" (quoting *Dalton*, 511 U.S. at 472)). But here, the Tenth Amendment does not expressly prohibit delivering agency actions to Congress for review or nullifying waivers via legislation. As a result, *Sierra Club*'s interpretation of *Dalton* does not lead to a different outcome here. Plaintiffs' Tenth Amendment claim should be treated as a statutory rather than constitutional claim, meaning it must be dismissed under Section 805.

Returning to the CRA's text, the inclusion of a severability clause, *see* 5 U.S.C. § 806(b), suggests that certain challenges to the Act itself arising under the Constitution are reviewable. *See, e.g.*, *Kan. Nat. Res. Coal.*, 971 F.3d at 1237 ("[T]he severability clause would apply if a plaintiff with standing claimed that *a portion of the CRA* violated the separation of powers doctrine … because such a claim would not be covered by § 805." (emphasis added)). But instead of arguing that any "portion" of the CRA violates the Tenth Amendment, *id.*, Plaintiffs merely contend that Defendants misapplied the CRA in an unconstitutional manner because they did not abide by the Act's terms. Their argument runs headlong into Section 805 which denies review for all "action[s]" and "determination[s] ... under this chapter," 5 U.S.C. § 805.

Indeed, Plaintiffs' Tenth Amendment claim is a far cry from cases where courts reviewed constitutional claims involving the CRA. *See, e.g.*, *Bernhardt*, 946 F.3d at 561. For instance, although *Dalton* was not raised in *Bernhardt*, the constitutional claims brought in that case did

not rely upon a CRA violation.  There, the plaintiffs challenged whether CRA resolutions "interfere with the Executive Branch's dut[ies] under the Take Care Clause of the Constitution," *id.*, by requiring that agencies revoke a rule without actually "amend[ing]" the applicable law, *id.* at 561-62.  Adjudicating that issue required determining whether the CRA itself violates the Take Care Clause, and not whether the defendants had complied with the CRA's terms.  By contrast, Plaintiffs' Tenth Amendment claim here hinges entirely on whether the CRA's statutory requirements were satisfied in a particular circumstance, meaning *Dalton* governs.

Other courts have taken a similar approach to the Ninth Circuit.  For instance, the Tenth Circuit in *Citizens for Constitutional Integrity v. United States* reviewed claims alleging that the CRA was *facially* unconstitutional on separation-of-powers, equal-protection, and substantive-due-process grounds, and thus that Congress's joint resolution of disapproval in that case was unlawful.  57 F.4th 750, 756-59 (10th Cir. 2023) ("Plaintiffs assert that the CRA is facially unconstitutional."); *id.* at 759 (Because "[p]laintiffs exclusively bring constitutional claims ... we have statutory jurisdiction to hear" their CRA challenge.).  By contrast, Plaintiffs here do not allege that the CRA is facially unconstitutional under the Tenth Amendment, but instead challenge Defendants' interpretation of, and alleged failure to follow, the CRA's mandates.

In sum, Plaintiffs' purported Tenth Amendment claim is at its core a statutory claim that entirely depends upon Plaintiffs' allegations that Defendants and Congress violated the CRA.  And just as the Supreme Court in *Dalton* rejected an effort to repackage a nonreviewable statutory claim as a reviewable constitutional claim, this Court should do the same here and hold that Section 805 precludes this Court from reviewing plaintiffs' nominally "constitutional" claim.

## II.   Plaintiffs' Tenth Amendment, statutory, and *ultra vires* claims are independently barred because Congress's decision to use CRA procedures is a nonjusticiable exercise of its Rulemaking Clause power

Separate from the CRA's preclusion of judicial review, Plaintiffs' Tenth Amendment, statutory, and *ultra vires* claims (Counts I, II, IV, V, and VI) are independently barred because Congress's decision to use CRA procedures to invalidate the CAA waivers is a nonjusticiable

exercise of its exclusive Rulemaking Clause power, U.S. Const. art. I, § 5, cl. 2.[8]  Under the

political question doctrine, which is "part and parcel of separation-of-powers doctrine,"

*Metzenbaum v. FERC*, 675 F.2d 1282, 1287 (D.C. Cir. 1982) (citation omitted), a controversy is

nonjusticiable when there is "a textually demonstrable constitutional commitment of the issue to a

coordinate political department; or a lack of judicially discoverable and manageable standards for

resolving it," *Nixon v. United States*, 506 U.S. 224, 228 (1993) (citing *Baker v. Carr*, 369 U.S.

186, 217 (1962)).  Such a commitment is found in the Rulemaking Clause, which textually

"empowers each house to determine its rules of proceedings."  *Ballin*, 144 U.S. at 5.  The

Rulemaking Clause sits "[a]t the very core of our constitutional separation of powers," *Walker v.*

*Jones*, 733 F.2d 923, 938 (D.C. Cir. 1984) (MacKinnon, J., concurring in part and dissenting in

part), and is a "demonstrable textual commitment to another branch of government."  *Rangel v.*

*Boehner*, 20 F. Supp. 3d 148, 168-69 (D.D.C. 2013), *aff'd*, 785 F.3d 19 (D.C. Cir. 2015).

Within constitutional limits, Congress's power to decide the procedural rules by which it

enacts legislation is thus "*absolute* and beyond the challenge of any other body or tribunal."

*Ballin*, 144 U.S. at 5 (emphasis added); *see also Consejo de Desarrollo Economico de Mexicali,*

*A.C. v. United States*, 482 F.3d 1157, 1172 (9th Cir. 2007) ("[T]he Constitution textually commits

the question of legislative procedural rules to Congress.").  "In deference to the fundamental

constitutional principle of separation of powers, the judiciary must take special care to avoid

intruding into a constitutionally delineated prerogative of the Legislative Branch."  *Harrington v.*

*Bush*, 553 F.2d 190, 214 (D.C. Cir. 1977); *see also Barker v. Conroy*, 921 F.3d 1118, 1130 (D.C.

Cir. 2019) ("[I]nterpreting a congressional rule 'differently than would the Congress itself' is

tantamount to '*making* the Rules—a power that the Rulemaking Clause reserves to each House

alone.'" (citation omitted)).

In their Amended Complaint, Plaintiffs' overarching grievance is still with Congress's

decision to invoke the CRA to invalidate the CAA waivers.  But that decision was entirely

procedural; it unlocked an expedited process for considering and passing resolutions of

---

[8] To the extent Plaintiffs' separation-of-powers claim is justiciable, it lacks merit.  *See infra* Section III.

disapproval, including bypassing a potential Senate filibuster.  Indeed, as the CRA itself indicates, the statute's disapproval procedure was "enacted by Congress as an exercise of the rulemaking power of the Senate and House."  5 U.S.C. § 802(g)(1).  Thus, when Congress enacted the CRA's disapproval procedure, it "exercise[d] [its] rulemaking power," meaning that process "is deemed a part of the rules of each House," which either House has the constitutional right to "change ... at any time."  5 U.S.C. § 802(g)(1)-(2).  Invoking the CRA here did not give Congress any additional substantive power; it already had the constitutional authority to pass legislation through ordinary procedures to nullify the waivers and to prohibit the EPA from issuing any substantially similar rules.

At best, Plaintiffs' complaint that Congress failed to comply with the CRA's requirements amounts to an as-applied challenge to House and Senate Rules,[9] the same as a claim that a statute is invalid because Congress failed to comply with its own rules when enacting it.  But because these claims are "based on the asserted failure of Congress to comply with its own procedural rules," and courts cannot decide the procedures by which Congress considers and enacts legislation, they are "non-justiciable political question[s] beyond [the court's] power to review." *See Consejo*, 482 F.3d at 1171-72.  Therefore, these claims would be barred even if Section 805 did not exist.  In fact, Section 805's "limitation on the scope of judicial review was drafted in recognition of the constitutional right of each House of Congress" to determine its own rules, "which includes being the *final arbiter* of compliance with such Rules."  *Kan. Nat. Res. Coal*, 971 F.3d at 1227 (emphasis added) (quoting 142 Cong. Rec. S3686 (daily ed. Apr. 18, 1996)).

For these reasons, the D.C. Circuit's decision in *Metzenbaum* is directly on point here.  The complainants in *Metzenbaum* argued that a joint resolution approving presidentially-proposed

---

[9] To the extent Plaintiffs argue that the CRA prohibits Congress from utilizing the statute's procedures to enact legislation invalidating the CAA waivers without first amending the CRA through bicameralism and presentment, that would make the CRA an unconstitutional exercise of legislative entrenchment because it would permit a previous Congress to tie the hands of the present Congress respecting the exercise of its constitutional powers under the Rulemaking Clause, which Congress cannot do.  *See Newton v. Mahoning Cnty. Comm'rs*, 100 U.S. 548, 559 (1879) ("Every succeeding legislature possesses the same jurisdiction and power … as its predecessors.  The latter have the same power of repeal and modification which the former had of enactment[.]").

waivers using expedited procedures set forth in the Alaskan Natural Gas Transportation Act (ANGTA) was invalid because the House allegedly violated the parliamentary rules set forth in ANGTA when passing the resolution. 675 F.2d at 1286-87. Citing the prohibition on either House of Congress using ANGTA for consideration of a resolution within 60 days of considering "any other resolution respecting the same Presidential [recommendation]," 15 U.S.C. § 719f(d)(5)(B), the complainants argued that the House had not observed ANGTA's procedural rules when it considered the Senate's resolution almost immediately after having passed its own nearly-identical resolution. *Metzenbaum*, 675 F.2d at 1286-87. In other words, complainants argued that the resolution adopted by the House was not eligible for consideration under ANGTA (just as Plaintiffs here argue that the joint resolutions adopted by Congress were not eligible for consideration under the CRA's expedited procedures).

However, because there was "no question … whether Constitutional procedural requirements of a lawful enactment were observed," but only "whether the House observed the rules it had established for its own deliberations" in ANGTA, the D.C. Circuit held that plaintiffs' complaint was nonjusticiable. *Id.* at 1287. Like the CRA, ANGTA's parliamentary rules were enacted "as an exercise of the rulemaking power of each House," making them "a part of the rules of each House … with full recognition of the constitutional right of either House to change the rules … at any time." *Compare* 15 U.S.C. § 719f(d)(1)(A)-(B), *with* 5 U.S.C. § 802(g)(1)-(2). And as with ANGTA claims then, "[t]o invalidate [the joint resolutions here] on the ground that [they were] enacted in violation of House rules would be to declare as erroneous the understanding of the House of Representatives of rules of its own making, binding upon it only by its own choice." *Metzenbaum*, 675 F.2d at 1288. Instead, the Court "must assume that the House [and the Senate] acted in the belief that its conduct was permitted by its rules, and deference rather than disrespect is due that judgment." *Id.*

It is only in the rarest of circumstances where the constitutional powers of other branches of the government were allegedly encroached upon, or where the fundamental rights of third parties were "jeopardized by Congressional failure to follow its own procedures," *id.* at 1287, that courts have reviewed challenges to the CRA or other congressional procedures. None of these

exceptions apply to the alleged CRA violations here, as addressed below.

*First*, when courts have reached the merits of facial constitutional challenges to non-procedural aspects of otherwise procedural statutes like the CRA, it is because those statutes are alleged to encroach upon powers committed to another branch of the government. This exception is reflected in *Bernhardt*, where the Ninth Circuit reviewed claims that the CRA's disapproval provision (including the joint resolution enacted pursuant to it) violated separation-of-powers principles and interfered with the Take Care Clause. 946 F.3d at 561. Because the substantive acts were allegedly not amended through the constitutionally required process of bicameralism and presentment, the plaintiff in *Bernhardt* argued that the agency retained all authority delegated by Congress in those acts, meaning the joint resolutions of disapproval enacted pursuant to the CRA prevented the agency from implementing its constitutional duty to faithfully execute the laws. *Id*. at 561-62. While the Ninth Circuit did not discuss the issue of nonjusticiability when it ruled against the plaintiff's claims on the merits, these claims are fundamentally different from those at issue here because they alleged that the CRA itself impinged on the Executive Branch's constitutional authority to faithfully execute the law. *See id.* (arguing that the CRA prevented Interior from implementing its duty under the Take Care Clause). Those constitutional claims did not second-guess Congress's choice to use CRA procedures in that particular case or Congress's compliance with those procedures.

Similarly, the Tenth Circuit reviewed a facial constitutional challenge arguing that the CRA impermissibly treaded on executive authority by permitting the use of joint resolutions of disapproval to preclude agency rules from taking effect. *See Citizens for Const. Integrity*, 57 F.4th at 763-65. While that court did not consider (and the parties did not brief) the issue of nonjusticiability in denying the plaintiffs' claim, their separation-of-powers challenge there targeted alleged encroachment on executive authority by the CRA itself, not Congress's decision to use the CRA's procedures or its compliance with those procedures in that instance. *See id.*

Here, Plaintiffs' Tenth Amendment claim is distinguishable from those in *Bernhardt* and *Citizens for Constitutional Integrity* because it ultimately turns on whether Congress should have employed CRA procedures when reviewing EPA waivers that Plaintiffs contend are not "rules,"

*see supra* Section I.B.—a purely procedural (i.e., political) question that is nonjusticiable.

*Second*, regarding Counts I, II, IV, V, and VI, Plaintiffs do not plausibly contend that the CRA procedures utilized to adopt the joint resolutions of disapproval "ignore constitutional restraints or violate fundamental rights" such that these claims are justiciable. *NLRB v. Noel Canning*, 573 U.S. 513, 551 (2014); *see also Common Cause v. Biden*, 909 F. Supp. 2d 9, 28 (D.D.C. 2012) ("[T]o present a justiciable challenge to congressional procedural rules, Plaintiffs must identify a separate provision of the Constitution that limits the rulemaking power."). The closest Plaintiffs come is suggesting Defendants have invaded "the rights of the individual States," *see* ECF 157 ¶ 167 (citation omitted). But Tenth Amendment rights protect state sovereignty and are not traditionally regarded as "fundamental" individual rights akin to those protected under the Fourteenth Amendment. *See District of Columbia v. Heller*, 554 U.S. 570, 579-80 (2008) ("[T]he Tenth Amendment ... deal[s] with the exercise or reservation of powers, not rights."). In any event, California has no constitutional right (let alone a fundamental right) not to have Congress invalidate its CAA waivers pursuant to expedited legislative procedures. Thus, this exception is inapplicable.

*Third*, in dicta the Supreme Court has suggested that claims about congressional procedures being used without "a reasonable relation between the mode or method of proceeding ... and the result ... sought to be attained" may be justiciable. *Noel Canning*, 573 U.S. at 550-51 (quoting *Ballin*, 144 U.S. at 5).[10] But Plaintiffs cannot meet the heavy burden of showing that there was no reasonable relation between the expedited procedures Congress used under the CRA (including their conclusion that waivers are "rules" under that statute due to likely

---

[10] Notably, this exception has apparently not been applied in any subsequent case after *Ballin*'s pronouncement. *See* John C. Roberts, *Are Congressional Committees Constitutional?: Radical Textualism, Separation of Powers, and the Enactment Process*, 52 Case W. Rsrv. L. Rev. 489, 532 (2001). It has largely been ignored, *see, e.g., Rangel*, 20 F. Supp. 3d at 168-69 ("[T]he authority possessed by the House to make its own rules is bounded only by 'constitutional restraints and fundamental rights.'"), or even subsumed as a second step under the constitutional limits exception, *see Massie v. Pelosi*, 590 F. Supp. 3d 196, 231 n.25 (D.D.C. 2022) ("Because the Court concludes that the House has not 'ignore[d] constitutional restraints or violate[d] fundamental rights,' … it need not proceed to the next step of the inquiry under *Ballin*, namely whether there is 'a reasonable relation between the mode or method of proceeding established by the rule and the result which is sought to be attained[.]'" (quoting *Ballin*, 144 U.S. at 5)).

far-reaching impacts on emissions standards outside California) and the outcome of ending the CAA waivers.  *Cf. Ballin*, 144 U.S. at 6.  Indeed, determining the procedural rules that will apply when considering specific legislation, including whether a supermajority is necessary to end Senate debate, is a quintessentially legislative choice, the wisdom of which may not be second-guessed by courts.  *See Common Cause*, 909 F. Supp. 2d at 31 (noting, in rejecting justiciability of challenge to the Senate's cloture rule, that "absent a clear constitutional restraint … it is for the Senate, and not this Court, to determine the rules governing debate").

## III.    Plaintiffs' separation-of-powers claim lacks merit

With respect to Plaintiffs' separation-of-powers claim, their first theory is that the joint resolutions of disapproval here exceeded Congress's legislative power because they allegedly "declar[ed] … the rights of an individual party under a preexisting federal statute" rather than "prescrib[ing] general rules."  *See* ECF 157 ¶ 154.  But that argument is at odds with *Bernhardt*, which held that by enacting a joint resolution of disapproval, "Congress amended the substantive environmental law" "even though [the joint resolution] did not state that it constituted an amendment to" the governing statutes at issue there.  946 F.3d at 562.  Similarly, while Congress here did not explicitly amend the text of the CAA when it nullified the CAA waivers, it still effectively amended the substantive law by denying EPA the authority to grant these waivers or any substantially similar ones in the future.  *See* 5 U.S.C. § 801(b)(2).  Additionally, far from applying exclusively to California, this amendment to the substantive law also prevents other states from adopting the same regulations that California had promulgated, *cf.* 42 U.S.C. § 7507, thus barring the establishment of a particular alternative national emissions standard.[11]

Plaintiffs' second theory is that the Senate violated the separation of powers by adopting a procedural rule that gave the Executive Branch "unbridled discretion to trigger extraordinary legislative procedures" whenever the agency denominates an action as a "rule" under the CRA, unlawfully permitting the Executive to "coercive[ly] influence," and "intru[de]" upon Congress's

---

[11] In any event, when Congress enacts a law, the separation of powers does not require that it apply to more than one particular case.  *See, e.g.*, *Bank Markazi v. Peterson*, 578 U.S. 212, 234 (2016).

rulemaking authority, ECF 157 ¶¶ 155-57. As an initial matter, the House agrees with the United States that Plaintiffs here present a nonjusticiable political question because they contest the Senate's decision to use CRA procedures rather than the filibuster rule when debating the joint resolutions. ECF 172 at 25-26; *see supra* Section II. The House also concurs with the United States that Plaintiffs completely mischaracterize the procedural rule that they purport to challenge. ECF 172 at 26-28. But in any event, "[t]he separation-of-powers principle ... do[es] not prevent Congress from obtaining the assistance of its coordinate Branches," *Mistretta v. United States*, 488 U.S. 361, 372 (1989), meaning the Constitution does not bar Congress from citing or relying upon the Executive Branch's analysis when making legal determinations, including regarding the meaning of "rule" under the CRA. Doing so does not mean that Congress has been coerced or somehow relinquished its rulemaking authority to the Executive. Plaintiffs' argument is also belied by the facts: During the entire review process here, Congress retained full authority to decide whether the waivers were covered by the CRA and whether to pass joint resolutions of disapproval, and it lawfully exercised that authority in accordance with the Rulemaking Clause. Indeed, once the EPA had fulfilled its obligations under the CRA, 5 U.S.C. § 801(a), it had no role to play in Congress's subsequent passing of the joint resolutions of disapproval, *see* 5 U.S.C. § 802. The CRA itself directly acknowledges Congress's perennial rulemaking power, 5 U.S.C. § 802(g)(2), which is not diluted or relinquished by approvingly citing an agency's interpretation as part of that process. Had Congress disagreed with the EPA's determination, it could have simply declined to pass the joint resolutions challenged here. Because Plaintiffs fail to plausibly allege that the Executive Branch unconstitutionally usurped Congress's rulemaking authority here (or that Congress voluntarily relinquished it), their separation-of-powers claim fails out of the gate.

## CONCLUSION

For the reasons set forth above, Plaintiffs' claims are either nonjusticiable or lack merit, and the Court should grant Defendants' Motion to Dismiss.

Respectfully submitted,

*/s/ Matthew B. Berry*
Matthew B. Berry, VA Bar No. 42600
   *General Counsel*
Todd B. Tatelman, VA Bar No. 66008
   *Deputy General Counsel*
Kenneth C. Daines, D.C. Bar No. 1600753
   *Assistant General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515
(202) 225-9700
matthew.berry@mail.house.gov

*Counsel for Amicus Curiae, U.S. House of Representatives*

November 24, 2025

U.S. HOUSE OF REPRESENTATIVES AMICUS BRIEF ISO DEFENDANTS' MTD
(No. 4:25-cv-04966-HSG)