1
2
3
4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    STATE OF CALIFORNIA, et al.,              Case No. 25-cv-04966-HSG

8                    Plaintiffs,                **ORDER DENYING MOTIONS TO
                                                INTERVENE, MOTION FOR LEAVE
9            v.                                 TO FILE STATEMENT OPPOSING
                                                PENDENCY OF OTHER ACTION,
10   UNITED STATES OF AMERICA, et al.,          AND MOTIONS FOR LEAVE TO FILE
                                                MOTION TO DISMISS**
11                   Defendants.
                                                Re: Dkt. Nos. 43, 49, 61, 86, 92, 112, 158,
12
                                                170, 173, 174
13

14           Pending before the Court are several motions to intervene.  Dkt. Nos. 43, 49, 61, 86, 92,

15   112.  The Proposed Intervenors include several trade groups and the State of Texas.[1]  They move

16   to intervene as of right under Federal Rule of Civil Procedure 24(a)(2) and for permissive

17   intervention under Rule 24(b).  Additionally, Proposed Intervenors American Free Enterprise

18   Chambers of Commerce seek leave to file a statement opposing Plaintiffs' notice of pendency of

19   other actions, Dkt. No. 58, and several other Proposed Intervenors have moved for leave to file

20   motions to dismiss, Dkt. Nos. 170, 173, 174.  The Court finds these matters appropriate for

21   disposition without oral argument and the matters are deemed submitted.  *See* Civil L.R. 7-1(b).

22   _____

23   [1] The motions were filed by Zero Emission Transportation Association ("ZETA"), seeking to
     intervene as a Plaintiff; and American Free Enterprise Chamber of Commerce ("AmFree"),
24   Illinois Corn Growers Association, Indiana Corn Growers Association, Iowa Corn Growers
     Association, Kansas Corn Growers Association, Kentucky Corn Growers Association, Michigan
25   Corn Growers Association, Missouri Corn Growers Association, Nebraska Corn Growers
     Association, Tennessee Corn Growers Association, Texas Corn Producers, Wisconsin Corn
26   Growers Association, National Corn Growers Association, American Fuel & Petrochemical
     Manufacturers, American Petroleum Institute, and the National Association of Convenience
27   Stores, the State of Texas, the Alliance for Automotive Innovation and the National Automobile
     Dealers Association ("NADA"), Western States Trucking Association, Inc. ("WSTA"), and
28   Construction Industry Air Quality Coalition, Inc. ("CIAQC"), seeking to intervene as Defendants
     (collectively, the "Proposed Intervenors").

United States District Court
Northern District of California

For the reasons detailed below, the Court **DENIES** the motions.

## I. BACKGROUND

Plaintiff State of California and ten other states initially filed this action against the Federal Defendants in June 2025.[2]  *See* Dkt. No. 1 ("Compl.").  The case concerns three waivers that the State of California previously obtained from the EPA, which had allowed California to promulgate stricter emissions standards for new motor vehicles than those imposed under, and that would otherwise be preempted by, the Clean Air Act ("CAA").  *See* 42 U.S.C. § 7543(b)(1) (discussing waiver process).  The other Plaintiff States in this case adopted the same, stricter standards.  *See* 42 U.S.C. § 7507 (permitting other States, under certain circumstances, to decide to adopt and enforce "standards . . . identical to the California standards for which a waiver has been granted").  For example, one of the three preemption waivers authorized California's "Advanced Clean Cars II" regulation, which requires an increasing percentage of passenger cars and light-duty trucks sold in California to produce zero exhaust emissions over time.  *See* Cal. Code Regs., tit. 13, § 1962.4(c), (e)(1)(C).  By 2035, 80% of such vehicles must be zero-emission, while the other 20% may be plug-in hybrids.  *Id.*

However, in January 2025, President Trump signed an Executive Order that declared, *inter alia*, that "state emissions waivers that function to limit sales of gasoline-powered automobiles" should be "terminat[ed] where appropriate."[3]  Consistent with this Executive Order, in February 2025, the EPA Administrator and President Trump announced that the EPA would retroactively transmit the three waiver decisions at issue here to Congress for consideration under the Congressional Review Act ("CRA").[4]  The CRA requires a "Federal agency" that has promulgated a "rule" to submit the rule, along with its "proposed effective date" and other information, to

---

[2] Defendants include the United States, the Environmental Protection Agency ("EPA"), Lee Zeldin in his official capacity as EPA Administrator, and President Donald J. Trump.  *See* Compl. at ¶¶ 25–28.

[3] *See Unleashing American Energy* Executive Order (Jan. 20, 2025), available at https://www.whitehouse.gov/presidential-actions/2025/01/unleashing-american-energy/ (last visited December 2, 2025).

[4] *See* EPA, *Trump EPA to Transmit California Waivers to Congress in Accordance with Statutory Reporting Requirement* (Feb. 14, 2025), available at https://www.epa.gov/newsreleases/trump-epa-transmit-california-waivers-congress-accordance-statutory-reporting (last visited December 2, 2025).

United States District Court
Northern District of California

1    Congress and the Government Accountability Office ("GAO") "[b]efore a rule can take effect." 5

2    U.S.C. § 801(a)(1)(A). Congress has 60 session days from the agency's submission to adopt a

3    resolution to disapprove a particular rule. 5 U.S.C. § 802(a). The EPA submitted the three

4    waivers to Congress and the GAO in February, and the GAO determined that the CRA was

5    inapplicable to the waivers. *See* Dkt. No. 1-2, Ex. B. Despite this determination, Congress

6    adopted resolutions disapproving the three EPA preemption waivers. *See* H.J. Res. 87, H.J. Res.

7    88, and H.J. Res. 89. The President signed the resolutions on June 12, 2025. As a result,

8    California's relevant emissions regulations are currently preempted by the CAA and thus

9    unenforceable.

10   In this case, Plaintiffs argue that the EPA waivers were not "rules" that could be submitted

11   to Congress and disapproved under the CRA. *See, e.g.*, Compl. at ¶¶ 63–70, 119, 126–31, 137–41,

12   146–47. Accordingly, they bring several causes of action alleging that Defendants acted outside

13   their authority and the proper procedures in submitting the waivers to Congress, such that the

14   resulting resolutions "are unlawful, void, and of no effect." *See id.* at ¶¶ 114–188. As a corollary,

15   Plaintiffs argue that the three preemption waivers should thus be considered valid and in effect.

16   *See id.* at ¶¶ 183–86; *see also id.* at p. 39 ("Prayer for Relief") (seeking declaration "that the three

17   preemption waivers at issue are valid and in effect").

18   Plaintiffs initially filed this case in June 2025, the day the President signed the resolutions.

19   *See generally* Compl. The Proposed Intervenors filed their motions shortly thereafter, in July,

20   August, and September 2025. *See* Dkt. Nos. 43, 49, 61, 86, 92, 112.

21   **II.    MOTIONS TO INTERVENE**

22       **A.    Legal Standard**

23       To intervene as of right under Federal Rule of Civil Procedure 24(a), a movant must show:

24

25       (1) the intervention application is timely; (2) the applicant has a
         significant protectable interest relating to the property or transaction
26       that is the subject of the action; (3) the disposition of the action may,
         as a practical matter, impair or impede the applicant's ability to
27       protect its interest; and (4) the existing parties may not adequately
         represent the applicant's interest.

28

3

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (citing *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006)).  Courts deciding motions to intervene as of right are "guided primarily by practical considerations, not technical distinctions."  *See id.* (quotations omitted); *see also U.S. v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002) (stating that "equitable considerations" guide determination of motions to intervene as of right) (citation omitted).

To intervene by permission under Rule 24(b), a movant must show:

> (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common . . .  As with motions for intervention as of right, [a] finding of untimeliness defeats a motion for permissive intervention.

*League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1308 (9th Cir. 1997) (quotations omitted) (brackets in original).  "A motion for permissive intervention pursuant to Rule 24(b) is directed to the sound discretion of the district court."  *San Jose Mercury News, Inc. v. U.S. Dist. Court--N. Dist. (San Jose)*, 187 F.3d 1096, 1100 (9th Cir. 1999).  "In exercising its discretion" on this issue, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).

## B.    Motions to Intervene as Defendants

As discussed below, several different groups seek to intervene as Defendants in this case. The arguments both for and against their intervention are largely the same.  Because of the similarity in arguments across the Proposed Intervenors, the Court addresses the motions collectively, starting first with their motions to intervene as of right under Rule 24(a).

### i.    Rule 24(a)

Plaintiffs do not dispute that Proposed Intervenors' motions to intervene were timely.  *See, e.g.*, Dkt. No. 84.  Plaintiffs instead urge that (1) the Proposed Intervenors lack a protectable interest that could be impeded by the disposition of this case; and (2) the Proposed Intervenors' interests are adequately represented by the Federal Defendants.  Proposed Intervenors, for their part, argue that Plaintiff States' stricter emissions standards were commercially infeasible and, if

4

implemented, threaten the automotive and related industries. *See, e.g.*, Dkt. No. 49 at 1, 4–6, 11; Dkt. No. 92 at 11–12; Dkt. No. 112 at 6–7, 10. Proposed Intervenors argue, for example, that if the waivers are considered valid and the States' emissions standards go into effect:

- The demand for gasoline and its inputs, such as ethanol, will decrease. *See* Dkt. No. 49 at 6–7 (AmFree & Corn Growers Associations members); Dkt. No. 61 at 7–9 (American Fuel & Petrochemical Manufacturers, American Petroleum Institute, and the National Association of Convenience Stores members); Dkt. No. 86 at 10–11 (State of Texas).

- The cost to purchase internal combustion engine vehicles will increase. *See* Dkt. No. 49 at 6 (AmFree & Corn Growers Associations members).

- Business entities will be forced to purchase and rely on electric vehicles, which are less reliable, have higher upfront costs, and depend on charging infrastructure that is not yet available throughout the country. *See* Dkt. No. 112 at 7 (WSTA and CIAQC members).

- California's emissions standards will become *de facto* national emissions standards, and the above effects will be felt nationwide and implicate States' rights. *See* Dkt. No. 92 at 5 (Alliance for Automotive Innovation and the NADA members); *see also* Dkt. No. 86 at 7–10 (State of Texas).

In short, Proposed Intervenors argue that their economic interests will be harmed if the resolutions are deemed improper, the waivers take effect, and the Plaintiff States are allowed to enforce their stricter emissions standards.

The Court does not minimize the economic interests that Proposed Intervenors assert in the viability of the waivers at issue in this case. But for purposes of their motions to intervene, it is instructive to frame what this case is—and is not—about. As discussed in Section I above, the question before the Court is procedural: whether Defendants' use of the CRA to disapprove the waivers was appropriate. Critically, this case is not about whether the EPA's earlier decision to issue the waivers to the State of California was itself lawful, prudent, or good policy.

1    Accordingly, arguments that Proposed Intervenors may face distinct challenges if the Plaintiff

2    States' strict emissions standards are eventually implemented are ancillary to the actual issues

3    raised in this case. Despite the liberal policy in favor intervention and Proposed Intervenors' cited

4    interests, the Court therefore finds that intervention as of right is not appropriate here. Given the

5    nature of this case, the existing Federal Defendants will adequately represent Proposed

6    Intervenors' interests.

7         Generally, "[t]he burden of showing inadequacy of representation is minimal and satisfied

8    if the [party seeking intervention] can demonstrate that representation of its interests may be

9    inadequate." *Citizens for Balanced Use*, 647 F.3d at 898 (quotation omitted). In making this

10   determination, courts consider:

> (1) whether the interest of a present party is such that it will
> undoubtedly make all of a proposed intervenor's arguments;
> (2) whether the present party is capable and willing to make such
> arguments; and (3) whether a proposed intervenor would offer any
> necessary elements to the proceeding that other parties would neglect.

15   *Id.* (quotation omitted). "The most important factor in assessing the adequacy of representation is

16   how the interest compares with the interests of existing parties." *Id.* (quotation omitted). If the

17   proposed intervenor and the existing parties "share the same ultimate objective, a presumption of

18   adequacy of representation arises." *Id.* Additionally, "[t]here is also an assumption of adequacy

19   when the government is acting on behalf of a constituency that it represents, which must be

20   rebutted with a compelling showing." *Id.* (quotation omitted).

21        Here, Proposed Intervenors must overcome the presumption of adequacy since they share

22   the same ultimate objective with Federal Defendants: defending the use of the CRA and the

23   validity of the resolutions. And Federal Defendants are doing just that. They recently filed a

24   motion to dismiss the amended complaint, urging, *inter alia*, that Congress validly relied on the

25   CRA in passing the resolutions and disapproving the preemption waivers. *See* Dkt. No. 172.

26   Notably, some Proposed Intervenors have filed motions for leave to file their own motions to

27   dismiss, and their arguments mirror those of Federal Defendants. *See, e.g.*, Dkt. No. 173-1, Ex. A;

28   Dkt. No. 174-1, Ex. A. In their proposed motions to dismiss they likewise urge that Plaintiffs'

United States District Court
Northern District of California

claims are nonjusticiable and that the resolutions were lawfully enacted and are constitutionally valid. *Id.* None of Proposed Intervenors' arguments appear unique to them or tailored to their specific economic interests. This is unsurprising given the nature of this case. As noted above, the Court is not tasked with weighing the public versus private costs and benefits of the CAA, waivers, or emissions standards.[5] At least as currently presented, Proposed Intervenors' suggestion that Federal Defendants do not accurately represent their interests in this case thus appears purely speculative and does not overcome the presumption of adequacy.

Putting aside any concrete differences in the arguments that Federal Defendants may raise, Proposed Intervenors still argue that their interests may not otherwise be adequately represented because it is theoretically possible that there could be a presidential administration change or policy shift during the pendency of this case. *See, e.g.*, Dkt. No. 49 at 14; Dkt. No. 86 at 16–17; Dkt. No. 112 at 13–14. Proposed Intervenors state that "the federal government has a history of reversing its position in cases regarding EPA waivers." *See, e.g.*, Dkt. No. 49 at 14. But under this argument, the government could never adequately represent anyone's interests because a future administration change and policy shift are always possible. This would upend the presumption of adequacy, and the Court is not aware of any basis for such a sweeping rule. Moreover, if at some point in the future Federal Defendants were no longer adequately representing Proposed Intervenors' interests, they could renew their motions to intervene. But at this time the Court **DENIES** Proposed Intervenors' motions to the extent they seek intervention as of right.

### ii.    Rule 24(b)

Similarly, the Court declines to exercise its broad discretion to grant permissive intervention in this action. Even assuming Proposed Intervenors meet the initial requirements for

---

[5] The Court also has some reservations that if allowed to participate in this litigation, Proposed Intervenors would seek to introduce collateral issues about the legality of the waivers themselves. *See, e.g.*, Dkt. No. 92 at 15 (noting that as regulated entities, Proposed Intervenors would bear "the economic cost of compliance" with the emissions standards and any retroactive enforcement of the standards if Plaintiff States prevail); Dkt. No. 86 at 7–10, 14–16 (arguing that the waivers here would allow California alone "to dictate motor vehicle emission standards," which would infringe on the sovereignty of the State of Texas).

United States District Court
Northern District of California

permissive intervention, the Court finds that allowing them to intervene would needlessly complicate case management and compromise the efficiency of the litigation process since their interests are already adequately represented by Federal Defendants.  Such inefficiency is illustrated by the multiple motions for leave to file motions to dismiss that Proposed Intervenors have already filed.  *See* Dkt. No. 173-1, Ex. A; Dkt. No. 174-1, Ex. A.  These motions contain overlapping arguments and case law.  Both Plaintiffs and the Court, however, must comb through the briefs to make this determination.  Although some Proposed Intervenors suggest that they would be amenable to conditions to streamline the litigation and avoid duplication, they have also expressed some reticence about coordinating together and limiting the number of pages in future motions practice in light of their own, independent interests.  *See, e.g.*, Dkt. No. 112 at 16–18.  In short, allowing these myriad entities to intervene would create inefficiencies and unduly delay the case without meaningfully advancing the substance of the matter.  The Court **DENIES** Proposed Intervenors' motions to the extent they seek permissive intervention.

### C.    Motion to Intervene as Plaintiff

ZETA seeks to intervene in this case as a plaintiff and file a complaint in this case.  Dkt. No. 43.  The motion is unopposed.  *See* Dkt. No. 47.  Like the other Proposed Intervenors, ZETA is a trade association that argues it is entitled to intervene as of right under Rule 24(a) and for permissive intervention under Rule 24(b).  ZETA states that it represents "over three dozen companies committed to promoting electric vehicle adoption."  *See* Dkt. No. 43 at 1, 3–4.  ZETA's members include electric vehicle manufacturers, charging infrastructure manufacturers, network operators, battery manufacturers and recyclers, electricity providers, and critical minerals producers.  *See id.* at 3–4.  Accordingly, ZETA's members have an interest in ensuring the ongoing viability of the preemption waivers and Plaintiff States' stricter emissions standards.  ZETA thus seeks to challenge the use of the CRA to disapprove the three preemption waivers.  Although ZETA supports the waivers whereas the other Proposed Intervenors do not, ZETA's arguments for intervention fail for similar reasons as those discussed in Section II.B above.

The Court acknowledges that ZETA's members have strong economic interests in ensuring the viability of the waivers and protecting their investments in the electric vehicle industry.  But

ZETA does not sufficiently explain why Plaintiff States cannot adequately represent their interests given the nature of the case here. ZETA broadly suggests that the States "will not necessarily safeguard the[ir] private commercial interests." *See id.* at 7. But again, this case is not about the underlying policy in granting the waivers or permitting stricter emissions standards. Rather, this case is about whether Defendants' use of the CRA to disapprove the waivers was appropriate. On this issue, the existing Plaintiffs' interests appear to align with those of ZETA's members such that intervention as of right is unwarranted. Similarly, permitting permissive intervention would likely undermine the efficiency of the case without adding meaningfully to the substance. ZETA seeks to file its own complaint, but as it acknowledges, "ZETA's claims parallel those brought by the Plaintiffs." *See id.* at 9. It is not clear how anyone's interests would be served by allowing ZETA to file a "parallel" complaint. ZETA also offers little support for its assertion that it could contribute to the factual and legal development of this case in a way that Plaintiff States cannot. Again, the question before the Court is a procedural one that Plaintiff States seem equipped to address fully. The Court therefore **DENIES** ZETA's motion to intervene.

## III.    CONCLUSION

The Court **DENIES** the motions to intervene. Dkt. Nos. 43, 49, 61, 86, 92, 112. Because the Court has denied their motions to intervene, the Court similarly **DENIES** Proposed Intervenors' related motion to file a statement opposing Plaintiffs' notice of pendency of other actions, Dkt. No. 158, and motions for leave to file motions to dismiss, Dkt. Nos. 170, 173, 174.

The Court understands that in light of its order some Proposed Intervenors may wish to seek leave to file amicus briefs in support of Defendants' motion to dismiss. The deadline to file such motions was November 24, 2025. *See* Dkt. No. 162. However, to ensure an equal opportunity to be heard, the Court will permit any Proposed Intervenor who has not already done so to file a motion for leave to file an amicus brief by December 12, 2025.

**IT IS SO ORDERED.**

Dated:    12/2/2025

HAYWOOD S. GILLIAM, JR.
United States District Judge

9