Raymond B. Ludwiszewski (*pro hac vice*)
Rachel Levick (*pro hac vice*)
GIBSON, DUNN & CRUTCHER
1700 M Street, NW
Washington, DC 20036
Tel.: 202-955-8500
Fax: 202-467-0539
rludwiszewski@gibsondunn.com
rlevick@gibsondunn.com

Sean Howell, Bar No. 315967
GIBSON, DUNN & CRUTCHER
One Embarcadero Center
Suite 2600
San Francisco, CA 94111
Tel.: 415-393-8355
Fax: 415-801-7364
showell@gibsondunn.com

*Attorneys for Amicus Curiae,
The Alliance for Automotive Innovation and
The National Automobile Dealers Association*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| STATE OF CALIFORNIA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, et al., <br><br> Defendants. | Case No.   4:25-cv-04966-HSG <br><br> **BRIEF OF THE ALLIANCE FOR AUTOMOTIVE INNOVATION AND THE NATIONAL AUTOMOBILE DEALERS ASSOCIATION AS *AMICUS CURIAE* IN SUPPORT OF DISMISSAL** <br><br> Administrative Procedure Act Case <br> Action Filed: June 12, 2025 <br> Trial Date: none <br> Hearing Date: February 12, 2026 <br> Judge:  Honorable Haywood S. Gilliam |

# TABLE OF CONTENTS

Page

ARGUMENT ............................................................................................................................... 2

    I.    Plaintiffs' Statutory Claims Are Not Justiciable. ..................................................... 2

        A.    This Court Lacks Jurisdiction Over Plaintiffs' APA Claim. ....................... 3

        B.    This Court Lacks Jurisdiction to Set Aside EPA's Submission of the Waiver Decision to Congress. ..................................................................... 4

        C.    Plaintiffs Cannot Avoid These Jurisdictional Bars by Characterizing Their APA Claim as an "*Ultra Vires*" Claim. ............................................. 5

    II.    Plaintiffs' Separation-of-Powers Claim Is Not Justiciable. .................................... 6

        A.    Plaintiffs' Separation-of-Powers Claim Mischaracterizes the Clean Air Act and Preemption. ............................................................................. 6

    III.    Plaintiffs Fail to State a Claim Under Their Statutory or Constitutional Theories Because EPA Waiver Actions Are Rules, Not Orders. ............................ 7

    IV.    Plaintiffs Fail to State a Constitutional Claim Upon Which Relief Can Be Granted ................................................................................................................. 10

CONCLUSION .......................................................................................................................... 11

# TABLE OF CONTENTS

Page

**Cases**

*American Broad. Co., Inc. v. FCC*,
   682 F.2d 25 (2d. Cir. 1982)...................................................................................................8

*Appalachian Power Co. v. Train*,
   566 F.2d 451 (4th Cir. 1977).................................................................................................8

*Baker v. Carr*,
   369 U.S. 186 (1962)..............................................................................................................5

*Bank Markazi v. Peterson*,
   578 U.S. 212 (2016)............................................................................................................11

*Bennett v. Spear*,
   520 U.S. 154 (1997)..............................................................................................................3

*Bowen v. Georgetown Univ. Hosp.*,
   488 U.S. 204 (1988)..............................................................................................................8

*Cal. Dump Truck Owners Ass'n v. Nichols*,
   924 F. Supp. 2d 1126 (E.D. Cal. 2012).................................................................................3

*City of Seabrook, Tex. v. EPA*,
   659 F.2d 1349 (5th Cir. 1981)...............................................................................................3

*Cooper v. Tokyo Elec. Power Co.*,
   990 F. Supp. 2d 1035 (S.D. Cal. 2013).................................................................................5

*El-Shifa Pharm. Indus. Co. v. United States*,
   607 F.3d 836 (D.C. Cir. 2010)..............................................................................................4

*Nuclear Regul. Comm'n v. Texas*,
   605 U.S. 665 (2025)..............................................................................................................5

*Pulsifer v. United States*,
   601 U.S. 124 (2024)..............................................................................................................4

*Rangel v. Boehner*,
   20 F. Supp. 3d 148 (D.D.C. 2013) .......................................................................................4

*Safari Club Int'l v. Zinke*,
   878 F.3d 316 (D.C. Cir. 2017)..............................................................................................9

*Schlesinger v. Reservists Comm. to Stop the War*,
   418 U.S. 208 (1974)..............................................................................................................4

*United States v. Fla. E. Coast Ry. Co.*,
   410 U.S. 224 (1973) ................................................................................................................8

*Yesler Terrace Cmty. Council v. Cisneros*,
   37 F.3d 442 (9th Cir. 1994) .................................................................................................8, 9

**Statutes**

5 U.S.C. § 551 ...............................................................................................................................7, 8

5 U.S.C. § 801 ....................................................................................................................................2

5 U.S.C. § 804 ...............................................................................................................................7, 8

42 U.S.C. § 752 .......................................................................................................................6, 9, 10

42 U.S.C. § 7507 ...............................................................................................................................9

42 U.S.C. § 7543 .....................................................................................................................6, 7, 10

42 U.S.C. § 7607 ...........................................................................................................................3, 4

**Regulations**

87 Fed. Reg. 14,332 (Mar. 14, 2022) ................................................................................................9

87 Fed. Reg. 14,379 (Mar. 14, 2022) ................................................................................................9

13 Cal. Code Regs., § 1962.4(c)(1)(B) .............................................................................................1

13 Cal. Code Regs., § 1962.4(g)(1)(D) .............................................................................................9

**Constitutional Provisions**

U.S. Const., Article III .....................................................................................................................4

The Alliance for Automotive Innovation ("Auto Innovators") and the National Automobile Dealers Association ("NADA") submit this *amicus curiae* brief in support of Defendants' Motion to Dismiss. *See* Mot. to Dismiss Plaintiffs' Amended Complaint, ECF No. 172 ("Mot. to Dismiss").

Congress passed, and the President signed, three joint resolutions under the Congressional Review Act ("CRA") that revoked waivers of Clean Air Act preemption issued by the Environmental Protection Agency ("EPA) ("CRA Resolutions"). Those waivers had previously allowed Plaintiff California to enforce various state emissions standards, including its Advanced Clean Cars II emissions standards, and allowed other states—also Plaintiffs here—to adopt and enforce those California standards.

Advanced Clean Cars II included a number of requirements that ramped up in stringency over the next decade, including the express requirement that 100 percent of new passenger vehicles and light trucks sold in California to be zero-emissions vehicles by model year 2035. 13 C.C.R. § 1962.4(c)(1)(B). As Auto Innovators has observed, aspects of the Advanced Clean Cars II requirements were simply "never achievable." Alliance for Automotive Innovation, Automaker Statement on Senate Repeal of California Gas Vehicle Ban (May 21, 2025), https://www.autosinnovate.org/posts/press-release/senate-repeal-california-gas-vehicle-ban. Compliance with these mandates would require adjustments to vehicle and fleet mix production choices of Auto Innovators' members in a way that is out of step with consumer demand and available infrastructure. *See* Alliance for Automotive Innovation, California State Motor Vehicle Pollution Control Standards; Advanced Clean Cars II Regulations; Request for Waiver of Preemption; Docket ID # EPA-HQ-OAR-2023-0292 (February 27, 2024). The requirements would also force the manufacture and distribution of zero-emission vehicles in the Plaintiff states in excess of consumer demand, and would create significant allocation issues between Plaintiff states and non-Plaintiff states, forcing customers in Plaintiff states to cross state lines in order to obtain the combustion vehicles they demand. These distribution and allocation issues have material business and financial implications for NADA's dealer members, particularly for members in a Plaintiff state that borders a non-Plaintiff state.

The Advanced Clean Cars II requirements—if reinstated—will significantly impair the automotive industry's business interests and their ability to meet consumer demand. But Auto

Innovators and NADA's members do not just have an interest in the legality of the underlying EPA waivers that previously allowed California to adopt and enforce its Advanced Clean Cars II standards. They also have a substantial interest in the legality of the CRA Resolutions because their interests are *best* vindicated if the CRA resolutions are upheld in this action.  The CRA Resolutions prevent EPA from reissuing these waivers in "substantially the same form," meaning EPA cannot issue a waiver for Advanced Clean Ars II or the other preempted standards unless Congress subsequently authorizes such an action by law.  *See* 5 U.S.C. § 801(b)(2).  As such, Auto Innovators and NADA have a substantial interest in the legality of the CRA Resolutions themselves because they permanently and conclusively prevent Plaintiffs from enforcing the Advanced Clean Cars II program and the other preempted standards—now and in the future.

Plaintiffs raise unprecedented claims challenging the CRA Resolutions in an attempt to revive California's now-preempted emissions standards, including Advanced Clean Cars II.  But no court has ever overturned a joint resolution passed by Congress and signed by the President under the CRA.  That is because the CRA Resolutions are federal law, and they enjoy the same status as any other federal law.  Moreover, Plaintiffs' grievances lie with policy and legislative decisions made by Congress—a co-equal branch with oversight and appropriations power over the Executive Branch.  But Plaintiffs' disappointment with the results of a legislative process established and safeguarded by the Constitution cannot be redressed by this Court.  For the reasons set out in Defendants' Motion to Dismiss, and for the further reasons outlined herein, this Court should instead dismiss Plaintiffs' complaint in full.

## ARGUMENT

### I. Plaintiffs' Statutory Claims Are Not Justiciable.

Plaintiffs argue that EPA's decision to reclassify the waiver actions as rules and submit those rules to Congress pursuant to the CRA was arbitrary and capricious and not in accordance with law and therefore violated the Administrative Procedure Act ("APA").  Am. Compl. ¶¶ 120–141.

Plaintiffs' APA claim suffers from an obvious facial defect, as it is barred by Section 307 of the Clean Air Act.  The APA claim also suffers from a significant substantive defect.  Plaintiffs attempt to shoehorn their dispute with actions taken *by the Legislative Branch* into challenges to actions taken *by the Executive Branch*.  But Plaintiffs' putative injury is the result of a legislative process guaranteed

by the Constitution and as such, cannot be redressed by this Court—regardless of how Plaintiffs attempt to recharacterize or reframe their claims. This Court lacks jurisdiction to hear this claim and therefore must dismiss it. And this Court should reject Plaintiffs' attempt to repackage the APA claim as an "ultra vires" claim in order to sidestep these fatal jurisdictional defects.

### A. This Court Lacks Jurisdiction Over Plaintiffs' APA Claim.

Plaintiffs assert that EPA's actions in classifying the waiver actions as rules and submitting those rules to Congress violated the procedural requirements of the APA and were arbitrary and capricious. Am. Compl. ¶¶ 120–141. Defendants are correct that review by this Court is foreclosed because the challenged EPA actions are not "final agency actions." *See* Mot. to Dismiss at 18–19 (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)).

And if Plaintiffs are correct that the challenged EPA actions are "final agency actions," the unambiguous text of Section 307 of the Clean Air Act requires that a petition for review of any final action taken under the Clean Air Act be filed in the D.C. Circuit (for "nationally applicable" final actions) or another appropriate circuit court (for "locally or regionally applicable" final actions). 42 U.S.C. § 7607(b)(1). Such a challenge cannot be filed in a district court. This section clearly applies to challenges to EPA final actions, but Section 307 has also been "broadly" interpreted "as applying to any other challenges that have the practical effect of upsetting EPA's final action or that are closely related to such final action." *Cal. Dump Truck Owners Ass'n v. Nichols*, 924 F. Supp. 2d 1126, 1139 (E.D. Cal. 2012), *aff'd*, 784 F.3d 500 (9th Cir. 2015).

Here, the Section 209(b) waivers previously granted to California were issued under the Clean Air Act and fall within the scope of Section 307's jurisdictional mandate. Assuming Plaintiffs are correct that EPA's decisions to classify the waiver actions as rules and submit those rules to Congress are final agency actions, those decisions are "closely related to" EPA's actions granting the waivers, and are thus subject to Section 307's jurisdictional requirements. *Nichols*, 924 F. Supp. 2d at 1139.

Moreover, even if Plaintiffs had properly filed this action in an appropriate Court of Appeals, their APA claim would still be time-barred. Section 307 requires that a petition for review must be filed "within sixty days from the date notice of such promulgation, approval, or action appears in the Federal Register." 42 U.S.C. § 7607(b)(1); *see also City of Seabrook, Tex. v. EPA*, 659 F.2d 1349,

1370 (5th Cir. 1981) (upholding the sixty-day review requirement as a valid mechanism to prevent piecemeal attacks on the same action). Here, EPA classified the waiver decisions as rules and submitted them to Congress for review in February 2025, and the present action was filed more than sixty days later on June 12, 2025. Am. Compl. ¶ 74; *see generally* Compl. (filed June 12, 2025).[1]

### B. This Court Lacks Jurisdiction to Set Aside EPA's Submission of the Waiver Decision to Congress.

Plaintiffs' claim that EPA's submission of the waiver decisions to Congress violated the APA faces an additional obstacle: it is nonjusticiable. Am. Compl. ¶¶ 120–141. The submission of the waivers to Congress was an Executive communication with a co-equal branch. There are no APA procedural requirements that attach to the simple action of communication between the Executive Branch and Congress. To grant the requested relief, this Court would have to stretch beyond the bounds of its Article III authority and determine the circumstances under which the Executive Branch cannot communicate with its legislator.

The political question doctrine is part of "the concept of justiciability, which expresses the jurisdictional limitations imposed upon federal courts by the 'case or controversy' requirement of Art[icle] III." *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 215 (1974). "The political question doctrine is essentially a function of the separation of powers, and it excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch." *Rangel v. Boehner*, 20 F. Supp. 3d 148, 166 (D.D.C. 2013), *aff'd*, 785 F.3d 19 (D.C. Cir. 2015) (quoting *El-Shifa Pharm. Indus. Co. v. United States*, 607 F.3d 836, 840 (D.C. Cir. 2010) (en banc)) (quotation marks omitted).

---

[1] It is true that EPA's classification of the waiver decisions as rules and submission to Congress for review in February 2025 were not published in the Federal Register. *See* 42 U.S.C. § 7607(b)(1). But Section 307's "text and context" sheds light on the scope of the time limit. *Pulsifer v. United States*, 601 U.S. 124, 141 (2024). Congress included a non-exhaustive list of EPA actions subject to judicial review under Section 307(b)(1), some of which EPA does not currently publish in the Federal Register. *See, e.g.*, Letter from Michael Harris, Division Director, U.S. EPA Region 5 to Hima Draksharam, Environmental Analyst, TC Energy (June 13, 2025), available at https://www.epa.gov/system/files/documents/2025-06/anr-pipeline-co.-response_-6-13-25.pdf (EPA determination on operating limits under Hazardous Air Pollutant regulations promulgated under Section 112 authority).

To determine whether a dispute presents a nonjusticiable political question, courts consider whether the case involves "a textually demonstrable constitutional commitment of the issue to a coordinate political department"; "a lack of judicially discoverable and manageable standards for resolving it"; "the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion"; or "the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government," among other factors. *Baker v. Carr*, 369 U.S. 186, 217 (1962). If *any* one of these factors is "inextricable from the case," the court should dismiss the case as non-justiciable because it involves a political question. *Id*.

The decision on when and how the Executive can communicate with Congress is a political question for the Executive, not the courts, to decide. *See Baker*, 369 U.S. at 216. There are no "judicially discoverable and manageable standards" for resolving when and how the Executive can communicate with Congress. *Id.* at 217. It is impossible to decide if a communication is proposed "without an initial policy determination of a kind clearly for nonjudicial discretion." *Id*. And it is impossible to find a communication invalid without "expressing lack of the respect due to coordinate branches of government." *Id*. Because intra-government communication implicates several of the *Baker* criteria, it is among the areas that courts have deemed to involve political questions. *See Cooper v. Tokyo Elec. Power Co.*, 990 F. Supp. 2d 1035, 1041 (S.D. Cal. 2013) (whether a foreign government had adequately communicated with the Executive Branch was a nonjusticiable political question).

For this reason, too, Plaintiffs' attempt to challenge EPA's submission of the waiver actions to Congress for CRA review is nonjusticiable and must be dismissed.

### C. Plaintiffs Cannot Avoid These Jurisdictional Bars by Characterizing Their APA Claim as an "*Ultra Vires*" Claim.

Plaintiffs separately challenge the same reclassification and submission of the waiver actions as "ultra vires." But Plaintiffs' attempt at artful pleading cannot provide an escape hatch from the obvious jurisdictional defects in their APA claim. *See Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 681 (2025) (holding that an *ultra vires* claim is limited to instances where an agency acted "in excess of its delegated powers and contrary to a specific prohibition in a statute." (quotation marks omitted)).

That Plaintiffs' *ultra vires* claim is, at its heart, an APA claim is obvious from its content. Plaintiffs complain that the EPA Defendants improperly reclassified the waiver actions as rules and submitted them to Congress "without any public process or explanation for their change in positions." Am. Compl. ¶ 143. Plaintiffs also complain that "EPA Defendants are prohibited from promulgating rules without following statutory rulemaking procedures." *Id.* ¶ 144. These are complaints properly brought under the APA (if such a challenge was timely brought before an appropriate Court of Appeals, which it is not).

## II.  Plaintiffs' Separation-of-Powers Claim Is Not Justiciable.

### A.  Plaintiffs' Separation-of-Powers Claim Mischaracterizes the Clean Air Act and Preemption.

Plaintiffs' first separation-of-powers theory is based on a mischaracterization of the Clean Air Act's waiver provisions and the presumption of federal preemption of state regulations.

*First*, Plaintiffs allege that "[t]he Clean Air Act leaves EPA no discretion but to grant every waiver to which a single named party (the State of California) is entitled by the statute's terms." Am. Compl. ¶ 151. This characterization of the Clean Air Act is inaccurate. The *default* presumption under the Clean Air Act is the preemption of state standards. 42 U.S.C. § 7543(a) ("No State or any political subdivision thereof shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines subject to this part."). *Only if* the EPA Administrator determines that California's standards meet certain requirements shall EPA grant a preemption waiver. *Id.* § 7543(b)(1)(A)–(C).

When Congress authorized the EPA to regulate emissions from new motor vehicles, 42 U.S.C. § 7521(a), it preempted States from setting their own vehicle emissions standards, *id.* § 7543(a). It did so to prevent the automotive industry from having to comply with numerous, separate standards, thereby minimizing economic strain on the industry and reducing costs for consumers. *See* S. Rep. No. 403, 90th Cong., 1st Sess., 33 (1967) ("The [auto] industry, confronted with only one potential variation, will be able to minimize economic disruption and therefore provide emission control systems at lower costs to the people of the Nation."); H. Rep. No. 728, 90th Cong., 1st Sess., 21–23 (1967) ("The committee feels that the problems faced by the automobile manufacturing industry arising out

of identical Federal and State standards, separately administered, would be difficult for the industry to meet since different administration could easily lead to different answers to identical questions.").

Congress gave EPA the authority to "waive" this preemptive effect for California under certain conditions. 42 U.S.C. § 7543(b)(1). If EPA determines that those conditions are met, EPA shall permit California to adopt and enforce vehicle emissions standards. EPA has considerable discretion in determining whether those conditions have been met. *See, e.g.*, *id.* § 7543(b)(1)(A)–(B) ("No such waiver shall be granted if [EPA] finds that the determination of [California]" that the standards are at least as protective as the applicable Federal standards "is arbitrary and capricious" or if EPA finds that California "does not need such State standards to meet compelling and extraordinary conditions").

*Second*, starting from this mischaracterization of the statute, Plaintiffs analogize an EPA waiver to an adjudication, asserting that an EPA action to grant a waiver is akin to "a court judgment finding no preemption." Am. Compl. ¶ 152. Plaintiffs argue that "Congress lacks constitutional power to declare, in the first instance or on review, the rights of an individual party under a preexisting federal statute." *Id.* ¶¶ 153–154. And because declaring the rights of an individual under a preexisting statute is the duty of the other branches, Plaintiffs insist that Congress overstepped its authority in declaring the waivers void under the CRA. But as explained below, *infra* Part III, EPA waiver actions are rules, not adjudications, and they are precisely the kind of policy judgment properly evaluated by Congress under the CRA (or, with respect to the waiver grant itself, delegated by Congress to the EPA).

### III. Plaintiffs Fail to State a Claim Under Their Statutory or Constitutional Theories Because EPA Waiver Actions Are Rules, Not Orders.

Even if the Court had subject-matter jurisdiction to consider these statutory or constitutional claims—and it does not—each of Plaintiffs' claims fails on the merits based on a common flaw. According to Plaintiffs, "orders" are excluded from review under the CRA, and here, Congress incorrectly concluded that EPA's waiver actions are "rules" instead of "orders" for purposes of CRA review. But the waiver actions are best classified as "rules" that are reviewable under the CRA.

The CRA adopts the broad definition of "rule" from the APA. *See* 5 U.S.C. § 804(3). The APA defines "rule" as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy." *Id.* § 551(4). The CRA

does include adjudicatory orders in the scope of a "rule," and it explicitly excludes three other types of actions from the definition, including "rule[s] of particular applicability," "rule[s] relating to agency management or personnel," and rules related to an agency practice or procedures that "do[] not substantially affect the rights or obligations of non-agency parties." *Id*. § 804(3). By contrast, an "order" under the APA is "the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making but including licensing." *Id.* § 551(6).

Courts have stated that rules of general applicability are those which impact many individuals or stakeholders, are prospective in nature, and are designed to prescribe a policy in enforcing a statute.[2] *See, e.g.*, *United States v. Fla. E. Coast Ry. Co.,* 410 U.S. 224, 246 (1973); *Yesler Terrace Cmty. Council v. Cisneros*, 37 F.3d 442, 448 (9th Cir. 1994) (holding that a "determination that Washington's eviction procedures meet regulatory due process standards" is a rule, not an order, because it had "no immediate, concrete effect on anyone" and "affected the rights of a broad category of individuals not yet identified"). "[O]nly rules have legal consequences 'for the future.'" Truck Renting & Gas Assn's Br. as Amicus Curiae, ECF No. 179-1, at 5 (quoting *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 216–17 (1988) (Scalia, J., concurring)).

When EPA grants a Clean Air Act preemption waiver, the effect of that waiver action is that California can adopt and enforce its own state emissions regulations, which in turn can be adopted by states across the country. EPA's waiver actions therefore have all the characteristics of a rule—they impact many individuals or stakeholders, are prospective in nature, and are designed to prescribe a policy in enforcing (or here, declining to enforce the preemptive effect of) a statute. *Yesler*, 37 F.3d at 448.

---

[2] Rules of particular applicability are rules addressed to specific, identified entities. *American Broad. Co., Inc. v. FCC*, 682 F.2d 25, 31–32 (2d. Cir. 1982) (explaining that a rule is one of "particular applicability" if it is "addressed to and served upon named persons"). In *American Broadcasting*, the Second Circuit relied on the APA's legislative history to explain that a rule of particular applicability is a rule that is served upon a named person *rather than being published in the Federal Register. Id.* In other words, rules of particular applicability were added to the APA definition of "rule" to avoid filling the Federal Register with masses of particularized rule making, such as rate setting, that do not "directly affect[] pre-existing legal rights or obligations." *Id.* (quoting *Appalachian Power Co. v. Train*, 566 F.2d 451, 455 (4th Cir. 1977) (internal quotations omitted)).

It is indisputable that California's state emissions standards impact numerous individuals and stakeholders, including manufacturers, dealers, and customers. California's Advanced Clean Cars II standards, for example, are designed on their face for widespread adoption—not just by California, but also by multiple states pursuant to Section 177 of the Clean Air Act ("Section 177 states"). The regulations include provisions for pooling zero-emission vehicles sales across the states that adopt the ZEV regulations. Cal. Code Regs., tit. 13, § 1962.4(g)(1)(D). California and the other Section 177 states are expected to account for approximately *forty percent* of new light-duty vehicle registrations. *See, e.g.*, "Section 177 States Regulation Dashboard," *available at* https://ww2.arb.ca.gov/our-work/programs/advanced-clean-cars-program/states-have-adopted-californias-vehicle-regulations (last visited December 11, 2025); *cf.* 87 Fed. Reg. 14,332, 14,379 (Mar. 14, 2022) (explaining that Advanced Clean Cars I would "affect manufacturers nationwide" in part because of the sixteen Section 177 States who adopted the regulations). As a result, EPA's action to grant the waiver for Advanced Clean Cars II—if reinstated—will have a nationwide impact.

In addition, EPA's waivers are prospective in nature because they "ha[ve] a definitive effect on individuals only after the rule subsequently is applied." *Yesler*, 37 F.3d at 448. In *Yesler*, the Ninth Circuit concluded that an agency determination "ha[d] all the hallmarks of a rule," in part because it "had no immediate, concrete effect on anyone," and instead merely permitted the state agency to take action in the future. *Id*. Likewise, EPA's actions to allow California to adopt and enforce various emissions standards are felt by manufacturers, dealers, and customers in the future—the waiver decisions do not "bind parties by *retroactively* applying law to their past actions." Truck Renting & Gas Assn's Br. as Amicus Curiae, at 8 (quoting *Safari Club Int'l v. Zinke*, 878 F.3d 316, 333 (D.C. Cir. 2017) (emphasis added)). The Clean Air Act also requires that California provide sufficient "lead time" for compliance with its standards and that the Section 177 States provide "two years" of lead time before the commencement of the model year for which the standards apply. *See* 42 U.S.C. §§ 7507, 7521(a). This underscores the forward-looking nature of EPA's waiver actions.

Further, emissions standards are plainly viewed by CARB as a prescription of agency policy, and the EPA waiver actions allow California to adopt and enforce these policies. For example, former CARB chair Liane Randolph stated that the Advanced Clean Cars II represented "a historic moment

for California, for [its] partner states, and for the world as [it] set forth this path towards a zero-emission future." *See* CARB Meeting Transcript 9 (Aug. 25, 2022), *available at* https://www.regulations.gov/document/EPA-HQ-OAR-2023-0292-0044. Recently, CARB has indicated its intent to retroactively enforce Advanced Clean Cars II by a Notice of Emergency Rulemaking if a court holds the CRA Resolutions invalid. Manufacturers Advisory Correspondence ECCD-2025-08, CARB (Aug. 25, 2025); Notice of Emergency Rulemaking at 6, CARB (Sept. 15, 2025). And in response to the CRA Resolutions, Governor Newsom signed an Executive Order touting that "California's policies and standards have spurred global innovation in zero-emission vehicles and technologies." Executive Order N-27-25 (June 12, 2025), https://www.gov.ca.gov/wp-content/uploads/2025/06/CRA-Response-EO-N-27-25_-ATTESTED.pdf. The view that the waiver actions are mere adjudications and not rules is thus wholly inconsistent with the importance attached to the standards by California itself.

Importantly, EPA only has the authority to grant waivers to CARB for standards that EPA would be able to implement as emissions regulations itself, further suggesting the waiver actions are equivalent to EPA rules. Section 202(a) of the Clean Air Act describes EPA's authority when promulgating emissions standards applicable to new motor vehicles. 42 U.S.C. § 7521(a)(1). This provision is incorporated by reference into the waiver requirements of Section 209(b). *Id.* § 7543(b)(1). As a result, EPA shall only grant a waiver for California's "standards and accompanying enforcement procedures" if those standards and procedures are "consistent with" the limits on authority that would apply if EPA were to promulgate the same rules itself.

If EPA attempted a separate action with the same contours and magnitude of California's Advanced Clean Cars II regulation, it would undoubtedly be considered a rule. EPA's action waiving federal preemption of a state agency rule having the same effect should not evade CRA review as an adjudication.

### IV. Plaintiffs Fail to State a Constitutional Claim Upon Which Relief Can Be Granted

Plaintiffs do not adequately allege constitutional violations, and their constitutional claims should likewise be dismissed. As correctly argued by the United States, Defendants did not violate separation-of-powers principles. *See* Mot. to Dismiss at 21–28. Plaintiffs allege that a waiver

10

proceeding is an adjudication that involves declaring the rights of an individual party under a preexisting statute, as opposed to the creation of new substantive law. Am. Compl. ¶¶ 152–154. As such, Plaintiffs allege that the CRA Resolutions usurped Executive authority. *See id*. (quoting *Bank Markazi v. Peterson*, 578 U.S. 212, 225 n.17 (2016)). This argument fails because the CRA Resolutions *did* "amend the law" under the *Bank Markazi* test. 578 U.S. at 215; *see also* Mot. to Dismiss at 22. As explained above, *supra* Part III, waiver actions are rules, not adjudications, and they entail precisely the kind of substantive law changes properly made by Congress.

## CONCLUSION

For the foregoing reasons, Auto Innovators and NADA respectfully request that this Court grant Defendant's Motion to Dismiss.

Dated: December 12, 2025

Respectfully submitted,

/s/   Rachel Levick
Raymond B. Ludwiszewski (*pro hac vice*)
Rachel Levick (*pro hac vice*)
GIBSON, DUNN & CRUTCHER
1700 M Street, NW
Washington, DC 20036
Tel.: 202-955-8500
Fax: 202-467-0539
rludwiszewski@gibsondunn.com
rlevick@gibsondunn.com

Sean Howell, Bar No. 315967
GIBSON, DUNN & CRUTCHER
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Tel.: 415-393-8355
Fax: 415-801-7364
showell@gibsondunn.com

*Attorneys for Amicus Curiae, The Alliance for Automotive Innovation and The National Automobile Dealers Association*