Jonathan Weissglass (CSB 185008)
Law Office of Jonathan Weissglass
1939 Harrison Street, Suite 150-B
Oakland, CA 94612
Telephone: 510-836-4200
E-mail: jonathan@weissglass.com

Attorney for *Amicus Curiae*
Greg Dotson

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STATE OF CALIFORNIA, *et al.*, | Case No. 4:25-cv-04966-HSG |
| Plaintiffs, | **BRIEF OF *AMICUS CURIAE* GREG DOTSON IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| UNITED STATES OF AMERICA, *et al.*, | |
| Defendants. | |

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ............................................................................................... 1

INTEREST OF *AMICUS CURIAE* ..................................................................... 2

DISCUSSION ..................................................................................................... 3

    I.     Congressional Review Act Background ................................................... 3

          A.     The Scope Of The CRA Is Limited To Rules ............................... 3

          B.     The Role Of The Government Accountability Office .................... 4

          C.     The Use Of The CRA Disapproval Process .................................. 6

    II.    EPA Waivers And The CRA ................................................................... 9

          A.     Clean Air Act Waivers Historically Have Not Been Subject To The CRA ...................................................................................... 9

          B.     The Reaction To The Finding That The CRA Is Inapplicable To Waivers .................................................................................... 10

          C.     The Unjustified Attempt To Apply The CRA To The 2025 Waivers ......... 11

    III.   The Proper Means Of Changing The Scope Of The CRA Is Legislative Amendment ......................................................................................... 15

    IV.   The Senate Rules Do Not Justify Applying The CRA To The Waivers ................. 16

CONCLUSION ................................................................................................. 18

APPENDIX ...................................................................................................... 19

1

## <u>TABLE OF AUTHORITIES</u>

2

**Federal Cases**

3

*INS v. Chadha*, 462 U.S. 919 (1983) ...........................................................................................3

4

**Federal Constitution and Statutes**

5

U.S. Const, Art. I, Sec. 5, Cl. 2 ...............................................................................................16

6

5 U.S.C.

7

§ 551 ............................................................................................................................3

8

§ 551(4) ........................................................................................................................3

9

§ 801, *et seq.* ...............................................................................................................1

10

§ 801(a)(1) ...................................................................................................................4

11

§ 801(a)(1)(A) ..............................................................................................................1

12

§ 801(a)(2) ...................................................................................................................5

13

§ 801(a)(3)(A) ..............................................................................................................5

14

§ 801(b)(1) ...................................................................................................................1

15

§ 801(b)(2) .................................................................................................................14

16

§ 801(c)(1)-(2) .............................................................................................................5

17

§ 802(a) ........................................................................................................................1

18

§ 802(c)-(f) ...................................................................................................................1

19

§ 802(d)(2) ...................................................................................................................1

20

§ 802(g) ......................................................................................................................16

21

§ 802(g)(1) .................................................................................................................16

22

§ 802(g)(2) .................................................................................................................16

23

§ 804(2) ........................................................................................................................5

24

§ 804(3) ........................................................................................................................3

25

§ 804(3)(A) .................................................................................................................10

26

§ 804(3)(A)-(C) ............................................................................................................3

27

§ 807 ............................................................................................................................3

28

42 U.S.C.

    § 7543(a) ...................................................................................................9

    § 7543(b) ...................................................................................................9

    § 7543(b)(1)(C) .......................................................................................10

**Enacted Federal Legislation**

Contract with America Advancement Act of 1996, H.R. 3136, 104th Cong. (1996) (§ 251, 110 Stat. 868-74) ...................................................................................4

Pub. L. 118–5, div. B, title III, § 270 (June 3, 2023), 137 Stat. 33 ....................15

Pub. L. 118–97, § 2 (Oct. 1, 2024), 138 Stat. 1573 ...........................................15

S.J.Res. 6, 107th Cong. (2001) ...........................................................................6

S.J.Res. 14, 117th Cong. (2021) .........................................................................7

**Unenacted Federal Legislation**

Agency Accountability Act of 1980, S.1945, 96th Cong. (1980) ........................3

Department of the Interior, Environment, and Related Agencies Appropriations Act, 2024, H.R. 4821, 118th Cong. (2023) ...................................................11

H.R. 3056, 114th Congress (2015) ....................................................................15

H.R. 4468, 118th Congress (2023) ....................................................................10

H.R. 5034, 113th Congress (2014) ....................................................................15

Rulemaking Procedures Reform Act of 1985, S.1145, 99th Cong. (1985) .........4

S. 1072, 119th Congress (2025) .........................................................................11

S. 5038, 118th Congress (2024) .........................................................................11

**Congressional Record**

142 Cong. Rec. S3122 (Mar. 28, 1996) ...............................................................4

171 Cong. Rec. S3018 (May 21, 2025) ..............................................................15

**Federal Register**

Notice of Decision, Environmental Protection Agency, California State Motor Vehicle Pollution Control Standards; Advanced Clean Car Program; Reconsideration of a Previous Withdrawal of a Waiver of Preemption, 87 Fed. Reg. 14332 (Mar. 14, 2022) ............9

Notice of Decision, Environmental Protection Agency, California State Motor Vehicle
     Pollution Control Standards; Waiver of Federal Preemption, 68 Fed. Reg. 19811
     (Apr. 22, 2003)...................................................................................................................9

U.S. EPA, California State Motor Vehicle and Engine Pollution Control Standards;
     Advanced Clean Cars II; Waiver of Preemption; Notice of Decision, 90 Fed. Reg. 642
     (Jan. 6, 2025)...................................................................................................................12

**Miscellaneous**

Kevin Bogardus & Robin Bravender, *How Biden Beat the Clock on Big Environmental
     Regs*, E&E News (June 12, 2024, 1:16 PM) ...................................................................8

Congressional Research Service, California and the Clean Air Act (CAA) Waiver:
     Frequently Asked Questions (May 9, 2025)..............................................................9, 12

Congressional Research Service, Majority Cloture for Nominations: Implications and the
     "Nuclear" Proceedings of November 21, 2013 (Dec. 6, 2013) ....................................17

Congressional Research Service, The Congressional Review Act (CRA): Frequently Asked
     Questions (Updated Nov. 12, 2021) ................................................................................6

Congressional Research Service, The Congressional Review Act: Determining Which
     "Rules" Must Be Submitted to Congress (Oct. 22, 2024) ...............................................3

Congressional Review Act: Federal agency rules challenged under the Congressional
     Review Act that passed both chambers, Ballotpedia.org.................................................8

Executive Order No. 12866 (1993)...............................................................................................9

Rachel Frazin, *Senate parliamentarian says lawmakers can't overturn California car rules —
     but Republicans may try anyway*, The Hill (Apr. 4, 2025) ...........................................12

GAO Decision B-334309, *Environmental Protection Agency—Applicability of the
     Congressional Review Act to Notice of Decision on Clean Air Act Waiver of Preemption*
     (Nov. 30, 2023) .............................................................................................................10

GAO Letter B-337179, *Observations Regarding the Environmental Protection Agency's
     Submission of Notices of Decision on Clean Air Act Preemption Waivers as Rules Under
     the Congressional Review Act* (Mar. 6, 2025) ............................................................12

Internal Revenue Service: Applicability of the Congressional Review Act to Revenue
     Procedure 2018-38, B-330376 (Nov. 30, 2018) .............................................................6

Letter from Russell Vought to Gene Dodaro (June 18, 2025).......................................14

Office of Senator Mike Lee, One-Pager, 118th Congress, Stop CARB Act ....................11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Press release, Padilla, Schiff, Whitehouse Welcome Senate Parliamentarian's Reaffirmation
That California's Clean Air Act Waivers Not Subject to Congressional Review Act
(Apr. 4, 2025).............................................................................................................13

Molly Reynolds, *The Senate's Recent Actions on the Congressional Review Act*, Yale J. on
Reg. Notice & Comment (May 28, 2025)...................................................................13

Standing Rules of the Senate, Rule XXII(2).................................................................1

U.S. Environmental Protection Agency, Vehicle Emissions California Waivers and
Authorizations...........................................................................................................9

U.S. EPA. Hearings, Meetings, Proceedings, etc.: California State Motor Vehicle Pollution
Control Standards; Advanced Clean Cars II Regulations; Request for Waiver of
Preemption (Dec. 26, 2023)....................................................................................12

Uses of the Congressional Review Act during the Trump administrations: Trump
administration, second term (2025-2029), Ballotpedia.org ......................................7

U.S. Gov't Accountability Office, GAO/T-OGC-98-38, Congressional Review Act:
Implementation and Coordination (1998) ................................................................5

U.S. Gov't Accountability Office, GAO 06-601T, Perspectives on 10 Years of
Congressional Review Act Implementation (2006)......................................4, 5, 6, 8

U.S. Senate, About Senate Rules (2025) .....................................................................16

Brief of *Amicus Curiae* Greg Dotson in Opposition to Motion to Dismiss, Case No. 4:25-cv-04966-HSG

# **INTRODUCTION**

The Congressional Review Act creates an expedited process for Congress to enact a joint resolution to disapprove statutorily-defined Executive Branch agency rules. *See* 5 U.S.C. § 801, *et seq.* The CRA requires federal agencies to notify Congress upon finalizing a CRA-covered rule. 5 U.S.C. § 801(a)(1)(A). Congress can then pass a "joint resolution of disapproval" during a statutorily-prescribed window of time after the agency action was taken to overturn the rule. 5 U.S.C. §§ 801(b)(1), 802(a). A key feature of the law is the truncated process associated with consideration of resolutions of disapproval. *See* 5 U.S.C. § 802(c)-(f). In particular, debate in the U.S. Senate is limited, thereby avoiding a filibuster and allowing passage by a simple majority instead of requiring a three-fifths vote. *See* 5 U.S.C. § 802(d)(2); Standing Rules of the Senate, Rule XXII(2), *available at* https://www.rules.senate.gov/rules-of-the-senate. Nor can there be any amendments or certain procedural motions. 5 U.S.C. § 802(d)(2).

Since enactment of the CRA in 1996, Congress has relied upon the Government Accountability Office, an independent, nonpartisan agency within the Legislative Branch, to assist in the implementation of the law. The GAO has tracked agency compliance with the CRA and routinely advised Congress on the scope and applicability of the CRA. The GAO has issued approximately 70 legal decisions to advise Congress about whether an agency action is subject to the CRA. Until 2025, Congress relied upon these advisory opinions. This has ensured consistent and predictable application of the meaning and scope of the CRA.

For nearly 30 years, the Executive Branch attempted to faithfully comply with the CRA and where questions of applicability arose, the GAO provided a principled, independent analysis that explicitly informed Congress, the Executive Branch, states, and regulated parties about what agency actions were and were not subject to CRA review. Each of those parties acted accordingly based upon the shared understanding that developed from the interplay between the Executive Branch and the GAO: Members of Congress proposed legislation if they thought the scope of the CRA needed to be changed; the Executive Branch developed rules that factored in the possibility of congressional review under the Act; states and regulated parties assessed the durability of the regulatory landscape.

On May 21, 2025, the U.S. Senate, on a partisan basis, set a new precedent that radically deviates from the statute and the historic practice in Congress. The Senate now abdicates its responsibility for faithful implementation of the CRA to the Executive Branch via this precedent. The Executive Branch may now unilaterally, and without any guiding principle, expand the category of agency actions that receive expedited review in the U.S. Senate pursuant to the CRA, even when such actions are not within the statutory scope of the CRA.

Specifically, it had been established for decades and reaffirmed multiple times between 2022 and 2025 that EPA's waivers of preemption under the Clean Air Act were not subject to CRA review. Nevertheless, the May 2025 precedent purported to allow the ineligible EPA waivers to be overturned. This is an unheard-of deviation from past practice and a violation of the CRA's statutory language. The Senate has improperly eliminated the limits on the scope of the CRA that Congress carefully put in place.

## INTEREST OF *AMICUS CURIAE*

Greg Dotson is an Associate Professor at the University of Oregon School of Law. He has 20 years of experience working in the U.S. House of Representatives and the U.S. Senate. He began working as congressional staff in 1996, the year the CRA was enacted. He rose to hold senior staff positions in both chambers of Congress and gained extensive experience with the CRA. Most recently, he served as the Chief Counsel for the Senate Committee on Environment and Public Works in 2021 and 2022. In that capacity, he was directly involved in the consideration and passage of Senate Joint Resolution 14 in the 117th Congress, a resolution of disapproval pursuant to the CRA concerning an EPA rule addressing emissions from oil and gas facilities. As an academic, he has published scholarly articles about vehicle emissions standards, including the California waivers that are at issue in this case. His academic work has been cited by members of Congress in several *amicus* briefs but this is the first *amicus* brief he has submitted.

Professor Dotson offers this *amicus* brief with hope that it will provide the Court with helpful background information about the Congressional Review Act.

## DISCUSSION

**I.    Congressional Review Act Background**

### A.    The Scope Of The CRA Is Limited To Rules

The scope of the CRA is broad in subject matter but cabined to a "rule," primarily as defined by the Administrative Procedure Act. *See* 5 U.S.C. § 804(3). Through that cross-reference, a "rule" is defined as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency …." 5 U.S.C. § 551(4). A "rule" under the APA excludes an agency order (including the result of an adjudication), licensing, sanctions, relief, or failure to act. *See* 5 U.S.C. § 551; *see also* Congressional Research Service, The Congressional Review Act: Determining Which "Rules" Must Be Submitted to Congress (Oct. 22, 2024), *available at* https://www.congress.gov/crs-product/R45248.

The CRA further restricts the applicability of the statute's special criteria by excepting some agency actions from the definition of a "rule." Specifically, rules of "particular applicability"; rules relating to agency management or personnel; and rules of "agency organization, procedure, or practice that do[] not substantially affect the rights or obligations of non-agency parties" are excepted. 5 U.S.C. § 804(3)(A)-(C). The CRA also exempts "rules that concern monetary policy proposed or implemented by the Board of Governors of the Federal Reserve System or the Federal Open Market Committee." 5 U.S.C. § 807.

The scope of the CRA was a major issue during congressional consideration. Despite the exceptions and exemption discussed above, the lead Democratic proponent of the CRA expressed concern about the broad scope of the Act during its final legislative consideration. Throughout his career, Sen. Carl Levin (D-MI) was a champion of the concept of congressional review of agency rules. In 1979, shortly after joining the Senate, Sen. Levin introduced legislation to establish a legislative review of agency rules. Agency Accountability Act of 1980, S. 1945, 96th Cong. (1980), *available at* https://www.congress.gov/bill/96th-congress/senate-bill/1945. In 1985, after the Supreme Court found legislative vetoes unconstitutional in *INS v. Chadha*, 462 U.S. 919 (1983), Sen. Levin introduced revised legislation that proposed the resolution of disapproval

approach ultimately enacted by the CRA. Rulemaking Procedures Reform Act of 1985, S. 1145, 99th Cong. (1985), *available at* https://www.congress.gov/bill/99th-congress/senate-bill/1145. Sen. Levin's proposals had enjoyed a measure of bipartisan support, and his 1985 bill was cosponsored by Senate Majority Leader Bob Dole (R-KS).

While Sen. Levin's 1985 bill was not enacted, Congress ultimately passed the CRA more than a decade later as part of a larger legislative package. Contract with America Advancement Act of 1996, H.R. 3136, 104th Cong. (1996) (§ 251, 110 Stat. 868-74), *available at* https://www.congress.gov/bill/104th-congress/house-bill/3136. Noting estimates that 4,000 rules were issued each year at the time, Sen. Levin was concerned that, as drafted, the CRA applied to too many rules. 142 Cong. Rec. S3122 (Mar. 28, 1996), *available at* https://www.congress.gov/104/crec/1996/03/28/142/45/CREC-1996-03-28-pt1-PgS3114-2.pdf#page=9. Senator Levin said that the text was, "not exactly what I would have chosen to support, but it's close enough." *Id.* The estimates Sen. Levin cited turned out to be fairly accurate. In 2006, the GAO reported that it received approximately 15-20 rules each day from federal agencies that were subject to the CRA, and that approximately 42,000 rules had been subject to the CRA in its first decade of implementation. U.S. Gov't Accountability Office, GAO 06-601T, Perspectives on 10 Years of Congressional Review Act Implementation (2006), *available at* https://www.gao.gov/assets/gao-06-601t.pdf. Sen. Levin did not mention the possibility that the CRA would end up being applied to agency actions that were not even rules.

### B.    The Role Of The Government Accountability Office

The U.S. Government Accountability Office is "an independent, non-partisan agency that works for Congress." Https://www.gao.gov/about. As a Legislative Branch agency, the GAO serves Congress with a culture of nonpartisan expertise and has no obligation to accept Executive Branch orders. The GAO "provides Congress and federal agencies with objective, non-partisan, fact-based information to help the government save money and work more efficiently." *Id.*

The CRA requires federal agencies to provide their rules to the Comptroller General of the GAO. 5 U.S.C. § 801(a)(1). For "major" rules, the GAO subsequently provides Congress with a report assessing the promulgating federal agency's "compliance with the procedural steps"

required by law and Executive order, and the effective date of the rules is delayed for 60 days unless the President makes a determination that the need for such a delay is outweighed by other important considerations including health, safety, and national security. 5 U.S.C. § 801(a)(2), (a)(3)(A), (c)(1)-(2). A rule is considered "major" if the Administrator of the Office of Information and Regulatory Affairs of the Office of Management and Budget in the Executive Office of the President finds that the rule would have major economic effects. 5 U.S.C. § 804(2). This structure enhances Congress' ability to conduct oversight of the Executive Branch: The Executive Branch is legally required to submit rules for congressional review; the GAO, in the Legislative Branch, assesses Executive Branch compliance.

In 1998, the GAO presented information to Congress about 10 months of CRA implementation in 1996 and 1997. U.S. Gov't Accountability Office, GAO/T-OGC-98-38, Congressional Review Act: Implementation and Coordination (1998), *available at* https://www.gao.gov/assets/t-ogc-98-38.pdf. The GAO found that agencies were not consistently filing their rules with the GAO and delaying the effective date of rules as required by the CRA. The GAO presented this information to federal agencies and stated that they "experienced varying degrees of responses from the agencies." But the GAO stated that EPA's response was notable as that agency along with several others "took immediate and extensive corrective action to submit rules that they had failed to submit and to establish fail-safe procedures for future rule promulgation." *Id*. The GAO reported 10 years after CRA enactment that agency compliance had improved and the GAO "generally found that agencies complied with CRA's requirements." U.S. Gov't Accountability Office, GAO 06-601T, Perspectives on 10 Years of Congressional Review Act Implementation (2006), *available at* https://www.gao.gov/assets/gao-06-601t.pdf.

Despite federal agencies' efforts to comply with the CRA and submit covered rules to Congress for review, sometimes agencies have failed to submit an applicable rule for review – perhaps under the mistaken understanding that their action does not fall into the CRA's definition of a "rule." If a rule is not submitted to Congress, Congress could be deprived of its opportunity to review the rule. The CRA does not directly contemplate this possibility, but over the years Congress has developed an ad hoc approach to address this problem. Members of Congress

routinely request GAO's assistance in determining whether an agency action meets the definition

of a "rule" under the CRA. As the GAO has explained:

> Congress has opted to treat the receipt of a GAO opinion concluding that an agency action
> is a rule as triggering the statutory provisions that otherwise would have been triggered by
> the agency's submission. Thus, Congress has used GAO opinions to cure the impediment
> created by the agency's failure to submit the rule, protecting its review and oversight
> authorities.

Internal Revenue Service: Applicability of the Congressional Review Act to Revenue Procedure

2018-38, B-330376 (Nov. 30, 2018), *available at* https://www.gao.gov/products/b-330376.

       Accordingly, the importance of GAO legal decisions has grown over time. In the first 10

years of CRA implementation, members of Congress requested GAO's assistance eight times. U.S.

Gov't Accountability Office, GAO 06-601T, Perspectives on 10 Years of Congressional Review

Act Implementation (2006), *available at* https://www.gao.gov/assets/gao-06-601t.pdf. Such

requests have markedly increased in recent years, with some 13 of them in 2025 alone. *See*

https://www.gao.gov/legal/congressional-review-act/legal-decisions. In total, Congress has

requested GAO's assistance in these matters approximately 70 times over the last 30 years. *Id.*

## C.    The Use Of The CRA Disapproval Process

       The CRA was first successfully used by Congress and President George W. Bush in 2001

to negate a regulation related to ergonomic injuries promulgated by the Clinton Administration.

S.J.Res. 6, 107th Cong. (2001), *available at* https://www.congress.gov/bill/107th-congress/senate-

joint-resolution/6. The next successful use did not occur until President Trump's first term when,

in 2017 and 2018, Congress used the CRA to undo 16 rules finalized by the Obama

Administration. These included measures to protect streams from coal mining, to keep firearms

from the mentally ill, to protect consumers' privacy, to promote women's health, and to discourage

U.S. companies from bribing foreign officials. *See* Congressional Research Service, The

Congressional Review Act (CRA): Frequently Asked Questions 28-29 (Appendix A. Rules

Overturned Using the Congressional Review Act) (Updated Nov. 12, 2021), *available at*

https://www.congress.gov/crs_external_products/R/PDF/R43992/R43992.15.pdf#page=32.

1    After President Trump's first term, Congress and President Biden used the CRA three

2   times. Professor Dotson was personally involved in consideration of one of these resolutions. In

3   2020, the Trump Administration promulgated a rule to deregulate methane emissions from the oil

4   and gas sector and Congress passed a CRA resolution of disapproval to overturn this rule in 2021.

5   S.J.Res. 14, 117th Cong. (2021), *available at* https://www.congress.gov/bill/117th-

6   congress/senate-joint-resolution/14. President Biden signed that resolution into law. As Chief

7   Counsel for the Committee with jurisdiction over Senate Joint Resolution 14, Professor Dotson

8   was charged with helping to ensure that the resolution was properly considered. As part of that

9   process, he consulted with EPA, the GAO, and the Senate Parliamentarian, to ensure that the rule

10  fell within the scope of the CRA and that the resolution was properly drafted.

11    In President Trump's second term, in addition to the purported use of the CRA to overturn

12  the California emissions waivers at issue in this case, the CRA has been used to rescind 19 agency

13  rules. These rules include a rule that imposes a fee on emitted methane to discourage waste and

14  pollution; a rule that limits the use of off-road vehicles in Glen Canyon National Recreation Area;

15  rules that set efficiency standards for gas water heaters, walk-in coolers and freezers, and

16  commercial refrigerators and freezers; a rule that reduces toxic emissions from tire manufacturing;

17  a rule that protects marine archeological resources; an IRS rule regarding reporting of digital asset

18  sales; two rules issued by the Consumer Financial Protection Bureau; a rule that revises the process

19  of considering bank mergers; and a rule that limits emissions of persistent and bioaccumulative

20  hazardous air pollutants. *See* Uses of the Congressional Review Act during the Trump

21  administrations: Trump administration, second term (2025-2029), Ballotpedia.org, *available at*

22  https://ballotpedia.org/Uses_of_the_Congressional_Review_Act_during_the_Trump_administratio

23  ns#Trump_administration,_second_term_(2025-2029).

24    The CRA has seen its most use during periods of presidential transition, when a new

25  President has the opportunity to undo some of the last actions of the former President. But the

26  CRA has also served as an important congressional tool outside of those transition periods. Mere

27  introduction and consideration of a CRA resolution can serve as a tool to build and demonstrate

28  opposition to executive action. President Obama vetoed five resolutions of disapproval during his

presidency relating to labor protections; protections against financial conflicts of interest; pollution controls for new and existing power plants; and rules limiting water pollution. *See* Congressional Review Act: Federal agency rules challenged under the Congressional Review Act that passed both chambers, Ballotpedia.org (at 5-6), *available at* https://ballotpedia.org/Congressional_Review_Act#datawrapper-chart-LOcJZ. President Biden vetoed 11 resolutions of disapproval relating to the domestic content of electric vehicle chargers; small business lending; endangered species protections for certain bats and birds; consumer protections relating to cryptocurrency; labor rules; student loans; emissions standards for heavy-duty vehicles; Labor Department rules that address climate change-related fiduciary duties; and the scope of the Clean Water Act. *See id.* at 3.

The CRA undoubtedly also has an important, yet unquantifiable, effect on the rulemaking process. Seeing agency rules challenged or even nullified by the CRA, agency regulators craft regulations with the specter of the CRA hanging over their heads. *See* Kevin Bogardus & Robin Bravender, *How Biden Beat the Clock on Big Environmental Regs*, E&E News (June 12, 2024, 1:16 PM), *available at* https://www.eenews.net/articles/how-biden-beat-the-clock-on-big-environmental-regs/. It cannot be known how many changes are made in contemplation of the possibility of having to defend a regulation against a CRA vote, but there can be little doubt that the CRA has a chilling effect on agency rule writers. The GAO has referred to this as the CRA's "deterrent effect." U.S. Gov't Accountability Office, GAO 06-601T, Perspectives on 10 Years of Congressional Review Act Implementation (2006), *available at* https://www.gao.gov/assets/gao-06-601t.pdf. The GAO has stated: "The Congressional Research Service has reported that several rules have been affected by the presence of the review mechanism, suggesting that the CRA review scheme has had some influence." *Id.*

This is consistent with Professor Dotson's experience working in the Senate, where conversations with the Executive Branch indicated a consistent awareness of the CRA and how the existence of the CRA affected potential agency schedules for rule promulgation.

## II.    EPA Waivers And The CRA

### A.    Clean Air Act Waivers Historically Have Not Been Subject To The CRA

The Clean Air Act generally preempts states from adopting or enforcing emission standards for motor vehicles. 42 U.S.C. § 7543(a). The Clean Air Act also requires EPA to waive federal preemption over California vehicle emissions standards when certain factual predicates are satisfied. 42 U.S.C. § 7543(b). Since enactment of the Congressional Review Act in 1996, EPA has taken nearly 150 actions pursuant to this authority. *See* U.S. Environmental Protection Agency, Vehicle Emissions California Waivers and Authorizations, *available at* https://www.epa.gov/state-and-local-transportation/vehicle-emissions-california-waivers-and-authorizations. All available information indicates a consensus among Congress, EPA, and the GAO until 2025 that EPA's waivers of preemption were not considered to be "rules" subject to the CRA. Notices of these waivers of preemption were never before submitted to the GAO and the Congress by EPA pursuant to the CRA. *See* Congressional Research Service, California and the Clean Air Act (CAA) Waiver: Frequently Asked Questions, n.217, (May 9, 2025), *available at* https://www.congress.gov/crs_external_products/R/PDF/R48168/R48168.5.pdf.

For example, EPA granted a waiver of preemption in 2003 relating to California's Low Emission Vehicle program. Notice of Decision, Environmental Protection Agency, California State Motor Vehicle Pollution Control Standards; Waiver of Federal Preemption, 68 Fed. Reg. 19811 (Apr. 22, 2003). In its notice, EPA states: "*As with past waiver decisions, this action is not a rule* as defined by Executive Order 12866." *Id.* (emphasis added). The definition of a rule under Executive Order 12866 is similar to and likely more expansive than the definition of a rule under the CRA. *See* Executive Order No. 12866 (1993), § 2(d), *available at* https://www.archives.gov/files/federal-register/executive-orders/pdf/12866.pdf. The notice was not submitted to the GAO and Congress.

On March 14, 2022, EPA granted a waiver of preemption for California's Clean Car Program. Notice of Decision, Environmental Protection Agency, California State Motor Vehicle Pollution Control Standards; Advanced Clean Car Program; Reconsideration of a Previous Withdrawal of a Waiver of Preemption, 87 Fed. Reg. 14332 (Mar. 14, 2022). A Senator requested

9

that the GAO determine whether the waiver of preemption is a "rule" for purposes of the CRA. GAO Decision B-334309, *Environmental Protection Agency—Applicability of the Congressional Review Act to Notice of Decision on Clean Air Act Waiver of Preemption*, at 1 (Nov. 30, 2023), *available at* https://www.gao.gov/assets/870/863746.pdf.

The GAO examined the issue and concluded that EPA's waivers do not fall under the CRA's definition of a rule. *Id.* at 4-7. The GAO explained that the waiver was an "order," not a "rule" under the APA because it "meets the statutory definition of an order, reflects the hallmarks of an order that courts identified, and is similar to the actions in our prior decisions that were orders." *Id.* at 5. The GAO found further support for this finding because the waiver was particular to California, based on consideration of particular facts, and had immediate effect in California. *Id.* at 5-6. The GAO concluded that even if the waiver was a rule, it is a rule of particular applicability because it "concerns a specific entity—California—and addresses a statutory waiver specific to California's Advanced Clean Car Program." *Id.* at 6. The CRA specifically excepts rules of particular applicability from review. 5 U.S.C. § 804(3)(A).

**B.    The Reaction To The Finding That The CRA Is Inapplicable To Waivers**

With CRA's inapplicability confirmed, opponents of California's emissions standards attempted to block the standards through the normal legislative process. On December 6, 2023, just one week after the GAO's determination was published, the House of Representatives passed the "Choice in Automobile Retail Sales Act of 2023," which would have prohibited EPA from finalizing its most recent emissions standards for cars and trucks, and, more importantly to the California waiver, amended the Clean Air Act to ensure that standards do not "result in limited availability of new motor vehicles based on the type of new motor vehicle engine in such new motor vehicles." H.R. 4468, 118th Congress (2023), *available at* https://www.congress.gov/bill/118th-congress/house-bill/4468/text.

The proposed amendment to the Clean Air Act would have prevented EPA from approving waivers of preemption for California's emissions standards. That is because California's waiver requests must be granted unless (among other considerations) the state standards are not consistent with the federal standards. 42 U.S.C. § 7543(b)(1)(C). Had the "Choice in Automobile Retail Sales

Act of 2023" been enacted, California's standards would not be consistent with the amended section governing federal standards because California's rules result in increasing sales of zero-emission vehicles and decreasing sales of vehicles that operate on internal combustion engines. The Senate never took up the bill before the end of the 118th Congress.

Attempts were subsequently made to advance legislation to simply remove the Clean Air Act's waiver provisions. The leading proposal entitled "Stop CARB Act" was introduced in September 2024, S. 5038, 118th Congress (2024), and again in the next Congress in March 2025. S. 1072, 119th Congress (2025). The sponsor of this legislation, Sen. Mike Lee (R-UT), circulated a fact sheet in 2024 describing the proposed legislation that included the statement: "California's CAA federal preemption waivers cannot be reviewed under the Congressional Review Act (CRA) because the waiver granted by the EPA is not a *rule* as that term is defined in the CRA." Office of Senator Mike Lee, One-Pager, 118th Congress, Stop CARB Act, *available at* https://www.lee.senate.gov/services/files/D7060B80-6E13-4481-8EC6-63155F546C1A. (Despite this definitive statement, Sen. Lee later voted to apply the CRA to the waiver.) The legislation never advanced beyond referral to the Senate Committee on Environment and Public Works. *Id.*

Another legislative tactic that opponents of California's emissions standards have attempted is to include a funding limitation in a pending appropriation bill. In 2023, for example, a proposed funding bill for EPA contained a prohibition on using funds to approve a waiver for a California mobile source emissions rule. Section 463, Department of the Interior, Environment, and Related Agencies Appropriations Act, 2024, H.R. 4821, 118th Cong. (2023) (prohibiting funds to approve a waiver submitted to the Environmental Protection Agency by the State of California pursuant to Section 209(e) of the Clean Air Act for the State of California's Amendments to its rule titled ''Small Off-Road Engine Regulations: Transition to Zero Emissions''), *available at* https://www.congress.gov/bill/118th-congress/house-bill/4821/text. This appropriations bill was abandoned when it had insufficient support to pass.

### C.    The Unjustified Attempt To Apply The CRA To The 2025 Waivers

For EPA's part, shortly after the GAO concluded that California's waivers were not rules subject to the CRA, the agency announced a public hearing for consideration of California's

Advanced Clean Cars II waiver request and called for public comments. U.S. EPA. Hearings, Meetings, Proceedings, etc.: California State Motor Vehicle Pollution Control Standards; Advanced Clean Cars II Regulations; Request for Waiver of Preemption (Dec. 26, 2023), *available at* https://www.regulations.gov/document/EPA-HQ-OAR-2023-0292-0001. EPA granted California a waiver for this program in January 2025. U.S. EPA, California State Motor Vehicle and Engine Pollution Control Standards; Advanced Clean Cars II; Waiver of Preemption; Notice of Decision, 90 Fed. Reg. 642 (Jan. 6, 2025), *available at* https://www.govinfo.gov/content/pkg/FR-2025-01-06/pdf/2024-31128.pdf.

Notwithstanding the history and record of legal determinations recounted above, in February 2025, EPA submitted three waivers of preemption to Congress, characterizing them as rules subject to the CRA. *See* GAO Letter B-337179, *Observations Regarding the Environmental Protection Agency's Submission of Notices of Decision on Clean Air Act Preemption Waivers as Rules Under the Congressional Review Act*, at 1 & n.1 (Mar. 6, 2025), *available at* https://www.gao.gov/assets/880/875948.pdf.

After EPA submitted the waiver decisions to Congress, the GAO reviewed the agency actions and again concluded that the waivers of preemption were not rules subject to the CRA. *Id.* at 2. The Trump EPA offered no explanation to counter the GAO's analysis or to justify EPA's radical departure from its former, decades-long position, and provided no information that could be used to distinguish California waivers from any other executive action historically not subject to review under the CRA. *See id.*

The Congressional Research Service has explained how the Trump Administration's position has changed from the consistent views held by the EPA during administrations prior to 2025. Congressional Research Service, California and the Clean Air Act (CAA) Waiver: Frequently Asked Questions, at 27 (May 9, 2025), *available at* https://www.congress.gov/crs_external_products/R/PDF/R48168/R48168.5.pdf.

The independent, nonpartisan Senate Parliamentarian determined that the CRA did not apply to the waivers. *See* Rachel Frazin, *Senate parliamentarian says lawmakers can't overturn California car rules — but Republicans may try anyway*, The Hill (Apr. 4, 2025), *available at*

https://thehill.com/policy/energy-environment/5233436-senate-parliamentarian-says-lawmakers-cant-overturn-california-car-rules-but-republicans-may-try-anyway/. This was critically important as the Senate Parliamentarian is considered the neutral arbiter of the Senate rules, ensuring that no party gets an unfair advantage in the application of the rules. Senators who were supportive of the waivers responded as though this was determinative. California's senators, along with the ranking Democratic Senator on the Environment and Public Works Committee, issued a press release stating that the Parliamentarian's decision affirmed that the EPA "cannot weaponize the CRA to repeal these waivers." Press release, Padilla, Schiff, Whitehouse Welcome Senate Parliamentarian's Reaffirmation That California's Clean Air Act Waivers Not Subject to Congressional Review Act (Apr. 4, 2025), *available at* https://www.padilla.senate.gov/newsroom/press-releases/padilla-schiff-whitehouse-welcome-senate-parliamentarians-reaffirmation-that-californias-clean-air-act-waivers-not-subject-to-congressional-review-act/.

In nonetheless purporting to invoke the CRA to overturn the waivers, the Senate – which is the critical chamber of Congress for this purpose due to the difference between needing a majority versus a three-fifths vote – articulated no rationale to explain why approvals of the California waivers are subject to the CRA, but not other orders, adjudications, or excepted actions like contracts, leases, and permit approvals. The new Senate precedent establishes that the Senate simply defers to Executive Branch conclusions about what is subject to CRA review and does not independently analyze the applicability of the CRA (or lack thereof) to an agency action that the Executive Branch claims is subject to the CRA. (Plaintiffs' Opposition explains how this was accomplished. Doc. No. 194 at 4:26-6:15.)

The Senate's handling of the California waiver CRA resolutions signals an unprecedented new era in which Congress abdicates its role of deciding which actions are eligible for CRA review. This precedent in effect says that the Senate now just accepts the Executive Branch's decision that an action is subject to the CRA – even when that action is facially at odds with the CRA statutory language and no justification or argument for applicability is even offered. *See* Molly Reynolds, *The Senate's Recent Actions on the Congressional Review Act*, Yale J. on Reg.

Notice & Comment (May 28, 2025). An administration that is willing to recategorize orders, adjudications, and excepted and exempted actions as "rules" subject to the CRA can now achieve privileged consideration in the Senate, contrary to the plain language of the statute and the original intent of the CRA.

The Senate has therefore engineered a path for a one-party government to bypass the scope of the CRA (and the filibuster) when seeking to eliminate virtually any previously unreviewed agency action. This opens the door to abuse of the CRA – for instance by opening up resolved issues through re-characterizing agency actions as "rules," resulting in unpredictable policy shifts. This new path is even more problematic because the CRA provides that a disapproved rule "may not be reissued in substantially the same form, and a new rule that is substantially the same as such a rule may not be issued, unless the reissued or new rule is specifically authorized by a law enacted after the date of the joint resolution disapproving the original rule." 5 U.S.C. § 801(b)(2). Although nothing prohibits an agency from promulgating a rule pursuant to the same authority as a disapproved rule as long as that new rule is not substantially the same as the disapproved rule, this is nevertheless strong medicine. But the Congress that enacted this provision also thought it was limiting the CRA to rules as strictly defined. Now that the floodgates are open, the harsh consequences of overturning an agency action under the CRA can be applied to circumstances Congress never intended.

In an odd and unprecedented endnote to this purported use of the CRA, several weeks after the Senate vote and the GAO's analysis, as well as after the actions of both chambers were long completed, the White House belatedly attempted to provide a rationale for why the waivers should be considered rules subject to the CRA. In a letter to the GAO, the Director of the Office of Management Budget emphasized that Congress needed to "decide for itself" what is subject to the CRA. Letter from Russell Vought to Gene Dodaro (June 18, 2025), *available at* https://www.whitehouse.gov/wp-content/uploads/2025/03/CA-Waiver-Letter-to-GAO.pdf. The argument is baffling because the Senate decided to defer to the Executive Branch about what is subject to the CRA without articulating a general theory about why the GAO was wrong and how to square application of the CRA to the waivers with the CRA's language. Upon beginning debate

over the resolutions of disapproval, Senator John Barrasso (R-WY), the Republican Majority

Whip, summed up the argument for CRA applicability by stating:

> The Environmental Protection Agency submitted these rules as rules to Congress this year, after being released by the Biden administration in his final days in office. That is a fact. No one disputes it.… Under the Congressional Review Act, that makes these rules subject to review—period, end of story. They are subject to review.

Statement of Sen. Barrasso, 171 Cong. Rec. S3018 (May 21, 2025), *available at*

https://www.congress.gov/119/crec/2025/05/21/171/86/CREC-2025-05-21-pt1-PgS3017-6.pdf.

**III.    The Proper Means Of Changing The Scope Of The CRA Is Legislative Amendment**

Congress has made minor amendments to the CRA since the Act was originally enacted.

One amendment in 2023 gave the GAO new responsibilities regarding oversight of a law that was

enacted for just a one-year trial period and then sunsetted. *See* Pub. L. 118–5, div. B, title III, § 270

(June 3, 2023), 137 Stat. 33. In 2024, Congress required federal agencies to report additional

information to GAO regarding rules that were rendered ineffective. Pub. L. 118–97, § 2 (Oct. 1,

2024), 138 Stat. 1573. These amendments show that Congress knows how to change the scope of

the CRA – and also suggest congressional satisfaction with the GAO's performance as Congress

added to the GAO's oversight authority in small, but real ways.

The proper way for Congress to expand the scope of what is covered by the CRA is

legislative amendment. Indeed, since enactment of the CRA 30 years ago, members of Congress

have proposed revising the CRA to expand the scope of agency actions to which the statute

applies. Many of these proposals and others are listed in the appendix at the end of this brief. In

particular, in the 113th and 114th Congresses, members of Congress proposed the "Stop the EPA

Act" to expand the CRA and require approval for EPA actions, including those that are excepted

under current law. H.R. 3056, 114th Congress (2015), *available at*

https://www.congress.gov/bill/114th-congress/house-bill/3056; H.R. 5034, 113th Congress (2014),

*available at* https://www.congress.gov/bill/113th-congress/house-bill/5034. The proposal was not

enacted. But this legislation, as well as other proposals, reflected a congressional understanding of

the process for changing the scope of application of the CRA – amendment of the existing law via

passage of proposed amendments by both houses of Congress, followed by presidential signing of the enacted legislation.

## IV.    The Senate Rules Do Not Justify Applying The CRA To The Waivers

Nor can what the Senate did be justified as the Senate simply applying its own internal rules. By way of background, both the House and the Senate have established rules to govern consideration of legislation in each chamber. The Senate refers to its rules as "the linchpin of orderly proceedings and civil debate … since 1789." U.S. Senate, About Senate Rules (2025), *available at* https://www.senate.gov/about/powers-procedures/rules.htm. The CRA is not mentioned in either the House or Senate rules. In enacting the CRA, Congress established by statute a legislative process that might otherwise be governed by the rules of the House and the Senate.

The Constitution reserves Congress' right to establish its own internal governance rules: "Each House may determine the Rules of its Proceedings." U.S. Const, Art. I, Sec. 5, Cl. 2. The CRA explicitly recognizes this right of Congress in 5 U.S.C. § 802(g), which states: "*This section* is enacted by Congress … as an exercise of the rulemaking power" of Congress and "is deemed a part of the rules of each House, respectively, but applicable *only with respect to the procedure to be followed in that House* in the case of a joint resolution described in subsection (a)." (Emphases added.) Additionally, this section recognizes the constitutional right of each chamber of Congress to change rules "relating to the *procedure* of that House." 5 U.S.C. § 802(g)(2) (emphasis added).

The right to establish rules does not justify what Congress did with respect to the waivers. First, § 802(g)(1) is explicit in limiting the rulemaking power to the part of the CRA contained in § 802 as that is the "section" to which the language refers. Other sections of the CRA governing Executive Branch duties and the definitions, exceptions, and exemption that determine the scope of the Act are not in § 802 and therefore not deemed part of the rules of each chamber. In this way, the structure of the CRA reveals Congress' understanding that most portions of the CRA cannot relate to Congress' constitutional power to establish its own rules of procedure. Most relevant in this case, the definition of a rule in § 804(3) is not deemed to be part of the rules of the Senate.

Second, § 802(g)(2) means that only provisions governing procedure can be changed pursuant to each chamber's normal rulemaking authority. Accordingly, Congress cannot change any substantive provisions in the CRA (including in § 802) by rulemaking. The language does not reflect an intent that would allow the Senate to effectively change the definitions in § 804, including the definition of "rule." This is what should be expected given the repeated introduction of legislative proposals to change the scope of the CRA over the past decades.

Finally, the Senate certainly has the authority to change its rules to allow for privileged consideration of measures outside the scope of the CRA. In setting the new precedent expanding the category of agency actions that receive expedited review in the Senate, however, the Senate did not change its rules. Instead, the Senate used a parliamentary maneuver to reinterpret the existing CRA statute much like the Senate has done previously to interpret Senate Rule XXII with regard to the requirement for a three-fifths majority for presidential nominations. *See* Congressional Research Service, Majority Cloture for Nominations: Implications and the "Nuclear" Proceedings of November 21, 2013 (Dec. 6, 2013) ("The precedent did not change the text of Rule XXII of the Standing Rules; rather, the Senate established a precedent reinterpreting the provisions of Rule XXII to require only a simple majority of those voting, rather than three-fifths of the full Senate, to invoke cloture on all presidential nominations except those to the U.S. Supreme Court."), *available at* https://www.congress.gov/crs-product/R43331.

But the CRA is different than the filibuster requirement for Senate confirmations. The CRA is a statute that imposes legal requirements on the Executive Branch to apply the statutory definition of a "rule" and to submit such rules to Congress. Unlike the filibuster's application to confirmations, the CRA is not solely a creature of the rules governing Senate proceedings. The precedent used for the waivers provides that the Executive Branch can take action under § 801, acting as though an agency action not meeting the definition of a "rule" in § 804 is a rule under § 804. This is not in accordance with the substantive statutory provisions of the CRA as opposed to an internal Senate procedure. This new precedent is roughly analogous to the Executive Branch sending a legislative proposal to the Senate and calling it a "nomination" to enjoy a privileged status for its consideration.

## CONCLUSION

The Senate's claimed use of the CRA to consider the California waivers in 2025 radically departs from past CRA implementation and Senate practice. For nearly 30 years, Congress, the GAO, the Executive Branch, states, and regulated parties had a shared understanding of what agency actions were and were not subject to CRA review. Each of those parties acted accordingly based upon that understanding. Members of Congress proposed legislation if they thought the scope of the CRA needed to be changed. The Executive Branch developed rules that factored in the defined possibility of congressional review under the Act. States and regulated parties assessed the durability of the regulatory landscape. This system has worked. For many years, the Executive Branch appeared to implement the CRA in good faith, but when there were failures, Congress developed an approach to ensure compliance. That approach relied on a Legislative Branch entity, the GAO, to independently and rigorously apply the terms of the statute to ensure that federal agencies were properly submitting rules for review.

No federal actions were more carefully reviewed for CRA applicability than the EPA's waivers of preemption for state vehicle emissions standards. Thirty years of bipartisan precedent, combined with two reviews by the GAO and confirmation from the Senate Parliamentarian all point to the same conclusion: the EPA's waivers of preemption under the Clean Air Act are not subject to CRA review. Purporting to use the CRA to overturn the California waivers has yielded a result that is inconsistent with the letter and the intent of the CRA and has shattered the shared understanding of the CRA.

Dated: January 16, 2026                    Respectfully submitted,

                                           Jonathan Weissglass
                                           Law Office of Jonathan Weissglass

                                           By: /s/ Jonathan Weissglass
                                                Jonathan Weissglass

                                           Attorney for *Amicus Curiae*
                                           Greg Dotson

1

## <u>APPENDIX</u>

2      Below is a compilation of unenacted proposals to amend the CRA or establish statutes

3 similar to the CRA.

4 **Proposals To Expand The CRA To Agency Actions Not Currently Covered**

5      Some proposals would have allowed congressional review of federal agency actions that

6 are currently outside the scope of the CRA. One proposal, entitled the "Stop the EPA Act," would

7 have created a new subchapter of the CRA that would apply only to EPA actions and would apply

8 to actions that are currently excepted and exempted under the CRA. H.R. 3056, 114th Congress

9 (2015), *available at* https://www.congress.gov/bill/114th-congress/house-bill/3056; H.R. 5034,

10 113th Congress (2014), *available at* https://www.congress.gov/bill/113th-congress/house-

11 bill/5034.

12 **Proposals To Expand The Scope Of The CRA Beyond The Actions Of Federal Agencies**

13      Proposals have been made to expand the scope of the CRA to cover actions taken by

14 entities that are not federal agencies. S. 676, 118th Congress (2023) (proposing to increase the

15 scope of the CRA to task forces, including a task force involved in recommending vaccination of

16 federal contractors), *available at* https://www.congress.gov/bill/118th-congress/senate-bill/676;

17 H.R. 4349, 113th Congress (2014) (proposing to expand the CRA to certain actions taken by the

18 President), *available at* https://www.congress.gov/bill/113th-congress/house-bill/4349.

19 **Proposals To Expand The Scope Of The CRA To Rules Currently In Effect**

20      One proposal would have amended the CRA to apply it to rules already in effect. H.R.

21 3442, 115th Congress (2017), *available at* https://www.congress.gov/bill/115th-congress/house-

22 bill/3442. Another proposal would have established a parallel law to the CRA, which would have

23 provided for congressional review of existing rules without the exceptions and exemption in the

24 CRA. H.R. 998, 115th Congress (2017), *available at* https://www.congress.gov/bill/115th-

25 congress/house-bill/998.

26

27

28

**Proposal To Amend The CRA To Require Approval Of Regulations With Criminal Penalties**

One proposal would amend the CRA to require approval of new regulations that have criminal penalties. H.R. 3401, 114th Congress (2015), *available at* https://www.congress.gov/bill/114th-congress/house-bill/3401.

**Proposals To Repeal The CRA And Authorize Reinstatement Of Disapproved Rules**

Members have proposed to repeal the CRA and allow for reinstatement of disapproved rules. H.R. 2449*,* 115th Congress (2017*), available at* https://www.congress.gov/bill/115th-congress/house-bill/2449; S. 1140, 115th Congress (2017), *available at* https://www.congress.gov/bill/115th-congress/senate-bill/1140. A proposal was made in 2023 to authorize agencies for which a rule had been disapproved pursuant to the CRA to reinstate the disapproved rule within a certain time period. H.R. 1507*,* 118th Congress (2023), *available at* https://www.congress.gov/bill/118th-congress/house-bill/1507.

**Proposals To Reduce Reporting To Congress Pursuant To The CRA**

Proposals have been made to reduce the amount of reporting that agencies make to Congress pursuant to the CRA. H.R. 2247, 111th Congress (2009), *available at* https://www.congress.gov/bill/111th-congress/house-bill/2247; H.R. 5593, 110th Congress (2008), *available at* https://www.congress.gov/bill/110th-congress/house-bill/5593.

**Proposals To Allow A Resolution Of Disapproval To Apply To More Than One Rule**

Finally, proposals have been made to allow for consideration of more than one agency rule per resolution of disapproval. S. 164, 119th Congress (2025), *available at* https://www.congress.gov/bill/119th-congress/senate-bill/164; H.R. 77, 119th Congress (2025), *available at* https://www.congress.gov/bill/119th-congress/house-bill/77; H.R. 115, 118th Congress, *available at* https://www.congress.gov/bill/118th-congress/house-bill/115 (2024); S. 4485, 118th Congress, *available at* https://www.congress.gov/bill/118th-congress/senate-bill/4485 (2024); H.R. 61, 117th Congress, *available at* https://www.congress.gov/bill/117th-congress/house-bill/61 (2021); H.R. 87, 116th Congress, *available at* https://www.congress.gov/bill/116th-congress/house-bill/87 (2019); S. 34, 115th Congress, *available at* https://www.congress.gov/bill/115th-congress/senate-bill/34 (2017); H.R. 21, 115th

1  Congress, *available at* https://www.congress.gov/bill/115th-congress/house-bill/21 (2017); S.

2  3483, 114th Congress, *available at* https://www.congress.gov/bill/114th-congress/senate-

3  bill/3483 (2016); H.R. 5982, 114th Congress, *available at* https://www.congress.gov/bill/114th-

4  congress/house-bill/5982 (2016).